I/S
21
Days

**URI MARCUS**
P.O. Box 126
Ojai, CA  93024
Telephone:  909-833-0065
email: uri@ntcf.org

*Pro Se*

FILED
CLERK, U.S. DISTRICT COURT

4/8/22

CENTRAL DISTRICT OF CALIFORNIA
BY:  CS  DEPUTY

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

URI MARCUS, YVONNE MARCUS,
AVROHOM GORDON, DEVORAH
GORDON & CINDY RUSSO,

                              Plaintiffs,

v.

CENTERS FOR DISEASE CONTROL &
PREVENTION, DEPARTMENT OF
HEALTH & HUMAN SERVICES,
TRANSPORTATION SECURITY
ADMINISTRATION, JULIE CARRIGAN,
ALASKA AIRLINES, ALLEGIANT AIR,
AMERICAN AIRLINES, DELTA AIR
LINES, FRONTIER AIRLINES,
HAWAIIAN AIRLINES, SOUTHWEST
AIRLINES, UNITED AIRLINES, YET-
TO-BE-NAMED EMPLOYEES OF THE 8
AIRLINES, STAT-MD, & MEDAIRE,

                              Defendants,

Case No.: CV22-2383-JWH(DFM)

**COMPLAINT**

## I.      STATEMENT OF THE CASE

1.      Plaintiffs bring this lawsuit to vacate and permanently enjoin enforcement of
the Federal Transportation Mask Mandate ("FTMM") and the International Traveler Testing
Requirement ("ITTR") put into place by orders of the Centers for Disease Control &

1    Prevention ("CDC") – under the purported authority of its parent agency, the Department of

2    Health & Human Services ("HHS") (collectively "the Federal Defendants").

3            2.    The *ultra vires* FTMM consists of: 1) Executive Order 13998, 86 Fed. Reg.

4    7,205 (Jan. 26, 2021); 2) Department of Homeland Security Determination 21-130 (Jan. 27,

5    2021); 3) CDC Order "Requirement for Persons to Wear Masks While on Conveyances & at

6    Transportation Hubs," 86 Fed. Reg. 8,025 (Feb. 3, 2021); 4) Transportation Security

7    Administration Health Directives 1542-21-01D, 1544-21-02D, and 1582/84-21-01D (March

8    19, 2022); and 5) TSA Emergency Amendment 1546-21-01D (March 19, 2022).

9            3.    Only the CDC order is challenged in this Complaint since it appears the

10    Courts of Appeals have jurisdiction over the TSA Health Directives and Emergency

11    Amendment, and the president's executive order can be challenged by suing the agencies he

12    directed to carry it out.

13            4.    The *ultra vires* ITTR is the CDC Order "Requirements for Negative Pre-

14    Departure COVID–19 Test Result or Documentation of Recovery from COVID–19 for All

15    Airline or Other Aircraft Passengers Arriving into the United States from Any Foreign

16    Country." 86 Fed. Reg. 69,256 (Dec. 7, 2021).

17            5.    We also seek to end the unlawful discrimination against the disabled such as

18    ourselves who can't safely wear a mask because of a medical condition by eight airlines we

19    have flown on or have attempted to fly on during the COVID-19 pandemic: Alaska Airlines,

20    Allegiant Airlines, American Airlines, Delta Airlines, Frontier Airlines, Hawaiian Airlines,

21    Southwest Airlines, and United Airlines, (collectively "the Airline Defendants").

22            6.    Also charged are Numerous Yet-to-Be-Named Employees of the 8 Airlines

23    (the "Individual Defendants"), whose names will be learned during discovery.

24            7.    The final defendants are STAT-MD and MedAire (the "Medical

25    Defendants"), two medical vendors who evaluate mask-exemption demands for most of the

26    Airline Defendants.

27            8.    By mandating masks for all American travelers and requiring a negative

28    COVID-19 test before any airline passenger may board a flight to the United States, the

29    Federal Defendants have acted without statutory authorization or following the rulemaking

1   process required by the Administrative Procedure Act ("APA"). These policies also raise

2   serious constitutional concerns. Because of the FTMM, numerous state, local, and regional

3   transportation agencies are told to enforce a federal mandate that is in direct conflict with

4   the laws and policies of all 50 states that prohibit mask mandates or do not require face

5   coverings.

6         9.    The Court should vacate worldwide[1] the FTMM and ITTR because they are

7   improper, illegal, and unconstitutional exercises of executive authority. The mask mandate

8   and testing requirement are procedurally defective because the Federal Defendants adopted

9   them without following the APA's notice-and-comment requirements or considering the

10  impact on millions of disabled travelers such as ourselves. They also ignored countless

11  scientific and medical studies and articles showing that face masks are totally ineffective in

12  reducing corona virus spread but are harmful to human health in at least 68 ways. Congress

13  never intended for the Executive Branch to have the authority to promulgate these policies –

14  and even if it did, the FTMM and ITTR are unconstitutional. CDC and HHS may not

15  exercise their authority in a manner that is inconsistent with the administrative structure that

16  Congress enacted.

17        10.   We have been restricted from flying by the Airline Defendants for more than

18  1½ years because of their enforcement of mask mandates that violate numerous provisions

19  of federal and international laws, plus breach their contracts and violate tort law and the

20  Constitution.

21        11.   The evidence is indisputable that the Airline Defendants since Summer 2020

22  have illegally discriminated against flyers with disabilities by refusing to grant mask

23  exemptions and/or requiring such an onerous exemption process that makes it nearly

24  impossible for those of us medically unable to cover our face to obtain a waiver.

25        12.   Even when granted exemptions, the Airline Defendants create a new class of

26  travelers relegated to travel only in seats located at the back of the aircraft, as if we are

27

28  _____

[1] The FTMM purports to apply aboard flights to and from the United States, even when the aircraft is outside
29  U.S. airspace. It likewise applies to ships calling on U.S. ports even when such vessels are in the open sea
thousands of miles from American shores, far outside U.S. jurisdiction.

lepers with confirmed communicable diseases who must be segregated from all others. This despite the fact that they are further illegally mandating us to submit multiple negative COVID-19 tests, which confirm that mask-exempt passengers are virus-free.

13.     The Airline Defendants' conduct, contributed to by the Medical Defendants, results in the disabled who can't safely wear masks essentially being banned from using the nation's commercial aviation system. We have avoided flying as much as possible because we can't obstruct our oxygen intake.

14.     All defendants have illegally failed to give passengers – whether disabled or not – our legally guaranteed option under the Food, Drug, & Cosmetic Act ("FDCA") to refuse to use a medical device (face mask) not approved by HHS' Food & Drug Administration ("FDA") or allowed only under an Emergency Use Authorization ("EUA").

15.     In mandating masks for all passengers, the Airline Defendants have violated the Rehabilitation Act ("RA"), Air Carrier Access Act ("ACAA"), international law, California law, and their contracts with passengers – especially when it comes to illegally discriminating against travelers with disabilities who can't medically tolerate wearing a face covering with first a complete ban and then arduous exemption requirements that aren't supported by law.

16.     Making this matter worse is that the airlines' regulatory agency, the Department of Transportation ("DOT"), has given them guidance that actually supports their illegal behavior. Ex. 101.[2] Therefore, we bring this suit to enforce the ACAA since the administrative agency has neglected its statutory duty to do so.

17.     Because the agency charged by Congress to enforce the rights of passengers with disabilities has failed to protect us and countless numbers of others similarly situated, our only recourse is a private suit in this Court to ensure the Airline Defendants cease and

---

[2] Exhibits are not all numbered sequentially, but are rather organized by topic: No leading number = exhibits pertaining specifically to plaintiffs; 1XX = government documents; 2XX = mask and airplane-cabin studies and articles; 3XX = discrimination and chaos in the sky; 4XX = airline policies and contracts; and 5XX = disability and miscellaneous documents.

desist from their unlawful conduct. The ACAA should also be enforced via the RA, conspiracy laws, and California's Unruh Civil Rights Act.

18.    The Airline Defendants have acted without statutory or regulatory authority to demand that every passenger obstruct their breathing by wearing an unauthorized or EUA medical device that covers their nose and mouth. The Airline Defendants have illegally required face coverings for the last 20 months or so not only on board their property (aircraft) but also in public areas of airports they do not own or control. They have all claimed that masking is a "federal law" when Congress has never enacted any such statute.

19.    The Court must stop the Airline Defendants from continuing to discriminate against flyers with disabilities and force them to follow the RA, ACAA, Unruh Act, and other laws because DOT has refused to do its job.

## II.    **PARTIES**

### A.   **Plaintiffs**

20.    Uri and Yvonne Marcus, husband and wife, are U.S. citizens who reside at Shmu'el Lupo 6/18, Jerusalem, Israel 9355006. They maintain both a residential address and a business address in the United States. Their mailing address in the United States is P.O. Box 126, Ojai, CA  92034. They are travelers subject to the FTMM, ITTR, and the airlines' mask policies.

21.    In Israel, Mrs. Marcus in also known as "Adi Marcus" — her legal Hebrew name on her Israeli passport — to her physicians, friends, family and government authorities Ex. 1.

22.    Plaintiffs Avrohom Gordon and Devorah Gordon, husband and wife, reside at 2251 State Route 222, New Richmond, OH 45157. They are travelers subject to the FTMM and the airlines' mask policies.

23.    Plaintiff Cindy Russo resides at 22485 Breakwater Way, Santa Clarita, CA 91350. She is a traveler subject to the FTMM and the airlines' mask policies.

### B.   **Defendants**

24.     Defendant Centers for Disease Control & Prevention is an agency of HHS. It is headquartered at 1600 Clifton Rd., Atlanta, GA 30329.

25.     Defendant Department of Health & Human Services is a department of the Executive Branch. It is headquartered at 200 Independence Ave., SW, Washington, DC 20201.

26.     Defendant Transportation Security Administration ("TSA") is an agency of the Department of Homeland Security ("DHS"). It is headquartered at 6955 Springfield Center Dr., Springfield, VA 20598.

27.     Defendant Julie Carrigan is the acting division director of TSA's National Transportation Vetting Center. She is sued in both her official and individual capacities. Her work address is 6955 Springfield Center Dr., Springfield, VA 20598.

28.     Defendant Alaska Airlines is an Alaska corporation doing business in California. Its headquarters is at 19300 International Blvd., Seatac, WA 98188. Its registered agent in California is CSC-Lawyers Incorporating Service, Suite 150N, 2710 Gateway Oaks Dr., Sacramento, CA 95833.

29.     Defendant Allegiant Airlines is a Nevada corporation doing business in California. Its headquarters is at 31201 N. Town Center Dr., Las Vegas, NV 89144. Its registered agent in California is CSC-Lawyers Incorporating Service, Suite 150N, 2710 Gateway Oaks Dr., Sacramento, CA 95833.

30.     Defendant American Airlines is a Delaware corporation doing business in California. Its headquarters is at 1 Skyview Dr., Fort Worth, TX 76155. Its registered agent in California is C.T. Corporation System, Suite 700, 330 N. Brand Blvd., Glendale, CA 91203.

31.     Defendant Delta Air Lines is a Delaware corporation doing business in California. Its headquarters is at 1030 Delta Blvd., Atlanta, GA 30354. Its registered agent in California is CSC-Lawyers Incorporating Service, Suite 150N, 2710 Gateway Oaks Dr., Sacramento, CA 95833-3505.

32.     Defendant Frontier Airlines is a Delaware corporation doing business in California. Its headquarters is at 4545 Airport Way, Denver, CO 80239. Its registered agent

in California is CSC-Lawyers Incorporating Service, Suite 150N, 2710 Gateway Oaks Dr., Sacramento, CA 95833.

33.     Defendant Hawaiian Airlines is a Delaware corporation doing business in California. Its headquarters is at Suite G350, 3375 Koapaka St., Honolulu, HI 96819. Its registered agent in California is CSC-Lawyers Incorporating Service, Suite 150N, 2710 Gateway Oaks Dr., Sacramento, CA 95833.

34.     Defendant Southwest Airlines is a Texas corporation doing business in California. Its headquarters is at 2702 Love Field Dr., Dallas, TX, 75235. Its registered agent in California is CSC-Lawyers Incorporating Service, Suite 150N, 2710 Gateway Oaks Dr., Sacramento, CA 95833.

35.     Defendant United Airlines is a Delaware corporation doing business in California. Its headquarters is at 233 S. Wacker Dr., Chicago, IL 60606. Its registered agent in California is C.T. Corporation System, Suite 700, 330 N. Brand Blvd, Glendale, CA 91203.

36.     Defendant Numerous Yet-to-Be-Named Employees of the 8 Airlines consist of all officers, executives, and staff of the Airline Defendants who participated in the conspiracy to interfere with our civil rights and/or neglected to prevent such interference. Their names will be learned during discovery. Until then, attorneys for the Airline Defendants should adequately represent their interests.

37.     Defendant STAT-MD describes itself as providing "Airline Consultation Services" including in-flight emergency consultation as well as fitness-to-fly ground screening. STAT-MD is a nonprofit organization backed by the resources of the University of Pittsburgh Medical Center. Its headquarters is at 200 Lothrop St. #F1301, Pittsburgh, PA 15213.

38.     Defendant MedAire is an Nevada Corporation that describes itself as a medical advisory group delivering "integrated medical and security solutions for airlines that includes training, equipment, and professional services for crew and passengers beyond the cabin." Its headquarters is at Suite 450, 4722 North 24th St., Phoenix, AZ 85016. Its

registered agent in California is CSC-Lawyers Incorporating Service, Suite 150N, 2710 Gateway Oaks Dr., Sacramento, CA 95833-3505.

## III. JURISDICTION, VENUE & STANDING

39.     This Court has original jurisdiction over our claims pursuant to 28 USC § 1331 since this case involves questions of federal law, including the U.S. Constitution, U.S. Code, Code of Federal Regulations, and international treaties ratified by the United States. This Court also has jurisdiction pursuant to 28 USC § 1343 because we seek damages for violations of our civil rights.

40.     Our state-law claims are so related to those under which this Court has original jurisdiction that they form part of the same case and controversy under Article III of the Constitution. Our state-law claims share common operative facts with our federal-law claims and the parties are identical. Resolving our federal and state claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties. Supplemental jurisdiction is therefore appropriate pursuant to 28 USC § 1367.

41.     This Court has jurisdiction over our claims for declaratory and injunctive relief, as well as to award monetary damages against the Airline Defendants, the Individual Defendants, and the Medical Defendants, under the Declaratory Judgment Act and this Court's inherent powers pursuant to 28 USC §§ 2201 & 2202 and 5 USC §§ 702 & 706.

42.     The Court also has diversity jurisdiction under 28 USC § 1332 since we are citizens of California and Ohio; the Airline Defendants do not have their principal place of business and are not incorporated in California; and the Medical Defendants likewise do not have their principal place of business and not incorporated in California. The amount of controversy is greater than $75,000.

43.     Venue is proper in this Court because a substantial part of the events or omissions giving rise to this lawsuit occurred in California and in connection with flights to/from California. 28 USC § 1391.

44.     We have standing to sue the Federal Defendants because the FTMM and ITTR restricts our freedom of travel and unlawfully discriminate against us as disabled passengers, *inter alia*. A court order declaring unlawful and setting aside the FTMM and ITTR would redress our injuries because our freedom to travel without covering our faces and being subjected to virus testing would be restored.

45.     We have standing to sue the Airline Defendants, the Individual Defendants, and the Medical Defendants because they illegally discriminated against us on the basis of our medical conditions by denying us to ability to fly without wearing a mask as well as forcing us in violation of federal law and in breach of contract to wear unauthorized and/or EUA masks against our will to the detriment of our health. A court order declaring unlawful and enjoining the nongovernment defendants' illegal discrimination and contract breaches – plus an award of compensatory and punitive damages – would redress our injuries.

## IV.    STATEMENT OF FACTS

**A. The travel history of Plaintiffs Uri and Yvonne Marcus during the COVID-19 pandemic, their future travel plans, their disabling medical conditions that prevent them from masking, and the revocation of Mr. Marcus' Pre-Check eligibility.**

46.     **URIEL MARCUS' 2020 FLIGHTS:** Nov 20, 2020: United on Flight 955 from Tel Aviv, Israel, (TLV) to San Francisco (SFO) forced Mr. Marcus to mask against his will. Ex. 2.

47.     Nov 23, 2020: Southwest on Flight 4379 from Oakland (OAK) to Los Angeles (LAX) forced Mr. Marcus to mask against his will. Ex. 3.

48.     Nov 29, 2020: American on Flight 2645 from LAX to Las Vegas (LAS) forced Mr. Marcus to mask against his will. Ex. 4.

49.     Dec 4, 2020: Southwest on Flight 4520 from LAS to Phoenix, Arizona, (PHX) forced Mr. Marcus to mask against his will. Ex. 5.

50.     Dec 9, 2020: Southwest on Flight 4608 from PHX to LAX forced Mr. Marcus to mask against his will. Ex. 6.

51.     Dec 9, 2020: United on Flight 1548 from LAX to SFO forced Mr. Marcus to mask against his will. Ex. 2.

52.     Dec 9, 2020: United on Flight 954 from SFO to TLV forced Mr. Marcus to mask against his will. *Id.*

53.     **YVONNE MARCUS' 2020-21 FLIGHTS:** Nov 20, 2020: United on Flight 955 from TLV to SFO forced Mrs. Marcus to mask against her will. Ex. 7.

54.     Nov 23, 2020: Southwest on Flight 4379 from OAK to LAX forced Mrs. Marcus to mask against her will. Ex. 3.

55.     Nov 29, 2020: American on Flight 2645 from LAX to LAS forced Mrs. Marcus to mask against her will. Ex. 4.

56.     Dec 4, 2020: Southwest on Flight 4520 from LAS to PHX forced Mrs. Marcus to mask against her will. Ex. 5.

57.     Dec 9, 2020: Delta on Flight 3844 from PHX to LAX forced Mrs. Marcus to mask against her will. Ex. 8.

58.     Jan 6, 2021: United on Flight 5926 from LAX to SFO forced Mrs. Marcus to mask against her will. Ex. 7.

59.     Jan 6, 2021: United on Flight 954 from SFO to TLV forced Mrs. Marcus to mask against her will. *Id.*

60.     July 30, 2021: United on Flight 955 from TLV to SFO forced Mrs. Marcus to mask against her will. Ex. 9.

61.     July 30, 2021: Southwest on Flight 5733 from SFO to Burbank (BUR) forced Mrs. Marcus to mask against her will. Ex. 10.

62.     Sept. 4, 2021: United on Flight 1548 from LAX to SFO forced Mrs. Marcus to mask against her will. Ex. 9.

63.     Sept. 4, 2021: United on Flight 954 from SFO to TLV forced Mrs. Marcus to mask against her will. *Id.*

64. **MR. & MRS. MARCUS CAN'T TOLERATE WEARING FACE MASKS:** Due to their hyperactive airways and respiratory illnesses, it is harmful to cover their faces. When forced to muzzle themselves, they become panic-stricken, especially when threatening announcements are made over the cabin PA system, sometimes more than 15 times on a single one-hour flight, warning them of dire consequences should they remove the mask to take a full breath of air. There is an overall sense of uneasiness that further exacerbates breathing difficulties during each flight, particularly on the long-haul flights.

65. Basal Cell Carcinoma is a type of locally invasive skin cancer and it can be caused by local irritation due to mask wearing. The chronic irritation is consistent with prolonged and persistent wearing of a facial mask. The pressure strip is persistently pinched to maintain proper sealing over and around the nose, persistent moisture of exhalation of moist air, and constant friction are a causative factor leading to the growth of this type of skin cancer.

66. Mrs. Marcus had no problems with the skin of her nose and no lesions on the skin on her nose until she flew roundtrip from TLV to LAX via SFO in November 2020, returning in January 2021. In July 2021, she had to make another flight from TLV to SFO and on to LAX due to the death of her father.

67. During all eight flights, four of which were about 14 hours long each, she complained of irritation and itching on the left side of her nose where the pressure of her required face mask rested. Because of flight rules requiring the mask at all times, she could not remove her mask to relieve the pressure on the sensitive area of her nose and subsequently developed a lesion within a week of her arrival.

68. During her return trip from SFO to TLV on Sept. 4-5, 2021, again she was required to wear the mask for some 14 hours while still dealing with the open lesion on her nose, noting sensitivity, pain and itching on the left side of the nasal bridge.

69. By October 2021, after lesion did not heal and the sensitivity, pain and itching had become a health concern, she consulted with Dr. Leon Gilead, a dermatologist and Mohs specialist, who diagnosed her condition as Basal Cell Carcinoma and recommended Mohs surgery. In his written opinion, he felt that the persistent irritation of

prolonged mask wearing was a factor in causing the appearance of basal cell carcinoma in this location. Ex. 11.

70.     On Dec. 26, 2021, Mrs. Marcus consulted with Dr. Leora Fisher-Peled, who confirmed the diagnosis of Basal Cell Carcinoma. Ex. 12.

71.     On Jan. 26, 2022, Mrs. Marcus sought the medical opinion of a third doctor, Dr. Ephraim ben-Zeev. Dr. ben-Zeev remarked that these types of skin cancers are certainly related to ongoing local irritation. Such a process of chronic irritation is consistent with prolonged wearing of a facial mask, where the pressure strip is persistently pinched to maintain proper sealing over and around the nose. Persistent moisture of exhalation of moist air and constant friction are a causative factor leading to the growth of this type of skin cancer. Ex. 13.

72.     Mrs. Marcus underwent surgery Feb 8, 2022, to remove the skin cancer that was the result of prolonged masking demanded by the defendants. Masking in Israel is not legally required anywhere, provided a person simply states that they are medically exempt.

73.     Mrs. Marcus is still recovering from surgery which resulted in a hole the size of a dime on the bridge of her nose. Ex. 14. She experiences pain and burning sensations daily without a break, and her wound will not fully recover for 4-6 months. It will also scar, causing facial disfigurement.

74.     In anticipation of upcoming travel, Mr. and Mrs. Marcus both obtained mask-exemption letters from their physicians on Sept. 19, 2021. Ex. 15.

75.     **ATTEMPTS TO BOOK 2022 FLIGHTS:** Mr. and Mrs. Marcus purchased roundtrip tickets from United Airlines on Jan. 27, 2022, for itinerary to fly TLV March 6-31. Ex. 16.

76.     United fraudulently misrepresented that "Refusing to wear a face mask in the airport or on board is a federal offense which may result in a fine of up to $35,000." *Id*. In reality, refusing to wear a mask comes with a TSA civil fine up to $500.

77.     United fraudulently misrepresented that "federal law" requires passengers to don masks. But Congress has never passed such a law. *Id*.

78.     United denied their mask exemptions despite the detailed doctors' notes we submitted. *Id*.

79.      Additional correspondence with United did not resolve the improper denials. *Id*.

80.     Mr. and Mrs. Marcus were forced to cancel their tickets due to United's discrimination. *Id*.

81.     Plaintiffs Uri Marcus and Yvonne Marcus purchased a one-way ticket from American Airlines on Feb 2, 2022, to fly JFK-LAX-JFK-TLV, for travel from March 7 to 31, 2022. Ex. 17.

82.     American fraudulently misrepresents that "federal law" requires the wearing of face coverings. But Congress has never enacted such a law. *Id*.

83.     American initially denied our mask exemptions multiple times. *Id*.

84.     American unlawfully informed us that it will only carry one mask-exempt passenger per flight. *Id*. *But see* 14 CFR § 382.17.

85.     After several follow-up correspondence, American finally granted the Marcuses provisional mask exemptions. But plaintiffs were discriminated against. They were assigned, against their will, to seats located in the last row of the planes. They would further have been forced to submit to Polymerase Chain Reaction ("PCR") COVID-19 testing and would be allowed to board only with a negative test result. Ex. 17.

86.     American does not require nondisabled passengers to PCR test prior to boarding.

87.      Mr. and Mrs. Marcus were forced to cancel their tickets due to American's discrimination. *Id*.

88.     Mr. and Mrs. Marcus purchased roundtrip tickets from Delta Airlines Feb. 10, 2022, to fly TLV-New York (JFK)-LAX-JFK-TLV from March 17 to April 10, 2022. Ex. 18.

89.     Delta fraudulently misrepresents that "federal law" requires the wearing of face coverings. But Congress has never enacted such a law. *Id*.

90.     Mask exemptions were denied via Delta's illegal "Clearance to Fly," process which involved consulting with Defendant STAT-MD, which determined that mask exemptions could not be approved in advance even though due to plaintiffs' disabilities, they could not tolerate masking for 12-14 hour trans-Atlantic long-haul flights. Delta refused to make an exception to its rule. *Id.*

91.     Mr. and Mrs. Marcus were forced to cancel their tickets due to Delta's discrimination. *Id.*

92.     Mr. and Mrs. Marcus purchased a one-way ticket from Alaska Airlines on Feb. 25, 2022, to fly LAX-Boise (BOI) on June 6, 2022. Ex. 19.

93.      Alaska requires advance notice of at least three days to request a mask exemption. *Id. But see* 14 CFR § 382.25.

94.     Alaska requires COVID-19 testing for disabled passengers, but this rule does not apply to nondisabled passengers. Ex. 19.

95.     Alaska requires a medical certificate. *Id. But see* 14 CFR § 382.23(a).

96.     Alaska fraudulently misrepresents that "federal law" requires the wearing of face coverings. But Congress has never enacted such a law. Ex. 19.

97.     Mr. and Mrs. Marcus selected seats in Row 19. *Id.*

98.     Provisional mask exemptions were approved by Alaska but Mr. and Mrs. Marcus were discriminated against. They were assigned, against their will, to seats located in the last row (32) of the plane and would have been forced to submit to COVID-19 PCR testing, a rule that doesn't apply to nondisabled customers. *Id.*

99.     Mr. and Mrs. Marcus were forced to cancel their tickets due to Alaska's discrimination. *Id.*

100.    Mr. and Mrs. Marcus purchased two one-way tickets and one roundtrip ticket from Southwest Airlines on Feb. 25, 2022, for three separate itineraries: 1) BOI-Denver (DEN) on June 16, 2022; 2) Houston (HOU)-Phoenix (PHX) on June 24, 2022; and 3) LAX-LAS-LAX on June 28 to July 5. Ex. 20.

101.    Provisional mask exemptions were approved but plaintiffs were assigned, against their will, to seats located in the last row of all flights, despite Southwest's "open

seating policy" for all passengers. Further, they would have been forced to submit to COVID-19 PCR testing and would be allowed to board only with a negative test result. However, no other passengers would have been required to PCR test prior to boarding. *Id*.

102. Mr. and Mrs. Marcus booked roundtrip tickets from Hawaiian Airlines on Feb. 25, 2022, for flights LAX-Honolulu (HNL)-LAX on July 7-14. Ex. 21.

103. Hawaiian fraudulently misrepresents that "federal law" requires the wearing of face coverings. But Congress has never enacted such a law. *Id*.

104. Hawaiian informed us we would need to undergo a medical screening with Defendant MedAire's MedLink service. *Id*.

105. Mask exemptions were denied via Hawaiian's illegal "Fit to Fly" process, which involved a full medical assessment with MedAire, who determined that mask exemptions could not be approved in advance even though due to Plaintiffs' disabilities, they could not tolerate masking for 5-7 hour trans-Pacific long-haul flights. Hawaiian would make no exception to its rule. *Id*.

106. A Hawaiian agent told Mr. Marcus on the phone that if he and his wife appeared for their flight to HNL and passed the Fit to Fly examination, they would be forced to sit in the rear of the aircraft regardless of what seats they chose during booking.

107. Additional flights for business and family reasons are planned in the near future to multiple destinations, which the Marcuses are concerned will have to be canceled due to the FTMM and airlines' discriminatory mask policies.

108. **REVOCATION OF MR. MARCUS' PRE-CHECK ELIGIBILITY:** Mr. Marcus applied for TSA Pre-Check status June 16, 2017, and paid the $85 fee. Ex. 22.

109. Travelers approved for Pre-Check are allowed access to expedited security-screening lanes at airports nationwide.

110. TSA approved Mr. Marcus' Pre-Check application June 21, 2017. Ex. 23.

111. His Pre-Check status was granted through June 16, 2022. *Id*.

112. Mrs. Marcus signed up for Pre-Check at the same time Mr. Marcus did. Her application was also approved.

113.    Mr. Marcus, along with Larry James Bonin Jr., filed a Petition for Review with the U.S. Court of Appeals for the Fifth Circuit on Oct. 19, 2021, to challenge the legality of TSA's enforcement of the FTMM. Ex. 24.

114.    That case was later transferred to the U.S. Court of Appeals for the District of Columbia Circuit, where it is currently being briefed. *Marcus v. TSA*, No. 21-1225.

115.    Defendant Julie Carrigan, TSA's acting division director for the National Transportation Vetting Center, wrote a letter dated Nov. 23, 2021 to Mr. Marcus informing him that his Pre-Check status was revoked: "As a result of recurrent checks and based on a comprehensive background check, TSA was unable to determine that you pose a sufficiently low risk to transportation and national security to continue to be eligible for expedited airport security screening through the TSA Pre-Check Application Program. As a result, TSA has determined that you are no longer eligible to participate in the TSA Pre-Check Application Program." Ex. 25.

116.    Ms. Carrigan electronically signed the letter Nov. 18 – one month after Mr. Marcus exercised his First Amendment right to petition the government for a redress of grievances by challenging TSA's FTMM enforcement in court. *Id*.

117.    Ms. Carrigan did not cite a reason why Mr. Marcus was flagged for revocation of his Pre-Check status, when he had not taken a flight in the United States or been present in the country since Dec 9, 2020. *Id*.

118.    However, TSA publishes a list of "Disqualifying Offenses & Other Factors" that it supposed to cite when denying or revoking Pre-Check eligibility. Ex. 26.

119.    TSA and Ms. Carrigan did not give Mr. Marcus an opportunity to respond to any allegations made against him, including a hearing.

120.    Mrs. Marcus is not suing TSA. Interestingly she has not received a letter from TSA revoking her Pre-Check eligibility.

121.    Mr. Marcus poses no threat to aviation security.

122.    Mr. Marcus is a Federal Aviation Administration Certified Commercial Pilot who also holds a CFII MEI (Flight Instructor Airplane Single & Multi Engine Instrument Airplane) Certificate, as well as a Private Pilot License holder in Israel. Ex. 27.

123.     In February 2009, Mr. Marcus was awarded a certificate of completion for navigating the Washington, D.C., Special Flight Rules Area by FAA, for which oversight is by TSA. Ex. 28. This document is given only to pilots who have demonstrated that they pose no security risk over D.C.'s protected airspace.

124.     In July 2010, Mr. Marcus was vetted by TSA at SNA (John Wayne Santa Ana Airport, California) and was given clearance and access to secured areas of the airport, where he rented aircraft from Sunrise Aviation Inc.

125.     In 2014, Mr. Marcus passed a General Aviation Security Course, for which TSA issued a Certificate of Completion. Ex. 29.

126.     Mrs. Marcus, who again is not suing TSA, received an invitation from the agency Dec. 16, 2021, to renew her Pre-Check benefit. Ex. 30.

127.     TSA approved Mr. Marcus' Pre-Check renewal Dec. 18, 2021. Ex. 31.

**B.     Plaintiffs Uri and Yvonne Marcus' exhaustion of administrative remedies.**

128.     Mr. and Mrs. Marcus filed complaints of disability discrimination by Alaska Airlines with DOT. Ex. 32.

129.     Mr. and Mrs. Marcus filed complaints of disability discrimination by American Airlines with DOT. Ex. 33.

130.     Mr. and Mrs. Marcus filed complaints of disability discrimination by Delta Air Lines with DOT. Ex. 34.

131.     Mr. and Mrs. Marcus filed complaints of disability discrimination by Hawaiian Airlines with DOT. Ex. 35.

132.     Mr. and Mrs. Marcus filed complaints of disability discrimination by Southwest Airlines with DOT. Ex. 36.

133.     Mr. and Mrs. Marcus filed complaints of disability discrimination by United Airlines with DOT. Ex. 37.

134.     DOT has failed to investigate or resolve any of their complaints against these six Airline Defendants.

135.   Mr. Marcus made an inquiry to TSA on March 10, 2022, via its webform to ask why his Pre-Check eligibility was revoked and what could be done to reinstate him since no reasons were given by Ms. Carrigan in the Nov. 23, 2021, letter. Ex. 38.

136.   On March 14, 2022, TSA responded outlining the steps Mr. Marcus could take to have his Pre-Check reinstated. The letter states, "You received a letter that provides the reasons for the disqualification and directions to submit a correction of record." Ex. 39.

137.   However, the Nov. 23, 2021, letter from Ms. Carrigan gave no reason for disqualification or directions to submit a correction of record. Ex. 25.

138.   Mr. Marcus requested clarification from TSA on March 14, 2022, via email. Ex. 40.

139.   Two days later, TSA sent an e-mail to Mr. Marcus inviting him to renew his Pre-Check eligibility that's about to expire in July. Ex. 41.

140.   Later on March 16, 2022, after attempting to renew Mr. Marcus' eligibility online, as invited, the renewal was denied. Ex. 42.

141.   Mr. Marcus called the TSA renewal center on March 16, 2022, but after nearly an hour, no one was able to give him a reason why his renewal was not processed and approved.

142.   TSA e-mailed Mr. Marcus on March 17, 2022, indicating it would reply to his correspondence within 48 hours. Ex. 43.

143.   Mr. Marcus messaged TSA again March 24, 2022, seeking a proper response to his difficulty renewing his TSA eligibility. Ex. 44.

144.   TSA has not responded to Mr. Marcus.

**C.   The travel history of Plaintiffs Avrohom Gordon and Devorah Gordon during the COVID-19 pandemic, their future travel plans, and their disabling medical conditions that preclude masking.**

145.   Plaintiff Avrohom Gordon has not been able to travel because of the FTMM and his inability to wear a mask due to breathing issues that he had surgery for in the past.

He has missed a few important events such as a friend's wedding, children's competition celebrations, work conferences, etc.

146. Jan. 17, 2022: Mr. Gordon was booked on Allegiant Flight 4692 from Cincinnati (CVG) to LAX. Ex. 45.

147. Allegiant denied Mr. Gordon's mask exemption. *Id.*

148. He was not able to travel because he has a medical disability that does not allow him to wear a mask, and masking would have been harmful to his health. Mr. Gordon was forced to cancel his trip.

149. Jan. 18, 2022: Mr. Gordon was booked to fly Frontier Flight 2184 from Ontario (ONT) to LAS then Frontier Flight 2022 from LAS to CVG. Ex. 46.

150. Frontier denied Mr. Gordon's mask exemption. *Id.*

151. He was not able to travel because masking would have been harmful to his health. Mr. Gordon was forced to cancel his trip.

152. Plaintiff Devorah Gordon has a medical disability that does not allow her to wear a mask.

153. She has flown ten times during the pandemic and been harassed about masking, causing even more anxiety to an already stressful medical situation.

154. Feb. 10, 2021: American demanded from Mrs. Gordon to mask on Flight 2552 from Charlotte (CLT) to Newark (EWR). Ex. 47.

155. Feb. 11, 2021: American demanded from Mrs. Gordon to mask against her will on Airlines Flight 2554 from EWR to CLT. Ex. 48.

156. Aug. 23, 2021: American demanded from Mrs. Gordon to mask against her will on a flight from CLT to Little Rock (LIT). Ex. 49.

157. Aug. 23, 2021: American demanded from Mrs. Gordon to mask against her will on a flight from LIT to CLT. Ex. 50.

158. Sept. 19, 2021: American demanded from Mrs. Gordon to mask against her will on Flight 5232 from CLT to CVG. Ex. 51.

159. Sept. 20, 2021: American demanded from Mrs. Gordon to mask against her will on Flight 5352 from CVG to CLT. Ex. 52.

160.   Oct. 5, 2021: American demanded from Mrs. Gordon to mask against her will on Flight 1884 from CLT to CVG. Ex. 53.

161.   Oct. 6, 2021: American demanded from Mrs. Gordon to mask against her will on a flight from CVG to CLT.

162.   Jan. 17, 2022: Allegiant demanded from Mrs. Gordon to mask against her will on Flight 4692 from CVG to LAX. Ex. 54.

163.   Jan. 18, 2022: Frontier demanded from Mrs. Gordon to mask against her will on Flight 2184 from ONT to LAS and Flight 2022 from LAS to CVG. Ex. 55.

164.   Mask-exemption demands were sent to Allegiant and Frontier because Mrs. Gordon is medically unable to safely wear a face covering. Exs. 56 & 61.

165.   All requests were denied by Allegiant and Frontier. Ex. *Id*.

166.   Ms. Gordon felt physically, emotionally, psychologically, and spiritually ill for the duration of travel Jan. 17-18.

167.   At both the security checkpoint and boarding gate on Jan. 17, 2022, Mrs. Gordon said she has a disability that prevents her from wearing a mask safely. TSA and Allegiant asked her if she had a medical certificate from a doctor. She responded that according to law, they may not ask her for details of her disability or require her to prove her disability with a medical certificate.

168.   Frontier did not allow Mrs. Gordon to use her own mask and provided a disposable blue surgical-style mask to wear. On the wrapper it came in, it was written: "CIVIL PROTECTION, NOT MEDICAL." Ex. 57.

169.   Aboard the Allegiant aircraft, multiple threatening announcements were made that according to the "law," passengers must mask or "be kicked off the plane and/or arrested, fined and/or put in jail."

170.   Mrs. Gordon went to the lavatory without a mask on. Upon exiting, an Allegiant flight attendant immediately reprimanded her very strongly, stating that "You must wear the mask the whole time."

171.   While eating, an Allegiant flight attendant approached Mrs. Gordon and said "You have been told too many times to put the mask on." She complied with the orders of

the flight crew and fully donned the mask for the rest of the flight, even though she had not

yet finished eating and she medically can't tolerate having her breathing blocked.

172.    The Allegiant flight attendant nevertheless asked for Mrs. Gordon to

surrender her ID. When she hesitated, the Allegiant employee threatened to have the police

meet her at the arrival gate, where she "would be fined $10,000."

173.    This is a fraudulent misrepresentation by Allegiant as the TSA civil fine for

not wearing a mask is $500.

174.    When Mrs. Gordon did not comply with the request to present her

identification, the Allegiant flight attendant told her she had a choice to surrender her ID or

have the police meet her at the gate. Mrs. Gordon again chose not to surrender her ID

because she had not violated any laws. The flight attendant replied in a nasty tone "fine, so

the police will meet you at the gate."

175.    The captain of Allegiant Flight 4692 then announced on the aircraft's public-

address system "There is one passenger that is not complying with the mask rules. We will

give her one last chance and hope she will make the right choice, otherwise she will be met

at the gate by the police." The flight attendant then came back and presented her with a

written notice of the warning. Ex. 58.

176.    Allegiant fraudulently misrepresented on the notice that "Your behavior is in

violation of Title 14 of the Code of Federal Regulations." *Id*. However, the FTMM is not a

federal regulation.

177.    The notice Allegiant gave to Mrs. Gordon fraudulently threatened her with

"fines up to $25,000 and up to 20 years imprisonment, or both." *Id*.

178.    When the Allegiant flight arrived at LAX, there were two police officers who

met her at the gate. Ex. 59.

179.    Mrs. Gordon agreed to speak with them. They asked her for her ID and

warned that if she did not surrender it, the FBI could be called, she could go to jail, and

could receive a big fine. (All of which are lies since the FTMM is not a criminal law enacted

by Congress.)

180.    Mrs. Gordon eventually surrendered it, because they would not/could not give her clear information about the process when she asked, and she could not think straight with the mask on. The officers gave her ID to Allegiant and then returned it to her.

181.    It soon become clear that no laws had been violated, and the airport police could not do anything further. Mrs. Gordon removed her mask and proceeded to exit the terminal without any further incident.

182.    On return trip Jan. 18, 2022, from ONT, at the boarding gate, Frontier told her to don a mask. Mrs. Gordon informed Frontier's agent that she has a disability that does not permit her to wear a mask. Frontier informed her that this needs to be cleared in advance. Mrs. Gordon informed them that this constitutes discrimination. She demanded to speak with a supervisor.

183.    The Frontier supervisor was unable to cite any law that required her to wear a face mask. But the supervisor denied her boarding. Ex. 60.

184.    Being coerced and under threat of being prevented from returning home, Mrs. Gordon harmed her health by donning a mask against her will. Then she was permitted to board the aircraft.

185.    On the second leg of the return flight home Jan. 18 from LAS to CVG, Mrs. Gordon was again instructed by Frontier to don a mask. Several announcements were made about the policy. But on this flight, masking was not enforced, and no one seemed to notice that she did not muzzle herself. This indicates that the rules issued by Frontier are enforced arbitrarily and capriciously.

### D.    Plaintiffs Avrohom and Devorah Gordon's exhaustion of administrative remedies.

186.    Because Plaintiffs Avrohom Gordon and Devorah Gordon suffer from respiratory limitations, they are medically unable to fly masked, and cannot safely wear face coverings.

187.    Mr. and Mrs. Gordon timely filed charges for discrimination with DOT for violations of the Air Carrier Access Act. Ex. 62.

188.   DOT has failed to investigate or resolve any of their complaints.

189.   Additional flights for business and family reasons are planned in the near future to multiple destinations, which the Gordons are concerned will have to be canceled due to the FTMM and airlines' discriminatory mask policies.

**E.   The travel history of Plaintiff Cindy Russo during the COVID-19 pandemic, her future travel plans, and her disabling medical conditions that make it intolerable to cover her face.**

190.   Plaintiff Cindy Russo has not been able to travel because of the FTMM and the airlines' discriminatory mask policies because she suffers from claustrophobia and Post-Traumatic Stress Disorder ("PTSD"). She medically cannot safely wear a face mask. She has missed important personal as well as work-related events as a result.

191.   When her mouth and nose are covered, it is both mentally and physically harmful to Ms. Russo. It reminds her of a traumatic situation wherein she was trapped and couldn't breathe. It is extremely harmful for her to cover her face because it produces massive anxiety.

192.   When Ms. Russo is forced by the defendants to cover her face, she feels anxious, trapped, and starts to profusely sweat. Her heart races and her head pounds.

193.   Her doctor has provided to her an exemption from wearing a mask. Ex. 63.

194.   Ms. Russo has flown eight times during the pandemic and been harassed about masking, causing even more anxiety to an already stressful medical situation.

195.   Sept. 22, 2021: United forced Ms. Russo to mask against her will on Flight 5655 from Burbank (BUR) to SFO. Ex. 64.

196.   Sept. 22, 2021: United forced Ms. Russo to mask against her will on Flight 1419 from SFO to EWR. Ex. 65.

197.   Sept. 29, 2021: American forced Ms. Russo to mask against her will on Flight 802 from EWR to Dallas (DFW). Ex. 66.

198.   Sept. 29, 2021: American forced Ms. Russo to mask against her will on Flight 2597 from DFW to BUR. Ex. 67.

199.    Ms. Russo submitted a mask-exemption demand to United on Oct. 14, 2021, for an upcoming trip, noting United's numerous illegal policies. Ex. 68.

200.    United denied Ms. Russo's mask-exemption demand. Ex. 69.

201.    Oct 28, 2021: United forced Ms. Russo to mask against her will on United Flight 5655 from BUR to SFO. Ex. 70.

202.    Oct. 28, 2021: United forced Ms. Russo to mask against her will on United Flight 2324 SFO to EWR. *Id*.

203.    Nov. 1, 2021: United forced Ms. Russo to mask against her will on Flight 414 from EWR to SFO. Ex. 71.

204.    Nov. 1, 2021: United forced Ms. Russo to mask against her will on Flight 1980 from SFO to Orange County (SNA). *Id*.

**F.    Plaintiff Cindy Russo's exhaustion of administrative remedies.**

205.    Mask-exemption demands were sent to United and American because Ms. Russo cannot tolerate masking due to her medical conditions.

206.    All requests were denied and she was forced to muzzle herself. Ms. Russo felt physically, emotionally, psychologically and spiritually ill for the entire duration of travel.

207.    Ms. Russo filed a complaint for discrimination against United with DOT for violations of the Air Carrier Access Act. Ex. 72.

208.    DOT has failed to investigate or resolve her complaint.

209.    Additional flights for business and family reasons are planned in the near future to multiple destinations, which Ms. Russo is concerned she will have to cancel due to the FTMM and airlines' discriminatory mask policies.

**G.    Federal Transportation Mask Mandate**

210.    **PRESIDENTIAL ACTION:** The day after taking office (Jan. 21, 2021), President Joseph Biden issued "Executive Order Promoting COVID-19 Safety in Domestic & International Travel." E.O. 13998, 86 Fed. Reg. 7205 (Jan. 26, 2021); Ex. 102. This

1    executive order set in motion the FTMM issued by CDC and HHS as well as other federal

2    agencies.

3        211.    President Biden's action marked an abrupt change of policy from the former

4    administration. DOT "in October [2020] rejected a petition to require masks on airplanes,

5    subways, and other forms of transportation, with Secretary Elaine Chao's general counsel

6    saying the department 'embraces the notion that there should be no more regulations than

7    necessary.'" Ex. 103.

8        212.    "The nation's aviation regulator has deferred to airlines on masks, with

9    Federal Aviation Administration chief Stephen Dickson telling senators at a June [2020]

10   hearing 'we do not plan to provide an enforcement specifically on that issue.'" *Id.*

11       213.    **DHS ACTION**: To carry out E.O. 13998, the Department of Homeland

12   Security ("DHS") issued Determination 21-130 on Jan. 27, 2021: "Determination of a

13   National Emergency Requiring Actions to Protect the Safety of Americans Using &

14   Employed by the Transportation System." Ex. 104.

15       214.    DHS directed its agency TSA to take actions to enforce CDC's FTMM order.

16   *Id.*

17       215.    **CDC ACTION**: Without providing public notice or soliciting comment,

18   CDC – an agency within HHS – issued an order "Requirement for Persons to Wear Masks

19   While on Conveyances & at Transportation Hubs" on Feb. 1, 2020, effective immediately.

20   86 Fed. Reg. 8,025 (Feb. 3, 2021). Ex. 105. This is the mask mandate we challenge in this

21   Complaint.

22       216.    "This Order will remain in effect unless modified or rescinded based on

23   specific public health or other considerations, or until the Secretary of Health and Human

24   Services rescinds the determination under section 319 of the Public Health Service Act (42

25   U.S.C. 247d) that a public health emergency exists." *Id.*

26       217.    As authority for the FTMM, CDC invoked § 361 of the Public Health Service

27   Act (42 USC § 264) and CDC regulations implementing that statute (42 CFR §§ 70.2,

28   71.31(b), & 71.32(b)). *Id.*

29

218.    CDC's FTMM order applies to wholly intrastate transportation, including taking a rideshare, city bus, subway, or other mode of transit less than one mile – or even just sitting alone at a bus stop or train station reading a newspaper or talking on a cell phone without any intent to travel. *Id.*

219.    "This Order exempts the following categories of persons: • A child under the age of 2 years; • A person with a disability who cannot wear a mask, or cannot safely wear a mask, because of the disability as defined by the Americans with Disabilities Act … This is a narrow exception that includes a person with a disability who cannot wear a mask for reasons related to the disability." *Id.*

220.    "Operators of conveyances or transportation hubs may impose requirements, or conditions for carriage, on persons requesting an exemption from the requirement to wear a mask, including **medical consultation by a third party**, **medical documentation by a licensed medical provider**, and/or other information as determined by the operator, as well as **require evidence that the person does not have COVID–19 such as a negative result from a SARS–CoV–2 viral test or documentation of recovery from COVID–19**. … Operators may further require that persons seeking exemption from the requirement to wear a mask **request an accommodation in advance**." *Id.* (emphasis added to show provisions that violate the ACAA).

221.    CDC's FTMM order makes no mention of the ACAA (49 USC § 41705) or the regulations promulgated thereunder (14 CFR Part 382).

222.    "This Order applies to persons on conveyances and at transportation hubs **directly operated by U.S. state**, local, territorial, or tribal **government authorities**, as well as the operators themselves. **U.S. state**, local, territorial, or tribal **government authorities directly operating conveyances and transportation hubs may be subject to additional federal authorities or actions**, and are encouraged to implement additional measures enforcing the provisions of this Order regarding persons traveling onboard conveyances and at transportation hubs operated by these government entities." *Id.* (emphasis added to illustrate 10th Amendment problems).

223.    CDC's FTMM order makes numerous false claims about the effectiveness of face coverings. *Id.*

224.    The order fails to note that the scientific consensus for decades has been that face masks do not reduce the transmission of respiratory viruses and that covering one's face causes at least 68 harms to human health. See 228 scientific studies, medical articles, and videos at https://bit.ly/masksarebad.

225.    CDC's FTMM order contradicts numerous World Health Organization recommendations and standards, including that children under six should never wear masks. Ex. 106.

226.    "Individuals traveling into or departing from the United States, traveling interstate, **or traveling entirely intrastate**, conveyance operators that transport such individuals, and transportation hub operators that facilitate such transportation, must comply with the mask-wearing requirements set forth in this Order." *Id.* (emphasis added to illustrate 10th Amendment problem).

227.    Without citing any authority allowing it to delegate its supposed statutory and regulatory authority to an agency contained in a department outside of HHS, CDC's order includes a provision that "To address the COVID-19 public health threat to transportation security, this Order shall be enforced by the Transportation Security Administration…" *Id.*

228.    On its website, CDC falsely claims, "Most people, including those with disabilities, can tolerate and safely wear a mask..." Ex. 107.

229.    **TSA ACTIONS**: Based on CDC's questionable delegation of its authority to an agency contained in a separate executive department, TSA issued three "Security Directives" (more accurately labeled "Health Directives") and one Emergency Amendment Feb. 1, 2021, to transportation operators requiring them to vigorously enforce the mask mandate. These four orders were effective until May 11, 2021, and have been renewed four times until April 18, 2022.

230.    Plaintiff Uri Marcus is part of a group of 13 disabled Americans challenging TSA's three Health Directives and one Emergency Amendment enforcing CDC's FTMM order. There are six Petitions for Review currently before the U.S. Court of Appeals for the

District of Columbia Circuit: *Wall v. TSA*, No. 21-1220; *Faris v. TSA*, No. 21-1221; *Marcus v. TSA*, No. 21-1225; *Eades v. TSA*, No. 21-1236; *Andreadakis v. TSA*, No. 21-1237; and *Abadi v. TSA*, No. 21-1258.

231.    These cases have been consolidated into *Wall v. TSA*. Petitioners' joint opening brief is due April 11.

**H.    Congress has never enacted a mask mandate**

232.    CDC and HHS' imposition of the FTMM goes against the express wishes of Congress. The Legislative Branch has explicitly failed to mandate masks in any setting, including the transportation sector. This shows clear, unambiguous congressional intent.

233.    The federal legislative response to corona virus has been enormous with dozens of bills related to the COVID-19 pandemic enacted into law.

234.    Not a single provision in any of the enacted bills grant CDC and HHS the authority to require face masks.

235.    Numerous bills have been introduced in Congress to require masks in the transportation sector. None have been passed out of committee in either chamber.

236.    On March 15, 2022, the Senate voted 57-40 to pass Senate Joint Resolution 37 disapproving of CDC's FTMM order. Ex. 108.

**I.    CDC and HHS ignore better options than imposing the FTMM**

237.    The Federal Defendants have not used more-effective options than the FTMM to reduce COVID-19 infections in the transportation sector.

238.    For example, in June 2007, CDC and HHS developed a public-health Do Not Board ("DNB") list, enabling domestic and international health officials to request that individuals with communicable diseases be restricted from boarding commercial aircraft arriving into, departing from, or traveling within the United States.

239.    CDC published a notice more than six years ago concerning the "Criteria for Requesting Federal Travel Restrictions for Public Health Purposes, Including for Viral Hemorrhagic Fevers." 18 Fed. Reg. 16,400 (March 27, 2015); Ex. 109.

240.    There also exists a complimentary Public Health Border Lookout Record ("Lookout") system for individuals with communicable diseases that pose a public-health threat to travelers to restrict them from boarding commercial aircraft arriving into, departing from, or traveling within the United States. *Id.*

241.    Once an individual is placed on the DNB list, airlines are instructed not to issue a boarding pass to the individual for any commercial flight. Individuals included on the DNB list are assigned a Lookout record that assists in ensuring that an infected individual is detected if he or she attempts to enter or depart the United States through a port of entry. *Id.*

242.    "Disease is just a flight away. To protect America's health, CDC partners with the Department of Homeland Security to prevent the spread of serious contagious diseases during travel. CDC uses a Do Not Board list to prevent travelers from boarding commercial airplanes if they are known or suspected to have a contagious disease that poses a threat to the public's health. Sick travelers are also placed on a Lookout list so they will be detected if they attempt to enter the United States by land or sea. These tools can be used for anyone who poses a threat to the public's health." Ex. 110.

243.    But there is no evidence in the administrative record, media reports, or anywhere else that the Federal Defendants are using the DNB list and Lookout system to stop people who have tested positive for COVID-19 from traveling during the time they are a danger to spread the virus to others (typically considered to be about 10 days).

**J.    The Federal Defendants and Airline Defendants ignore that mask mandates endanger aviation safety.**

244.    Plaintiff Uri Marcus is an FAA certificated commercial multi-engine instrument airplane pilot and flight instructor. Exs. 27-29.

245.    A Pilots' health is strictly governed by regulations issued by the Federal Aviation Administration. Ex. 111.

246.    Pilots are prohibited from operating an aircraft during any period of medical deficiency. However, they are required to comply with the FTMM, which causes known

medical deficiencies. "[N]o person who holds a medical certificate issued under part 67 of this chapter may act as pilot in command, or in any other capacity as a required pilot flight crewmember, while that person: … (1) Knows or has reason to know of any medical condition that would make the person unable to meet the requirements for the medical certificate necessary for the pilot operation…" 14 CFR § 61.53(a).

247.   Wearing a mask before and during flight causes Mr. Marcus numerous medical deficiencies, whether he is acting as Pilot-in-Command or otherwise. "[A] person shall not act as pilot in command, or in any other capacity as a required pilot flight crewmember, while that person knows or has reason to know of any medical condition that would make the person unable to operate the aircraft in a safe manner." 14 CFR § 61.53(b).

248.   Wearing a mask before and during flight causes Mr. Marcus to feel that he is unable to operate the aircraft in a safe manner.

249.   Wearing a mask before the flight (for example, while in an airport terminal) makes Mr. Marcus feel like he is not fully prepared to perform as a pilot due to fatigue.

250.   "Extended wearing of [a] mask, which has become a part of routine life, has led to the emergence of 'mask fatigue.' Mask fatigue is defined as the lack of energy that accompanies, and/or follows prolonged wearing of a mask." Ex. 201.

251.   Forced masking "is considered as an impediment to professional work as well. This is because of the newly emerging condition, mask fatigue." *Id.*

252.   "We define mask fatigue as the lack of energy that accompanies, and/or is a consequence of extended use of a mask." *Id.*

253.   "There is published evidence which shows that extended wearing of mask impairs functioning…" *Id.*

254.   Aspects of mask fatigue include pressure/pain over ears, cheeks, and nose; skin breakdown; aggravation of acne; itching; contact dermatitis; voice fatigue; laryngitis; sore throat; respiratory compromise; Hypoxia; Hypercapnia; increased work of breathing; dizziness; headache; irritability; physical exhaustion; decreased concentration/work efficiency; confusion and disorientation; breathlessness; reduced fluid and food intake; chronic health effects on renal and metabolic functions; aggravation of anxiety, depression,

and feeling of impending doom; claustrophobia; impaired social interaction/recognition; and maskophobia. *Id.*

255.   "The consequences of a negligent or wrongful certification, which would permit an unqualified person to take the controls of an aircraft, can be serious for the public...," according to FAA's Guide for Aviation Medical Examiners. Ex. 111.

256.   All active pilots must see an FAA certified doctor ("Aviation Medical Examiner" or "AME") 1-2 times each year. Pilots are all obligated by law (49 USC § 46310, which imposes criminal penalties) to disclose any disqualification condition pertaining to obtaining or maintaining their medical certificate. If a pilot knows that masks are unhealthy for him and their continued use can cause cumulative harm (as evidenced by years of unbiased scientific studies prior to COVID-19 politicization), s/he is morally and legally obligated to abstain and/or report.

257.   However, the FTMM forces pilots not to disclose any disqualification condition due to the ill effects of forced masking.

258.   The FTMM forces a pilot to obstruct his oxygen intake, causing diminished mental and physical capacity during any flight, including recurrent training flights.

259.   Masking impairs a pilot's ability when conducting any flight as evidenced by the fact that they are not, per FAA rules, required to wear a mask in the cockpit when flying.

260.   DOT, which includes FAA, notes that "the failure to wear a face covering is not itself a federal violation," contradicting the FTMM. Ex. 111.

261.   FAA recognizes the dangers of forced masking: "Air carriers should complete a safety risk assessment and provide guidance to their crewmembers on procedures for the use of masks as they may affect the donning of oxygen masks or conducting other safety functions on the flight deck or in the cabin." FAA Safety Alert for Operators 20,009 (May 25, 2021); Ex. 112.

**K.   The Federal Defendants and Airline Defendants ignore that mask mandates have created chaos in the sky.**

262.    The defendants fail to take into account that in addition to the millions of Americans who can't safely obstruct their breathing because of a medical condition, tens of millions of Americans vehemently object to anyone ordering them to wear face masks. This is evidenced by some 5,981 incidents of "unruly" behavior aboard airplanes reported to the Federal Aviation Administration during 2021, 4,290 of which related to the FTMM. Ex. 113.

263.    2021 "was the worst year on record for buffoonish behavior on planes." Ex. 301.

264.    So far this year, FAA has received 814 reports of unruly passengers, 535 of which related to the FTMM. Ex. 114.

265.    This conduct is understandable since the Food, Drug, & Cosmetic Act protects all Americans' right to refuse administration of an FDA unauthorized or EUA medical device such as a face covering, and masks make it difficult to breathe and function.

266.    The FTMM worsens transportation safety as some people violently stand up for their right to breathe freely, and many flight crews have sadly become increasingly hostile to any passenger who dares remove his/her mask for any reason.

267.    "'The number of physical and verbal assaults in our workplace has increased dramatically, many of which are related to mask compliance,' TWU Local 556, which represents Southwest's flight attendants, wrote in a letter." Ex. 302.

268.    "Despite coming with hefty fines and the threat of criminal prosecution, the [FTMM] has spawned an epidemic of shouting matches – and worse – between defiant passengers and flight crews. … But if airlines are the last place in America to require masks, the skies are likely to become even less friendly for flight crews." Ex. 301.

269.    "[T]he level of in-flight fracas has gotten exponentially worse in the past two years, with most cases involving disputes over masking." *Id*.

270.    Airplanes, airports, and other transportation conveyances and terminals are now among the last places in America where anyone is forced to block their breathing.

271.    Chaos in the sky is likely to soon get worse. "Imagine the fury among anti-mask passengers if the federal government continues to enforce a mask requirement on

airlines into the late spring and even the summer, when no one's making people mask up anywhere else. … Should the mask mandate continue into the summer and beyond, airlines could expect the bad behavior to increase, as customers grow accustomed to going maskless everywhere else." *Id.*

272.   There are numerous videos posted to YouTube of in-flight conflicts between flight crews and passengers over the illegal mask mandates. A small sample of these videos is listed at Ex. 303.

273.   "The current climate in the passenger cabin is highly stressed. We are experiencing a record high number of aggressive passenger incidents, many of which are fueled by … refusal to comply with onboard mask rules," the president of a major flight-attendant union said Dec. 24, 2021. Ex. 304.

274.   All of the "unruly" behavior we've seen aboard airplanes when airlines try to enforce the FTMM is explained by science, none of which the defendants considered: "Wearing masks, thus, entails a feeling of deprivation of freedom and loss of autonomy and self-determination, which can lead to suppressed anger and subconscious constant distraction, especially as the wearing of masks is mostly dictated and ordered by others. These perceived interferences of integrity, self-determination and autonomy, coupled with discomfort, often contribute to substantial distraction and may ultimately be combined with the physiologically mask-related decline in psychomotoric abilities, reduced responsiveness, and an overall impaired cognitive performance." Ex. 202.

275.   Being forced to cover the nose and mouth, a person's only two sources of oxygen – breathing is of course essential to maintaining life – "leads to misjudging situations as well as delayed, incorrect, and inappropriate behavior and a decline in the effectiveness of the mask wearer." *Id.*

276.   "The use of masks for several hours often causes further detectable adverse effects such as headaches, local acne, mask-associated skin irritation, itching, sensations of heat and dampness, impairments, and discomfort predominantly affecting the head and face. However, the head and face are significant for well-being due to their large representation in the sensitive cerebral cortex (homunculus)." *Id.*

277.   "[P]assengers have verbally abused and taunted flight attendants trying to enforce airline mask requirements…" Ex. 305.

278.   "A flight attendant reported being so busy seeking mask compliance that the employee couldn't safely reach a seat in time for landing. One airline captain, distracted by mask concerns, descended to the wrong altitude. The repeated talk of problem passengers in Row 12 led the captain to mistakenly head toward 12,000 feet, not a higher altitude given by air traffic control to keep planes safely apart." *Id.*

279.   But passengers are allowed to drop their masks to eat and sip beverages, negating any possible positive impact of forced masking. "When you start opening it up to eating, the whole thing kind of weakens." *Id.*

280.   "Flight attendants are dealing with mask compliance issues on every single flight they work right now." *Id.*

281.   "The Federal Aviation Administration is warning air travelers about what it describes as a dramatic increase in unruly or dangerous behavior aboard passenger airplanes." Ex. 306.

282.   "It is no secret that the threats flight attendants face each day have dramatically increased," states a letter from Julie Hedrick, president of the Association of Professional Flight Attendants. "Every day, we are subjected to verbal and sometimes physical altercations, mainly centered around mask compliance." Ex. 307.

283.   "Airlines and federal officials have noted an uptick in passenger misbehavior. Flight attendant union leaders have attributed much of the uptick in passengers refusing to wear masks …" *Id.*

284.   "President Joe Biden made a federal face mask rule on planes one of his first executive orders after he took office. But passenger misbehavior has continued throughout the year despite numerous fines against passengers proposed by the FAA." *Id.*

285.   May 28, 2021: "Incidents of unruly behavior from airplane passengers has risen to an unprecedented level this year, union leader Sara Nelson told CNBC on Friday, the start of the Memorial Day holiday weekend. 'This is an environment that we just haven't

seen before, and we can't wait for it to be over,' the president of the Association of Flight Attendants-CWA said … She noted the role masks are playing in the surge…" Ex. 308.

286.   Carrying out mask rules also worsens the already strained position of flight attendants, who are frontline enforcers even as they keep their usual safety responsibilities. "Flight attendants are dealing with mask compliance issues on every single flight they work right now," said Taylor Garland, spokeswoman for the Association of Flight Attendants-CWA, noting that those efforts range from friendly reminders to facing passengers "actively challenging the flight attendants' authority." *Id.*

287.   "One in five flight attendants so far this year has been involved in physical altercations with unruly passengers and 85% of cabin crew members have dealt with disruptive passengers this year…" Ex. 309.

288.   "[M]any flight attendants reported … being subjected to yelling and swearing for federal mask mandate directions." *Id*.

289.   The FTMM has "proven problematic. Physical confrontations on airplanes have dramatically increased this year, and of the 3,000+ that have been recorded by the Federal Aviation Administration so far in 2021, nearly three-quarters of them have been a direct result of arguments over wearing a face mask – whether between crew members and passengers, or passengers vs. passengers." Ex. 310.

290.   "My fear, however, is that the mandate is going to someday cause a far bigger problem while in the air than just some unruly passenger being eventually duct-taped to a seat. One of these days, a confrontation is going to escalate far further than the crew member who had a finger bitten or the flight attendant who caught an errant punch square in the face and had two teeth knocked out. Ask yourself, is it worth it to have a mandate that ostensibly is for your safety but only leads further to unsafe conditions?" *Id*.

291.   The defendants' reckless continual enforcement of the FTMM has led to "a surge in aggressive and violent behavior at airports and on flights…" Ex. 311.

292.   "The system for keeping the peace in America's skies is creaking under the pressure of what airlines and regulators say is an unprecedented proliferation of

misbehavior. … As travel rebounds, that structure is being strained by hostility to mask mandates…" Ex. 312.

293.    "Even if not intended to bring the plane down, you can imagine the kind of pandemonium on planes that we've seen in some of these videos that people have taken that can cause an incredibly dangerous accident," said U.S. Attorney General Merrick Garland." *Id*.

294.    These incidents would vanish if this Court vacates the FTMM and enjoins the Airline Defendants from mandating masks.

295.    "The FAA has seen a disturbing increase in incidents where airline passengers have disrupted flights with threatening or violent behavior. These incidents have stemmed … from passengers' refusals to wear masks…" Ex. 115.

296.    "The tense situation in the air this summer has led many attendants to say that they feel exhausted, afraid for their personal safety and, in some cases, concerned that the situation could turn dangerous." Due to the unlawful mask mandate, "encountering unruly passengers, once rare, is now almost expected." Ex. 313.

297.    "Flight attendants across many airlines say the situation is wearing on their mental health and physical well-being," which is dangerous for aviation safety. *Id*.

298.    Major airlines having been calling for the abolition of the FTMM for the past 10 months.

299.    Frontier CEO Barry Biffle said June 23, 2021, that face coverings are a prime contributor to a string of recent in-flight disruptions: "The reality is, a lot of people don't want to wear masks," Biffle said. "You don't have to wear a mask here [at the convention], you don't have to wear [masks] at Walmart, but yet you've got to do it on a plane." Ex. 401.

300.    Spirit CEO Ted Christie also said June 23, 2021, that the U.S. government can help reduce the incidence of unruly air passenger behavior by doing away with the requirement that travelers wear face coverings: "That's got to be the next step – when facial [covering requirements] are relaxed on airplanes," Christie said. "That is going to take a lot of steam out of things." *Id*.

301.    Southwest's then-CEO Gary Kelly and Airlines for America, the trade group representing most major U.S. carriers, lobbied for the FTMM to terminate Sept. 13, 2021. Exs. 402-404.

302.    With mask mandates "in place, there has been a rise in onboard incidents that have harmed flight attendants, delayed or cancelled flights … When this atmosphere is combined with tensions around mask policy, we have seen a summer with more onboard skirmishes and more people injured than ever before," wrote Ben Baldanza, former CEO of Spirit Airlines. Ex. 405.

303.    "[T]he root cause of most of these incidents has been the mandated mask policy. It's not the policy itself, but the inconsistency of that policy with other parts of life. While many of us may be able to clearly understand why we must wear a mask on a plane but don't have to in restaurant, to others this makes no sense. Put that view in the stressful and emotional environment of an airline flight and the results we've seen this summer are not totally surprising." *Id.*

304.    "[L]etting the [mask] mandate expire would lower the tensions onboard significantly and greatly reduce the number of potentially dangerous confrontations that flight attendants must face." *Id.*

## L.   The Airline Defendants ignore better options than imposing unlawful and discriminatory mask mandates.

305.    The Airline Defendants have more effective tools to combat COVID-19 spread than requiring their passengers be muzzled (and refusing to grant medical exemptions). However, the defendants have not worked to implement these better procedures to reduce infections in the transportation sector.

306.    There's no evidence that the airlines have sought the government's cooperation in using existing federal procedures that actually target the sick.

307.    For example, the Airline Defendants have not worked with the Federal Defendants to use the public-health DNB and Lookout lists to prevent passengers who have recently tested positive for COVID-19 from flying.

308.    If the Airline Defendants truly care about preventing COVID-19 transmission on their planes, they would work with CDC, HHS, DHS, TSA, and other federal agencies to use the DNB and Lookout systems. Instead, they illegally treat every single passenger as having the corona virus and mandating they wear masks in defiance of the science that face coverings do nothing to prevent COVID-19 infections and deaths but harm human health. https://bit.ly/masksarebad.

309.    It appears Frontier is the only airline using a simple mitigation strategy that doesn't discriminate against anyone who isn't actually ill: "Frontier is the first U.S. airline to take passengers' temperatures with a touchless thermometer before boarding, and will block anyone with a temperature of 100.4 F or higher from flights." Ex. 406.

310.    It's a mystery why the other Airline Defendants don't appear to be utilizing this simple measure to check for fevers (a key symptom of COVID-19) before check in or boarding.

**M.   The Federal Defendants and Airline Defendants fail to take into account that airplane cabins pose little risk for corona virus spread.**

311.    There's nothing in the administrative record showing that CDC and HHS considered the ample evidence provided by the aviation industry and others that masks aren't necessary and do nothing to reduce COVID-19 spread.

312.    U.S. air carriers commissioned a lengthy report "Assessment of Risks of SARS-CoV-2 Transmission During Air Travel & Non-Pharmaceutical Interventions to Reduce Risk" by the Harvard T.H. Chan School of Public Health as part of the Aviation Public Health Initiative ("APHI"). Ex. 203.

313.    This is yet another scientific/medical study the Federal Defendants ignored when promulgating the FTMM without any public notice or comment period.

314.    "Ventilation Systems on Aircraft: These sophisticated systems deliver high amounts of clean air to the cabin that rapidly disperses exhaled air, with displacement in the downward direction, reducing the risk of passenger-to-passenger spread of respiratory pathogens. Aircraft ventilation offers enhanced protection for diluting and removing

airborne contagions in comparison to other indoor spaces with conventional mechanical ventilation and is substantially better than residential situations. This level of ventilation effectively counters the proximity travelers will be subject to during flights. The level of ventilation provided onboard aircraft would substantially reduce the opportunity for person-to-person transmission of infectious particles…" *Id.*

315.    "Particular emphasis is placed on the effectiveness of aircraft ventilation systems, which are able to filter 99.97% of SARS-CoV-2 particles out of air found on aircraft." *Id.*

316.    The study confirms what the airlines themselves have been promoting to customers: There is little-to-no risk of contracting COVID-19 aboard an aircraft. "After detailed analysis of these reports, ***it is the view of APHI that there have been a very low number of infections that could be attributed to exposure on aircraft during travel.***" *Id.* (emphasis added).

317.    CDC itself admitted ***"the risk of getting a contagious disease on an airplane is low."*** *Id.* (emphasis added).

318.    "A significant finding from the evaluation of these evacuation flight procedures [from China early in the pandemic] was that there was no COVID-19 infection among any of the air medical crews, despite the exposure to numerous positive cases." *Id.*

319.    "Given the volume of commercial flights daily, carrying millions of passengers and crew worldwide, ***the number of documented incidents of infectious disease transmission occurring on board an aircraft remains infrequent.***" *Id.* (emphasis added).

320.    "Based on the investigations of outbreaks of other respiratory diseases on aircraft, it appears that transmission on aircraft is relatively infrequent." *Id.*

321.    "Air recirculation happens mostly when cruising, where about 40% to 50% of the cabin air is recirculated and filtered through a high-efficiency particulate air filter, also known as a HEPA filter. All the airlines interviewed have aircraft that are equipped with HEPA filters, and one of the airlines has increased the replacement frequency of their HEPA filters." *Id.*

322.   "The HEPA filters remove, at a minimum, 99.97% of the particulate matter from the return air. This high level of filtration ensures that the air supplied to the cabin is virtually free of particulate matter, including bacteria and viruses." *Id.*

323.   "Aircraft meeting current ventilation standards with 50% recirculation HEPA-filtered air will supply passengers with a clean air delivery rate of 19 cfm/person, which is essentially free of any virus particles." *Id.*

324.   "[T]he risk of SARS-CoV-2 transmission onboard aircraft will be below that found in other routine activities during the pandemic, such as grocery shopping or eating out." *Id.*

325.   "[T]he aircraft's environmental control systems effectively diluting and removing pathogens significantly reduce the risk of passengers and crewmembers from acquiring COVID-19 during the cruise segment of their journey." *Id.*

326.   American's and Southwest's CEOs testified to a Senate committee Dec. 15, 2021, that masks do not reduce the spread of COVID-19 and airplane cabins are already safe because of their excellent air filtration and recirculation. Ex. 407.

327.   Airlines for America, the airline industry's largest trade group representing nearly all major U.S. airlines, joined in a Feb. 25, 2021, letter to the White House again urging repeal of the FTMM. Ex. 408.

328.   "By March 18, repeal the Federal mask mandate for public transportation or provide a clear roadmap to remove the mask mandate within 90 days. ... Airplanes are already equipped with advanced air filtration systems, and airports have made large investments in air filtration, sanitation, and layouts. COVID-19 hospitalization rates have decreased significantly and ***the mask mandate should be lifted*** to reflect the improved public health environment." *Id*. (emphasis added).

329.   "[M]any of these same policies also came with the ***devastating*** ... consequences of severely limiting and discouraging travel. ... Since the start of the pandemic, the federal government's advisories, policies, and public messaging have focused on discouraging or actively restricting domestic and international travel. It is time for high-level officials within the Administration to publicly encourage travel to and within the U.S.

Doing so would send a clear message to U.S. businesses, trading partners, and travelers alike that America is once again open for business." *Id.* (emphasis added).

330.    "[W]e encourage the Administration to immediately remove travel requirements that no longer fit with the current environment and to set clear timelines and metrics for when others will be lifted," including the mask mandate. *Id.*

331.    When President Biden, CDC, HHS, TSA, and others refused to let the FTMM expire March 18, Airlines for America fired off another letter to him March 23, 2022: "We are encouraged by the current data and the lifting of COVID-19 restrictions from coast to coast, which indicate it is past time to eliminate COVID-era transportation policies. … much has changed since these measures were imposed and they no longer make sense in the current public health context. The persistent and steady decline of hospitalization and death rates are the most compelling indicators that our country is well protected against severe disease from COVID-19." Ex. 409.

332.    "**Now is the time for the Administration to sunset federal transportation travel restrictions – including the international predeparture testing requirement and the federal mask mandate – that are no longer aligned with the realities of the current epidemiological environment**." *Id.* (emphasis original).

333.    The International Air Transport Association ("IATA") – which represents more than 290 international airlines including six of the largest U.S. passenger carriers – has called for an end to mask mandates aboard airplanes worldwide. Travel restrictions such as the FTMM "have had such a devastating impact on lives, economies, and the freedom to travel," said Willie Walsh, IATA's director general. Ex. 410; *see also* Ex. 411.

334.    "The past few weeks have seen a dramatic shift by many governments around the world to ease or remove COVID-19-related travel restrictions and requirements as the disease enters its endemic phase. It's vital that this process continue and even accelerate, to more quickly restore damaged global supply chains and enable people to resume their lives. ***One step to encourage a return to normality is to remove mask mandates for air travel. It makes no sense to continue to require masks on airplanes*** when they are no longer being required in shopping malls, theatres or offices. Aircraft are equipped with highly

sophisticated hospital quality filtration systems and have much higher air flow and air exchange rates than most other indoor environments where mask mandates already have been removed." Ex. 410 (emphasis added).

335.   "[T]he international airline industry has been significantly harmed by COVID-19 and the myriad government responses to the virus. While we have begun to see signs of a recovery, the industry today has nearly 50% less passenger traffic than it did prior to COVID-19…" Mr. Walsh of IATA wrote the White House on March 8, 2022. Ex. 412.

336.   "We urge the Biden Administration not to renew its mask mandate for transportation when it lapses on March 18, 2022. It makes no sense to continue to require masks on airplanes when they are no longer being required in shopping malls, theatres or offices. *Aircraft are equipped with highly sophisticated hospital quality filtration systems and have much higher air flow and air exchange rates than most other indoor environments where mask mandates already have been removed*." *Id.* (emphasis added).

337.   IATA notes on its website that "The risk of transmission in the modern cabin environment is low for a number of reasons: passengers face the same direction, seatbacks act as barriers, air flow is from the top to bottom, and the air is also very clean. Cabin air is refreshed 20-30 times an hour; About 10 times more than most office buildings." Ex. 211.

338.   "Most modern jet aircraft are equipped with High-Efficiency Particulate Air (HEPA) filters. These filters have similar performance to those used in hospital operating theatres and industrial clean rooms." *Id.*

339.   The bacteria/virus removal efficiency rate of the HEPA filters onboard planes is 99.993%, including removal of SARS, which is similar to COVID-19. *Id.*

340.   The U.S. Department of Defense's Transportation Command conducted a study in October 2020 that found "aerosol particles were 'rapidly diluted by the high air exchange rates' of a typical aircraft cabin. Aerosol particles remained detectable for a period of less than six minutes on average. Both aircraft models (B777 and B767) tested removed particulate matter 15 times faster than a typical home ventilation system and 5-6 times faster 'than the recommended design specifications for modern hospital operating or patient isolation rooms.'" *Id.*

341.    "Airbus used computational fluid dynamics (CFD) research to create a highly accurate simulation of the air in an A320 cabin, to see how droplets resulting from a cough move within the cabin airflow. … The result was that potential exposure was *lower* when seated side by side on a plane than when staying six feet apart in an environment such as an office, classroom or grocery store." *Id.* (emphasis original).

342.    "Using CFD, Boeing researchers tracked how particles from coughing and breathing move around the airplane cabin. … The modeling determined the number of cough particles that entered the breathing space of the other passengers. Based on the airborne particle count, passengers sitting next to one another on an airplane is the same as standing more than seven feet (or two meters) apart in a typical building environment." *Id.*

343.    "Using CFD, cabin air flow and droplet dispersion models validated in full-scale cabin environment testing, Embraer analyzed the cabin environment considering a coughing passenger in several different seats and air flow conditions in our different aircraft to measure these variables and their effect. The research Embraer completed shows that risk of onboard transmission is extremely low, and the actual data on in-flight transmissions that may have occurred, supports these findings." *Id.*

344.    As major U.S. airlines just told the president March 23: "It makes no sense that people are still required to wear masks on airplanes, yet are allowed to congregate in crowded restaurants, schools and at sporting events without masks, despite none of these venues having the protective air filtration system that aircraft do." Ex. 409.

**N.    All defendants fail to take into account the voluminous scientific and medical research showing masks are totally ineffective in reducing COVID-19 transmission.**

345.    The CDC official responsible for the FTMM admitted masks are worthless and are just for show: "[W]e mask because it's the way we take care and express our concern for each other," said Marty Cetron, director of CDC's Division of Global Migration & Quarantine. Ex. 116.

346.    There's nothing in the administrative record showing that CDC and HHS considered the robust scientific and medical evidence documenting how masks are totally ineffective in reducing COVID-19 infections, hospitalizations, and deaths. *See* https://bit.ly/masksarebad for 228 scientific studies, medical articles, and videos detailing how masks do not reduce virus transmission but hurt human health. A sampling of these studies are quoted below.

347.    A study released May 25, 2021, by the University of Louisville found state mask mandates didn't help slow COVID-19 transmission. Ex. 204.

348.    Mask manufacturers themselves admit their products are "not for medical use," "cannot eliminate the risk of contracting an infectious disease," "are not personal protective equipment," and "are not intended … to prevent any disease or illness." Exs. 205-206 (photographs of various masks for sale).

349.    The federal government's experience confirms masks aren't effective, data that CDC and HHS failed to consider. TSA admits that, as of March 13, 2022, 22,297 of its employees[3] – all of whom must wear masks – have tested positive for COVID-19. Ex. 117.

350.    CDC and HHS fail to answer a simple question: "If masks are effective, why have so many TSA workers contracted COVID-19?"

351.    During the surge of the Omicron corona virus variant during the winter holiday season of 2021-22, masks did not do anything to stop thousands and thousands of airline workers from getting infected, causing massive disruptions to the nation's air transportation system. Exs. 531-538.

352.    Wearing a cloth mask does not shield the user from corona virus because too many infected droplets can slip through, according to a study by scientists at New Mexico State University. Ex. 207.

---

[3] Since about half of those infected with COVID-19 don't have symptoms and might not realize they are infected, health authorities indicate that the real prevalence of the virus is typically at least double the number of cases confirmed by testing. TSA admits 22,297 of its workers have tested positive for corona virus (34% of its employees). Ex. 117. This means that some 44,594 TSA workers, an astounding two-thirds of its workforce of 65,000, have likely had corona virus. Yet they all have been forced to wear masks for more than 1½ years. So how exactly are masks effective in stopping COVID-19?

353.    Masks can't be worn while transportation passengers are eating and drinking, thereby eliminating any effectiveness they might have in reducing virus transmission from infected travelers.

354.    One of the first real-world studies to conclude that face masks don't reduce COVID-19 infections was published in November 2020 by Danish scientists. The study divided thousands of Danish into groups of mask-wearers and non mask-wearers. "4,862 completed the study. Infection with SARS-CoV-2 occurred in 42 participants [wearing] masks (1.8%) and 53 control participants [who did not cover their faces] (2.1%). The between-group difference was 0.3 percentage point … *the difference observed was not statistically significant*…" Ex. 208 (emphasis added).

355.    "When it comes to masks, it appears there is still little good evidence they prevent the spread of airborne diseases. … overall, *there is a troubling lack of robust evidence on face masks and Covid-19*." Ex. 209 (emphasis added).

356.    "[N]ow that we have properly rigorous scientific research we can rely on, *the evidence shows that wearing masks in the community does not significantly reduce the rates of infection*." *Id.* (emphasis added).

357.    "Upon our critical review of the available literature, we found only weak evidence for wearing a face mask as an efficient hygienic tool to prevent the spread of a viral infection," according to a study published in the European Journal of Medical Research. Ex. 210.

358.    "In controlled laboratory situations, face masks appear to do a good job of reducing the spread of corona virus (at least in hamsters) and other respiratory viruses. However, evidence shows mask-wearing policies seem to have had much less impact on the community spread of COVID-19. Why this gap between the effectiveness in the lab and the effectiveness seen in the community? The real world is more complex than a controlled laboratory situation." Ex. 212.

359.    "The most comprehensive between-country study of masks for COVID-19 infection is a comparison of policy changes, such as social distancing, travel restrictions,

and mask wearing, across 41 countries. ***It found introducing a mask-wearing policy had little impact*** …" *Id.* (emphasis added).

360.    "CDC has admitted face masks do little to prevent the spread of COVID-19 amid mounting pressure to lift mask mandates across the U.S. In a new study, the CDC found face masks had a negligible impact on corona virus numbers that didn't exceed statistical margins of error." Ex. 213.

361.    "***Where others say the science is settled, our analysis shows that is not the case***. We break down the most widely referenced studies on masking policies so you can see for yourself what the data really says. We should also point out that ***it is unscientific to claim that the science is settled***. Science is always a work-in-progress and we should never make the false claim that a scientific theory is settled as fact." Ex. 214 (emphasis added).

362.    "COVID-19 is as politically-charged as it is infectious. Early in the COVID-19 pandemic, the WHO, the CDC, and NIH's Dr. Anthony Fauci discouraged wearing masks as not useful for non-health care workers. Now they recommend wearing cloth face coverings in public settings where other social distancing measures are hard to do (e.g., grocery stores and pharmacies). ***The recommendation was published without a single scientific paper or other information provided to support that cloth masks actually provide any respiratory protection***," according to the Association of American Physicians & Surgeons. Ex. 215 (emphasis added).

363.    "Conclusion: ***Wearing masks (other than N95) will not be effective at preventing SARS-CoV-2 transmission***, whether worn as source control or as PPE." *Id.* (emphasis added).

364.    CDC constantly ignores its own research: "In a recent report in Emerging Infectious Diseases, … CDC suggests what experts have stated all along: There is no conclusive evidence that cloth masks protects users from corona virus, especially since most people do not use them correctly and do not keep them clean." Ex. 216.

365.    "There is increasing evidence that cloth masks not only may be ineffective against stopping corona virus transmission, but that ***they may actually increase the spread of the virus, as well as worsening other health conditions***." *Id.* (emphasis added).

366.   "A September report by the CDC found that more than 70% of COVID-positive patients contracted the virus in spite of faithful mask wearing while in public. Moreover, 14% of the patients who said they 'often' wore masks were also infected. Meanwhile, just 4% of the COVID-positive patients said they 'never' wore masks in the 14 days before the onset of their illness." *Id.*

367.   "A Covid-19 cross-country study by the University of East Anglia came to the conclusion that a mask requirement was of no benefit and could even ***increase the risk of infection***." Ex. 217.

368.   "A July 2020 study by Japanese researchers found that ***cloth masks 'offer zero protection against corona virus'*** due to their large pore size and generally poor fit." *Id.* (emphasis added).

369.   "Importantly, ***the evidence just is and was not there to support mask use for asymptomatic people to stop viral spread during a pandemic***. While the evidence may seem conflicted, the evidence (including the peer-reviewed evidence) actually does not support its use and ***leans heavily toward masks having no significant impact in stopping spread of the COVID virus***. In fact, it is not unreasonable at this time to conclude that surgical and cloth masks, used as they currently are, have absolutely no impact on controlling the transmission of Covid-19 virus, and ***current evidence implies that face masks can be actually harmful***." Ex. 218 (emphasis added).

370.   CDC and HHS "have failed to look at the evidence or follow it, and ***continue to operate in an arbitrary nonscientific, non-evidence informed manner***." *Id.* (emphasis added).

371.   "The history of modern times shows that already in the influenza pandemics of 1918-1919, 1957-58, 1968, 2002, in SARS 2004–2005, as well as with the influenza in 2009, ***masks in everyday use could not achieve the hoped-for success in the fight against viral infection scenarios***." Ex. 202 (emphasis added).

372.   CDC admitted in its "Emerging Infectious Diseases" May 2020 publication that "Although mechanistic studies support the potential effect of hand hygiene or face masks, evidence from 14 randomized controlled trials of these measures did not support a

substantial effect on transmission of laboratory-confirmed influenza. … The effect of hand hygiene combined with face masks on laboratory-confirmed influenza was not statistically significant …" Ex. 219.

373.    The University of Colorado School of Medicine published an article in the January/February 2021 edition of Annals of Family Medicine concluding: "Cloth masks lack evidence for adequate protection of health care clinicians against respiratory viral infections. The CDC notes that cloth masks are not considered [personal protective equipment] and that their capability to protect health care clinicians is not currently known. The CDC does not offer information regarding the degree of protection a cloth mask might provide compared to a medical mask." Ex. 220.

374.    "Transmission of COVID-19 in 282 clusters in Catalonia, Spain: a Cohort Study," published Feb. 2, 2021, in Lancet Infectious Diseases, "***observed no association of risk of transmission with reported mask usage by contacts***…" Ex. 221 (emphasis added).

375.    "At the very end of 2020, the WHO updated [its] guidelines, noting that any kind of mask was ineffective if the wearer comes into close contact with someone for 15 minutes or more. … A mask alone, even when it is used correctly, is insufficient to provide adequate protection or source control." Ex. 222.

376.    "The World Health Organization admits there is no scientific medical reason for any healthy person to wear a mask outside of a hospital. … If you do not have any respiratory symptoms, such as fever, cough, or runny nose, you do not need to wear a medical mask. When used alone, masks can give you a false feeling of protection and can even be a source of infection when not used correctly." Ex. 223.

377.    The U.S. Department of Labor's Occupational Health & Safety Administration ("OSHA") states "Surgical masks are not considered respirators by OSHA … surgical masks do not seal tightly to the wearer's face, nor do they provide a reliable level of protection from inhaling smaller airborne particles." Ex. 224.

378.    New studies and articles come out every week showing that masks don't reduce COVID-19 spread but harm human health. For a few recent examples, *see* Exs. 225-228.

1

2   **O.** **All defendants fail to consider that masks pose serious health risks to humans**

3   **forced to wear them. By requiring masks, the Airline Defendants recklessly**

4   **endanger the well-being of all passengers.**

5   379.   In addition to the science showing that masks have proven totally ineffective

6   in reducing corona virus spread and deaths, there's nothing in the administrative record

7   showing that CDC and HHS considered the serious health risks to human beings of forced

8   masking nor the dangers of oxygen deprivation at high altitude such as in airplane cabins.

9   380.   Hundreds of scientific and medical studies illustrate the frightening number

10   of negative health consequences of covering your face. https://bit.ly/masksarebad.

11   381.   A table succinctly summarizes the numerous "Physiological & Psychological

12   Effects of Wearing Facemasks & Their Potential Health Consequences." Ex. 229.

13   382.   A diagram shows the multiple devastating harms caused by face masks. Ex.

14   230.

15   383.   "It is not clear however, what the scientific and clinical basis for wearing

16   facemasks as protective strategy, given the fact that facemasks restrict breathing, causing

17   hypoxemia and hypercapnia, and increase the risk for respiratory complications, self-

18   contamination, and exacerbation of existing chronic conditions," according to a paper

19   published by the National Institutes of Health ("NIH"), a part of HHS. Ex. 231.

20   384.   The leading authority on this subject is a 42-page paper published April 20,

21   2021, by eight German doctors and scientists in the International Journal of Environmental

22   Research & Public Health. Ex. 202.

23   385.   They found: "Up until now, there has been no comprehensive investigation as

24   to the adverse health effects masks can cause." The doctors reviewed 65 scientific papers on

25   masks – and determined dozens of adverse health effects of covering your nose and mouth.

26   *Id*.

27   386.   These German doctors and scientists coined a new disease: Mask-Induced

28   Exhaustion Syndrome ("MIES"). *Id.*

29

387.   Symptoms of MIES include "an increase in breathing dead space volume, increase in breathing resistance, increase in blood carbon dioxide, decrease in blood oxygen saturation, increase in heart rate, increase in blood pressure, decrease in cardiopulmonary capacity, increase in respiratory rate, shortness of breath and difficulty breathing, headache, dizziness, feeling hot and clammy, decreased ability to concentrate, decreased ability to think, drowsiness, decrease in empathy perception, impaired skin barrier function with itching, acne, skin lesions and irritation, overall perceived fatigue and exhaustion." *Id.*

388.   Scientists have identified at least 68 dangers to human health from mask-wearing including adverse skin reactions such as acne, alveolitis (an inflammatory lung disorder), anxiety, asthma, bacterial pneumonia, blood-oxygen depletion, breathing difficulties, bronchiectasis (a condition in which the lungs' airways become damaged), carbon-dioxide retention, candidiasis (fungal infestation of the mucous membranes), cheilitis (inflammation of the lips), chronic bronchitis, chronic pneumonia, confusion, concentration problems, decrease in psychomotoric abilities, decreased thinking ability and disorientation, depression, dental impacts such as cavities, discouragement, disrupted nonverbal and verbal communication, disrupted social interaction, disruption of the basics of human communication (verbal and non-verbal), dizziness, drowsiness, dry mouth, elevated risk of COVID-19 through self-contamination, elevated transcutaneous carbon-dioxide values, exhaustion, facial deformities, facial itching, facial rashes, fatigue, fibrosis (excess tissue deposition), gingivitis (inflammation of the gums), halitosis (bad breath), headaches, hypercapnia hyperventilation, hypoxia, impaired clarity of speech, impaired cognitive abilities, impaired field of vision, impaired learning, impetigo (a bacterial infection that produces red sores and can lead to kidney damage), increased blood pressure, increased feelings of insecurity, increased heart rate, increased risk of infection because masks are an ideal growth and breeding ground for various pathogens such as bacteria and fungi, increased stress, inhalation of toxic substances such as microplastics and chlorine compounds located in the masks, irritability, irritation of the respiratory tract, isolation, malaise, microbiological contamination (germ colonization), neuropathological and cardiovascular consequences, numbness, panic attacks, physiological changes and

discomfort, reduced cardiopulmonary capacity, reduced happiness, reduced performance capability, skin irritation, social withdrawal, spontaneous pneumothorax, vascular damage, and voice disorders. https://bit.ly/ masksarebad.

389.   Numerous other medical and scientific studies warn us of the dangers of wearing face masks: "A recent study in the journal Cancer Discovery found that inhalation of harmful microbes can contribute to advanced stage lung cancer in adults. *Long-term use of face masks may help breed these dangerous pathogens*. Microbiologists agree that frequent mask wearing creates a moist environment in which microbes are allowed to grow and proliferate before entering the lungs." Ex. 232 (emphasis added).

390.   "Since forced mask wearing began, dermatologists have coined the term 'maskne' to describe an onset of pimples near the mouth caused by masks clogging up pores with oil and bacteria. This can be caused by either disposable or cloth masks." *Id.*

391.   "Dentists have also been warning about a phenomenon known as 'mask mouth' in which patients are arriving back to the dental office with an increase in gingivitis and tooth decay as high as 50% in a period of just a few months since mask mandates began. *This discovery sheds light on the growing evidence of harm caused by long-term mask wearing*." *Id.* (emphasis added).

392.   "In some situations, wearing a cloth face covering may exacerbate a physical or mental health condition, lead to a medical emergency, or introduce significant safety concerns, [CDC] explains." Ex. 233.

393.   "Breathing is one of the most important physiological functions to sustain life and health. Human body requires a continuous and adequate oxygen (O2) supply to all organs and cells for normal function and survival. … Long-term practice of wearing facemasks has *strong potential for devastating health consequences*." Ex. 231.

394.   "Vulnerable populations such as people with mental health disorders … are at significant health risk for complications and harm … Wearing [a] facemask mechanically restricts breathing by increasing the resistance of air movement during both inhalation and exhalation process. … *prolonged and continuous effect of wearing facemask is maladaptive and could be detrimental for health*." *Id.* (emphasis added).

395.   "***Cloth masks actually risk your health rather than protect it***. The moisture caught in these masks will become mildew-ridden in 30 minutes. Dry coughing, enhanced allergies, sore throat are all symptoms of a micro-mold in your mask." Ex. 222 (emphasis added).

396.   "Scores of dermatologists, dentists, immunologists, virologists, [and] pediatricians all over the world have been sounding the alarm for months over the continued use of face masks." *Id.*

397.   "But aside from not being as effective against the corona virus as so-called health experts claim, masks may even pose a risk to human health. For instance, a recently published review of studies on mask-related adverse health effects suggested that ***mask-wearing may seriously harm people without any notable benefit***." Ex. 234 (emphasis added).

398.   "Scientists have found evidence that some face masks which are on sale and being used by members of the general public are laced with toxic chemicals. Preliminary tests have revealed traces of a variety of compounds which are heavily restricted for both health and environmental reasons. This includes formaldehyde, a chemical known to cause watery eyes; a burning sensations in the eyes, nose, and throat; coughing; wheezing; and nausea. Experts are concerned that the presence of these chemicals in masks which are being worn for prolonged periods of time could cause unintended health issues." Ex. 235.

399.   "Carbon dioxide ($CO_2$) is a colorless, odorless, non-flammable gas that naturally occurs in the atmosphere. $CO_2$ is produced by body metabolism and is a normal component of exhaled breath. … $CO_2$ is denser than air and can collect in high concentrations in … confined spaces [such as within face masks] where it can displace oxygen creating a serious health hazard." Ex. 236.

400.   "The primary health effects caused by $CO_2$ are the result of its behavior as a simple asphyxiant. A simple asphyxiant is a gas which reduces or displaces the normal oxygen in breathing air. Symptoms of mild $CO_2$ exposure may include headache and drowsiness. At higher levels, rapid breathing, confusion, increased cardiac output, elevated blood pressure and increased arrhythmias may occur." *Id.*

401.    Airplanes contain lower oxygen levels than most flight crew and passengers who live at sea level are used to. Most airplanes are pressurized to an elevation of 8,000 feet. As most people know, oxygen levels decrease with altitude. "For people with conditions – like heart or lung disease – that cause them to have special oxygen requirements, this is a big deal, and means they might need to fly with an oxygen concentrator, or not fly at all. But even for healthy people who are used to the abundant levels of oxygen present at sea level, it can have an effect." Ex. 237.

**P.    The FTMM violates the Food, Drug, & Cosmetic Act by forcing travelers to wear Food & Drug Administration unauthorized or Emergency Use Authorization medical devices without our consent. The Airline Defendants' mask mandates constitute practicing medicine without a license.**

402.    CDC itself admits a mask does "NOT provide the wearer with a reliable level of protection from inhaling smaller airborne particles and is not considered respiratory protection." Ex. 118.

403.    Mask manufacturers concede their products are ineffective in preventing COVID-19 infection: "It is also important to ensure the product does not have any additional antimicrobial or antiviral claims made within its labeling." Ex. 503.

404.    FDA, an agency within HHS, regulates most face masks under EUAs. Ex. 119.

405.    HHS and FDA state: "On April 18, 2020, in response to concerns relating to insufficient supply and availability of face masks, [FDA] issued an [EUA] authorizing the use of face masks for use by members of the general public… A face mask is a device … that covers the user's nose and mouth and may or may not meet fluid barrier or filtration efficiency levels. It includes cloth face coverings as a subset. … Face masks are regulated by FDA when they meet the definition of a 'device' under section 201(h) of the Act. Generally, face masks fall within this definition when they are intended for a medical purpose. … Face masks are authorized under this EUA when they are intended for use as source control, by members of the general public … to cover their noses and mouths, in

accordance with CDC recommendations, to help prevent the spread of SARS-CoV-2 during the COVID-19 pandemic." Ex. 120.

406.    "Face masks are not personal protective equipment." Ex. 121.

407.    The HHS secretary authorized EUAs for COVID-19 countermeasures (85 Fed. Reg. 17,335; Ex. 122) including respiratory devices (85 Fed. Reg. 13,907; Ex. 123).

408.    FDA published an EUA for face masks July 14, 2020. 85 Fed. Reg. 42,410; Ex. 124.

409.    Another mask EUA was published Nov. 20, 2020. 85 Fed. Reg. 74,352; Ex. 125.

410.    FDA states face masks must not be "labeled in such a manner that would misrepresent the product's intended use; for example, the labeling must not state or imply that the product is intended for antimicrobial or antiviral protection or related uses or is for use such as infection prevention or reduction… No printed matter, including advertising or promotional materials, relating to the use of the authorized face mask *may represent or suggest that such product is safe or effective for the prevention or treatment of patients during the COVID-19 pandemic.*" Ex. 120 (emphasis added).

411.    The instruction manual for a 3M N95 respirator mask, which is FDA approved, makes clear its wearing still has risks: "Misuse may result in sickness or death. … [It] cannot eliminate the risk of contracting infection, illness, or disease… Individuals with a compromised respiratory system, such as asthma or emphysema, should consult a physician and must complete a medical evaluation prior to use." Ex. 504.

412.    Despite the lack of data that masks are effective, FDA issued an umbrella EUA for 41 types of surgical masks, many of which are used by passengers to comply with the FTMM and the Airline Defendants' mask policies. Ex. 126.

413.    Notably five types of masks have been withdrawn from the EUA after FDA found them to be defective. *Id.*

414.    FDA has also revoked the EUA for respirator masks made in China for being faulty. Ex. 127.

415. CDC's National Institute for Occupational Safety & Health ("NIOSH") found many masks made in China "authorized under the April 3, 2020, EUA did not meet the expected performance standards." *Id.*

416. An astounding 167 respirator mask brands from China had their EUAs revoked by FDA. Another 54 were previously revoked. *Id.*

417. FDA revokes EUAs when "appropriate to protect the public health or safety." Ex. 128.

418. Surgical masks (typically light blue in color) made in China are also not authorized by FDA.

419. Although these 221 respirator mask brands (plus all surgical masks) manufactured in China may no longer be legally sold in the United States, there are likely tens or even hundreds of millions of these face coverings still being used by passengers due to the FTMM and the Airline Defendants' policies.

420. So not only are quality masks worthless in CDC's goal of reducing transmission of COVID-19 (https://bit.ly/masksarebad), but the vast majority sold in the United States are actually defective, according to FDA. Ex. 129.

421. "The 'may be effective' standard for EUAs provides for a lower level of evidence than the 'effectiveness' standard that FDA uses for product approvals." Ex. 128.

422. Even a well-informed consumer would find it nearly impossible to understand what types and brands of face masks have been authorized and which – if any – are regarded as safe to use by NIOSH to comply with the FTMM and the Airline Defendants' mask policies.

423. The Federal Defendants' administrative record shows no indication these issues were considered.

424. There's no indication these issues were considered as part of the Airline Defendants' conspiracy to interfere with the civil rights of the disabled.

425. When a mask manufacturer applies for an EUA, it must agree it may not "misrepresent the product or create an undue risk in light of the public health emergency. For example, the labeling must not include any express or implied claims for: …

antimicrobial or antiviral protection or related uses, (3) infection prevention, infection reduction, or related uses, or (4) viral filtration efficiency." Ex. 130.

426.   "All COVID-19 masks … are authorized, not approved or licensed, by the federal government; they are Emergency Use Authorization (EUA) only. They merely 'may be effective.' … EUA products are by definition experimental and thus require the right to refuse. Under the Nuremberg Code, the foundation of ethical medicine, no one may be coerced to participate in a medical experiment. Consent of the individual is 'absolutely essential.' A federal court held that even the U.S. military could not mandate EUA vaccines to soldiers. Doe #1 v. Rumsfeld, 297 F.Supp.2d 119 ([D.D.C.] 2003)." Ex. 505.

427.   "[M]asks are authorized for use by the general public as 'investigational products' under an Emergency Use Authorization ('EUA'). They are not an approved product, and are referred to in the law as 'unapproved products' because they have not been fully tested and approved for use by the FDA. Under the federal law that allows the FDA to issue EUAs (21 U.S.C. § 360bbb-3), you cannot be forced to wear a mask. The law provides that recipients of a product authorized for use under and EUA can refuse to take the product." Ex. 506.

428.   "[T]he recipient of the product (the mask) must be informed of the option to refuse administration of the product." *Id.*

429.   All defendants do not inform passengers of their legal right to refuse administration of the medical device.

430.   "[B]y the FDA's own admission, face masks such as those in common use by the public are not intended to protect the wearer or others from the COVID-19 virus, as they do not prevent or reduce infection." Ex. 507.

431.   EUA medical devices are experimental in nature. There's "long settled legal precedent which establishes that it is not legal to coerce an individual to accept an experimental product. It further provides the historical background and evidence that Congress' intent in enacting Section 564 [of the FDCA] was to provide only one limited exception to the option to accept or refuse EUA products – that exception applies only to military personnel and only when national security is at risk. Federal agencies have also

historically interpreted Section 564 as a prohibition on mandates of EUA products…" Ex. 508.

432.    "To be licensed, the FDA must find that a medical product is 'safe for use and … effective in use.' Until licensed, a medical product remains investigational, even after issuance of an EUA. … Long settled legal precedent establishes that it is not legal to coerce an individual to accept an unlicensed, and hence experimental, medical product. An individual must voluntarily agree, free from any undue influence, to accept same." Ex. 509.

433.    "Lay people and manufacturers of just about every type of business are lending assistance to create masks. Companies that once made mattresses, shoes, apparel and many other products are now turning efforts toward the manufacturing face masks. Even a business that manufactures sports jerseys for professional athletes is now making masks using the same jersey material from its products." Ex. 131.

434.    None of these pop-up mask manufactures have FDA certification that their medical devices are safe to place on human faces.

435.    "The FDA is waiving regulatory requirements, including submission of premarket notification under the 510(k) process, registration and listing requirements, quality system regulation requirements, reports or corrections and removals, and unique device identification requirements. … the labeling should not include that the mask can be used for antimicrobial or antiviral protection or be used for infection prevention." *Id.*

436.    "FDA notes that because it cannot confirm the authenticity of any alternative respirators from abroad, it recommends that people take appropriate steps to verify the authenticity of the products before importing them. … FDA is now welcoming the opportunity to work with any manufacturer with interest in manufacturing masks and respirators – even if the manufacturer has no previous experience in medical device manufacturing." *Id.*

437.    "Counterfeit medical devices have been a danger in the U.S. supply chain for years, but their presence has been especially of concern during the current pandemic, when there have been shortages of products considered to be medical devices by the FDA, such as medical masks…" Ex. 132.

438.    Additional details about the FDA unauthorized or EUA nature of most masks used by airline passengers against the will of Plaintiffs is available at Exs. 133-135.

439.    "Simply put: manufacturers producing even simple cloth face coverings are now producing medical devices regulated by FDA and must therefore comply with certain regulatory requirements." Ex. 510.

**Q.    All 50 states do not require masking. The federal government may not impede on the states' sovereign police power to protect public health.**

440.    CDC's FTMM order overrides the mask policies of all 50 states that don't require masks. Ex. 136.

441.    Ten states never adopted a statewide mask mandate. The other 40 states – seeing that mandatory masking had no effect on their COVID-19 cases, hospitalizations, and fatalities – have repealed their face-covering dictates. *Id*.

442.    There are at least 14 states that prohibit mask mandates. *Id*.

443.    President Biden acknowledged Dec. 27, 2021, during a meeting of state governors that "Look, there is no federal solution" to COVID-19. "This gets solved at a state level." Exs. 137-138.

444.    However, the president has not repealed Executive Order 13998 that told CDC and HHS to mandate masks in the transportation sector. His administration continues extending TSA's enforcement of the FTMM without providing any explanation for doing so.

**R.    Even if CDC voluntarily repeals its FTMM order, it could be reinstated at any time.**

445.    It's possible CDC could repeal the FTMM before the Court is able to render a judgment on this Complaint. However, that would in no way moot our case.

446.    CDC Director Rochelle Walensky, in announcing revised mask guidance Feb. 25, 2022, clearly stated the agency could change its masking recommendations again at any time.

447.   "None of us know what the future may hold for us and for this virus and we need to be prepared and we need to be ready for whatever comes next. We wanna give people a break from things like mask wearing when our levels are low and then have the ability to reach for them again, should things get worse in the future," Walensky told reporters during a Feb. 25, 2022, media briefing releasing new guidelines that 99.5% of Americans should not wear masks. Exs. 139-140.

448.   Likewise Dr. Greta Massetti, a senior epidemiologist at CDC, said the agency will always be updating its mask guidelines, indicating that the FTMM (if ever repealed) could be reinstated at any time.

449.   "Public-health prevention strategies can be dialed up when our communities are experiencing more severe disease and dialed down when things are more stable," Massetti told reporters during the Feb. 25 briefing. Ex. 139.

**S.   Many Americans with disabilities can't wear face masks.**

450.   CDC "states that a person who has trouble breathing or is unconscious, incapacitated, or otherwise unable to remove the face mask without assistance should not wear a face mask … Additionally, people with post-traumatic stress disorder, severe anxiety, claustrophobia, autism, or cerebral palsy may have difficulty wearing a face mask." Ex. 511.

451.   "People who are deaf or hard of hearing – or those who care for or interact with a person who is hearing impaired – may be unable to wear cloth face coverings if they rely on lip-reading to communicate. Some people, such as people with intellectual and developmental disabilities, mental health conditions, or other sensory sensitivities, may have challenges wearing a cloth face covering." Ex. 512.

452.   "Individuals with asthma, chronic obstructive pulmonary disease (COPD), or other respiratory disabilities may not be able to wear a face mask because of difficulty in or impaired breathing." *Id.*

453.   "Some people with autism are sensitive to touch and texture. Covering the nose and mouth with fabric can cause sensory overload, feelings of panic, and extreme anxiety." *Id.*

454.   A wide range of disabled people should not wear masks. *Id.*

**T.   The FTMM unlawfully discriminates against travelers with disabilities.**

455.   Because of the FTMM, many airlines have illegally banned passengers with disabilities who request face-mask exemptions, including children as young as two, in violation of the ACAA (49 USC § 41705) and its accompanying regulations (14 CFR Part 382).

456.   Reports abound of unlawful discrimination against the disabled as a direct result of CDC's FTMM order. A small sample is available at Exs. 314-323.

457.   CDC itself states that passengers with numerous medical conditions should not be required to wear face coverings, but does nothing to enforce this due to the FTMM. Ex. 513.

458.   "Masks or Cloth Face Covering: Recommendation: Everyone should correctly wear a mask or cloth face covering over their nose and mouth at all times in the passenger air transportation system (***excluding*** children under age 2, or ***anyone who has a medical condition that causes trouble breathing***…," according to a July 2020 report issued by HHS and other federal agencies. Ex. 141 . (emphasis added)

459.   "Reasonable accommodations should be made for persons with disabilities or ailments who cannot wear masks or cloth face coverings. … Accommodations for persons with disabilities or ailments who cannot wear cloth face coverings should be considered on a case-by-case basis." *Id.*

**U.   The Airline Defendants conspired to put illegal mask polices in place starting in Spring 2020. The conspiracy soon involved interfering with the civil rights of the disabled such as plaintiffs with medical conditions who can't safely wear a**

1    **face coverings, totally banning us from using air transportation unless we**
2    **agreed to endanger their health.**

3        460.   **ORIGINAL MASK POLICIES:** JetBlue was the first U.S. airline to require
4    passengers to don face masks during flights, announcing the measure on April 27 for flights
5    starting on May 4, 2020. "Exempt: Small children who are not able to maintain a face
6    covering." Ex. 413.

7        461.   Delta simultaneously announced it would also mandate face masks on flights
8    effective May 4, 2020. "Only exceptions are for meal service and young children." *Id.*

9        462.   United simultaneously announced it would also mandate face masks on
10   flights effective May 4, 2020. *Id.*

11       463.   Frontier simultaneously announced it would also mandate face masks on
12   flights effective May 8, 2020. Ex. 414.

13       464.   Hawaiian simultaneously announced it would also mandate face masks
14   effective May 8. Ex. 415.

15       465.   Hawaiian at first complied with the ACAA by noting "guests with a medical
16   condition or disability preventing its use will be exempted from the policy." *Id*.

17       466.   American simultaneously announced it would also mandate face masks on
18   flights effective May 11, 2020. "Only exceptions are for young children and those with
19   medical conditions that prevent them from wearing a face covering." Ex. 413.

20       467.   Alaska simultaneously announced it would also mandate face masks on
21   flights effective May 11, 2020. Ex. 414.

22       468.   Southwest simultaneously announced it would also mandate face masks.
23   "Southwest has required passengers to wear masks onboard since May 11, and said it will
24   continue to bar passengers without a mask from boarding." Ex. 416.

25       469.   **LEGAL ADVICE & EARLY EXCEPTIONS:** Lawyers advised the
26   industry at the start of the COVID-19 pandemic that the ACAA prohibits airlines from
27   discriminating against a passenger with a disability in the provision of air transportation. Ex.
28   417.

29

470.    Airlines were provided legal advice that "A carrier may deny boarding, require a medical certificate, or impose conditions on a passenger *(such as wearing a mask)* only in cases where a passenger *with a communicable disease* poses a 'direct threat' to the safety and health of others. In determining whether a passenger poses such a threat, the airline makes an *'individualized assessment'* by relying on current medical knowledge, the likelihood of potential harm to others, and whether reasonable procedures or modifications could mitigate the risk." *Id.* (emphasis added).

471.    The Airline Defendants conspired to impose mask mandates anyway, ignoring this legal guidance.

472.    All major U.S. airlines except Allegiant conspired to mandate masks in early May 2020. Ex. 418.

473.    Recognizing that requiring masks violates the RA, ACAA, FDCA, other federal and international laws, and their contracts of carriage, the Airline Defendants at first told their flight attendants and pilots they shouldn't enforce their mask rules on board planes. *Id.*

474.    Passengers were still denied boarding if they didn't wear a mask at the gate, however. At this point, it appears the conspiracy to implement masks was undertaken with some understanding that the defendants could not interfere with the civil rights of the disabled. This would soon change, however.

475.    It was reported in May 2020: "The major airlines have exceptions so that young children and those with medical issues don't have to wear masks." *Id.*

476.    There was compliance with the ACAA at first. The author of this article noted: "Presumably the airlines would be opening themselves up to a lawsuit if they forced someone to put on a mask when they claim they have a medical condition." *Id.*

477.    **STRICT ENFORCEMENT EXCEPT FOR PILOTS:** By mid-June 2020, major airlines extended their conspiracy to ban flyers who refused to – or medically can't – wear masks from flying. Ex. 419.

478.    Plaintiffs need discovery to determine to what extent the Airline Defendants have conspired to share their "no-fly lists" among each other.

479.   Through the trade group they belong to, Airlines for America ("A4A"), Alaska, American, Delta, JetBlue, Southwest, and United announced they were conspiring to begin "vigorously enforcing face covering policies." *Id.*

480.   Acknowledging that pilots and flight attendants are not licensed medical providers, the conspirators at this phase continued to permit some medical exemptions because "the crew isn't qualified to assess medical conditions, so there shouldn't be any follow-up questions" when someone self-declares a disability that makes it impossible for them to cover their nose and mouth. *Id.*

481.   "U.S. airlines are very serious about requiring face coverings on their flights. Carriers are stepping up enforcement of face coverings and implementing substantial consequences for those who do not comply with the rules," said A4A President & CEO Nicholas Calio. Ex. 420.

482.   "Beginning June 16[, 2020] at American and June 18 at United, any passenger who does not wear a mask while traveling could be flagged for each airline's list of restricted flyers, possibly causing them to be barred from flying with the carrier again. … The policy updates by American and United coincided with a Monday announcement from the Airlines for America (A4A) trade group, which said many of its members were stepping up enforcement of their onboard mask policies." Ex. 416.

483.   While the Airline Defendants were stepping up their mask enforcement in early Summer 2020, they were exempting pilots from the muzzling rule because of the need for safety in the cockpit. American, for example, issued a memo to staff July 2, 2020, noting there is a "Flight Deck safety exception." Ex. 421.

484.   In a lawsuit seeking *vacatur* of the FTMM, pilots from several of the Airline Defendants said they are exempt from masking in the cockpit, but not while in airport terminals. Complaint, *Carlin v. CDC*, No. 22-cv-800 (D.D.C.).

485.   In a July 10, 2020, memo, American detailed its flight deck safety exception: "Pilots have certain exemptions on wearing masks in the flight deck for safety reasons. (i.e. A mask may interfere with their ability to see or don an oxygen mask.) … The pilots do not have to put on a face covering if they feel it could impact safety." Ex. 421.

486.  These memos obtained from an American employee show how the airline industry was well aware that obstructing a person's breathing by mandating face coverings is dangerous.

487.  "When COVID-19 first became a threat, most airlines prohibited crews from wearing masks. … But even when mask usage started to become more common and ultimately permitted for flight attendants, it remained prohibited for cockpit crews by the FAA." Ex. 422.

488.  "Additionally, the FAA issued a ruling that was adopted by most if not all airlines in the US, that allowed but did not require pilots to wear masks in the cockpit." *Id.*

489.  "There are a number of issues that come with wearing a mask in the cockpit and those reasons are why most crew members don't wear one in flight. First, in an explosive decompression, getting your facial mask off and the oxygen mask on adds seconds to a procedure that is already time critical. Second is the issue of re-breathing $CO_2$ for hours on end while at altitude in a safety critical position. Third, for those who wear glasses, masks represent a challenge that frequently leads to those glasses becoming fogged. This can be a challenge even for those with perfect vision during daytime flights when you need to wear sunglasses. Even with the built-in shades, it can get very bright in the cockpit at altitude. Consequently, wearing a mask while operating the aircraft compromises safety. With what we know about how air flows on aircraft, the risks posed by wearing a mask greatly outweigh the risks that come from not wearing one inside the flight deck." *Id.*

490.  The Airline Defendants ignored that numerous current and former flight attendants said all flight crew and passengers also should not wear masks for safety reasons because decreased oxygen levels reduce reaction time in an emergency. A cabin full of muzzled, oxygen-deprived flight attendants and passengers could result in a disaster if they are slow to respond to an in-flight emergency. Complaint, *Trocano v. CDC*, No. 22-cv-727 (D. Colo.).

491.  Masks also impair the critical ability for passengers and crew to communicate during an emergency. *Id.*

492.     The conspiracy now involved endangering the health and safety of the Airline Defendants' passengers.

493.     The crew on board every aircraft is there for one main reason: to guarantee the safety of the flight, including the crew and passengers on board the aircraft. To limit the oxygen intake of the crew and the passengers in an already low-oxygen environment like a plane is beyond dangerous as it impedes an optimum oxygen level in our bodies – not only for any pre-existing medical conditions any passenger or crew member might already have but also because it endangers the safety of the flight in case of emergency. *Id*.

494.     Not only would passengers and crew members lose precious time to wear an oxygen mask in case of a decompression because they would have to remove their own unauthorized or FDA EUA face covering first, but also the flight attendants would not be fit to handle an emergency because the already low oxygen level in their own bodies would incapacitate them from performing the emergency procedures that they have all been trained for. *Id*.

495.     **PROHIBITING THE DISABLED FROM FLYING:** The conspiracy would soon evolve to indisputably interfere with the civil rights of disabled passengers by totally banning us from using air transportation unless we agreed to harm our health by wearing a mask.

496.     The Individual Defendants should have known that forbidding disabled passengers from flying violates numerous federal and international laws, but they did nothing to stop the conspiracy.

497.     American and Southwest were the first carriers to institute a total ban on passengers with disabilities who can't wear a face mask. Ex. 423.

498.     "Some carriers, such as American and Frontier, have created policies designed to make it exceedingly difficult or impossible for disabled people to fly without a mask. It is clear that testing requirements impose an undue burden on disabled travelers as there are few places in the country that guarantee a test result within 72 hours. In areas where rapid testing is possible, it is often not covered by health insurance plans and can cost hundreds of dollars. The DOT's decision to grant airlines the authority to dictate which

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

flights disabled people can take is ripe for abuse and further demonstrates that the Office of Aviation Consumer Protection has little to no interest in protecting the rights of disabled people." Ex. 424.

499.    The other airline conspirators soon followed in prohibiting the disabled from flying.

500.    "Alaska Airlines announced a strengthening of [its] mask policy, requiring all passengers above the age of two to wear face coverings, with no medical exceptions allowed. The change goes into effect August 7[, 2020]. Alaska's announcement came the same day as New York-based JetBlue's, who also announced it is eliminating medical exemptions for mask wearing, effective August 10th. Alaska, along with JetBlue, now joined American and Southwest, which announced similar zero-exceptions policies in recent weeks, as the airlines with the strictest face covering policies in the United States." Ex. 425.

501.    Allegiant adopted a rule: "Only children under the age of 2 are exempt from wearing a face covering. Customers who are not able to wear a face covering will not be permitted to travel." *Id.*

502.    Frontier said "We require both passengers and employees to wear a face-covering over nose and mouth throughout the Frontier travel experience including ticket counters, gate areas, baggage claim and onboard all flights. The only exception is for children under the age of 2." *Id.*

503.    "Buried in a July 22 press release, United Airlines states that 'if a passenger believes that there are extraordinary circumstances that warrant an exception, they should contact United or speak to a representative at the airport.' Repeated requests for clarification were refused and, because the statement is not included on the airline's customer-facing website, Plaintiffs do not believe that United is willing to serve disabled passengers who cannot wear a mask. Ex. 426.

504.    "That's 8 of the 10 largest U.S. airlines which have told disabled people with autism, asthma, cerebral palsy, claustrophobia, COPD, PTSD, severe anxiety, and other conditions that they are not welcome onboard an aircraft. It is the largest ban on disabled air travel since the Air Carrier Access Act became law in 1986." *Id.*

505.    These policies were all implemented in late July and early August 2020, demonstrating both intra-corporate and inter-corporate conspiracies to interfere with civil rights by prohibiting all disabled Americans who can't obstruct our breathing from flying.

506.    A ban such as the one imposed by the conspirators leaves disabled "customers who are traveling for medical treatments or surgeries to out of state specialized medical procedures at a great disadvantage. The numbers of Cancer Deaths has skyrocketed globally since these new rules went into place. This is mainly attributed to these patients not having access to their Cancer Screenings and Cancer Treatments." Ex. 324.

507.    "The major airlines are now serious about enforcing their requirements that passengers (unless they are age 2 and under, usually) wear face masks during boarding and on the plane, as well as in areas throughout airports they serve, such as customer service counters and gates. The only time masks may be removed is for eating or drinking … They've announced that travelers who refuse to wear masks onboard will not be allowed to fly." Ex. 427.

508.    Hawaiian opted not to ban disabled passengers but did adopt Aug. 17, 2020, a stricter mask policy "initiating a new health screening for those unable to wear a face mask or covering due to a medical condition or disability. … guests unable to wear a face mask or covering due to a medical condition or disability must now undergo a personal medical assessment at the airport to be cleared to board. Guests requesting an exemption should arrive at the airport early as the assessment may take up to one hour." Ex. 428.

509.    The conspiracy continued into January 2021, when the defendants collectively lobbied for the Federal Transportation Mask Mandate. "[A]irlines and their unions requested [the FTMM] to help with passenger mask compliance…" Ex. 429.

**V.    Once the Federal Transportation Mask Mandate went into effect Feb. 1, 2021, the Department of Transportation finally forced the Airline Defendants to offer exemptions. But the conspiracy to prevent the disabled from flying continues as the exemption process each airline created is illegal and a farce, making it virtually impossible to get a waiver.**

510.   **ALASKA'S ILLEGAL POLICIES:** "Alaska Airlines announced a strengthening of [its] mask policy, requiring all passengers above the age of two to wear face coverings, with no medical exceptions allowed. The change goes into effect August 7[, 2020]. Alaska's announcement comes the same day as New York-based JetBlue's, who also announced it is eliminating medical exemptions for mask wearing, effective August 10th. Alaska, along with JetBlue, now join American and Southwest, which announced similar zero-exceptions policies in recent weeks, as the airlines with the strictest face covering policies in the United States." Ex. 430.

511.   "Alaska Airlines said on Wednesday that it will no longer fly passengers who are unwilling or unable to wear a mask – even when there's a legitimate and documented medical reason – following similar moves by American Airlines and Southwest." Ex. 431.

512.   "If a guest is unwilling or unable to wear a mask for any reason while at the airport, they will not be permitted to travel," the airline said in a statement. "If a guest refuses to wear a mask after boarding their flight, they will be suspended from future travel." *Id.*

513.   This policy follows a "yellow card" program that Alaska rolled out in June, in which flight attendants would issue a formal notice to passengers who refuse to wear masks. The airline said that going forward, any passenger who does not comply with the mask requirement after receiving a yellow card will be banned from flying with it immediately on landing, and will have any connecting or return flights cancelled. *Id.*

514.   Alaska's current mask rules are: "If you have a disability and are unable to wear a mask, please call our dedicated accessible services line at 1-800-503-0101 … to request an exemption from the mask requirement." Ex. 432.

515.   "Exemptions will require: • Documentation from a licensed health care provider as to your inability to wear a mask due to your disability; and • Proof of a negative test result from an FDA approved molecular NAAT or PCR Covid-19 test taken within 72 hours of your scheduled flight departure." *Id.*

516.    "Documentation from your health care provider must be submitted to Alaska Airlines at least 72 hours before your flight. We recommend that you contact us at least one week before departure to start the exemption process." *Id.*

517.    Alaska requires a passenger's doctor to disclose private medical information, against his/her will, to a third-party medical consultant "Open Doors NFP," which then recommends to Alaska to approve or deny a mask-exemption request, even though no licensed medical doctors actually work at Open Doors. Ex. 32.

518.    Alaska required Plaintiffs Uri and Yvonne Marcus to provide a direct e-mail contact for their family physicians so that OpenDoors could contact them and verify their private medical information and conditions. This is an invasion of privacy.

519.    Open Doors does not have any doctors on staff, which puts it in the same category as Alaska, which said, "We are not doctors and cannot verify if you qualify for a mask exemption."

520.    Open Doors and Alaska are practicing medicine without a license.

521.    Alaska granted plaintiffs' mask exemptions but this was contingent on numerous additional steps that violate the law.

522.    Alaska fraudulently informs plaintiffs on its website that "federal law" requires all passengers to wear a mask while flying. But Congress never passed such a law, nor has DOT or any other agency promulgated such a regulation.

523.    **ALLEGIANT'S ILLEGAL POLICIES:** As of June 19, 2020, Allegiant was the only major U.S. airline not participating in the conspiracy to interfere with the civil rights of the disabled, and the only major carrier not to break the FDCA by requiring any passenger to don an FDA unauthorized or EUA medical device on their face. Ex. 433.

524.    Allegiant did provide customers with FDA unauthorized or EUA medical devices, however, practicing medicine without a license: "[E]ach passenger gets a complimentary health and safety kit with a face mask, gloves, and two sanitizing wipes" and Allegiant "strongly encouraged passengers to wear" the devices. *Id.*

525.    Allegiant was the lone holdout in the conspiracy at this time, noting the importance of not interfering with the civil rights of the disabled: "We've also heard from

customers with asthma and other health conditions who say they can't wear masks. We want to ensure our policies accommodate them, as well." *Id.*

526.  Defendant Allegiant quickly changed its tune, however, joining the conspiracy and implementing a mandatory mask policy July 2, 2020. Ex. 434.

527.  Allegiant became the last major carrier to mandate muzzling. *Id.*

528.  Defendant Allegiant in June 2021 falsely represented that "federal law requires every person to wear a face covering that covers the nose and mouth at all times while traveling." Ex. 435. There is no such law enacted by Congress. This is a deceptive and unfair trade practice.

529.  Allegiant misrepresents the FTMM by informing customers "Those with limited mobility who are unable to remove a face covering without assistance are exempt from the requirement." *Id.* But there are many other categories of exemptions under the FTMM. This is a deceptive and unfair trade practice.

530.  "To request face mask exemptions. please email our Disabilities Team at ACAA@allegiantair.com at least 10 days prior to the departure of the first flight on your itinerary. Please note, if your exemption is approved, a negative COVID test will be required within 3 days of each flight segment." *Id. But see* 14 CFR Part 382.

531.  Allegiant makes it difficult for customers with disabilities to (illegally) request in advance a mask exemption when booking their ticket. When a customer attempts to reserve a flight, a "Special Assistance" form comes up. But there is no box to check for mask exemption.

532.  **AMERICAN'S ILLEGAL POLICIES:** American makes little information about its mask-exemption process available on its website.

533.  "If you may be exempt because you have a disability that prevents you from safely wearing a mask as defined by the Americans with Disabilities Act (42 USC 12101 et. seq) you must contact us at least 72 hours before you plan to travel and travel with documentation confirming a negative COVID test or recovery." Ex. 436.

534.  Additional unlawful American policies were described to Plaintiff Uri Marcus during a phone call Feb. 9, 2022.

535.   American fraudulently informed plaintiffs throughout the online ticket purchase pages that "federal law" requires each person to wear a mask while flying. However, Congress has never passed such a law, nor has DOT or any other agency promulgated such a regulation. The DOT itself on its own FAQ section on its website specifically states that wearing masks is NOT a federal law. Ex. 33.

536.   American required Mr. and Mrs. Marcus to submit exemption requests in advance, which is illegal. 14 CFR § 382.25. *Id*.

537.   Plaintiffs submitted the forms as a courtesy despite it being unlawful to demand advance notice. Plaintiffs included, as a courtesy, signed medical summaries from their family physicians that they should not wear a mask. Plaintiffs wrote that American's mask policy is illegal in numerous ways including that airlines by federal law are NOT permitted to impose certain requirements or conditions on a person requesting an exemption from the mask mandate. *Id*.

538.   After American finally did grant Mr. and Mrs. Marcus provisional mask exemptions, they went on to discriminate against them and assigned them, against their will, seats located in the last row of each flight. *Id*.

539.   American and their employees at their Special Assistance Coordinators Department conspired to interfere with the civil rights of plaintiffs. *Id*.

540.   **DELTA'S ILLEGAL POLICIES:** Delta requires passengers to submit to a "Clearance to Fly" process prior to departure at the airport on the day of departure through STAT-MD, which means that a passenger who cannot don a mask for legitimate medical reasons because of his/her disability cannot know if he/she will actually be permitted board his or her flight after purchasing a ticket and arriving at the airport, ready to travel. Exs. 437-444.

541.   Delta fraudulently informs plaintiffs throughout the online ticket purchasing process that "federal law" requires each person to wear a mask while flying. However, Congress has never passed such a law, nor has DOT or any other agency promulgated such a regulation.

542.    **FRONTIER'S ILLEGAL POLICIES:** Defendant Frontier also illegally requires advance notice and a medical certificate, among other discriminatory rules: "At least 10 days prior to departure: Submit documentation from a licensed medical provider on professional letterhead stating the customer is a person with a disability who cannot wear a mask, or cannot safely wear a mask…" Ex. 445. *But see* 14 CFR Part 382.

543.    This means a Frontier frequent flier would have to see his/her doctor before *every trip* on the airline. In other words, Frontier, like other airlines, refuses to grant passengers who have proven their disability a permanent mask exemption – meaning Frontier discriminates against disabled passengers on every single trip they take.

544.    "Failure to provide 10 days' notice will result in denial of the request." *Id. But see* 14 CFR Part 382.

545.    "Present evidence that the customer requesting a mask exemption does not have COVID-19 by providing a negative result from a SARS-CoV-2 viral test; the specimen for the test must have been collected no more than 3 days before the applicable flight." *Id. But see* 14 CFR Part 382.

546.    Flyers with disabilities must endure this torment on each segment of their journey. "These testing requirements apply to return travel." *Id.*

547.    Like Defendant Allegiant, Frontier makes it difficult for passengers to seek mask exemptions. While booking a flight a screen appears for a customer to select if he needs any "Special Services" – but there's no box to check for mask exemption. *Id.*

548.    Frontier Airlines CEO Barry Biffle expressed his interest June 23, 2021, in removing himself and his airline from the conspiracy to interfere with the civil rights of the disabled. He said at an industry conference that face coverings are a prime contributor to a string of recent in-flight disruptions: "The reality is, a lot of people don't want to wear masks," Biffle said. "You don't have to wear a mask here [at the convention], you don't have to wear [masks] at Walmart, but yet you've got to do it on a plane." Ex. 401.

549.    Despite his comments, Mr. Biffle has not taken any action to actually end his role in the conspiracy. Frontier has not stopped illegally depriving passengers of their right under the FDCA to refuse administration of an FDA unauthorized or EUA medical device,

nor has he eliminated his company's numerous illegal mask-exemption rules that break the ACAA.

550.    **HAWAIIAN'S ILLEGAL POLICIES:** Despite acknowledging "the risk of viral transmission on board a commercial aircraft is extremely low," Hawaiian frequently states to customers that "Federal law requires that all guests two years and older wear a mask at the airport, while boarding, through the duration of the flight and while deplaning at their destination. Refusing to wear a mask is a violation of federal law and may result in denial of boarding, removal from the aircraft and/or penalties under federal law." Ex. 446.

551.    Congress has never passed such a law, nor has DOT or any other agency promulgated such a regulation.

552.    Hawaiian states "Guests who are unable to wear a face mask due to a medical condition or disability will be required to complete an assessment with a medical professional via phone at the airport. We recommend arriving at the airport early with ample time to complete the assessment, as the process may take more than one hour, and your flight will not be held. Please notify one of our Guest Services Agents as soon as you are ready to complete the medical assessment. If you are unable to meet this requirement, we recommend that you reconsider your travel." *Id.*

553.    Hawaiian forces any passenger who passes its Fit to Fly medical consultation to sit in the rear of the aircraft regardless of what seats they chose during booking.

554.    Plaintiffs did not agree with Hawaiian's illegal policy that required them to complete a medical assessment from MedAire at the airport to be granted their mask exemptions as a condition to board the aircraft. Ex. 35.

555.    Hawaiian even went so far as to demean and mock the medical disabilities of Plaintiffs Mr. and Mr. Marcus during the mask-exemption-request process by asking "Why in the world would you even want to ask for a mask exemption?"

556.    Plaintiffs Mr. and Mrs. Marcus submitted medical summaries that they cannot wear a mask, signed by their family physicians as a courtesy despite it being unlawful for Hawaiian to demand such documentation. *Id.*

557.   **SOUTHWEST'S ILLEGAL POLICIES:** "Customers with disabilities are not required to provide advance notice of the need for assistance…" Southwest correctly states on one of its web pages. Ex. 447.

558.   However, Southwest then illegally makes passengers needing a mask exemption complete a "Passenger Application for Exemption to Federal Mask Requirement on Southwest Airlines" form and submit it at least seven days in advance. *Id.*

559.   Southwest's form requires passengers to acknowledge an illegal policy that "Southwest Airlines may change his travel dates and/or flights should one or more of his originally scheduled flights have a capacity of 75% or more, or another Passenger approved for a mask exemption booked on such flight." *Id.*

560.   "Per guidance from the U.S. Department of Transportation, airlines are permitted to impose certain requirements or conditions on a person requesting an exemption from the mask requirement. These requirements/conditions are described below." *Id.* Southwest fails to advise customers these requirements or conditions are prohibited by the RA and ACAA.

561.   Because DOT's guidance (Ex. 101) is illegal, there's no remedy for the disabled for the violation of our rights under the ACAA, therefore giving plaintiffs a private right of action to enforce the ACAA since DOT has failed its statutory duty to do so.

562.   "As a mitigation measure, DOT allows airlines to schedule the passenger (not wearing a mask) on a less crowded flight," according to Southwest. Ex. 447.

563.   "Southwest requires that a Passenger obtaining a mask exemption travel on a flight with less than 75% capacity at the time of the flight's departure, and with no other Passengers on board approved for a mask exemption. If the passenger's preferred flight ends up being more than 50% full on the day of travel, Southwest Airlines will work to re-accommodate Passengers who obtain a mask exemption. Please note that Passengers may be required to travel on a different date than their scheduled itinerary." *Id.*

564.   "At least seven (7) days prior to the Passenger's planned date of travel, a Passenger requesting a mask exemption for travel on Southwest Airlines must complete and submit [the form]…" *Id.*

565.   "A signed letter [is required] from the requesting Passenger's Medical Physician on the Physician's letterhead stating that the Passenger with a disability has a recognized medical condition precluding the wearing or safe wearing of a mask because of their disability." *Id.*

566.   "Once Southwest Airlines receives a mask exemption application in line with the above criteria, at Southwest's request to Passenger, Passenger may undergo a private medical screening (over the phone) with a third-party medical provider…" *Id.*

567.   "No later than 24 hours prior to the Passenger's scheduled departure(s), Passenger must provide evidence of Passenger's qualifying COVID negative viral test result." *Id.* This sets different requirements for passengers without and with disabilities to fly; those who can mask don't need a test, those who can't mask must get an expensive test for each segment of their journey.

568.   "Roundtrip travel will require an additional qualifying COVID negative viral test result taken within three (3) calendar days preceding the Passenger's scheduled date of return travel and submitted no later than 24 hours prior to the Passenger's scheduled departure…" *Id.*

569.   No provision of federal law or regulations permit an airline to require that any person be tested for a disease as a condition of carriage, and such a provision is not contained in Southwest's contract of carriage.

570.   The most outrageous and discriminatory policy of Southwest is that "if the Passenger's originally scheduled date of travel is changed as a result of the flight having a capacity of 75% or more or another Passenger approved for a mask exemption, then you will be required to obtain a qualifying COVID negative viral test result within three (3) calendar days preceding the Passenger's new scheduled date of departure or return travel, as applicable and at your own expense." *Id.*

571.   So in other words, Southwest violates the law by refusing to carry a disabled person because the flight is pretty full and/or because there's another disabled person on board, and then it is going to violate the law AGAIN by mandating that Plaintiffs get

ANOTHER negative COVID-19 test when nondisabled passengers are not subject to the testing requirement.

572. "Southwest Airlines will introduce tough new face mask rules that will make it even more difficult for passengers with a legitimate medical exemption to fly with the airline…" Ex. 448.

573. "Once a passenger has jumped through those hoops, Southwest Airlines will still refuse to board them if the flight is booked to 50% capacity or more. Even on a near-empty flight, an exempt passenger may still be refused boarding if there is more than one exempt passenger booked on the same flight." *Id.*

574. Before the FTMM, "Southwest Airlines barred anyone over the age of two years old from flying with them if they claimed to have a medical condition that prevented them wearing a face mask. Instead, Southwest told passengers to either delay travel indefinitely or find another airline to fly with." *Id.*

575. Southwest finally changed its tune in Summer 2021, saying publicly it wants to withdraw from the conspiracy to interfere with the civil rights of disabled travelers.

576. Southwest then-CEO Gary Kelly lobbied for the FTMM to terminate Sept. 13, 2021. Exs. 403 & 449.

577. He testified to a Senate committee on Dec. 15, 2021, that masks are worthless in trying to reduce the spread of COVID-19 on planes. Ex. 407.

578. Yet Southwest still makes obtaining disability exemptions nearly impossible, and it has not actually withdrawn from the conspiracy.

579. Mr. Kelly serves as A4A chairman. He said the aviation interest group wants the mandate ended due in part because "Reports abound of passengers refusing to wear masks and becoming aggressive with flight crews." Ex. 450.

580. However, the FTMM was extended from Sept. 13 to Jan. 18, 2022, and again until March 18, 2022, and now again until April 18, 2022. None of the Airline Defendants have sued the federal government to block it even though they realize how discriminatory and dangerous it is.

*Case #*            -76-            COMPLAINT

581.     Southwest fraudulently informs plaintiffs on their website that "federal law" requires all to wear a mask while flying. But Congress never passed such a law, nor has DOT or any other agency promulgated such a regulation.

582.     **UNITED'S ILLEGAL POLICIES:** United requires a mask-exemption demand form must be submitted a minimum of seven days prior to scheduled departure. Ex. 451.

583.     United requires proof of a negative COVID-19 PCR test result taken within 72 hours of scheduled departure. *Id.*

584.     United may require a mask-exempt customer and anyone traveling with him/her to move to alternate seats in the cabin and/or change their itinerary to less-full flights. *Id.*

585.     If granted, a United mask exemption request is applicable only to flights in a single reservation, and any exemption for future travel or travel in separate reservations will need to be applied anew. *Id.*

586.     Mask-exemption applicants must agree: "I authorize the release of medical information pertaining to this mask exemption request and authorize my treating physician to speak with a United Airlines medical representative or any agent acting on its behalf." *Id.* This is an invasion of privacy.

587.     "In order to assess and manage my request I understand that it may be necessary for United to disclose information relating to my health information to third parties such as medical professionals, airport staff, health agencies, United Express and Star Alliance carriers, and their employees, among others." *Id.* This is an invasion of privacy.

588.     A section of United's mask-exemption demand form "must be completed by a medical provider specifically treating the passenger's disability," making it a medical certificate. *Id.*

589.     United fraudulently informs plaintiffs through its website that "federal law" requires each person to wear a mask while flying. However, Congress has never passed such a law, nor has DOT or any other agency promulgated such a regulation.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29

**W.   The Airline Defendants accepted federal pandemic funding, subjecting them to the Rehabilitation Act, which prohibits recipients of federal financial assistance from discriminating against the disabled.**

590.   Most passenger airlines have historically not been subject to the RA, however that changed in 2020 when they accepted $25 billion in federal assistance from Congress in the Corona virus Aid, Relief, & Economic Security Act ("CARES Act"), signed into law March 27, 2020 (P.L. 116-136). The act provides assistance to consumers and businesses, including aid to air carriers, according to the Congressional Research Service ("CRS"). Ex. 142.

591.   "Treasury data show that, by October 5, 2020, more than $28 billion in payroll support had been approved for disbursement to 610 recipients, including 352 passenger airlines…" *Id.*

592.   Another $29 billion in federal loans were made available to airlines. Ex. 143.

593.   "In the midst of this crisis which threatens the jobs of tens of thousands of employees, distressed airlines have turned to the federal government for financial assistance." Ex. 514.

594.   Section 504 of the RA applies to programs receiving federal funds. Ex. 144.

595.   Legislative intent in passing the RA: "The time has come to firmly establish the right of these Americans to dignity and self-respect as equal and contributing members of society, and to end the virtual isolation of millions of children and adults from society." *Id.*

596.   "The definition of disability applicable to Section 504 was amended by the ADA Amendments Act of 2008 to conform with the new definition of disability for the ADA. … ***the definition of disability shall be construed in favor of broad coverage*** to the maximum extent permitted by the terms of the act… The ADA Amendments Act specifically lists examples of major life activities including … ***breathing***..." *Id.* (emphasis added).

597.    The Supreme Court has determined that "Section 504 requires even-handed treatment and an opportunity for individuals with disabilities to participate and benefit from programs receiving federal funds." *Id.*

598.    "The Spending Clause empowers Congress to tax and spend for the general welfare. Under this authority, which is subject to several limitations, Congress may offer federal funds to nonfederal entities and prescribe the terms and conditions under which the funds are accepted and used by recipients." Ex. 145.

599.    By agreeing to accept $25 billion from the CARES Act and more money from subsequent appropriations, the Airline Defendants entered into a contract with the federal government to protect the rights of disabled travelers pursuant to the RA, the ACAA, and other federal and international laws.

600.    All Airlines Defendants have received federal funding during the COVID-19 pandemic.

601.    "Under the Spending Clause, Congress can place certain conditions upon granting federal funds. Under Title VI, the recipient agrees not to discriminate on the grounds of race by accepting the money. A similar analogy applies to § 504 with disability discrimination. When a recipient of federal funds discriminates, he is essentially breaking his agreement with Congress." Ex. 515.

602.    "A funding recipient is generally on notice that it is subject not only to those remedies explicitly provided in the relevant legislation, but also to those remedies traditionally available in suits for breach of contract." *Id.*

**X.    The Airline Defendants are unlawfully discriminating against millions of travelers with disabilities including the plaintiffs.**

603.    The Airline Defendants have a long track record during the pandemic of illegally banning passengers with disabilities who request face-mask exemptions, including children as young as two, in violation of the ACAA (49 USC § 41705) and its accompanying regulations (14 CFR Part 382). There are thousands of media reports of ACAA violations by the defendants.

604.    "The ability to access transportation is a precondition to the full enjoyment of many human rights by people with disabilities," according to the National Council on Disability ("NCD"). Ex. 501.

605.    The Airline Defendants' mask policies violate guidelines from the International Air Transport Association, the major trade group for the worldwide aviation industry.

606.    The Airline Defendants' "lack of accommodation impedes the individual's participation in society. Inequality is not due to the impairment, but to the inability of society to eliminate barriers challenging persons with disabilities. This model puts the person at the center, not his/her impairment, recognizing the values and rights of persons with disabilities as part of society." Ex. 502.

607.    IATA adopted standards in August 2020 for serving the disabled during the COVID-19 pandemic. "Ensuring access to aviation facilities, services and information is fundamental to a disability inclusive COVID-19 response and recovery. If public health information, airport terminals, transport, communications, technologies and goods and services are not accessible, persons with disabilities may not be able to live and travel independently." *Id.*

608.    IATA's standards state that the disabled should not "be subject to a more stringent medical screening or clearance than that required for other passengers. To be equitable, the standards applied should be the same." *Id.*

609.    "Airlines should develop a specific and detailed company policy for the assistance and support to passengers with disabilities that is consistent across their network during the COVID-19 crisis. This policy should be robust, based on science…" *Id.*

610.    The Airline Defendants' mask policies are NOT based on science. https://bit.ly/ masksarebad.

611.    The Airline Defendants' policies are out of step with international standards set by IATA: "Airlines should provide reasonable accommodation to passengers … This will help to ensuring that all passengers exercise their human rights and their fundamental freedoms in an equitable manner." Ex. 502.

612.  "Some passengers, such as those who cannot put on or remove a face mask themselves, small children, and those who have certain types of medical conditions may not be able to tolerate the use of face coverings or masks for a lengthy period." *Id.*

613.  "[I]t is important to note how persons with disabilities are uniquely impacted by the pandemic in various aspects, including in the transport area. As countries relax their border control systems and airlines resume their services, accessibility and inclusion of persons with disabilities in aviation's COVID-19 response and recovery is a vital part of achieving the pledge to leave no one behind." *Id.*

614.  In another document, IATA made clear that "denied boarding and passenger bans have raised criticism on airlines' policies that restrict people with disabilities from accessing air transportation as a violation of anti-discrimination and disability rights regulations." Ex. 516.

615.  "Airlines should provide reasonable accommodation to passengers … This will help to ensure that all passengers exercise their human rights and their fundamental freedoms in an equitable manner." *Id.*

616.  IATA advised airlines worldwide: "Some passengers, such as those who cannot put on or remove face masks themselves, very young children, and those who have certain types of medical conditions may not be able to tolerate the use of face coverings or masks for a lengthy period – or at all." *Id.*

617.  The Airline Defendants' mask policies also violate guidelines from the International Civil Aviation Organization ("ICAO").

618.  "Aviation, like all other transport modes, needs to recognize and accommodate this growing passenger segment. Persons with disabilities have the same international rights as other citizens, such as accessibility, and full and effective participation and inclusion in society, including freedom of movement and freedom of choice (United Nations Convention on the Rights of Persons with Disabilities, articles 3.c and 3.f). Persons with disabilities should have equivalent access to air travel. These international rights apply to air travel as to all areas of life," according to ICAO's Manual on Access to Air Transport by Persons with Disabilities. Ex. 517.

619.   "All procedures forming part of an air travel journey, including reservations, check-in, immigration and customs, security clearances, transfers within airports, embarkation and disembarkation, departure, carriage, and arrival should be adapted to the needs of persons with disabilities in order to facilitate the clearance and air transportation of such persons in a dignified manner." *Id.*

620.   "The service provided at the request of persons with disabilities should be professional and 'seamless,' that is, with no points at which such persons may be left stranded or without assistance." *Id.*

621.   "Aircraft operators should not refuse to transport persons with disabilities on the basis of their disabilities…" *Id.*

622.   The Airline Defendants fail to understand there's a "sizable population who would find it difficult or impossible to comply with mask mandates… With fewer than 1% of Americans having a confirmed, active case of the corona virus, what is the probability that the lone disabled person not wearing a mask actually poses direct threat?" Ex. 518.

623.   "People who have a legitimate reason not to wear a mask should not face undue barriers in accessing public accommodations as a result of their circumstance." *Id.*

624.   "Under the Americans with Disabilities Act (ADA), individuals cannot be denied transportation services because of a disability. The Air Carrier Access Act (ACAA) is a separate statute specifically for air travel, but provides the same nondiscrimination requirement," according to NCD. Ex. 519.

625.   "The Department of Transportation (DOT) regulations also require proper training of transit employees, which includes treating passengers with disabilities in a respectful and courteous manner, while also recognizing the differences in types of disabilities." *Id.*

626.   The Airline Defendants clearly are not training their employees to treat the disabled in a "respectful and courteous manner" by banning us from flying just because we can't wear a mask.

627.   "[A]ir travel is an essential component of many jobs in the global economy. For people with disabilities to be part of that economy, participate in the world community,

and compete effectively for jobs requiring air travel, air carriers and federal oversight officials must ensure that their right to travel with appropriate accommodations is taken seriously and honored. Unfortunately, NCD has found that although things have improved since ACAA was passed in 1986, people with disabilities continue to encounter frequent, significant violations of the statute and regulations. When they complain, they encounter an enforcement effort that is both inconsistent and limited in scope." Ex. 520.

628.   "As the economy becomes increasingly global, the ability of employees with disabilities to travel by air is critical to their success and upward mobility. … More accommodations are available for air travelers with disabilities today than ever before, but the availability of accommodations is inconsistent, and discriminatory treatment continues. It is important to recognize that the negative experiences of disabled travelers go beyond the typical hassles to which frequent travelers are accustomed." *Id.*

629.   "[A]ir travelers with disabilities frequently find air travel unnecessarily humiliating and upsetting. Many problems stem from the unwillingness of some airline staff to recognize that a request for an accommodation in air travel invokes civil rights protections. … For laws like ACAA to achieve the desired effect, they must be taken seriously and owned by government and industry. ***The ultimate test of any civil rights law is the extent to which people in the protected class can count on the law for real protection.***" *Id.* (emphasis added).

630.   "Historically, air travel for people with disabilities has not been for the faint of heart. Often, people with certain disabilities either chose not to fly or traveled by air knowing they would probably face prejudice, hostility, disability stereotyping, as well as architectural and other physical barriers; sometimes they faced an outright denial of their right to travel." *Id.*

631.   "The intent of Congress in legislating the ACAA was to mandate nondiscrimination by requiring the accommodations necessary for travelers with disabilities to have equal access to air travel and related services. … the statute was specifically intended to remedy 'discriminatory, inconsistent, and unpredictable treatment' of air travelers with disabilities. Finally, the statute affirmed that rules for accommodation were to

be consistent with safety regulations, and that restrictions not based on safety and applied solely to passengers with disabilities were to be eliminated." *Id.*

632.   "DOT clarified that air carrier discretion in imposing additional requirements or restrictions on air travelers with disabilities is limited to what is required by FAA safety rules." *Id.*

633.   FAA has no safety rule requiring passengers to wear masks. FAA in June 2020 specifically refused to issue such a rule. Ex. 146.

634.   "Each time they travel, passengers with disabilities must cope with a myriad of potential disability-related complications above and beyond those faced by travelers who do not have disabilities. … Disability policy has clearly established full participation and integration of people with disabilities as a national goal. Access to transportation is a lynchpin for that participation and integration. As airline travel increasingly becomes a major mode of travel for Americans, it is essential that people with disabilities have full access to air travel." Ex. 520.

635.   In conspiring to put into place their illegal mask mandates, the Airline Defendants and the Individual Defendants did not consider the special needs of the disabled – even those who are able to tolerate having their breathing blocked. "Face masks have complicated the situation even further, since those with hearing loss rely heavily on facial expressions, non-verbal cues, and sign language to comprehend people." Ex. 521.

636.   Plaintiffs are extremely concerned the Airline Defendants, without action by this Court, will be permitted to enforce their mask mandates forever – excluding the disabled from so many important facets of life. Right now there's no end game for these unlawful requirements.

637.   "It seems highly unlikely that corona virus will ever fully die out, so [will mask mandates end when] we're at the point where annual corona virus deaths are less than average flu deaths, or at some other point? … Then again, I can't help but wonder if this will just be another policy that the airline industry keeps in place forever, as with so many policies that came before this." Ex. 522.

638.   "Airlines must be held to account for what has been a gross violation of the civil rights of disabled people…" Ex. 424.

**Y.   The Department of Transportation fails to enforce the Air Carrier Access Act and its own regulations.**

639.   The Office of Aviation Consumer Protection ("OACP"), a unit within the Office of the General Counsel of DOT, issued a Notice of Enforcement Policy ("NEP") Feb. 5, 2021, "Accommodation by Carriers of Persons with Disabilities Who Are Unable to Wear or Safely Wear Masks While on Commercial Aircraft" "to remind U.S. and foreign air carriers of their legal obligation to accommodate the needs of passengers with disabilities when developing procedures to implement the Federal mandate on the use of masks to mitigate the public health risks associated with the Corona virus Disease 2019 (COVID-19)." Ex. 101.

640.   "OACP will exercise its prosecutorial discretion and provide airlines 45 days from the date of this notice to be in compliance with their obligation under the Air Carrier Access Act ('ACAA') and the Department's implementing regulation in 14 CFR Part 382 ('Part 382') to provide reasonable accommodations to persons with disabilities who are unable to wear or safely wear masks, so long as the airlines demonstrate that they began the process of compliance as soon as this notice was issued." *Id.*

641.   The 45-day deadline was March 22, 2021. But there is no evidence DOT has taken any enforcement action against the Airline Defendants for violating the ACAA as these airlines continue to enforce their illegal discriminatory policies requiring, for example, that passengers with a disability that prevents them from wearing a mask must submit a request in advance in violation of 14 CFR § 382.25.

642.   "[T]he ACAA and Part 382, which are enforced by OACP, require airlines to make reasonable accommodations, based on individualized assessments, for passengers with disabilities who are unable to wear or safely wear a mask due to their disability." *Id.*

643.   "To ensure that only qualified persons under the exemptions would be able to travel without a mask, the CDC Order permits operators of transportation conveyances, such

as airlines, to impose requirements, or conditions for carriage, on persons requesting an exemption, including requiring a person seeking an exemption to request an accommodation in advance, submit to medical consultation by a third party, provide medical documentation by a licensed medical provider, and/or provide other information as determined by the operator. The CDC Order also permits operators to require protective measures, such as a negative result from a SARS-CoV-2 viral test or documentation of recovery from COVID-19 or seating or otherwise." *Id. But see* 14 CFR Part 382.

644.    OACP's NEP did not advise airlines that the CDC's order allowing carriers to impose additional requirements is illegal (such as requesting a mask exemption in advance, submitting to a third-party medical consultation, submitting a medical certificate, and requiring a negative COVID-19 test). *Id. See* 14 CFR Part 382.

645.    In its Feb. 5 NEP, OACP admitted it had failed to enforce the ACAA and its regulations in 2020 when many airlines banned all passengers with disabilities who could not wear a face covering: "Some carriers have adopted policies that expressly allow 'no exceptions' to the mask requirement other than for children under the age of two. OACP has received complaints from persons who assert they have a disability that precludes their wearing a mask, and who contend that they were denied transport by an airline under a 'no exceptions allowed' mask policy." *Id.*

646.    "CDC and other medical authorities recognize that individuals with certain medical conditions may have trouble breathing or other difficulties..." *Id.*

647.    OACP informed the airlines they had violated the law from Summer 2020 to January 2021 when they banned all travelers with disabilities: "It would be a violation of the ACAA to have an exemption for children under 2 on the basis that children that age cannot wear or safely wear a mask and not to have an exemption for … individuals with disabilities who similarly cannot wear or safely wear a mask when there is no evidence that these individuals with disabilities would pose a greater health risk to others." *Id.*

648.    After DOT complaints are filed by passengers whom the Airline Defendants have discriminated on, investigations appear to average 12-14 months. Even if DOT were to resolve these complaints by finding that the Airline Defendants and their employees have

1    broken the law by refusing the grant medical exemptions, there is no possibility for this
2    process to provide an adequate remedy for disabled persons who need to fly within a week
3    or two. Moreover, DOT is not fining airlines for breaking the law. Ex. 147.

4         649.   "The ACAA prohibits U.S. and foreign air carriers from denying air
5    transportation to or otherwise discriminating in the provision of air transportation against a
6    person with a disability by reason of the disability. When a policy or practice adopted by a
7    carrier has the effect of denying service to or otherwise discriminating against passengers
8    because of their disabilities, the Department's disability regulations in Part 382 require the
9    airline to modify the policy or practice as necessary to provide nondiscriminatory service to
10   the passengers with disabilities …" Ex. 101.

11        650.   But OACP illegally advised airlines that "In accordance with the CDC Order,
12   as conveyance operators, airlines are required to implement face mask policies that ***treat***
13   ***passengers presumptively as potential carriers of the SARS-CoV-2 virus*** and, therefore, as
14   presenting a potential threat to the health and safety of other passengers and the crew." *Id.*
15   *But see* 14 CFR § 382.23(c)(1), which provides that an airline must have evidence that the
16   passenger ***"has"*** a communicable disease, e.g. has tested positive for the corona virus. A
17   "presumptive" determination that every single airline passenger is infected with COVID-19
18   is not only scientifically impossible, it goes against the plain language of 14 CFR §
19   382.23(c)(1).

20        651.   OACP wrongly informed airlines Feb. 5, 2021 that "both the CDC Order and
21   Part 382 permit airlines to require passengers to consult with the airline's medical expert
22   and/or to provide medical evaluation documentation from the passenger's doctor sufficient
23   to satisfy the airline that the passenger does, indeed, have a recognized medical condition
24   precluding the wearing or safe wearing of a mask." *Id. But see* 14 CFR § 382.23(a).

25        652.   OACP wrongly informed airlines that "Part 382, like the CDC Order, permits
26   airlines to require passengers with disabilities who are unable to wear masks to request an
27   accommodation in advance." *But see* 14 CFR § 382.25.

28        653.   OACP wrongly informed airlines that they "may impose protective measures
29   to reduce or prevent the risk to other passengers. For example, airlines may require

protective measures, such as a negative result from a SARS-CoV-2 test, taken at the passenger's own expense, during the days immediately prior to the scheduled flight." *Id.* As noted above, there is no provision of the ACAA or 14 CFR Part 382 that allows airlines to require a negative test to board a plane.

654.   "Airlines are expected to review their face mask policies immediately and to revise them as necessary to comply with the ACAA and Department's disability regulation in Part 382." *Id.*

655.   However, DOT has failed its duty to enforce the ACAA and its regulations, as evidenced by the Airline Defendants' continuance of policies that violate Part 382 fourteen months after the DOT issued its faulty NEP.

656.   Information provided to passengers by DOT contradicts OACP's Feb. 5, 2021 NEP as well as the Airline Defendants' mask policies. In a document "New Horizons: Information for the Air Traveler with a Disability," DOT informs flyers that ***"Airlines may not require passengers with disabilities to provide advance notice of their intent to travel or of their disability …"*** Ex. 148 (emphasis added).

657.   "A medical certificate is a written statement from the passenger's physician saying that the passenger is capable of completing the flight safely without requiring extraordinary medical care. A disability is not sufficient grounds for a carrier to request a medical certificate. ***Carriers shall not require passengers to present a medical certificate unless the person: … Has a communicable disease or infection that has been determined by federal public health authorities to be generally transmittable during flight."*** *Id.* (emphasis added).

658.   "If a person who seeks passage ***has an infection or disease*** that would be transmittable during the normal course of a flight, and that has been deemed so by a federal public health authority knowledgeable about the disease or infection, then the carrier may: … ***Impose on the person a condition or requirement not imposed on other passengers (e.g., wearing a mask)."*** *Id.* (emphasis added).

659.   DOT publishes a 190-page handbook "What Airline Employees, Airline Contractors, & Air Travelers with Disabilities Need to Know About Access to Air Travel

for Persons with Disabilities: A Guide to the Air Carrier Access Act (ACAA) and its implementing regulations, 14 CFR Part 382." Relevant excerpts of this handbook are attached at Ex. 149. (CFR citations appear to be different; presumably Part 382 has been reorganized and renumbered since this document was published.)

660.   "May I ask an individual what his or her disability is? Only to determine if a passenger is entitled to a particular seating accommodation... ***Generally, you may not make inquiries about an individual's disability or the nature or severity of the disability."*** *Id.* (emphasis added).

661.   ***"You must not refuse transportation to a passenger solely on the basis of a disability."*** *Id.* (emphasis added).

662.   ***"You shall not require a passenger with a disability*** to travel with an attendant or ***to present a medical certificate***, except in very limited circumstances." *Id.* (emphasis added).

663.   ***"You cannot require passengers with disabilities to provide advance notice of their intention to travel or of their disability*** except as provided below." *Id.* (emphasis added).

664.   "If you are faced with particular circumstances where you are required to make a determination as to whether a passenger with a communicable disease or infection poses a direct threat to the health or safety of others, ***you must make an individualized assessment*** based on a reasonable judgment, relying on current medical knowledge or the best available objective evidence." No presumptive judgment that every single person has a communicable disease or infection is permitted. *Id.* (emphasis added).

665.   "If, in your estimation, a passenger ***with a communicable disease or infection*** poses a direct threat to the health or safety of other passengers, you may … (iii) impose on that passenger a special condition or restriction ***(e.g., wearing a mask)***." *Id.* (emphasis added).

666.   "Except under the circumstances described below, ***you must not require medical certification of a passenger with a disability as a condition for providing transportation.*** You may require a medical certificate only if the passenger with a disability

is an individual who is traveling on a stretcher or in an incubator (where such service is offered); needs medical oxygen during the flight (where such service is offered); or has a medical condition that causes the carrier to have reasonable doubt that the passenger can complete the flight safely without requiring extraordinary medical assistance during the flight." *Id.*

667.   "In addition, if you determine that a passenger ***with a communicable disease or infection*** poses a direct threat to the health or safety risk of others, you may require a medical certificate from the passenger. *Id.* (emphasis added).

668.   "Generally, you must not refuse travel to, require a medical certificate from, or impose special conditions on a passenger with a communicable disease or infection." *Id.*

669.   "Discrimination is Prohibited: Management of carriers are required to ensure that the carrier … does not discriminate against qualified individuals with a disability by reason of such disability. *Id.*

670.   The yet-to-be-named Individual Defendants have failed their legal duties to ensure the disabled are not discriminated against.

671.   "Carriers must not refuse to provide transportation to a passenger with a disability on the basis of his or her disability unless it is expressly permitted by the ACAA and part 382." *Id.*

672.   As a result of DOT's refusal to obey its statutory duty to enforce the ACAA, millions of Americans have been barred from flying.

673.   DOT has told the Airline Defendants they must accommodate passengers who are unable to tolerate wearing a face mask, however there is no evidence that DOT has actually initiated any civil enforcement proceedings against any air carrier for failure to grant mask exemptions.

674.   "Masks or Cloth Face Covering: Recommendation: Everyone should correctly wear a mask or cloth face covering over their nose and mouth at all times in the passenger air transportation system (excluding children under age 2, or ***anyone who has a medical condition that causes trouble breathing*** …," according to a July 2020 report issued by DOT, DHS, and HHS. Ex. 141 (emphasis added).

675.   "Reasonable accommodations should be made for persons with disabilities or ailments who cannot wear masks … Accommodations for persons with disabilities or ailments who cannot wear cloth face coverings should be considered on a case-by-case basis." *Id.*

676.   DOT issued updated guidance in December 2020, stressing a key point: "Mask Use, ***specifically the need to accommodate those who cannot wear masks.***" Ex. 150 (emphasis added).

677.   But again, there is no evidence plaintiffs have located that DOT's OACP has fined any airline who banned customers with disabilities from flying, showing how DOT has failed its statutory duty to enforce the ACAA.

678.   "Masks Recommendation: Everyone should wear a mask per CDC guidance, over their nose and mouth, at all times in the passenger air transportation system (excluding children under age 2, ***or anyone who has a medical condition for which wearing a mask is contraindicated … Reasonable accommodations should be made for persons with disabilities or ailments who cannot wear masks."*** *Id.* (emphasis added).

679.   "Under the Air Carrier Access Act, ***U.S. and foreign air carriers have legal obligations to accommodate the needs of passengers with disabilities when the airlines develop and implement policies requiring the use of masks*** to mitigate the public health risks associated with COVID-19." *Id.* (emphasis added).

680.   "The Air Carrier Access Act and its implementing regulations in 14 CFR Part 382 require airlines to ensure that their mask policies provide for reasonable accommodations, based on individualized assessments, for passengers with disabilities who are unable to wear a face covering for medical reasons." *Id.*

681.   "On the matter of enforcing the law, the DOT has failed – unequivocally. The rights and dignity of travelers requiring special assistance and accommodation are violated frequently, while the department remains silent," wrote John Morris. Ex. 523.

682.   "How often does the DOT pursue action? Not often. In the past three years, only five penalties have been levied against airlines for violations of the ACAA. Typically,

the DOT receives between 100-200 disability service complaints per month. … Five actions after thousands of complaints – that is not enforcement." *Id.*

683.    "Travelers with disabilities, myself included, have no way to ensure that air travel providers will honor the rights they have been guaranteed under the ACAA. Violations occur throughout the travel experience, from booking to baggage claim. Depending on the right that is violated, costs to the passenger may include disrupted travel, financial loss, pain and suffering, emotional distress, physical injury, an affront to personal dignity, or a combination of them all." *Id.*

684.    "It is disheartening to know that the DOT, the agency wholly responsible for enforcement of the law, has failed to protect your rights and mine so miserably." *Id.*

685.    "[A] civil right does not and cannot exist where an individual can take no definitive action to enforce it before the law or protect against its violation. The crux of the issue is this: The only venues within civil society where persons with disabilities cannot seek recourse before the law for discrimination on the basis of disability are on airplanes and in airports. A civil right is meant to be guaranteed." *Id.*

686.    "I have submitted complaints to the DOT, and the agency has affirmed the legitimacy of 100% of my claims. No action has been taken. Those same airlines continue to violate those very same rights, repeatedly, and as if they are immune from the law. If my government will not stand up for me, and I cannot seek a redress for my own grievances before the court, what rights do I truly have?" *Id.*

687.    "By definition, civil rights are a class of protections that must be protected to have merit and value. If the air travel industry is permitted to ignore the ACAA without threat of challenge, the protections under the law cannot be classified as civil rights. To the travelers with disabilities who have been denied a voice, they are nothing but recommendations that are trampled on by the very airlines which they were meant to regulate." *Id.*

688.    "[T]he National Council on Disability (NCD) believes that DOT's approach is critically lacking in the key areas of compliance monitoring, complaint handling, and leadership by the Department of Transportation. … The key findings indicate that ACAA

1    implementation and enforcement efforts over the past 12 years have been so lacking in

2    several essential areas as to constitute non-enforcement." Ex. 520.

3

4         **Z.    International Traveler Testing Requirement.**

5         689.    Without providing public notice or soliciting comment, on Jan. 12, 2021,

6    Defendant CDC announced an order (the ITTR) requiring all passengers flying to the United

7    States from a foreign country to get tested no more than three days before their flight

8    departs and to present the negative result (or documentation of having recovered from

9    COVID-19) to the airline before boarding the plane.

10        690.    The day after taking office (Jan. 21, 2021), President Biden issued

11   "Executive Order Promoting COVID-19 Safety in Domestic & International Travel." E.O.

12   13998, 86 Fed. Reg. 7205 (Jan. 26, 2021); Ex. 102. This Executive Order directed the ITTR

13   be continued.

14        691.    The revised ITTR took effect Jan. 26, 2021. 86 Fed. Reg. 7,387 (Jan. 28,

15   2021).

16        692.    The next version of the ITTR took effect Nov. 8, 2021. It made a minor

17   change: modifying the requirement for unvaccinated flyers to get tested within one day of

18   departure (keeping the mandate at three days for fully vaccinated passengers).

19        693.    Defendant CDC amended the ITTR order again, effective Dec. 6, 2021. This

20   is the version presently in effect that plaintiffs are challenging ("Requirements for Negative

21   Pre-Departure COVID-19 Test Result or Documentation of Recovery from COVID–19 for

22   All Airline or Other Aircraft Passengers Arriving into the United States from Any Foreign

23   Country"). 86 Fed. Reg. 69,256; Ex. 151.

24        694.    This latest version made another slight change: requiring all passengers,

25   regardless of vaccination status, to submit a negative COVID-19 test taken within one day

26   of departure.

27        695.    Before checking in for an international flight to the United States, CDC

28   requires travelers to complete a "Passenger Disclosure & Attestation to the United States of

29

America" form. All airlines must provide the disclosure to their passengers and collect the attestation prior to embarkation. Ex. 152.

696.    Defendant CDC prohibits airlines from boarding any passenger who does not submit the form with an accompanying negative COVID-19 test taken within one day of departure.

697.    Congress has explicitly declined to require COVID-19 testing of international air travelers. There is no law authorizing the ITTR.

**AA. CDC and HHS fail to consider that the ITTR doesn't apply to travelers entering the United States by land and sea, imposes significant financial and time burdens on travelers for no discernable benefit, and can leave American citizens stranded abroad indefinitely.**

698.    CDC and HHS have not explained why the ITTR applies only to air travel, not to those entering the United States by land or sea, including illegal aliens crossing the southern border from Mexico to the United States, who are much more likely to be unvaccinated than U.S. citizens flying home from abroad.

699.    CDC and HHS have not presented any evidence that air travelers pose a greater risk to bringing COVID-19 into the country than land and sea passengers. Numerous COVID-19 outbreaks among illegal immigrants detained by the U.S. Border Patrol along the Mexican border as well as passengers and crew aboard cruise ships docking in the United States illustrate this point.

700.    For example, CDC has in the recent past told Americans not to cruise because of the high risk of COVID-19 transmission. Exs. 153-154.

701.    The ITTR imposes significant financial and time burdens on international travelers. Yet there is no discernable benefit as the purported reason for the latest version of the ITTR – to stop the Omicron corona virus variant from entering the United States – is moot because the variant is already widely circulating domestically, comprising about 99% of positive tests in the past month, according to CDC data.

702.    Healthy people are unlikely to develop severe illness from Omicron. Ex. 155.

703. Testing is not reliable. "[N]ew research suggests that rapid tests widely used to identify potential covid-19 cases might be less effective at identifying illness caused by the swiftly spreading omicron variant." Ex. 524.

704. Testing is prone to errors. "Hundreds of people who were told they did not have Covid-19 have now discovered they do, after a Sydney testing center admitted it sent out incorrect PCR results." Ex. 525.

705. If a passenger is in a country or region where rapid COVID-19 testing is not available and it's impossible to obtain a test result within a day of departure, the ITTR prohibits that person (including U.S. citizens) from flying to the United States indefinitely because the ITTR contains no exemption process for such a situation.

706. When an American citizen visits a foreign country, he/she has no guarantee that he/she will ever be able to return home due to the ITTR's stringent one-day testing requirement. This is a major concern for Mr. and Mrs. Marcus in particular because they need to travel to and from their home in Israel to the United States at least once a year for personal, family, and business reasons.

707. The ITTR provides no exemptions in the case a country or region that normally does have rapid corona virus testing availability experiences a shortage of available COVID-19 tests.

708. Unavailability of rapid testing is hardly speculative. It has occurred right here in the United States. "[T]he U.S. finds itself in the midst of yet another corona virus test shortage, with consumers facing limited sales at retailers and long lines at testing centers." Ex. 526.

709. "The confusion has frustrated some public health professionals who say there simply aren't enough kits to permit people who are sick, those exposed to someone who has been infected with the virus, and people who want to travel and attend gatherings to get tested." Ex. 527.

710. President Biden admitted finding rapid COVID-19 tests is a "real challenge" and "the need is great to do more in terms of the rapid tests and the availability of it." Ex. 528.

711.    CDC does not reimburse and is unable to help travelers get reimbursements for travel expenses as a result of canceled or delayed travel because of COVID-19 testing requirements for air passengers flying to the United States.

712.    For example, CDC does not reimburse travelers for the costs of new plane tickets, lodging, meals, and other expenses as a result of being stranded in a foreign country as a result of an inability to obtain a COVID-19 negative test result within one day of departure.

713.    CDC does not reimburse travelers for COVID-19 testing fees, which can cost as much as $200 depending on the location and type of test.

714.    If an airline passengers pays $200 for a corona virus test and the results do not come back within a day, not only does that person have to pay for another airline ticket, lodging, and meals, he/she must also pay $200 for another virus test – with no guarantee the results will come in time.

715.    If a flight is canceled or delayed until the next day, an airline passenger is forced to obtain another expensive COVID-19 test. The ITTR makes no exceptions for situations like this wholly outside passengers' control.


**BB. DC and HHS fail to consider that the ITTR violates the International Covenant on Civil & Political Rights by interfering with several fundamental human rights established by treaty.**

716.    As recognized in the ITTR, many COVID-19 tests are experimental medical products authorized by FDA only for emergency use. Ex. 151.

717.    The federal government provides rapid-test kits to U.S. citizens at no cost through the mail. However, these tests are issued by FDA under an EUA, making their use optional. Ex. 156

718.    Not only does forced use of an emergency medical product without consent violate the Food, Drug, & Cosmetic Act, it breaks America's commitment to basic human rights under international law: "[N]o one shall be subjected without his free consent to medical or scientific experimentation." ICCPR Art. 7.

719.   Congress has not passed a law requiring airline passengers be refused transportation unless they present a negative COVID-19 test. However, "No one shall be deprived of his liberty except on such grounds and in accordance with such procedure as are established by law." ICCPR Art. 9.

720.   "International human rights law does not recognize a 'right to transportation' per se. Rather, it guarantees the right to liberty of movement, which is elaborated in Article 12 of the International Covenant on Civil and Political Rights," according to NCD.

721.   "No one shall be arbitrarily deprived of the right to enter his own country." ICCPR Art. 12.4.

722.   The ITTR restricts the liberty of movement of all plaintiffs including the freedom to enter and re-enter their country(ies) of citizenship, especially Mr. and Mr. Marcus, who are dual citizens of the United States and Israel and travel often between the two nations.

## V.   CAUSES OF ACTION

**A. FIRST CAUSE OF ACTION: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT: The FTMM exceeds CDC and HHS' statutory authority under the Public Health Service Act.**

723.   All plaintiffs have been restricted from using public transportation because of the FTMM.

724.   The FTMM exceeds Defendants CDC and HHS' authority under § 361 of the Public Health Service Act. 42 USC § 264.

725.   CDC and HHS are authorized to make and enforce "***regulations*** … to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession." 42 USC § 264(a) (emphasis added).

726.   The FTMM is an ***order*** issued by CDC, not a ***regulation*** duly promulgated into the Code of Federal Regulations.

727.    "For purposes of carrying out and enforcing such *regulations*, [CDC and HHS] may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings…" *Id* (emphasis added).

728.    The FTMM is not a regulation published in the CFR. It also is not an enumerated measure of "inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles." *Id*.

729.    "Sanitation" refers to the proper disposal of human waste (urine and feces) as well as garbage. Masking is not a "sanitation" measure as the government argues. Nobody has ever said, for example, "I'm going to sanitize my face by covering it with a mask."

730.    None of the statutes or regulations cited by CDC for the authority to adopt the FTMM – 42 USC § 264; 42 CFR §§ 70.2, 71.31(b), & 71.32(b) – permit CDC to implement or enforce a mask mandate.

731.    CDC's broad reading of the statute would be tantamount to creating a general federal police power, but that is reserved to the states under the 10th Amendment.

732.    CDC's interpretation of 42 USC § 264 ignores the structure of the statute. The FTMM repeatedly cites § 264(a) as its authority. But § 264(a) only allows CDC to impose specific restrictions on *property*. The FTMM is a restriction on travelers' *liberty*, which is an issue addressed by § 264(d).

733.    Section 264(d) applies only to "any individual reasonably believed to be infected with a communicable disease" and allows for apprehension and examination under only those circumstances. CDC and HHS may not force masks upon all travelers and transportation workers, when only a tiny percentage are reasonably believed to be infected with a communicable disease on any given day.

734.    Read as a whole, as courts must do, it is clear that the "other measures" clause found in § 264(a) does not allow the defendants to restrict the liberty interest of all travelers and transportation employees by requiring us to wear a mask.

735.    Under the "major questions" doctrine, § 264(a) does not authorize CDC and HHS to require masking throughout the nation's entire transportation system because that is

a decision of such economic and political significance only Congress may specifically authorize it.

736. The agencies' interpretation of Section 264(a) as authorizing the ITTR is not entitled to *Chevron* deference.

737. A court must "hold unlawful and set aside agency action … found to be … in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 USC § 706(2)(C).

738. The Court should hold unlawful and set aside the FTMM because CDC and HHS acted in excess of their statutory authority. *Id*.

739. The Court must also issue a permanent injunction prohibiting CDC and HHS from ever again issuing a mask mandate for any sector of society since Congress has never approved this.

**B.   SECOND CAUSE OF ACTION: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT: Failure to observe the notice-and-comment procedure required by law before ordering the FTMM.**

740. All plaintiffs have been restricted from using public transportation because of the FTMM.

741. The FTMM is an "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 USC § 704. It represents the consummation of CDC and HHS' decision-making process with respect to requiring masks in the entire U.S. transportation sector. And it affects our legal rights and obligations because the mask mandate causes detrimental health effects to those of us who must travel.

742. The APA requires agencies to issue rules through a notice-and-comment process. 5 USC § 553.

743. The FTMM is a rule within the meaning of the APA because it is "an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." 5 USC § 551(4).

744. CDC issued the FTMM without engaging in the notice-and-comment process.

745. Good cause does not excuse CDC's failure to comply with the notice-and-comment process because the agency had 10½ months to give notice, solicit comments, respond to those comments, and publish a regulation in the Code of Federal Regulations from the date the World Health Organization declared COVID-19 a global pandemic (March 11, 2020) until the date the FTMM took effect (Feb. 1, 2021). 5 USC § 553(b)(3)(B).

746. Had CDC and HHS put the FTMM through the required APA notice-and-comment period, we would have commented that: 1) data shows states without mask mandates suffered fewer deaths per capita than states that imposed such requirements; 2) the FTMM is out of step with the current policies of every state that don't require masking; 3) requiring masks in the transportation sector leads to widespread chaos in the skies and on the ground, endangering aviation and transit safety; 4) the FTMM unlawfully discriminates against travelers who can't wear a face covering due to a disability; 5) the gargantuan amount of scientific and medical evidence showing that masks have proven to be totally ineffective in reducing COVID-19 spread and deaths (*see* 228 scientific studies, medical articles, and videos at https://bit.ly/masksarebad); 6) scientists have known for a long time that masks aren't effective in reducing transmission of respiratory viruses (*Id*.); 7) masks pose serious health risks to humans forced to wear them (*Id*.); 8) many experts consider forcing kids to wear masks child abuse (*Id*.); and 9) airplane cabins pose little risk for corona virus spread and there have been few, if any, reports of corona virus transmission on aircraft.

747. A court must "hold unlawful and set aside agency action … found to be … without observance of procedure required by law." 5 USC § 706(2)(D).

748. The Court should hold unlawful and set aside the FTMM because it violates the APA's notice-and-comment requirement. *Id*.

**C.   THIRD CAUSE OF ACTION: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT: Arbitrary and capricious agency action in ordering the FTMM.**

749.    All plaintiffs have been restricted from using public transportation because of the FTMM.

750.    The administrative record shows that CDC and HHS ignored better options than imposing the FTMM such as requiring COVID-19 test providers to report all positive results to the agency so those infected could be placed on the "Do Not Board" and "Lookout" lists, prohibiting them from flying for about two weeks while they are capable of transmitting the virus to others. ¶¶ 237-243.

751.    The administrative record shows that CDC and HHS ignored that mask mandates have created chaos in the sky, recklessly endangering aviation safety and security. ¶¶ 244-304.

752.    The administrative record shows that CDC and HHS failed to take into account that airplane cabins pose little risk for corona virus spread. ¶¶ 311-344.

753.    The administrative record shows that CDC and HHS failed to take into account the voluminous scientific and medical research showing masks have proven to be totally ineffective in reducing COVID-19 spread and deaths. ¶¶ 345-378.

754.    The administrative record shows that CDC and HHS failed to consider that masks pose serious health risks to humans forced to wear them. ¶¶ 379-401.

755.    Eight experts in the field of industrial hygiene, with combined experience of nearly 150 years, wrote CDC and others Feb. 22, 2022, to express they are "highly concerned with the inaccurate and misleading guidance being promoted by the CDC on its website regarding efficacy of masking to prevent COVID-19 and now similar guidance regarding respirators and request for immediate correction to said guidance. The guidance is overly broad, inaccurate, and especially inappropriate for children and the general public." Ex. 238.

756.    Just three days later, CDC announced Feb. 25, 2022, it would exercise its "enforcement discretion" and no longer require kids on school conveyances to be muzzled.

Ex. 161. CDC did not explain why school buses and vans are now exempt from the FTMM but not other modes of transportation.

757.     CDC did not publish the amended FTMM in the Federal Register.

758.     When arbitrary and capricious government health mandates are eliminated, "countries that have removed these no-longer fit for purpose travel restrictions have already seen a significant upswing in forward bookings. International travel was artificially constrained by COVID-19 and government policies… we look forward to working with the Biden Administration to remove or modify all remaining COVID-19 travel restrictions…" according to the International Air Transport Association. Ex. 412.

759.     The Court should hold unlawful and set aside the FTMM because it is arbitrary, capricious, and an abuse of discretion. 5 USC § 706(2)(A).


D.     **FORTH CAUSE OF ACTION**: **VIOLATION OF THE CONGRESSIONAL REVIEW ACT: CDC and HHS did not submit the FTMM to Congress and the comptroller general before it took effect.**

760.     All plaintiffs have been restricted from using public transportation because of the FTMM.

761.     The Congressional Review Act ("CRA") "requires federal agencies to submit a report on each new rule to both Houses of Congress and to the Comptroller General for review before a rule can take effect. 5 USC § 801(a)(1)(A). … The CRA allows Congress to review and disapprove rules issued by federal agencies for a period of 60 days using special procedures. 5 U.S.C. § 802." Government Accountability Office Decision B-333,501 (Dec. 14, 2021); Ex. 157.

762.     "CDC did not submit a CRA report to Congress or the Comptroller General on the [FTMM]." *Id.*

763.     The CRA "requires that before a rule can take effect, an agency must submit the rule to both the House of Representatives and the Senate as well as the Comptroller General, and provides procedures for congressional review where Congress may disapprove of rules. We conclude that the [FTMM] meets the definition of a rule for purposes of CRA

and, therefore, is subject to CRA's requirements for submission and congressional review." *Id*.

764.    "Here the [FTMM] meets the APA definition of a rule rather than an order. … despite its label, the [FTMM] is not an order for purposes of the APA because it is not the result of an adjudicatory process." *Id*.

765.    The FTMM "is a rule for purposes of CRA because it meets the APA definition of a rule and no CRA exception applies. Accordingly, before it can take effect, the [FTMM] is subject to the requirement that it be submitted to both Houses of Congress and the Comptroller General for review, which provides Congress a period of 60 days in which it may disapprove the rule using special procedures in accordance with the CRA. While CDC asserted the need to act quickly as its justification for not submitting the Mask Requirement for congressional review, there is not an emergency exception under CRA." *Id*.

766.    Because CDC and HHS did not submit the FTMM rule to Congress and the comptroller general, it has no legal effect and must be vacated.

767.    On March 15, 2022, the Senate voted 57-40 to pass Senate Joint Resolution 37 disapproving of CDC's FTMM order. "[S]uch rule shall have no force or effect." Ex. 108.

768.    A court must "hold unlawful and set aside agency action … found to be … without observance of procedure required by law." 5 USC § 706(2)(D).

### E.    FIFTH CAUSE OF ACTION: VIOLATION OF THE SEPARATION OF POWERS: The Public Health Service Act is an improper delegation of legislative power.

769.    All plaintiffs have been restricted from using public transportation because of the FTMM.

770.    The U.S. Constitution provides that "All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives." Art. I, § 1.

771.    Under the nondelegation doctrine, Congress cannot transfer legislative power to the Executive Branch. Acts of Congress must supply an intelligible principle to guide the Executive Branch's enforcement discretion.

772.    To comply with the nondelegation doctrine, a statute must delineate: 1) a general policy; 2) the agency to apply it; and 3) the boundaries of the delegated authority. The boundaries of the delegated authority must meaningfully constrain the Executive Branch's discretion.

773.    If the Court finds it does authorize the FTMM, § 361 of the Public Health Service Act (42 U.S.C. § 264) violates Article I's Vesting Clause and the separation of powers because Congress delegated legislative power to CDC and HHS with no intelligible principle to guide its discretion. That section authorizes CDC "to make and enforce such regulations as in [its] judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases … from one State or possession into any other State or possession." 42 USC § 264(a).

774.    If PHSA § 361 is so broad as to authorize the FTMM, then Congress provided no intelligible principle to guide CDC's discretion to take actions that "are necessary" to "prevent the introduction, transmission, or spread of communicable diseases." *Id.* Vesting CDC with such broad authority and discretion without an intelligible principle violates the nondelegation doctrine.

775.    Notably Congress has declined numerous times during the two-year-long COVID-19 pandemic to enact into law any mask requirement. ¶¶ 232-236.

776.    The Senate voted 57-40 on March 15, 2022, to pass Senate Joint Resolution 37 disapproving of CDC's FTMM order. "[S]uch rule shall have no force or effect." Ex. 108.

777.    The Court should declare that § 361 of the Public Health Service Act is unconstitutional because it violates Article I and the separation of powers.

778.    The Court should hold unlawful and set aside the FTMM because it is "found to be … contrary to constitutional right, power, privilege, or immunity." 5 USC § 706(2)(B).

F.   **SIXTH CAUSE OF ACTION**: **VIOLATION OF THE 10TH AMENDMENT: The FTMM applies to intrastate transportation in direct conflict with the mask policies of all 50 states, infringes on the states' sovereign police power to regulate public health, and commandeers state officials to enforce a federal order.**

779.   All plaintiffs have been restricted from using public transportation because of the FTMM.

780.   "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. Amend. 10.

781.   The 10th Amendment precludes CDC and HHS from applying any national mask mandate to intrastate transportation. The federal government only has constitutional authority to regulate interstate commerce. Most modes of transportation affected by the FTMM such as airport and hotel shuttles, city buses, subways, light rail, commuter trains, and rideshare cars never cross state lines. Many flights are likewise wholly intrastate, and airport terminals of course do not ever move and therefore can't cross state borders.

782.   In addition to all 50 states not requiring masks, 14 states prohibit any public agency such as an airport or transit authority from requiring face coverings. Ex. 136. The federal government may not pre-empt the states' authority when it comes to regulating public health within their own borders. ¶¶ 440-444.

783.   The FTMM unconstitutionally commandeers state officials such as airport authority employees to enforce a federal mandate.

784.   The Court should declare the FTMM is unconstitutional because it violates the 10th Amendment.

785.   The Court should hold unlawful and set aside the FTMM as "contrary to constitutional right, power, privilege, or immunity." 5 USC § 706(2)(B).

G.   **SEVENTH CAUSE OF ACTION**: **VIOLATION OF THE FIFTH AMENDMENT AGAINST DEFENDANTS CDC AND HHS: Deprivation of**

**due process by assigning Federal Transportation Mask Mandate enforcement and exemption powers to private companies as well as state, regional, and local agencies with no ability to appeal to a federal decision-maker.**

786.    All plaintiffs have been denied mask exemptions by private corporations such as airlines with no opportunity to appeal their decision to a neutral federal decision-maker.

787.    "No person shall … be deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. 5.

788.    When a government action deprives an individual of a protected life, liberty, or property interest, the Due Process Clause requires, at minimum, fair notice and an opportunity to be heard.

789.    Travelers hold constitutionally protected liberty interests in being able to breathe without the obstruction caused by a face mask, to make our own medical decisions without government interference, and to not have a policy imposed on us that results in numerous adverse health effects.

790.    The FTMM deprives travelers of our liberty without satisfying the requirements of due process. CDC and HHS have improperly delegated to private businesses as well as state, regional, and local transportation authorities the sole enforcement power to determine whether a disabled traveler should be granted a mask exemption. There is no right to a hearing – yet alone a rapid pre-deprivation hearing – before a neutral federal decision-maker to challenge a denial of an exemption.

791.    The Court should declare the FTMM is unconstitutional because it violates the Fifth Amendment.

792.    The Court should hold unlawful and set aside the FTMM as "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

**H.    <u>EIGHTH CAUSE OF ACTION</u>: VIOLATION OF THE CONSTITUTIONAL RIGHT TO FREEDOM OF TRAVEL AGAINST DEFENDANTS CDC AND HHS: The Federal Transportation Mask Mandate blocks Americans who can't or won't wear a face mask from traveling.**

793.    All plaintiffs have been restricted from using public transportation because of the FTMM.

794.    Ever since adoption of the Articles of Confederation, Americans have had a fundamental right to travel to other states and territories. The Supreme Court has also interpreted that right to include travel to foreign nations.

795.    Although the Constitution does not expressly mention the freedom to travel, the Supreme Court has long interpreted rights reserved to the people as including the freedom to move about the nation (and world) without unnecessary government restrictions.

796.    Congress affirmed the constitutional right to fly for disabled Americans by enshrining it into statute: "A citizen of the United States has a public right of transit through the navigable airspace. To further that right, the Secretary of Transportation shall consult with the Architectural and Transportation Barriers Compliance Board … before prescribing a regulation or issuing an order or procedure that will have a significant impact on the accessibility of commercial airports or commercial air transportation for handicapped individuals." 49 USC § 40103.

797.    The FTMM imposes unnecessary government restrictions on our constitutional right to travel, especially since we have disabilities that preclude us from safely wearing a mask.

798.    The Court should declare the FTMM is unconstitutional because it violates the freedom to travel.

799.    The Court should hold unlawful and set aside the FTMM as "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

I.      **NINTH CAUSE OF ACTION: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT AGAINST DEFENDANTS CDC AND HHS: The Federal Transportation Mask Mandate does not comply with the Air Carrier Access Act and its underlying regulations.**

800.    All plaintiffs have been restricted from using public transportation because of the FTMM.

801.    The ACAA, 49 USC § 41705, and its accompanying regulations promulgated by DOT, 14 CFR Part 382, spell out specific procedures for dealing with airline passengers who have disabilities and/or a communicable disease.

802.    The FTMM allows transportation carriers to declare that all passengers are assumed to be infected with COVID-19. However, airlines are prohibited from requiring a passenger to wear a face covering or refuse him/her transportation unless they determine that the passenger "has" a communicable disease and poses a "direct threat" to other passengers and the flight crew. 14 CFR § 382.21.

803.    The FTMM's presumption that every single traveler is infected with COVID-19 and therefore must wear a face covering violates the regulation that "In determining whether an individual poses a direct threat, you must make an individualized assessment." 14 CFR § 382.19(c)(1).

804.    The FTMM allows airlines to refuse to transport any disabled person who can't wear a face mask. However, "[Y]ou must not refuse to provide transportation to a passenger with a disability on the basis of his or her disability, except as specifically permitted by this part." 14 CFR § 382.19(a).

805.    The FTMM allows airlines to demand a medical certificate from a passenger who demands a mask exemption. However, "Except as provided in this section, you must not require a passenger with a disability to have a medical certificate as a condition for being provided transportation." 14 CFR § 382.23(a). "You may also require a medical certificate for a passenger if he or she *has* a communicable disease or condition that could pose a direct threat to the health or safety of others on the flight." 14 CFR § 382.23(c)(1) (emphasis added).

806.    The FTMM permits airlines to require passengers seeking mask exceptions to undergo an evaluation with a third-party medical vendor such as STAT-MD and MedAire. However, since airlines may not require a medical certificate for a passenger unless he/she "has" a communicable disease (14 CFR § 382.23(a)), they may also not require a third-party medical consultation. "[Y]ou may require that a passenger *with a medical certificate* undergo additional medical review by you if there is a legitimate medical reason for

1    believing that there has been a significant adverse change in the passenger's condition since

2    the issuance of the medical certificate…" 14 CFR § 382.23(d) (emphasis added).

3         807.    The FTMM allows airlines to require a negative COVID-19 test from anyone

4    seeking a mask exemption. However, no provision of the ACAA or its accompanying

5    regulations (nor any other law) permits CDC and HHS to allow airlines to require that

6    passengers submit a negative test for any communicable disease. Mandating disabled flyers

7    needing a mask exemption submit an expensive COVID-19 test before checking in but not

8    requiring the same of nondisabled travelers is illegal discrimination. "[Y]ou must not

9    subject passengers with a disability to restrictions that do not apply to other passengers…"

10   14 CFR § 382.33(a).

11        808.    The FTMM allows airlines to limit the number of mask-exempt passengers

12   on a flight. However, "[Y]ou must not limit the number of passengers with a disability who

13   travel on a flight." 14 CFR § 382.17.

14        809.    The FTMM permits airlines to change the seat assignments of mask-exempt

15   customers, e.g. moving us to the back of the plane. However, "[Y]ou must not exclude any

16   passenger with a disability from any seat or require that a passenger with a disability sit in

17   any particular seat, on the basis of disability, except to comply with FAA or applicable

18   foreign government safety requirements." 14 CFR § 382.87(a).

19        810.    The FTMM permits airlines to require advance notice (usually via an

20   application submitted up to 10 days before a flight) from a disabled passenger needing a

21   mask exemption. However, "As a carrier, you must not require a passenger with a disability

22   to provide advance notice of the fact that he or she is traveling on a flight." 14 CFR §

23   382.25.

24        811.    CDC and HHS may not issue an order that violates a statute such as the

25   ACAA or the regulations duly promulgated thereunder (as codified in the U.S. Code and

26   Code of Federal Regulations).

27        812.    The Court should hold unlawful and set aside the FTMM because it violates

28   the ACCA and its regulations concerning transportation of passengers with disabilities

29

and/or communicable diseases, making it "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 USC § 706(2)(C).

**J.    TENTH CAUSE OF ACTION: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT: The FTMM violates federal law prohibiting the mandatory use of any medical device unauthorized or approved under an Emergency Use Authorization by the Food & Drug Administration.**

813.    All plaintiffs have been restricted from using public transportation because of the FTMM.

814.    CDC and HHS force American travelers and transportation workers to use a medical device (face masks), most of which are approved by FDA – an agency within HHS – under Emergency Use Authorization, or have no authorization at all. ¶¶ 402-439.

815.    CDC and HHS failed to consider that airline companies and their employees (including flight attendants) are not individuals with the appropriate ethics and scientific education, training, and qualifications to order passengers and employees to use experimental medical devices unauthorized by FDA or issued under an EUA.

816.    CDC and HHS failed to consider that airline companies are not competent and appropriately qualified physicians or other healthcare professionals able to evaluate who can't medically tolerate covering their nose and mouth.

817.    The FTMM is dangerous because it forces passengers and workers to use a medical device, the vast majority of which are unauthorized or approved by FDA under an EUA.

818.    CDC and HHS, through their partner agency TSA, provide unauthorized and/or EUA masks to passengers and employees, introducing these experimental medical devices into interstate commerce.

819.    Transportation providers and hubs also provide passengers with unauthorized and/or EUA masks to comply with the FTMM.

820.    Individuals to whom any EUA product is offered must be given "the option to accept or refuse administration of the product…" 21 USC § 360bbb-3(e)(1)(A)(ii)(III).

821.   The FTMM violates the Food, Drug, & Cosmetic Act by not giving passengers and workers our legal option to refuse administration of an FDA unauthorized or EUA medical device (a face mask).

822.   It's a longstanding principle, codified in law, that it is not permissible to coerce anyone to receive an unlicensed medical product.

823.   Congress specifically carved out only one exception for when an individual would not have the option to refuse administration of an emergency medical device. The law's condition that all people must be given the right to refuse use of an EUA product "may be waived only by the President only if the President determines, in writing, that complying with such requirement is not in the interests of national security." 10 USC § 1107a(a)(1). This provision only applies to "members of the armed forces." *Id*.

824.   We are not members of the armed forces, and the president has not declared that mandatory use of face masks is required for national security.

825.   There's good reason for the law prohibiting forced use of EUA medical devices. Requirements for EUA products are waived for, among other things, "current good manufacturing practice otherwise applicable to the manufacture, processing, packing … of products subject to regulation under this chapter…" 21 USC § 360bbb-3(e)(3)(A).

826.   "Nothing in this section provides the [HHS] Secretary any authority to require any person to carry out any activity that becomes lawful pursuant to an authorization under this section…" 21 USC § 360bbb-3(l). But the FTMM requires us to carry out forced use of EUA masks.

827.   Congress' prohibition of mandatory mask use is consistent with HHS' regulations requiring that participants in trials of experimental medical devices must be informed that "participation is voluntary, refusal to participate will involve no penalty…" 45 CFR § 46.116(a)(8).

828.   Likewise FDA regulations state that no human shall participate in research trials of uncertified medical devices unless "the investigator has obtained the legally effective informed consent of the subject…" 21 CFR § 50.20.

829.    A person may freely choose to accept medical risks for the benefit of others; they cannot be compelled by the federal government. We don't harvest organs without consent, even if doing so would save many lives. Those who make such sacrifices for others must truly be volunteers, not conscripts.

830.    The defendants have no authority to order us to obstruct our breathing as a condition of transportation, causing numerous harms, to perhaps spare another person from catching a virus.

831.    "Protection of others" does not relieve the defendants from the central canon of medical ethics requiring voluntary and informed consent.

832.    The Court should hold unlawful and set aside the FTMM because it violates the FDCA, making it "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 USC § 706(2)(C).


K.    **ELEVENTH     CAUSE     OF     ACTION**:     VIOLATION     OF     THE
**ADMINISTRATIVE PROCEDURE ACT AGAINST DEFENDANTS CDC
AND HHS: The International Traveler Testing Requirement exceeds the
agencies' statutory authority under the Public Health Service Act.**

833.    Plaintiffs Uri and Yvonne Marcus, who are American and Israeli dual citizens, have been restricted from flying to the United States because of the ITTR.

834.    The ITTR exceeds CDC and HHS' authority under § 361 of the Public Health Service Act. 42 U.S.C. § 264. Section 361 does not include any authority to test all international flyers departing a foreign nation for the USA for a communicable disease.

835.    Section 361 does not authorize CDC and HHS to make a decision of such economic and political significance.

836.    The agencies' interpretation of Section 361 as authorizing the ITTR is not entitled to *Chevron* deference.

837.    The Court should hold unlawful and set aside the ITTR because CDC and HHS acted in excess of statutory authority. 5 U.S.C. § 706(2)(C).

**L.  TWELTH CAUSE OF ACTION: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT AGAINST DEFENDANTS CDC AND HHS: failure to observe the notice-and-comment procedure required by law before ordering the International Traveler Testing Requirement.**

838.    Plaintiffs Uri and Yvonne Marcus, who are American and Israeli dual citizens, have been restricted from flying to the United States because of the ITTR.

839.    The ITTR is an "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. It represents the consummation of CDC's decision-making process with respect to requiring testing for anyone flying into the United States. And it affects our legal rights and obligations because it prevents us from flying into the USA without obtaining an expensive, time-consuming, and unreliable COVID-19 test.

840.    The APA requires agencies to issue rules through a notice-and-comment process. 5 USC § 553.

841.    The ITTR is a rule within the meaning of the APA because it is "an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." 5 USC § 551(4).

842.    CDC issued the ITTR without engaging in the notice-and-comment process. 5 USC § 553.

843.    Good cause does not excuse CDC's failure to comply with the notice-and-comment process. 5 USC § 553(b)(3)(B).

844.    The Court should hold unlawful and set aside the ITTR because it violates the APA's notice-and-comment requirement. 5 USC § 706(2)(D).

**M.  THIRTEENTH CAUSE OF ACTION: VIOLATION OF ADMINISTRATIVE PROCEDURE ACT AGAINST DEFENDANTS CDC AND HHS: arbitrary and capricious agency action in ordering the International Traveler Testing Requirement.**

845.    Plaintiffs Uri and Yvonne Marcus, who are American and Israeli dual citizens, have been restricted from flying to the United States because of the ITTR.

846.    The administrative record shows that CDC and HHS failed to consider the burden of requiring all airline passengers to obtain a negative COVID-19 test within one day of departure.

847.    The administrative record shows that CDC and HHS failed to consider that travelers arriving into the United States by land or sea – including millions of illegal aliens crossing the border from Mexico – pose the same or higher risk of bringing corona virus into the country than travelers arriving by airplane.

848.    The administrative record produced by CDC and HHS fails to articulate any rationale for why airplane travelers should be tested for COVID-19 within a day of entering the United States but not those crossing by land or sea.

849.    The ITTR has not stopped new COVID-19 variants from entering the United States, as is its stated purpose.

850.    The Court should hold unlawful and set aside the ITTR because it is arbitrary, capricious, and an abuse of discretion. 5 U.S.C. § 706(2)(A)

N.    **FOURTEENTH CAUSE OF ACTION: VIOLATION OF THE SEPARATION OF POWERS AGAINST DEFENDANTS CDC & HHS: The International Traveler Testing Requirement is an improper delegation of legislative power.**

851.    Plaintiffs Uri and Yvonne Marcus, who are American and Israeli dual citizens, have been restricted from flying to the United States because of the ITTR.

852.    The U.S. Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." U.S. Const. Art. I, § 1. Under the nondelegation doctrine, Congress cannot transfer legislative power to the Executive Branch. Acts of Congress must supply an intelligible principle to guide the Executive Branch's enforcement discretion.

853.    If the Court finds it does authorize the ITTR, § 361 of the Public Health Service Act (42 U.S.C. § 264) violates Article I's Vesting Clause and the separation of

powers because Congress delegated legislative power to CDC and HHS with no intelligible principle to guide their discretion. That section authorizes CDC "to make and enforce such regulations as in [its] judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases … from one State or possession into any other State or possession." 42 U.S.C. § 264(a). The statute further provides that CDC may take certain specific measures as well as "other measures, as in [its] judgment may be necessary." *Id.*

854.   If § 361 is so broad as to authorize the ITTR, then Congress provided no intelligible principle to guide CDC's discretion to take actions that "are" or "may be necessary" to "prevent the introduction, transmission, or spread of communicable diseases." *Id.* Vesting CDC with such broad authority and discretion without an intelligible principle violates the non-delegation doctrine.

855.   Notably Congress has declined numerous times during the 25-month-long COVID-19 pandemic to enact into law any traveler testing requirement.

856.   The Court should declare that § 361 of the Public Health Service Act is unconstitutional because it violates Article I and the separation of powers.

857.   The Court should hold unlawful and set aside the FTMM because it is "found to be … contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

**O.  FIFTEENTH   CAUSE   OF   ACTION**:   VIOLATION   OF   THE CONSTITUTIONAL RIGHT TO FREEDOM OF TRAVEL AGAINST DEFENDANTS CDC AND HHS: The International Traveler Testing Requirement interferes with Americans' right to travel internationally.**

858.   Plaintiffs Uri and Yvonne Marcus, who are American and Israeli dual citizens, have been restricted from flying to the United States because of the ITTR.

859.   The ITTR imposes unnecessary government restrictions on my constitutional right to travel internationally. If I'm abroad and can't obtain a rapid COVID-19 test, I am prohibited from flying home to the United States.

860.   The Court should declare the ITTR is unconstitutional because it violates the freedom to travel.

861.   The Court should hold unlawful and set aside the FTMM as "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

**P.   SIXTEENTH CAUSE OF ACTION: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT AGAINST DEFENDANTS CDC AND HHS: The International Traveler Testing Requirement violates federal law prohibiting the mandatory use of any medical device unauthorized or approved under an Emergency Use Authorization by the Food & Drug Administration.**

862.   Plaintiffs Uri and Yvonne Marcus, who are American and Israeli dual citizens, have been restricted from flying to the United States because of the ITTR.

863.   CDC and HHS force American travelers to use a medical device (COVID-19 tests), most of which are approved by FDA – an agency within HHS – under Emergency Use Authorization, or have no authorization at all.

864.   The ITTR acknowledges that many COVID-19 tests are only approved for emergency use. "Viral Test means a viral detection test for current infection (i.e., a nucleic acid amplification test [NAAT] or a viral antigen test) cleared, approved, or issued an emergency use authorization (EUA) by the U.S. Food and Drug Administration…" Ex. 44.

865.   Since the ITTR only applies in foreign countries, there is no way for an airline passenger to determine if a testing procedure available locally is authorized by FDA, which lacks jurisdiction outside the United States.

866.   CDC and HHS have no way to verify the authenticity and reliability of COVID-19 tests manufactured abroad without FDA authorization.

867.   The ITTR violates the Food, Drug, & Cosmetic Act by not giving passengers our legal option to refuse administration of an FDA unauthorized or EUA medical device (a COVID-19 test).

868.   Individuals to whom any EUA product is offered must be informed "of the option to accept or refuse administration of the product…" 21 USC § 360bbb-3(e)(1)(A)(ii)(III).

869.   "Nothing in this section provides the [HHS] Secretary any authority to require any person to carry out any activity that becomes lawful pursuant to an authorization under this section…" 21 USC § 360bbb-3(l).

870.   The Court should hold unlawful and set aside the FTMM because it violates the FDCA, making it "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 USC § 706(2)(C).

Q.   **SEVENTEENTH CAUSE OF ACTION: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT AGAINST DEFENDANTS CDC AND HHS: The International Traveler Testing Requirement does not comply with the International Covenant on Civil & Political Rights.**

871.   Plaintiffs Uri and Yvonne Marcus, who are American and Israeli dual citizens, have been restricted from flying to the United States because of the ITTR.

872.   In carrying out all federal aviation laws, the Executive Branch "shall act consistently with obligations of the United States Government under an international agreement." 49 USC § 40105(b)(1)(A).

873.   "2. Everyone shall be free to leave any country, including his own. 3. The above-mentioned rights shall not be subject to any restrictions except those which are provided by law… 4. No one shall be arbitrarily deprived of the right to enter his own country." ICCPR Art. 12.

874.   Congress has never passed a law mandating virus testing before boarding a fight to the United States.

875.   As dual citizens of the United States and Israel, the ITTR interferes with the Marcuses' freedom to leave any country and arbitrarily deprives them of the right to enter their own country of citizenship.

876.    The Court should hold unlawful and set aside the ITTR because it violates the ICCPR, making it "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 USC § 706(2)(C).

**R.    EIGHTEENTH CAUSE OF ACTION: VIOLATION OF THE FIRST AMENDMENT AGAINST DEFENDANTS TRANSPORTATION SECURITY ADMINISTRATION AND JULIE CARRIGAN IN HER OFFICIAL CAPACITY.**

877.    TSA and Ms. Carrigan revoked Mr. Marcus' Pre-Check status. Ex. 25.

878.    TSA acknowledges that its "security screening policies, procedures and practices must comply with all applicable civil liberties and civil rights laws, regulations, executive orders and policies and must not discriminate against travelers on the basis of … disability…" Ex. 73.

879.    Mr. Marcus is concerned that by revoking his TSA Pre-Check eligibility, the agency might have placed him on the terrorist watchlist because he sued the agency to vacate the FTMM and has associated with others to protest the FTMM.

880.    "The Terrorist Screening Center, a multi-agency center administered by the FBI, is the U.S. Government's consolidated counterterrorism watchlisting component and is responsible for the management and operation of the Terrorist Screening Database, commonly known as 'the watchlist.'" Ex. 74.

881.    TSA is not permitted by law to place anyone in the Terrorist Screening Database because of constitutionally protected rights such as protesting an *ultra vires* policy such as the FTMM: "The TSC is dedicated to ensuring watchlisting and screening activities are conducted in a manner consistent with protecting privacy and civil liberties. Individuals are included in the watchlist when there is reasonable suspicion to believe that a person is a known or suspected terrorist. Individuals are not watchlisted based solely on … any First Amendment-protected activities such as free speech … freedom of peaceful assembly, and petitioning the government for redress of grievances." *Id*.

882.   TSA's revocation of Mr. Marcus' Pre-Check benefit clearly represents illegal retaliation against him for suing TSA to stop the FTMM and participating in discussions about how to protest the mandate. Because he has not flown in the United States since Dec 9, 2020, there is no other reason TSA would suddenly revoke his Pre-Check eligibility except for blatant retaliation for his First Amendment-protected activities.

883.   Mr. Marcus has not been arrested or charged with any crimes. He has not even been in the United States since December 2020 (due to the FTMM and ITTR prohibiting him from flying to the USA).

884.   TSA's action annulling Mr. Marcus' Pre-Check eligibility because he is suing the agency and is an outspoken critic of the FTMM represents the absolute worst form of vengeance against a citizen exercising his First Amendment rights to petition the government for a redress of grievances as well as to freedom of speech and to associate.

885.   Suing TSA in the Court of Appeals does not in any way mean that Mr. Marcus no longer "pose[s] a sufficiently low risk to transportation and national security." Ex. 25.

886.   TSA's enabling act is the Aviation & Transportation Security Act, P.L. 107–71, 115 Stat. 597, codified at 49 USC § 114. TSA's function is limited by law to address security threats. In no way has Congress authorized TSA to declare passengers litigating against its orders a "risk to transportation and national security," potential terrorists, or otherwise subject them to additional security screening.

887.   TSA may not conceal its unlawful act of revoking my Pre-Check eligibility by claiming the "comprehensive background check" it did on me is secret Sensitive Security Information. The law specifically exempts any information used to retaliate against a litigant from being classified as SSI. "Nothing in this subsection, or any other provision of law, shall be construed to authorize the designation of information as sensitive security information (as defined in section 1520.5 of title 49, Code of Federal Regulations) – (A) to conceal a violation of law, inefficiency, or administrative error; (B) to prevent embarrassment to a person, organization, or agency…" 49 USC § 114(r)(4).

888.     This Court has not only the constitutional authority but also statutory authority to issue a writ compelling TSA to reinstate my Pre-Check eligibility. "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 USC § 1651(a).

**S.     NINETEENTH CAUSE OF ACTION: *BIVENS* ACTION FOR VIOLATING FIRST AMENDMENT RIGHTS AGAINST DEFENDANT JULIE CARRIGAN IN HER INDIVIDUAL CAPACITY.**

889.     Ms. Carrigan signed the letter revoking Mr. Marcus' Pre-Check status despite knowing the action was being taken in violation of his First Amendment rights to protest, speak out against illegal government mandates, associate with other FTMM opponents, and petition the government for a redress of grievances by filing a lawsuit against TSA's mask mandate in the Court of Appeals. Ex. 25.

890.     Under the *Bivens* doctrine. Ms. Carrigan is liable to Mr. Marcus for monetary damages in her individual capacity for violating his constitutional rights.

**T.     TWENTIETH CAUSE OF ACTION: CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS AGAINST THE AIRLINE DEFENDANTS, THE MEDICAL DEFENDANTS, AND THE YET-TO-BE-NAMED INDIVIDUAL DEFENDANTS.**

891.     All plaintiffs have been restricted from flying because of the airlines' mask policies and the decisions made by STAT-MD and MedAire to arbitrarily deny mask exemptions, when the airlines aren't even permitted to require medical consultations.

892.     The disabled are a class Congress has designated for protection against civil-rights violations. In adopting the RA, the ACAA, and the Americans with Disabilities Act, *inter alia*, Congress has made unmistakably clear that the national policy of the United States to protect the disabled as a class from discrimination in all facets of American life.

893.    The Airline Defendants conspired to deprive disabled Americans, a protected class, of our civil rights by adopting policies in Summer 2020 that banned anyone medically unable to wear a face mask from using the nation's air-transportation system.

894.    Only Delta and Hawaiian declined to participate in the conspiracy to totally ban disabled flyers, but partook partially by forcing an illegal medical-consultation process at the airport during check-in.

895.    STAT-MD and MedAire have participated in the conspiracy by denying mask-exemption demands for their airline clients submitted by disabled passengers without speaking to the passenger or his/her doctor.

896.    Since the ACAA prohibits airlines from forcing disabled passengers to undergo medical consultations except in a few specific circumstances, STAT-MD and MedAire are prohibited from offering such services except for the few types allowed by regulation. Force masking is not an exception.

897.    All Americans, especially the disabled, have a statutory right to use commercial air transportation. "A citizen of the United States has a public right of transit through the navigable airspace. To further that right, the Secretary of Transportation shall consult with the Architectural and Transportation Barriers Compliance Board established under section 502 of the Rehabilitation Act of 1973 (29 U.S.C. 792) before prescribing a regulation or issuing an order or procedure that will have a significant impact on the accessibility of commercial airports or commercial air transportation for handicapped individuals." 49 USC § 40103.

898.    After the FTMM took effect Feb. 1, 2021, the Airline Defendants continued to conspire against disabled Americans by making mask exemptions nearly impossible to obtain by requiring applicants to jump through numerous illegal hoops in violation of the RA, ACAA, and California law.

899.    Congress has declined numerous times to amend the ACAA during the pandemic to allow the defendants to impose mask mandates on the disabled. Congress has also declined to enact a mask mandate for any traveler. The only floor vote taken on

masking in the transportation sector was the Senate's 57-40 decision to kill the FTMM. Ex. 108.

900.    The Airline Defendants are not required to enforce the FTMM because it was issued illegally by the Executive Branch and is unconstitutional. *See* Counts 1-10.

901.    The Airline Defendants' conspiracy continues today as millions of disabled Americans who can't safely wear masks are banned from our statutory right to use the nation's airspace solely because of our disability that precludes us from safely wearing a mask.

902.    "If two or more persons in any State or Territory conspire … for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws… in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators." 42 USC § 1985(3).

903.    The essential elements of a § 1985 claim are: 1) a conspiracy; 2) to deprive plaintiffs of equal protection or equal privileges and immunities; 3) an act in furtherance of the conspiracy; and 4) an injury or deprivation resulting therefrom.

904.    We have presented facts above, and expect to further prove through discovery, that the Airline Defendants conspired – with each other, with other air carriers, within their own companies, and with STAT-MD and MedAire – to ban disabled flyers because of a discriminatory motive. The conspiracy is not driven by public-health considerations since masks are totally worthless in reducing the transmission of respiratory viruses such as COVID-19 and harm human health. Rather the defendants are motivated by a class-based, invidiously discriminatory animus resulting in an unfounded, ridiculous fear that healthy, uninfected disabled travelers who can't wear a face mask are somehow a grave danger.

905.   The conspiracy applies to both inter-corporate and intra-corporate actions.

**U.**   **TWENTY-FIRST CAUSE OF ACTION**: **NEGLECTING TO PREVENT INTERFERENCE WITH CIVIL RIGHTS AGAINST THE YET-TO-BE-NAMED INDIVIDUAL DEFENDANTS.**

906.   All plaintiffs have been restricted from flying because of the airlines' mask policies.

907.   Mr. Marcus' Pre-Check status was revoked by Julie Carrigan because he's a disabled American who has spoken out against the FTMM. Ex. 25.

908.   The yet-to-be-named Individual Defendants (whose names will be obtained during discovery) were aware of the conspiracy to interfere with the civil rights of the disabled by banning us from all flights but did nothing to stop it.

909.   These Individual Defendants possess the power to stop the conspiracy today but have not taken any action to do so. This claim is thus ongoing and the one-year statute of limitations does not apply.

910.   "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action…" 42 USC § 1986.

911.   Section 1986 creates a remedy against persons whose acquiescence make conspiracies to interfere with civil rights possible.

912.   Designed to provide private remedies to individuals deprived of their civil rights, these statutes were written in general terms that have been interpreted broadly to protect individuals from a wide range of discriminatory conduct.

## V.   <u>TWENTY-SECOND CAUSE OF ACTION</u>: VIOLATION OF THE REHABILITATION ACT AGAINST THE AIRLINE DEFENDANTS.

913.   All plaintiffs have been restricted from flying because of the airlines' mask policies.

914.   The Airline Defendants have accepted federal financial assistance during the COVID-19 pandemic, subjecting them to the Rehabilitation Act.

915.   Recipients of federal funds are prohibited from discriminating against the disabled. But the Airline Defendants have banned from their aircraft all passengers with medical conditions that prohibit us from safely covering our faces.

916.   "No otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 USC § 794(a).

917.   "[T]he term 'program or activity' means all of the operations of … an entire corporation, partnership, or other private organization, or an entire sole proprietorship — (i) if assistance is extended to such corporation, partnership, private organization, or sole proprietorship as a whole…" 29 USC § 794(b).

918.   "The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d *et seq*.) (and in subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e-5), applied to claims of discrimination in compensation) shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title." 29 USC § 794a(2).

919.   The rights of the disabled to be free from discrimination in all facets of society were later articulated by Congress in the Americans with Disabilities Act. Although the ADA does not apply to airlines, its statutory purpose should be used in interpreting the RA and ACAA.

920.   "Congress finds that — (1) physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination; others

who have a record of a disability or are regarded as having a disability also have been subjected to discrimination; (2) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem; (3) discrimination against individuals with disabilities persists in such critical areas as … transportation … (4) … individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination; (5) individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion… (6) census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally; (7) the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals; and (8) the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity." 42 USC § 12101(a).

921.   "It is the purpose of this chapter — (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities…" 42 USC § 12101(b).

922.   "[M]ajor life activities include, but are not limited to, … breathing … a major life activity also includes the operation of a major bodily function, including but not limited to, … neurological, brain, respiratory … functions. … The definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter…" 42 USC § 12102.

923.   A recipient of federal funds is subject to suit under the RA for compensatory damages, which traditionally includes damages for both pecuniary and non-pecuniary

injuries. Examples of non-pecuniary damages include pain and suffering, emotional trauma/distress, deprivation of constitutional and legal rights, and diminished quality of life.

**W.  TWENTY-THIRD CAUSE OF ACTION: VIOLATION OF THE REHABILITATION ACT AND AIR CARRIER ACCESS ACT AGAINST THE AIRLINE DEFENDANTS: Requiring passengers not known to have a communicable disease to wear a face covering, refusing to provide mask exemptions to the disabled, and banning passengers who need to remove their masks to breathe.**

924.    All plaintiffs have been restricted from flying because of the airlines' mask policies.

925.    The Airline Defendants require passengers who do not have a communicable disease to don a face mask or be refused transportation.

926.    The ACAA, 49 USC § 41705, and its accompanying regulations, 14 CFR Part 382, spell out specific procedures for dealing with airline passengers who are ***known*** to have a communicable disease. The Airline Defendants' mask policies violate these regulations by assuming that every passenger has a communicable disease such as COVID-19.

927.    Airlines are prohibited from requiring that a passenger wear a face covering or refuse him/her transportation unless they determine that the passenger "has" a communicable disease and poses a "direct threat" to other passengers and the flight crew. 14 CFR § 382.21.

928.    The Airline Defendants' rules illegally assume every single traveler is infected with COVID-19. This violates the regulation that "In determining whether an individual poses a direct threat, you must make an individualized assessment." 14 CFR § 382.19(c)(1).

929.    The Airline Defendants' mask policies don't provide for making an "individualized assessment" of whether someone is known to have COVID-19 or another communicable disease. They do not use the federal government's Do Not Board and

Lookout systems to identify passengers who have tested positive for corona virus or another communicable disease to prevent them from boarding a flight, using the knowledge from these databases that a person "has" a virus. The defendants instead impose a blanket policy that every single traveler must wear a face covering, even though more than 99% of passengers every day are virus-free.

930.    According to DOT, "If a person who seeks passage **has an infection or disease** that would be transmittable during the normal course of a flight, and that has been deemed so by a federal public health authority knowledgeable about the disease or infection, then the carrier may: … **Impose on the person a condition or requirement not imposed on other passengers (e.g., wearing a mask)**." Ex. 148 (emphasis added). This is the only scenario airlines are permitted to force any passenger to don a face covering.

931.    The Airline Defendants have since Summer 2020 illegally discriminated against disabled passengers with medical conditions who seek exemptions from the illegal blanket mask requirements. They (except Delta and Hawaiian) first banned all disabled flyers entirely, then modified their policies in February/March 2021 to supposedly permit exceptions but make it nearly impossible to obtain them. Even if obtained, numerous illegal provisions are attached as conditions.

932.    "In providing air transportation, an air carrier … may not discriminate against an otherwise qualified individual on the following grounds: (1) the individual has a physical or mental impairment that substantially limits one or more major life activities. (2) the individual has a record of such an impairment. (3) the individual is regarded as having such an impairment." 49 USC § 41705(a).

933.    DOT found Southwest violated the law by refusing to grant any medical exemptions. Ex. 147.

934.    The Airline Defendants all have policies of banning from future flights any passenger who has to remove his/her mask to breathe properly. Ex. 325.

935.    Some courts have determined that a private right of action does not exist under the ACAA because aggrieved passengers may file a complaint with DOT.

936.    Even if this Court determines that in normal circumstances, there is not a right of private action for the disabled to enforce the ACAA, none of the prior caselaw is relevant to this lawsuit because never before has DOT put out a Notice of Enforcement Policy (Ex. 101) telling airlines they may violate the law. This creates an issue of first impression, which the Court must resolve by deciding a private right of action exists when the administrative agency tasked with enforcing a statute blatantly abdicates its legal duty by telling the companies it regulates that they don't have to obey the law.

937.    Congress passes civil-rights laws to protect classes of people subject to discrimination – including the disabled. If the executive department tasked with enforcing the statute neglects its duty, Congress intends for those illegally discriminated against to have a remedy – and in this case, the only remedy is a private lawsuit.

938.    Because DOT hasn't sanctioned the Airline Defendants for their illegal discrimination – and actually put out a notice telling airlines they may violate numerous ACAA regulations – the only remedy for us is this lawsuit.

939.    Even if the Court fails to allow a private right of action under the ACAA, it should enforce the statute and its underlying regulations via the Rehabilitation Act, which has a clearly defined private right to sue for monetary damages and injunctive relief as well as the conspiracy statutes and California anti-discrimination law.

940.    Even if this Court upholds the FTMM, it still must enjoin the Airline Defendants' illegal mask-exemption procedures. The FTMM itself states that passengers with medical conditions who can't tolerate wearing a face mask are exempt from the order, but the defendants have put into place numerous illegal onerous requirements that make obtaining an exemption virtually impossible – essentially banning all Americans who medically can't wear a mask from utilizing the nation's air-transportation system, which we have a statutory right to. 49 USC § 40103.

941.    In considering congressional intent, this Court has to review actions Congress has taken during the COVID-19 pandemic. Airline mask policies – and especially their discriminatory refusal to follow the law in granting exemptions to those with disabilities – without any doubt go against the express wishes of Congress. The Legislative Branch has

explicitly failed to mandate masks in any setting. This shows clear, unambiguous congressional intent.

942.   No law passed by Congress during the COVID-19 pandemic has waived the legal requirement that the Airline Defendants shall not discriminate against passengers with disabilities.

943.   "No otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 USC § 794(a).

944.   The Airline Defendants refuse to carry disabled passengers who can't safely wear a mask. The only alternative is to wear a mask to the detriment of our health.

945.   "As a carrier, you must not refuse to provide transportation to a passenger with a disability on the basis of his or her disability, except as specifically permitted by this part." 14 CFR § 382.19(a).

946.   Even if an airline determines "that the passenger does pose a direct threat, you must select the least restrictive response from the point of view of the passenger … For example, you must not refuse transportation to the passenger if you can protect the health and safety of others by means short of a refusal." 14 CFR § 382.19(c)(2).

X.   **TWENTY-FORTH CAUSE OF ACTION**: VIOLATION OF THE REHABILITATION ACT AND AIR CARRIER ACCESS ACT AGAINST DEFENDANTS ALASKA, ALLEGIANT, AMERICAN, FRONTIER, SOUTHWEST, AND UNITED: **Requiring passengers seeking mask exemptions do so in advance.**

947.   All plaintiffs have been restricted from flying because of these six airlines' policies mandating that passengers seeking mask exemptions do so in advance.

948.   These defendants require passengers asking for a mask exemption to do so in advance (three days for Alaska, three days for American, 10 days for Allegiant, 10 days for Frontier, seven days for Southwest, and seven days for United).

949.    These six defendants' advance-notice policy discriminates against the disabled by forcing us to book a ticket a certain number of days in advance, a policy that doesn't apply to nondisabled customers. This precludes the disabled who can't safely wear a mask from having the ability to book a ticket within a few days of departure, which limits the ability to travel for work obligations and emergencies such as a death in the family.

950.    "May a carrier require a passenger with a disability to provide advance notice that he or she is traveling on a flight? As a carrier, you must not require a passenger with a disability to provide advance notice of the fact that he or she is traveling on a flight." 14 CFR § 382.25.

951.    "No otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 USC § 794(a).

**Y.   TWENTY-FIFTH   CAUSE   OF   ACTION: VIOLATION   OF   THE REHABILITATION ACT AND AIR CARRIER ACCESS ACT AGAINST DEFENDANTS   ALASKA,   ALLEGIANT,   AMERICAN,   FRONTIER, SOUTHWEST, AND UNITED: Requiring a medical certificate from disabled passengers who ask for a mask exemption.**

952.    All plaintiffs have been restricted from flying because of these six airlines' policies mandating that passengers who ask for a mask exemption submit a medical certificate, also known as a doctor's letter or form.

953.    "Except as provided in this section, you must not require a passenger with a disability to have a medical certificate as a condition for being provided transportation." 14 CFR § 382.23(a).

954.    "You may … require a medical certificate for a passenger if he or she *has* a communicable disease or condition that could pose a direct threat to the health or safety of others on the flight." 14 CFR § 382.23(c)(1) (emphasis added).

955.    This requirement does not include **speculation** that a person **might** have a communicable disease such as COVID-19; evidence is required that the passenger **has** a communicable disease, i.e. has tested positive for the corona virus.

956.    "No otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 USC § 794(a).

**Z.    TWENTY-SIXTH CAUSE OF ACTION: VIOLATION OF THE REHABILITATION ACT AND AIR CARRIER ACCESS ACT AGAINST DEFENDANTS DELTA, HAWAIIAN, AND SOUTHWEST: Requiring disabled passengers needing a mask exemption to undergo a medical screening.**

957.    Plaintiffs Uri and Yvonne Marcus have been restricted from flying because of these three airlines' policies mandating that passengers needing a mask exemption undergo a medical screening with vendors such as STAT-MD and MedAire.

958.    Since airlines may not require a medical certificate for a passenger unless he/she has a communicable disease, they may also not require a third-party medical consultation.

959.    "As a carrier, you may require that a passenger with a medical certificate undergo additional medical review by you if there is a legitimate medical reason for believing that there has been a significant adverse change in the passenger's condition since the issuance of the medical certificate …" 14 CFR § 382.23(d).

960.    "No otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 USC § 794(a).

**AA. TWENTY-SEVENTH CAUSE OF ACTION: VIOLATION OF THE REHABILITATION ACT AND AIR CARRIER ACCESS ACT AGAINST**

**DEFENDANTS ALASKA, ALLEGIANT, AMERICAN, FRONTIER, SOUTHWEST, AND UNITED: Requiring disabled passengers who seek a mask exemption to submit a negative COVID-19 test for each flight when nondisabled customers aren't subject to this same requirement.**

961.   All plaintiffs have been restricted from flying because of these six airlines' policies mandating that passengers needing a mask exemption submit a negative COVID-19 test for each flight.

962.   Nondisabled customers are not required to submit a corona virus test.

963.   No provision of the ACAA or its accompanying regulations promulgated by DOT (nor the RA or any other law enacted by Congress) permits airlines to require passengers submit a negative test for any communicable disease.

964.   Mandating disabled flyers submit an expensive COVID-19 test before checking in but not requiring the same of nondisabled travelers is illegal discrimination. The only legal way airlines could possibly impose a testing requirement is if ALL customers, regardless of disability, were forced to submit virus test results.

965.   "You must not discriminate against any qualified individual with a disability, by reason of such disability, in the provision of air transportation…" 14 CFR § 382.11(a)(1). *See also* 49 USC § 41705.

966.   "[Y]ou must not subject passengers with a disability to restrictions that do not apply to other passengers…" 14 CFR § 382.33(a).

967.   "No otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 USC § 794(a).

**BB. TWENTY-EIGHTH CAUSE OF ACTION: VIOLATION OF THE REHABILITATION ACT AND AIR CARRIER ACCESS ACT AGAINST DEFENDANTS SOUTHWEST AND UNITED: Banning mask-exempt passengers from flying if a plane is more than a certain percentage full.**

968.    Plaintiffs Uri and Yvonne Marcus have been restricted from flying by Defendants Southwest and United.

969.    Southwest and United refuse to board a disabled mask-exempt passenger (if he/she somehow obtained an exception) if a flight is over a set percentage full.

970.    Southwest even states "Passengers may be required to travel on a different date than their scheduled itinerary." Ex. 447.

971.    "As a carrier, you must not limit the number of passengers with a disability who travel on a flight." 14 CFR § 382.17.

972.    "You must not discriminate against any qualified individual with a disability, by reason of such disability, in the provision of air transportation…" 14 CFR § 382.11(a)(1). *See also* 49 USC § 41705.

973.    "[Y]ou must not subject passengers with a disability to restrictions that do not apply to other passengers…" 14 CFR § 382.33(a).

974.    "No otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 USC § 794(a).

CC. **TWENTY-NINTH CAUSE OF ACTION: VIOLATION OF THE REHABILITATION ACT AND AIR CARRIER ACCESS ACT AGAINST DEFENDANTS AMERICAN, ALASKA, HAWAIIAN, SOUTHWEST, AND UNITED: Changing the seat assignment of a mask-exempt passenger without his/her consent.**

975.    Plaintiffs Cindy Russo and Uri and Yvonne Marcus have been restricted from flying by these five airlines.

976.    American, Alaska, Hawaiian, Southwest, and United have a policy instructing gate agents and/or flight attendants to move a mask-exempt passenger to the back of the aircraft or other alternate seats he/she did not select.

*Case #*                                  -133-                                COMPLAINT

977.   American requires mask-exempt passengers sit in the last row of Economy Class or the first row of First Class. They must sit in a window seat even if they select an aisle seat.

978.   "As a carrier, you must not exclude any passenger with a disability from any seat or require that a passenger with a disability sit in any particular seat, on the basis of disability, except to comply with FAA or applicable foreign government safety requirements." 14 CFR § 382.87(a).

979.   "[Y]ou must not subject passengers with a disability to restrictions that do not apply to other passengers…" 14 CFR § 382.33(a).

980.   "No otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 USC § 794(a).

## DD. **THIRTIETH CAUSE OF ACTION**: VIOLATION OF THE REHABILITATION ACT AND AIR CARRIER ACCESS ACT AGAINST DEFENDANT SOUTHWEST: **Limiting the number of disabled passengers on a flight.**

981.   Plaintiffs Uri and Yvonne Marcus have been restricted from flying by American and Southwest.

982.   "Only **one** passenger per flight can have a mask exemption." Ex. 17.

983.   "Southwest requires that Passenger obtaining a mask exemption travel on a flight with … no other Passengers on board approved for a mask exemption." Ex. 447.

984.   As a married couple, the Marcuses would not be allowed to travel together on a Southwest flight if they somehow obtained mask exemptions after referrals to STAT-MD.

985.   "As a carrier, you must not limit the number of passengers with a disability who travel on a flight." 14 CFR § 382.17.

986.   "No otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be

denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 USC § 794(a).

## EE. <u>THIRTY-FIRST CAUSE OF ACTION</u>: VIOLATION OF THE CALIFORNIA UNRUH CIVIL RIGHTS ACT AGAINST THE AIRLINE DEFENDANTS AND THE YET-TO-BE-NAMED INDIVIDUAL DEFENDANTS.

987.   All plaintiffs have been discriminated against because of our disabilities on flights in and out of airports located in California.

988.   "All persons within the jurisdiction of this state are free and equal, and no matter what their … disability, medical condition … are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Calif. Civil Code § 51(b).

989.   "No business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, or refuse to buy from, contract with, sell to, or trade with any person in this state on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51 … because the person is perceived to have one or more of those characteristics..." Calif. Civil Code § 51.5(a).

990.   "Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6." Calif. Civil Code § 52(a).

991.   "Whenever there is reasonable cause to believe that any person or group of persons is engaged in conduct of resistance to the full enjoyment of any of the rights described in this section, and that conduct is of that nature and is intended to deny the full exercise of those rights, … any person aggrieved by the conduct may bring a civil action in the appropriate court by filing with it a complaint." Calif. Civil Code § 52(c).

992.   "Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to facilities, … privileges of all common carriers, airplanes, … and other places to which the general public is invited, subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons." Calif. Civil Code § 54.1(a)(1).

993.   "'Full and equal access,' for purposes of this section in its application to transportation, means access that meets the standards of Titles II and III of the Americans with Disabilities Act of 1990 (Public Law 101-336) and federal regulations adopted pursuant thereto, except that, if the laws of this state prescribe higher standards, it shall mean access that meets those higher standards." Calif. Civil Code § 54.1(a)(3).

994.   All counts against the Airline Defendants based on the Air Carrier Access Act may be enforced via California law since it adopts federal regulations as the standards the transportation sector must adhere to.

995.   "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2 is liable for each offense for the actual damages and any amount as may be determined by a jury, or the court sitting without a jury, up to a maximum of three times the amount of actual damages but in no case less than one thousand dollars ($1,000), and attorney's fees as may be determined by the court in addition thereto, suffered by any person denied any of the rights provided in Sections 54, 54.1, and 54.2." Calif. Civil Code § 54.3(a).

996.   "The remedies in this section are nonexclusive and are in addition to any other remedy provided by law, including, but not limited to, any action for injunctive or other equitable relief available to the aggrieved party…" Calif. Civil Code § 54.3(b).

997.   "Any person who is aggrieved or potentially aggrieved by a violation of Section 54 or 54.1 of this code … may bring an action to enjoin the violation. The prevailing party in the action shall be entitled to recover reasonable attorney's fees." Calif. Civil Code § 55.

1

2    **FF.** <u>**THIRTY-SECOND CAUSE OF ACTION**</u>**: BREACH OF CONTRACT**

3    **AGAINST THE AIRLINES DEFENDANTS: Alaska, Allegiant, American,**

4    **Delta, Hawaiian, and Southwest force passengers to wear masks when we never**

5    **agreed to do so in the contract of carriage. Frontier and United's contract terms**

6    **requiring face coverings are legally unenforceable.**

7        998.   Alaska's contract of carriage contains no mention of "mask" or "face

8    covering." Passengers who book a ticket with Alaska do not agree to obstruct our breathing

9    as a condition of carriage. https://www.alaskaair.com/content/legal/contract-of-carriage/

10   english-COC

11       999.   Allegiant's contract of carriage contains no mention of "mask" or "face

12   covering." Passengers who book a ticket with Allegiant do not agree to obstruct our

13   breathing as a condition of carriage. Ex. 452.

14       1000.  American's contract of carriage contains no mention of "mask" or "face

15   covering." Passengers who book a ticket with American do not agree to obstruct our

16   breathing as a condition of carriage. Ex. 453.

17       1001.  Delta's contract of carriage contains no mention of "mask" or "face

18   covering." Passengers who book a ticket with Delta do not agree to obstruct our breathing as

19   a condition of carriage. Ex. 454.

20       1002.  Hawaiian's contract of carriage contains no mention of "mask" or "face

21   covering." Passengers who book a ticket with Hawaiian do not agree to obstruct our

22   breathing as a condition of carriage. Ex. 455.

23       1003.  Southwest's contract of carriage contains no mention of "mask" or "face

24   covering." Passengers who book a ticket with Southwest do not agree to obstruct our

25   breathing as a condition of carriage. Ex. 456.

26       1004.  Frontier's contract of carriage contains this paragraph: "2019 Novel Corona

27   virus (COVID-19) – Frontier may screen passengers during the check-in and boarding

28   process, and may deny boarding to passengers who Frontier reasonably believes do not meet

29   Frontier's COVID-19 screening measures. Screening will include, but is not be limited to:

*Case #*                                    -137-                                    COMPLAINT

completion of a health acknowledgment, *required wearing of facial coverings*, and submission to a temperature check. Notwithstanding Section 11 above, *a passenger who presents a medical certificate dated within 10 days of the date of the flight for which it is being presented may be denied boarding* if, on the planned date of travel, the passenger fails to meet Frontier's COVID-19 screening measures. Ex. 457 (emphasis added).

1005.   Frontier's contract of carriage mandating passengers wear masks is legally unenforceable because the FDCA doesn't allow any company to mandate use of unauthorized or EUA medical devices. 21 USC § 360bbb-3(e)(1)(A)(ii)(III).

1006.   Frontier's contract of carriage requiring at least 10 days advance notice for mask exemptions is legally unenforceable because the ACCA doesn't allow airlines to demand advance notice from a disabled passenger. 14 CFR § 382.25.

1007.   United's contract of carriage states "UA shall have the right to refuse transport on a permanent or temporary basis or shall have the right to remove from the aircraft at any point, any Passenger for the following reasons: … Passengers who refuse to wear a mask or face covering while at the airport and/or onboard UA and United Express flights if UA or United Express believe, in their sole discretion, that a failure to wear such a mask or facial covering may pose a risk to the health or safety of others… UA has the right to refuse transport, on a permanent basis, any passenger who engages in any of the activities in this Rule." Ex. 458.

1008.   United's contract does not include any procedures for the disabled to demand mask exemptions.

1009.   United's contract giving it "sole discretion" to refuse to transport anyone who can't wear a mask is legally unenforceable because the ACCA doesn't allow airlines to decline transportation to a disabled passenger except in very limited circumstances. 14 CFR Part 382.

1010.   United's contract of carriage mandating passengers wear masks is legally unenforceable because the FDCA doesn't allow any company to mandate use of unauthorized or EUA medical devices. 21 USC § 360bbb-3(e)(1)(A)(ii)(III).

1011.  Forcing passengers – especially the disabled who are protected by federal anti-discrimination laws – to wear a mask constitutes a breach of contract.

1012.  "[P]rovisions in the carriers' Contracts of Carriage [are] void if they conflict[] with federal law or regulation." Ex. 529.

1013.  "[A] contract of carriage that conflicts with federal laws or regulations may not be enforceable by the airline." Ex. 158.

1014.  "Consumers may sue airlines for damages or breach of contract in a state or local court." A "source of airline passengers' rights is each air carrier's 'Contract of Carriage,' the legal agreement between an airline and its ticket holders. … Passengers may take legal action in federal courts based on the contracts." *Id*.

1015.  "A contract of carriage is the agreement between the passenger and the airline that encompasses all contractual rights, liabilities, and duties of the two parties. … Any term or condition of this contract is legally binding on the airline and the passenger and may be enforced in state court." Ex. 159.

1016.  Contracts of carriage must "reflect federal regulations requiring airlines to provide specific services and facilities for passengers with disabilities." *Id*.

1017.  Airline contracts of carriage are subject to applicable laws and regulations imposed by governmental agencies such as DOT.

1018.  The Airline Deregulation Act does not pre-empt breach-of-contract claims.

GG. **THIRTY-THIRD CAUSE OF ACTION: RECKLESSNESS AGAINST THE AIRLINE DEFENDANTS: Their mask policies have created chaos in the skies, recklessly endangering aviation safety; and they ignore the massive evidence showing masks have proven totally ineffective at reducing COVID-19 spread but harm human health, recklessly endangering the well-being of all passengers.**

1019.  All plaintiffs have been forced by the Airline Defendants to mask against our will or be refused transportation.

1020.   California law defines recklessness as a subjective state of culpability greater than simple negligence, which has been described as a "deliberate disregard" of the "high degree of probability" that an injury will occur. Recklessness rises to the level of a "conscious choice of a course of action with knowledge of the serious danger to others involved in it."

1021.   Compensatory and punitive damages are available for the victims of recklessness.

1022.   Masks have been shown by the global scientific and medical communities for decades to be ineffective at reducing transmission of respiratory viruses such as COVID-19, yet they cause dozens of harms to human health. https://bit.ly/masksarebad. It is reckless for the Airline Defendants to require muzzling of passengers when the known risks of oxygen deprivation are severe – especially at high altitude.

1023.   Because of this obstructed breathing by forced masking, the Airline Defendants have created chaos in the skies with numerous oxygen-starved passengers taking off their masks to breathe and being met with hostility and battery by flight attendants and pilots, not to mention other passengers.

1024.   The Airline Defendants' mask policies endanger the health and safety of their passengers by causing thousands of incidents of customers and flight crews battling over mask enforcement in violation of their legal "duty … to provide service with the highest possible degree of safety in the public interest…" 49 USC § 44702(b)(1)(a).

**HH. THIRTY-FORTH CAUSE OF ACTION: PRACTICING MEDICINE WITHOUT A LICENSE AGAINST THE AIRLINE DEFENDANTS: Prescribing the mandatory use of medical devices unauthorized or approved under an Emergency Use Authorization by the Food & Drug Administration.**

1025.   The Airline Defendants have adopted policies prescribing the forced use of a medical device (face mask), most of which are approved by FDA under EUA or have no authorization at all, against the will of all plaintiffs.

1026.   Mandating the use of uncertified medical devices without the consent of the passenger means the Airline Defendants are practicing medicine without a license.

1027.   Practicing medicine without a license is illegal in every state.

1028.   Airline employees are not individuals with the appropriate ethics and scientific education, training, and qualifications to order passengers to use experimental medical devices unauthorized by FDA or issued under an EUA only.

1029.   Airline employees are not competent and appropriately qualified physicians or other healthcare professionals able to evaluate who can't medically tolerate covering their nose and mouth.

1030.   The Airline Defendants provide unauthorized and/or EUA masks to passengers, introducing these experimental medical devices into interstate commerce.

1031.   The Airline Defendants violate the FDCA by not giving passengers our legal option to refuse administration of an FDA unauthorized or EUA medical device (face mask).

1032.   The Airline Defendants provide illegal and/or EUA masks to their passengers without informing us use of the device is optional and we must give informed consent.

1033.   "The principle that individuals should not be coerced to receive an unlicensed medical product is also codified in the law of at least 84 countries and is an accepted principle of international common law. *See, e.g., Abdullahi v. Pfizer, Inc.,* 562 F.3d 163, 184 (2nd Cir. 2009) ('We have little trouble concluding that a norm forbidding nonconsensual human medical experimentation is every bit as concrete – indeed even more so – than the norm prohibiting piracy… The Nuremberg Code, Article 7 of the ICCPR, the Declaration of Helsinki, the Convention on Human Rights and Biomedicine, the Universal Declaration on Bioethics and Human Rights, the 2001 Clinical Trial Directive, and the domestic laws of at least 84 States all uniformly and unmistakably prohibit medical experiments on human beings without their consent, thereby providing concrete content for the norm.')" Ex. 509.

1034.   It's a "longstanding principle that it is not permissible to coerce anyone to receive an unlicensed medical product." *Id.*

1035.  Legislative history of Section 564 of the FDCA indicates that "any authority to actually use experimental drugs or medical devices in emergency situations has to be defined and wielded with nothing less than surgical precision. Prior informed consent in connection with the administration of experimental therapy is a basic human right, a right no one should be asked to surrender…" *Id.*

1036.  "[T]he authorization for the emergency use of unapproved products also includes strong provisions on informed consent for patients." *Id.*

1037.  "Congress specifically carved out only one exception for when an individual would not have 'the option to accept or refuse administration of the product.' Congress permitted required use of an EUA product when the President of the United States finds that providing an individual in the military with the option to accept or refuse the product would not be in the interests of national security." *Id.*; *see also* 10 USC § 1107a.

1038.  "Congress so highly valued the right to individual choice that it allowed only a threat to national security to trump that right, and even then, only with regard to military personnel." *Id.*

1039.  Individuals to whom any EUA product is offered must be informed "of the option to accept or refuse administration of the product…" 21 USC § 360bbb-3(e)(1)(A)(ii)(III).

1040.  Congress' prohibition of mandatory mask use is consistent with Defendant HHS' regulations requiring that participants in trials of experimental medical devices must be informed that "participation is voluntary, refusal to participate will involve no penalty…" 45 CFR § 46.116(a)(8).

1041.  Likewise FDA regulations state that no human shall participate in research trials of uncertified medical devices unless "the investigator has obtained the legally effective informed consent of the subject…" 21 CFR § 50.20.

1042.  There's good reason for the law prohibiting forced use of EUA medical devices. Requirements for EUA products are waived for, among other things, "current good manufacturing practice otherwise applicable to the manufacture, processing, packing … of products subject to regulation under this chapter…" 21 USC § 360bbb-3(e)(3)(A).

1043.   The Airline Defendants have no authority to require any passenger wear a mask authorized under EUA. But most masks being used by Americans to comply with the defendant's muzzling requirements meet the legal definition of an EUA "eligible product" that is "intended for use to prevent … a disease…" 21 USC § 360bbb-3(a).

1044.   A person may freely choose to accept medical risks for the benefit of others; they cannot be compelled by the Airline Defendants. We don't harvest organs without consent, even if doing so would save many lives. Those who make such sacrifices for others must truly be volunteers, not conscripts.

1045.   Airline employees have no medical license to order passengers to obstruct our breathing, causing numerous harms, to perhaps spare another customer from catching a virus. Passengers willingly take on the risk of catching a communicable disease when they buy an airline ticket, knowing they will be squeezed into a metal tube like sardines in a can. If they don't want to take that risk, they have the option not to fly – but the Airline Defendants lack a medical license to demand others suffer to mitigate the fear and anxiety of those paranoid about catching COVID-19.

1046.   "Protection of others" does not relieve the Airline Defendants from the central canon of medical ethics requiring voluntary and informed consent.

1047.   The right to refuse medical treatment, including experimental medical devices such as face masks provided by the Airline Defendants, is a constitutionally guaranteed right in California that must not be abridged. *Bartling v. Superior Court*, 163 Cal.App. 3rd 186, 195 (1984). *See* Calif. Const. Art. I § 1.

II.   **THIRTY-FIFTH CAUSE OF ACTION**: INVASION OF PRIVACY AGAINST THE AIRLINE DEFENDANTS: **Forcing a disabled passenger to disclose his/her medical conditions as a condition of transportation.**

1048.   All plaintiffs have been asked to disclose their medical conditions to the Airline Defendants as a condition of carriage.

1049.   The Airline Defendants require disabled passengers seeking mask exemptions to provide sensitive, intimate details of our medical conditions to airline

personnel, usually in writing and sometimes verbally in hearing range of other passengers and workers at busy airport check-in counters and boarding gates.

1050.   The Airline Defendants state they may share our medical information with all sorts of other parties.

1051.   The law protects people against many types of harms, including harm to one's personal space and private life. Infringing on these interests is known as invasion of privacy. Invasion of privacy has been divided into four distinct categories. Each category covers a different aspect of the right to privacy and personal identity but they are all geared towards protecting the right "to be left alone."

1052.   The category at issue here is public disclosure of private facts. Airline passengers do not have to disclose our private medical history to airline employees, who are not medical professionals, just to be able to board a flight without obstructing our breathing.

1053.   "May I ask an individual what his or her disability is? Only to determine if a passenger is entitled to a particular seating accommodation... ***Generally, you may not make inquiries about an individual's disability or the nature or severity of the disability,***" according to DOT. Ex. 149. (emphasis added).

1054.   Medical information is confidential and private under Calif. Const. Art. I § 1: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

## JJ.   THIRTY-SIXTH CAUSE OF ACTION: DECEPTIVE & MISLEADING TRADE PRACTICES AGAINST THE AIRLINE DEFENDANTS.

1055.   All plaintiffs have been subjected to deceptive and misleading trade practices by the Airline Defendants, who are deceiving their customers regarding masks, misleading us into believing face coverings are good for our health when the reality is they cause more than 60 documented harms and create havoc in the sky due to oxygen deprivation.

1056.   "Intent is not an element of either unfairness or deception." 85 Fed. Reg. 78,707 (Dec. 7, 2020); Ex. 160. However, it's clear the Airline Defendants had an intent to

deceive passengers that face masks are effective in reducing COVID-19 spread, are authorized by FDA, etc. They clearly mislead customers that masks may be forced on passengers without our consent in violation of the FDCA.

1057.   DOT defines an unfair trade practice by airlines as "demonstrating that the harm to consumers is (1) substantial; (2) not reasonably avoidable; and (3) not outweighed by offsetting benefits to consumers or competition." *Id.*

1058.   DOT defines a practice as ''deceptive'' by showing that: "(1) The practice actually misleads or is likely to mislead consumers; (2) who are acting reasonably under the circumstances; (3) with respect to a material matter." *Id.*

1059.   The airlines have a statutory duty not to deceive and mislead their customers. 49 USC § 41712. *See also* 14 CFR § 399.79.

**KK. THIRTY-SEVENTH      CAUSE      OF      ACTION:      FRAUDULENT MISREPRESENTATION AGAINST THE AIRLINE DEFENDANTS.**

1060.   All plaintiffs have been defrauded by the Airline Defendants.

1061.   The Airline Defendants provide FDA unauthorized or EUA face masks without disclosing that: 1) the masks (if authorized at all) are only designated for emergency use; 2) that there are "significant known and potential benefits and risks of such use" (or "the extent to which such benefits and risks are unknown"); or 3) flyers have the "option to accept or refuse administration of the product."

1062.   The Airline Defendants have falsely represented on their websites, in e-mails to passengers, signage at airports, etc. that "federal law" requires airline passengers wear face masks. But Congress has never enacted such a law. There is no statute in the U.S. Code requiring airline passengers to cover our faces. This is a fraudulent misrepresentation of the law.

1063.   The Airline Defendants also haven't told their passengers of the dozens of health risks of covering our sources of oxygen or that the scientific consensus is that masks are totally worthless in reducing COVID-19 spread. https:// bit.ly/masksarebad.

1064.  Failing to disclose this information pursuant to the FDCA and the Airline Defendants' other legal obligations is a fraudulent misrepresentation.

1065.  This tort consists of: 1) There was a material representation made that was false; 2) The person who made the representation knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; 3) The person who made the representation intended to induce another to act upon the representation; and 4) The person to whom the material representation was made actually and justifiably relied on the representation, which caused the injury.

## LL. **THIRTY-EIGHTH CAUSE OF ACTION**: INFRINGEMENT ON THE CONSTITUTIONAL RIGHT TO TRAVEL AGAINST DEFENDANTS AMERICAN, JETBLUE, SOUTHWEST, AND UNITED.

1066.  All plaintiffs have been restricted from flying interstate by the Airline Defendants. Plaintiffs Uri and Yvonne Marcus have also been restricted from flying internationally to/from Israel and the United States – the only form of transportation available between their two nations of citizenship.

1067.  The Constitution protects Americans against infringement on our freedom of movement by government actors and common carriers.

1068.  The Airline Defendants deprive disabled Americans and those who refuse to wear masks for health reasons of the ability to fly.

1069.  By banning travelers who can't wear face masks, the Airline Defendants deprive Americans of our constitutional right to freedom of movement.

1070.  "As a fundamental right inherent in American citizenship and the nature of the federal union, the right to travel in the United States is basic to American liberty. The right precedes the creation of the United States and appears in the Articles of Confederation. The U.S. Constitution and Supreme Court recognize and protect the right to interstate travel. The travel right entails privacy and free domestic movement without governmental abridgment." Ex. 530.

1071.   "The original conception of the right to travel embodies it as a broadly based freedom that encompasses all modes of transport. Its explicit articulation in the Articles of Confederation became implicit in the Privileges and Immunities Clause of the Constitution. … abridgement of any mode of transportation undermines the constitutionally enshrined travel right." *Id*.

1072.   "Travel embodies a broadly based personal, political, and economic right that encompasses all modes of transportation and movement. … The right to travel, inherent in intercourse among the states, is one of the implied and unenumerated rights reserved to the People." *Id*.

1073.   The Supreme Court has held that private companies can also be held liable for interfering with a person's constitutional right to travel: "[T]he decision reaffirmed the right to travel, as 'a right broadly assertable against private interference as well as governmental action.' In short, the travel right protects against both restrictive public and private actions, and it empowers those availing themselves of the right's protections." *Id.; see Shapiro v. Thompson*, 394 U.S. 618 (1969).

1074.   *United States v. Guest*, 383 U.S. 745 (1966), affirmed the "constitutional right to travel from one State to another, and necessarily to use the highways and other instrumentalities of interstate commerce [such as commercial airlines] in doing so, occupies a position fundamental to the concept of our Federal Union. It is a right that has been firmly established and repeatedly recognized." *Id*.

1075.   Congress affirmed the constitutional right to fly for disabled Americans by enshrining it into statute. 49 USC § 40103.

1076.   "[T]he right to travel is not tied to any specific mode of transportation. Consequently, it encompasses all means of travel. … From the perspective of individual rights, the ability to move freely in the United States is a personal liberty, inherent by birth and U.S. citizenship. The travel right is essential to guaranteeing equality of opportunities, and the pursuit of happiness for citizens of the federal union. Freedom of personal movement is a natural liberty that citizens exercise among fundamental rights and privileges." Ex. 530.

1077.   "The travel right also includes the right to movement on common carriers. 'A carrier becomes a common carrier when it 'holds itself out' to the public, or to a segment of the public, as willing to furnish transportation within the limits of its facilities to any person who wants it.' That means that any individual or corporation becomes a common carrier by promoting to the public the ability and willingness to provide transportation service, including air travel. Air transport providers operating in, to, or from the United States act under common carrier rules. 'An air carrier … may not subject a person in air transportation to discrimination...' If there are available places, the charge is paid, and there are no reasonable grounds to refuse the service to an individual, the air carrier is legally bound to provide the transportation of passengers or goods. Denying someone passage violates federal law." *Id.*

1078.   "The air travel network is a part of the public infrastructure open for wide use and enjoyment. The national government advances these goals by ensuring by law that all citizens have adequate access to the air system. … Therefore, under not only general U.S. sovereignty but also the public right of transit, freedom of travel includes air travel." *Id.*

1079.   "Commercial air service is the only mode of passenger common carrier transportation available between many U.S. locations, especially American states and territories outside the continental union." *Id.*

1080.   "The impact on a citizen who cannot use a commercial aircraft is profound. He is restricted in his practical ability to travel substantial distances within a short period of time, and the inability to fly to a significant extent defines the geographical area in which he may live his life. … An inability to travel by air also restricts one's ability to associate more generally, and effectively limits educational, employment and professional opportunities." *Id.*; *see Mohamed v. Holder*, 2014 WL 243115 (E.D. Va. Jan. 22, 2014).

1081.   "Traveling long distances within the contiguous United States relies on only one mode of travel: commercial airlines. Therefore, restricting this single mode of travel, by air, abridges the right to travel and the right to exercise political and personal liberties." *Id.*

1082.   The right to travel includes the right to move from state to state and abroad without burdens on a person's body such as obstructing his/her breathing: "An individual's

liberty may be harmed by an act that causes or reasonably threatens a loss of physical locomotion or **bodily control**." *Id*. (emphasis added).

**MM.**     **THIRTY-NINTH CAUSE OF ACTION: MEDICAL MALPRACTICE AGAINST DEFENDANTS STAT-MD AND MEDAIRE.**

1083.  All plaintiffs have been subjected to illegal medical consultations with STAT-MD and/or MedAire.

1084.  STAT-MD and MedAire, with no legal authority, reviews mask-exemption demands submitted by its airline clients without ever talking to the passenger and/or his/her physician.

1085.  STAT-MD and MedAire make arbitrary determinations denying mask exemptions without providing any rationale for their decision-making.

1086.  The Air Carrier Access Act does not allow STAT-MD and MedAire to provide medical consultations to airlines for disability accommodation requests except in very limited circumstances. Those situations do not include mask waivers.

1087.  STAT-MD and MedAire are therefore guilty of medical malpractice.

**VI.     PRAYER FOR RELIEF**

**WHEREFORE**, plaintiffs pray for relief as follows:

1.     Declare Defendants CDC and HHS' Feb. 1, 2021, Federal Transportation Mask Mandate order "Requirement for Persons to Wear Masks While on Conveyances & at Transportation Hubs" (86 Fed. Reg. 8,025 (Feb. 3, 2021)) contrary to statute and unconstitutional, vacate the order, and permanently enjoin its enforcement worldwide.

2.     Issue a permanent injunction directing Defendants CDC and HHS to immediately order all federal agencies, transportation hubs, and transportation operators to remove all signs informing passengers of the requirement to wear a mask from all airports, transportation hubs, conveyances, and other locations worldwide as well as to remove from their websites and publications any references to the Federal Transportation Mask Mandate.

3.      Issue a permanent injunction that Defendants CDC and HHS shall not issue any other orders requiring any person wear a face mask unless such specific authority is enacted into law by Congress.

4.      Declare Defendants CDC and HHS' International Traveler Testing Requirement order effective Dec. 6, 2021, "Requirements for Negative Pre-Departure COVID–19 Test Result or Documentation of Recovery from COVID–19 for All Airline or Other Aircraft Passengers Arriving into the United States from Any Foreign Country" (86 Fed. Reg. 69,256 (Dec. 7, 2021)) contrary to statute and unconstitutional, vacate the order, and permanently enjoin its enforcement worldwide.

5.      Issue a permanent injunction directing Defendants CDC and HHS to immediately order all federal agencies and all airlines flying into the United States to remove all signs informing passengers of the requirement to obtain a negative COVID-19 test before flying to the United States from all airports and other locations worldwide as well as to remove from their websites and publications any references to the International Traveler Testing Requirement.

6.      Issue a permanent injunction that Defendants CDC and HHS shall not issue any other orders requiring any person to present a negative COVID-19 or other virus test to board an airplane unless such authority is enacted into law by Congress.

7.      Declare that Defendants TSA and Julie Carrigan's actions rescinding Mr. Marcus' Pre-Check eligibility violates his First Amendment rights and 49 USC § 114(r).

8.      Issue a permanent injunction ordering TSA to reinstate Mr. Marcus' Pre-Check eligibility and never suspend or terminate it again for engaging in constitutionally protected activities.

9.      Declare that the Airline Defendants, the yet-to-be-named Individual Defendants, STAT-MD, and MedAire conspired to interfere with the civil rights of the disabled by refusing to transport the disabled solely because we can't safely wear face masks and rescinding Mr. Marcus' Pre-Check eligibility for protesting the FTMM.

10.    Declare that Defendant Julie Carrigan and the yet-to-be-named Individual Defendants neglected to prevent interference with the civil rights of the disabled by refusing to stop policies that decline to transport us solely because we can't safely wear face masks.

11.    Declare that the Airline Defendants' mask policies violate the Rehabilitation Act by discriminating against the disabled and issue a permanent injunction prohibiting them from engaging in such future conduct.

12.    Declare that DOT has failed its statutory obligation to enforce the Air Carrier Access Act, thereby creating a private right of action in this Court for the disabled to enforce the anti-discrimination law as Congress intended, and/or declare that the ACAA may be enforced via the Rehabilitation Act against any airline that receives federal financial assistance, and/or declare that the ACAA may be enforced via the California Unruh Civil Rights Act.

13.    Declare that the Airline Defendants' policies requiring passengers not known to have a communicable disease to wear a face covering violate the Air Carrier Access Act and issue a permanent injunction prohibiting them from engaging in such future conduct.

14.    Declare that the Airline Defendants' policies of refusing to provide mask exemptions to the disabled violate the Rehabilitation Act and Air Carrier Access Act and issue a permanent injunction prohibiting them from engaging in such future conduct.

15.    Declare that the Airline Defendants' policies refusing transportation solely on the basis of a passenger's disability violate the Rehabilitation Act and Air Carrier Access Act and issue a permanent injunction prohibiting them from engaging in such future conduct.

16.    Declare that the Airline Defendants' policies requiring passengers seeking mask exemptions to do so in advance violate the Rehabilitation Act and Air Carrier Access Act and issue a permanent injunction prohibiting them from engaging in such future conduct.

17.    Declare that the Airline Defendants' policies requiring a medical certificate from disabled passengers who ask for a mask exemption violate the Rehabilitation Act and Air Carrier Access Act and issue a permanent injunction prohibiting them from engaging in such future conduct.

18.     Declare that the Airline Defendants' policies requiring disabled passengers needing a mask exemption to undergo a medical screening with STAT-MD, MedAire, or any other medical vendor violates the Rehabilitation Act and Air Carrier Access Act and issue a permanent injunction prohibiting them from engaging in such future conduct.

19.     Declare that the Airline Defendants' policies requiring disabled passengers who seek a mask exemption to submit a negative COVID-19 test for each flight when nondisabled customers aren't subject to this same requirement violate the Rehabilitation Act and Air Carrier Access Act and issue a permanent injunction prohibiting them from engaging in such future conduct.

20.     Declare that all Airline Defendants that maintain policies of banning mask-exempt passengers from flying if a plane is more than a certain percentage full violate the Rehabilitation Act and Air Carrier Access Act and issue a permanent injunction prohibiting them from engaging in such future conduct.

21.     Declare that the Airline Defendants' policies of changing the seat assignment of a mask-exempt passenger without his/her consent violate the Rehabilitation Act and Air Carrier Access Act and issue a permanent injunction prohibiting them from engaging in such future conduct.

22.     Declare that the Airline Defendants' policies limiting the number of disabled passengers on a flight violate the Rehabilitation Act and Air Carrier Access Act and issue a permanent injunction prohibiting them from engaging in such future conduct.

23.     Declare that the Airline Defendants' policies forcing passengers to wear masks when they never agreed to do so in the contract of carriage constitute a breach of contract and/or the contracts contain provisions that are unenforceable because they violate federal law and regulations.

24.     Declare that the Airline Defendants' mask policies constitute recklessness by creating chaos in the skies, imperiling aviation safety; and ignoring the massive evidence showing masks have proven totally ineffective at reducing COVID-19 spread but harm human health, hurting the wellbeing of all passengers.

25.     Declare that the Airline Defendants' mask policies constitute practicing medicine without a license, including violating federal law prohibiting the mandatory use of any medical device unauthorized or approved under an Emergency Use Authorization by the Food & Drug Administration, and issue a permanent injunction prohibiting them from engaging in such future conduct.

26.     Declare that the Airline Defendants' mask policies constitute an invasion of privacy by forcing disabled passengers to disclose our medical conditions as a condition of transportation and issue a permanent injunction prohibiting them from engaging in such future conduct.

27.     Declare that the Airline Defendants' mask policies constitute deceptive and misleading trade practices and issue a permanent injunction prohibiting them from engaging in such future conduct.

28.     Declare that the Airline Defendants' mask policies constitute fraudulent misrepresentation and issue a permanent injunction prohibiting them from engaging in such future conduct.

29.     Declare that the Airline Defendants' mask policies infringe on the constitutional right to travel and issue a permanent injunction prohibiting them from engaging in such future conduct.

30.     Issue a permanent injunction prohibiting all Airline Defendants from creating and enforcing any future rules that require any passenger to cover his/her face unless the person is known to be infected with a communicable disease as alerted by the federal government's Do Not Board and Lookout systems or other public-health authorities.

31.     Declare that Defendants STAT-MD and MedAire's performance of medical consultations for airlines constitutes medical malpractice and issue a permanent injunction barring them from consulting with any airline or other transportation provider regarding any issue related to passenger use of face masks.

32.     For all causes of action in which monetary damages are available, award Plaintiff Uri Marcus compensatory and punitive damages against Defendant Julie Carrigan in

the amount of $100,000 for rescinding his Pre-Check eligibility in violation of his First Amendment rights.

33.   For all causes of action in which monetary damages are available, award each plaintiff compensatory and punitive damages against all Airline Defendants in the amount of $100,000 per offense.

34.   For Mr. and Mrs. Marcus, there are two instances where Defendant Alaska discriminated against them. Their demand against Alaska is $200,000.

35.   For Mr. and Mrs. Gordon there are two instances where Defendant Allegiant discriminated against them. Their demand against Allegiant is $200,000.

36.   For Mr. and Mrs. Marcus, there are four instances where Defendant American discriminated against them. Their demand against American is $400,000.

37.   For Mr. and Mrs. Gordon there are 10 instances where Defendant American discriminated against them. Their demand against American is $1,000,000.

38.   For Ms. Russo there are two instances where Defendant American discriminated against her. Her demand against American is $200,000.

39.   For Mr. and Mrs. Marcus, there are seven instances where Defendant Delta discriminated against them. Their demand against Delta is $700,000.

40.   For Mr. and Mrs. Gordon there are four instances where Defendant Frontier discriminated against them. Their demand against Frontier is $400,000.

41.   For Mr. and Mrs. Marcus, there are four instances where Defendant Hawaiian discriminated against them. Their demand against Hawaiian is $400,000.

42.   For Mr. and Mrs. Marcus, there are 14 instances where Defendant Southwest discriminated against them. Their demand against Southwest is $1,400,000.

43.   For Mr. and Mrs. Marcus, there are 13 instances where Defendant United discriminated against them. Their demand against United is $1,300,000.

44.   For Ms. Russo there are six instances where Defendant United discriminated against her. Her demand against United is $600,000.

45.    For all causes of action in which monetary damages are available, award plaintiffs compensatory and punitive damages against each yet-to-be named Individual Defendant in the amount of $10,000 per offense.

46.    For all causes of action in which monetary damages are available, award plaintiffs compensatory and punitive damages against STAT-MD and MedAire in the amount of $125,000 each per plaintiff for a total of $625,000 each per plaintiff.

47.    Award all plaintiffs all costs and fees incurred during the prosecution of this lawsuit from all defendants pursuant to 28 USC § 2412, 29 USC § 794a, 42 USC § 1988, Calif. Civil Code §§ 52(a), 54.3(a), & 55, and/or any other applicable statute or authority.

48.    Award all plaintiffs attorney's fees (if they later hire an attorney to represent them in this lawsuit) incurred during the prosecution of this lawsuit from any defendant found to have acted outside its legal and/or constitutional authority pursuant to 28 USC § 2412, 29 USC § 794a, 42 USC § 1988, Calif. Civil Code §§ 52(a), 54.3(a), & 55, and/or any other applicable statute or authority; or, if they continue representing themselves, award them in lieu of attorney's fees reimbursement at the rate of $50 per hour for the time they have spent litigating this matter.

49.    Grant such other and further relief as the Court may deem just and proper under the circumstances.

**Certification:** Pursuant to Fed.R.Civ.P. 11, by signing below, I certify to the best of my knowledge, information, and belief that this Complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) otherwise complies with the requirements of Rule 11.

Respectfully submitted this 8th day of April 2022.

*Uri Marcus*

Uri Marcus, lead plaintiff
P.O. Box 126
Ojai, CA 93024
Telephone: 909-833-0065
E-Mail: uri@ntcf.org

*Yvonne Marcus*

Yvonne Marcus, plaintiff
P.O. Box 126
Ojai, CA 93024
Telephone: 909-833-0065
E-Mail: adi@ntcf.org

*Avrohom Gordon*

Avrohom Gordon, plaintiff
2251 State Route 222
New Richmond, OH  45157
Telephone: 513-734-1770
gordon.avrohom@gmail.com

*Devorah Gordon*

Devorah Gordon, plaintiff
2251 State Route 222
New Richmond, OH  45157
Telephone: 513-734-1770
devorahlgordon@gmail.com

1

*Cindy Russo*

2
Cindy Russo, plaintiff
3
22485 Breakwater Way
Santa Clarita, CA  91350
4
Telephone: 908-797-8066
5
cjrz123@gmail.com

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29

**CERTIFICATE OF SERVICE**

In addition to formal service of process, I hereby certify that on April 8th, 2022, I e-mailed courtesy copies of this Complaint to the U.S. Department of Justice attorneys who are defending CDC and HHS in other lawsuits over the FTMM and ITTR as well as attorneys for the Airline Defendants and STAT-MD.

Andrew Freidah
Counsel for the Federal Defendants
Andrew.F.Freidah@usdoj.gov

Stephen Pezzi
Counsel for the Federal Defendants
Stephen.Pezzi@usdoj.gov

Roy Goldberg
Counsel for the Airline Defendants
Roy.Goldberg@stinson.com

Kyle Levine
Counsel for Alaska Airlines
Kyle.Levine@alaskaair.com

Laura Overton
Counsel for Allegiant Air
Laura.Overton@allegiantair.com

Brian Maye
Counsel for Allegiant Air & Frontier Airlines
bmaye@amm-law.com

Priya Aiyar
Counsel for American Airlines
Priya.Aiyar@aa.com

Komal Patel
Counsel for Delta Air Lines
Komal.A.Patel@delta.com

Angela Mayeux
Counsel for Southwest Airlines
Angela.Mayeux@wnco.com

Robert Rivkin
Counsel for United Airlines
Robert.Rivkin@united.com

Douglas Grimsley
Counsel for Defendant STAT-MD
dgrimsley@dmclaw.com

***Uri Marcus***

Uri Marcus, lead plaintiff

Plaintiffs' Exhibit 1



Plaintiffs' Exhibit 2

From: **United Airlines, Inc.** Receipts@united.com
Subject: eTicket Itinerary and Receipt for Confirmation O6STF1
Date: 3 November 2020 at 12:26
To: URI@ntcf.org  URI@NTCF.ORG




Tue, Nov 03, 2020

# Thank you for choosing United.

A receipt of your purchase is shown below. Please retain this email receipt for your records.

**Note:** There are travel restrictions in place due to the coronavirus. Check our [Important notices page](#) for the latest updates

Confirmation Number:

# O6STF1

| Flight 1 of 3 UA955 | Class: United Economy (L) |
|---|---|
| Fri, Nov 20, 2020 | Fri, Nov 20, 2020 |
| **12:55 AM** | **06:00 AM** |
| Tel Aviv, IL (TLV) | San Francisco, CA, US (SFO) |

| Flight 2 of 3 UA1548 | Class: United Economy (K) |
|---|---|
| Wed, Dec 09, 2020 | Wed, Dec 09, 2020 |
| **04:00 PM** | **05:30 PM** |
| Los Angeles, CA, US (LAX) | San Francisco, CA, US (SFO) |

| Flight 3 of 3 UA954 | Class: United Economy (K) |
|---|---|
| Wed, Dec 09, 2020 | Thu, Dec 10, 2020 |
| **07:45 PM** | **07:35 PM** |
| San Francisco, CA, US (SFO) | Tel Aviv, IL (TLV) |

### Traveler Details

**MARCUS/URI**
eTicket number: **0162326773661**                    Seats: **TLV-SFO 29C**
Frequent Flyer: **UA-XXXXX474 Member**                      **LAX-SFO -----**
                                                            **SFO-TLV -----**
Economy Plus Seat (0161574353014)                           **SFO-TLV**
Preferred Zone Assignment (0161574353013)                   **TLV-SFO**

### Purchase Summary

| Method of payment: | Miscellaneous Document |
| Date of purchase: | Tue, Nov 03, 2020 |

| Airfare: | 480.00 USD |
| Israel Departure Tax: | 27.26 USD |
| U.S. Customs User Fee: | 5.99 USD |
| U.S. Immigration User Fee: | 7.00 USD |
| U.S. APHIS User Fee: | 3.96 USD |
| September 11th Security Fee: | 5.60 USD |
| International Surcharge: | 302.80 USD |
| U.S. Passenger Facility Charge: | 4.50 USD |

| Total Per Passenger: | 837.11 USD |

| **Total:** | **837.11 USD** |

### Additional Purchase Summary

| Method of payment: | American Express ending in 1452 |
| Date of purchase: | Wed, May 06, 2020 |

| Economy Plus Seat (Reference Number: 0161574353014): | 209.00 USD |

| **Total:** | **209.00 USD** |

### Additional Purchase Summary

| Method of payment: | American Express ending in 1452 |
| Date of purchase: | Wed, May 06, 2020 |

| Preferred Zone Assignment (Reference Number: 0161574353013): | 39.00 USD |

| **Total:** | **39.00 USD** |

**Payment Info**

Remaining value of your previous ticket numbers 0162325923071 was applied to this purchase.

**MileagePlus Accrual Details**

| Uri Marcus | | | | | |
|---|---|---|---|---|---|
| Date | Flight | From/To | Award Miles | PQP | PQF |
| Fri, Nov 20, 2020 | 955 | Tel Aviv, IL (TLV) to San Francisco, CA, US (SFO) | 2080 | 455 | 1 |



Plaintiffs' Exhibit 3

Hi, Uriel | 1,587 points | **My Account** | **Log out** | Español 

FLIGHT | HOTEL | CAR | VACATIONS    SPECIAL OFFERS    RAPID REWARDS®    🔍

# Thanks for flying with us!

## ✓ Your flight is booked!

We're sending you a confirmation email to the address below. If the email hasn't arrived in 2 minutes, check your junk or spam folder.
**uri@ntcf.org**

## Trip summary



✈ **Flight**

CONFIRMATION #

**RTOJKT**

NOV 23

**OAK** ✈ **LAX**

TOTAL PAID

**$34.00**  See details

# 11/23 - Los Angeles

 **100% free inflight entertainment* — all on your device.**  [ Learn more ]

[1]Download the Southwest app from the Google Play Store or Apple App Store before your flight to view content. [2]Only allows access to IMessage and WhatsApp (must be downloaded before the flight). [3]May not be available for the full duration of the International flight. *Available only on WIFI-enabled aircraft. Limited-time offer. Where available.

NOV 23

# Oakland, CA *to* Los Angeles, CA

| Confirmation # RTOJKT | | |
|---|---|---|
| **PASSENGERS** | **EXTRAS** | **FARE** |
| **Uri Marcus**<br>Rapid Rewards®/Acct # ▉▉▉▉<br>Known Traveler # On file | — | Wanna Get Away |
| **Yvonne M Marcus**<br>Rapid Rewards®/Acct # ▉▉▉▉<br>Known Traveler # On file | — | Wanna Get Away |



## Departing   11/23/20 Monday

**DEPARTS**  **12:15** PM   **OAK** Oakland, CA - OAK   **FLIGHT** 4379

Nonstop

**ARRIVES**  **1:40** PM   **LAX** Los Angeles, CA - LAX   **TRAVEL TIME** 1hr 25min

**Wanna Get Away**
*(Passenger x2)*

**Icon legend**

📶  WiFi available  |  📺  Live TV available  |  🌅  EarlyBird Check-In®

**Helpful Information:**
- Please read the fare rules associated with this purchase.
- When booking with Rapid Rewards® points, your points balance may not immediately update in your account.
- Face coverings required for everyone 2 and over.



# Reconcile summary

| INFORMATION | | | AMOUNT |
|---|---|---|---|
| **Visa 9922** XXXXXXXXXXXX9922 Expiration: 2/24 | **CARD HOLDER** Uri Marcus | **BILLING ADDRESS** Po Box 126 Ojai, CA US 93024 | **$34.00** |

**TOTAL PAID**  **$34.00**
*Government taxes & fees included.*

**American Airlines**

Plan Travel    Travel Information    AAdvantage

Plaintiffs' Exhibit 4

# Your trip

« Show all trips

### ⓘ Face coverings

A face covering is required while flying on American, except for children under 2 years old. You also are required to wear one in the airport where your trip begins, where it ends and where you connect.

Read about travel requirements ⧉

---

### ⓘ Success!

Your email request has been submitted.

Check in beginning 24 hours and up to 45 minutes before your flight (90 minutes for international).

---

| ✕ Cancel trip | ✉ Email trip | 📅 Send to calendar | 🖨 Print trip |
|:---:|:---:|:---:|:---:|

Record locator: **UPKCAW**          Issued: **Tuesday, November 10, 2020**
Trip name: **LAX/LAS**  Edit          Status: **Ticket pending**



## Important information about Web Special awards

This trip includes a Web Special award. Once it's ticketed:

- You cannot make changes.
- You can cancel and reinstate your miles, but fees may apply.

Plaintiffs' Exhibit 5



Hi, Uriel  1,587 points  **My Account**  |  **Log out**   Español 🌐

**FLIGHT | HOTEL | CAR | VACATIONS**   **SPECIAL OFFERS**   **RAPID REWARDS®**  🔍

# Thanks for flying with us!

Price — Payment — Confirmation

## ✓ Your flight is booked!

We're sending you a confirmation email to the address below. If the email hasn't arrived in 2 minutes, check your junk or spam folder.
**uri@ntcf.org**

### Trip summary

🖨 Print



✈ **Flight**

CONFIRMATION #

**UQRWFV**

DEC 4

**LAS ✈ PHX**

FLIGHT TOTAL

**5,304** PTS + **$11.20**

🚗 **Add a car**

Add a hotel

The perfect stay is moments away

Book now. Pay later!
**From $35.99\*/day in Phoenix**

\*Taxes and fees excl. Terms apply.

Budget

**Book now**

DESTINATION/HOTEL NAME:

CHECK-IN
11/09/2020

CHECK-OUT
11/10/2020

Search ⬈



**Earn 40,000 points**
after you spend $1,000 on purchases in the first 3 months from account opening.

**Learn more ›**

| | |
|---|---:|
| CURRENT POINTS BALANCE | 1,587 |
| ESTIMATED POINTS EARNED ON THIS TRIP | 0 |
| POINTS EARNED WITH NEW CREDIT CARD OFFER | 40,000 |
| **ESTIMATED TOTAL POINTS** | **41,587** |



## 12/4 - Phoenix

f **Who's coming with me?**
Let your friends and family know you're traveling!

**Share on Facebook!**

DEC 4

## Las Vegas, NV *to* Phoenix, AZ

### Confirmation # UQRWFV

| PASSENGERS | EXTRAS | FARE |
|---|---|---|



| PASSENGERS | EXTRAS | FARE |
|---|---|---|
| **Uri Marcus** | — | Wanna Get Away |
| Rapid Rewards®/A ███████ Known Traveler # ██████ Edit Known Traveler # / Redress #  ❯ Special Assistance  ❯ | | |
| **Yvonne M Marcus** | — | Wanna Get Away |
| Rapid Rewards®/A ███████ Known Traveler # ██████ Edit Known Traveler # / Redress #  ❯ Special Assistance  ❯ | | |

**$** **Transfarency®: Defined** Low fares. Nothing to hide. ⧉

**⇄** **Change fees don't fly with us** Flexibility for your travel plans.

☀ **Add EarlyBird Check-In®**

**Departing**   12/4/20 Friday

Wanna Get Away ®      5,304 PTS
*(Passenger x2)*

✈ **DEPARTS**   **12:30** PM   **LAS** Las Vegas, NV - LAS

**FLIGHT** 4520 🛜 + 📱

**SCHEDULED AIRCRAFT** Boeing 737-700 *Subject to change*

*Nonstop*

✈ **ARRIVES**   **2:45** PM   **PHX** Phoenix, AZ - PHX

**TRAVEL TIME** 1hr 15min

**SUBTOTAL** **5,304** PTS

Taxes & fees    $11.20

Flight total   **5,304** PTS **+** $**11.20**

**Icon legend**

🛜 WiFi available  |  📷 Live TV available  |  ☀ EarlyBird Check-In®

**Helpful Information:**

- Please read the fare rules associated with this purchase.
- When booking with Rapid Rewards® points, your points balance may not immediately update in your account.
- Face coverings required for everyone 2 and over.

**Book your hotel with us and earn up to 10,000 points per night.**



The perfect stay is moments away

DESTINATION/HOTEL NAME:

CHECK-IN
**11/09/2020**

CHECK-OUT
**11/10/2020**

| ROOMS | ADULTS | CHILDREN |
|-------|--------|----------|
| 1 | 1 | 0 |

Search ⬏



# Payment summary

| PAYMENT INFORMATION | | | AMOUNT PAID |
|---|---|---|---|
| **Rapid Rewards Points** 72815945 | | | **5,304** PTS |
| **Visa 9922** XXXXXXXXXXX9922 Expiration: 2/24 | CARD HOLDER **Uri Marcus** | BILLING ADDRESS **Po Box 126** **Ojai, CA US 93024** | **$11.20** |

## Total charged

**You're all set for your upcoming trip.**

Get ready to enjoy two bags for the price of none*, no fees to change your flight**, and some Southwest® love.

*First and second checked bags. Weight and size limits apply. **Fare difference may apply.

| SUBTOTAL | $0.00 |
|---|---|
| TAXES & FEES | $11.20 |
| **TOTAL POINTS** | **5,304** PTS |
| **TOTAL DOLLARS** | **$11.20** |

Show price breakdown

# Save up to 30% off

Earn up to 2400 Rapid Rewards® points.

Budget®     Book now ❯



**Score! You qualify for up to a 30% discount on points.**

Buy now and boost your balance. Don't wait – this offer is only valid while on this page.

Buy points ⬏



Hi, *Yvonne*  3,997 points  **My Account** | **Log out**  Español 🌐

# Southwest

DEC 7
✈ **PHX → LAX**

TOTAL
**$5.60** ⌄

Plaintiffs' Exhibit 6

# Passenger & Payment Info

✓ Price ———— ● Payment ———— Confirmation



## Flight details  Modify

| ✈ Mon 12/7 | **PHX** 1:05 PM | → | **LAX** 1:35 PM | 1 hr 30 min | Nonstop | Wanna Get Away ® |
|---|---|---|---|---|---|---|

| | |
|---|---|
| Price per Passenger | **2,964 PTS** |
| Taxes and fees per Passenger | **$5.60** |
| Total per Passenger | **2,964 PTS + $5.60** |
| Passenger(s) | **x1** |
| Flight total | **2,964 PTS + $5.60** |



## ✈ Who's flying?

Please make sure names match government-issued IDs.

* Required

**FIRST NAME** *
URI

**MIDDLE NAME**

**LAST NAME** *
MARCUS

**SUFFIX**
Select ▼

**DATE OF BIRTH** *
█ ▼   █   1956

**GENDER** *
Male ▼

**RAPID REWARDS®/ACCOUNT #**
█

⌃ Secure traveler information ⓘ

### Secure traveler information

**REDRESS #**

**KNOWN TRAVELER #**
█

[ Clear ]

⌃ Special Assistance

### Special Assistance



### Airport/boarding assistance

☐ Blind or have low vision ⓘ

☐ Deaf or hard of hearing ⓘ

☐ Cognitive and developmental disabilities ⓘ

### Animal assistance

☐ Traveling with trained service animal ⓘ

☐ Traveling with emotional support animal ⓘ

### Wheelchair assistance

◉ No wheelchair assistance needed

◯ Can walk but need assistance to and from gate ⓘ

◯ Need lift/transfer assistance to and from aircraft seat ⓘ

### Personal wheelchair stowage

◉ No wheelchair stowage needed

◯ Manual wheelchair ⓘ

◯ Powered wheelchair with [0 ▼] spillable batteries ⓘ

◯ Powered wheelchair with [0 ▼] non-spillable batteries ⓘ

### Other

☐ Have peanut-dust allergy ⓘ

☐ Bringing my own approved Portable Oxygen Concentrator ⓘ

### Notes

To receive assistance within the airport, please be sure to inform a Southwest Airlines® Agent or Skycap at your first point of contact upon arrival at the airport at any connection points, and upon arrival to their destination.

[ Clear ]

## 🌅 Add EarlyBird Check-In®

✔ Automatic check-in

✔ Earlier boarding position

✔ Earlier access to seats

✔ Earlier access to overhead bin space

$**25**.00

Per Passenger.
Per one-way.

[ ◯ Add EarlyBird Check-In ]

## @ How do we contact you?

We'll only contact you if we have important news about your flight...promise!

* Required

CONTACT METHOD *
[ Text me ▼ ]

COUNTRY CODE *
[ +1 ▼ ]

PHONE NUMBER * Use numbers only
[ 9098330065 ]

By selecting 'Text me', Southwest Airlines will send SMS (text) notifications to the mobile (only) phone number provided. Standard text message rates apply.

 ## Apply Travel Funds, LUV Vouchers, and gift cards ⌄

 ## Credit card & billing information

\* Required

**Get a $200.00 statement credit**
after first purchase & earn **10,000 Rapid Rewards® points**
Learn More ❯

| CARD TYPE * | CREDIT/DEBIT CARD # * | EXPIRATION DATE * | CVV * |
|---|---|---|---|
| Visa ⌄ | ▮▮▮▮▮ | ▮▮ ⌄ | ▮ | ▮ |

**FIRST NAME ON CARD ***
Uri

**LAST NAME ON CARD ***
Marcus

🔒 Southwest uses a TLS connection to transmit sensitive and personal data.

## Billing information

**COUNTRY ***
United States of America ⌄

**STREET ADDRESS ***
PO BOX 126

**STREET ADDRESS 2**

**CITY/TOWN ***
OJAI

**STATE ***
California ⌄

**ZIP CODE ***
93024

**COUNTRY CODE ***
+1 ⌄

**PHONE NUMBER * Use numbers only**
8183020111

☑ Save this credit card to your account

**CARD DESCRIPTION**
Visa 9922

Continue filling out this form, and when you hit "Purchase" at the bottom of the page you'll be redirected to PayPal. More information

**P** PayPal | **P** PayPal CREDIT

**TOTAL**
$5.60

## Send your receipt

Let us know where to send your confirmation receipt.

○ Saved email        adi@ntcf.org                                    ▼

● New email          uri@ntcf.org

*Note: Receipts contain confidential billing information.*

## Purpose of travel

☑ Personal    ☑ Business

---

↗ **Share your plans**

We'll email your travel details to the addresses you enter below.

**EMAIL 1**
adi@ntcf.org

**EMAIL 2**

**EMAIL 3**

**EMAIL 4**

*Note: Itineraries do not contain confidential billing information.*

---

## Lock in this fare today.

You can always change[1] or cancel[2]
later without a fee.

[1]Fare difference may apply. [2]Failure to cancel a reservation at least 10
minutes prior to scheduled departure may result in forfeited travel funds.

| | |
|---|---|
| BAG FEE | $0.00 |
| SUBTOTAL | $0.00 |
| TAXES & FEES | $5.60 |
| **TOTAL POINTS** | **2,964** PTS |
| **TOTAL DOLLARS** | **$5.60** |

Show price breakdown

**Transportation of hazardous materials**

Federal law forbids the carriage of hazardous materials such as aerosols, fireworks, lithium
batteries, and flammable liquids aboard the aircraft in your checked or carryon baggage.
E-cigarettes are not permitted in checked baggage and must be transported in carryon baggage
only. By clicking 'Purchase', you acknowledge that you understand the hazardous materials
restrictions and penalties. View more on hazardous materials.

By clicking 'Purchase', I agree to the Terms and Conditions below, the privacy policy, fare rules, and the contract of carriage.

**Purchase**

**Terms and Conditions**

Plaintiffs' Exhibit 7

| | |
|---|---|
| **From:** | **United Airlines, Inc.** Receipts@united.com |
| **Subject:** | eTicket Itinerary and Receipt for Confirmation O6F17N |
| **Date:** | 26 October 2020 at 8:32 |
| **To:** | URI@ntcf.org  URI@NTCF.ORG |





Mon, Oct 26, 2020

# Thank you for choosing United.

A receipt of your purchase is shown below. Please retain this email receipt for your records.

**Note:** There are travel restrictions in place due to the coronavirus. Check our Important notices page for the latest updates

Confirmation Number:

# O6F17N

| Flight 1 of 3 UA955 | Class: United Economy (L) |
|---|---|
| Fri, Nov 20, 2020 | Fri, Nov 20, 2020 |
| **12:55 AM** | **06:00 AM** |
| Tel Aviv, IL (TLV) | San Francisco, CA, US (SFO) |

| Flight 2 of 3 UA5926 | Class: United Economy (L) |
|---|---|
| Mon, Jan 04, 2021 | Mon, Jan 04, 2021 |
| **03:18 PM** | **04:47 PM** |
| Orange County, CA, US (SNA) | San Francisco, CA, US (SFO) |

Flight Operated by Skywest Airlines dba United Express.

| Flight 3 of 3 UA954 | Class: United Economy (L) |
|---|---|
| Mon, Jan 04, 2021 | Tue, Jan 05, 2021 |
| **07:45 PM** | **07:35 PM** |
| San Francisco, CA, US (SFO) | Tel Aviv, IL (TLV) |

## Traveler Details

**MARCUS/YVONNE**

eTicket number: **0162325923156**
Frequent Flyer: **UA-XXXXX273 Premier Silver**

Seats: **TLV-SFO 29A**
**SNA-SFO -----**
**SFO-TLV 30A**

## Purchase Summary

Purchase Summary

| | |
|---|---|
| Method of payment: | **Miscellaneous Document** |
| Date of purchase: | **Mon, Oct 26, 2020** |

| | |
|---|---|
| Airfare: | **510.00 USD** |
| Israel Departure Tax: | **27.26 USD** |
| U.S. Customs User Fee: | **5.99 USD** |
| U.S. Immigration User Fee: | **7.00 USD** |
| U.S. APHIS User Fee: | **3.96 USD** |
| September 11th Security Fee: | **5.60 USD** |
| International Surcharge: | **302.80 USD** |
| U.S. Passenger Facility Charge: | **4.50 USD** |

| | |
|---|---|
| Total Per Passenger: | **867.11 USD** |

| | |
|---|---|
| Total: | **867.11 USD** |

## Payment Info

Remaining value of your previous ticket numbers 0162324400618 was applied to this purchase.

## MileagePlus Accrual Details

| Yvonne Marcus | | | | | |
|---|---|---|---|---|---|
| Date | Flight | From/To | Award Miles | PQP | PQF |
| Fri, Nov 20, 2020 | 955 | Tel Aviv, IL (TLV) to San Francisco, CA, US (SFO) | 2849 | 407 | 1 |
| Mon, Jan 04, 2021 | 5926 | Orange County, CA, US (SNA) to San Francisco, CA, US (SFO) | 140 | 20 | 1 |
| Mon, Jan 04, 2021 | 954 | San Francisco, CA, US (SFO) to Tel Aviv, IL (TLV) | 2709 | 387 | 1 |
| MileagePlus accrual totals: | | | 5698 | 814 | 3 |

## Baggage allowance and charges for this itinerary

| Origin and destination for checked baggage | 1st bag charge | 2nd bag charge | 1st bag weight and dimensions | 2nd bag weight and dimensions |
|---|---|---|---|---|
| Fri, Nov 20, 2020 Tel Aviv, IL (TLV - Ben Gurion) to San Francisco, CA, US (SFO) | 0 USD | 0 USD | 70lbs(32kg) - 62in(157cm) | 70lbs(32kg) - 62in(157cm) |
| Mon, Jan 04, 2021 Orange County, CA, US (SNA) to Tel Aviv, IL (TLV - Ben Gurion) | 0 USD | 0 USD | 70lbs(32kg) - 62in(157cm) | 70lbs(32kg) - 62in(157cm) |

Baggage check-in must occur with United or United Express, and you must have valid MileagePlus Premier® Silver membership at time of check-in to qualify for waiver of service charges for up to two checked bags (within specified size and weight limits).

## Important Information about MileagePlus Earning

- Accruals vary based on the terms and conditions of the traveler's frequent flyer program, the traveler's frequent flyer status and the itinerary selected. United MileagePlus® mileage accrual is subject to the rules of the MileagePlus program
- Once travel has started, accruals will no longer display. You can view your MileagePlus account for posted accrual
- You can earn up to 75,000 award miles per ticket. The 75,000 award miles cap may be applied to your posted flight activity in an order different than shown

## Plaintiffs' Exhibit 8



**Date of Purchase:** Nov 10, 2020

# Phoenix, AZ ▶ Los Angeles, CA

Passenger Information

**YVONNE MARIE MARCUS**
**SkyMiles#:** ████████

Confirmation Number: **GT6DKF**
Ticket Number: **0062434185575**

## FLIGHT

| Date and Flight | Status | Class | Seat/Cabin |
|---|---|---|---|
| PHX ▶ LAX | Mon 07Dec2020 | OO 3844 | | OPEN | SN | |

## FARE DETAILS

**Miles**

| | |
|---|---|
| Miles Redeemed | 6,500  miles |

**Air Transportation Charges**

**Taxes, Fees and Charges**

| | |
|---|---|
| United States - September 11th Security Fee(Passenger Civil Aviation Security Service Fee) (AY) | $5.60  USD |
| Total Taxes, Fees & Charges: | $5.60  USD |
| Total: | 6,500  miles + $5.60  USD |
| Paid with Visa ending 9922 | $5.60  USD |

## KEY OF TERMS

| | |
|---|---|
| # - Arrival date different than departure date | F - Food available for purchase |
| ** - Check-in required | L - Lunch |
| ***- Multiple meals | LV - Departs |
| *$ - Multiple seats | M - Movie |
| AR - Arrives | R - Refreshments, complimentary |
| B - Breakfast | S - Snack |
| C - Bagels / Beverages | T - Cold meal |
| D - Dinner | V - Snacks for sale |

Check your flight information online at delta.com or call the Delta Flightline at 800.325.1999.
Baggage and check-in requirements vary by airport and airline, so please check with the operating carrier on your ticket.
Please review Delta's check-in requirements and baggage guidelines for details.
You must be checked in and at the gate at least 15 minutes before your scheduled departure time for travel inside the United States.
You must be checked in and at the gate at least 45 minutes before your scheduled departure time for international travel.
For tips on flying safely with laptops, cell phones, and other battery-powered devices, please visit http://SafeTravel.dot.gov
Do you have comments about service? Please email us to share them.

NON-REFUNDABLE / CHANGE FEE
When using certain vouchers to purchase tickets, remaining credits may not be refunded. Additional charges and/or credits may apply and are displayed in the sections below.

This ticket is non-refundable unless issued at a fully refundable fare. Any change to your itinerary may require payment of a change fee and increased fare. Failure to appear for any flight without notice to Delta will result in cancellation of your remaining reservation.

All Preferred, Delta Comfort+™, First Class, and Delta One seat purchases are Nonrefundable.

Plaintiffs' Exhibit 9

| | |
|---|---|
| **From:** | **United Airlines, Inc.** Receipts@united.com |
| **Subject:** | eTicket Itinerary and Receipt for Confirmation NL9EP0 |
| **Date:** | 26 August 2021 at 16:49 |
| **To:** | URI@ntcf.org URI@NTCF.ORG |



                                                  Thu, Aug 26, 2021

# Thank you for choosing United.

A receipt of your purchase is shown below. Please retain this email receipt for your records.

**Note:** There are travel restrictions in place due to the coronavirus. Check our <u>Important notices page</u> for the latest updates

**Get ready for your trip:** <u>Visit the Travel-Ready Center</u>, your one-stop digital assistant, to find out about important travel requirements specific to your trip.

Confirmation Number:

## NL9EP0

| Flight 1 of 3 UA955 | Class: United Economy (L) |
|---|---|
| Fri, Jul 30, 2021 | Fri, Jul 30, 2021 |
| **12:55 AM** | **06:00 AM** |
| Tel Aviv, IL (TLV) | San Francisco, CA, US (SFO) |

| Flight 2 of 3 UA1548 | Class: United Economy (K) |
|---|---|
| Sat, Sep 04, 2021 | Sat, Sep 04, 2021 |
| **04:00 PM** | **05:17 PM** |
| Los Angeles, CA, US (LAX) | San Francisco, CA, US (SFO) |

| Flight 3 of 3 UA954 | Class: United Economy (K) |
|---|---|
| Sat, Sep 04, 2021 | Sun, Sep 05, 2021 |
| **08:20 PM** | **07:55 PM** |
| San Francisco, CA, US (SFO) | Tel Aviv, IL (TLV) |

| Traveler Details | |
|---|---|
| **MARCUS/YVONNEMARIE** | |
| eTicket number: **0162364862487** | Seats: **LAX-SFO** ----- |
| Frequent Flyer: **UA-XXXX273 Premier Silver** | **SFO-TLV 30A** |
| | **TLV-SFO** ----- |

## Purchase Summary

| | |
|---|---|
| Method of payment: | **Miscellaneous Document** |
| Date of purchase: | **Thu, Aug 26, 2021** |

| | |
|---|---|
| Airfare: | **605.00 USD** |
| U.S. Transportation Tax: | **38.20 USD** |
| International Surcharge: | **265.00 USD** |
| U.S. APHIS User Fee: | **3.96 USD** |
| U.S. Customs User Fee: | **5.99 USD** |
| Israel Departure Tax: | **27.87 USD** |
| U.S. Immigration User Fee: | **7.00 USD** |
| September 11th Security Fee: | **5.60 USD** |
| U.S. Passenger Facility Charge: | **4.50 USD** |

| | |
|---|---|
| Total Per Passenger: | **963.12 USD** |

| | |
|---|---|
| Total: | 963.12 USD |

### Payment Info

Remaining value of your previous ticket numbers 0162359975253 was applied to this purchase.

### Carbon Footprint

Your estimated carbon footprint for this trip is **1.30631 tonnes of CO2.**

You can reduce your environmental impact by participating in our CarbonChoice program which supports projects that reduce greenhouse gases. Learn more.

### MileagePlus Accrual Details

Yvonnemarie Marcus

| Date | Flight | From/To | Award Miles | PQP | PQF |
|---|---|---|---|---|---|
| Sat, Sep 04, 2021 | 1548 | Los Angeles, CA, US (LAX) to San Francisco, CA, US (SFO) | 105 | 15 | 1 |
| Sat, Sep 04, 2021 | 954 | San Francisco, CA, US (SFO) to Tel Aviv, IL (TLV) | 2170 | 310 | 1 |
| Fri, Jul 30, 2021 | 955 | Tel Aviv, IL (TLV) to San Francisco, CA, US (SFO) | 3829 | 547 | 1 |
| MileagePlus accrual totals: | | | 6104 | 872 | 3 |

### Baggage allowance and charges for this itinerary

| Origin and destination for checked baggage | 1st bag charge | 2nd bag charge | 1st bag weight and dimensions | 2nd bag weight and dimensions |
|---|---|---|---|---|
| Fri, Jul 30, 2021 Tel Aviv, IL (TLV - Ben Gurion) to San Francisco, CA, US (SFO) | 0 USD | 0 USD | 70lbs(32kg) - 62in(157cm) | 70lbs(32kg) - 62in(157cm) |
| Sat, Sep 04, 2021 Los Angeles, CA, US (LAX) to Tel Aviv, IL (TLV - Ben Gurion) | 0 USD | 0 USD | 70lbs(32kg) - 62in(157cm) | 70lbs(32kg) - 62in(157cm) |

Baggage check-in must occur with United or United Express, and you must have valid MileagePlus Premier® Silver membership at time of check-in to qualify for waiver of service charges for up to two checked bags (within specified size and weight limits).

Plaintiffs' Exhibit 10



**FLIGHT | HOTEL | CAR | VACATIONS    SPECIAL OFFERS    RAPID REWARDS®    🔍**

ⓘ **Credit card saved to account**
Your credit card has been added to your account.

# Thanks for flying with us!

✓————✓————✓
Price    Payment    Confirmation

✓ **Your flight is booked!**

We're sending you a confirmation email to the address below. If the email hasn't arrived in 2 minutes, check your junk or spam folder.
**adi@ntcf.org**

## Trip summary                                                                🖨 Print



| ✈ **Flight** | 🚗 Add a car | Add a hotel |
|---|---|---|
| **CONFIRMATION #** | | The perfect stay is moments away |
| **3MHWYD** | | |
| | Book now. Pay later! | **DESTINATION/HOTEL NAME:** |
| **JUL 30** | From **$86.39*/day in** | Burbank |
| **SFO ✈ BUR** | **Burbank** | CHECK-IN      CHECK-OUT |
| **FLIGHT TOTAL** | *Taxes and fees excl. Terms apply. | 07/30/2021    08/01/2021 |
| **$185.98** | 🅱 **Budget**    Book now | Search |



**Earn 40,000 points**
after you spend $1,000 in the first three months of account opening.
Plus, earn 3X points per $1 spent on dining purchases for
12 months.

$69 annual fee.                      Learn more ❯

| | |
|---|---|
| CURRENT POINTS BALANCE | 1,942 |
| ESTIMATED POINTS EARNED ON THIS TRIP | 846 |
| POINTS EARNED WITH NEW CREDIT CARD OFFER | 40,000 |
| **ESTIMATED TOTAL POINTS** | **42,788** |

## 7/30 - Burbank

⚠ **Temporary quarantine may apply:**                          Learn more
This destination may be impacted by a temporary self-quarantine upon landing.

JUL 30
# San Francisco, CA *to* Burbank, CA

Confirmation # **3MHWYD**

| PASSENGERS | EST. POINTS | EXTRAS | FARE |
|---|---|---|---|



| PASSENGERS | EST. POINTS | EXTRAS | FARE |
|---|---|---|---|
| **Yvonne Marcus** | + 846 PTS | | Wanna Get Away® |
| Rapid Rewards® A | | | |
| Known Traveler # | | | |
| Edit Known Traveler # / Redress # > | | | |
| Special Assistance > | | | |

| | | |
|---|---|---|
| $ **Transfarency®: Defined** Low fares. Nothing to hide. | **Change fees don't fly with us** Flexibility for your travel plans. | **Pack with care** Guidelines for carryon luggage. |

## Departing  7/30/21 Friday

| | | | | | |
|---|---|---|---|---|---|
| ✈ DEPARTS | **11:00** AM | **SFO** San Francisco, CA - SFO | FLIGHT **5733** 📶 📺 SCHEDULED AIRCRAFT Boeing 737-700 Subject to change | | Wanna Get Away® (Passenger x1) $141.00 |
| | *Nonstop* | | | | EarlyBird Check-In® (One-way trip x1) $20.00 |
| ✈ ARRIVES | **12:15** PM | **BUR** Burbank, CA - BUR | TRAVEL TIME 1hr 15min | | SUBTOTAL **$161.00** |

| | | |
|---|---|---|
| | Taxes & fees | $24.98 |
| | **Flight total** | **$185.98** |

**Icon legend**

📶 WiFi available  |  📺 Live TV available  |  🌅 EarlyBird Check-In®

**Helpful Information:**

- Please read the fare rules associated with this purchase.
- When booking with Rapid Rewards® points, your points balance may not immediately update in your account.
- Per CDC Order, face coverings required for everyone 2 and over (through September 13, 2021).

**Book your hotel with us and earn up to 10,000 points per night.**



The perfect stay is moments away

DESTINATION/HOTEL NAME:
**Burbank**

| CHECK-IN | CHECK-OUT |
|---|---|
| **07/30/2021** 📅 | **08/01/2021** 📅 |

| ROOMS | ADULTS | CHILDREN | |
|---|---|---|---|
| 1 | 1 | 0 | **Search** 🔍 |

# Payment summary

| PAYMENT INFORMATION | AMOUNT PAID |
|---|---|

| PAYMENT INFORMATION | | | AMOUNT PAID |
|---|---|---|---|
|  **Yvonne Marcus**<br>Travel Fund ▬▬▬<br>Expiration: 11/09/21 | | | $165.98 |
| **Visa 1284**<br>XXXXXXXXXXXX1284<br>Expiration: 2/24 | **CARD HOLDER**<br>Uri Marcus | **BILLING ADDRESS**<br>PO BOX 126<br>OJAI, CA US 93024 | $20.00 |

## Total charged



### You're all set for your upcoming trip.

Get ready to enjoy two bags for the price of none*,
no fees to change your flight**, and some Southwest® love.

*First and second checked bags. Weight and size limits apply. **Fare difference may apply.



| | |
|---|---|
| SUBTOTAL | $161.00 |
| TAXES & FEES | $24.98 |
| **TOTAL DOLLARS** | **$185.98** |

Show price breakdown

### Save up to 30% off

Earn up to 2400 Rapid Rewards® points.

**Budget**    Book now ›

**Score! You qualify for up to a 30% discount on points.**

Buy now and boost your balance. Don't wait – this offer is only valid while on this page.

**Buy points** ⧉

# Plaintiffs' Exhibit 11

| Dr. Leon Gilead | **MD PhD** | ד"ר לי-און גלעד |
| Certified Dermatologist | מ.ר. L.N.22702 | מומחה לרפואת עור ומין |
| 43b Emek Refaim St. | 5633033@gmail.com | רח' עמק רפאים 43ב |
| Jerusalem   Mobile: 050-5633002 | נייד:   Telefax: 02-5633033 טלפקס: | ירושלים |

10/10/2021
ד' חשון תשפ"ב

לכבוד

מוקד התחייבויות

מכבי שירותי בריאות

מחוז יו"ם לים

הנדון: מרכוס עדי ת.ז. 336466933

ד"נ שלום רב,

גב' מרכוס הופנתה לבדיקתי ע"י ד"ר וויינראוך בשל נגע שמתפתח על האף מזה כ- 3 חודשים. מרחה משחת פצעים והגליד והתקלף.

בבדיקתה:    על צד שמאלי של גשר האף נגע מוסגל עם שקערורית מרכזית. שוליים מוסננים ובהם כלי דם מסועפים ומורחבים במראה טיפוסי לבזליומה שהתפתחה לאחר עטיית מסכה ממושכת. קוטר משוער כ- 1.2 ס"מ.

אבחנה:    לאור מיקום הנגע ומאפייניו רצוי להסיר בניתוח בשיטת MOHS

המלצות:

1. לאור הממצאים יש להסיר את הנגע/ים בניתוח בשיטת MOHS.

2. הניתוח יבוצע ע"פ **התחייבות לבי"ח שערי צדק** קוד משרד הבריאות 17311    "ניתוח מיקרוגרפי בשיטת MOHS" והתחייבות לביקורת רופא אחר הניתוח בקוד משרד הבריאות L9267.

3. **יש לפעול לקבלת התחייבות באופן מיידי.** את ההתחייבות יש לשלוח לפקס מס' 02-5633033, או לווטסאפ בטלפון 050-5633002.

4. **תור לניתוח ייקבע רק לאחר קבלת התחייבות תקפה.**

5. אם לצייד החולה במכתב הפנה המפרט מחלות רקע, תרופות עזכניות ורגישויות.

6. **תו ירוק בתוקף הוא תנאי לקיום הניתוח** (לחילופין יש להכין בדיקת PCR לקורונה מלכל היותר 72 שעות טרם הניתוח)

7. אין צורך להכין בדיקות דם/אחרות.

---

1. הניתוח יתקיים **ביחידת המוז בבניין בית חולים שערי צדק, רח' שמואל בייט 12, קומה 4, אגף מרפאות החוץ.**

2. בשל מגיפת הקורונה נדרש תו ירוק בתוקף למטופל ולמלווה/ים.

3. במידה ולא יהיה אישור כזה יהיה צורך לרכוש בדיקה מהירה בבית החולים ולבצע בדיקה מהירה ע"י אחות היחידה במקום.

4. מלווה לא יוכל להיכנס לחדר ניתוח ללא אחד מהאישורים הנ"ל

5. בכל בעיה, שאלה, צורך לבטל או להודיע בגע האחרון על אי יכולת להגיע – או להודיע אישית לד"ר גלעד על הבעיה באמצעות מסרון או ווטסאפ לטלפון 050-5633002

בכבוד רב

ד"ר לי-און גלעד

| **Dr. Leon Gilead** | **MD PhD** | **Dr. Leon Gilead** |
|---|---|---|
| **Certified Dermatologist** | **L.N. 22702 M.R.** | **Skin & STD Specialist** |
| 43b Emek Refaim St. | 5633033@gmail.com | R.H. Emek Refaim 43b |
| Jerusalem Mobile:   050-5633002 | :Cell Telefax: 02-5633033 :TeleFax | Jerusalem |

10/10/2021
**4 Cheshvan 5782**



To:
Payments Center
Maccabi Health Services
Jerusalem District

Subject: <u>Marcus Adi ID No.</u> ███████

**To Whom it may concern, Shalom:**

Mrs. Marcus was referred for my examination by Dr. Weinrauch due to a lesion that has been developing on the nose for about 3 months. She applied ointment on the wound and it froze and peeled.

**For her examination:** On the left side of the bridge of the nose, wound is strained with a central depression. Edges are strained with branched and dilated blood vessels typical of basal cell carcinoma that developed after prolonged mask wearing. Estimated diameter about 1.2 mm.

**Diagnosis:** In light of location of lesion and its characteristics, it's advisable to remove it surgically using the **MOHS** surgical method.

**Recommendations:**

1. In light of the findings, the lesion(s) should be removed by surgery using the **MOHS** surgical method.

2. The surgery will be performed with payment obgligation to Shaare Zedek Hospital, Ministry of Health code 17311 "Microscopic surgery using MOHS method" along with payment obligation for another physician followup. The Ministry of Health code is L9267.

3. <u>**Action must be taken to obtain an payment authorization immediately.**</u> The commitment must be faxed to 02-5633033, or to WhatsApp at 050-5633002.

4. <u>**An appointment for surgery will be scheduled after receiving a valid payment authorization.**</u>

5. Please provide patient with a referral letter detailing background illnesses, current medications and allergic reactions.

6. <u>**A valid green pass is a condition for the operation to take place**</u> (alternatively, a PCR test must be prepared for corona from at most 72 hours before surgery).

7. There is no need to prepare blood/other tests.

---

1. The surgery will take place at the MOZ Unit at Shaare Zedek Hospital building, 12 Shmuel Bate St., 4th floor, Department of Outpatient Clinics.

2. Due to the corona epidemic, a valid green pass is required for the patient and the attendants.

3. In the event that there is no such approval, it will be necessary to purchase a quick examination at the hospital's pharmacy, and perform a quick check by the nurse only, on the spot.

4. An attendant will not be able to enter an operating room without one of the above authorizations.

5. For any problem, question, or need to cancel or notify at the last minute of inability to arrive - please notify in person to Dr. Gilad about the problem by means of SMS message or WhatsApp to telephone 050-5633002.

---

Sincerely,
*[signed and stamped]*
**Dr. Le-on Gilead**

20.02.2021 :Date    **Maccabi Health Services**

Registered Referral

# Plaintiffs' Exhibit 12

Dr. Fischer Liona

**Skin & STD**

: **Specialities**

: **Skin & STD Specialist**

027218

250244415 **Referral Code**

02-5636265    **Telephone**
02-5619686    **Fax**

**Bloch Maccabi Clinic 20 Kiryat Ya'arim (3rd Floor)    Address**

| █████ : **ID** | **ADI** : **First Name** | **MARCUS** : **Family Name** | **Details of Examinee** |
|---|---|---|---|
| 0522811774 : **Tel Work/Mob.** | 025903070 : **Tel** | F :מין █████/1957 : **DOB** | |
| 9107102 **ZIP** | | Jerusalem : **Address** | |

**Expert Consultation**

<u>MOHS **MICROSURGERY**</u> : **Subdomain at Maccabi**    **Dermatology-malignant lesions**    **Service Area:**

**Regular :Type of Consult**

0524679965    Clinic: Dr. Michael Avrahamishi

**Lesion on nose :Complaints**

left upper lateral nasal bridge 9 mm pearly papule  depressed with telangiectaisa, dermscopy consistent with BCC :**Findings**

:**Diagnosis**

• BASAL CELL CARCINOMA (BCC)   Left
nose

No :**Smoker**

• FRAMINGHAM SCORE BELOW 10%  (02/2013)    =2%        :**Known Issues:**
• FAMILY HISTORY OF HYPERTENSION    mother
• BASAL CELL CARCINOMA -BCC  (09/2021)    susp lt nose
• SMALL INTESTINE NEOPLASM UNC BEHAVIOR  (04/2020)    OR SIBO RO
• OPERATION UNS  Status Post (23/04/2014)    anterior colporrhaphy, lap colposuspension
• RHEUMATIC FEVER+HEART DISEASE UNS  (1962)
• MITRAL VALVE PROLAPSE  (1962)
• MITRAL REGURGITATION RHEUMATIC  Mild  (21/02/2013)    MR per echo
• NEPHROLITHIASIS  Bi-Lateral  Mild  (03/2013)    per CT
• CYSTOSCOPY  Status Post (23/04/2014)
• MIGRAINE    weekly
• ULCERATIVE COLITIS  Status Post (1974)    till 1977
• IRRITABLE BOWEL SYND  Suspected  (1990)
• MELANOSIS COLI  (05/01/2014)    pseudomelanosis
• COLONOSCOPY  (05/01/2014)    +ileoscopy (normal except melanosis)
• GERD  (08/2000)
• PERIMENOPAUSE  (2012)
• UTERINE PROLAPSE    with cystocele and rectocele
• RECTOCELE (FEMALE)  (09/2016)
• RECTOCELE REPAIR  Status Post (03/2019)
• FIBROCYSTIC DISEASE BREAST

TONIGHT 25MG X 10 1X1X90    :**Regular Prescription Medications**

**Maccabi Health Services**

Registered Referral



250244415 **Referral Code**

Dr. Fischer Liona
**Skin & STD**

**Specialities**

**Skin & STD Specialist**

02-5636265 **Telephone**
02-5619686 **Fax**

**Bloch Maccabi Clinic 20 Kiryat Ya'arim (3rd Floor)** : **Address**

| | | | Details of Examinee |
|---|---|---|---|
| 336466933 : **ID** | **ADI** : **First Name** | **MARCUS** : **Family Name** | |
| 0522811774 : **Tel Work/Mob.** | 025903070 : **Tel** | F מין: ▉/1957 : **DOB** | |
| 9107102 **ZIP** | | Jerusalem : **Address** | |

**Expert Consultation**

RIZALT RPD WAFER 10MG X 6 1X1X6
CAP NALTREXONE 4.5mg (12615) 1X1X30
RX NALTREXONE 1MG/ML 4.5X1X30

.Moh's microsurgery referred for treatment :Purpose of the referral
**Many thanks and blessings**

ד"ר לי פישר פלד
מ.ה. 27218 מ.ר.
16568
מומחית ברפואת העור

**Signature and stamp of Doctor**

** Please be recognized with a magnetic card **

Please advise in advance on postponement/
cancellation of a consult appointment.

If you consult a private doctor, it is recommended to check in advance whether
the doctor is included in the list of Maccabi Gold / My Maccabi doctors.
The referral is valid for 180 days, from - 26/12/2021 until 24/06/2022

26/12/2021

**Date**

א

**Dr. Li Fischer Peled**
**Reg No 27218 Lic No 16568**
**Skin & STD Specialist**



Plaintiffs' Exhibit 13

Ephraim Ben-Zeev, MD
54/19 Zeit Shemen Street, 7
Efrat, Gush Etzion - 9043500

| | | |
|---|---|---|
| Patient | : **Adi (Yvonne) Marcus** | Record Id : ▮ |
| Date of Birth | : **Jul 03, 1957** | Age / Gender : **64** / **F** |
| Provider | : **Ephraim Ben-Zeev, M.D., MD, FABUCM** | Date of Visit : **Jan 26, 2022** |

## Chief Complaints

Consultation regarding basal cell carcinoma of the nasal bridge, left side. Previous consultation 10/10/21 Dr. Leon Gilead, dermatology specialist . Emek Refaim St, Jerusalem. In his opinion basal cell carcinoma began approximately 3 months prior to hid evaluation after a period of prolonged face mask use during multiple flights between Israel and USA.  He recommended MOHS surgery. Adi has attempted to heal the lesion using "natural therapies".
Adi was seen by Dr. Leora Fisher-Pelled  on 26/12/2021 who again confirmed a diagnosis of Basal Cell Carcinoma and again recommended MOHS surgery. She expressed no opinion as to the possible origins of the BCC.
Adi has consulted with me today for my medical opinion as to the possible origin of the condition and to how to proceed with treatment.

## Symptoms

Itching, burning and hypersensitivity to contact in the area of the lesion on left side of nasal bridge.

## History of Present Illness

Adi (Yvonne) states that she had no problems with the skin of her nose and no lesions on the skin of her nose until she flew round trip from Tel Aviv to LAX in November 2020, returning in January 2021. In July of 2021 she had to make another flight from Israel to SFO and LAX due to the death of her Father. During all four trips of about 14 hours each she states that she complained of irritation and itching on the left side of her nose where the pressure click of her required face mask rested on her nose. Because of flight rules requiring the mask at all times, she could not remove her mask to relieve the pressure on the sensitive area of her nose. During her return trip from San Francisco to Israel on September 4-5, 2021, again she was required to wear the mask for some 14 hours while again noting sensitivity, pain and itching on the left side of the nasal bridge.
By October of 2021 the sensitivity, pain, and itching had gotten so bad she consulted with Dr. Leon Gilead a dermatologist and MOHS specialist who diagnosed her condition as basal cell carcinoma and recommended MOHS surgery. In his written opinion, he felt that the persistent irritation of prolonged mask wearing could be a factor in causing the appearance of basal cell carcinoma in this location.
On December 26, 2021 Adi consulted with Dr. Leora Fisher-Peled through Kupat Cholim Maccabi who confirmed the diagnosis of basal cell carcinoma. She expressed no opinion as to the possible origins of the lesion.

## Past Medical History

See listed diagnoses

## Family and Social History

Married
Self-employed

## Health Vitals And Flowsheets

| Height | **162.5 cms** | Weight | **59 kgs** |
|---|---|---|---|
| BMI | **22.34** | BP | **110 / 70 mmHg** |
| Pulse Rate | **72 bpm** | Pulse Pattern | **Regular** |

## Physical Examination



Ephraim Ben-Zeev, MD
54/19 Zeit Shemen Street, 7
Efrat, Gush Etzion - 9043500

| | | | |
|---|---|---|---|
| Patient | : **Adi (Yvonne) Marcus** | Record Id : | |
| Date of Birth | : **Jul 03, 1957** | Age / Gender : **64 / F** |
| Provider | : **Ephraim Ben-Zeev, M.D., MD, FABUCM** | Date of Visit : **Jan 26, 2022** |

There is a 4 mm circular cratered lesion with raised pinkish borders on the left lateral nasal bridge. There are some areas of slight irregularity, reddish-pinl on the medial superior area to the medial raised border. The physical appearance and local are consistent with the diagnosis of basal cell carcinoma.

## Assessment Notes

Basal Cell Carcinoma: This type of locally invasive skin cancer is very commonly and seen as part of the aging process. The origin of these types of skin cancer are certainly related to on going local irritation. Such a process of chronic irritation could be consistent with prolonged and persistent wearing of a facial mask where the pressure strip is persistently pinched to maintain proper sealing over and around the nose and persistent moisture of exhalation of moist air and constant friction together being a causative factor leading to the growth of this type of skin cancer.

## Diagnoses

| Diagnosis | Code | Comments |
|---|---|---|
| Basal cell carcinoma of skin, unspecified | C44.91 | -- |

## Instructions

It is my medical opinion that the proper treatment of basal cell carcinoma of the nose as in this case should be with MOHS surgery.

**Electronically Signed**

Plaintiffs' Exhibit 14

**My wife, YVONNE (Adi) MARCUS underwent surgery on 08 Feb 2022 at a hospital in Jerusalem to have skin cancer removed from her nose that according to TWO medical summaries by two independent doctors came as a result of "prolonged masking." She definitely cannot wear a mask on any flight until she heals, which the surgeon said could take 3-4 months minimum.**



מכבי שירותי בריאות

מ.ר גורם מפנה

# Plaintiffs' Exhibit 15

דר' בורובסקי ג'ון

משפחה, פנימית וכללית

**התמחויות:**

מומחה ברפואת המשפחה

| | | |
|---|---|---|
| טלפון: | 02-6238238 | |
| פקס: | 073-2132687 | |
| כתובת: | אגריפס 40, ירושלים | |

**פרטי הנבדק:**

| שם משפחה: **מרכוס** | | שם פרטי: **אורי** | | ת.ז.: 15340557 |
|---|---|---|---|---|
| ת.לידה: 1956 | מין: ז | טלפון: 025903070 | | טל.עבודה/נייד: 0522811774 |
| כתובת: , ירושלים | | | | מיקוד: 9107102 |

0015340557

## אישור רפואי

**מיועד ל:** MASKS\AIRLINE\AIRPORT SECURITY

**תלונות:**

סובל מתסמונת מצוקה נשימתית כאשר שם את המסכה לזמן ממשך - נכנס להיפרונטילציה כולל סחרחורת ונימולים בידיים.

To Whom It May Concern

Mr Uri Marcus, Passport number

Suffers from Respiratory Distress Syndrome (ARDS) that is exacerbated by mask wearing

Please give him all assistance and where possible exempt him from mask wearing

Kind Regards,

Dr John Borowski

Family Physician

+972543504424

borowski_j@mac.org.il

**אבחנה:**

- HYPERACTIVE AIRWAYS
- GENERAL ANXIETY
- SENSORY PROCESSING DISORDER

**בעיות ידועות:**

- HOARSENESS
- POLYNEUROPATHY (07/2008)   evaluated dr bensoulii
- RESTLESS LEG SYND (07/2008)
- GERD (07/2008)   causes hoarseness
- HYPERACTIVE AIRWAYS (11/2020)

**תרופות קבועות:**

B12 1000MCGX30 1X1X30
LYRICA 75MG X 56 1X1X30
SERENADA 50MG X 28 1X1X30
PROMNIX 0.4MG X 30 1X2X90

הנתונים אשר באישור זה מבוססים על הרישומים שבכרטיס הרפואי, על שמו הול"ל במרפאה. רישומים אלה בחלקם מידע
שנמסר לרופא המטפל על ידי החולה ובחלקן תוצאות של בדיקות שנעשו על ידי רופאים.
קופת חולים, רופאיה ועובדיה האחרים אינם אחראים לאמיתות העובדות שנרשמו לפניו / או מפי הורי או אפוטרופוסיו של הנער/
ה שעליו ניתן האישור הזה לפני או בעת הגשת הטיפול הרפואי, או הבדיקה הרפואית ע"י הרופא. כן אין הם אחראים אם ביקור או
טיפול או בדיקה מסויימת לא מצאו את ביטויים ברישומים שבכרטיס הרפואי הנ"ל.

01/08/2021

**חתימה וחותמת הרופא**                                   **תאריך**

19/09/2021 **Date**

**Maccabi Health Services**

**Registered Referral**





**Dr. Borovski John**

**Family, Internal Medicine and General**

**Specialities**

**Family Medicine Specialist**

02-6238238 **Telephone**

073-2132687 **Fax**

אגריפס 40, ירושלים **Address**

**Details of Examinee**

| | | | | | |
|---|---|---|---|---|---|
| 15340557 **ID** | | URI **First Name** | | MARCUS **Family Name** | |
| 0522811774 **Tel Work/Mob.** | 025903070 **Tel** | M **Gender** | 1▇▇/1956 **DOB** | | |
| 9107102 **ZIP** | | | | Jerusalem **Address** | |

**Medical Authorization**

MASKS\AIRLINE\AIRPORT SECURITY :**Intended for**

**Complaints:**

סוגל מתסמונת מצוקה נשימתית כאשר שם את המסכה לזמן ממשך - נכנס להיפרונטילציה כולל סחרחורת וניםולים בידיים.

To Whom It May Concern
Mr Uri Marcus, Passport number▇▇▇
Suffers from Respiratory Distress Syndrome (ARDS) that is exacerbated by mask wearing
Please give him all assistance and where possible exempt him from mask wearing
Kind Regards,
Dr John Borowski
Family Physician
+972543504424
borowski_j@mac.org.il

**Diagnoses:**

· HYPERACTIVE AIRWAYS
· GENERAL ANXIETY
· SENSORY PROCESSING DISORDER

**Known Issues:**

· HOARSENESS
· POLYNEUROPATHY (07/2008)   evaluated  dr bensoulii
· RESTLESS LEG SYND (07/2008)
· GERD (07/2008)   causes hoarseness
· HYPERACTIVE AIRWAYS  (11/2020)

**Regular Prescription Medications:**

B12 1000MCGX30 1X1X30
LYRICA 75MG X 56 1X1X30
SERENADA 50MG X 28 1X1X30
PROMNIX 0.4MG X 30 1X2X90

The data in this certificate is based on the entries on the medical card, in the name of the patient in the clinic. These records are partly information provided to the attending physician by the patient and partly results of tests performed by physicians.
The HMO, its doctors and other employees are not responsible for the veracity of the facts recorded before us / or by the parents or guardians of the young man / woman on whom this approval was given before or at the time of submitting to the medical treatment, or the medical examination by the doctor. They are not responsible if a particular visit or treatment or examination did not find expression in the entries of the above mentioned medical card.

01/08/2021

**Signature and stamp of Doctor**

**Date**

Maccabi
Dr. John Borowski
Family Medicine Specialist
Reg No. 36887
Maccabi Reg No. 28369



מכבי שירותי בריאות

**תאריך:** 19/09/2021

מ.ר גורם מפנה

**ד"ר פורקוש אסתר**
רפואה פנימית

**התמחויות:**
מומרית ברפואה פנימית

**טלפון:** 02-5060340
**פקס:** 02-5906998
**כתובת:** דרך חברון 101, ירושלים

**פרטי הנבדק:**

| **שם משפחה:** מרכוס | | **שם פרטי:** עדי | | **ת.ז.:** 336466933 |
|---|---|---|---|---|
| **ת.לידה:** 1957/ | **מין:** נ | **טלפון:** 025903070 | | **טל.עבודה/נייד:** 0522811774 |
| **כתובת:** ירושלים , | | | | **מיקוד** 9107102 |

## אישור רפואי

**מיועד ל:** מסכות

**תלונות:**

כאשר שמה את המסכה לתקופות ממושכות, סובלת ממצוקה נשימתית, מיגרנות ופצעי עור באף ובעפעפיים התחתונים.

When putting on a mask for extended periods, suffers from respiratory distress, migraines and skin sores on nose and lower eyelids.

**אבחנה:**
• GENERAL ANXIETY
• SENSORY PROCESSING DISORDER

**בעיות ידועות:**

• FRAMINGHAM SCORE BELOW 10% (02/2013)   =2%
• FAMILY HISTORY OF HYPERTENSION   mother
• BASAL CELL CARCINOMA -BCC (09/2021)   susp lt nose
• SMALL INTESTINE NEOPLASM UNC BEHAVIOR (04/2020)   OR SIBO RO
• OPERATION UNS  Status Post (23/04/2014)   anterior colporhaphy, lap colposuspension
• RHEUMATIC FEVER+HEART DISEASE UNS  (1962)
• MITRAL VALVE PROLAPSE  (1962)
• MITRAL REGURGITATION RHEUMATIC  Mild (21/02/2013)   MR per echo
• NEPHROLITHIASIS  Bi-Lateral Mild (03/2013)   per CT
• CYSTOSCOPY  Status Post (23/04/2014)
• MIGRAINE   weekly
• ULCERATIVE COLITIS  Status Post (1974)   till 1977
• IRRITABLE BOWEL SYND  Suspected (1990)
• MELANOSIS COLI (05/01/2014)   pseudomelanosis
• COLONOSCOPY (05/01/2014)   +ileoscopy (normal except melanosis)
• GERD  (08/2000)
• PERIMENOPAUSE (2012)
• UTERINE PROLAPSE   with cystocele and rectocele
• RECTOCELE (FEMALE) (09/2016)
• RECTOCELE REPAIR  Status Post (03/2019)
• FIBROCYSTIC DISEASE BREAST
• NORMAL ECG (12/02/2013)

**תרופות קבועות:**

TONIGHT 25MG X 10 1X1X90
RIZALT RPD WAFER 10MG X 6 1X1X6
CAP NALTREXONE 4.5mg (12615) 1X1X30
RX NALTREXONE 1MG/ML 4.5X1X30
SUMATRIDEX 50MG X 6 1X1X24

דף 1



מכבי שירותי בריאות

**תאריך:** 19/09/2021

מ.ר גורם מפנה

**ד"ר פורקוש אסתר**
רפואה פנימית

**התמחויות:**
מומרית ברפואה פנימית

**טלפון:** 02-5060340
**פקס:** 02-5906998
**כתובת:** דרך חברון 101, ירושלים

| פרטי הנבדק: | | | | | | |
|---|---|---|---|---|---|---|
| שם משפחה: **מרכוס** | | שם פרטי: **עדי** | | | | **ת.ז.:** 336466933 |
| **ת.לידה:** 1957 | | **מין: נ** | **טלפון:** 025903070 | | | **טל.עבודה/נייד:** 0522811774 |
| **כתובת:** , ירושלים | | | | | | **מיקוד** 9107102 |

## אישור רפואי

הנתונים אשר באישור זה מבוססים על הרישומים שבכרטיס הרפואי, על שמו של הולך במרפאה. רישומים אלה בחלקם מידע
שנמסר לרופא המטפל על ידי החולה ובחלקן תוצאות של בדיקות שנעשו על ידי רופאים.
קופת חולים, רופאיה ועובדיה האחרים אינם אחראים לאמיתות העובדות שנרשמו לפנינו / או מפי הוריו או אפוטרופוסיו של המער/
ה שעליו וניתן האישור הזה לפני או בעת הגשת הטיפול הרפואי, או הבדיקה הרפואית ע"י הרופא. כן הם אחראים אם ביקור או
טיפול או בדיקה מסוימת לא מצאו את ביטויים ברישומים שבכרטיס הרפואי הנ"ל.

19/09/2021

חתמה וחותמת הרופא

**תאריך**

19/09/2021 **Date**                              **Maccabi Health Services**

**Registered Referral**        **Translations**     תרגומים

**Write Connection**

**Verified Translation**     תרגום מאומת

**Dr. Porkosh Esther**

**Internal Medicine**

**Specialities**

02-5060340   **Telephone**        **Internal Medicine Specialist**

02-5906998   **Fax**

דרך חברון 101, ירושלים   **Address**

|  |  |  | **Details of Examinee** |
|---|---|---|---|
| 336466933 **ID** | **ADI** **First Name** | **MARCUS** **Family Name** | |
| 0522811774 **Tel Work/Mob.** | 025903070 **Tel** | **F** **Gender** | |
| 9107102 **ZIP** | | **Jerusalem** **Address** | |

## Medical Authorization

**Designated for:** Masks

**Complaints:**

כאשר שמה את המסכה לתקופות ממושכות, סובלת ממצוקה נשימתית, מיגרנות וּפצעי עור באף ובעפעפיים התחתונים.
When putting on a mask for extended periods, suffers from respiratory distress, migraines and skin sores on nose and lower eyelids.

**Diagnoses:**

- GENERAL ANXIETY
- SENSORY PROCESSING DISORDER

**Known Issues:**

- FRAMINGHAM SCORE BELOW 1% (02/2013)   =2%
- FAMILY HISTORY OF HYPERTENSION   mother
- BASAL CELL CARCINOMA -BCC (09/2021)   susp lt nose
- SMALL INTESTINE NEOPLASM UNC BEHAVIOR (04/2020)   OR SIBO RO
- OPERATION UNS  Status Post (23/04/2014)   anterior colporrhaphy, lap colposuspension
- RHEUMATIC FEVER+HEART DISEASE UNS (1962)
- MITRAL VALVE PROLAPSE (1962)
- MITRAL REGURGITATION RHEUMATIC  Mild (21/02/2013)   MR per echo
- NEPHROLITHIASIS  Bi-Lateral Mid (03/2013)   per CT
- CYSTOSCOPY  Status Post (23/04/2014)
- MIGRAINE   weekly
- ULCERATIVE COLITIS  Status Post (1974)   till 1977
- IRRITABLE BOWEL SYND  Suspected (1990)
- MELANOSIS COLI (05/01/2014)   pseudomelanosis
- COLONOSCOPY (05/01/2014)   +ileoscopy (normal except melancis)
- GERD (08/2000)
- PERIMENOPAUSE (2012)
- UTERINE PROLAPSE   with cystocele and rectocele
- RECTOCELE (FEMALE) (09/2016)
- RECTOCELE REPAIR  Status Post (03/2019)
- FIBROCYSTIC DISEASE BREAST
- NORMAL ECG (12/02/2013)

**Regular Prescription Medications:**

TONIGHT 25MG X 10 1X1X90
RIZALT RPD WAFER 10MG X 6 1X1X6
CAP NALTREXONE 4.5mg (12615) 1X1X30
RX NALTREXONE 1MG/ML 4.5X1X30
SUMATRIDEX 50MG X 6 1X1X24

19/09/2021 **Date**

**Maccabi Health Services**

**Registered Referral**

Translations תרגומים

Write Connection

Verified Translation תרגום מאמת

**Dr. Porkosh Esther**

**Internal Medicine**

**Specialities**

**Internal Medicine Specialist**

02-5060340 **Telephone**

02-5906998 **Fax**

דרך חברון 101, ירושלם **Address**

| | Details of Examinee |
|---|---|
| 336466933 **ID** | **First Name** ADI | MARCUS **Family Name** |
| 0522811774 **Tel Work/Mob.** 025903070 | **Tel** F **Gender** | |
| 9107102 **ZIP** | | Jerusalem **Address** |

## Medical Authorization

The data in this certificate is based on the entries on the medical card, in the name of the patient in the clinic. These records are partly information provided to the attending physician by the patient and partly results of tests performed by physicians. The HMO, its doctors and other employees are not responsible for the veracity of the facts recorded before us / or by the parents or guardians of the young man / woman on whom this approval was given before or at the time of submitting to the medical treatment, or the medical examination by the doctor. They are not responsible if a particular visit or treatment or examination did not find expression in the entries of the above mentioned medical card.

**Signature and stamp of Doctor**

19/09/2021

**Date**

Dr. Esther Porkosh
Reg No 1-131144

Page 2

## Plaintiffs' Exhibit 16

**From:** **United Airlines, Inc.** Receipts@united.com
**Subject:** eTicket Itinerary and Receipt for Confirmation AEJERN
**Date:** 27 January 2022 at 19:13
**To:** URI@ntcf.org URI@NTCF.ORG





Thu, Jan 27, 2022

# Thank you for choosing United.

A receipt of your purchase is shown below. Please retain this email receipt for your records.

**Note:** There are travel restrictions in place due to the coronavirus. Check our Important notices page for the latest updates

**Get ready for your trip:** Visit the Travel-Ready Center, your one-stop digital assistant, to find out about important travel requirements specific to your trip.

Confirmation Number:

# AEJERN

| Flight 1 of 2 UA955 | Class: United Economy (K) |
|---|---|
| Sun, Mar 06, 2022 | Sun, Mar 06, 2022 |
| **12:55 AM** | **06:00 AM** |
| Tel Aviv, IL (TLV) | San Francisco, CA, US (SFO) |

| Flight 2 of 2 UA954 | Class: United Economy (K) |
|---|---|
| Thu, Mar 31, 2022 | Fri, Apr 01, 2022 |
| **07:55 PM** | **07:50 PM** |
| San Francisco, CA, US (SFO) | Tel Aviv, IL (TLV) |

## Traveler Details

MARCUS/URI
eTicket number: **0162390934444**     Seats: **TLV-SFO 48L**
Frequent Flyer: **UA-XXXXX474 Member**     **SFO-TLV 35B**

MARCUS/YVONNEMARIE
eTicket number: **0162390934446**     Seats: **TLV-SFO 48J**
Frequent Flyer: **UA-XXXXX273 Premier Silver**     **SFO-TLV 36B**

## Purchase Summary

Method of payment:     **Miscellaneous Document ending in**

| | ending in |
|---|---|
| Date of purchase: | **Thu, Jan 27, 2022** |

| | |
|---|---|
| Airfare: | **459.00 USD** |
| U.S. Transportation Tax: | **39.40 USD** |
| U.S. APHIS User Fee: | **3.96 USD** |
| U.S. Customs User Fee: | **6.11 USD** |
| Israel Departure Tax: | **30.36 USD** |
| U.S. Immigration User Fee: | **7.00 USD** |
| International Surcharge: | **265.00 USD** |
| September 11th Security Fee: | **5.60 USD** |
| U.S. Passenger Facility Charge: | **4.50 USD** |
| Total Per Passenger: | **820.93 USD** |

| **Total:** | **1641.86 USD** |
|---|---|

## Payment Info

Remaining value of your previous ticket numbers ▮▮▮▮▮▮▮▮▮▮ was applied to this purchase.

## Carbon Footprint

Your estimated carbon footprint for this trip is **2.84096 tonnes of $CO_2$.**

You can reduce your environmental impact by participating in our CarbonChoice program which supports projects that reduce greenhouse gases. [Learn more.](#)

## Fare Rules

Additional charges may apply for changes in addition to any fare rules listed.

REFUNDABLE/CXL FEE/CHG FEE

## MileagePlus Accrual Details

| Uri Marcus | | | | | | |
|---|---|---|---|---|---|---|
| Date | Flight | From/To | | Award Miles | PQP | PQF |
| Sun, Mar 06, 2022 | 955 | Tel Aviv, IL (TLV) to<br>San Francisco, CA, US (SFO) | | 2170 | 434 | 1 |
| Thu, Mar 31, 2022 | 954 | San Francisco, CA, US (SFO) to<br>Tel Aviv, IL (TLV) | | 1450 | 290 | 1 |
| MileagePlus accrual totals: | | | | 3620 | 724 | 2 |
| Yvonnemarie Marcus | | | | | | |
| Date | Flight | From/To | | Award Miles | PQP | PQF |
| Sun, Mar 06, 2022 | 955 | Tel Aviv, IL (TLV) to<br>San Francisco, CA, US (SFO) | | 3038 | 434 | 1 |
| Thu, Mar 31, 2022 | 954 | San Francisco, CA, US (SFO) to<br>Tel Aviv, IL (TLV) | | 2030 | 290 | 1 |
| MileagePlus accrual totals: | | | | 5068 | 724 | 2 |

## Baggage allowance and charges for this itinerary

| Origin and destination for checked baggage | 1st bag charge | 2nd bag charge | 1st bag weight and dimensions | 2nd bag weight and dimensions |
|---|---|---|---|---|

## What happens if I don't wear a face mask?

**Refusing to wear a face mask in the airport or on board is a federal offense which may result in a fine of up to $35,000.** Additionally, you'll be refused transport and could lose your travel privileges on United.

## Can I remove my face covering while in the airport or on board?

There may be times when you may need to remove your mask in the airport or on the aircraft, such as when briefly eating or drinking. Federal law requires you to immediately put your mask back on between bites and sips. Additionally, in the event of decompression, travelers will need to remove face coverings prior to donning an oxygen mask. Otherwise, travelers are expected to wear their face masks for their entire flight and while in the airport, including in our lounges.

## When and where am I expected to wear a face covering?

<mark>Federal law</mark> requires all travelers to wear a face mask in the airport, including customer service counters, airport lounges, gates and baggage claim, and on board during their entire flight.

## What does the "Ready-to-fly checklist" entail?

The "Ready-to-fly checklist" requires that you acknowledge you don't have symptoms for COVID-19 and agree to follow our policies. Here's how it'll look when you check in:

**Ready-to-fly checklist**

**These requirements apply to all travelers, including those who have received a COVID-19 vaccine:**

**<mark>Federal law</mark> requires that:**

- **You must properly wear an acceptable[1] mask at all times in the airport and on board. Vented masks and bandanas are not permitted.**
- You must wear masks in between bites and sips if you are eating or drinking.
- United will refuse transport to any traveler not compliant with these requirements.[2]

**Health requirements:**

- You have not tested positive for COVID-19 in the last 5 days[3] and are not awaiting the results of a COVID-19 test.
- You have reviewed CDC guidelines[1] on the quarantine requirements and symptoms of COVID-19 and you do not have any symptoms.

**If anyone does not meet these criteria, please reschedule your trip.**

Please call 1-800-UNITED-1 (1-800-864-8331) or your local Customer Contact Center for your options.

**About the ready-to-fly checklist:** As part of our United CleanPlus[SM] commitment and in partnership with Cleveland Clinic and Clorox, this checklist follows guidelines from the Centers for Disease Control and Prevention (CDC) and World Health Organization (WHO) and are subject to change. Additional local restrictions may apply.

[1]See CDC.gov for additional COVID-19 information.

[2]Children under 2 and those with a pre-arranged exception from United due a disability are exempt from wearing a mask.

[3]Persistent positives: if you tested positive recently more than once, this requirement does not apply if your first positive result was more than 10 days ago and less than 90 days ago. All other requirements still apply.

What to expect when you fly – United Airlines

## What are United's health and mask requirements?

Our health and mask requirements can be found in detail on our "Ready-to-fly checklist," which must be filled out at check-in. All customers must comply with our health requirements, and all customers age 2 and older must comply with the federal face mask law. Your destination may also have additional requirements such as pre-arrival testing. Learn more on our COVID-19 testing for United travelers page.

**From:** **Uriel ben-Mordechai** uri@ntcf.org 📎
**Subject:** Mask Exemption Requests for passengers on Itinerary AEJERN
**Date:** 27 January 2022 at 19:19
**To:** maskexception@united.com



## Attention United Airlines:

In accordance with the policies outlined on the **United Airlines** Website to request mask exemptions, please find attached TWO requests for passengers ==URI MARCUS== and ==YVONNE MARIE (ADI) MARCUS== booked on the upcoming Itinerary ==AEJERN== departing TLV on 06 MAR 2022.

Please advise on approval of our requests at your earliest.

Thank you,

URI MARCUS

YVONNE MARIE (ADI) MARCUS



ME_form_final_A
No Doc...GN.pdf



ME_form_final_U
No Doc...GN.pdf



UA TLV SFO
SFO TL...UA.pdf

**From:** **Uriel ben-Mordechai** uri@ntcf.org
**Subject:** Withdrawal of Consent to process and transfer
**Date:** 27 January 2022 at 19:19
**To:** privacy@united.com
**Cc:** maskexception@united.com



INDIVIDUALS LOCATED OUTSIDE OF THE UNITED STATES: If you are located outside the United States and you choose to request a mask exemption, United will use the information this form to handle your request. You understand that this form will be transferred to the United States, where data protection laws may not be equivalent to those in your home country. By signing below and affirmatively submitting this form, you give specific consent to United to process and transfer the information for these purposes. To exercise rights granted pursuant to applicable law, including withdrawal of consent, contact privacy@united.com. Withdrawal of consent does not affect the lawfulness of information processed until the withdrawal, and this information will continue to be maintained for compliance with legal obligations and for the establishment, exercise or defense of legal claims.

## Attention United Airlines:

### Itinerary: AEJERN — departs TLV on 06 MAR 2022.

We are located outside of the United States and we choose to request a mask exemption *[see the attached and completed forms, which have already been sent to maskexception@united.com]*.

Moreover, we, the undersigned, **URI MARCUS** and **YVONNE MARIE (ADI) MARCUS**, by our signatures hereby exercise our rights granted pursuant to applicable law, to **withdrawal our specific consent for you to transfer any information contained in the attached mask exemption request forms to any and all THIRD PARTIES, outside of UNITED AIRLINES.**

Thank you,

URI MARCUS

YVONNE MARIE (ADI) MARCUS

ME_form_final_A No Doc...GN.pdf

ME_form_final_U No Doc...GN.pdf

UA TLV SFO SFO TL...UA.pdf

**From:** **Mask Exception** MaskException@united.com
**Subject:** RE: [EXTERNAL] Mask Exemption Requests for passengers on Itinerary AEJERN
**Date:** 27 January 2022 at 20:37
**To:** Uriel ben-Mordechai uri@ntcf.org



Hello,

We have sent the mask exemption forms to our Corporate Medical team.

We will reach out to you as soon as we have a response.

Kind regard,

Suzanne Martin
United Airlines

---

**From:** Uriel ben-Mordechai <uri@ntcf.org>
**Sent:** Thursday, January 27, 2022 11:20 AM
**To:** Mask Exception <MaskException@united.com>
**Subject:** [EXTERNAL] Mask Exemption Requests for passengers on Itinerary AEJERN

This message was sent from outside of United Airlines. Please do not click links or open attachments unless you recognize the sender and know that the content is safe.

# Attention United Airlines:

In accordance with the policies outlined on the **United Airlines** Website to request mask exemptions, please find attached TWO requests for passengers **URI MARCUS** and **YVONNE MARIE (ADI) MARCUS** booked on the upcoming Itinerary **AEJERN** departing TLV on 06 MAR 2022.

Please advise on approval of our requests at your earliest.

Thank you,

URI MARCUS

YVONNE MARIE (ADI) MARCUS

**From: Mask Exception** MaskException@united.com
**Subject:** FW: [EXTERNAL] Mask Exemption Requests for passengers on Itinerary AEJERN
**Date:** 27 January 2022 at 23:14
**To:** uri@ntcf.org



Hello,

Thank you for contacting United regarding a face mask exception.  ==The information submitted is too broad for each person.==

==Our medical team will need the name of the disability/ medical diagnosis or disease that prohibits wearing a mask. This information must also come from the medical provider.==

Kind Regards,

Suzanne Martin
United Airlines

---

**From:** Uriel ben-Mordechai <uri@ntcf.org>
**Sent:** Thursday, January 27, 2022 11:20 AM
**To:** Mask Exception <MaskException@united.com>
**Subject:** [EXTERNAL] Mask Exemption Requests for passengers on Itinerary AEJERN

This message was sent from outside of United Airlines. Please do not click links or open attachments unless you recognize the sender and know that the content is safe.

# Attention United Airlines:

In accordance with the policies outlined on the **United Airlines** Website to request mask exemptions, please find attached TWO requests for passengers **URI MARCUS** and **YVONNE MARIE (ADI) MARCUS** booked on the upcoming Itinerary **AEJERN** departing TLV on 06 MAR 2022.

Please advise on approval of our requests at your earliest.

Thank you,

URI MARCUS

YVONNE MARIE (ADI) MARCUS

**From:** **Uriel ben-Mordechai** uri@ntcf.org 📎
**Subject:** Re: [EXTERNAL] Mask Exemption Requests for passengers on Itinerary AEJERN
**Date:** 28 January 2022 at 8:22
**To:** Mask Exception MaskException@united.com



Suzanne, Shalom,

==The private medical information submitted to United Airlines was NOT too broad. Both documents are specific and meet the requirements for mask exemptions provided by the CDC, namely that neither of us can safely wear a mask because of our disabilities== [https://www.cdc.gov/quarantine/masks/mask-travel-guidance.html#disability-exemptions].

> *"A person with a disability who cannot wear a mask because it would cause the person to be unable to breathe or have respiratory distress. The following persons with disabilities might be exempt from CDC's requirement to wear a mask based on factors specific to the person: A person with a severe sensory disability … who would pose an imminent threat of harm to themselves…"*

==For **URI MARCUS**, the name of the disabilities/medical diagnoses are: **Sensory Processing Disorder, Reactive Airways Disease, Anxiety.**==

==For **YVONNE MARIE (ADI) MARCUS**, the name of the disabilities/medical diagnoses are: **Basel Cell Carcinoma [Skin (Nose) Cancer]. Respiratory Distress, Anxiety that results in Migraines.**==

Additional documentation is being provided regarding Mrs Marcus' medical condition, attached below to this response.



EX4 Dr. Ephraim
ben-Ze...y E.pdf

The private medical information we are providing at the request of UNITED AIRLINES came from our HMO, **Maccabi Healthcare Services** [*https://www.maccabi4u.co.il/1781-he/Maccabi.aspx*], Israel's 2nd largest HMO medical provider.

You mentioned "our medical team." We are located outside of the United States and we choose to request these mask exemptions. In accordance with the policy of United Airlines, ==<span style="color:red">**we are exercising our rights**</span>== granted pursuant to applicable law, ==<span style="color:red">**to withdrawal our specific consent to UNITED AIRLINES to transfer any and all medical information**</span>== contained in the attached mask exemption request forms sent to you, and in this email message, ==<span style="color:red">**to any THIRD PARTY, outside of UNITED AIRLINES**</span>==.

Are the members of your "medical team" employees of United Airlines? If so, we are requesting the specific names of licensed physicians, and their license numbers, who will see our private medical documents. We need to know on what basis you, who are presumably not a licensed physician, are arriving at the conclusion that the medical information we submitted is too broad.

Uri Marcus
Yvonne Marie [Adi] Marcus

> On 27 Jan 2022, at 23:14, Mask Exception <MaskException@united.com> wrote:
>
> Hello,
>
> Thank you for contacting United regarding a face mask exception.  The information

From: **Uriel ben-Mordechai** uri@ntcf.org
Subject: Re: [EXTERNAL] Mask Exemption Requests for passengers on Itinerary AEJERN
Date: 28 January 2022 at 14:27
To: Mask Exception MaskException@united.com



Suzanne, Shalom,

Responding further to your earlier reply to our request for mask exemptions for our upcoming itinerary **<mark>[AEJERN]</mark>**, we wish to draw your attention to **Page 1** of your mask exemption forms, in the **second paragraph from the bottom**, which was **NOT checked off**, but instead has a <span style="color:red">**RED-X**</span> drawn through this paragraph, which should make it clear to UNITED AIRLINES that under no circumstances do we *"authorize the release of medical information pertaining to [these] mask exemption request[s]"* nor do we *"authorize [our] treating physicians to speak with a United Airlines medical team representative or any agent acting on its behalf."*

The documents we have provided **as a courtesy** to UNITED AIRLINES should be sufficient to demonstrate our willingness to cooperate with your policies insofar as we are able, and that we have taken all reasonable steps to inform UNITED about our limitations of mask wearing owing to our disabilities.

Suzanne, despite the fact that **out of courtesy** we have decided to cooperate with your polices, we are certain that you and your colleagues at UNITED AIRLINES are aware of UNITED's legal obligations as follows:

*1. An airline may not require a medical certificate from disabled passengers who ask for a mask exemption. "Except as provided in this section, you must not require a passenger with a disability to have a medical certificate as a condition for being provided transportation."* **14 CFR § 382.23(a)**. *"You may … require a medical certificate for a passenger if he or she* **HAS** *a communicable disease or condition that could pose a direct threat to the health or safety of others on the flight."* **14 CFR § 382.23(c)(1)** *(emphasis added). This requirement does not include speculation that a person* **might** *have a communicable disease such as COVID-19; evidence is required that the passenger* **HAS** *a communicable disease, i.e., has tested positive for the coronavirus.*

*2. Refusing transportation to disabled passengers who are otherwise healthy and do not pose a direct threat to anyone is illegal. Airlines may not refuse to transport a disabled person who can't wear a face mask when there's no evidence that person is positive for COVID-19 or any other communicable disease. UNITED AIRLINES "must not refuse transportation to the passenger if you can protect the health and safety of others by means short of a refusal."* **14 CFR § 382.19(c)(2)**.

*3. UNITED AIRLINES is prohibited by federal regulations from forcing a disabled passenger to disclose his/her medical conditions, as you did by stating that, "The information submitted is too broad for each person. Our medical team will need the name of the disability/medical diagnosis or disease that prohibits wearing a mask. This information must also come from the medical provider," only to determine if passengers like us are entitled to a particular seating accommodation, pursuant to* **14 CFR § 382.38**. *UNITED AIRLINES "may not make inquiries about an individual's disability or the nature or severity of the disability," according to the* **DOT**. *UNITED AIRLINES's mask policy constitutes invasion of privacy, which is illegal.*

*Requiring a medical certificate also violates the Convention on International Civil Aviation. UNITED AIRLINES may not require passengers with disabilities needing a mask exemption to submit a medical clearance* [as we did — as a courtesy — by submitting letters from our doctors]. *The United States has ratified CICA, which makes it binding treaty law upon all persons and corporations in the United States. "[P]ersons with disabilities should be permitted to travel without the requirement for a medical clearance."* **CICA Annex 9 § 8.39**.

*4. UNITED AIRLINES' mask policy doesn't provide for making an "individualized assessment" of whether someone is known to have COVID-19 or another communicable disease. According to the* **DOT**, *"If a person who seeks passage has an infection or disease that would be transmittable during the normal course of a flight, and that has been deemed*

*so by a federal public health authority knowledgeable about the disease or infection, then the carrier may: … Impose on the person a condition or requirement not imposed on other passengers (e.g., wearing a mask)." This is the only scenario airlines are permitted to force any passenger to don a face covering.*

*5. UNITED AIRLINES is not allowed to require passengers seeking mask exemptions to do so **in advance** as you have done: "As a carrier, you must not require a passenger with a disability to provide advance notice of the fact that he or she is traveling on a flight." **14 CFR § 382.25**.*

For the reasons stated above and others as yet unstated, we look forward to receiving your approval to our mask exemption requests as soon as possible.


URI MARCUS *[Passenger]*

YVONNE MARIE (ADI) MARCUS *[Passenger]*


On 27 Jan 2022, at 23:14, Mask Exception <MaskException@united.com> wrote:

Hello,

Thank you for contacting United regarding a face mask exception.  The information submitted is too broad for each person.

Our medical team will need the name of the disability/ medical diagnosis or disease that prohibits wearing a mask. This information must also come from the medical provider.


Kind Regards,

Suzanne Martin
United Airlines

**From: Mask Exception** MaskException@united.com
**Subject:** RE: [EXTERNAL] Mask Exemption Requests for passengers on Itinerary AEJERN
**Date:** 28 January 2022 at 16:12
**To:** Uriel ben-Mordechai  uri@ntcf.org



Hello,

Thank you for the additional medical information.  Please forgive me if my personal word choice "broad,'  was not a good choice.  I was trying to convey we needed more information and did not intend to cause any offense, my apology.

We will forward this information over to our medical team, who are indeed employees of United Airlines.

As soon as I have a response, I will get back with you.  Thank you for your patience.

Kind regards,

Suzanne

---

**From:** Uriel ben-Mordechai <uri@ntcf.org>
**Sent:** Friday, January 28, 2022 12:23 AM
**To:** Mask Exception <MaskException@united.com>
**Subject:** Re: [EXTERNAL] Mask Exemption Requests for passengers on Itinerary AEJERN

Suzanne, Shalom,

The private medical information submitted to United Airlines was NOT too broad. Both documents are specific and meet the requirements for mask exemptions provided by the CDC, namely that neither of us can safely wear a mask because of our disabilities [https://www.cdc.gov/quarantine/masks/mask-travel-guidance.html#disability-exemptions].

> *"A person with a disability who cannot wear a mask because it would cause the person to be unable to breathe or have respiratory distress. The following persons with disabilities might be exempt from CDC's requirement to wear a mask based on factors specific to the person: A person with a severe sensory disability … who would pose an imminent threat of harm to themselves…"*

For **URI MARCUS**, the name of the disabilities/medical diagnoses are: **Sensory Processing Disorder, Reactive Airways Disease, Anxiety.**

For **YVONNE MARIE (ADI) MARCUS**, the name of the disabilities/medical diagnoses are: **Basel Cell Carcinoma [Skin (Nose) Cancer]. Respiratory Distress, Anxiety that results in Migraines**.

Additional documentation is being provided regarding Mrs Marcus' medical condition, attached below to this response.

The private medical information we are providing at the request of UNITED AIRLINES came from our HMO, **Maccabi Healthcare Services**

From: **Mask Exception** MaskException@united.com  📎
Subject: FW: [EXTERNAL] Mask Exemption Requests for passengers on Itinerary AEJERN
Date: 28 January 2022 at 20:55
To: uri@ntcf.org

ME

Hello,

Hello,

Thank you for your patience, as our medical team reviewed the additional formation and comments you sent.

After review of the information, <mark>we must respectfully decline your requests for face mask exceptions because the documentation in support of the mask exemptions does not meet the criteria set forth by the CDC.</mark>

This decision was made in accordance with the Center for Disease Control Order, dated January 29, 2021, Transportation Security Administration Security Directive 1544-21-02, dated January 31, 2021, and the Air Carrier Access Act and its implementing regulations at 14 CFR 382.

Please see the attached documentation from the CDC regarding wearing masks during conveyance/transportation and hubs.

If you still feel that you meet the CDC guidelines as described above, you may still present additional documentation in support of the requests.

We understand this decision may impact your travel plans to travel in March. If you need to cancel your travel, please let us know.  We can assist in a full refund if requested.

Respectful regards,

Suzanne

**From:** Uriel ben-Mordechai <uri@ntcf.org>
**Sent:** Friday, January 28, 2022 12:23 AM
**To:** Mask Exception <MaskException@united.com>
**Subject:** Re: [EXTERNAL] Mask Exemption Requests for passengers on Itinerary AEJERN

Suzanne, Shalom,

The private medical information submitted to United Airlines was NOT too broad. Both documents are specific and meet the requirements for mask exemptions provided by the CDC, namely that neither of us can safely wear a mask because of our disabilities [https://www.cdc.gov/quarantine/masks/mask-travel-guidance.html#disability-exemptions].

> *"A person with a disability who cannot wear a mask because it would cause the person to be unable to breathe or have respiratory distress. The following persons with disabilities might be exempt from CDC's requirement to wear a mask based on factors specific to the person: A person with a severe sensory disability … who would pose an imminent threat of harm to themselves…"*

For **URI MARCUS**, the name of the disabilities/medical diagnoses are: **Sensory**

From: **Uriel ben-Mordechai** uri@ntcf.org
Subject: Re: [EXTERNAL] Mask Exemption Requests for passengers on Itinerary AEJERN
Date: 31 January 2022 at 0:02
To: Mask Exception MaskException@united.com



Shalom Suzanne,

I am requesting answers to the following questions:

> 1. What specific CDC criteria did we not meet? We provided all the documents you asked for. We don't understand which criteria was defective?

> 2. Can you explain how the CDC gets to rate our disabilities? The CDC is not my doctor. My doctor and my wife's doctor both provided certification that we are medically unable to tolerate masking. The CDC has published provisions that accommodate our medical disabilities. Why is UAL not following the CDC's criteria?

> 3. For which part of TSA Security Directive 1544-21-02, section F(2) did we not qualify? We need a clarification.

> 4. Since you opened the door to 14 CFR § 382, it is clear that UNITED AIRLINES has not implemented the regulations regarding mask exemption requests, set forth in:

>> 14 CFR § 382.11(a)(1)
>> 14 CFR § 382.11(a)(4)
>> 14 CFR § 382.17
>> 14 CFR § 382.19(a)
>> 14 CFR § 382.19(c)(1)
>> 14 CFR § 382.19(c)(2)
>> 14 CFR § 382.23(a)
>> 14 CFR § 382.25
>> 14 CFR § 382.38
>> 14 CFR § 382.87(a)

What explanation does your legal department provide with regard to each of the above?

We are appealing your decision and asking the UAL reconsider its position and give us a favorable response in light of the fact that two independent medical professionals have certified in my wife's medical records that she developed skin cancer that must be surgically removed before it spreads into the bones of her nose, that came as a direct result of prolonged masking while flying on UAL's long-haul flights last year.

We have been faithful United customers for decades. UAL is now discriminating against us owing to our medical disabilities, and surely it must realize that this is an actionable tort. Yet, we would rather fly what used to be the friendly skies than bring a lawsuit against UAL for discrimination.

Please try again to accommodate our disabilities.


URI MARCUS
YVONNE MARIE (ADI) MARCUS


> On 28 Jan 2022, at 20:55, Mask Exception <MaskException@united.com> wrote:

> Hello,

**From:** **Uriel ben-Mordechai** uri@ntcf.org
**Subject:** Re: [EXTERNAL] Mask Exemption Requests for passengers on Itinerary AEJERN
**Date:** 1 February 2022 at 11:18
**To:** Mask Exception MaskException@united.com



Suzanne, Shalom

I have not heard back from you yet with regard to my questions from 29 Jan 2022.

I'm asking you now to put me in touch with your legal department. I want to hear from them directly.

If I don't get a response from UAL Legal by end of business 02 Feb 2022 or if UAL refuses to obey the law, it will leave me no choice but to sue for discrimination, under the circumstances.

My wife is going into surgery on 08 Feb 2022 to treat cancer that developed on her nose for which TWO independent physicians stated in their medical summaries — one of which I already forwarded to you — that the cancer came as an immediate result of prolonged masking which she was forced to endure in FOUR separate long-haul flights from TLV to SFO to TLV on UNTED AIRLINES in 2020 and in 2021.

How do you get up in the morning and go to work for these monsters who gave my wife cancer because of a goddamn illegal mask mandate that your airline has decided to illegally coerce and force upon disabled passengers — citizen of the United States of America — who cannot tolerate them under threat of denying them air transportation?

מִן הַדִּין וּמִן הַצֶּדֶק לְהֵעָתֵר לַבַּקָשָׁה.

*From what is lawful, and what is just may this request be conceded.*

URI MARCUS
YVONNE MARIE (ADI) MARCUS

On 28 Jan 2022, at 20:55, Mask Exception <MaskException@united.com> wrote:

Hello,

Hello,

Thank you for your patience, as our medical team reviewed the additional

**From:** **Mask Exception** MaskException@united.com
**Subject:** RE: [EXTERNAL] Mask Exemption Requests for passengers on Itinerary AEJERN
**Date:** 2 February 2022 at 2:23
**To:** Uriel ben-Mordechai  uri@ntcf.org



Hello Mr. Marcus,

Based on the information that you have provided and United's reasonable judgment, ==there is no basis for United to provide a mask exception.==

==It would not be unsafe for you and your wife to wear a mask during the flight== and temporarily remove the mask if you are experiencing difficulty breathing or shortness of breath or are feeling winded or are experiencing substantial skin irritation. Once the condition abates or is addressed, you would then put the mask back on as required by federal mandate.

This would be permissible under United's mask policy.

If you find that you are unable to travel, we can offer a full refund back to the original form of payment.

Kind Regards,

Wendy Marzullo
United Airlines

---

**From:** Uriel ben-Mordechai <uri@ntcf.org>
**Sent:** Tuesday, February 1, 2022 3:19 AM
**To:** Mask Exception <MaskException@united.com>
**Subject:** Re: [EXTERNAL] Mask Exemption Requests for passengers on Itinerary AEJERN

Suzanne, Shalom

I have not heard back from you yet with regard to my questions from 29 Jan 2022.

I'm asking you now to put me in touch with your legal department. I want to hear from them directly.

If I don't get a response from UAL Legal by end of business 02 Feb 2022 or if UAL refuses to obey the law, it will leave me no choice but to sue for discrimination, under the circumstances.

My wife is going into surgery on 08 Feb 2022 to treat cancer that developed on her nose for which TWO independent physicians stated in their medical summaries — one of which I already forwarded to you — that the cancer came as an immediate result of prolonged masking which she was forced to endure in FOUR separate long-haul flights from TLV to SFO to TLV on UNTED AIRLINES in 2020 and in 2021.

How do you get up in the morning and go to work for these monsters who gave my wife cancer because of a goddamn illegal mask mandate that your airline has

 Plaintiffs' Exhibit 17

**AA RECORD LOCATOR: WQKDMZ**

 

Get your boarding pass faster!
Scan this barcode at any
American Airlines Self-Service
Machine.

Tel Aviv-Yafo to Los Angeles   **2 Adults**
**Monday** March 7, 2022 – **Thursday** March 31, 2022

Total Paid:
**$1,581.06 USD**

**AA Record Locator**
**WQKDMZ**
Your record locator is your reservation confirmation number and will be needed to retrieve or reference your reservation.

**Reservation Name**
**TLV/LAX**
Status: **Ticketed** Feb 02, 2022

| Flight | Depart | Arrive |
|---|---|---|
| American Airlines **145** | **Tel Aviv-Yafo** (TLV) March 7, 2022 12:45 AM Travel Time : 12 h 15 m Class : Economy Seat : 24J , 24L | **New York** (JFK) March 7, 2022 06:00 AM Booking Code : O Aircraft : 772 |
| American Airlines **1** | **New York** (JFK) March 7, 2022 07:30 AM Travel Time : 6 h 24 m Class : Economy Seat : 19A , 19C | **Los Angeles** (LAX) March 7, 2022 10:54 AM Booking Code : O Aircraft : 32B |

| Flight | Depart | Arrive |
|---|---|---|
| American Airlines **32** | **Los Angeles** (LAX) March 31, 2022 01:30 PM Travel Time : 5 h 19 m Class : Economy Seat : 19D , 19F | **New York** (JFK) March 31, 2022 09:49 PM Booking Code : O Aircraft : 32B |
| American Airlines **146** | **New York** (JFK) March 31, 2022 11:40 PM Travel Time : 10 h 20 m Class : Economy Seat : 31A , 31B | **Tel Aviv-Yafo** (TLV) April 1, 2022 05:00 PM Booking Code : O Aircraft : 772 |

**Fare Amount**

Adult
2 × $414.00 USD  $828.00 USD

**Taxes & Carrier-Imposed Fees**

Taxes  $223.06 USD

Carrier-Imposed Fees  $530.00 USD

**Flight Subtotal**
**$1,581.06 USD**

**Receipt**

| PASSENGER | TICKET NUMBER | FREQUENT FLYER NUMBER | FARE | EQUIV FARE | Tax/Fee/Charge | TICKET TOTAL |
|---|---|---|---|---|---|---|
| MARCUS,URI | 0012329383570 | | $414.00 USD | 265.00 USD | 376.53 | 790.53 |
| MARCUS,YVONNE | 0012329383571 | | $414.00 USD | 265.00 USD | 376.53 | 790.53 |
| **Payment Type:** | MASTER CARD | ***********3538 | | | Total | **$1,581.06 USD** |

**Endorsements/Restrictions**
NONREF AFTER DEPARTURE/RESTRICTIONS APPLY

**Terms and conditions:**
If you've already begun travel, this receipt may only show portions of your trip not flown.

If your ticket involves travel outside the U.S., Canada, U.S. Virgin Islands or Puerto Rico and has been reissued, your ticket total may not include all taxes. Please contact Reservations for the correct total.

A summary of all the terms and conditions that apply to your travel are available on aa.com/conditionsofcarriage.

# Face coverings

U.S. federal law requires that you wear a face covering at all times while indoors at the airport and on board your flight, regardless of vaccination status. If you refuse to wear one, you may be denied boarding and future travel on American. You may also face penalties under federal law.

These rules do not apply to children under 2, or if you have a disability that prevents you from wearing a face covering and meet the exemption requirements.

Visit the Centers for Disease Control and Prevention (CDC) website for more information about the mask requirement.

Requirement for face masks on planes and in airports 🗗

You should bring your own face covering to use while traveling. While limited quantities of face coverings may be available at the gate, they will not be available for every customer on every flight.

## ⌄ Acceptable face coverings

- A mask or 2 layered secured cloth that completely covers your nose and mouth and fits snugly to the sides of your face and under your chin
- Face shields worn with a face covering, but not in place of one

### These are not acceptable as face coverings

- Balaclavas
- Bandanas
- Face covers with exhaust valves or vents
- Face covers made of mesh or lace type fabric
- Gaiters
- Scarves
- Ski masks

CDC recommendations for face coverings 🗗

## ⌄ During your flight

- Your face covering must be worn and visible at all times, including if you plan to sleep.
- You can briefly lower or remove your face covering while actively eating, drinking or taking oral medication, but it must be worn between bites and sips.
- If oxygen masks drop from an overhead compartment, remove your face covering before placing the oxygen mask over your nose and mouth.

### These may not be used on board

For the safety of everyone on board, some types of recreational / personal protection equipment are not allowed for use on our planes or in flight:



Home     English ▼    Search AA.com®

## American Airlines

PLAN TRAVEL    TRAVEL INFORMATION    AADVANTAGE®     Uri

# Choose flights

« New search

 **More flexibility for your travel**
We're waiving change fees for more flexibility on certain tickets and travel dates.
Flexible travel updates ⬀

 **Face coverings and travel requirements**
A face covering is required by U.S. federal law when indoors at the airport and on board American Airlines flights, regardless of vaccination status. These rules do not apply to children under 2. Passengers who may be exempt from wearing a face covering due to a disability must contact us before travel.
Read about face coverings ⬀

There are new requirements to enter the U.S. based on citizenship / residence and vaccination status. All travelers entering the U.S. must also provide their contact information within 72 hours before departure. Read about travel requirements ⬀

We collect your personal data in accordance with applicable laws and regulations, including certain data related to COVID-19 and your health status during the pandemic. For more information about how we process your data, please see our privacy policy at aa.com/privacy ⬀

## Your trip summary



## Upgrade to Flagship® Business

Round trip (Flexible)

+$ **4,848** average per person

Total $ 11,277.06 (all passengers)

**Room to work or relax**

- Lie-flat seat with direct aisle access
- Flagship® Lounge and Admirals Club® access
- Priority check-in, security and boarding
- 2 free checked bags '



Home     Uri    English ▾    Search AA.com®    🔍

# American Airlines

PLAN TRAVEL    TRAVEL INFORMATION    ADVANTAGE®    

# Passengers

« New search

---



## More flexibility for your travel

We're waiving change fees for more flexibility on certain tickets and travel dates.

Flexible travel updates ⬈

---

## Face coverings and travel requirements

A face covering is required by U.S. federal law when indoors at the airport and on board American Airlines flights, regardless of vaccination status. These rules do not apply to children under 2. Passengers who may be exempt from wearing a face covering due to a disability must contact us before travel. Read about face coverings ⬈



There are new requirements to enter the U.S. based on citizenship / residence and vaccination status. All travelers entering the U.S. must also provide their contact information within 72 hours before departure. Read about travel requirements ⬈

We collect your personal data in accordance with applicable laws and regulations, including certain data related to COVID-19 and your health status during the pandemic. For more information about how we process your data, please see our privacy policy at aa.com/privacy ⬈

---

**ROUND TRIP**

# Tel Aviv-Yafo, Israel to Los Angeles, CA
Monday, March 7, 2022 to Thursday, March 31, 2022

---

| Your trip total | Earn up to a $200 statement credit | |
|---|---|---|
| **$1,581.06** | Plus, 40,000 bonus miles with this credit card offer. |  |
| Price for all passengers | Terms apply. | |
| Price and tax information ⬈ | | |

Frequently Asked Questions • US Department of Transportation

🇺🇸 An official website of the United States government  Here's how you know ⌄

ℹ️ The latest general information on the Coronavirus Disease 2019 (COVID-19) is available on Coronavirus.gov. For USDOT specific COVID-19 resources, please visit our page.

Home \ flyhealthy.gov

# DOT — Dept. of Transportation

Frequently Asked Questions    **Scroll down to question #8**

New International Air Travel COVID-19 Policy

Plan Your Travel

At the Airport

Aboard the Aircraft

Arrival at Your Destination

Returning Home

Frequently Asked Questions

## Related Links

- Watch a video on your Passenger Experience
- CDC Resources for Travelers
- U.S. Department of State
- Transportation Security Administration
- Coronavirus.gov
- UNWTO/IATA Destination Tracker
- COVID-19 & Travelers (IATA)
- Fly Healthy, Fly Smart (Airlines for America)

## Related Documents

- Runway to Recovery 1.1



1. **Can I wear a mask to the TSA checkpoint?**

   Yes, travelers must wear a mask throughout their travel journey. Travelers may be asked to adjust their mask for identity verification or remove it briefly if it alarms the security screening equipment.

2. **Can I request that TSA officers use new gloves during my screening?**

   Yes. TSA officers are required to wear nitrile gloves when conducting screening duties and to change them following each pat-down and upon passenger request.

3. **Can I bring my own filled water bottle through the TSA checkpoint?**

   No, you are not permitted to bring your own filled water bottle that exceeds 3.4 ounces through the checkpoint. Many airports now offer touchless refilling stations past security that enable travelers to fill empty bottles and containers they bring from home. Consult the directory or ask a local official for locations in your departure airport.

4. **Do I need to remove electronics from my carry-on bags?**

   Yes, you should plan to remove personal electronic devices larger than a cell phone from your carry-on bag and put them in a separate bin with nothing placed on or under them for security screening. (This does not apply to TSA PreCheck™ passengers.) Some airports are using new Computed Tomography (CT) technology that allows you to keep electronics in your carry-on luggage. Passengers will be advised on the use of CT scanners at the checkpoint and of any alternate procedures.

5. **Can TSA still open and go through my checked luggage? What precautions are being taken to reduce possible contamination?**

   Yes, TSA may inspect your checked baggage during the screening process. If your property is physically inspected, TSA will place a notice of baggage inspection inside your bag. To reduce the likelihood of contamination, TSA officers are changing their gloves after each bag check and conducting enhanced sanitation of baggage screening areas.

6. **My driver's license has expired and I haven't been able to renew it during the pandemic. Will I still be able to fly?**

Yes. If your driver's license or state-issued ID expired on or after March 1, 2020, and you are unable to renew, you may still use it as acceptable identification at the checkpoint. TSA will accept expired driver's licenses or state-issued IDs for a year after expiration.

7. **What is the status of REAL ID enforcement in light of COVID-19?**

The Department of Homeland Security has extended the deadline for REAL ID enforcement to October 1, 2021. Visit the REAL ID website for more information.

8. **What happens if a passenger does not comply with an airline's mask policies and/or causes an inflight disruption or distraction for the crew?**

While the failure to wear a face covering is not itself a federal violation, [federal law](#) prohibits physically assaulting or threatening to physically assault aircraft crew or anyone else on a civil aircraft. Passengers are subject to civil penalties for such misconduct, which can threaten the safety of the flight by disrupting or distracting cabin crew from their safety duties. Additionally, federal law provides for criminal fines and imprisonment of passengers who interfere with the performance of a crewmember's duties by assaulting or intimidating that crewmember. U.S. airlines have policies about wearing face coverings in the airplane cabin. Please be sure to check with your airline prior to flight for further guidance

9. **What happens if there is a sick passenger on an international or domestic flight?**

Under current federal regulations, pilots must report all onboard illnesses and deaths to CDC before arriving to a U.S. destination. According to CDC illness response protocols, if a sick traveler has a serious contagious disease during air travel, CDC works with local and state health departments and international public health agencies to contact exposed passengers and crew.

Be sure to give the airline your current contact information when booking your ticket so you can be notified if you are exposed to a sick traveler on a flight.

For more information, see the CDC web page [Protecting Travelers' Health from Airport to Community: Investigating Contagious Diseases on Flights](#).

10. **Can flying on an airplane increase my risk of getting COVID-19?**

Most airlines and airports are enhancing their cleaning and passenger health protection protocols due to COVID-19, but air travel requires spending time in security lines and airport terminals, which can bring you in close contact with other people and frequently touched surfaces. This may increase your risk for exposure to the virus that causes COVID-19.

Most viruses and other germs do not spread easily on flights because of how air circulates and is filtered on airplanes (the air in an airplane cabin is fully renewed every 2-3 minutes, which is more frequent than most other locations in which people spend time). However, social distancing is difficult on flights, and you may have to sit near others, sometimes for hours. This makes the wearing of a face mask an important additional measure against exposing yourself or others to COVID-19.   It is important to follow basic guidance on wearing a face mask and frequently washing your hands or using hand sanitizer with at least 60% alcohol. For more information see [CDC's Travel During the COVID-19 Pandemic](#).

## International Travel Requirements

1. **What should passengers provide to airlines to show they are fully vaccinated?**

Both U.S. citizens and foreign nationals who are fully vaccinated should travel with proof of



**From:** **Uriel ben-Mordechai** uri@ntcf.org
**Subject:** NMOK WQKDMZ 07 MAR 2022 MARCUS URI, MARCUS YVONNE (ADI)
**Date:** 2 February 2022 at 22:24
**To:** SAC  SAC@aa.com

American Airlines SAC Dept.,

We are requesting mask exemptions for itinerary WQKDMZ.

Attached are signed medical summaries and authorizations from our family physicians that we are providing as a courtesy. Our family physicians both work for Maccabi Healthcare Services, Israel's 2nd largest HMO.

Most of these documents were written in Hebrew. A verified English translation together with the Hebrew original has been attached for your review. These summaries contain descriptions that attest that my wife and myself have medically diagnosed physical and mental disabilities that qualify under the Americans with Disabilities Act and for reasons related to those disabilities we cannot tolerate or safely wear a mask for the long haul flights on this AMERICAN AIRLINES itinerary.

It should be noted that we are exercising our rights granted pursuant to applicable law, to withdrawal our specific consent to AMERICAN AIRLINES to transfer copies of the attached medical documentation to any and all THIRD PARTIES outside of AMERICAN AIRLINES. While AMERICAN AIRLINES is free to consult with any third-party medical provider it wishes, AMERICAN AIRLINES is not authorized to share copies of our medical documents that we are providing as a courtesy.

Moreover, AMERICA AIRLINES does not have our consent or authority to contact our physicians regarding the medical documents we are providing as a courtesy.

Thank you for processing our requests quickly and with a positive answer for our upcoming travel plans.


URI MARCUS
YVONNE MARIE (ADI) MARCUS

+972-522-811-774
+1-909-833-0065

2/2/22, 9:11 PM                              Print trip and receipt – Your trip details – American Airlines



AA RECORD LOCATOR: WQKDMZ





Get your boarding pass faster!
Scan this barcode at any
American Airlines Self-Service
Machine.



Tel Aviv-Yafo to Los Angeles   **2 Adults**
Monday March 7, 2022 – Thursday March 31, 2022

| AA Record Locator | Reservation Name | Total Paid: |
|---|---|---|
| **WQKDMZ** | **TLV/LAX** | **$1,581.06 USD** |
| Your record locator is your reservation confirmation number and will be needed to retrieve or reference your reservation. | Status: **Ticketed** Feb 02, 2022 | |

| Flight | Depart | Arrive | Fare Amount | |
|---|---|---|---|---|
| **American Airlines** **145** | **Tel Aviv-Yafo (TLV)** March 7, 2022 12:45 AM Travel Time : 12 h 15 m Class : Economy Seat : 24J , 24L | **New York (JFK)** March 7, 2022 06:00 AM Booking Code : O Aircraft : 772 | **Adult** 2 × $414.00 USD | $828.00 USD |
| | | | **Taxes & Carrier-Imposed Fees** | |
| | | | Taxes | $223.06 USD |

From: **Europe. Noreply, AmericanReservations** American.Europe.Noreply@aa.com 
Subject: American Airlines - WQKDMZ
Date: 3 February 2022 at 10:59
To: URI@NTCF.ORG

AE

Hello,

Thank you for choosing American Airlines.

==The documentation submitted doesn't meet one or more of the requirements outlined by the CDC and won't be approved at this time.== As a reminder, the Medical Contraindication to the COVID-19 Vaccination exception is very limited. For more information please visit this link to the CDC website for more information.

If you have any questions, please contact the American Airlines Special Assistance Coordinator Desk at 1-800-237-7976. Our office hours are daily from 7:30 a.m. to 8:30 p.m. CST.

Thank you,

American Airlines Special Assistance Coordinator



**From:** **Uriel ben-Mordechai** uri@ntcf.org
**Subject:** Re: American Airlines - WQKDMZ
**Date:** 3 February 2022 at 11:55
**To:** SAC sac@aa.com



On **3 Feb 2022**, at **10:59**, Europe. Noreply, AmericanReservations <American.Europe.Noreply@aa.com> wrote:
On **3 Feb 2022**, at **11:41**, Europe. Noreply, AmericanReservations <American.Europe.Noreply@aa.com> wrote:

Thank you for choosing American Airlines.

The documentation submitted doesn't meet one or more of the requirements outlined by the CDC and won't be approved at this time. **As a reminder, the Medical Contraindication to the COVID-19 Vaccination exception is very limited. For more information please visit this link to the CDC website for more information.**

If you have any questions, please contact the American Airlines Special Assistance Coordinator Desk at 1-800-237-7976. Our office hours are daily from 7:30 a.m. to 8:30 p.m. CST.

Thank you,

American Airlines Special Assistance Coordinator

———————————————————————————————————

1. What specific CDC criteria did our documentation not meet? Which *"one or more of the requirements"* were defective?

2. Your answer indicates that AMERICAN AIRLINES and the CDC are now diagnosing our disabilities. We did not consent to AMERICAN AIRLINES and the CDC becoming and/or replacing our current family physicians.

3. My doctor and my wife's doctor both provided signed and certified medical summaries that confirm our medical disabilities, which prevent us from masking. The CDC has published provisions that accommodate the same. Why is AMERICAN AIRLINES not following the CDC's criteria?

4. Moreover, it is clear that AMERICAN AIRLINES is not implementing regulations regarding mask exemption requests, set forth in:

      14 CFR § 382.11(a)(1)
      14 CFR § 382.11(a)(4)
      14 CFR § 382.17
      14 CFR § 382.19(a)
      14 CFR § 382.19(c)(1)
      14 CFR § 382.19(c)(2)
      14 CFR § 382.23(a)
      14 CFR § 382.25
      14 CFR § 382.38
      14 CFR § 382.87(a)

5. Please reconsider and accommodate our disabilities with a favorable response in light of the fact that two independent medical professionals have certified in my wife's medical records that you received, that she has developed skin cancer that must be surgically removed before it spreads into the bones of her nose, that came as a direct result of prolonged masking while flying on long-haul flights.

6. If you will not reconsider your position, then we ask you to put us in touch with your legal department, in order to hear from them directly.

7. If we do not hear from your Legal Department by end of business 04 Feb 2022 or if AMERICAN AIRLINES refuses to obey the law, we will have no choice but to sue AMERICAN AIRLINES for discrimination and conspiracy to interfere with our civil rights.

8. Lastly, what is the name of the *"American Airlines Special Assistance Coordinator"* who wrote the TWO messages to which we are responding?


URI MARCUS
YVONNE MARIE (ADI) MARCUS

From: **Europe. Noreply, AmericanReservations** American.Europe.Noreply@aa.com 
Subject: American Airlines Special Assistance - WQKDMZ
Date: 4 February 2022 at 15:26
To: URI@NTCF.ORG

Hello,

Thank you for choosing American Airlines.

<mark>The documentation submitted for a mask exemption doesn't meet one or more of the requirements outlined by the CDC and won't be approved at this time.</mark>
<mark>Only **one** passenger per flight can have a mask exemption.</mark>

If you have any questions, please contact the American Airlines Special Assistance Coordinator Desk at 1-800-237-7976. Our office hours are daily from 7:30 a.m. to 8:30 p.m. CST.

Thank you,

American Airlines Special Assistance Coordinator



From: **SAC** SAC@aa.com 📎
Subject: FW: American Airlines- Re WQKDMZ
Date: 4 February 2022 at 17:52
To: uri@ntcf.org



Hello Mr. Uri Marcus,

Thank you for choosing American Airlines.

Your no mask exception has been conditionally approved pending your negative COVID test result which will need to be presented to the airport agent at check-in.

If you have any questions, please contact the American Airlines Special Assistance Coordinator Desk at 1-800-237-7976. Our office hours are daily from 7:30 a.m. to 8:30 p.m. CST.

Thank you,
Julie
American Airlines Special Assistance Coordinator

![American Airlines - You are why we fly]

From: **SAC** SAC@aa.com 📎
Subject: FW: American Airlines- Re WQKDMZ
Date: 4 February 2022 at 17:53
To: uri@ntcf.org



Hello Ms. Yvonne Marcus,

Thank you for choosing American Airlines.

Your no mask exception has been conditionally approved pending your negative COVID test result which will need to be presented to the airport agent at check-in.

If you have any questions, please contact the American Airlines Special Assistance Coordinator Desk at 1-800-237-7976. Our office hours are daily from 7:30 a.m. to 8:30 p.m. CST.

Thank you,
Julie
American Airlines Special Assistance Coordinator

From: **Uriel ben-Mordechai** uri@ntcf.org
Subject: Re: American Airlines- Re WQKDMZ
Date: 7 February 2022 at 12:10
To: SAC SAC@aa.com



Julie, Shalom,

Thank you for your email notice of our "no mask exceptions" being conditionally approved.

We received your email on Saturday night [IST], 05 Feb 2022 after Shabbat ended here in Jerusalem, Israel.

In your message, you indicated that our conditionally approved mask exemptions are pending a negative COVID test to be presented to the airport agent at check-in.

We also understand that American Airlines can reseat us for our flights at the back of the aircraft in the last row, regardless of the flight capacity and assigned seating of our choice. Is this true?

If we change our flight from the current departure of 07 Mar 2022 and our return flight to TLV on 31 Mar 2022, to possible dates in April or later, will your conditionally approved mask exemptions still be valid?

We have heard of stories on various airlines wherein passengers have been issued letters of mask exemptions, but upon reaching the gate agents, the exemptions were not honored, the documentation was not accepted and the mask exemptions are denied. What assurances can you give us that our mask exemptions will be honored by your own gate agents and in particular by the TSA?

I am sure that you are aware that an airline is not allowed to require passengers seeking mask exemptions to do so in advance, as we have already done.

Moreover, An airline may not require disabled passengers who seek a mask exemption to submit a negative COVID-19 test for each flight when non-disabled customers aren't subject to this same requirement. No provision of the Air Carrier Access Act or its accompanying regulations promulgated by the DOT (nor any other law enacted by Congress) permits airlines to require passengers submit a negative test for any communicable disease. Mandating disabled flyers submit a COVID-19 test before checking-in but not requiring the same of non-disabled travelers is illegal discrimination.

An airline may not change the seat assignment of a mask-exempt passenger without his/her consent. Airlines by federal law are NOT permitted to impose any manner of specific requirements or conditions on a person requesting an exemption from the mask requirement.

How would you like us to proceed? We need to travel back to the United States either on March 7, or soon thereafter. Can we get a letter from you or the supervisor of your department that simply states that our mask exemption requests have been approved, without referring to them being "conditionally approved?" We don't want to, at our age, go through all that is necessary to prepare for travel, arrive to the airport, get the gate, and then have some misinformed agent impose mask wearing on us, or else.

We look forward to you assisting us on this matter Julie.

Please update us.

URI MARCUS
YVONNE MARIE (ADI) MARCUS

From: **Uriel ben-Mordechai** uri@ntcf.org 📎

Subject: AA International Special Assistance Desk - WQKDMZ

Date: 9 February 2022 at 14:53

To: SAC sac@aa.com



Julie,

I did as you asked. I called the International Special Assistance Desk and spoke with a woman agent of yours in Mexico.

<mark>She confirmed that our seat assignments were moved to the last row of the aircraft on each of the four flights on our itinerary, which is illegal.</mark>

<mark>She also confirmed that we need to take COVID-19 tests prior to departure</mark>, while claiming that the CDC is the agency has ordered mask exempt passengers on AMERICAN to do so. This is false and so obviously discriminatory, especially when non-disabled passengers who agree to wear masks do not have to take these tests.

We are going to give you one more chance. We demand that you fix these issues immediately. <mark>If AMERICAN AIRLINES cannot or will not do so, then refund our tickets, and we will sue AMERICAN AIRLINES for discrimination and for conspiracy to interfere with our civil rights.</mark>

URI MARCUS

YVONNE MARIE (ADI) MARCUS

---

From: SAC <SAC@aa.com>

Subject: RE: American Airlines- Re WQKDMZ

Date: 7 February 2022 at 20:54:00 GMT+2

To: "'Uriel ben-Mordechai'" <uri@ntcf.org>

Hello,

Thank you for choosing American Airlines.   For any questions pertaining to your special assistance accommodation please call our reservations team at your earliest convenience at the number shown below as posted on our www.aa.com website.  Please ask to be transferred to our international Special Assistance Desk.

| | | Hebrew: |
|---|---|---|
| Israel | 03-7219-497 | Sunday – Thursday 9 a.m. – 5 p.m. English: 24 hours |

Please refer to your 6 letter record locator or flight number/date of travel and last name of passenger.

Thank you,

Julie

American Airlines Special Assistance Coordinator Desk



**From:** **Uriel ben-Mordechai** uri@ntcf.org 📎
**Subject:** AA International Special Assistance Desk - WQKDMZ
**Date:** 10 February 2022 at 11:35
**To:** SAC sac@aa.com



Shalom Julie,

We want you to know that **you in particular were one of the kindest and most accommodating agents** I have spoken with at AMERICAN AIRLINES. I could tell that you were doing the best you could, given the policies that AMERICAN AIRLINES has put into place. Thank you for trying to assist us.

The problem of course are the policies themselves. One has to take into account the history of the Jewish people who have too often been victims of policies that otherwise good people were forced to carry out against us, to keep their own jobs or save their own lives.

I spoke with my wife. Under the circumstances, neither she nor I are willing to be reseated in the last row of the aircraft for 12 hr+ long-haul flights and neither of us agree that AMERICAN AIRLINES can legally limit the number of disabled passengers on any given flight.

As for PCR testing, the CDC has never been given statutory authority to demand testing of all inbound passengers to the United States. But that's a dispute we will take up with the CDC. AMERICAN AIRLINES however, should not be conspiring with CDC's ITTR in exchange for receiving federal grants which fly in the face of existing law that protects the disabled from discrimination.

Accepting the terms of these policies of AMERICAN AIRLINES that have no basis in law or in fact, and paying AMERICAN AIRLINES to discriminate against us, else they deny us transportation, is nothing less than extortion.

Sadly, we have no other choice but to request a full refund for this itinerary, and inform you that AMERICAN AIRLINES will soon be sued in Federal Court.

URI MARCUS
YVONNE MARIE (ADI) MARCUS

From: **American Airlines** no-reply@info.email.aa.com
Subject: Trip Cancellation
Date: 10 February 2022 at 20:40
To: URI@ntcf.org  URI@NTCF.ORG







# Your trip is canceled

Record locator: **WQKDMZ**

Your trip was canceled on February 10, 2022 at 12:38 PM (CT)

Keep in mind, if you:

- Canceled within 24 hours of initial ticket purchase, and at least 2 days before departure, we'll process your refund automatically.

- Booked with AAdvantage® miles, and your trip is eligible, we'll reinstate your miles automatically. Check your account.

- Booked a Basic Economy fare on or after April 1, 2021, your ticket is non-refundable and non-changeable.

- Didn't book directly with American, contact your travel agency or original booking source to rebook.

---

For most other canceled trips, your ticket has remaining value and we issued you a Flight Credit. You can look up your Flight Credit on aa.com with your ticket number or view credit in your wallet if you're an AAdvantage® member.

Keep this email which includes your ticket number needed when you're ready to rebook.

**URI MARCUS**
Ticket # 0012329383570

**YVONNE MARCUS**
Ticket # 0012329383571

From: **SRO, SACLead**  SACLead.SRO@aa.com  📎
Subject: RE: AA International Special Assistance Desk - WQKDMZ
Date: 10 February 2022 at 20:43
To: Uriel ben-Mordechai  uri@ntcf.org



Good evening Mr. Marcus,

==We regret we are unable to accommodate your family on this trip.==  American Airlines' commitment to the health and safety of our customers and crew is always a top priority, however we respect your concerns on this matter.  As a one-time exception, we have cancelled your reservation and begun the full refund process.  We thank you for considering American Airlines for your travel and hope you will choose us to fulfill your future travel needs.

Respectfully,

**Julie**
Special Assistance Coordinator
800-237-7976



From: Uriel ben-Mordechai <uri@ntcf.org>
**Sent:** Thursday, February 10, 2022 3:36 AM
**To:** SAC <SAC@aa.com>
**Subject:** AA International Special Assistance Desk - WQKDMZ
**Importance:** High

Shalom Julie,

We want you to know that **you in particular were one of the kindest and most accommodating agents** I have spoken with at AMERICAN AIRLINES. I could tell that you were doing the best you could, given the policies that AMERICAN AIRLINES has put into place. Thank you for trying to assist us.

The problem of course are the policies themselves. One has to take into account the history of the Jewish people who have too often been victims of policies that otherwise good people were forced to carry out against us, to keep their own jobs or save their own lives.

I spoke with my wife. Under the circumstances, neither she nor I are willing to be reseated in the last row of the aircraft for 12 hr+ long-haul flights and neither of us agree that AMERICAN AIRLINES can legally limit the number of disabled passengers on any given flight.

As for PCR testing, the CDC has never been given statutory authority to demand testing of all inbound passengers to the United States. But that's a dispute we will take up with the CDC. AMERICAN AIRLINES however, should not be conspiring with CDC's ITTR in exchange for receiving federal grants which fly in the face of existing law that protects the disabled from discrimination.

Accepting the terms of these policies of AMERICAN AIRLINES that have no basis in law or in fact, and paying AMERICAN AIRLINES to discriminate against us, else they deny us transportation, is nothing less than extortion.

Sadly, we have no other choice but to request a full refund for this itinerary, and inform you that AMERICAN AIRLINES will soon be sued in Federal Court.

URI MARCUS
YVONNE MARIE (ADI) MARCUS

Plaintiffs' Exhibit 18



**Date of Purchase: Feb 10, 2022**

# Flight Receipt for Tel Aviv, Israel to Los Angeles, CA

## PASSENGER INFORMATION

URI MARCUS
SkyMiles Number: ▮▮▮▮▮▮
YVONNE MARIE MARCUS
SkyMiles Number: ▮▮▮▮▮▮

Confirmation Number: GULRGJ
Ticket Number: 0062498855184

0062498855185

## FLIGHT INFORMATION

| Date and Flight | Status | Class | Seat/Cabin |
|---|---|---|---|
| TLV>JFK<br>Thu 17Mar2022 DL 235 | OPEN | X | 56B |
| JFK>LAX<br>Fri 18Mar2022 DL 1057 | OPEN | X | 56B |
| LAX>JFK<br>Sun 10Apr2022 DL 323 | OPEN | H | 28F |
| JFK>TLV<br>Sun 10Apr2022 DL 234 | OPEN | H | 28F |

## DETAILED CHARGES

**Air Transportation Charges**

| | | |
|---|---|---|
| Base Fare: | $953.00 | USD |
| Carrier-imposed International Surcharge (YR) | $296.00 | USD |

**Taxes, Fees & Charges:**

| | | |
|---|---|---|
| United States - September 11th Security Fee(Passenger Civil Aviation Security Service Fee) (AY) | $11.20 | USD |
| Israel - Departure Passenger Airport Tax (IL) | $30.36 | USD |
| United States - Transportation Tax (US) | $39.40 | USD |
| United States - Animal and Plant Health Inspection Service Fee (APHIS User Fee - Passengers (XA) | $3.96 | USD |
| United States - Passenger Facility Charge (XF) | $4.50 | USD |
| United States - Immigration and Naturalization Fee(Immigration User Fee) (XY) | $7.00 | USD |
| United States - Custom User Fee (YC) | $6.11 | USD |

| **Total Per Passenger:** | **$1,351.53** | **USD** |
|---|---|---|

| **Total (2 Passengers):**<br>Paid with MasterCard ***********3538 | **$2,703.06   USD** |
|---|---|

**KEY OF TERMS**

| | |
|---|---|
| # - Arrival date different than departure date | F - Food available for purchase |
| ** - Check-in required | L - Lunch |
| ***- Multiple meals | LV - Departs |
| *S$ - Multiple seats | M - Movie |
| AR - Arrives | R - Refreshments, complimentary |
| B - Breakfast | S - Snack |
| C - Bagels / Beverages | T - Cold meal |
| D - Dinner | V - Snacks for sale |

Check your flight information online at delta.com or call the Delta Flightline at 800.325.1999.

Baggage and check-in requirements vary by airport and airline, so please check with the operating carrier on your ticket.

Please review Delta's  check-in requirements  and  baggage guidelines for details.

You must be checked in and at the gate at least 15 minutes before your scheduled departure time for travel inside the United States.

You must be checked in and at the gate at least 45 minutes before your scheduled departure time for international travel.

For tips on flying safely with laptops, cell phones, and other battery-powered devices, please visit Flying safely government guild.

Do you have comments about service? Please  email  us to share them.


NON-REFUNDABLE / CHANGE FEE

When using certain vouchers to purchase tickets, remaining credits may not be refunded. Additional charges and/or credits may apply and are displayed in the sections below.

This ticket is non-refundable unless issued at a fully refundable fare. Any change to your itinerary may require payment of a change fee and increased fare. Failure to appear for any flight without notice to Delta will result in cancellation of your remaining reservation.

All Preferred, Delta Comfort+™, First Class, and Delta One seat purchases are Nonrefundable.

**Terms & Conditions**
Air transportation on Delta and the Delta Connection® carriers is subject to Delta's  conditions of carriage.   They include terms governing for example:

-  Limits on our liability  for personal injury or death of passengers, and for loss, damage of delay of goods and baggage.

2/7/22, 9:16 AM                                    Frequently Asked Questions | US Department of Transportation

🇺🇸 An official website of the United States government  Here's how you know ⌄

ⓘ The latest general information on the Coronavirus Disease 2019 (COVID-19) is available on Coronavirus.gov. For USDOT specific COVID-19 resources, please visit our page.

Home  \  flyhealthy.gov

# DOT — Dept. of Transportation

### Frequently Asked Questions        **Scroll down to question #8**

**New International Air Travel COVID-19 Policy**

**Plan Your Travel**

**At the Airport**

**Aboard the Aircraft**

**Arrival at Your Destination**

**Returning Home**

**Frequently Asked Questions**

## Related Links

- Watch a video on your Passenger Experience
- CDC Resources for Travelers
- U.S. Department of State
- Transportation Security Administration
- Coronavirus.gov
- UNWTO/IATA Destination Tracker
- COVID-19 & Travelers (IATA)
- Fly Healthy, Fly Smart (Airlines for America)

## Related Documents

- Runway to Recovery 1.1



1. **Can I wear a mask to the TSA checkpoint?**

   Yes, travelers must wear a mask throughout their travel journey. Travelers may be asked to adjust their mask for identity verification or remove it briefly if it alarms the security screening equipment.

2. **Can I request that TSA officers use new gloves during my screening?**

   Yes. TSA officers are required to wear nitrile gloves when conducting screening duties and to change them following each pat-down and upon passenger request.

3. **Can I bring my own filled water bottle through the TSA checkpoint?**

   No, you are not permitted to bring your own filled water bottle that exceeds 3.4 ounces through the checkpoint. Many airports now offer touchless refilling stations past security that enable travelers to fill empty bottles and containers they bring from home. Consult the directory or ask a local official for locations in your departure airport.

4. **Do I need to remove electronics from my carry-on bags?**

   Yes, you should plan to remove personal electronic devices larger than a cell phone from your carry-on bag and put them in a separate bin with nothing placed on or under them for security screening. (This does not apply to TSA PreCheck™ passengers.) Some airports are using new Computed Tomography (CT) technology that allows you to keep electronics in your carry-on luggage. Passengers will be advised on the use of CT scanners at the checkpoint and of any alternate procedures.

5. **Can TSA still open and go through my checked luggage? What precautions are being taken to reduce possible contamination?**

   Yes, TSA may inspect your checked baggage during the screening process. If your property is physically inspected, TSA will place a notice of baggage inspection inside your bag. To reduce the likelihood of contamination, TSA officers are changing their gloves after each bag check and conducting enhanced sanitation of baggage screening areas.

6. **My driver's license has expired and I haven't been able to renew it during the pandemic. Will I still be able to fly?**

   Yes. If your driver's license or state-issued ID expired on or after March 1, 2020, and you are unable to renew, you may still use it as acceptable identification at the checkpoint. TSA will accept expired driver's licenses or state-issued IDs for a year after expiration.

7. **What is the status of REAL ID enforcement in light of COVID-19?**

   The Department of Homeland Security has extended the deadline for REAL ID enforcement to October 1, 2021. Visit the REAL ID website for more information.

8. **What happens if a passenger does not comply with an airline's mask policies and/or causes an inflight disruption or distraction for the crew?**

   While the failure to wear a face covering is not itself a federal violation, federal law prohibits physically assaulting or threatening to physically assault aircraft crew or anyone else on a civil aircraft. Passengers are subject to civil penalties for such misconduct, which can threaten the safety of the flight by disrupting or distracting cabin crew from their safety duties. Additionally, federal law provides for criminal fines and imprisonment of passengers who interfere with the performance of a crewmember's duties by assaulting or intimidating that crewmember. U.S. airlines have policies about wearing face coverings in the airplane cabin. Please be sure to check with your airline prior to flight for further guidance

9. **What happens if there is a sick passenger on an international or domestic flight?**

   Under current federal regulations, pilots must report all onboard illnesses and deaths to CDC before arriving to a U.S. destination. According to CDC illness response protocols, if a sick traveler has a serious contagious disease during air travel, CDC works with local and state health departments and international public health agencies to contact exposed passengers and crew.

   Be sure to give the airline your current contact information when booking your ticket so you can be notified if you are exposed to a sick traveler on a flight.

   For more information, see the CDC web page Protecting Travelers' Health from Airport to Community: Investigating Contagious Diseases on Flights.

10. **Can flying on an airplane increase my risk of getting COVID-19?**

    Most airlines and airports are enhancing their cleaning and passenger health protection protocols due to COVID-19, but air travel requires spending time in security lines and airport terminals, which can bring you in close contact with other people and frequently touched surfaces. This may increase your risk for exposure to the virus that causes COVID-19.

    Most viruses and other germs do not spread easily on flights because of how air circulates and is filtered on airplanes (the air in an airplane cabin is fully renewed every 2-3 minutes, which is more frequent than most other locations in which people spend time). However, social distancing is difficult on flights, and you may have to sit near others, sometimes for hours. This makes the wearing of a face mask an important additional measure against exposing yourself or others to COVID-19.   It is important to follow basic guidance on wearing a face mask and frequently washing your hands or using hand sanitizer with at least 60% alcohol. For more information see CDC's Travel During the COVID-19 Pandemic.

## International Travel Requirements

1. **What should passengers provide to airlines to show they are fully vaccinated?**

   Both U.S. citizens and foreign nationals who are fully vaccinated should travel with proof of

**KNOW BEFORE YOU GO**

# Face Masks



For everyone's safety, face masks are required.

We appreciate our customers, employees and partners complying with the federal mandate by properly wearing a face mask in the airport and on board our aircraft.

Federal law requires each person to wear a mask at all times while in the airport and when using public transit, during boarding and deplaning and for the duration of the flight. Those who have received a COVID-19 vaccination are still required to wear a mask. In support of our commitment to the safety and wellbeing of our customers and crewmembers, failure to comply with the mask requirement could result in denial of boarding, removal from the aircraft during any point of your trip, being banned from future travel with Delta, personal fines and/or criminal penalties. Your cooperation during this time contributes to a safe travel experience for all customers and crews and is greatly appreciated.



# When Masks Are Required

Masks or face coverings are required from curb to claim throughout the airport, including these Delta touchpoints:

- Lobby Check-in

- Delta Sky Clubs

- Boarding Gate Areas

- Jet Bridges

- On board the aircraft for the duration of the flight

Masks must be worn at all times except while eating, drinking, or taking oral medications for brief periods. Prolonged periods of mask removal are not permitted for eating or drinking – masks must be worn between bites and sips.

If oxygen masks are needed due to loss of cabin pressure or other events affecting aircraft ventilation, personal face masks should be removed to accommodate oxygen masks.

# Types of Masks

To comply with federal law and for the protection of our customers and employees, Delta has specified the

2/10/22, 7:18 PM                                    Face Masks | Delta Air Lines

employees, Delta has specified the
types of masks allowed onboard in
compliance with **CDC guidance**.
Masks or face coverings should be
secured to the head with ties or ear
loops and should fit snugly but
comfortably against the side of the
face to ensure proper fit.

## Permitted Masks:

- Disposable surgical or medical masks

- Cloth masks with tightly woven fabric (2 or 3 ply masks are recommended)

- Valve-free respirator masks (N95 or KN95)

- Fabric masks with a clear plastic window

- Gaiters with two layers (single layer gaiters should be doubled over)

- Plastic face shields or goggles may be worn in addition to a mask but are not approved mask replacements

## Masks Not Permitted:

- Any mask with an exhaust valve

- Masks with slits, punctures or holes

- Bandanas, scarves, ski masks, and balaclavas

- Novel and battery-operated masks

that do not meet the specifications
of the permitted masks listed above

- Full-head helmet-type masks may
  not be used as these devices can
  interfere with quick access to an
  oxygen mask, if needed, during
  flight

# Mask Exemptions

Children under the age of two are
exempt from the mask
requirement.

Customers with a disability who
cannot wear a mask for reasons
related to their individual disability
are strongly encouraged to
reconsider travel or should be
prepared to complete a 'Clearance-
to-Fly' process prior to departure
at the airport. If you are a customer
with a disability who requires this
exemption, please arrive early to
complete the process during check-
in to avoid missing your flight.
This process can take over one
hour and requests are now
evaluated pursuant to the CDC and
TSA's federal mask requirement
for air transportation (adopted in
February 2021). Mask exemptions
only apply for travel onboard
flights operated by Delta Air Lines
and Delta Connection and do not

exempt customers from any requirements that may be imposed by governments, including local, state or foreign countries, (at the origin or destination) or from requirements on other airlines. An exemption request is required for each unique itinerary, and each request is conducted on a case-by-case basis pursuant to law. Please consult your departure, connection and arrival locations for local mask mandate requirements.

Any false claims of a disability to obtain an exemption from wearing a mask or face coverings may result in the suspension of travel privileges on any Delta flight for the duration of the mask/face covering requirement and may be reported to appropriate government authorities.

Learn about **Delta Partner carrier face mask policies**.

From: **Uriel ben-Mordechai** uri@ntcf.org
Subject: Case No's 39920403 and 39920414 • Withdrawal of Consent to transfer health information to provide our Special Service Requests
Date: 15 February 2022 at 9:41
To: Privacy@delta.com



## Attention DELTA Airlines:

## Itinerary: ==GULRGJ== — departs TLV on 17 MAR 2022.

We are located outside of the United States and we both need mask exemptions for the above mentioned itinerary.

==We are aware of your **"Clearance to Fly"** process. As we understand that process, mask exemptions are issued *[or DENIED]* at the departure airport on the day of travel.==

==We do not agree with this process and require our mask exemptions in advance, because we cannot at our ages *[65 and 64 years old]* risk all that is involved with leaving our home in Israel, packing, making travel arrangements, accommodations, etc, and then going to the airport and being denied our exemptions.==

We have submitted webform requests on DELTA's online SERVICE REQUEST FORM [https://www.delta.com/contactus/disability-service-request].

At the bottom of that webform, DELTA states that *"By checking this box, you consent that we may use health or information provided about you and traveling companions, to provide the Special Service Request. See our Privacy Policy."*

The form cannot be submitted without checking that box, which in effect forces us under duress to agree to your polices of sharing our private health information with third parties outside of DELTA.

This message is being sent to inform you that **we withdrawal our consent for DELTA to transfer any of our health information — which we will agree to provide as a courtesy upon request — to any third party outside of DELTA in order to provide our Special Service Requests.** We are exercising our rights in this regard, which are granted pursuant to applicable law.

Thank you,

URI MARCUS
Sky Miles: ▮▮▮▮▮▮▮

YVONNE MARIE (ADI) MARCUS
Sky Miles: ▮▮▮▮▮▮▮

> **From:** Contact Delta <ContactUs.Delta@delta.com>
> **Subject: Auto-Reply Delta Air Lines Accessibility Service Request (KMM116905802V10539L0KM)**
> **Date:** 15 February 2022 at 9:36:10 GMT+2
> **To:** Uri Marcus <uri@ntcf.org>
>
> RE: Case Number 39920403
>
> This is an automatically generated message to acknowledge the receipt of your service request. **Please do not reply to this email.**
>
> *Accessibility service requests, including service animal requests, are prioritized by order of travel date, to efficiently handle requests from passengers with immediate*

From: **Privacy** Privacy@delta.com 📎
Subject: RE: [EXTERNAL] Case No's 39920403 and 39920414 • Withdrawal of Consent to transfer health information to provide our Special Service Requests
Date: 15 February 2022 at 19:01
To: Uriel ben-Mordechai  uri@ntcf.org

Hello,
We have received your email and are looking into its details now.  I will be back in touch with you.

Best regards,
Renee
**Privacy Office** | 🔺 **D E L T A** 🌐 | **privacy@delta.com**

---

**From:** Uriel ben-Mordechai <uri@ntcf.org>
**Sent:** Tuesday, February 15, 2022 1:42 AM
**To:** Privacy <Privacy@delta.com>
**Subject:** [EXTERNAL] Case No's 39920403 and 39920414 • Withdrawal of Consent to transfer health information to provide our Special Service Requests

<span style="color:red">This message is from an EXTERNAL SENDER - be CAUTIOUS, particularly with links and attachments.</span>

---

## Attention DELTA Airlines:

## Itinerary: **GULRGJ** — departs TLV on 17 MAR 2022.

We are located outside of the United States and we both need mask exemptions for the above mentioned itinerary.

We are aware of your **"Clearance to Fly"** process. As we understand that process, mask exemptions are issued *[or DENIED]* at the departure airport on the day of travel.

We do not agree with this process and require our mask exemptions in advance, because we cannot at our ages *[65 and 64 years old]* risk all that is involved with leaving our home in Israel, packing, making travel arrangements, accommodations, etc, and then going to the airport and being denied our exemptions.

We have submitted webform requests on DELTA's online SERVICE REQUEST FORM [https://www.delta.com/contactus/disability-service-request].

At the bottom of that webform, DELTA states that *"By checking this box, you consent that we may use health or information provided about you and traveling companions, to provide the Special Service Request. See our Privacy Policy."*

The form cannot be submitted without checking that box, which in effect forces us under duress to agree to your polices of sharing our private health information with third parties outside of DELTA.

**From:** **Uriel ben-Mordechai** uri@ntcf.org  📎
**Subject:** Re: [EXTERNAL] Case No's 39920403 and 39920414 • Withdrawal of Consent to transfer health information to provide our Special Service Requests
**Date:** 17 February 2022 at 11:06
**To:** Privacy  Privacy@delta.com



Renee *[if that is even your real name]*, Shalom,

I'm not going to lecture you about the clear instructions of applicable law, found here:

> *Title 49 U.S. Code § 41705*
> *USCODE-2010-title29-chap4-sec31*
> *Section 504 of the Rehabilitation Act [PUBLIC LAW 93-112]*
> *14 CFR § 382.23(d)*
> *14 CFR § 382.23(a)*

…and in many other places — all laws that you and I have enjoyed being protected by for most of our lives until suddenly, politicians and CEO's of large companies decided they were going to ignore at our expense.

And here you are working for a company that requires you to "follow orders," by ignoring existing US law, and at the end of the day you get a paycheck for breaking laws for your boss, because he or she told you to. I can't imagine how that must make you feel. But you gotta eat, like everyone else, right?

Look Renee, attached are FOUR medical summaries as a courtesy; ONE for me and THREE for my wife. In fact, at no extra charge I'm throwing in a picture of my wife's nose from yesterday after surgery last week when we went to the hospital in Jerusalem to have cancer removed from her nose that came as a result of "prolonged masking" according to her medical summaries. Can you imagine being her after <mark>STAT-MD</mark> denies her mask exemption and then says, *"Enjoy that face diaper on your 20-hr journey from TLV to LAX and return!"*?

You don't have to be a doctor, or run off to STAT-MD to get the required expertise to conduct mask exemption evaluations on behalf of Delta, to figure out that she can't wear a mask! I am diagnosed with a sensory processing disorder and various lung issues which prevent me from muzzling. It's pretty simple. We have no shortage of medical expertise and common sense for support.

I have to return to the US for business. My wife wants to attend her son's wedding and granddaughter's graduation. Is it too much to ask Delta, after handing you all **$2,703.06** *[a small part of which pays your salary]*, to let us travel without masking and without consulting Delta's "medical experts?"

Can't you just speak with your legal department or put them onto me and I'll explain the situation? Or would Delta and you just prefer that we sue you in Federal Court for discrimination and conspiracy to deprive us of our civil rights?

Let's give this one more shot. Please reconsider and do what you can to make this happen. It's just an airplane ride at the end of the day.

But if you and/or Delta just want to "follow orders" like the low-ranking guards at Auschwitz-Birkenau, Dachau, Buchenwald, Bergen-Belsen and at dozens of other concentration death camps 78 years ago, then just let us know, and we'll react appropriately. I don't know about you, but we — as Jews — are determined not to repeat history.


URI MARCUS
Sky Miles: ▮▮▮▮▮▮▮▮

YVONNE MARIE (ADI) MARCUS
Sky Miles: ▮▮▮▮▮▮▮▮





Dr John 19 Sep
2021 U4E.pdf



Dr Porkosh
Mask E...HE.pdf



EX2 Dr Gilad
Dermit...HE.pdf



EX4 Dr. Ephraim
ben-Ze...y E.pdf

On 15 Feb 2022, at 23:30, Privacy <Privacy@delta.com> wrote:

Thank you for your inquiry regarding your objection to Delta using your health
information to provide your Special Service Request, specifically, an exemption from
the mask requirement in connection with your upcoming travel.  Delta respects your
privacy and will not process your health information for this purpose without your
consent.  However, please note that it is necessary for Delta to disclose information
associated with your request to third-party medical experts who have the required
expertise to conduct mask exemption evaluations on behalf of Delta.

If you object to Delta disclosing your information to third-party medical experts for this
purpose, Delta will be unable to consider your Special Service Request.  Please let us
know if you have any further questions.
We look forward to connecting with you.

Sincerely,
Renee

**From:** Privacy
**Sent:** Tuesday, February 15, 2022 11:01 AM
**To:** 'Uriel ben-Mordechai' <uri@ntcf.org>
**Subject:** RE: [EXTERNAL] Case No's 39920403 and 39920414 • Withdrawal of
Consent to transfer health information to provide our Special Service Requests

From: **Privacy** Privacy@delta.com 🖉
Subject: RE: [EXTERNAL] Case No's 39920403 and 39920414 • Withdrawal of Consent to transfer health information to provide
our Special Service Requests
Date: 18 February 2022 at 23:14
To: Uriel ben-Mordechai uri@ntcf.org

Hello,
Thank you for your email.  I am seeking further assistance internally and will return
when I have something more.

Best regards,
Renee

---

**From:** Uriel ben-Mordechai <uri@ntcf.org>
**Sent:** Thursday, February 17, 2022 3:06 AM
**To:** Privacy <Privacy@delta.com>
**Subject:** Re: [EXTERNAL] Case No's 39920403 and 39920414 • Withdrawal of
Consent to transfer health information to provide our Special Service Requests

Renee *[if that is even your real name]*, Shalom,

I'm not going to lecture you about the clear instructions of applicable law, found here:

> *Title 49 U.S. Code § 41705*
> *USCODE-2010-title29-chap4-sec31*
> *Section 504 of the Rehabilitation Act [PUBLIC LAW 93-112]*
> *14 CFR § 382.23(d)*
> *14 CFR § 382.23(a)*

…and in many other places — all laws that you and I have enjoyed being protected by
for most of our lives until suddenly, politicians and CEO's of large companies decided
they were going to ignore at our expense.

And here you are working for a company that requires you to "follow orders," by ignoring
existing US law, and at the end of the day you get a paycheck for breaking laws for your
boss, because he or she told you to. I can't imagine how that must make you feel. But
you gotta eat, like everyone else, right?

Look Renee, attached are FOUR medical summaries as a courtesy; ONE for me and
THREE for my wife. In fact, at no extra charge I'm throwing in a picture of my wife's
nose from yesterday after surgery last week when we went to the hospital in Jerusalem
to have cancer removed from her nose that came as a result of "prolonged masking"
according to her medical summaries. Can you imagine being her after STAT-MD denies
her mask exemption and then says, *"Enjoy that face diaper on your 20-hr journey from
TLV to LAX and return!"*?

You don't have to be a doctor, or run off to STAT-MD to get the required expertise to
conduct mask exemption evaluations on behalf of Delta, to figure out that she can't
wear a mask! I am diagnosed with a sensory processing disorder and various lung
issues which prevent me from muzzling. It's pretty simple. We have no shortage of
medical expertise and common sense for support.

I have to return to the US for business. My wife wants to attend her son's wedding and
granddaughter's graduation. Is it too much to ask Delta, after handing you all **$2,703.06**
*[a small part of which pays your salary]*, to let us travel without masking and without

28 Feb 2022

PARTIAL TRANSCRIPTION OF TELEPHONE CONVERSATION WITH
DELTA AIRLINES — 27 Feb 2022:

URI:

You're absolutely sure about this? There's no way they're going to make an
exception to try to give us an early exemption or even like a provisional
exemption? They don't give anything like that? Is there anything you can do?

DELTA AGENT:

I can only tell you that we clear all passengers at the airport the day of travel.
So all passengers, no exceptions, no exceptions. You just have to present — if
you have — medical documentation showing that you cannot wear a mask.
That is fine. We have cleared quite a number of passengers under the
circumstances that you mentioned. Now you have to clear at the airport on
whatever the documents there are. They contact Stat MD to clear you. So
they just need basically need to know what is the condition is that's
preventing you wearing a mask and that's all you need to know. They have a
doctor. They understand if you had a surgery, as you said, you will not be
able to wear masks. We have passengers with oxygen who travel all the time.
They cannot wear masks.

From: **Delta Air Lines** DeltaAirLines@t-delta.com
Subject: Your Delta Refund Confirmation Is Enclosed
Date: 28 February 2022 at 8:00
To: uri@ntcf.org

## ▲ DELTA 🔹

### Hello, Uri

# REFUND CONFIRMATION

**URI MARCUS**
PO BOX 126
OJAI 93024

## Refund Confirmation for Psgr: YVONNE MARIE MARCUS

SkyMiles® Account: ███████
Retain this refund confirmation for your records.

| Refund Confirmation Information |
|---|

### Ticket

**Refund Number:** 0060797927470 | Issued 02/28/22

**The amount 1351.53 USD has been refunded to CA ************3538**

**Document submitted for refund:** 0062498855185

**\*\*See Refund Information Below**

| | Amount |
|---|---|
| Ticket Value: | 1351.53 USD |
| Portion Flown/Used: | |
| Cancellation Fee: | 0.00 USD |

| | |
|---|---|
| **Total Refund Amt:** | **1351.53 USD** |
| Base Fare: | 953.00 USD |
| Tax: | 398.53 |

**Flight Segments:**

| Flight # | Depart | Arrive |
|---|---|---|
| **235** | TLV | JFK |
| **1057** | JFK | LAX |
| **323** | LAX | JFK |
| **234** | JFK | TLV |

From: **Delta Air Lines** DeltaAirLines@t.delta.com
Subject: Your Delta Refund Confirmation Is Enclosed
Date: 28 February 2022 at 8:00
To: uri@ntcf.org





**Hello, Uri**

# REFUND CONFIRMATION

**URI MARCUS**
PO BOX 126
OJAI 93024

## Refund Confirmation for Psgr: URI MARCUS

SkyMiles® Account: ■■■■■■■■
Retain this refund confirmation for your records.

**Refund Confirmation Information**

### Ticket

**Refund Number:** 0060797927469 | Issued 02/28/22

**The amount 1351.53 USD has been refunded to CA ************3538**

**Document submitted for refund:** 0062498855184

**See Refund Information Below

| | Amount |
|---|---|
| Ticket Value: | 1351.53 USD |
| Portion Flown/Used: | |
| Cancellation Fee: | 0.00 USD |

| | |
|---|---|
| **Total Refund Amt:** | **1351.53 USD** |
| Base Fare: | 953.00 USD |
| Tax: | 398.53 |

Flight Segments:

| Flight # | Depart | Arrive |
|---|---|---|
| 235 | TLV | JFK |
| 1057 | JFK | LAX |
| 323 | LAX | JFK |
| 234 | JFK | TLV |

# Plaintiffs' Exhibit 19

**Confirmation Code:**

**DRINTF**

*Alaska*®

**Travelers**

Name:  Uri Marcus
E-Ticket: 0272129723137
MP#: Alaska Airlines ▓▓▓▓▓
Seats:  LAX-BOI     19A

Name:  Yvonne Marcus
E-Ticket: 0272129723138
MP#: Alaska Airlines ▓▓▓▓▓
Seats:  LAX-BOI     19C

| Flight | Departs | Arrives |
|---|---|---|
| Alaska 439 | | |
| Main (S) \| | Los Angeles, CA (LAX) | Boise (BOI) |
| Nonstop | Mon, Jun 6 | Mon, Jun 6 |
| Distance: 674 mi \| | 7:05 am | 10:15 am |
| Duration: 2h 10m | | |

**Flight Total for 2 passengers: $417.22**

**The MasterCard ending with \*\*\*\*\*\*\*3538 has been charged a total of USD $417.22.**

| | | |
|---|---|---|
| Total per passenger | | $208.61 |
| Fare | | $180.47 |
| Base fare | $180.47 | |
| Taxes and fees | | $28.14 |
| United States Flight Segment Tax | | |
| Domestic | $4.50 | |
| US psgr. facility charge | $4.50 | |
| US Sept. 11 security fee | $5.60 | |
| US transportation tax | $13.54 | |

**Each ticket will be a separate charge on your credit card statement.**

**For additional assistance with your reservation, call us at 1-800-252-7522 for assistance.**

2/7/22, 9:16 AM                                          Frequently Asked Questions | US Department of Transportation

🇺🇸 An official website of the United States government  Here's how you know ∨

ⓘ The latest general information on the Coronavirus Disease 2019 (COVID-19) is available on Coronavirus.gov. For USDOT specific COVID-19 resources, please visit our page.

Home \ flyhealthy.gov

# DOT — Dept. of Transportation

Frequently Asked Questions        **Scroll down to question #8**

| |
|---|
| **New International Air Travel COVID-19 Policy** |
| Plan Your Travel |
| At the Airport |
| Aboard the Aircraft |
| **Arrival at Your Destination** |
| Returning Home |
| **Frequently Asked Questions** |

## Related Links

- Watch a video on your Passenger Experience
- CDC Resources for Travelers
- U.S. Department of State
- Transportation Security Administration
- Coronavirus.gov
- UNWTO/IATA Destination Tracker
- COVID-19 & Travelers (IATA)
- Fly Healthy, Fly Smart (Airlines for America)

## Related Documents

- Runway to Recovery 1.1



1. **Can I wear a mask to the TSA checkpoint?**

   Yes, travelers must wear a mask throughout their travel journey. Travelers may be asked to adjust their mask for identity verification or remove it briefly if it alarms the security screening equipment.

2. **Can I request that TSA officers use new gloves during my screening?**

   Yes. TSA officers are required to wear nitrile gloves when conducting screening duties and to change them following each pat-down and upon passenger request.

3. **Can I bring my own filled water bottle through the TSA checkpoint?**

   No, you are not permitted to bring your own filled water bottle that exceeds 3.4 ounces through the checkpoint. Many airports now offer touchless refilling stations past security that enable travelers to fill empty bottles and containers they bring from home. Consult the directory or ask a local official for locations in your departure airport.

4. **Do I need to remove electronics from my carry-on bags?**

   Yes, you should plan to remove personal electronic devices larger than a cell phone from your carry-on bag and put them in a separate bin with nothing placed on or under them for security screening. (This does not apply to TSA PreCheck™ passengers.) Some airports are using new Computed Tomography (CT) technology that allows you to keep electronics in your carry-on luggage. Passengers will be advised on the use of CT scanners at the checkpoint and of any alternate procedures.

5. **Can TSA still open and go through my checked luggage? What precautions are being taken to reduce possible contamination?**

   Yes, TSA may inspect your checked baggage during the screening process. If your property is physically inspected, TSA will place a notice of baggage inspection inside your bag. To reduce the likelihood of contamination, TSA officers are changing their gloves after each bag check and conducting enhanced sanitation of baggage screening areas.

2/7/22, 9:16 AM                          Frequently Asked Questions | US Department of Transportation

6. **My driver's license has expired and I haven't been able to renew it during the pandemic. Will I still be able to fly?**

   Yes. If your driver's license or state-issued ID expired on or after March 1, 2020, and you are unable to renew, you may still use it as acceptable identification at the checkpoint. TSA will accept expired driver's licenses or state-issued IDs for a year after expiration.

7. **What is the status of REAL ID enforcement in light of COVID-19?**

   The Department of Homeland Security has extended the deadline for REAL ID enforcement to October 1, 2021. Visit the REAL ID website for more information.

8. **What happens if a passenger does not comply with an airline's mask policies and/or causes an inflight disruption or distraction for the crew?**

   While the failure to wear a face covering is not itself a federal violation, federal law prohibits physically assaulting or threatening to physically assault aircraft crew or anyone else on a civil aircraft. Passengers are subject to civil penalties for such misconduct, which can threaten the safety of the flight by disrupting or distracting cabin crew from their safety duties. Additionally, federal law provides for criminal fines and imprisonment of passengers who interfere with the performance of a crewmember's duties by assaulting or intimidating that crewmember. U.S. airlines have policies about wearing face coverings in the airplane cabin. Please be sure to check with your airline prior to flight for further guidance

9. **What happens if there is a sick passenger on an international or domestic flight?**

   Under current federal regulations, pilots must report all onboard illnesses and deaths to CDC before arriving to a U.S. destination. According to CDC illness response protocols, if a sick traveler has a serious contagious disease during air travel, CDC works with local and state health departments and international public health agencies to contact exposed passengers and crew.

   Be sure to give the airline your current contact information when booking your ticket so you can be notified if you are exposed to a sick traveler on a flight.

   For more information, see the CDC web page Protecting Travelers' Health from Airport to Community: Investigating Contagious Diseases on Flights.

10. **Can flying on an airplane increase my risk of getting COVID-19?**

    Most airlines and airports are enhancing their cleaning and passenger health protection protocols due to COVID-19, but air travel requires spending time in security lines and airport terminals, which can bring you in close contact with other people and frequently touched surfaces. This may increase your risk for exposure to the virus that causes COVID-19.

    Most viruses and other germs do not spread easily on flights because of how air circulates and is filtered on airplanes (the air in an airplane cabin is fully renewed every 2-3 minutes, which is more frequent than most other locations in which people spend time). However, social distancing is difficult on flights, and you may have to sit near others, sometimes for hours. This makes the wearing of a face mask an important additional measure against exposing yourself or others to COVID-19.   It is important to follow basic guidance on wearing a face mask and frequently washing your hands or using hand sanitizer with at least 60% alcohol. For more information see CDC's Travel During the COVID-19 Pandemic.

## International Travel Requirements

1. **What should passengers provide to airlines to show they are fully vaccinated?**

   Both U.S. citizens and foreign nationals who are fully vaccinated should travel with proof of



# Accessible travel services

For the best travel experience when requesting these services:

- Make reservations as early as possible and request services while booking online, or call our dedicated accessible services line at 1-800-503-0101 (dial 711 for relay services).
- Arrive at the airport at least 2 hours prior to departure.
- Let us know about any special requirements - at check-in, in the boarding area, and on the aircraft.

**New:** Download our free mobile app called Fly for All, designed for those with cognitive and developmental disabilities, first-time flyers, and unaccompanied minors. Download Fly for All on the App Store   and Google Play   .

**Federal law requires guests to wear a mask**   over their nose and mouth at all times during travel, including throughout the flight, during boarding and deplaning, and while traveling through an airport. Visit our travel advisories to learn more about our mask requirement.

If you have a disability and are unable to wear a mask, please call our dedicated accessible services line at 1-800-503-0101 (dial 711 for relay services) to request an exemption from the mask requirement.

Exemptions will require:

- Contacting Alaska Airlines Reservations 1-800-503-0101 to facilitate a Medical Mask Exemption. **NOTE:** Please be prepared to provide your healthcare provider's name and email address. Our reservation staff can assist you with any questions.
- Provide proof of a negative test result from an FDA approved molecular NAAT or PCR Covid-19 test taken within 72 hours of your scheduled flight departure to airport staff.

A response from your health care provider must be submitted to Alaska Airlines **at least 72 hours before your flight**. We recommend that you contact us at least one week before departure to start the exemption process.

Airport accessibility

Developmental and intellectual disabilities

Hearing

Mobility

Oxygen and respiratory devices

**From:** **Alaska Airlines Mask Exemption requests** echosign@echosign.com
**Subject:** Signature requested on "Medical Mask Exception Form-Uri Marcus"
**Date:** 25 February 2022 at 16:08
**To:** uri@ntcf.org





Alaska Airlines Mask Exemption requests requests
your signature on
# Medical Mask Exception Form-Uri Marcus

Due on April 26, 2022

**Review and sign**

---

Please fill out this form which will route through your medical professional then back to us for approval.

---

**Don't forward this email:** If you don't want to sign, you can **delegate** to someone else.

By proceeding, you agree that this agreement may be signed using electronic or handwritten signatures.

To ensure that you continue receiving our emails, please add echosign@echosign.com to your address book or safe list.

© 2022 Adobe. All rights reserved.

**From:** **Alaska Airlines Mask Exemption requests** echosign@echosign.com
**Subject:** Signature requested on "Medical Mask Exception Form- Yvonne Marcus"
**Date:** 25 February 2022 at 16:09
**To:** uri@ntcf.org



 POWERED BY
Adobe Sign

Alaska Airlines Mask Exemption requests requests your signature on
## Medical Mask Exception Form- Yvonne Marcus

Due on April 26, 2022

**Review and sign**

Please fill out this form which will route through your medical professional then back to us for approval.

**Don't forward this email:** If you don't want to sign, you can **delegate** to someone else.

By proceeding, you agree that this agreement may be signed using electronic or handwritten signatures.

To ensure that you continue receiving our emails, please add echosign@echosign.com to your address book or safe list.

© 2022 Adobe. All rights reserved.

My wife, YVONNE (Adi) MARCUS underwent surgery on 08 Feb 2022 at a hospital in Jerusalem to have skin cancer removed from her nose that according to TWO medical summaries by two independent doctors came as a result of "prolonged masking." She definitely cannot wear a mask on any flight until she heals, which the surgeon said could take 3-4 months minimum.





## Medical Mask Exemption Form
### Passenger/Representative Information

**IMPORTANT:** **We ask that passengers requesting an exemption submit a completed form (Passenger and Medical Provider Portions) to Alaska Airlines at least 72 hours prior to the passenger's scheduled outbound flight departure time to avoid a delay in travel.**

**Approval or denial of the exemption request will be communicated to the passenger or their representative via email within 48 hours of receipt by Alaska Airlines of the completed exemption form. We suggest calling your medical provider to help expedite this process.**

Passengers with a disability who cannot wear a mask for reasons related to the disability will be asked to comply with specific requirements to ensure the safety of Alaska's guests and employees. Requirements include providing proof of a negative result from a SARS-CoV-2 viral FDA-approved molecular (PCR or NAAT) test that is taken within 72 hours of the passenger's scheduled flight departure. A negative test is required for each direction of travel. All requirements can be found on alaskaair.com/access

**Name of passenger – (For whom exemption is being requested)**

Passenger Name: Yvonne Marcus

Passenger email address: uri@ntcf.org

Passenger phone: 9098330065

Flight #: 439          Flight Date: 06/06/2022          Confirmation Code: DRINTF

**Name of Representative – If submitting on behalf of the passenger (For example: Parent/guardian)**

Representative Name: YVONNE is known by her Hebrew name Adi Marcus ID

Representative email address:

Representative Phone Number:

**Alaska Airlines will send this form to your medical provider for completion and signature. By signing this form: (1) you authorize Alaska Airlines to transmit this form to your medical provider and authorize your medical provider to return the completed form to Alaska Airlines; and (2) if granted an exemption, you agree to comply with Alaska Airlines' specific requirements designed to ensure the safety of Alaska Airlines' guests and employees, including but not limited to provide Alaska Airlines with proof of a negative result from a SARS-CoV-2 viral FDA approved molecular (PCR or NAAT) test that is taken within 72 hours of your scheduled departure for each direction.**

Passenger or Representative Signature: *Yvonne M (Adi) Marcus*
Yvonne M (Adi) Marcus (Feb 25, 2022 16:27 GMT+2)          Date: Feb 25, 2022

Passenger or Representative Name Printed: Yvonne M (Adi) Marcus



## Medical Mask Exemption Form (Continued)

**Medical Provider Information**

Medical Provider
Name: _____

Medical Provider
email: _____

Type of
Medical License: _____

National Physician
Number (NPI): _____

State or Jurisdiction
Where License is
Issued: _____ Phone: _____

Name of Practice: _____

<span style="background-color: yellow">Federal law requires that all persons wear a mask</span> while onboard aircraft to mitigate the introduction, transmission, and spread of COVID-19. The law may exempt persons with a disability who cannot wear a mask, or cannot safely wear a mask, because of the disability as defined by the Americans with Disabilities Act. <span style="background-color: yellow">This narrow exemption</span> includes a person with a disability who cannot wear a mask for reasons related to the disability and <span style="background-color: yellow">is not meant to cover persons for whom mask-wearing may only be difficult.</span>

1. Please describe with specificity why the passenger cannot wear a mask *for reasons related to the disability* (i.e., please detail how the disability prevents the passenger from wearing a mask or safely wear a mask).

> _____

2. If the passenger cannot wear a mask, please indicate whether the passenger would be able to wear a face shield for the duration of a flight.

> _____

### Certification

I certify that (1) I am a licensed medical provider, (2) I have assessed this passenger in accordance with my medical training; and (3) in my professional medical opinion, this passenger has a disability that would prevent them from wearing a mask.

**Medical Provider Signature:** _____ **Date:** _____

**Medical Provider Name Printed:** _____

Medical Mask Exemption Form
Rev 02/2021



## Medical Mask Exemption Form

**Passenger/Representative Information**

**IMPORTANT:** ==We ask that passengers requesting an exemption submit a completed form (Passenger and Medical Provider Portions) to Alaska Airlines at least 72 hours prior to the passenger's scheduled outbound flight departure time to avoid a delay in travel.==

**Approval or denial of the exemption request will be communicated to the passenger or their representative via email within 48 hours of receipt by Alaska Airlines of the completed exemption form. We suggest calling your medical provider to help expedite this process.**

Passengers with a disability who cannot wear a mask for reasons related to the disability will be asked to comply with specific requirements to ensure the safety of Alaska's guests and employees. ==Requirements include providing proof of a negative result from a SARS-CoV-2 viral FDA-approved molecular (PCR or NAAT) test that is taken within 72 hours of the passenger's scheduled flight departure. A negative test is required for each direction of travel.== All requirements can be found on alaskaair.com/access

**Name of passenger – (For whom exemption is being requested)**

Passenger Name: Uri Marcus

Passenger email address: uri@ntcf.org

Passenger phone: 9098330065

Flight #: 439      Flight Date: 06/06/2022      Confirmation Code: DRINTF

**Name of Representative – If submitting on behalf of the passenger (For example: Parent/guardian)**

Representative Name: ████████

Representative email address:

Representative Phone Number:

**Alaska Airlines will send this form to your medical provider for completion and signature. ==By signing this form: (1) you authorize Alaska Airlines to transmit this form to your medical provider and authorize your medical provider to return the completed form to Alaska Airlines; and (2) if granted an exemption, you agree to comply with Alaska Airlines' specific requirements designed to ensure the safety of Alaska Airlines' guests and employees, including but not limited to provide Alaska Airlines with proof of a negative result from a SARS-CoV-2 viral FDA approved molecular (PCR or NAAT) test that is taken within 72 hours of your scheduled departure for each direction.==**

Passenger or Representative Signature: *Uri Marcus*
Uri Marcus (Feb 25, 2022 16:33 GMT+2)      Date: Feb 25, 2022

Passenger or Representative Name Printed: Uri Marcus



## Medical Mask Exemption Form (Continued)

**Medical Provider Information**

Medical Provider
Name: _____

Medical Provider
email: _____

Type of
Medical License: _____

National Physician
Number (NPI): _____

State or Jurisdiction
Where License is
Issued: _____ Phone: _____

Name of Practice: _____

Federal law requires that all persons wear a mask while onboard aircraft to mitigate the introduction, transmission, and spread of COVID-19. The law may exempt persons with a disability who cannot wear a mask, or cannot safely wear a mask, because of the disability as defined by the Americans with Disabilities Act. This narrow exemption includes a person with a disability who cannot wear a mask for reasons related to the disability and is not meant to cover persons for whom mask-wearing may only be difficult.

1. Please describe with specificity why the passenger cannot wear a mask *for reasons related to the disability* (i.e., please detail how the disability prevents the passenger from wearing a mask or safely wear a mask).

_____

2. If the passenger cannot wear a mask, please indicate whether the passenger would be able to wear a face shield for the duration of a flight.

_____

**Certification**

I certify that (1) I am a licensed medical provider, (2) I have assessed this passenger in accordance with my medical training; and (3) in my professional medical opinion, this passenger has a disability that would prevent them from wearing a mask.

**Medical Provider Signature:**_____**Date:** _____

**Medical Provider Name Printed:**_____

Medical Mask Exemption Form
Rev 02/2021

From: **Uriel ben-Mordechai** uri@ntcf.org
Subject: Alaska Airlines
Date: 28 February 2022 at 17:56
To: katyo@opendoorsnfp.org



Shalom Katy;

Attached are the documents you requested. Much appreciation for your assistance in this matter.

Uriel ben-Mordechai [Marcus]
Jerusalem
+972-522-811-774



Mask Exemption
Applica...22.pdf



Mask Exemption
Applica...22.pdf

**From:** **katyo@opendoorsnfp.org** KatyO@opendoorsnfp.org
**Subject:** RE: Alaska Airlines
**Date:** 28 February 2022 at 22:17
**To:** Uriel ben-Mordechai uri@ntcf.org



Hi Uriel,

Thank you for sending the letters from your and your wife's doctors. Based on the letters showing the recommendations from your doctors, I'm going to send approvals to Alaska for both your and your wife to be exempt from wearing a mask on your upcoming travel with Alaska Airlines. Your doctor can still complete the form if he would like but your reservation will be noted with the approval regardless.

In the next day or two, you should receive an email from Alaska Airlines with the approval confirmation and information about the COVID testing requirements ahead of your trip.

Please don't hesitate to contact me if you don't hear from Alaska in the next couple days or of course if you have any questions.

Thank you for writing to us to get this taken care of quickly! And if I don't talk to you, have a very safe and enjoyable trip.

All the best to you both,

Katy

Katy O'Reilly
Program Manager
(p) 773-388-8839
opendoorsnfp.org

-----Original Message-----
From: Uriel ben-Mordechai [mailto:uri@ntcf.org]
Sent: Monday, February 28, 2022 9:56 AM
To: katyo@opendoorsnfp.org
Subject: Alaska Airlines

Shalom Katy;

Attached are the documents you requested. Much appreciation for your assistance in this matter.

Uriel ben-Mordechai [Marcus]
Jerusalem
+972-522-811-774

From: **Customer.Care.Reply@alaskaair.com** Customer.Care.Reply@AlaskaAir.com
Subject: RE: Reference#: 7249652
Date: 1 March 2022 at 2:09
To: URI@ntcf.org URI@NTCF.ORG





Alaska Airlines Medical Mask Exemption Request

**RE: Confirmation Code: DRINTF**

February 28, 2022

Hello Uriel,

==Federal law requires all guests wear a mask== for the duration of travel, including while onboard aircraft, to mitigate the introduction, transmission and spread of COVID-19. ==This law also mandates a narrow exemption== for certain guests with a disability who cannot wear a mask for reasons related to the disability and ==is not meant to cover persons for whom mask-wearing may only be difficult==. More information can be found on alaskaair.com accessible travel services.

**Alaska Airlines has reviewed the documentation submitted from you and your medical provider. We have approved your request to travel with a medical mask exemption.**

==**In order to travel with a medical mask exemption, you must:**==

1. Contact Alaska Airlines to confirm flights and ==obtain seat assignments.==
   · 1-800-252-7522
2. Check in at the ticket counter at the airport.
   · Allow sufficient time for us to verify your documents.
3. ==Present a negative COVID-19 (NAAT or PCR molecular) test at the ticket counter;== or,
   ==Proof of a positive COVID-19 test within the last 90-days== **and** documentation from a licensed medical provider ("documentation of recovery") stating you are fully recovered and cleared to travel.
4. Notify the ticket counter if you intend to visit the Alaska Airlines Lounge.
5. Be prepared to follow directions from Alaska Airlines staff relating to your travel with a medical mask exemption.

==You must present this letter along with your negative COVID-19 (molecular NAAT or PCR) test== or
Covid-19 recovery document to Alaska Airlines airport staff and TSA (to get through the security checkpoint).

For more information, visit the Accessible Travel Services page on alaskaair.com or if you have additional questions, call Alaska Airlines Reservations, at 1-800-252-7522.

Sincerely,

Alaska Airlines

Reference#: 7249652

**From:** Customer.Care.Reply@alaskaair.com  Customer.Care.Reply@AlaskaAir.com
**Subject:** RE: Reference#: [case.case_id]
**Date:** 1 March 2022 at 1:32
**To:** URI@ntcf.org  URI@NTCF.ORG





Alaska Airlines Medical Mask Exemption Request

**RE: Confirmation Code: DRINTF**

February 28, 2022

Hello Yvonne,

Federal law requires all guests wear a mask for the duration of travel, including while onboard aircraft, to mitigate the introduction, transmission and spread of COVID-19. This law also mandates a narrow exemption for certain guests with a disability who cannot wear a mask for reasons related to the disability and is not meant to cover persons for whom mask-wearing may only be difficult. More information can be found on alaskaair.com accessible travel services.

**Alaska Airlines has reviewed the documentation submitted from you and your medical provider. We have approved your request to travel with a medical mask exemption.**

**In order to travel with a medical mask exemption, you must:**

1. Contact Alaska Airlines to confirm flights and obtain seat assignments.
    · 1-800-252-7522
2. Check in at the ticket counter at the airport.
    · Allow sufficient time for us to verify your documents.
3. Present a negative COVID-19 (NAAT or PCR molecular) test at the ticket counter;
   or,
   Proof of a positive COVID-19 test within the last 90-days *and* documentation from a licensed medical provider ("documentation of recovery") stating you are fully recovered and cleared to travel.
4. Notify the ticket counter if you intend to visit the Alaska Airlines Lounge.
5. Be prepared to follow directions from Alaska Airlines staff relating to your travel with a medical mask exemption.

You must present this letter along with your negative COVID-19 (molecular NAAT or PCR) test or
Covid-19 recovery document to Alaska Airlines airport staff and TSA (to get through the security checkpoint).

For more information, visit the Accessible Travel Services page on alaskaair.com or if you have additional questions, call Alaska Airlines Reservations, at 1-800-252-7522.

Sincerely,

Alaska Airlines

Reference#: 7249062



* Required

**Passenger information**

| | | |
|---|---|---|
| Name: Uri Marcus | **Flight** | **Seat** |
| MP# American Airlines ▓▓▓▓ | | |
| Special services: | LAX-BOI | 19A |
| Please see agent when you arrive at the airport | | |
| . Developmental and/or intellectual disability - assistance through | | |
| the airport. | | |

| | | |
|---|---|---|
| Name: Yvonne Marcus | **Flight** | **Seat** |
| MP# Alaska Airlines ▓▓▓▓ | | |
| Special services: | LAX-BOI | 19C |
| Please see agent when you arrive at the airport | | |
| . Developmental and/or intellectual disability - assistance through | | |
| the airport. | | |

** If requested seats are not available, the next best will be reserved.

**Flights**

| **Flight** | **Departs** | **Arrives** |
|---|---|---|
| Alaska 439 | Los Angeles, CA (LAX) | Boise (BOI) |
| **Main (S)** \| Nonstop \| <u>Details</u> | Mon, Jun 6 | Mon, Jun 6 |
| <u>Distance</u>: 674 mi \| Duration: 2h 10m | 7:05 am | 10:15 am |

**Price for 2 passengers**
$417.22



2/23/22, 5:12 PM                                   Checkout | Travelers - Alaska

8

9

LAX to BOI

2h 10m                            10

Alaska and **one**world® elites

| ⊠ | ⊠ | ⊠ | 11 | ⊠ | ⊠ | ⊠ |

| ⊠ | ⊠ | ⊠ | 12 | ⊠ | ⊠ | ⊠ |

| ⊠ | ⊠ | ⊠ | 15 | ⊠ | ⊠ | ⊠ |

**EXIT** | ⊠ | ⊠ | ⊠ | 16 | ⊠ | ⊠ | ⊠ | **EXIT**

**EXIT** | ⊠ | ⊠ | ⊠ | 17 | ⊠ | ⊠ | ⊠ | **EXIT**

Main Cabin

18

UM           YM     19

20

21

22

23

## Guests

| 19A | Uri Marcus<br>Main Cabin | ✕ |
| 19C | Yvonne Marcus<br>Main Cabin | ✕ |

## Legend ⌃

Premium
Class  +$32  USD

Main Cabin

Occupied

⊠  Unavailable



Checked Seat Selection - Alaska Airlines

**Alaska** AIRLINES

Book   Manage   Check in   Where we fly   Traveling with us   Mileage Plan

Search

**LAX to BOI**
2h 10m

Los Angeles, CA to Boise
Alaska Airlines 439 | Boeing 737-800 (Winglets)

EXIT            EXIT

**First Class**

|     | A | C |   | D | F |
|-----|---|---|---|---|---|
| 1   | X | X |   | X | X |
| 2   | X | X |   | X | X |
| 3   | X | X |   | X | X |

**Premium Class**                          ⓘ
                                           $32

|     | A | B | C |   | D | E | F |
|-----|---|---|---|---|---|---|---|
| 6   | X | X | X |   | X | X | X |
| 7   |   |   |   |   |   |   |   |
| 8   |   |   |   |   |   |   |   |
| 9   |   |   |   |   |   |   |   |
| 10  |   |   |   |   |   |   |   |

**Alaska and oneworld® elites**

| 11 | X | X | X |   | X | X | X |
| 12 | X | X | X |   | X | X | X |
| 15 | X | X | X |   | X | X | X |
| 16 | X | X | X |   | X | X | X |
| 17 | X | X | X |   | X | X | X |

EXIT (16, 17)            EXIT

**Main Cabin**

| 18 |  |  |  |   |  |  |  |
| 19 |  |  |  |   |  |  |  |
| 20 |  |  |  |   |  |  |  |
| 21 |  |  |  |   |  |  |  |
| 22 |  |  |  |   |  |  |  |
| 23 |  |  |  |   |  |  |  |
| 24 |  |  |  |   |  |  |  |
| 25 |  |  |  |   |  |  |  |
| 26 |  |  |  |   |  |  |  |
| 27 |  |  |  |   |  |  |  |
| 28 |  |  |  |   |  |  |  |
| 29 |  |  |  |   |  |  |  |
| 30 |  |  |  |   |  |  |  |
| 31 | X | X | X |   | X | X | X |
| 32 |   |   | X |   | X | UM | YM |

EXIT            EXIT

**Guests**

32E  **Uri Marcus**
     Main Cabin

32F  **Yvonne Marcus**
     Main Cabin

**Legend**

⬛  Premium Class   +$32  USD

🟦  Main Cabin

⬜  Occupied

✕  Unavailable

Seat assignments and actual availability are subject to change.

Total due for seats:                    $0 USD

**Save and purchase**

*Inflight amenities can vary by equipment type and route and may not be available on all aircraft.



## Guests

**Uri Marcus**
Main Cabin
32E

**Yvonne Marcus**
Main Cabin
32F

## Legend

★ Premium Class +$32 USD

■ Main Cabin

■ Occupied

☒ Unavailable

Seat assignments and actual availability are subject to change.

Total due for seats: $0 USD

Save and purchase



LAX to BOI
2h 10m

EXIT

19  20  21  22  23  24  25  26  27  28  29  30  31  32

EXIT

**From:** **Alaska Airlines** service@ifly.alaskaair.com
**Subject:** Canceled Reservation: Your June 06 trip
**Date:** 2 March 2022 at 10:03
**To:** uri@ntcf.org





# Purchased reservation cancellation

March 2, 2022

Thank you for choosing Alaska Airlines. The following reservation has been canceled and refunded to the original form of payment.

---

**Traveler name(s):**          **Ticket number(s):**
Uri Marcus                     0272129723137
Yvonne Marcus                  0272129723138

Confirmation code: DRINTF

**ITINERARY**

✈ **LAX / BOI**

Los Angeles, CA / Boise, ID
Monday, June 6, 2022
Alaska Airlines 439

**Fare summary       (USD)**
Base:          $360.94
Taxes:          $56.28
Total:         $417.22

---

Refunds for Premium Class seats or other add-ons to

## Plaintiffs' Exhibit 20

From: **Southwest Airlines** southwestairlines@ifly.southwest.com
Subject: You're going to Denver on 06/16 (2NJJSB)!
Date: 25 February 2022 at 6:53
To: uri@ntcf.org



Here's your itinerary & receipt. See ya soon!
View our mobile site | View in browser

 Manage Flight | Flight Status | My Account

 **Travel notice**
Federal law requires each person to wear a mask at all times in the airport and throughout the flight, including during boarding and deplaning. Passengers who may be exempt from wearing a face covering due to a disability must contact us before travel. Learn more.

 **Hello friends,**
We're looking forward to flying together! It can't come soon enough. Below you'll find your itinerary, important travel information, and trip receipt. See you onboard soon!

JUNE 16

# BOI ✈ DEN

Boise to Denver

Confirmation # **2NJJSB**

Confirmation date: 02/24/2022

| PASSENGER | **Uri Marcus** |
|---|---|
| RAPID REWARDS # | ███ |
| TICKET # | 5261488139917 |
| EXPIRATION[1] | January 7, 2023 |
| EST. POINTS EARNED | 1,641 |

| PASSENGER | **Yvonne M Marcus** |
|---|---|
| RAPID REWARDS # | ███ |
| TICKET # | 5261488139916 |
| EXPIRATION[1] | February 25, 2023 |
| EST. POINTS EARNED | 1,641 |

Rapid Rewards® points are only estimations.

## Your itinerary

| Flight: | Thursday, 06/16/2022 | Est. Travel Time: **1h 45m** | Anytime |
|---|---|---|---|

| FLIGHT # 2972 | DEPARTS **BOI 12:50**PM Boise | ✈ | ARRIVES **DEN 02:35**PM Denver |
|---|---|---|---|

## Payment information

| Total cost | | |
|---|---|---|
| **Air - 2NJJSB** | | |
| Base Fare | $ | 328.14 |
| U.S. Transportation Tax | $ | 24.62 |
| U.S. 9/11 Security Fee | $ | 11.20 |
| U.S. Flight Segment Tax | $ | 9.00 |
| U.S. Passenger Facility Chg | $ | 9.00 |
| **Total** | **$** | **381.96** |

| Payment |
|---|
| Mastercard ending in 3538 Date: February 24, 2022 |
| **Payment Amount: $190.98** |
| Mastercard ending in 3538 Date: February 24, 2022 |
| **Payment Amount: $40.98** |
| LUV Voucher Date: February 24, 2022 |
| **Payment Amount: $150.00** |

| From: | **Southwest Airlines** southwestairlines@ifly.southwest.com |
| Subject: | **You're going to Phoenix on 06/24 (2NPBTM)!** |
| Date: | 25 February 2022 at 7:05 |
| To: | uri@ntcf.org |



Here's your itinerary & receipt. See ya soon!

View our mobile site | View in browser

 **Southwest**          **Manage Flight** | **Flight Status** | **My Account**

 **Travel notice**

Federal law requires each person to wear a mask at all times in the airport and throughout the flight, including during boarding and deplaning. Passengers who may be exempt from wearing a face covering due to a disability must contact us before travel. Learn more.

 **Hello friends,**

We're looking forward to flying together! It can't come soon enough. Below you'll find your itinerary, important travel information, and trip receipt. See you onboard soon!

**JUNE 24**

# HOU ✈ PHX

Houston (Hobby) to Phoenix

Confirmation # **2NPBTM**                    Confirmation date: 02/24/2022

| PASSENGER | **Uri Marcus** |
| RAPID REWARDS # | ▇▇▇▇▇▇ |
| TICKET # | 5261488142380 |
| EXPIRATION[1] | February 25, 2023 |
| EST. POINTS EARNED | 1,669 |

| PASSENGER | **Yvonne M Marcus** |
| RAPID REWARDS # | ▇▇▇▇▇▇ |
| TICKET # | 5261488142379 |
| EXPIRATION[1] | February 25, 2023 |
| EST. POINTS EARNED | 1,669 |

Rapid Rewards® points are only estimations.

## Your itinerary

| **Flight:** | Friday, 06/24/2022 | Est. Travel Time: **2h 35m** | Anytime |

| FLIGHT # 3237 | DEPARTS **HOU 05:25**AM Houston (Hobby) | ✈ | ARRIVES **PHX 06:00**AM Phoenix |

## Payment information

| Total cost | | |
|---|---|---|
| **Air - 2NPBTM** | | |
| Base Fare | $ | 333.74 |
| U.S. Transportation Tax | $ | 25.04 |
| U.S. 9/11 Security Fee | $ | 11.20 |
| U.S. Flight Segment Tax | $ | 9.00 |
| U.S. Passenger Facility Chg | $ | 9.00 |
| **Total** | **$** | **387.98** |

| Payment |
|---|
| Mastercard ending in 3538 Date: February 24, 2022 |
| **Payment Amount: $193.99** |
| Mastercard ending in 3538 Date: February 24, 2022 |
| **Payment Amount: $193.99** |

From: **Southwest Airlines** southwestairlines@ifly.southwest.com
Subject: You're going to Las Vegas on 06/28 (2NVJ56)!
Date: 25 February 2022 at 7:21
To: uri@ntcf.org



Here's your itinerary & receipt. See ya soon!
View our mobile site | View in browser

                    Manage Flight | Flight Status | My Account

⚠ **Travel notice**

Federal law requires each person to wear a mask at all times in the airport and throughout the flight, including during boarding and deplaning. Passengers who may be exempt from wearing a face covering due to a disability must contact us before travel. Learn more.

 **Hello friends,**

We're looking forward to flying together! It can't come soon enough. Below you'll find your itinerary, important travel information, and trip receipt. See you onboard soon!

JUNE 28 - JULY 5

# LAX ✈ LAS

Los Angeles to Las Vegas

Confirmation # **2NVJ56**                    Confirmation date: 02/24/2022

| PASSENGER | **Uri Marcus** |
|---|---|
| RAPID REWARDS # | |
| TICKET # | 5261488144971 |
| EXPIRATION[1] | February 25, 2023 |
| EST. POINTS EARNED | 1,617 |

| PASSENGER | **Yvonne M Marcus** |
|---|---|
| RAPID REWARDS # | |
| TICKET # | 5261488144970 |
| EXPIRATION[1] | February 25, 2023 |
| EST. POINTS EARNED | 1,617 |

Rapid Rewards® points are only estimations.

## Your itinerary

| **Flight 1:** | Tuesday, 06/28/2022 | Est. Travel Time: **1h 15m** | Anytime |
|---|---|---|---|

FLIGHT # 3294

DEPARTS **LAX 10:45**AM
Los Angeles



ARRIVES **LAS 12:00**PM
Las Vegas

| **Flight 2:** | Tuesday, 07/05/2022 | Est. Travel Time: **1h 15m** | Anytime |
|---|---|---|---|

FLIGHT # 0174

DEPARTS **LAS 03:40**PM
Las Vegas

ARRIVES **LAX 04:55**PM
Los Angeles

## Payment information

| Total cost | | |
|---|---|---|
| Air - **2NVJ56** | | |
| Base Fare | $ | 323.28 |
| U.S. Transportation Tax | $ | 24.24 |
| U.S. 9/11 Security Fee | $ | 22.40 |
| U.S. Flight Segment Tax | $ | 18.00 |
| U.S. Passenger Facility Chg | $ | 18.00 |
| **Total** | **$** | **405.92** |

| Payment |
|---|
| Mastercard ending in 3538 |
| Date: February 24, 2022 |
| **Payment Amount: $202.96** |
| Mastercard ending in 3538 |
| Date: February 24, 2022 |
| **Payment Amount: $202.96** |

2/7/22, 9:16 AM                                    Frequently Asked Questions | US Department of Transportation

🇺🇸 An official website of the United States government Here's how you know ⌄

ⓘ The latest general information on the Coronavirus Disease 2019 (COVID-19) is available on Coronavirus.gov. For USDOT specific COVID-19 resources, please visit our page.

Home \ flyhealthy.gov

# DOT — Dept. of Transportation

**Frequently Asked Questions**          **Scroll down to question #8**

**New International Air Travel COVID-19 Policy**

**Plan Your Travel**

**At the Airport**

**Aboard the Aircraft**

**Arrival at Your Destination**

**Returning Home**

**Frequently Asked Questions**

## Related Links

- Watch a video on your Passenger Experience
- CDC Resources for Travelers
- U.S. Department of State
- Transportation Security Administration
- Coronavirus.gov
- UNWTO/IATA Destination Tracker
- COVID-19 & Travelers (IATA)
- Fly Healthy, Fly Smart (Airlines for America)

## Related Documents

- Runway to Recovery 1.1



1. **Can I wear a mask to the TSA checkpoint?**

   Yes, travelers must wear a mask throughout their travel journey. Travelers may be asked to adjust their mask for identity verification or remove it briefly if it alarms the security screening equipment.

2. **Can I request that TSA officers use new gloves during my screening?**

   Yes. TSA officers are required to wear nitrile gloves when conducting screening duties and to change them following each pat-down and upon passenger request.

3. **Can I bring my own filled water bottle through the TSA checkpoint?**

   No, you are not permitted to bring your own filled water bottle that exceeds 3.4 ounces through the checkpoint. Many airports now offer touchless refilling stations past security that enable travelers to fill empty bottles and containers they bring from home. Consult the directory or ask a local official for locations in your departure airport.

4. **Do I need to remove electronics from my carry-on bags?**

   Yes, you should plan to remove personal electronic devices larger than a cell phone from your carry-on bag and put them in a separate bin with nothing placed on or under them for security screening. (This does not apply to TSA PreCheck™ passengers.) Some airports are using new Computed Tomography (CT) technology that allows you to keep electronics in your carry-on luggage. Passengers will be advised on the use of CT scanners at the checkpoint and of any alternate procedures.

5. **Can TSA still open and go through my checked luggage? What precautions are being taken to reduce possible contamination?**

   Yes, TSA may inspect your checked baggage during the screening process. If your property is physically inspected, TSA will place a notice of baggage inspection inside your bag. To reduce the likelihood of contamination, TSA officers are changing their gloves after each bag check and conducting enhanced sanitation of baggage screening areas.

Frequently Asked Questions | US Department of Transportation

6. **My driver's license has expired and I haven't been able to renew it during the pandemic. Will I still be able to fly?**

   Yes. If your driver's license or state-issued ID expired on or after March 1, 2020, and you are unable to renew, you may still use it as acceptable identification at the checkpoint. TSA will accept expired driver's licenses or state-issued IDs for a year after expiration.

7. **What is the status of REAL ID enforcement in light of COVID-19?**

   The Department of Homeland Security has extended the deadline for REAL ID enforcement to October 1, 2021. Visit the REAL ID website for more information.

8. **What happens if a passenger does not comply with an airline's mask policies and/or causes an inflight disruption or distraction for the crew?**

   While the failure to wear a face covering is not itself a federal violation, federal law prohibits physically assaulting or threatening to physically assault aircraft crew or anyone else on a civil aircraft. Passengers are subject to civil penalties for such misconduct, which can threaten the safety of the flight by disrupting or distracting cabin crew from their safety duties. Additionally, federal law provides for criminal fines and imprisonment of passengers who interfere with the performance of a crewmember's duties by assaulting or intimidating that crewmember. U.S. airlines have policies about wearing face coverings in the airplane cabin. Please be sure to check with your airline prior to flight for further guidance

9. **What happens if there is a sick passenger on an international or domestic flight?**

   Under current federal regulations, pilots must report all onboard illnesses and deaths to CDC before arriving to a U.S. destination. According to CDC illness response protocols, if a sick traveler has a serious contagious disease during air travel, CDC works with local and state health departments and international public health agencies to contact exposed passengers and crew.

   Be sure to give the airline your current contact information when booking your ticket so you can be notified if you are exposed to a sick traveler on a flight.

   For more information, see the CDC web page Protecting Travelers' Health from Airport to Community: Investigating Contagious Diseases on Flights.

10. **Can flying on an airplane increase my risk of getting COVID-19?**

    Most airlines and airports are enhancing their cleaning and passenger health protection protocols due to COVID-19, but air travel requires spending time in security lines and airport terminals, which can bring you in close contact with other people and frequently touched surfaces. This may increase your risk for exposure to the virus that causes COVID-19.

    Most viruses and other germs do not spread easily on flights because of how air circulates and is filtered on airplanes (the air in an airplane cabin is fully renewed every 2-3 minutes, which is more frequent than most other locations in which people spend time). However, social distancing is difficult on flights, and you may have to sit near others, sometimes for hours. This makes the wearing of a face mask an important additional measure against exposing yourself or others to COVID-19.   It is important to follow basic guidance on wearing a face mask and frequently washing your hands or using hand sanitizer with at least 60% alcohol. For more information see CDC's Travel During the COVID-19 Pandemic.

## International Travel Requirements

1. **What should passengers provide to airlines to show they are fully vaccinated?**

   Both U.S. citizens and foreign nationals who are fully vaccinated should travel with proof of

## Should I wear a mask in the airport and on the plane? What forms of mask are acceptable?

Yes, Federal law requires each person to wear a mask at all times throughout the flight, including during boarding and deplaning. Refusing to wear a mask is a violation of federal law and may result in denial of boarding, removal from the aircraft, and/or penalties under federal law. On the aircraft, if wearing oxygen masks is needed because of loss of cabin pressure or other event affecting aircraft ventilation, masks should be removed to accommodate oxygen masks.

Masks are also required in the airport.

If you forget your mask at home, a mask will be available for you.

Acceptable forms of masks

In accordance with the Federal law, a properly worn mask completely covers the nose and mouth, is secured to the head with ties, ear loops, or elastic bands that go behind the head, and fits snugly against the side of the face. Cloth masks should be made with two or more layers of a washable, breathable fabric. Neck gaiters (also called multi-bands) may be worn as masks as long as they have two layers of fabric or may be folded to make two layers and cover the nose and mouth and are secured under the chin.

In addition, if your mask meets the requirements noted above, the following are acceptable:

- Clear masks or cloth masks with a clear plastic panel to facilitate communication with people who are hearing impaired or others who need to see a speaker's mouth to understand speech.
- Medical masks and N95 respirators.

The following are some examples of coverings that are not accepted:

- Masks not made of a solid piece of material, including those with slits, exhalation valves, or punctures
- Face shields (face shields may be worn in addition to a mask that meets the above required attributes)
- Bandanas, scarves, ski masks, or balaclavas
- Shirt or sweater collars (e.g., turtleneck collars) pulled up over the mouth and nose
- Masks made from a single layer or thin fabric that do not block light
- Masks that do not fit properly (large gaps, too loose or too tight)

Exemptions to face coverings

- Young children under the age of 2.
- Beginning March 14, 2021, Southwest Airlines will consider applications for exemptions from this mask requirement from Passengers with a disability who cannot wear a mask, or who cannot safely wear a mask because of the disability.

**Several conditions apply that must be completed/adhered to prior to travel and receiving a mask exemption.** For more details on this policy and for access to the submission form, please visit here.

**When the Federal law requires Customers to wear a mask**

- Customers will be required to wear a mask over their nose and mouth at all times during their Southwest travel experience—while checking in, boarding, while in flight, deplaning, retrieving baggage; and any other time they may engage with a Southwest Employee or another Customer. Customers are required to wear a mask in order to board the plane.
- The following are times when a Customer may need to briefly remove their mask:
  - When necessary for identity verification purposes such as during Transportation Security Administration screening or when asked to do so by our Employees or any law enforcement official
  - While eating, drinking, or taking oral medications. Prolonged periods of mask removal are not permitted for eating or drinking; the mask must be worn between bites and sips.
  - While communicating with a person who is hearing impaired when the ability to see the mouth is essential for communication
  - If, on an aircraft, wearing of oxygen masks is needed because of loss of cabin pressure or other event affecting aircraft ventilation
  - If unconscious (for reasons other than sleeping), incapacitated, unable to be awakened, or otherwise unable to remove the mask without assistance



Español

**Southwest**

FLIGHT | HOTEL | CAR | VACATIONS    SPECIAL OFFERS    RAPID REWARDS®

# Customers with Disabilities



Notice of Disability

Assistance in the Airport

Security Screening

Wheelchairs & Other Devices

Allergies

Cognitive Disabilities

Deaf or Hard of Hearing

Blind Or Low Vision

Medication

Trained Service Animals

Medical Oxygen

Portable Oxygen Concentrators

Non-Passenger Escort

Mask Exemptions

Your Rights

**Exemption to Federal Mask Requirement on Southwest Airlines**

Federal law requires each person, 2 years of age and older, to wear a mask at all times throughout the flight, including during boarding and deplaning. Refusing to wear a mask is a violation of federal law and may result in denial of boarding, removal from the aircraft, and/or penalties under federal law.

Southwest Airlines will consider applications for exemptions from this mask requirement from Passengers with a disability who cannot wear a mask, or who cannot safely wear a mask because of the disability.

Per guidance from the U.S. Department of Transportation, airlines are permitted to impose certain requirements or conditions on a person requesting an exemption from the mask requirement.

Please comply with the following pre-travel steps:

At least seven (7) days prior to the Passenger's planned date of travel, a Passenger requesting a mask exemption for travel on Southwest Airlines must complete and submit the following via Southwest.com>Contact Us>Send a Message.>Email Us: Comment/Question>Disability>Future Travel Assistance:

1. A fully completed copy of this form executed by the Passenger making the request, or if the Passenger requesting a mask exemption is a minor child, the parent or guardian of such minor child; and

2. A signed letter from the requesting Passenger's Medical Physician on the Physician's letterhead stating that the Passenger with a disability has a recognized medical condition precluding the wearing or safe wearing of a mask because of that disability.

Once Southwest Airlines receives a mask exemption application in line with the above criteria, at Southwest's request to Passenger, Passenger may undergo a private medical screening (over the phone) with a third-party medical provider (Southwest Airlines' vendor StatMD).

If Southwest preliminarily approves a mask exemption after reviewing the Passenger's PDF document and the Medical Physician's letter and after receiving the third party medical provider's affirmation for travel, if required, Southwest will contact you at the phone number or email address provided below to discuss any need to change your travel dates and/or flights and remind you of the need to obtain a qualifying COVID negative viral test.

No later than 24 hours prior to the Passenger's scheduled departure(s), Passenger must provide evidence of Passenger's qualifying COVID negative viral test result. A qualifying COVID negative viral test result is defined as:

> A physical or electronic documentation of a qualifying COVID negative viral test taken within three (3) calendar days preceding the Passenger's scheduled date of travel. A viral test means a viral detection test for current infection, which is a nucleic acid amplification test with observation approved or authorized by the relevant national authority for the detection of SARS-CoV-2.

Note: Roundtrip travel will require an additional qualifying COVID negative viral test result taken within three (3) calendar days preceding the Passenger's scheduled date of return travel and submitted no later than 24 hours prior to the Passenger's scheduled departure, unless the Passenger's return flight is within three (3) calendar days of the date of the initial negative COVID-19 departure test.

**Join the Discussion**
Share knowledge and learn from travelers just like you.
Community

**Need Help?**
We're a click away.
Contact Us

 **How May We Help You?** Search Customer Service

Enter Keyword(s)    [ Search ]

---

Need help?
# Contact Us
Customer Service | Help Center

Subscribe
**Wanna receive email from us?**
Sign up to get the latest deals.

Connect with us

Discussion Forum and Stories

Mobile Apps

**About Southwest**
What's New
Press Room
Investor Relations

**Flying Southwest**
Flying with Southwest
Rapid Rewards®
International Travel

**Southwest Products**
Southwest Fares
EarlyBird Check-in®
Business Select®

**Customer Service**
Help Center
Sitemap
Customer Commitments



# Southwest

FLIGHT | HOTEL | CAR | VACATIONS    SPECIAL OFFERS    RAPID REWARDS®    🔍

Español 🌐

# Customers with Disabilities

**Notice of Disability**

Assistance in the Airport

Security Screening

Wheelchairs & Other Devices

Allergies

Cognitive Disabilities

Deaf or Hard of Hearing

Blind Or Low Vision

Medication

Trained Service Animals

Medical Oxygen

Portable Oxygen Concentrators

Non-Passenger Escort

Mask Exemptions

Your Rights

## Advance notice of disability

Customers with disabilities are not required to provide advance notice of the need for assistance; however, doing so helps us better prepare for the number of Customers who will need our help.

We give Customers the opportunity to proactively notify Southwest Airlines of any specific disability-related needs during and after booking.

When booking a new reservation, Customers may use the "Special Assistance" link on the Passenger & Payment Info page to indicate that he/she requires assistance. When booking online, Customers may notice that there is a link (identified with an italicized "i") that directs the user to the details of our policies for assisting Passengers with disabilities. After the Customer has selected his/her option(s), the Customer should scroll down and complete the booking process.

If a reservation has already been created, simply click on the "FLIGHT | HOTEL | CAR | VACATIONS" link located on the top of our home page. Then, select "Manage Reservations" from the "Flight" column, input the required information, and select "Search." From that page, click on the "Special Assistance" link under the Passenger name. Once a Customer has added his/her option(s), the Customer should click "Update Information" and the information will be saved to the Customer's reservation.

Customers may also advise us of any disability-related travel needs at the time of booking by telephone or, if a reservation has already been made, by calling 1-800-I-FLY-SWA (1-800-435-9792) prior to travel.

We recommend that Customers arrive at the airport no later than the recommended airport arrival time. If traveling with a power wheelchair, in the event that we need to prepare the wheelchair for stowage, we may ask that Customers relinquish his/her power wheelchair up to an hour in advance of departure. In this case, the Customer will be transferred to an airport wheelchair until boarding begins.

If traveling in a group of 10 or more Customers who use wheelchairs, please advise us at least 24 hours in advance by calling 1-800-I-FLY-SWA (1-800-435-9792) so that we can ensure adequate staffing and room in the cargo compartment of the aircraft for the wheelchairs.

**Join the Discussion**
Share knowledge and learn from travelers just like you.
Community 🔗

**Need Help?**
We're a click away.
Contact Us

🔍 **How May We Help You?** Search Customer Service

[Enter Keyword(s)]    [Search]

## Need help?
# Contact Us
Customer Service | Help Center

## Subscribe
# Wanna receive email from us?
Sign up to get the latest deals.

## Connect with us 🔗
Discussion Forum and Stories

📱 Mobile Apps

**About Southwest**
What's New
Press Room 🔗
Investor Relations 🔗

**Flying Southwest**
Flying with Southwest
Rapid Rewards®
International Travel

**Southwest Products**
Southwest Fares
EarlyBird Check-in®
Business Select®

**Customer Service**
Help Center
Sitemap
Customer Commitments

# Passenger Application for Exemption to Federal Mask Requirement on Southwest Airlines

Please complete the information below and submit to Southwest Airlines for review of a mask exception application.  You are submitting the information below and as outlined in this Application for Exemption in order for Southwest to evaluate and process your request for an exemption from the federal mask mandate while flying with Southwest Airlines. Southwest Airlines may share this information with a third-party medical provider, the CDC and other government authorities, and our agents, vendors, and service providers for purposes of managing and fulfilling your travel reservations and assisting Southwest Airlines with the evaluation and processing of your application for an exemption.

Please check the box below that applies:

[X] I am completing this form for myself.

- I am completing this form for the minor named herein.  I am either the parent or guardian of the minor child and have the authority to and, by completing this form, hereby attest to the information provided below.

Passenger First Name: __YVONNE__

Passenger Middle Initial: __M__

Passenger Last Name: __MARCUS__

Contact Email address: __uri@ntcf.org__

Contact Phone number: __909-833-0065__

Reason for Mask Exception Request:
**Migraines, Skin Cancer on bridge of nose • healing after surgery, caused by prolonged masking. Skin sores on lower eyelids, respiratory distress with prolonged masking.**

Is flight already booked? Yes __X__ No____

If flight is already booked, please include the following information:

Date(s) of Travel: __June 16, 24, 28 and July 5__

City Pair: __BOI DEN, HOU PHX, LAX LAS, LAS LAX__

Confirmation Number (if flight already booked): **2NJJSB + 2NPBTM + 2NVJ56**

Does Passenger possess a WN Employee ID? **No**

If Passenger possesses a WN Employee ID, please include the following information:

WN Employee ID of Traveling Passenger: _____

By submitting this request and signing below, I [name of passenger or authorized representative] [on behalf of _____] have read and understand the disclosures and requirements included above pertaining to my application to receive an exemption from the federal requirement to wear a mask while flying on Southwest Airlines, including, without limitation, Southwest's collection, use, ~~and sharing of information.~~

_____
Passenger Signature or Signature of Passenger Parent or Guardian

**YVONNE MARCUS**
_____
Printed Name of Passenger or Parent or Guardian

Date: **25 Feb 2022**

## Passenger Application for Exemption to Federal Mask Requirement on Southwest Airlines

Please complete the information below and submit to Southwest Airlines for review of a mask exception application.  You are submitting the information below and as outlined in this Application for Exemption in order for Southwest to evaluate and process your request for an exemption from the federal mask mandate while flying with Southwest Airlines. Southwest Airlines may share this information with a third-party medical provider, the CDC and other government authorities, and our agents, vendors, and service providers for purposes of managing and fulfilling your travel reservations and assisting Southwest Airlines with the evaluation and processing of your application for an exemption.

Please check the box below that applies:

**X**   I am completing this form for myself.

•   I am completing this form for the minor named herein.  I am either the parent or guardian of the minor child and have the authority to and, by completing this form, hereby attest to the information provided below.

Passenger First Name:   **URI**

Passenger Middle Initial: _____

Passenger Last Name:   **MARCUS**

Contact Email address:   **uri@ntcf.org**

Contact Phone number:   **909-833-0065**

Reason for Mask Exception Request:

**Sensory Processing Disorder, Reactive Airways Disease, Respiratory distress with prolonged masking.**

_____

Is flight already booked?  Yes___**X**___ No_____

If flight is already booked, please include the following information:

Date(s) of Travel: **June 16, 24, 28 and July 5**

City Pair: __**BOI DEN, HOU PHX, LAX LAS, LAS LAX**__

Confirmation Number (if flight already booked): **2NJJSB + 2NPBTM + 2NVJ56**

Does Passenger possess a WN Employee ID? **No**

If Passenger possesses a WN Employee ID, please include the following information:

WN Employee ID of Traveling Passenger: _____

By submitting this request and signing below, I [name of passenger or authorized representative] [on behalf of _____] have read and understand the disclosures and requirements included above pertaining to my application to receive an exemption from the federal requirement to wear a mask while flying on Southwest Airlines, including, without limitation, Southwest's collection, use, ~~and sharing of information.~~

Passenger Signature or Signature of Passenger Parent or Guardian

**URI MARCUS**

Printed Name of Passenger or Parent or Guardian

Date: **25 Feb 2022**

From: **Southwest Airlines** no-reply@southwest-communications.com
Subject: Southwest Airlines Response to your Inquiry (Case #40581188)
Date: 28 February 2022 at 2:01
To: uri@ntcf.org



Dear Uri,

Southwest has received Uri and Yvonne's applications for exemption to the federal mask mandate. We appreciate this opportunity to respond.

After evaluating the information that you provided, and based on guidance from our third-party medical provider, Uri and Yvonne's applications for exemption have been approved.? In order to travel without a mask, you will need to submit via Southwest.com no later than 24 hours prior to scheduled departure evidence of Uri and Yvonne's qualifying COVID-19 negative viral test result described below:

• A physical or electronic documentation of a qualifying COVID-19 negative viral test taken within three (3) calendar days preceding the Customer's scheduled date of travel. A viral test means a viral detection test for current infection, which is a nucleic acid amplification test with observation approved or authorized by the relevant national authority for the detection of SARS-CoV-2.

Please include case number 40581188 when submitting the documentation. Furthermore, we ask that you bring a copy of Uri and Yvonne's COVID-19 negative viral test result to the airport to ensure a smooth experience.

We look forward to seeing your family onboard soon!

Sincerely,
Devan Daigle
Southwest Airlines

southwest.com | Flight | Hotel | Car | Rapid Rewards | Travel Tools

 

Hi, Uriel  2,360 points  **My Account**  |  **Log out**  Español



FLIGHT | HOTEL | CAR | VACATIONS   SPECIAL OFFERS   RAPID REWARDS®   🔍

✅ **Your cancellation was successful**
This flight won't be the same without you!

# Cancellation Confirmation

✔ Select flights ——— ✔ Review ——— ✔ Confirmation



Confirmation # 2NVJ56

| | | | | | |
|---|---|---|---|---|---|
| ✕ # 3294 **LAX** *to* **LAS** | DEPART **6/28** Tuesday | LAX **10:45** AM → | LAS **12:00** PM | Duration 1h 15m | Nonstop |
| ✕ # 174 **LAS** *to* **LAX** | RETURN **7/05** Tuesday | LAS **3:40** PM → | LAX **4:55** PM | Duration 1h 15m | Nonstop |



| PASSENGERS | EXTRAS | FARE |
|---|---|---|
| **Uri Marcus**<br>Rapid Rewards® Acct # ▇▇▇▇<br>Known Traveler # On file | — | Anytime |
| **Yvonne M Marcus**<br>Rapid Rewards® Acct # ▇▇▇▇<br>Known Traveler # On file | — | Anytime |

## Funds summary

  **Refund requested**

$**405.92**
Refunded to the original form of payment

**Book another flight**



3:01 PM, 2 May Southwest Cancellation

Hi, Uriel   2,360 points   **My Account** | **Log out**   Español 

 **Southwest**

FLIGHT | HOTEL | CAR | VACATIONS       SPECIAL OFFERS       RAPID REWARDS®       🔍

✓ **Your cancellation was successful**
This flight won't be the same without you!

# Cancellation Confirmation



| Confirmation # 2NPBTM | | | | |
|---|---|---|---|---|
| ⊗ # 3237 **HOU** *to* **PHX** | DEPART **6/24** Friday | HOU **5:25** AM → | PHX **6:00** AM | Duration 2h 35m ●━━━● Nonstop |

| PASSENGERS | EXTRAS | FARE |
|---|---|---|
| **Uri Marcus** Rapid Rewards® Acct # ▓▓▓ Known Traveler # On file | — | Anytime |
| **Yvonne M Marcus** Rapid Rewards® Acct # ▓▓▓ Known Traveler # On file | — | Anytime |



# Funds summary

🔵 **Refund requested**

$**387.98**
Refunded to the original
form of payment

**Book another flight**

 

Hi, Uriel  2,360 points  **My Account** | Log out  Español 🌐

**Southwest** FLIGHT | HOTEL | CAR | VACATIONS   SPECIAL OFFERS   RAPID REWARDS® 🔍

 **Your cancellation was successful**
This flight won't be the same without you!

# Cancellation Confirmation

Confirmation # **2NJJSB**



| # 2972 **BOI** *to* **DEN** | DEPART **6/16** Thursday | BOI **12:50** PM → | DEN **2:35** PM | Duration 1h 45m Nonstop |

| PASSENGERS | EXTRAS | FARE |
|---|---|---|
| Uri Marcus | — | Anytime |
| Rapid Rewards® Acct # ████ Known Traveler # On file | | |
| Yvonne M Marcus | — | Anytime |
| Rapid Rewards® Acct # ████ Known Traveler # On file | | |

# Funds summary



**Refund requested** — **$231.96** Refunded to the original form of payment

**Travel funds held for future use**
Confirmation ████
Expiration: 01/07/2023
*Note: Hang on to this confirmation number — you'll need it to access these funds in the future.*
**$150.00** Funds held for future use

View travel funds    **Book another flight**

$5,338.00 USD
w/ Tax and Fees

Sign In    Join Now

Plaintiffs' Exhibit 21

Flights > Travelers > **Itinerary** > Seats > Payment > Confirmation

Please check the latest COVID-19 entry restrictions in Japan before booking your flight.

See restrictions

Please check the latest COVID-19 restrictions in Tahiti before completing your booking.

See restrictions

# Review Your Itinerary

Below is your itinerary for Honolulu, Oahu. Get ready.



URI          YVONNE



Thursday, July 7, 2022                                                    5h 45m

LAX                                            HA 9                         HNL
                                               5h 45m
Los                                                                        Honolulu,
Angeles,                                                                   Oahu
California
6:05PM                                                                     8:50PM

Thursday, July 14, 2022                                                   5h 25m

HNL                                            HA 10                        LAX
                                               5h 25m
Honolulu,                                                                  Los
Oahu                                                                       Angeles,
                                                                           California
8:00AM                                                                     4:25PM

Message us

| **ITINERARY** | Depart | Los Angeles, California to Honolulu, Oahu · |
|---|---|---|
| | | Thursday, July 7, 2022 |
| | | HA 9   LAX to HNL   6:05PM - 8:50PM   5h 45m |
| | Return | Honolulu, Oahu to Los Angeles, California · |
| | | Thursday, July 14, 2022 |
| | | HA 10 HNL to LAX   8:00AM - 4:25PM   5h 25m |

**Flight Details & Options**

URI MARCUS

LAX to HNL · Roundtrip Fare                                    $2,619.22

Taxes and Fees   _$49.78

| Flight # | Route | Seat | Seat Type | Options |
|---|---|---|---|---|
| HA 9 | LAX - HNL | -- | Coach | -- |
| HA 10 | HNL - LAX | -- | Coach | -- |

Subtotal: **$2,669.00 USD**
or from **$262/mo**

YVONNE MARCUS

LAX to HNL · Roundtrip Fare                                    $2,619.22

Taxes and Fees   _$49.78

| Flight # | Route | Seat | Seat Type | Options |
|---|---|---|---|---|
| HA 9 | LAX - HNL | -- | Coach | -- |
| HA 10 | HNL - LAX | -- | Coach | -- |

Subtotal: **$2,669.00 USD**
or from **$262/mo**

| **Grand Total** | Your Total Price: | **$5,338.00 USD** |
|---|---|---|
| | | or from **$523/mo** |

Message us

$5,338.00 USD
w/ Tax and Fees

Sign In | Join Now

Flights > Travelers > Itinerary > **Seats** > Payment > Confirmation

# Select Your Seats



Flight 1
LAX To HNL

Flight 2
HNL To LAX

First Class

Los Angeles (LAX) To Honolulu (HNL)

Thu, Jul 7

Duration: 5h 45m

Flight #: HA 9

Aircraft: Airbus A330
Los Angeles (LAX) To Honolulu (HNL)

2 Guests

First Class

Treat yourself to our premium cabin. Learn More

Extra Comfort / Main Cabin

Message us

## Extra Comfort

**+ $129 to $164 per seat**

Treat yourself to extra legroom, priority boarding, and more amenities to make your travel experience extra comfortable. Learn More



Message us



## Main Cabin

Experience Hawaiian-
style hospitality in our
spacious cabins.

Learn More

Legend

First Class

Standard

Unavailable

Select

Exit

Legend

First Class          Standard

Unavailable      Select

Exit

If you do not wish to choose a seat, you can skip this step.    **Skip Seat Selection**

Seats:    25A      25B                          Next Flight

Message us

$5,338.00 USD
w/ Tax and Fees

Sign In | Join Now

Flights > Travelers > Itinerary > **Seats** > Payment > Confirmation

# Select Your Seats



Flight 1
LAX To HNL

Flight 2
First Class HNL To LAX

Honolulu (HNL) To Los Angeles (LAX)

Thu, Jul 14

Duration: 5h 25m

Flight #: HA 10

Aircraft: Airbus A330
Honolulu (HNL) To Los Angeles (LAX)

2 Guests

First Class

Treat yourself to our premium cabin. Learn More

Extra Comfort / Main Cabin

Message us

Extra Comfort

+ $91 to $111 per seat
Treat yourself to extra
legroom, priority
boarding, and more
amenities to make your
travel experience extra
comfortable. Learn More

Message us



## Main Cabin

Experience Hawaiian-style hospitality in our spacious cabins.

Learn More

### Legend

🍾 First Class        🟪 Standard        ✕ Unavailable

🔵 Select        ◀ Exit

---

### Legend

First Class        Standard

Unavailable        Select

Exit

---

If you do not wish to choose a seat, you can skip this step.    **Skip Seat Selection**

---

Seats:    26A              Previous Flight

26B              Continue

---

Message us

Sign In    Join Now

Flights > Travelers > Itinerary > Seats > **Payment** > Confirmation

# Review and Pay

Your destination awaits. If the itinerary below looks good, then it's time to pay for your trip.

## Your Trip To Honolulu, Oahu

LAX To HNL (Roundtrip). July 7, 2022 — July 14, 2022
with URI MARCUS, YVONNE MARCUS

Edit Itinerary

| ITINERARY | | | |
|---|---|---|---|
| | Depart | Los Angeles, California to Honolulu, Oahu ·<br>Thursday, July 7, 2022 | |
| | | HA 9   LAX to HNL   6:05PM - 8:50PM | 5h 45m |
| | Return | Honolulu, Oahu to Los Angeles, California ·<br>Thursday, July 14, 2022 | |
| | | HA 10 HNL to LAX   8:00AM - 4:25PM | 5h 25m |

Message us

**Flight Details & Options**

URI MARCUS

LAX to HNL · Roundtrip Fare

$2,619.22

Taxes and Fees   $49.78

| Flight # | Route | Seat | Seat Type | Options |
|----------|-------|------|-----------|---------|
| HA 9 | LAX - HNL | 25A | Coach | -- |
| HA 10 | HNL - LAX | 26A | Coach | -- |

Subtotal: **$2,669.00 USD**
or from **$262/mo**

YVONNE MARCUS

LAX to HNL · Roundtrip Fare

$2,619.22

Taxes and Fees   $49.78

| Flight # | Route | Seat | Seat Type | Options |
|----------|-------|------|-----------|---------|
| HA 9 | LAX - HNL | 25B | Coach | -- |
| HA 10 | HNL - LAX | 26B | Coach | -- |

Subtotal: **$2,669.00 USD**
or from **$262/mo**

**Trip Insurance**

Protect Your $5,338.00 Trip



○ **Yes,** add trip insurance for $173.49 per person ($346.98 total). ✓
**Recommended**

👥 7,474 people protected their trip in the last 7 days.

**Protection for all 5,106 miles of your trip to Honolulu**

- ✓ **Rest assured** knowing you can get back up to 100% for covered trip cancellation and trip interruption
- ✓ **Improve your experience** with benefits for eligible meals and accommodations due to a covered travel delay
- ✓ **Enjoy peace of mind** with protection for lost, damaged or delayed luggage throughout your entire trip
- ✓ **Get help when you need it** with our 24/7 assistance in the event of a travel or medical emergency

● **Your trip is not protected.**

"I would strongly recommend this travel insurance to all my friends and family because no one can foresee when an emergency or sickness can happen when you are on vacation or abroad." — *Lilwantie R., June 2021 (Age: 56)*

⚠ COVID: More about coverage, limitations, & exclusions

Message us

Insurance Company or BCS Insurance Company. Plan incl. insurance & assistance services. Terms & exclusions (incl. for pre-existing conditions) apply. <u>Plan & Pricing details, disclosures</u>

| **Grand Total** | Your Total Price: | **$5,338.00 USD** <br> or from **$523/mo** |
| --- | --- | --- |



Earn a **$300** Statement Credit*

*Plus*, **35,000** bonus HawaiianMiles after qualifying purchases

<u>Apply Now</u>     <u>*See Terms & Conditions</u>

You Pay Today
$5,338.00
Future Hawaiian Airlines Mastercard® Statement Credit
-$300.00

Cost of ticket after Statement Credit
$5,038.00

## Payment Information

Message us

2/7/22, 9:16 AM                                    Frequently Asked Questions | US Department of Transportation

🇺🇸 An official website of the United States government  Here's how you know ⌄

ⓘ The latest general information on the Coronavirus Disease 2019 (COVID-19) is available on Coronavirus.gov. For USDOT specific COVID-19 resources, please visit our page.

Home \ flyhealthy.gov

# DOT — Dept. of Transportation

**Frequently Asked Questions**          **Scroll down to question #8**

New International Air
Travel COVID-19 Policy

Plan Your Travel

At the Airport

Aboard the Aircraft

**Arrival at Your Destination**

Returning Home

Frequently Asked
Questions

## Related Links

- Watch a video on your
  Passenger Experience
- CDC Resources for
  Travelers
- U.S. Department of State
- Transportation Security
  Administration
- Coronavirus.gov
- UNWTO/IATA Destination
  Tracker
- COVID-19 & Travelers
  (IATA)
- Fly Healthy, Fly Smart
  (Airlines for America)

## Related Documents

- Runway to Recovery 1.1



1. **Can I wear a mask to the TSA checkpoint?**

   Yes, travelers must wear a mask throughout their travel journey. Travelers may be asked to adjust their mask for identity verification or remove it briefly if it alarms the security screening equipment.

2. **Can I request that TSA officers use new gloves during my screening?**

   Yes. TSA officers are required to wear nitrile gloves when conducting screening duties and to change them following each pat-down and upon passenger request.

3. **Can I bring my own filled water bottle through the TSA checkpoint?**

   No, you are not permitted to bring your own filled water bottle that exceeds 3.4 ounces through the checkpoint. Many airports now offer touchless refilling stations past security that enable travelers to fill empty bottles and containers they bring from home. Consult the directory or ask a local official for locations in your departure airport.

4. **Do I need to remove electronics from my carry-on bags?**

   Yes, you should plan to remove personal electronic devices larger than a cell phone from your carry-on bag and put them in a separate bin with nothing placed on or under them for security screening. (This does not apply to TSA PreCheck™ passengers.) Some airports are using new Computed Tomography (CT) technology that allows you to keep electronics in your carry-on luggage. Passengers will be advised on the use of CT scanners at the checkpoint and of any alternate procedures.

5. **Can TSA still open and go through my checked luggage? What precautions are being taken to reduce possible contamination?**

   Yes, TSA may inspect your checked baggage during the screening process. If your property is physically inspected, TSA will place a notice of baggage inspection inside your bag. To reduce the likelihood of contamination, TSA officers are changing their gloves after each bag check and conducting enhanced sanitation of baggage screening areas.

Frequently Asked Questions | US Department of Transportation

6. **My driver's license has expired and I haven't been able to renew it during the pandemic. Will I still be able to fly?**

   Yes. If your driver's license or state-issued ID expired on or after March 1, 2020, and you are unable to renew, you may still use it as acceptable identification at the checkpoint. TSA will accept expired driver's licenses or state-issued IDs for a year after expiration.

7. **What is the status of REAL ID enforcement in light of COVID-19?**

   The Department of Homeland Security has extended the deadline for REAL ID enforcement to October 1, 2021. Visit the REAL ID website for more information.

8. **What happens if a passenger does not comply with an airline's mask policies and/or causes an inflight disruption or distraction for the crew?**

   ==While the failure to wear a face covering is not itself a federal violation,== federal law prohibits physically assaulting or threatening to physically assault aircraft crew or anyone else on a civil aircraft. Passengers are subject to civil penalties for such misconduct, which can threaten the safety of the flight by disrupting or distracting cabin crew from their safety duties. Additionally, federal law provides for criminal fines and imprisonment of passengers who interfere with the performance of a crewmember's duties by assaulting or intimidating that crewmember. U.S. airlines have policies about wearing face coverings in the airplane cabin. Please be sure to check with your airline prior to flight for further guidance

9. **What happens if there is a sick passenger on an international or domestic flight?**

   Under current federal regulations, pilots must report all onboard illnesses and deaths to CDC before arriving to a U.S. destination. According to CDC illness response protocols, if a sick traveler has a serious contagious disease during air travel, CDC works with local and state health departments and international public health agencies to contact exposed passengers and crew.

   Be sure to give the airline your current contact information when booking your ticket so you can be notified if you are exposed to a sick traveler on a flight.

   For more information, see the CDC web page Protecting Travelers' Health from Airport to Community: Investigating Contagious Diseases on Flights.

10. **Can flying on an airplane increase my risk of getting COVID-19?**

    Most airlines and airports are enhancing their cleaning and passenger health protection protocols due to COVID-19, but air travel requires spending time in security lines and airport terminals, which can bring you in close contact with other people and frequently touched surfaces. This may increase your risk for exposure to the virus that causes COVID-19.

    Most viruses and other germs do not spread easily on flights because of how air circulates and is filtered on airplanes (the air in an airplane cabin is fully renewed every 2-3 minutes, which is more frequent than most other locations in which people spend time). However, social distancing is difficult on flights, and you may have to sit near others, sometimes for hours. This makes the wearing of a face mask an important additional measure against exposing yourself or others to COVID-19.   It is important to follow basic guidance on wearing a face mask and frequently washing your hands or using hand sanitizer with at least 60% alcohol. For more information see CDC's Travel During the COVID-19 Pandemic.

## International Travel Requirements

1. **What should passengers provide to airlines to show they are fully vaccinated?**

   Both U.S. citizens and foreign nationals who are fully vaccinated should travel with proof of



Hawaiian Airlines airport employees are trained to identify and assist people showing symptoms of illness, such as fever, nausea and respiratory issues, while minimizing the risk of exposure to themselves and others.

Face masks

- Hawaiian Airlines airport employees wear face masks when interacting with guests.
- Federal law requires that all guests two years and older wear a mask at the airport, while boarding, through the duration of the flight and while deplaning at their destination. Refusing to wear a mask is a violation of federal law and may result in denial of boarding, removal from the aircraft and/or penalties under federal law.
- Masks worn during travel must meet **CDC's requirements**, including:
  - The mask must completely cover the nose and mouth and should fit snugly against the side of the face, secured to the head with ties or ear loops. If gaiters are worn, they should have two layers of fabric or be folded to make two layers.
  - Cloth masks should be made with two or more layers of a breathable fabric that is tightly woven (i.e., fabrics that do not let light pass through when held up to a light source).
  - Masks should be a solid piece of material without vents, mesh, slits, exhalation valves, punctures, or other obviously transparent cloth

coverings.

- ○ Scarves, ski masks, balaclavas and bandannas are not acceptable forms of face masks.
- Guests must wear their masks at all times except while eating, drinking, or taking oral medications for brief periods. Prolonged periods of mask removal are not permitted for eating or drinking; masks must be worn between bites and sips.
- Face shields or goggles cannot be used in lieu of a face mask, but may be used in addition to an appropriate mask.
- Personal air purifiers can be brought on board, but cannot be used or charged on board and must be stowed away properly.
- Guests who are unable to wear a face mask due to a medical condition or disability will be required to complete an assessment with a medical professional via phone at the airport. We recommend arriving at the airport early with ample time to complete the assessment, as the process may take more than one hour, and your flight will not be held. Please notify one of our Guest Services Agents as soon as you are ready to complete the medical assessment. If you are unable to meet this requirement, we recommend that you reconsider your travel. Please note that any face covering exemptions apply only to travel on Hawaiian Airlines.

## Disinfecting common areas

- We disinfect our common areas, such as our counters and kiosks, multiple times each day.

## Hand sanitizer



- Hand sanitizers are readily available for travelers at airports statewide and on the mainland.
- TSA is allowing passengers to bring liquid hand sanitizer up to 12 ounces in carry-on bags until further notice.

## Airport lounges

- We have temporarily closed the Kauai and Hawaii Island Premier Club locations. **The Plumeria Lounge** and **Premier Club** location at Honolulu's Daniel K. Inouye International Airport have reopened, as well as the Premier Club location at Kahului Airport in Maui.

Our primary concern is always the health and safety of our guests and employees. In line with recommendations by leading public health authorities, we have reinforced and enhanced cleaning procedures across our business, including regularly reviewing our safety measures to align with new research as it becomes available. Recent studies from respected researchers such as the **Harvard T.H. Chan School of Public Health** and the **Department of Defense** have validated that the risk of viral transmission on board a commercial aircraft is extremely low.

**At the Airport** | **On Board Our Aircraft** | **Changes to In-Flight Services**

**At the Airport**
**On Board Our Aircraft**
**Changes to In-Flight Services**

At the airport

15:09, Feb 25
You: Do you have an email I can write to to request a mask exemption for an upcoming itinerary?
Info: Mahalo for contacting Hawaiian Airlines. Our messaging service is currently closed and will re-open at 5:00AM HST. For immediate assistance, please contact us at 1-800-367-5320 or chat with us at
https://www.hawaiianairlines.com/contact-us
Info: You've been connected to an agent.
15:32, Feb 25
Reese: Aloha, this is Reese. We apologize for the delay. Due to the volume of text we received, our Contact Center is experiencing extended wait times. We appreciate your patience and understanding. May I know the reason for a request for mask exemption please?
15:34, Feb 25
You: The reason? We are medically disabled and are unable to wear masks. Do you want the specific medical conditions that the CDC lists, in order to qualify for the exemption?
15:36, Feb 25
Reese: Upon checking guests who are unable to wear a face covering due to a medical condition or disability will be required to complete a medical assessment with MedLink at the airport in order to be granted an exemption.
15:42, Feb 25
You: That sounds ok, but do you really expect me to pay your airline $5,338 for two tickets, and then fly from Jerusalem Israel to LAX, and then go to the desk and have your agents say, "Sorry, but we are not going to grant you your exemptions." Get me an email to your MedIink people, or a phone number. I want the exemptions or provisional exemptions before I ever get there.
15:44, Feb 25
You: I am online now, ready to book the itinerary for 7 Jul 2022
15:44, Feb 25
Reese: I understand your concern. However, we have limited access to airport process. Our Safe Travel will be better able to assist you at 1-855-599-0888 between 10 am and 10 pm.
15:45, Feb 25
You: Ok. What time is is now, where they are?
15:46, Feb 25
Reese: Our current time is 3:45am HST.
15:46, Feb 25
You: So 10 am HST, in about 6 hours from now?
15:51, Feb 25
Reese: Yes, that is correct.
15:52, Feb 25
You: Ok.Thank you for your assist. Have a nice day.

Contact Us  /  Email Us  Ask a Question

# Ask a Question

*\* Required*

Topic *

Guest with Disabilities

Subtopic *

Additional Services (describe in …

Please call 1-800-367-5320 to request assistance or submit your request below. Guests with hearing or speech disabilities (TTY), please dial 711 for relay services.

## Related Topics

Guests with Disabilities

Traveling with a Service Animal

General Special Service Information

All Help Pages

## Contact Information:

First Name *

URI

Last Name *

MARCUS

Email Address *

uri@ntcf.org

## Preferred Phone Number

Country Code *

+1 USA

Phone Number *

(909) 833-0065

## Traveler Information

First Name

URI

Last Name

MARCUS

New 2nd Policy #

████████

| Confirmation Code | Ticket Number | Flight Number |
|---|---|---|
| XYZABC | 173XXXXXXXXX | HA 9 |

**Departure Date**

Thursday, 7/7/2022

| Departure City | Arrival City |
|---|---|
| Please Select | Oahu - Honolulu, HI (HNL) |

**Message** *

Both my wife and myself are requesting mask exemptions for an itinerary we would like to purchase. We do not wish to purchase until we receive some kind of assurance or notice of a provisional mask exemption. Attached are Medical summaries which document the reasons for the exemption request. Please advise.

4692 characters remaining

**Attach Document(s) - maximum file size of 5MB each. Accepted file types:.JPG, .JPEG, .DOC, .DOCX, .XLS, .XLSX, .PDF, .PNG, .GIF, .TXT**

Choose File    Mask Exemption Application U 25 Feb 2022.pdf

Choose File    Mask Exemption Application A 25 Feb 2022.pdf

Choose File    No file chosen

Submit



From: **Hawaiian Airlines Customer Support** Hawaiianair@custhelp.com
Subject: Hawaiian Airlines Reservations: Guest with Disabilities - Additional Services (describe in Message box below) [Incident: 220227-000306]
Date: 28 February 2022 at 8:38
To: uri@ntcf.org



Thank you for allowing us respond to your concerns..

Subject

**Hawaiian Airlines Reservations: Guest with Disabilities – Additional Services (describe in Message box below)**

Response By Email (Jackie) (02/27/2022 08:38 PM)
Aloha Uri,

Thank you for taking the time to contact Hawaiian Airlines.

We completely understand your circumstance, but we are unable to process your request via email.

Please be advised that guests who are unable to wear a face covering due to a medical condition or disability will be required to complete an assessment with a medical professional via phone at the airport. We recommend arriving at the airport early with ample time to complete the assessment, as the process may take more than one hour, and your flight will not be held. Please notify one of our Guest Services Agents as soon as you are ready to complete the medical assessment. If you are unable to meet this requirement, we recommend that you reconsider your travel. Please note that any face covering exemptions apply only to travel on Hawaiian Airlines or Ohana by Hawaiian.

We appreciate the opportunity to respond to your concern and thank you for choosing Hawaiian Airlines.

Mahalo,
Jackie | GZG
Hawaiian Airlines Reservations

Auto-Response By (Administrator) (02/27/2022 07:28 PM)
Aloha,

Thank you for contacting Hawaiian Airlines.

We will respond to your request as soon as possible. If you require immediate assistance, you may call us toll-free at 1-800-367-5320, 24 hours a day, 7 days a week.

If you've submitted a form to cancel your flight, there's no need to follow up. Whenever your travel may be or if we're unable to cancel your reservation before your flight, rest assured that we'll honor the applicable waiver for your reservation. We're working through these challenges and sincerely appreciate your patience.

Mahalo,
Hawaiian Airlines
Customer By CSS Email () (02/27/2022 07:28 PM)
First Name: URI
Last Name: MARCUS
Email: uri@ntcf.org

Phone: 19098330065
Address:
Address 2:
Address 3:
City:
State:
Zip:
Country:
HM#: 369342386
Pax First Name: URI
Pax Last Name: MARCUS
Travel Date: 07/07/2022
Origin:
Destination: HNL
Flight No: 9
PNR:
Ticket No:
Origin Country: United States
Category: GeneralQuestions
Topic: Guests with Disabilities
Subtopic1: Other
Subtopic2:
Environment: http://www.hawaiianairlines.com/contact-us/email/general-questions
Description:
Both my wife and myself are requesting mask exemptions for an itinerary we would like to purchase. We do not wish to purchase until we receive some kind of assurance or notice of a provisional mask exemption. Attached are Medical summaries which document the reasons for the exemption request. Please advise.

==================== application File Attachment ====================
Mask Exemption Application A 25 Feb 2022.pdf, 479705 bytes, Added to incident

==================== application File Attachment ====================
Mask Exemption Application U 25 Feb 2022.pdf, 223679 bytes, Added to incident

Reference # 220227-000306

 Date Created: 02/27/2022 07:28 PM
 Date Last Updated: 02/27/2022 08:38 PM
 Status: Solved

Plaintiffs' Exhibit 22

Date:6/16/2017
UE ID:U5N3-82J78X

Total Due:$85.00

Payments:
Card (8521)$85.00
Auth Number:02340A
Amount Paid:$85.00
Known Traveler Number (KTN):UNASSIGNED

**TSA PRE✓®**



Thank you for scheduling your appointment. Your summary is below.

**Pre-Enrolled**

**Please visit an enrollment center within 120 days to complete your enrollment.**

1. Provide required documentation and be fingerprinted.
2. Pay a non-refundable fee with a credit card, money order, company check or certified/cashier's check.

Status as of 3/22/2017.

> **Note:** In-person enrollment must be completed within 120 days of pre-enrollment date.

---

## Appointment Information

**BRING THE FOLLOWING DOCUMENT(S) TO YOUR APPOINTMENT:**

1. **Passport Book or Card**

Legal Name must match exactly on all identification documents brought to enrollment.

**Appointment Time:**
**6/16/2017 @ 10:00 AM (PDT)**
**Location:**
**Santa Ana, CA**

📍 18601 Airport Way
John Wayne Airport
Terminal C
Santa Ana, CA 92707-5200

Note: This TSA Pre✓® Enrollment Center is Pre-Security. No boarding pass is required. The Enrollment Center is located inside of John Wayne Airport, Orange County (SNA) on the Terminal C Arrivals level across from the information desk and next to the U.S. Customs exit.

Parking is available on the Departures level in the last parking garage to the right of Terminal C.

⚠ Get Email Alerts for this location

Please provide 24 hours notice when canceling/rescheduling an appointment.

---

After you have visited an application center and completed the process, you can check the status of your service at the Universal Enrollment Services (UES) website.

| | |
|---|---|
| Date: | **3/22/2017** |
| UE ID: | **UZZY-1TTSQV** |
| Service: | **11115V - Enroll** |
| **Known Traveler Number (KTN)**: | **UNASSIGNED** |

Known Traveler Numbers (KTNs) are automatically generated and cannot be changed to accommodate personal preferences.

For information on how to use your KTN, please view the FAQ titled "How do I use my Known Traveler Number?" available by clicking here. Please note that TSA can suspend your ability to receive TSA Pre✓® expedited screening in the future if you are found to have committed certain violations of TSA security regulations. Violations include, but are not limited to, interfering with security operations, access control violations, providing false or fraudulent documents, making a bomb threat, or bringing a firearm, explosive, or other prohibited item to an airport or on board an aircraft. The duration of suspension from participation in TSA Pre✓® is related to the seriousness of the violation and/or a repeated history of regulatory violations.

**Plaintiffs' Exhibit 23**

U.S. Department of Homeland Security
Arlington, VA 20598-6110



**Transportation
Security
Administration**

June 21, 2017

URI MARCUS
PO BOX 126
OJAI, CA 93024-0126

ปๆ││ๆ│││ๆ│││ๆฺฺฺ││ๆฺฺ││ๆ││ๆฺฺฺฺฺฺฺฺฺฺฺฺฺฺฺฺฺฺฺฺฺฺฺ

Re:  Determination of Eligibility, URI MARCUS, Case Number 8471652

Dear URI MARCUS:

The Transportation Security Administration (TSA) has reviewed your application for eligibility to participate in TSA Pre✓® through the TSA Pre✓® Application Program, pursuant to Section 109(a)(3) of the Aviation and Transportation Security Act (ATSA), Pub. L. 107–71, (115 Stat. 597, 613, Nov. 19, 2001).

This letter serves as a determination that you have successfully completed TSA's eligibility assessment for TSA Pre✓®. **Congratulations, you are now eligible to participate in TSA Pre✓® through the TSA Pre✓® Application Program. Your Known Traveler Number (KTN) is: TT11N2H7T.  The expiration date is June 16, 2022.** Please provide the KTN listed above in any frequent flyer profiles and for each individual reservation you book on a participating airline and enter your name and date of birth exactly as you did during enrollment.  When you travel, look for "TSA Pre✓®" or "TSA Precheck" on your printed or mobile boarding pass for notification of eligibility.

Please note that TSA can suspend your ability to receive TSA Pre✓® expedited screening in the future if you are found to have committed certain violations of TSA security regulations.  Violations include, but are not limited to, interfering with security operations, access control violations, providing false or fraudulent documents, making a bomb threat, or bringing a firearm, explosive, or other prohibited item to an airport or on board an aircraft. The duration of suspension from participation in TSA Pre✓® is related to the seriousness of the violation and/or a repeated history of regulatory violations.

If you have any questions, please call the TSA Contact Center at (866) 289-9673. For additional information regarding TSA Pre✓® and instructions for using your KTN, please visit www.tsa.gov/tsa-precheck.

Sincerely,

*W. M. Hunt*

Bud Hunt, General Manager
Security Threat Assessment Operations
Office of Law Enforcement/Federal Air Marshal Service

# Plaintiffs' Exhibit 24

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**URI MARCUS & LARRY BONIN JR.,**  :
                          :

    Petitioners,  :

                           :

v.  :    Case No. 21-__60808__

                           :

**TRANSPORTATION SECURITY**  :
**ADMINISTRATION,**  :

                           :

    Respondent.  :

## PETITION FOR REVIEW

Uri Marcus and Larry Bonin Jr. petition for review of three Transportation Security Administration ("TSA") "Security Directives"[1] and one Emergency Amendment signed Aug. 20, 2021, (effective Sept. 14, 2021, to Jan. 18, 2022) requiring all passengers in the United States transportation sector wear face masks. These four public-health orders exceed TSA's statutory authority to regulate transportation security and must be vacated by this Court.

### I. STATEMENT OF FACTS

The challenged orders make up the enforcement scheme of the government's illegal and unconstitutional Federal Transportation Mask Mandate ("FTMM"), put into place by President Joseph Biden by Executive Order 13998, signed Jan. 21,

---

[1] TSA's orders are titled "Security Directives" but in fact have nothing to do with the agency's statutory mission of ensuring transportation security. The titles are thus a misnomer and demonstrate how the orders are *ultra vires* as they relate to health matters having nothing whatsoever to do with transportation security.

2021. 86 Fed. Reg. 7205 (Jan. 26, 2021). Under the president's order, the Department of Homeland Security issued Determination 21-130 on Jan. 27 directing TSA to enforce a requirement that all passengers using any form of public transportation nationwide don face coverings. The Centers for Disease Control & Prevention ("CDC"), with no statutory or regulatory authority, issued an order "Requirement for Persons to Wear Masks While on Conveyances & at Transportation Hubs," effective Feb. 1. 86 Fed. Reg. 8,025 (Feb. 3, 2021). TSA, also lacking statutory or regulatory authority, produced Security Directives 1542-21-01, 1544-21-02, and 1582/84-21-01 as well as Emergency Amendment 1546-21-01 dated Jan. 31, 2021, to enforce the CDC's *ultra vires* mask mandate. These four orders went into effect Feb. 1, 2021.

TSA's original four FTMM orders expired May 11, 2021. Again without any statutory or regulatory authority, TSA issued orders April 29, 2021, extending the FTMM enforcement until Sept. 13, 2021, by attaching the letter "A" to the original documents. TSA Security Directives 1542-21-01A, 1544-21-02A, and 1582/84-21-01A as well as Emergency Amendment 1546-21-01A.

When these orders were about to expire Sept. 13, TSA (again without any statutory or regulatory authority) issued another batch of orders Aug. 20, 2021, extending its FTMM enforcement until Jan. 18, 2022, by substituting the letter "B" for the letter "A." These are the orders challenged in this petition: TSA Security Directives 1542-21-01B, 1544-21-02B, and 1582/84-21-01B as well as Emergency Amendment 1546-21-01B. Exs. 1-5.

The four challenged orders require, *inter alia*, that aircraft, transit bus, school bus, intercity bus, intercity rail, commuter rail, subway and other heavy rail, light rail, tram, streetcar, rideshare car, ferry, other commercial conveyance, and transportation hub operators: 1) mandate all passengers wear masks at all times unless outdoors; and 2) report noncompliance by passengers to TSA. The administration claims authority to levy fines starting at $500 for passengers who don't muzzle themselves.

## II. JURISDICTION & STANDING

This Court has jurisdiction to review the four TSA orders:

> "a person disclosing a substantial interest in an order issued by the ... Transportation Security Administration with respect to security duties and powers designated to be carried out by the Administrator of the Transportation Security Administration ... in whole or in part under this part, part B, or subsection (l) or (s) of section 114 may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business. The petition must be filed not later than 60 days after the order is issued." 49 USC § 46110(a).

We have standing to contest the four TSA mask orders because we both have "a substantial interest" due to medical and facial conditions that preclude us from being able to cover our nose and mouth. We also wish to exercise our legal right under the Food, Drug, & Cosmetic Act to refuse administration of any unauthorized or Emergency Use Authorization ("EUA") medical device. TSA's mask orders exclude tens of millions of Americans with medical conditions who can't safely

wear face coverings from using any mode of the nation's public-transportation system in violation of the Air Carrier Access Act; Americans with Disabilities Act; Rehabilitation Act; Food, Drug, & Cosmetic Act; and other federal laws and international treaties. They also violate our constitutional right to travel and the 10th Amendment.

Petitioner Marcus suffers from Hyperactive Airways Disease (a sensory processing disorder), respiratory distress (shortly after donning a mask), and anxiety. These conditions place him at risk of losing consciousness if his breathing is blocked. Covering his nose and mouth triggers breakouts of basal cell carcinoma (skin cancer) as well as skin lesions and/or infections (from prolonged skin contact with the mask). All of these conditions are documented in his medical records. He can't comply with the FTMM; and airlines and other transportation providers are not granting exemptions. Covering his nose and mouth instantly produces life-threatening circumstances for Mr. Marcus, which further exacerbates his medical disabilities – especially when menacing announcements are made by airline and transit workers warning him of dire consequences should he remove his mask to be able to breathe freely.

Mr. Marcus does not own a vehicle and therefore is fully reliant upon public transportation, which he has been banned from using since Feb. 1 because of the FTMM. TSA's orders negatively impact him by endangering his mental, physical, emotional, and psychological health. The FTMM presents Mr. Marcus, a disabled

American, with three choices: 1) imprison himself in his home, never visiting family, making social contacts with friends and loved ones, or venturing out beyond a short distance that can be covered by foot or bicycle; 2) risk his health by obstructing his breathing; or 3) subject himself to the unmitigated stress and fear of government and corporate threats and reprisals brought about by refusing to comply with the mask mandate that has no basis in law or science.

For Mr. Marcus to fly from his residence in Israel to his principal place of business in Texas for the nonprofit organization for which he serves as president, he must fly 12-14 hours to Dallas and then take a one-hour connecting flight to Houston. Because of the FTMM and his medical conditions, he hasn't been able to travel to his principal place of business since TSA's orders took effect Feb. 1.

Petitioner Bonin is a lead mechanic for a helicopter company that is performs wildland firefighting and power-line construction in the western United States. He is required to travel by commercial aircraft every 12 days for work. He has a full beard that extends six inches below his chin. Wearing a mask over his nose and under his chin is not physically possible.

Mr. Bonin purchased a mask that is sold and marketed as a face covering for men with beards that extends well past his chin. The mask is called a "beard tarp." The airlines refuse to allow him to travel with this mask and demand that he adds a surgical mask (unauthorized by the Food & Drug Administration or approved only as an EUA experimental medical device) under it.

Mr. Bonin objects to forced muzzling as it's absurd and does nothing to reduce the transmission of COVID-19. An N95 mask – which is considered the most effective mask available and is the only type fully approved by FDA and the Occupational Health & Safety Administration – offers 95% protection against particles 0.3 microns or larger. SARS-COV-2 particulate size is 0.125 microns. That makes the virus many times smaller than the N95 provides any protection against. Unauthorized and EUA surgical masks (typically light blue in color) that airiness provide to their passengers to  comply with the FTMM do not provide any protection against an airborne virus. Mr. Bonin wants to exercise his legal right under the Food, Drug, & Cosmetic Act to refuse administration of any unauthorized or EUA medical device.

Petitioners have jurisdictional standing because Mr. Marcus, although living in Israel, is a U.S. citizen who maintains a principal place of business in Texas. Mr. Bonin resides in Louisiana.

This Court has authority "to affirm, amend, modify, or set aside any part of the order and may order the ... Transportation Security Administration ... to conduct further proceedings. After reasonable notice to the ... Administrator of the Transportation Security Administration ... the court may grant interim relief by staying the order or taking other appropriate action when good cause for its action exists." 49 USC § 46110(c).

This petition is timely as the orders were issued Aug. 20, 2021, and the 60-day deadline to file is today (Oct. 19).

## III. STATEMENT OF THE ISSUES

Congress created TSA after the terrorist attacks of Sept. 11, 2001. Aviation & Transportation Security Act, P.L. 107–71, 115 Stat. 597, codified at 49 USC § 114. TSA's function is limited by law to address **security** threats. Congress has never given the agency power to regulate the public health and welfare. TSA's statutory mission is restricted to "be responsible for **security** in all modes of transportation..." 49 USC § 114(d) (emphasis added). Wearing face masks has nothing whatsoever to do with transportation security.

In addition to 49 USC § 114, TSA also cites as grounds for the four challenged orders 49 USC § 44903 and 49 CFR § 1542.303. None of these give TSA authorization to require passengers to wear masks to *possibly* prevent the spread of a communicable disease such as COVID-19.[2]

First, TSA's statutory authority under § 44903 is limited to, as the title states, "Air transportation security." This includes protection against crimes on planes such as bombing and hijacking. "The Administrator shall prescribe regulations to protect passengers and property on an aircraft operating in air transportation or intrastate air transportation against an act of criminal violence or aircraft piracy." 49 USC § 44903(b). Other measures Congress authorized TSA to adopt under this

---

[2] There is an enormous dispute in the scientific and medical communities about whether face coverings actually reduce the spread of a respiratory virus such as COVID-19. However, there are numerous studies detailing how masks cause dozens of harms to human health. *See* https://bit.ly/masksarebad for a compilation of 223 scientific studies, medical articles, and videos showing that masks are totally ineffective in reducing viral transmission and damage our health in many ways.

section include "to establish an air transportation security program that provides a law enforcement presence and capability at each of those airports that is adequate to ensure the safety of passengers"; "establish pilot programs in no fewer than 20 airports to test and evaluate new and emerging technology for providing access control and other security protection"; authorizing individuals who carry out air transportation security duties to carry firearms and make arrests; and "require screening or inspection of all individuals, goods, property, vehicles, and other equipment before entry into a secured area of an airport." None of these authorities come anywhere close to permitting TSA to deny passage through an airport checkpoint to any person not wearing a face mask, require transportation providers enforce a mask mandate, or fine travelers who fail to obstruct their nose and mouth – a human's only sources of oxygen, a fundamental necessity to sustain life.

Second, also of no help to TSA in establishing legal authority for the four orders enforcing the FTMM is 49 CFR § 1542.303. This regulation authorizes TSA to "issue an Information Circular to notify airport operators of security concerns" and issue mandatory security directives when "additional security measures are necessary to respond to a threat assessment or to a specific threat against civil aviation." No reasonable person could interpret this regulation as giving TSA power to deem a face mask a "security measure" to "respond to … a specific threat against civil aviation."

WHEREFORE, we request the Court set these three "Security Directives" and one Emergency Amendment aside in their entirety and permanently enjoin TSA from requiring masks be worn on any form of transportation.

Respectfully submitted this 19th day of October 2021.

*Uri Marcus*
Uri Marcus, petitioner
13814 Viewfield Ct.
Houston, TX 77059
Telephone: 909-833-0065
E-Mail: uri@ntcf.org

*Jim Bonin*
Larry James Bonin Jr., petitioner
107 E. Parkwood Dr.
Youngsville, LA 70592
Telephone: 337-298-9630
E-Mail: ljbonin@yahoo.com

Plaintiffs' Exhibit 25

U.S. Department of Homeland Security
Springfield, Virginia 20598-6110



Transportation
Security
Administration

Mr. Uri Marcus

███████████

United States

Mr. Uri Marcus

███████████

United States

NOV 2 3 2021

Re: Determination of Ineligibility, TSA Pre✓® Application Program, KTN T█████7T

Dear Mr. Marcus:

On 18 Jun 2017, TSA found you eligible to participate in the TSA Pre✓® Application Program. As a participant previously found eligible for the TSA Pre✓® Application Program, you are subject to recurrent checks against various databases, including law enforcement, immigration, regulatory violation, and intelligence databases.

As a result of recurrent checks and based on a comprehensive background check, TSA was unable to determine that you pose a sufficiently low risk to transportation and national security to continue to be eligible for expedited airport security screening through the TSA Pre✓® Application Program. As a result, TSA has determined that you are no longer eligible to participate in the TSA Pre✓® Application Program. This eligibility determination for the TSA Pre✓® Application Program is within the sole discretion of TSA.

Although you have been found ineligible to continue your participation in the TSA Pre✓® Application Program, you will continue to be screened at airport security checkpoints according to TSA standard screening protocols.

This letter constitutes TSA's final decision.

Sincerely,

JULIE A CARRIGAN   Digitally signed by JULIE
A CARRIGAN
Date: 2021.11.18
14:55:17 -05'00'

Julie Carrigan
Acting Division Director
National Transportation Vetting Center

 An official website of the United States government    Here's how you know ⌄



# Plaintiffs' Exhibit 26

≡

Home » Disqualifying Offenses and Other Factors » Disqualifying Offenses and Other Factors

# Disqualifying Offenses and Other Factors

See **Parts A, B and C** below for information on disqualifying criminal offenses. In addition to the disqualifying criminal offenses listed below, TSA may determine that an applicant is not eligible for the application program based on analyses of the following:

a) Interpol and other international information, as appropriate.
b) Terrorist watchlists, other government databases and related information.
c) Any other information relevant to determining applicant eligibility or an applicant's identity.

TSA may also determine that an applicant is not eligible if the security threat assessment process reveals extensive foreign or domestic criminal convictions, a conviction for a serious crime not listed in Part A or B below (including some lesser included offenses of serious crimes; e.g. murder/voluntary manslaughter), or a period of foreign or domestic imprisonment that exceeds 365 consecutive days.

TSA may also determine that an applicant is not eligible based on analyses of records related to violations of transportation security regulatory requirements. These include security-related offenses at an airport, on board an aircraft, at a maritime port, in connection with air cargo and other regulatory violations.

An applicant will also be disqualified if he or she has either been adjudicated as lacking mental capacity or is involuntarily committed to a mental health facility.

 TSA Pre✓® applicants must be U.S. citizens, U.S. nationals or lawful permanent residents.

## PART A

### PERMANENT DISQUALIFYING CRIMINAL OFFENSES

An applicant will be disqualified if he or she was convicted, pled guilty (including 'no contest'), or found not guilty by reason of insanity for any of the following felonies regardless of when they occurred:

- Espionage or conspiracy to commit espionage.
- Sedition or conspiracy to commit sedition.
- Treason or conspiracy to commit treason.
- A federal crime of terrorism as defined in 18 U.S.C. 2332b(g), or comparable State law, or conspiracy to commit such crime.
- A crime involving a TSI (transportation security incident). Note: A transportation security incident is a security incident resulting in a significant loss of life, environmental damage, transportation system disruption, or economic disruption in a particular area, as defined in 46 U.S.C. 70101. The term "economic disruption" does not include a work stoppage or other employee-related action not related to terrorism and resulting from an employer-employee dispute.
- Improper transportation of a hazardous material under 49 U.S.C. 5124 or a comparable state law.
- Unlawful possession, use, sale, distribution, manufacture, purchase, receipt, transfer, shipping, transporting, import, export, storage of, or dealing in an explosive or explosive device. An explosive or explosive device includes an explosive or explosive material as defined in 18 U.S.C. 232(5), 841(c) through 841(f), and 844(j); and a destructive device, as defined in 18 U.S.C. 921(a)(4) and 26 U.S.C. 5845(f).
- Murder.
- Threat or maliciously conveying false information knowing the same to be false, concerning the deliverance, placement, or detonation of an explosive or other lethal device in or against a place of public use, a state or government facility, a public transportations system, or an infrastructure facility.
- Violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. 1961, et seq., or a comparable State law, where one of the predicate acts found by a jury or admitted by the defendant, consists of one of the permanently disqualifying crimes.
- Attempt to commit the crimes in items (1)-(4) of this section.
- Conspiracy or attempt to commit the crimes in items (5)-(10) of this section.

## PART B

### INTERIM DISQUALIFYING CRIMINAL OFFENSES

Conviction for one of the following felonies is disqualifying if the applicant was convicted, pled guilty (including 'no contest'), or found not guilty by reason of insanity within seven years of the date of the application; OR if the applicant was released from incarceration after

conviction within five years of the date of the application.

- Unlawful possession, use, sale, manufacture, purchase, distribution, receipt, transfer, shipping, transporting, delivery, import, export of, or dealing in a firearm or other weapon. A firearm or other weapon includes, but is not limited to, firearms as defined in 18 U.S.C. 921(a)(3) or 26 U.S.C. 5 845(a), or items contained on the U.S. Munitions Import List at 27 CFR 447.21.

- Extortion.
- Dishonesty, fraud, or misrepresentation, including identity fraud and money laundering, where the money laundering is related to a crime listed in Parts A or B (except welfare fraud and passing bad checks).
- Bribery.
- Smuggling.
- Immigration violations.
- Distribution, possession w/ intent to distribute, or importation of a controlled substance.
- Arson.
- Kidnapping or hostage taking.
- Rape or aggravated sexual abuse.
- Assault with intent to kill.
- Robbery.
- Fraudulent entry into a seaport as described in 18 U.S.C. 1036, or a comparable State law.
- Violations of the Racketeer Influenced and Corrupt Organizations Act under 18 U.S.C. 1961, et seq., or a comparable state law, other than any permanently disqualifying offenses.
- Voluntary manslaughter.
- Conspiracy or attempt to commit crimes in this section.

## PART C

### UNDER WANT, WARRANT OR INDICTMENT

A person will be disqualified if he or she is wanted or under indictment in any civilian or military jurisdiction for a felony listed under Part A or Part B until the want or warrant is released or the indictment is dismissed.

| A - Z Index | Federal Relay | Metrics | Report Fraud, Waste & Abuse |
| Civil Enforcement | FOIA | No FEAR | |
| DHS | Industry | Privacy | Report Security Threat |
| | | | USA.gov |

**Sign Up for Email Updates**

**Subscribe**

TSA BLOG · Instagram · Twitter · Facebook · YouTube · Messenger · AskTSA

https://www.tsa.gov/disqualifying-offenses-factors

2/2

Plaintiffs' Exhibit 27









UNITED STATES OF AMERICA
**Department of Transportation**
Federal Aviation Administration

## MEDICAL CERTIFICATE SECOND CLASS

This certifies that *(Full name and address):*

URI MARCUS
PO Box 7211
Jerusalem   93281   Israel

| Date of Birth | Height | Weight | Hair | Eyes | Sex |
|---|---|---|---|---|---|
| | | | | | M |

has met the medical standards prescribed in part 67, Federal Aviation Regulations, for this class of Medical Certificate.

**Limitations**

Must wear corrective lenses for near and distant vision.

**Examiner**

Date of Examination
06/28/2013

Examiner's Designation No.
15765

Signature

Typed Name
AVINOAM BARLEV , MD

**AIRMAN'S SIGNATURE**

Applicant ID:   1996471999

Control No.:   200006009991

**FAA Form 8500-9**   (9-08) Supersedes Previous Edition   NSN: 0052-00-670-7002

Plaintiffs' Exhibit 28

# Certificate of Achievement

*This is to certify that*

## URI MARCUS

*has successfully completed the*
*Aviation Learning Center Online Course*

"*Navigating the DC Special Flight Rules Area (SFRA)"

February 27, 2009



**Federal Aviation Administration**

*Certificate Number*   0390271-20090227-00055

*Kevin L. Clover*
Kevin Clover, National Safety Program Manager

Plaintiffs' Exhibit 29



# General Aviation Security

presented *November 04, 2014 to*

**Uri Marcus**

For successfully completing the General Aviation Security course presented online by the Transportation Security Administration and the AOPA Airport Watch program.

This course meets TSA requirements for initial/recurrent security awareness training (circle one) (I.A.W. 49 CFR 1552).

www.aopa.org/securitycourse

\* Distinct Identification Number

\* Flight School Employee Signature

Transportation
Security
Administration

\* *Information only required if completing TSA security awareness training.*

## Plaintiffs' Exhibit 30

From: no-reply@universalenroll.identogo.com 📎
Subject: Keep your TSA PreCheck® benefits. You're now eligible to Renew!
Date: 16 December 2021 at 14:11
To: adi@ntcf.org



Hi YVONNE,

Your TSA PreCheck membership is due to expire on **06/16/2022.** You can renew it any time between now and that date - your new membership only starts after the old one expires. Renewing is quick and easy, and most members can renew **entirely online**.

**Act now and renew early to ensure your benefits roll into your next trip!**

[ **Renew Early** ]

**Keep enjoying hassle-free travel with TSA PreCheck membership benefits, like:.**

- **Convenient:** your shoes, belt and light jacket stay on, and laptop and 3-1-1 liquids stay in your bags
- **Family-friendly:** kids 12 and under can tag along for free
- **Affordable:** many credit cards and loyalty programs cover the cost of the 5-year membership, for current pricing check here
- **Fast, easy to renew:** 98%+ of members can renew online in 3-5 minutes

**We hope you stay a part of the TSA PreCheck community!**

**Questions about renewing your membership? Call 855-347-8371, 8 a.m. - 10 p.m. Eastern, Monday - Friday, or check out our FAQs.**

**We hope to see you soon!**

**The TSA PreCheck® Team**

[ **Renew Now** ]



# Plaintiffs' Exhibit 31

## Your TSA PreCheck Eligibility Notice

**From:** no-reply@universalenroll.identogo.com
**Subject: Your TSA PreCheck Eligibility Notice**
**Date:** 18 December 2021 at 11:56:57 GMT+2
**To:** uri@ntcf.org

Dear YVONNE MARCUS:

The Transportation Security Administration (TSA) reviewed your submission to the TSA PreCheck Application program and determined you are eligible for the Program. As a result, TSA will issue you a Known Traveler Number (KTN) for you to use when making flight reservations. If you renewed your enrollment, you will keep the KTN that TSA initially issued you. To look up your KTN, please visit the TSA website at universalenroll.dhs.gov and select the "Check Status" link. Once you retrieve your KTN, provide it in the KTN field when making flight reservations, either online in your travel profile or by phone with a ticketing agent.

When booking travel, please make sure you use the exact name and date of birth you provided to the TSA PreCheck Application Program. When you travel, participating airlines may include an indicator such as "TSA PreCheck," "TSA Precheck," or "TSA PRE" on your printed or mobile boarding pass. When you arrive at the airport, look for signs to direct you to the TSA PreCheck security checkpoint lanes.

Please note that this determination of eligibility for the TSA PreCheckApplication Program is within TSA's sole discretion and does not guarantee that you will always receive expedited airport security screening. As an individual deemed eligible for the Program, you are subject to recurrent checks against law enforcement, immigration, and intelligence databases and TSA may disqualify you from the Program at any time. TSA may also suspend your eligibility for the TSA PreCheck Application Program if you are found to have committed certain violations of TSA security regulations. These violations include, but are not limited to, interfering with security operations, access control violations, providing false or fraudulent documents, making a bomb threat, or bringing a firearm, explosive, or other prohibited item to unauthorized areas of an airport or on board an aircraft. The duration of any suspension from participation in the Program would be related to the seriousness of the violation and/or a repeated history of regulatory violations.

If you have any questions about this notification or obtaining your KTN, please call the Universal Enrollment Services Call Center at 1-855-DHS-UES1 (1-855-347-8371), Monday through Friday, 8:00 am to 10:00 pm Eastern Standard Time. For additional information regarding TSA PreCheck and instructions for using your KTN, please visit www.tsa.gov/tsa-precheck. Note that TSA PreCheck expedited screening is not yet available for all airports, all airlines, or all flights.

Welcome to the TSA PreCheck Application Program!

3/2/22, 2:42 PM                        Air Travel Service Complaint or Comment Form

## Plaintiffs' Exhibit 32

Home › Resources › For Individuals › Aviation Consumer Protection › File a consumer complaint

# Air Travel Service Complaint or Comment Form  (Not Related to Airline Safety or Security Issues)

**Please use this form to file a complaint or comment about service you received or requested from an airline or ticket agent that does not relate to airline safety or security. This may include, but is not limited to, topics such as flight delays and cancellations, overbooking, disability, tarmac delays, baggage, discrimination, refunds, ticketing practices, family seating, frequent flyer programs, charter flights, privacy and air ambulance service.**

**The information that you provide in your complaint or comment form will be provided to the appropriate airline or ticket agent. More detailed information about DOT's complaint handling process, and other helpful information for air travelers is available here.**

**The required Privacy Act statement applicable to any information you provide is available here.**

<span style="color:red">Items marked with a * are required.</span>

| Personal Information: |
|---|

**I am**  Passenger ⌄ *

**Your Name:**

**Title:** ⌄   **First Name:** YVONNE *

**Last Name:** MARCUS *

| Contact Information: |
|---|

**Address:** PO BOX 126

**City:** OJAI      **State:** California ⌄

**Zip Code:** 93023     **Home Phone:**

┌─ Either Email Address or Daytime Phone is required ─┐

**Email Address:** uri@ntcf.org *     **Verify Email Address:** uri@ntcf.org *

**Daytime Phone:** 9098330065 *

└────────────────────────────────────────┘

**Would you like a copy of this submission sent to your email?**
◉ Yes ○ No

| Complaint/Comment Information: |
|---|

**Airline/Company:**
ALASKA AIRLINES ⌄ * (If not listed or not applicable select "OTHER")

3:08 PM (2 hr)                                                    Air Travel Consumer Complaint

Flight Date (if applicable):          06/06/2022 📅  (Date Format: mm/dd/yyyy)

Flight Itinerary (if applicable):

DRINTF, LAX [AK 439] TO BOI                         (Cities / Flight Number)

Description of
Problem/Inquiry/Comment*

This complaint against ALASKA Airlines
[hereinafter "AK"] is also against DOT for
"guiding" AK to act on illegal orders from
CDC.  AK violated ACAA and numerous other
laws by  requiring us to work with
OpenDoors.org to  obtain mask exemptions
for our 06 JUN 2022  flight from LAX-BOI      (Chars left: 3000)

## Attach a file (Optional):

**File Name:** (Please click the "Browse" button to select the file and click "Upload File"
button.)

[ Choose File ] No file chosen           [ Upload File ]

Uploaded file/s

C:\fakepath\AK LAX BOI 06 JUN UA.pdf   Remove file

## Incidents of Sexual Misconduct:

If your complaint relates to or includes allegations of sexual misconduct, a copy of
your complaint will be sent to the FBI. Sexual misconduct is a broad term. It
encompasses any behavior or attempted behavior of a sexual nature that is
committed without consent or with someone incapable of consent, or by force,
intimidation, coercion, or manipulation. Sexual misconduct also includes physical or
verbal advances or harassment of a sexual nature, or public indecent exposure.

[ Submit ]   [ Reset ]   [ Cancel ]

**Note - Please only hit Submit once as our system sometimes takes a few moments to
process your complaint.**

*A federal agency may not conduct or sponsor, and a person is not required to respond
to, nor shall a person be subject to a penalty for failure to comply with a collection of
information subject to the requirements of the Paperwork Reduction Act unless that
collection of information displays a current valid OMB Control Number. The OMB
Control Number for this information collection is 2105-0568. Public reporting for this
collection of information is estimated to be approximately 15 minutes per response,
including the time for reviewing instructions, gathering the data needed, and
completing and reviewing the collection of information. All responses to this collection
of information are voluntary, and will be provided confidentiality to the extent allowed
by the Freedom of Information Act (FOIA). Send comments regarding this burden
estimate or any other aspect of this collection of information, including suggestions
for reducing this burden to: Aviation Consumer Protection Division, Office of the
Secretary, W96-473, 1200 New Jersey Avenue, SE, Washington, D.C. 20590.*

If you use the web complaint form above, we would welcome any comments that you may have
about that process.
Please email any such comments to airconsumer2@dot.gov.
(That address does not accept complaints about air service, only comments about the web
complaint form process.)



United States
## Department of Transportation

Home › Resources › For Individuals › Aviation Consumer Protection › File a consumer complaint › Complaint - Comment Form

# Air Travel Complaint – Comment Form Confirmation

## Your complaint has been submitted to the U.S. Department of Transportation.

**The U.S. Department of Transportation (Department or DOT) is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel. As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks for the Department to process your complaint. We apologize for the delay.**

The Department's Office of Aviation Consumer Protection is responsible for reviewing and responding to air travel service complaints against airlines and ticket agents. If your complaint or comment concerns airline safety, please contact the U.S. Department of Transportation's Federal Aviation Administration (FAA) at www.faa.gov/contact. If your complaint or comment concerns airline security, please contact the U.S. Department of Homeland Security's Transportation Security Administration (TSA) at TSA-ContactCenter@dhs.gov.

Consistent with our usual practice, we will forward your air travel service complaint to the airline or ticket agent that is the subject of your complaint, and ask that the entity reply to you. We will also review your complaint to determine whether the airline or ticket agent that is the subject of your complaint is complying with Federal aviation consumer protection and civil rights statutes and DOT regulations. We use complaints to track trends or spot areas of concern that may warrant further action in the future. Complaints may also serve as a basis for rulemaking, legislation, and research.

Further, the Office of Aviation Consumer Protection issues a monthly Air Travel Consumer Report (ATCR), which is designed to provide consumers with information on the quality of services provided by airlines. That report includes a section on complaints, which is based on the aggregate of air travel service complaints submitted to the Department. Your air travel service complaint will be included in the monthly ATCR, which is distributed to the industry and made available to the news media and the public so that both consumers and air travel companies can compare the complaint records of individual airlines and ticket agents.

If you are interested in obtaining copies of the ATCR or learning more about the rights of air travelers, we encourage you to visit our website at https://www.transportation.gov/airconsumer. The website contains clear, useful information about passenger rights, and highlights content on topics of greatest concern to consumers, including flight delays and cancellations, refunds, oversales, tarmac delays, and passengers' right to fly free of discrimination. It also has a collection of helpful tips and information to help you protect yourself while travelling.



From: airconsumer@dot.gov
Subject: Airconsumer Acknowledgement
Date: 2 March 2022 at 11:11
To: uri@ntcf.org

Thank you for contacting us concerning your air travel service issue. The U.S. Department of Transportation (DOT) seeks to ensure that airline passengers are treated fairly. Complaints and comments from consumers are helpful for determining whether airlines or ticket agents are complying with Federal aviation consumer protection and civil rights statutes and DOT regulations, and to track trends or spot areas of concern that warrant further action. Your complaint or inquiry will be assigned to an analyst for review and you will receive a more detailed acknowledgement.

The Department is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel.  As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks to process your complaint. We apologize for the delay.

Thank you again for taking the time to contact us.

Office of Aviation Consumer Protection
U.S. Department of Transportation

  PERSONAL INFO:
  Passenger - YVONNE MARCUS uri@ntcf.org

  CONTACT INFO:
  PO BOX 126 OJAI,CA 93023

  Home Phone:
  Daytime Phone: 9098330065

  COMPLAINT INFO:
  Airline Code: AS

  Flight Date: 06/06/2022
  Flight Itinerary: DRINTF, LAX [AK 439] TO BOI

  Description of Problem/Inquiry/Comment:
   This complaint against ALASKA Airlines  [hereinafter "AK"] is also against DOT for   "guiding" AK to act on illegal orders from  CDC.  AK violated ACAA and numerous other  laws by  requiring us to work with  OpenDoors.org to  obtain mask exemptions for  our 06 JUN 2022  flight from LAX-BOI [AK  Itin: DRINTF].  They required that we provide  emails of our  Doctors so that OpenDoors.org could contact  them and verify our medical  conditions.  OpenDoors does not have any  doctors on staff,  and AK said, "We are not  doctors and cannot  verify if you qualify for  a mask exemption." OpenDoors.org and AK are  practicing medicine  without a license.  Both  AK and OpenDoors were very kind and easy  to  work with and granted our MEs, but law  does  not agree with AK's illegal process to  obtain MEs, only if we submit to their   process.  AK fraudulently informed us on  their website  that "federal law" requires  all to wear a  mask while flying. But  Congress never passed such a law, nor has  DOT or any other agency  promulgated such a  regulation. The DOT itself  on its own FAQ  section on its website  specifically states  that wearing masks is NOT  a federal law. See  attachments. AK cites no  provision of the  U.S. Code or the Code of FRs  to support its  false claim that "federal law"  requires face  coverings. Why didn't AK accept  your  "guidance" in this instance?  AK required us  to submit ME requests in  advance which is  illegal. 14 CFR § 382.25. AK  states, "MEs  are not available if one 'just  has breathing  difficulties." This is a  violation of federal law.  We submitted medical docs in  advance as a  courtesy. Yet, demanding  advance notice is  illegal by federal law. AK  is NOT permitted  to impose requirements or  conditions on a person requesting an ME. 49  USC § 41705(a).  All of these things are  gross violations of  ADA and of ACAA.  AK  cannot hold the power of denial to fly   without an ME until the moment they board the   aircraft. 14 CFR § 382.23(a). AK may not   change the seat assignment of an ME passenger   to the last row of the aircraft, which makes    us feel like lepers with a disease not worthy   of making their own seat choices like   everyone else. 14 CFR § 382.87(a).  AK  falsely relies upon CDC's Order of  29 Jan   2021. TSA's Sec Directive of 31 Jan 2021 and   the ACAA's

relies upon CDC's Order of 29 Jan   2021, FAA's SD8 Directive of 3 Jun 2021 and   the ACAA's implementation of 14 CFR 382. Even   though the CDC has relaxed it's masking   MANDATE for 70% of the USA as of 25 Feb 2022,   they continue to mandate masks in the most   secure and clear air space on the planet,   that of an airline cabin at 36,000 ft.  An  airline may not require disabled  passengers  with MEs to submit a negative  COVID-19 test  for each flight when non-disabled customers  aren't subject to this  same requirement.  This is illegal  discrimination. 14 CFR § 382.11(a)(1). See  also 49 USC § 41705.  AK  must be fined for violating ACAA and FRs  and conspiring to interfere with our civil   rights. DOT must also enjoin AK from   requiring illegal steps prior to and   following the receiving of MEs.


  This is System generated message, and a response to this email will not be delivered.
03/02/2022 04:04:18



Home › Resources › For Individuals › Aviation Consumer Protection › File a consumer complaint

# Air Travel Service Complaint or Comment Form  (Not Related to Airline Safety or Security Issues)

**Please use this form to file a complaint or comment about service you received or requested from an airline or ticket agent that does not relate to airline safety or security. This may include, but is not limited to, topics such as flight delays and cancellations, overbooking, disability, tarmac delays, baggage, discrimination, refunds, ticketing practices, family seating, frequent flyer programs, charter flights, privacy and air ambulance service.**

**The information that you provide in your complaint or comment form will be provided to the appropriate airline or ticket agent. More detailed information about DOT's complaint handling process, and other helpful information for air travelers is available here.**

**The required Privacy Act statement applicable to any information you provide is available here.**

Items marked with a * are required.

| Personal Information: |
|---|

I am    Passenger    *
Your Name:
Title:              First Name:    URI    *
Last Name:    MARCUS    *

| Contact Information: |
|---|

Address:    PO BOX 126
City:    OJAI          State:    California
Zip Code:    93024          Home Phone:

Either Email Address or Daytime Phone is required
Email Address:          Verify Email Address:
uri@ntcf.org    *          uri@ntcf.org    *

Daytime Phone:
9098330065    *

**Would you like a copy of this submission sent to your email?**
◉ Yes  ○ No

| Complaint/Comment Information: |
|---|

Airline/Company:
ALASKA AIRLINES    *  (If not listed or not applicable select "OTHER")

**Flight Date (if applicable):** 06/06/2022 📅 (Date Format: mm/dd/yyyy)

**Flight Itinerary (if applicable):**

DRINTF, LAX [AK 439] TO BOI    (Cities / Flight Number)

**Description of Problem/Inquiry/Comment***

This complaint against ALASKA Airlines
[hereinafter "AK"] is also against DOT for
"guiding" AK to act on illegal orders from
CDC.  AK violated ACAA and numerous other
laws by  requiring us to work with
OpenDoors.org to  obtain mask exemptions
for our 06 JUN 2022  flight from LAX-BOI

(Chars left: 3000)

## Attach a file (Optional):

**File Name:** (Please click the "Browse" button to select the file and click "Upload File" button.)

[Choose File] No file chosen       [Upload File]

Uploaded file/s

C:\fakepath\AK LAX BOI 06 JUN UA.pdf   Remove file

## Incidents of Sexual Misconduct:

If your complaint relates to or includes allegations of sexual misconduct, a copy of your complaint will be sent to the FBI. Sexual misconduct is a broad term. It encompasses any behavior or attempted behavior of a sexual nature that is committed without consent or with someone incapable of consent, or by force, intimidation, coercion, or manipulation. Sexual misconduct also includes physical or verbal advances or harassment of a sexual nature, or public indecent exposure.

[Submit]   [Reset]   [Cancel]

**Note - Please only hit Submit once as our system sometimes takes a few moments to process your complaint.**

*A federal agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a current valid OMB Control Number. The OMB Control Number for this information collection is 2105-0568. Public reporting for this collection of information is estimated to be approximately 15 minutes per response, including the time for reviewing instructions, gathering the data needed, and completing and reviewing the collection of information. All responses to this collection of information are voluntary, and will be provided confidentiality to the extent allowed by the Freedom of Information Act (FOIA). Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: Aviation Consumer Protection Division, Office of the Secretary, W96-473, 1200 New Jersey Avenue, SE, Washington, D.C. 20590.*

If you use the web complaint form above, we would welcome any comments that you may have about that process.
Please email any such comments to airconsumer2@dot.gov.
(That address does not accept complaints about air service, only comments about the web complaint form process.)

United States
**Department of Transportation**

Home › Resources › For Individuals › Aviation Consumer Protection › File a consumer complaint › Complaint - Comment Form

# Air Travel Complaint – Comment Form Confirmation

## Your complaint has been submitted to the U.S. Department of Transportation.

**The U.S. Department of Transportation (Department or DOT) is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel. As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks for the Department to process your complaint. We apologize for the delay.**

The Department's Office of Aviation Consumer Protection is responsible for reviewing and responding to air travel service complaints against airlines and ticket agents. If your complaint or comment concerns airline safety, please contact the U.S. Department of Transportation's Federal Aviation Administration (FAA) at www.faa.gov/contact. If your complaint or comment concerns airline security, please contact the U.S. Department of Homeland Security's Transportation Security Administration (TSA) at TSA-ContactCenter@dhs.gov.

Consistent with our usual practice, we will forward your air travel service complaint to the airline or ticket agent that is the subject of your complaint, and ask that the entity reply to you. We will also review your complaint to determine whether the airline or ticket agent that is the subject of your complaint is complying with Federal aviation consumer protection and civil rights statutes and DOT regulations. We use complaints to track trends or spot areas of concern that may warrant further action in the future. Complaints may also serve as a basis for rulemaking, legislation, and research.

Further, the Office of Aviation Consumer Protection issues a monthly Air Travel Consumer Report (ATCR), which is designed to provide consumers with information on the quality of services provided by airlines. That report includes a section on complaints, which is based on the aggregate of air travel service complaints submitted to the Department. Your air travel service complaint will be included in the monthly ATCR, which is distributed to the industry and made available to the news media and the public so that both consumers and air travel companies can compare the complaint records of individual airlines and ticket agents.

If you are interested in obtaining copies of the ATCR or learning more about the rights of air travelers, we encourage you to visit our website at https://www.transportation.gov/airconsumer. The website contains clear, useful information about passenger rights, and highlights content on topics of greatest concern to consumers, including flight delays and cancellations, refunds, oversales, tarmac delays, and passengers' right to fly free of discrimination. It also has a collection of helpful tips and information to help you protect yourself while travelling.

From: airconsumer@dot.gov
Subject: Airconsumer Acknowledgement
Date: 2 March 2022 at 11:09
To: uri@ntcf.org



Thank you for contacting us concerning your air travel service issue. The U.S. Department of Transportation (DOT) seeks to ensure that airline passengers are treated fairly. Complaints and comments from consumers are helpful for determining whether airlines or ticket agents are complying with Federal aviation consumer protection and civil rights statutes and DOT regulations, and to track trends or spot areas of concern that warrant further action. Your complaint or inquiry will be assigned to an analyst for review and you will receive a more detailed acknowledgement.

The Department is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel.  As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks to process your complaint. We apologize for the delay.

Thank you again for taking the time to contact us.

Office of Aviation Consumer Protection
U.S. Department of Transportation

PERSONAL INFO:
Passenger - URI MARCUS uri@ntcf.org

CONTACT INFO:
PO BOX 126 OJAI,CA 93024

Home Phone:
Daytime Phone: 9098330065

COMPLAINT INFO:
Airline Code: AS

Flight Date: 06/06/2022
Flight Itinerary: DRINTF, LAX [AK 439] TO BOI

Description of Problem/Inquiry/Comment:
  This complaint against ALASKA Airlines   [hereinafter "AK"] is also against DOT for   "guiding" AK to act on illegal orders from  CDC.  AK violated ACAA and numerous other  laws by  requiring us to work with  OpenDoors.org to  obtain mask exemptions for  our 06 JUN 2022  flight from LAX-BOI [AK  Itin: DRINTF].  They required that we provide  emails of our  Doctors so that OpenDoors.org could contact  them and verify our medical  conditions.  OpenDoors does not have any  doctors on staff,  and AK said, "We are not  doctors and cannot  verify if you qualify for  a mask exemption." OpenDoors.org and AK are  practicing medicine  without a license.  Both  AK and OpenDoors were very kind and easy  to  work with and granted our MEs, but law  does  not agree with AK's illegal process to   obtain MEs, only if we submit to their   process.  AK fraudulently informed us on  their website  that "federal law" requires  all to wear a  mask while flying. But  Congress never passed such a law, nor has  DOT or any other agency  promulgated such a  regulation. The DOT itself  on its own FAQ  section on its website  specifically states  that wearing masks is NOT  a federal law. See  attachments. AK cites no  provision of the  U.S. Code or the Code of FRs  to support its  false claim that "federal law"  requires face  coverings. Why didn't AK accept  your  "guidance" in this instance?  AK required us  to submit ME requests in  advance which is  illegal. 14 CFR § 382.25. AK  states, "MEs  are not available if one 'just  has breathing  difficulties." This is a  violation of federal law.  We submitted medical docs in  advance as a  courtesy. Yet, demanding  advance notice is  illegal by federal law.  AK is NOT permitted  to impose requirements or  conditions on a person requesting an ME. 49  USC § 41705(a).  All of these things are  gross violations of  ADA and of ACAA.  AK  cannot hold the power of denial to fly   without an ME until the moment they board the   aircraft. 14 CFR § 382.23(a). AK may not   change the seat assignment of an ME passenger   to the last row of the aircraft, which makes   us feel like lepers with a disease not worthy   of making their own seat choices like   everyone else. 14 CFR § 382.87(a).  AK  falsely relies upon CDC's Order of  29 Jan   2021, TSA's Sec Directive of 31 Jan 2021 and   the ACAA's

relies upon CDC's Order of  25 Jan   2021, TSA's SeeDirective of 3 Jan 2021 and   the ACAA's implementation of 14 CFR 382. Even   though the CDC has relaxed it's masking   MANDATE for 70% of the USA as of 25 Feb 2022,   they continue to mandate masks in the most   secure and clear air space on the planet,   that of an airline cabin at 36,000 ft.  An  airline may not require disabled  passengers  with MEs to submit a negative  COVID-19 test  for each flight when non-disabled customers  aren't subject to this  same requirement.  This is illegal  discrimination. 14 CFR § 382.11(a)(1). See  also 49 USC § 41705.  AK  must be fined for violating ACAA and FRs  and conspiring to interfere with our civil  rights. DOT must also enjoin AK from   requiring illegal steps prior to and   following the receiving of MEs.


   This is System generated message, and a response to this email will not be delivered.
03/02/2022 04:01:03

Plaintiffs' Exhibit 33

Home › Resources › For Individuals › Aviation Consumer Protection › File a consumer complaint

## Air Travel Service Complaint or Comment Form  (Not Related to Airline Safety or Security Issues)

**Please use this form to file a complaint or comment about service you received or requested from an airline or ticket agent that does not relate to airline safety or security. This may include, but is not limited to, topics such as flight delays and cancellations, overbooking, disability, tarmac delays, baggage, discrimination, refunds, ticketing practices, family seating, frequent flyer programs, charter flights, privacy and air ambulance service.**

**The information that you provide in your complaint or comment form will be provided to the appropriate airline or ticket agent. More detailed information about DOT's complaint handling process, and other helpful information for air travelers is available here.**

**The required Privacy Act statement applicable to any information you provide is available here.**

Items marked with a * are required.

| Personal Information: |
|---|
| **I am**   Passenger ▼ * |
| **Your Name:** |
| **Title:**   Mrs ▼   **First Name:**   YVONNE   * |
| **Last Name:**   MARCUS   * |

| Contact Information: |
|---|
| **Address:**   PO BOX 126 |
| **City:**   OJAI     **State:**   California ▼ |
| **Zip Code:**   93024     **Home Phone:** |

Either Email Address or Daytime Phone is required

**Email Address:**   uri@ntcf.org   *     **Verify Email Address:**   uri@ntcf.org   *

**Daytime Phone:**   9098330065   *

**Would you like a copy of this submission sent to your email?**
◉ Yes  ○ No

| Complaint/Comment Information: |
|---|
| **Airline/Company:** |
| AMERICAN AIRLINES ▼   *   (If not listed or not applicable select "OTHER") |

Flight Date (if applicable):      03/07/2022  📅 (Date Format: mm/dd/yyyy)

Flight Itinerary (if applicable):

WQKDMZ, TLV JFK LAX JFK TLV                                    (Cities / Flight Number)

Description of
Problem/Inquiry/Comment*

American Airlines [hereinafter "AA"]
violated  the Air Carrier Access Act and
numerous other  laws by refusing to grant
my wife and I mask  exemptions for our
upcoming 07 Mar 2022  flights TLV-LAX-TLV
and returning 31 Mar 2022  [AA Itinerary
WQKDMZ].  AA fraudulently informed us                  (Chars left: 3000)

| Attach a file (Optional): |
|---|

**File Name:** (Please click the "Browse" button to select the file and click "Upload File" button.)

[Choose File] No file chosen        [Upload File]

Uploaded file/s

C:\fakepath\AA TLV LAX TLV 07 MAR to 31 MAR 2022 UA.pdf   Remove file

| Incidents of Sexual Misconduct: |
|---|

If your complaint relates to or includes allegations of sexual misconduct, a copy of your complaint will be sent to the FBI. Sexual misconduct is a broad term. It encompasses any behavior or attempted behavior of a sexual nature that is committed without consent or with someone incapable of consent, or by force, intimidation, coercion, or manipulation. Sexual misconduct also includes physical or verbal advances or harassment of a sexual nature, or public indecent exposure.

[Submit]   [Reset]   [Cancel]

**Note - Please only hit Submit once as our system sometimes takes a few moments to process your complaint.**

*A federal agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a current valid OMB Control Number. The OMB Control Number for this information collection is 2105-0568. Public reporting for this collection of information is estimated to be approximately 15 minutes per response, including the time for reviewing instructions, gathering the data needed, and completing and reviewing the collection of information. All responses to this collection of information are voluntary, and will be provided confidentiality to the extent allowed by the Freedom of Information Act (FOIA). Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: Aviation Consumer Protection Division, Office of the Secretary, W96-473, 1200 New Jersey Avenue, SE, Washington, D.C. 20590.*

If you use the web complaint form above, we would welcome any comments that you may have about that process.
Please email any such comments to airconsumer2@dot.gov.
(That address does not accept complaints about air service, only comments about the web complaint form process.)



Home > Resources > For Individuals > Aviation Consumer Protection > File a consumer complaint > Complaint - Comment Form

# Air Travel Complaint – Comment Form Confirmation

## Your complaint has been submitted to the U.S. Department of Transportation.

**The U.S. Department of Transportation (Department or DOT) is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel. As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks for the Department to process your complaint. We apologize for the delay.**

The Department's Office of Aviation Consumer Protection is responsible for reviewing and responding to air travel service complaints against airlines and ticket agents. If your complaint or comment concerns airline safety, please contact the U.S. Department of Transportation's Federal Aviation Administration (FAA) at www.faa.gov/contact. If your complaint or comment concerns airline security, please contact the U.S. Department of Homeland Security's Transportation Security Administration (TSA) at TSA-ContactCenter@dhs.gov.

Consistent with our usual practice, we will forward your air travel service complaint to the airline or ticket agent that is the subject of your complaint, and ask that the entity reply to you. We will also review your complaint to determine whether the airline or ticket agent that is the subject of your complaint is complying with Federal aviation consumer protection and civil rights statutes and DOT regulations. We use complaints to track trends or spot areas of concern that may warrant further action in the future. Complaints may also serve as a basis for rulemaking, legislation, and research.

Further, the Office of Aviation Consumer Protection issues a monthly Air Travel Consumer Report (ATCR), which is designed to provide consumers with information on the quality of services provided by airlines. That report includes a section on complaints, which is based on the aggregate of air travel service complaints submitted to the Department. Your air travel service complaint will be included in the monthly ATCR, which is distributed to the industry and made available to the news media and the public so that both consumers and air travel companies can compare the complaint records of individual airlines and ticket agents.

If you are interested in obtaining copies of the ATCR or learning more about the rights of air travelers, we encourage you to visit our website at https://www.transportation.gov/airconsumer. The website contains clear, useful information about passenger rights, and highlights content on topics of greatest concern to consumers, including flight delays and cancellations, refunds, oversales, tarmac delays, and passengers' right to fly free of discrimination. It also has a collection of helpful tips and information to help you protect yourself while travelling.



From: airconsumer@dot.gov
Subject: Airconsumer Acknowledgement
Date: 14 February 2022 at 23:51
To: uri@ntcf.org

Thank you for contacting us concerning your air travel service issue. The U.S. Department of Transportation (DOT) seeks to ensure that airline passengers are treated fairly. Complaints and comments from consumers are helpful for determining whether airlines or ticket agents are complying with Federal aviation consumer protection and civil rights statutes and DOT regulations, and to track trends or spot areas of concern that warrant further action. Your complaint or inquiry will be assigned to an analyst for review and you will receive a more detailed acknowledgement.

The Department is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel.  As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks to process your complaint. We apologize for the delay.

Thank you again for taking the time to contact us.

Office of Aviation Consumer Protection
U.S. Department of Transportation

PERSONAL INFO:
Passenger - Mrs YVONNE MARCUS uri@ntcf.org

CONTACT INFO:
PO BOX 126 OJAI,CA 93024

Home Phone:
Daytime Phone: 9098330065

COMPLAINT INFO:
Airline Code: AA

Flight Date: 03/07/2022
Flight Itinerary: WQKDMZ, TLV JFK LAX JFK TLV

Description of Problem/Inquiry/Comment:
   American Airlines [hereinafter "AA"] violated   the Air Carrier Access Act and numerous other laws by refusing to grant my wife and I mask   exemptions for our upcoming 07 Mar 2022   flights TLV-LAX-TLV and returning 31 Mar 2022   [AA Itinerary WQKDMZ].  AA fraudulently  informed us throughout the  online ticket  purchase pages that "federal  law" requires  each person to wear a mask  while flying.  However, Congress has never  passed such a  law, nor has DOT or any other agency  promulgated such a regulation. The DOT   itself on its own FAQ section on its website specifically states that wearing masks is NOT   a federal law. See attachments. AA cites no provision of the U.S. Code or the Code of   Federal Regulations to support its false   claim that "federal law" requires face   coverings.   We cannot wear masks due to our  medical  conditions. AA required us to submit   exemption requests in advance, which is   illegal. 14 CFR § 382.25.  We submitted the  forms as a courtesy despite  it being  unlawful to demand advance notice.  We included, as a courtesy, signed medical   summaries from our family physicians that we   should not wear a mask. We wrote that AA's   mask policy is illegal in numerous ways   including that airlines by federal law are   NOT permitted to impose certain requirements   or conditions on a person requesting an   exemption from the mask mandate. 49 USC §   41705(a).  After AA finally did grant us  provisional  mask exemptions, they went on to  assign us,  against our will, in seats  located in the  last row of each flight, as  if we were  diseased and being discriminated  against as  such, simply because we could not  muzzle.  These are all gross violations of  the ADA and  the ACAA. AA may not require a  medical certificate from  disabled passengers  who ask for a mask exemption. 14 CFR §  382.23(a).  AA may not require disabled  passengers  needing a mask exemption to  undergo a medical  screening nor ask for a  medical certificate.  14 CFR § 382.23(d). AA  also may not change the seat assignment of  a  mask-exempt passenger. 14 CFR § 382.87(a). AA falsely relies upon CDC's Order of  29 Jan   2021, TSA's Security Directive of 31 Jan 2021   and the ACAA's implementation of 14 CFR 382   AA and their employees at their Mask   Exception

the ACAA's implementation of 14 C.F.R. 382.   70 [and their employees at their mask   "Exception Department [SAC <sac@aa.com> and   "American.Europe.Noreply@aa.com (American   Airlines Special Assistance Coordinator)]   must be fined for violating the ACAA and   Federal regulations and conspiring to   interfere with our civil rights. DOT must   also enjoin AA from continuing to require   numerous illegal steps to obtain mask   exemptions.


   This is System generated message, and a response to this email will not be delivered.
02/14/2022 16:43:57



The following required field(s) are empty:
❗ "Description of Problem/Inquiry/Comment" is required

Home › Resources › For Individuals › Aviation Consumer Protection › File a consumer complaint

# Air Travel Service Complaint or Comment Form  (Not Related to Airline Safety or Security Issues)

**Please use this form to file a complaint or comment about service you received or requested from an airline or ticket agent that does not relate to airline safety or security. This may include, but is not limited to, topics such as flight delays and cancellations, overbooking, disability, tarmac delays, baggage, discrimination, refunds, ticketing practices, family seating, frequent flyer programs, charter flights, privacy and air ambulance service.**

**The information that you provide in your complaint or comment form will be provided to the appropriate airline or ticket agent. More detailed information about DOT's complaint handling process, and other helpful information for air travelers is available here.**

**The required Privacy Act statement applicable to any information you provide is available here.**

Items marked with a * are required.

| Personal Information: | | |
|---|---|---|
| I am | Passenger ▾ * | |
| Your Name: | | |
| Title: | Mr ▾   First Name: | URI * |
| Last Name: | MARCUS * | |

| Contact Information: | | |
|---|---|---|
| Address: | PO BOX 126 | |
| City: | OJAI | State: California ▾ |
| Zip Code: | 93024 | Home Phone: |

Either Email Address or Daytime Phone is required

Email Address: uri@ntcf.org *   Verify Email Address: uri@ntcf.org *

Daytime Phone: 9098330065 *

Would you like a copy of this submission sent to your email?
◉ Yes  ○ No

| Complaint/Comment Information: |
|---|

**Airline/Company:**

AMERICAN AIRLINES        ⌄ * (If not listed or not applicable select "OTHER")

**Flight Date (if applicable):**        03/07/2022 📅 (Date Format: mm/dd/yyyy)

**Flight Itinerary (if applicable):**

WQKDMZ, TLV JFK LAX JFK TLV                           (Cities / Flight Number)

**Description of**
**Problem/Inquiry/Comment***
🛑

law requires each person to wear a mask
while flying. However, Congress has never
passed such a law, nor has DOT or any other
agency promulgated such a regulation. The
DOT itself on its own FAQ section on its
website specifically states that wearing
masks is NOT a federal law. See
attachments. AA cites no provision of the    (Chars left: 455)

| Attach a file (Optional): |
|---|

**File Name:** (Please click the "Browse" button to select the file and click "Upload File" button.)

[ Choose File ] No file chosen            [ Upload File ]

Uploaded file/s

C:\fakepath\AA TLV LAX TLV 07 MAR to 31 MAR 2022 UA.pdf   Remove file

| Incidents of Sexual Misconduct: |
|---|

If your complaint relates to or includes allegations of sexual misconduct, a copy of
your complaint will be sent to the FBI. Sexual misconduct is a broad term. It
encompasses any behavior or attempted behavior of a sexual nature that is
committed without consent or with someone incapable of consent, or by force,
intimidation, coercion, or manipulation. Sexual misconduct also includes physical or
verbal advances or harassment of a sexual nature, or public indecent exposure.

[ Submit ]   [ Reset ]   [ Cancel ]

**Note - Please only hit Submit once as our system sometimes takes a few moments to process your complaint.**

*A federal agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a current valid OMB Control Number. The OMB Control Number for this information collection is 2105-0568. Public reporting for this collection of information is estimated to be approximately 15 minutes per response, including the time for reviewing instructions, gathering the data needed, and completing and reviewing the collection of information. All responses to this collection of information are voluntary, and will be provided confidentiality to the extent allowed by the Freedom of Information Act (FOIA). Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: Aviation Consumer Protection Division, Office of the Secretary, W96-473, 1200 New Jersey Avenue, SE, Washington, D.C. 20590.*

If you use the web complaint form above, we would welcome any comments that you may have about that process.
Please email any such comments to airconsumer2@dot.gov.
(That address does not accept complaints about air service, only comments about the web complaint form process.)

2/20/22, 3:32 PM                                    Air Travel Complaint - Comment Form Confirmation 349



| Home | **United States**<br>**Department of Transportation** |

Home › Resources › For Individuals › Aviation Consumer Protection › File a consumer complaint › Complaint - Comment Form

# Air Travel Complaint – Comment Form Confirmation

## Your complaint has been submitted to the U.S. Department of Transportation.

**The U.S. Department of Transportation (Department or DOT) is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel. As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks for the Department to process your complaint. We apologize for the delay.**

The Department's Office of Aviation Consumer Protection is responsible for reviewing and responding to air travel service complaints against airlines and ticket agents. If your complaint or comment concerns airline safety, please contact the U.S. Department of Transportation's Federal Aviation Administration (FAA) at www.faa.gov/contact. If your complaint or comment concerns airline security, please contact the U.S. Department of Homeland Security's Transportation Security Administration (TSA) at TSA-ContactCenter@dhs.gov.

Consistent with our usual practice, we will forward your air travel service complaint to the airline or ticket agent that is the subject of your complaint, and ask that the entity reply to you. We will also review your complaint to determine whether the airline or ticket agent that is the subject of your complaint is complying with Federal aviation consumer protection and civil rights statutes and DOT regulations. We use complaints to track trends or spot areas of concern that may warrant further action in the future. Complaints may also serve as a basis for rulemaking, legislation, and research.

Further, the Office of Aviation Consumer Protection issues a monthly Air Travel Consumer Report (ATCR), which is designed to provide consumers with information on the quality of services provided by airlines. That report includes a section on complaints, which is based on the aggregate of air travel service complaints submitted to the Department. Your air travel service complaint will be included in the monthly ATCR, which is distributed to the industry and made available to the news media and the public so that both consumers and air travel companies can compare the complaint records of individual airlines and ticket agents.

If you are interested in obtaining copies of the ATCR or learning more about the rights of air travelers, we encourage you to visit our website at https://www.transportation.gov/airconsumer. The website contains clear, useful information about passenger rights, and highlights content on topics of greatest concern to consumers, including flight delays and cancellations, refunds, oversales, tarmac delays, and passengers' right to fly free of discrimination. It also has a collection of helpful tips and information to help you protect yourself while travelling.

From: airconsumer@dot.gov
Subject: Airconsumer Acknowledgement
Date: 14 February 2022 at 23:44
To: uri@ntcf.org



Thank you for contacting us concerning your air travel service issue. The U.S. Department of Transportation (DOT) seeks to ensure that airline passengers are treated fairly. Complaints and comments from consumers are helpful for determining whether airlines or ticket agents are complying with Federal aviation consumer protection and civil rights statutes and DOT regulations, and to track trends or spot areas of concern that warrant further action. Your complaint or inquiry will be assigned to an analyst for review and you will receive a more detailed acknowledgment.

The Department is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel.  As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks to process your complaint. We apologize for the delay.

Thank you again for taking the time to contact us.

Office of Aviation Consumer Protection
U.S. Department of Transportation

PERSONAL INFO:
Passenger - Mr URI MARCUS uri@ntcf.org

CONTACT INFO:
PO BOX 126 OJAI,CA 93024

Home Phone:
Daytime Phone: 9098330065

COMPLAINT INFO:
Airline Code: AA

Flight Date: 03/07/2022
Flight Itinerary: WQKDMZ, TLV JFK LAX JFK TLV

Description of Problem/Inquiry/Comment:
    American Airlines [hereinafter "AA"] violated  the Air Carrier Access Act and numerous other  laws by refusing to grant my wife and I mask  exemptions for our upcoming 07 Mar 2022  flights TLV-LAX-TLV and returning 31 Mar 2022  [AA Itinerary WQKDMZ].  AA fraudulently informed us throughout the  online ticket purchase pages that "federal law" requires each person to wear a mask  while flying. However, Congress has never  passed such a law, nor has DOT or any other agency promulgated such a regulation. The DOT  itself on its own FAQ section on its website specifically states that wearing masks is NOT  a federal law. See attachments. AA cites no provision of the U.S. Code or the Code of  Federal Regulations to support its false  claim that "federal law" requires face  coverings.   We cannot wear masks due to our medical  conditions. AA required us to submit  exemption requests in advance, which is  illegal. 14 CFR § 382.25.  We submitted the forms as a courtesy despite  it being unlawful to demand advance notice.  We included, as a courtesy, signed medical  summaries from our family physicians that we  should not wear a mask. We wrote that AA's  mask policy is illegal in numerous ways  including that airlines by federal law are  NOT permitted to impose certain requirements  or conditions on a person requesting an  exemption from the mask mandate. 49 USC §  41705(a).  After AA finally did grant us provisional  mask exemptions, they went on to assign us,  against our will, in seats located in the last row of each flight, as if we were  diseased and being discriminated against as  such, simply because we could not muzzle.  These are all gross violations of the ADA and  the ACAA.  AA may not require a medical certificate from  disabled passengers who ask for a mask  exemption. 14 CFR § 382.23(a).  AA may not require disabled passengers  needing a mask exemption to undergo a medical  screening nor ask for a medical certificate.  14 CFR § 382.23(d).  AA also may not change the seat assignment of  a mask-exempt passenger. 14 CFR § 382.87(a).  AA falsely relies upon CDC's Order of  29 Jan  2021, TSA's Security Directive of 31 Jan 2021  and the ACAA's implementation of 14 CFR 382.  AA and their employees at their Mask  Exception Department [SAC

implementation of 14 CFR 382.19 and their employees at their Mask "Exception Department [SAC <sac@aa.com> and "American.Europe.Noreply@aa.com (American Airlines Special Assistance Coordinator)] must be fined for violating the ACAA and Federal regulations and conspiring to interfere with our civil rights. DOT must also enjoin AA from continuing to require numerous illegal steps to obtain mask exemptions.


   This is System generated message, and a response to this email will not be delivered.
02/14/2022 16:36:38

## Plaintiffs' Exhibit 34

Home > Resources > For Individuals > Aviation Consumer Protection > File a consumer complaint

# Air Travel Service Complaint or Comment Form  (Not Related to Airline Safety or Security Issues)

**Please use this form to file a complaint or comment about service you received or requested from an airline or ticket agent that does not relate to airline safety or security. This may include, but is not limited to, topics such as flight delays and cancellations, overbooking, disability, tarmac delays, baggage, discrimination, refunds, ticketing practices, family seating, frequent flyer programs, charter flights, privacy and air ambulance service.**

**The information that you provide in your complaint or comment form will be provided to the appropriate airline or ticket agent. More detailed information about DOT's complaint handling process, and other helpful information for air travelers is available here.**

**The required Privacy Act statement applicable to any information you provide is available here.**

Items marked with a * are required.

| Personal Information: | | |
|---|---|---|
| I am | Passenger ⌄ * | |
| Your Name: | | |
| Title: | ⌄ | First Name: YVONNE * |
| Last Name: | MARCUS * | |

| Contact Information: | | |
|---|---|---|
| Address: | PO BOX 126 | |
| City: | OJAI | State: California ⌄ |
| Zip Code: | 93023 | Home Phone: |

Either Email Address or Daytime Phone is required

| Email Address: uri@ntcf.org * | Verify Email Address: uri@ntcf.org * |
|---|---|
| Daytime Phone: 9098330065 * | |

**Would you like a copy of this submission sent to your email?**
● Yes ○ No

| Complaint/Comment Information: |
|---|
| Airline/Company: |
| DELTA AIR LINES ⌄ * (If not listed or not applicable select "OTHER") |

**Flight Date (if applicable):**  03/17/2022 🗓 (Date Format: mm/dd/yyyy)

**Flight Itinerary (if applicable):**

GULRGJ [INVALID] TLV JFK [DL 235] LAX [DL 1057] JFK [D   (Cities / Flight Number)

**Description of**
**Problem/Inquiry/Comment***

DELTA Airlines [hereinafter "DL"] violated
the Air Carrier Access Act and numerous
other  laws by refusing to grant my wife
and I mask  exemptions for our upcoming 17
MAR 2022  flights TLV-LAX-TLV and returning
10 APR 2022  [DL Itinerary GULRGJ].  We do
not agree with DL's illegal "Clearance- To-     (Chars left: 0)

### Attach a file (Optional):

**File Name:** (Please click the "Browse" button to select the file and click "Upload File"
button.)

[ Choose File ] No file chosen          [ Upload File ]

Uploaded file/s

| C:\fakepath\DL TLV LAX TLV 17 MAR to 10 APR 2022 UA.pdf | Remove file |

### Incidents of Sexual Misconduct:

If your complaint relates to or includes allegations of sexual misconduct, a copy of
your complaint will be sent to the FBI. Sexual misconduct is a broad term. It
encompasses any behavior or attempted behavior of a sexual nature that is
committed without consent or with someone incapable of consent, or by force,
intimidation, coercion, or manipulation. Sexual misconduct also includes physical or
verbal advances or harassment of a sexual nature, or public indecent exposure.

[ Submit ]   [ Reset ]   [ Cancel ]

**Note - Please only hit Submit once as our system sometimes takes a few moments to
process your complaint.**

*A federal agency may not conduct or sponsor, and a person is not required to respond
to, nor shall a person be subject to a penalty for failure to comply with a collection of
information subject to the requirements of the Paperwork Reduction Act unless that
collection of information displays a current valid OMB Control Number. The OMB
Control Number for this information collection is 2105-0568. Public reporting for this
collection of information is estimated to be approximately 15 minutes per response,
including the time for reviewing instructions, gathering the data needed, and
completing and reviewing the collection of information. All responses to this collection
of information are voluntary, and will be provided confidentiality to the extent allowed
by the Freedom of Information Act (FOIA). Send comments regarding this burden
estimate or any other aspect of this collection of information, including suggestions
for reducing this burden to: Aviation Consumer Protection Division, Office of the
Secretary, W96-473, 1200 New Jersey Avenue, SE, Washington, D.C. 20590.*

If you use the web complaint form above, we would welcome any comments that you may have
about that process.
Please email any such comments to airconsumer2@dot.gov.
(That address does not accept complaints about air service, only comments about the web
complaint form process.)



**United States**
## Department of Transportation

Home › Resources › For Individuals › Aviation Consumer Protection › File a consumer complaint › Complaint - Comment Form

# Air Travel Complaint – Comment Form Confirmation

## Your complaint has been submitted to the U.S. Department of Transportation.

**The U.S. Department of Transportation (Department or DOT) is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel. As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks for the Department to process your complaint. We apologize for the delay.**

The Department's Office of Aviation Consumer Protection is responsible for reviewing and responding to air travel service complaints against airlines and ticket agents. If your complaint or comment concerns airline safety, please contact the U.S. Department of Transportation's Federal Aviation Administration (FAA) at www.faa.gov/contact. If your complaint or comment concerns airline security, please contact the U.S. Department of Homeland Security's Transportation Security Administration (TSA) at TSA-ContactCenter@dhs.gov.

Consistent with our usual practice, we will forward your air travel service complaint to the airline or ticket agent that is the subject of your complaint, and ask that the entity reply to you. We will also review your complaint to determine whether the airline or ticket agent that is the subject of your complaint is complying with Federal aviation consumer protection and civil rights statutes and DOT regulations. We use complaints to track trends or spot areas of concern that may warrant further action in the future. Complaints may also serve as a basis for rulemaking, legislation, and research.

Further, the Office of Aviation Consumer Protection issues a monthly Air Travel Consumer Report (ATCR), which is designed to provide consumers with information on the quality of services provided by airlines. That report includes a section on complaints, which is based on the aggregate of air travel service complaints submitted to the Department. Your air travel service complaint will be included in the monthly ATCR, which is distributed to the industry and made available to the news media and the public so that both consumers and air travel companies can compare the complaint records of individual airlines and ticket agents.

If you are interested in obtaining copies of the ATCR or learning more about the rights of air travelers, we encourage you to visit our website at https://www.transportation.gov/airconsumer. The website contains clear, useful information about passenger rights, and highlights content on topics of greatest concern to consumers, including flight delays and cancellations, refunds, oversales, tarmac delays, and passengers' right to fly free of discrimination. It also has a collection of helpful tips and information to help you protect yourself while travelling.

From: airconsumer@dot.gov
Subject: Airconsumer Acknowledgement
Date: 28 February 2022 at 10:04
To: uri@ntcf.org



Thank you for contacting us concerning your air travel service issue. The U.S. Department of Transportation (DOT) seeks to ensure that airline passengers are treated fairly. Complaints and comments from consumers are helpful for determining whether airlines or ticket agents are complying with Federal aviation consumer protection and civil rights statutes and DOT regulations, and to track trends or spot areas of concern that warrant further action. Your complaint or inquiry will be assigned to an analyst for review and you will receive a more detailed acknowledgement.

The Department is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel.  As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks to process your complaint. We apologize for the delay.

Thank you again for taking the time to contact us.

Office of Aviation Consumer Protection
U.S. Department of Transportation

PERSONAL INFO:
Passenger - YVONNE MARCUS uri@ntcf.org

CONTACT INFO:
PO BOX 126 OJAI,CA 93023

Home Phone:
Daytime Phone: 9098330065

COMPLAINT INFO:
Airline Code: DL

Flight Date: 03/17/2022
Flight Itinerary: GULRGJ [INVALID] TLV JFK [DL 235] LAX [DL 1057] JFK [DL 323] TLV [DL 234]

Description of Problem/Inquiry/Comment:
   DELTA Airlines [hereinafter "DL"] violated   the Air Carrier Access Act and numerous other   laws by refusing to grant my wife and I mask   exemptions for our upcoming 17 MAR 2022   flights TLV-LAX-TLV and returning 10 APR 2022   [DL Itinerary GULRGJ].  We do not agree with  DL's illegal "Clearance- To-Fly" process  which has determined that our  ability  to  travel from TLV to LAX with mask  exemptions  due to our disabilities, can only  be  obtained on the day of travel and that  Delta will make no exception to this rule, in   violation of multiple Codes of Federal  Regulations against discrimination which   constitutes a conspiracy to deprive us of our   civil rights.  DL fraudulently informed us  throughout the  online ticket purchase pages  that "federal  law" requires each person to  wear a mask  while flying. However, Congress  has never  passed such a law, nor has DOT or  any other  agency promulgated such a  regulation. The DOT  itself on its own FAQ  section on its website  specifically states  that wearing masks is NOT  a federal law. See  attachments. DL cites no  provision of the  U.S. Code or the Code of  Federal Regulations  to support its false  claim that "federal  law" requires face  coverings.  We cannot  wear masks due to our medical  conditions. DL required us to submit  exemption requests in  advance and wait until  the day of travel to  see "if we might be  cleared" to fly without  masks, which is  illegal. 14 CFR § 382.25.  We submitted the  forms as a courtesy despite  it being unlawful to demand advance notice.  We included, as a courtesy, signed medical   summaries from our family physicians that we   should not wear a mask. We wrote that DL's   mask policy is illegal in numerous ways  including that airlines by federal law are   NOT permitted to impose certain requirements   or conditions on a person requesting an  exemption from the mask mandate. 49 USC §   41705(a). All of these things these are all   gross violations of the ADA and the ACAA.  DL  may not require a medical certificate from  disabled passengers who ask for a mask   exemption and cannot hold the power of denial   to fly without a mask over the passenger's   head until the moment they check-in at the   airport. 14 CFR § 382.23(a).  DL may not  require disabled passengers  needing a mask  exemption to undergo a

382.23(a). DL may not require disabled passengers needing a mask exemption to undergo a medical screening nor ask for a medical certificate. 14 CFR § 382.23(d) or change the seat assignment of an ME passenger. 14 CFR § 382.87(a). DL falsely relies upon CDC's Order of 29 Jan 2021, TSA's Security Directive of 31 Jan 2021 and the ACAA's implementation of 14 CFR 382. Even though the CDC has relaxed it's MANDATE for masking to 70% of the United States as of 25 Feb 2022, they continue to mandate masks in the most secure and clear air space on the planet, that of an airline cabin at 36,000 feet. DL and their employees must be fined for violating the ACAA and Federal regulations and conspiring to interfere with our civil rights. DOT must also enjoin DL from continui

This is System generated message, and a response to this email will not be delivered. 02/28/2022 02:56:49



Home > Resources > For Individuals > Aviation Consumer Protection > File a consumer complaint

## Air Travel Service Complaint or Comment Form  (Not Related to Airline Safety or Security Issues)

Please use this form to file a complaint or comment about service you received or requested from an airline or ticket agent that does not relate to airline safety or security. This may include, but is not limited to, topics such as flight delays and cancellations, overbooking, disability, tarmac delays, baggage, discrimination, refunds, ticketing practices, family seating, frequent flyer programs, charter flights, privacy and air ambulance service.

The information that you provide in your complaint or comment form will be provided to the appropriate airline or ticket agent. More detailed information about DOT's complaint handling process, and other helpful information for air travelers is available here.

The required Privacy Act statement applicable to any information you provide is available here.

Items marked with a * are required.

| Personal Information: | | |
|---|---|---|
| **I am** | Passenger ⌄ | * |

**Your Name:**

| **Title:** | ⌄ | **First Name:** | URI | * |
|---|---|---|---|---|
| **Last Name:** | MARCUS | | * | |

| Contact Information: | | |
|---|---|---|
| **Address:** | PO BOX 126 | |
| **City:** | OJAI | **State:** California ⌄ |
| **Zip Code:** | 93024 | **Home Phone:** |

┌─ Either Email Address or Daytime Phone is required ─┐

| **Email Address:** uri@ntcf.org * | **Verify Email Address:** uri@ntcf.org * |
|---|---|
| **Daytime Phone:** 9098330065 * | |

└────────────────────────────────────┘

**Would you like a copy of this submission sent to your email?**
◯ Yes  ⦿ No

| Complaint/Comment Information: |
|---|

**Airline/Company:**
DELTA AIR LINES ⌄  *  (If not listed or not applicable select "OTHER")

Flight Date (if applicable):     03/17/2022   🗓 (Date Format: mm/dd/yyyy)

Flight Itinerary (if applicable):

GULRGJ [INVALID] TLV JFK [DL 235] LAX DL 1057 JFK DL 3   (Cities / Flight Number)

**Description of Problem/Inquiry/Comment***

DELTA Airlines [hereinafter "DL"] violated
the Air Carrier Access Act and numerous
other  laws by refusing to grant my wife
and I mask  exemptions for our upcoming 17
MAR 2022  flights TLV-LAX-TLV and returning
10 APR 2022  [DL Itinerary GULRGJ].  We do
not agree with DL's illegal "Clearance- To-     (Chars left: 0)

### Attach a file (Optional):

**File Name: (Please click the "Browse" button to select the file and click "Upload File" button.)**

| Choose File | No file chosen |     | Upload File |

Uploaded file/s

C:\fakepath\DL TLV LAX TLV 17 MAR to 10 APR 2022 UA.pdf   Remove file

### Incidents of Sexual Misconduct:

If your complaint relates to or includes allegations of sexual misconduct, a copy of your complaint will be sent to the FBI. Sexual misconduct is a broad term. It encompasses any behavior or attempted behavior of a sexual nature that is committed without consent or with someone incapable of consent, or by force, intimidation, coercion, or manipulation. Sexual misconduct also includes physical or verbal advances or harassment of a sexual nature, or public indecent exposure.

Submit     Reset     Cancel

---

**Note - Please only hit Submit once as our system sometimes takes a few moments to process your complaint.**

*A federal agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a current valid OMB Control Number. The OMB Control Number for this information collection is 2105-0568. Public reporting for this collection of information is estimated to be approximately 15 minutes per response, including the time for reviewing instructions, gathering the data needed, and completing and reviewing the collection of information. All responses to this collection of information are voluntary, and will be provided confidentiality to the extent allowed by the Freedom of Information Act (FOIA). Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: Aviation Consumer Protection Division, Office of the Secretary, W96-473, 1200 New Jersey Avenue, SE, Washington, D.C. 20590.*

If you use the web complaint form above, we would welcome any comments that you may have about that process.
Please email any such comments to airconsumer2@dot.gov.
(That address does not accept complaints about air service, only comments about the web complaint form process.)

2022/4/5 下午5:22                         Air Travel Complaint Comment Form Confirmation



## United States
### Department of Transportation

Home › Resources › For Individuals › Aviation Consumer Protection › File a consumer complaint › Complaint - Comment Form

# Air Travel Complaint – Comment Form Confirmation

## Your complaint has been submitted to the U.S. Department of Transportation.

**The U.S. Department of Transportation (Department or DOT) is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel. As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks for the Department to process your complaint. We apologize for the delay.**

The Department's Office of Aviation Consumer Protection is responsible for reviewing and responding to air travel service complaints against airlines and ticket agents. If your complaint or comment concerns airline safety, please contact the U.S. Department of Transportation's Federal Aviation Administration (FAA) at www.faa.gov/contact. If your complaint or comment concerns airline security, please contact the U.S. Department of Homeland Security's Transportation Security Administration (TSA) at TSA-ContactCenter@dhs.gov.

Consistent with our usual practice, we will forward your air travel service complaint to the airline or ticket agent that is the subject of your complaint, and ask that the entity reply to you. We will also review your complaint to determine whether the airline or ticket agent that is the subject of your complaint is complying with Federal aviation consumer protection and civil rights statutes and DOT regulations. We use complaints to track trends or spot areas of concern that may warrant further action in the future. Complaints may also serve as a basis for rulemaking, legislation, and research.

Further, the Office of Aviation Consumer Protection issues a monthly Air Travel Consumer Report (ATCR), which is designed to provide consumers with information on the quality of services provided by airlines. That report includes a section on complaints, which is based on the aggregate of air travel service complaints submitted to the Department. Your air travel service complaint will be included in the monthly ATCR, which is distributed to the industry and made available to the news media and the public so that both consumers and air travel companies can compare the complaint records of individual airlines and ticket agents.

If you are interested in obtaining copies of the ATCR or learning more about the rights of air travelers, we encourage you to visit our website at https://www.transportation.gov/airconsumer. The website contains clear, useful information about passenger rights, and highlights content on topics of greatest concern to consumers, including flight delays and cancellations, refunds, oversales, tarmac delays, and passengers' right to fly free of discrimination. It also has a collection of helpful tips and information to help you protect yourself while travelling.

From: airconsumer@dot.gov
Subject: Airconsumer Acknowledgement
Date: 28 February 2022 at 9:52
To: uri@ntcf.org



Thank you for contacting us concerning your air travel service issue. The U.S. Department of Transportation (DOT) seeks to ensure that airline passengers are treated fairly. Complaints and comments from consumers are helpful for determining whether airlines or ticket agents are complying with Federal aviation consumer protection and civil rights statutes and DOT regulations, and to track trends or spot areas of concern that warrant further action. Your complaint or inquiry will be assigned to an analyst for review and you will receive a more detailed acknowledgment.

The Department is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel.  As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks to process your complaint. We apologize for the delay.

Thank you again for taking the time to contact us.

Office of Aviation Consumer Protection
U.S. Department of Transportation

PERSONAL INFO:
Passenger - URI MARCUS uri@ntcf.org

CONTACT INFO:
PO BOX 126 OJAI,CA 93023

Home Phone:
Daytime Phone: 9098330065

COMPLAINT INFO:
Airline Code: DL

Flight Date: 03/17/2022
Flight Itinerary: GULRGJ [INVALID] TLV JFK [DL 235] LAX [DL 1057] JFK [DL 323] TLV [DL 234]

Description of Problem/Inquiry/Comment:
   DELTA Airlines [hereinafter "DL"] violated   the Air Carrier Access Act and numerous other   laws by refusing to grant my wife and I mask   exemptions for our upcoming 17 MAR 2022   flights TLV-LAX-TLV and returning 10 APR 2022   [DL Itinerary GULRGJ].  We do not agree with  DL's illegal "Clearance- To-Fly" process  which has determined that our  ability  to  travel from TLV to LAX with mask  exemptions  due to our disabilities, can only  be  obtained on the day of travel and that  Delta will make no exception to this rule, in   violation of multiple Codes of Federal   Regulations against discrimination which   constitutes a conspiracy to deprive us of our   civil rights.  DL fraudulently informed us  throughout the  online ticket purchase pages  that "federal  law" requires each person to  wear a mask  while flying. However, Congress  has never  passed such a law, nor has DOT or  any other  agency promulgated such a  regulation. The DOT  itself on its own FAQ  section on its website  specifically states  that wearing masks is NOT  a federal law. See  attachments. DL cites no  provision of the  U.S. Code or the Code of  Federal Regulations  to support its false  claim that "federal  law" requires face  coverings.  We cannot  wear masks due to our medical  conditions. DL  required us to submit  exemption requests in  advance and wait until  the day of travel to  see "if we might be  cleared" to fly without  masks, which is  illegal. 14 CFR § 382.25.   We submitted the  forms as a courtesy despite   it being unlawful to demand advance notice.   We included, as a courtesy, signed medical   summaries from our family physicians that we   should not wear a mask. We wrote that DL's   mask policy is illegal in numerous ways   including that airlines by federal law are   NOT permitted to impose certain requirements    or conditions on a person requesting an  exemption from the mask mandate. 49 USC §   41705(a). All of these things these are all   gross violations of the ADA and the ACAA.  DL  may not require a medical certificate from   disabled passengers who ask for a mask   exemption and cannot hold the power of denial   to fly without a mask over the passenger's   head until the moment they check-in at the   airport. 14 CFR § 382.23(a).  DL may not  require disabled passengers  needing a mask  exemption to undergo a

382.23(d).  DL may not require disabled passengers' needing a mask  exemption to undergo a medical  screening nor  ask for a medical certificate.  14 CFR §  382.23(d) or change the seat assignment of  an ME passenger. 14 CFR §  382.87(a).  DL  falsely relies upon CDC's Order of  29 Jan   2021, TSA's Security Directive of 31 Jan 2021   and the ACAA's implementation of 14 CFR 382.   Even though the CDC has relaxed it's MANDATE   for masking to 70% of the United States as of   25 Feb 2022, they continue to mandate masks   in the most secure and clear air space on the   planet, that of an airline cabin at 36,000   feet.  DL and their employees must be fined  for violating the ACAA and Federal  regulations  and conspiring to interfere with  our civil  rights. DOT must also enjoin DL  from  continui

This is System generated message, and a response to this email will not be delivered.
02/28/2022 02:51:08

**Plaintiffs' Exhibit 35**

Home > Resources > For Individuals > Aviation Consumer Protection > File a consumer complaint

# Air Travel Service Complaint or Comment Form  (Not Related to Airline Safety or Security Issues)

**Please use this form to file a complaint or comment about service you received or requested from an airline or ticket agent that does not relate to airline safety or security. This may include, but is not limited to, topics such as flight delays and cancellations, overbooking, disability, tarmac delays, baggage, discrimination, refunds, ticketing practices, family seating, frequent flyer programs, charter flights, privacy and air ambulance service.**

**The information that you provide in your complaint or comment form will be provided to the appropriate airline or ticket agent. More detailed information about DOT's complaint handling process, and other helpful information for air travelers is available here.**

**The required Privacy Act statement applicable to any information you provide is available here.**

<span style="color:red">Items marked with a * are required.</span>

| Personal Information: |
|---|

**I am**  Passenger  *

**Your Name:**

**Title:**     **First Name:**  YVONNE  *

**Last Name:**  MARCUS  *

| Contact Information: |
|---|

**Address:**  PO BOX 126

**City:**  OJAI   **State:**  California

**Zip Code:**  93024   **Home Phone:**

Either Email Address or Daytime Phone is required

**Email Address:**  uri@ntcf.org  *   **Verify Email Address:**  uri@ntcf.org  *

**Daytime Phone:**  9098330065  *

**Would you like a copy of this submission sent to your email?**
● Yes ○ No

| Complaint/Comment Information: |
|---|

**Airline/Company:**
HAWAIIAN AIRLINES   *  (If not listed or not applicable select "OTHER")

**Flight Date (if applicable):**

07/07/2022 📅 (Date Format: mm/dd/yyyy)

**Flight Itinerary (if applicable):**

07 JUL 2022 LAX HNL [HA 9] 14 JUL 2022 HNL LAX [HA 10] (Cities / Flight Number)

**Description of Problem/Inquiry/Comment***

numerous other laws by refusing to grant
IN ADVANCE mask exemptions for our
upcoming 07 JUL 2022 flights LAX-HNL-LAX
and returning 14 JUL 2022. We do not
agree with HA's illegal policy to require
us to complete a medical assessment with
MedLink at the airport in order to be
granted an exemption. HA may not require

(Chars left: 0)

### Attach a file (Optional):

**File Name:** (Please click the "Browse" button to select the file and click "Upload File" button.)

[Choose File] No file chosen          [Upload File]

Uploaded file/s

C:\fakepath\HA LAX HNL LAX 07 JUL to 14 JUL 2022 UA.pdf   Remove file

### Incidents of Sexual Misconduct:

If your complaint relates to or includes allegations of sexual misconduct, a copy of your complaint will be sent to the FBI. Sexual misconduct is a broad term. It encompasses any behavior or attempted behavior of a sexual nature that is committed without consent or with someone incapable of consent, or by force, intimidation, coercion, or manipulation. Sexual misconduct also includes physical or verbal advances or harassment of a sexual nature, or public indecent exposure.

[Submit]  [Reset]  [Cancel]

**Note - Please only hit Submit once as our system sometimes takes a few moments to process your complaint.**

*A federal agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a current valid OMB Control Number. The OMB Control Number for this information collection is 2105-0568. Public reporting for this collection of information is estimated to be approximately 15 minutes per response, including the time for reviewing instructions, gathering the data needed, and completing and reviewing the collection of information. All responses to this collection of information are voluntary, and will be provided confidentiality to the extent allowed by the Freedom of Information Act (FOIA). Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: Aviation Consumer Protection Division, Office of the Secretary, W96-473, 1200 New Jersey Avenue, SE, Washington, D.C. 20590.*

If you use the web complaint form above, we would welcome any comments that you may have about that process.

Please email any such comments to airconsumer2@dot.gov.

(That address does not accept complaints about air service, only comments about the web complaint form process.)



United States
## Department of Transportation

Home › Resources › For Individuals › Aviation Consumer Protection › File a consumer complaint › Complaint - Comment Form

# Air Travel Complaint – Comment Form Confirmation

## Your complaint has been submitted to the U.S. Department of Transportation.

**The U.S. Department of Transportation (Department or DOT) is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel. As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks for the Department to process your complaint. We apologize for the delay.**

The Department's Office of Aviation Consumer Protection is responsible for reviewing and responding to air travel service complaints against airlines and ticket agents. If your complaint or comment concerns airline safety, please contact the U.S. Department of Transportation's Federal Aviation Administration (FAA) at www.faa.gov/contact. If your complaint or comment concerns airline security, please contact the U.S. Department of Homeland Security's Transportation Security Administration (TSA) at TSA-ContactCenter@dhs.gov.

Consistent with our usual practice, we will forward your air travel service complaint to the airline or ticket agent that is the subject of your complaint, and ask that the entity reply to you. We will also review your complaint to determine whether the airline or ticket agent that is the subject of your complaint is complying with Federal aviation consumer protection and civil rights statutes and DOT regulations. We use complaints to track trends or spot areas of concern that may warrant further action in the future. Complaints may also serve as a basis for rulemaking, legislation, and research.

Further, the Office of Aviation Consumer Protection issues a monthly Air Travel Consumer Report (ATCR), which is designed to provide consumers with information on the quality of services provided by airlines. That report includes a section on complaints, which is based on the aggregate of air travel service complaints submitted to the Department. Your air travel service complaint will be included in the monthly ATCR, which is distributed to the industry and made available to the news media and the public so that both consumers and air travel companies can compare the complaint records of individual airlines and ticket agents.

If you are interested in obtaining copies of the ATCR or learning more about the rights of air travelers, we encourage you to visit our website at https://www.transportation.gov/airconsumer. The website contains clear, useful information about passenger rights, and highlights content on topics of greatest concern to consumers, including flight delays and cancellations, refunds, oversales, tarmac delays, and passengers' right to fly free of discrimination. It also has a collection of helpful tips and information to help you protect yourself while travelling.



From: airconsumer@dot.gov
Subject: Airconsumer Acknowledgement
Date: 28 February 2022 at 11:39
To: uri@ntcf.org

Thank you for contacting us concerning your air travel service issue. The U.S. Department of Transportation (DOT) seeks to ensure that airline passengers are treated fairly. Complaints and comments from consumers are helpful for determining whether airlines or ticket agents are complying with Federal aviation consumer protection and civil rights statutes and DOT regulations, and to track trends or spot areas of concern that warrant further action. Your complaint or inquiry will be assigned to an analyst for review and you will receive a more detailed acknowledgement.

The Department is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel.  As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks to process your complaint. We apologize for the delay.

Thank you again for taking the time to contact us.

Office of Aviation Consumer Protection
U.S. Department of Transportation

PERSONAL INFO:
Passenger - YVONNE MARCUS uri@ntcf.org

CONTACT INFO:
PO BOX 126 OJAI,CA 93024

Home Phone:
Daytime Phone: 9098330065

COMPLAINT INFO:
Airline Code: HA

Flight Date: 07/07/2022
Flight Itinerary: 07 JUL 2022 LAX HNL [HA 9] 14 JUL 2022 HNL LAX [HA 10]

Description of Problem/Inquiry/Comment:
   HAWAIIAN Airlines [hereinafter "HA"] violated   the Air Carrier Access Act and numerous other laws by refusing to grant IN ADVANCE mask   exemptions for our upcoming 07 JUL 2022  flights LAX-HNL-LAX and returning 14 JUL  2022.  We do not agree with HA's illegal  policy to  require us to complete a medical  assessment  with MedLink at the airport in  order to be  granted an exemption.  HA may  not require disabled passengers  needing a  mask exemption to undergo a medical   screening nor ask for a medical certificate.   14 CFR § 382.23(d) or change the seat assignment of an ME passenger. 14 CFR §   382.87(a).  HA is not our doctor and HA  cannot practice  medicine without a license.  They cannot  require a medical assessment  with their medical professional at the  airport or else  ask us to "reconsider our  travel" plans,  which is a denial for us to  travel on their  airline.  HA may not require  a medical certificate from  disabled passengers who ask for a mask  exemption and  cannot hold the power of denial  to fly  without a mask over the passenger's  head  until the moment they check-in at the   airport. 14 CFR § 382.23(a).  Our inability  to travel without a mask is due  to our  disabilities, and HA cannot force us to wait  until the day of travel to know if we  can  even board or not without a mask. All of   this is in violation of 14 CFR § 382.25. It   is discrimination and constitutes a   conspiracy to deprive us of our civil rights.   HA fraudulently informs us throughout their   website pages that "federal law" requires each person to wear a mask while flying.   However, Congress has never passed such a   law, nor has DOT or any other agency   promulgated such a regulation. The DOT itself   on its own FAQ section on its website   specifically states that wearing masks is NOT   a federal law. See attachments. HA cites no   provision of the U.S. Code or the Code of   Federal Regulations to support its false   claim that "federal law" requires face   coverings.  We submitted medical summaries  that we cannot  not wear a mask, signed by  our family  physicians as a courtesy despite  it being  unlawful to demand such  documentation.  Federal law does NOT permit  an airline to  impose certain requirements or  conditions on  a person requesting an  exemption from

airline to impose certain requirements or conditions on a person requesting an exemption from the mask mandate. 49 USC § 41705(a). All of these things these are all gross violations of the ADA and the ACAA. HA falsely relies upon CDC's Order of 29 Jan 2021, TSA's Security Directive of 31 Jan 2021 and the ACAA's implementation of 14 CFR 382. Even though the CDC has relaxed it's MANDATE for masking to 70% of the United States as of 25 Feb 2022, they continue to mandate masks in the most secure and clear air space on the planet, that of an airline cabin at 36,000 feet, which they admit to on their website. See the attached. HA and their employees must be fined for violating the ACAA and Federal regulations and conspiring to interfere with our civil rights. DOT must also enjoin HA from continuing to r

This is System generated message, and a response to this email will not be delivered. 02/28/2022 04:32:02



Home › Resources › For Individuals › Aviation Consumer Protection › File a consumer complaint

# Air Travel Service Complaint or Comment Form  (Not Related to Airline Safety or Security Issues)

**Please use this form to file a complaint or comment about service you received or requested from an airline or ticket agent that does not relate to airline safety or security. This may include, but is not limited to, topics such as flight delays and cancellations, overbooking, disability, tarmac delays, baggage, discrimination, refunds, ticketing practices, family seating, frequent flyer programs, charter flights, privacy and air ambulance service.**

**The information that you provide in your complaint or comment form will be provided to the appropriate airline or ticket agent. More detailed information about DOT's complaint handling process, and other helpful information for air travelers is available here.**

**The required Privacy Act statement applicable to any information you provide is available here.**

Items marked with a * are required.

| Personal Information: |
|---|

**I am** Passenger ⌄ *

**Your Name:**

**Title:** ⌄   **First Name:** URI *

**Last Name:** MARCUS *

| Contact Information: |
|---|

**Address:** PO BOX 126

**City:** OJAI   **State:** California ⌄

**Zip Code:** 93024   **Home Phone:**

Either Email Address or Daytime Phone is required

**Email Address:** uri@ntcf.org *   **Verify Email Address:** uri@ntcf.org *

**Daytime Phone:** 9098330065 *

**Would you like a copy of this submission sent to your email?**
◉ Yes ○ No

| Complaint/Comment Information: |
|---|

**Airline/Company:**
HAWAIIAN AIRLINES ⌄ * (If not listed or not applicable select "OTHER")

Flight Date (if applicable):     07/07/2022   📅 (Date Format: mm/dd/yyyy)

Flight Itinerary (if applicable):

07 JUL 2022 LAX HNL [HA 9] 14 JUL 2022 HNL LAX [HA 10]   (Cities / Flight Number)

**Description of Problem/Inquiry/Comment***

in the most secure and clear air space on the  planet, that of an airline cabin at 36,000  feet, which they admit to on their website.  See the attached.  HA and their employees must be fined for  violating the ACAA and Federal regulations  and conspiring to interfere with our civil

(Chars left: 0)

**Attach a file (Optional):**

**File Name:** (Please click the "Browse" button to select the file and click "Upload File" button.)

Choose File   No file chosen         Upload File

Uploaded file/s

C:\fakepath\HA LAX HNL LAX 07 JUL to 14 JUL 2022 UA.pdf   Remove file

**Incidents of Sexual Misconduct:**

If your complaint relates to or includes allegations of sexual misconduct, a copy of your complaint will be sent to the FBI. Sexual misconduct is a broad term. It encompasses any behavior or attempted behavior of a sexual nature that is committed without consent or with someone incapable of consent, or by force, intimidation, coercion, or manipulation. Sexual misconduct also includes physical or verbal advances or harassment of a sexual nature, or public indecent exposure.

Submit    Reset    Cancel

**Note - Please only hit Submit once as our system sometimes takes a few moments to process your complaint.**

*A federal agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a current valid OMB Control Number. The OMB Control Number for this information collection is 2105-0568. Public reporting for this collection of information is estimated to be approximately 15 minutes per response, including the time for reviewing instructions, gathering the data needed, and completing and reviewing the collection of information. All responses to this collection of information are voluntary, and will be provided confidentiality to the extent allowed by the Freedom of Information Act (FOIA). Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: Aviation Consumer Protection Division, Office of the Secretary, W96-473, 1200 New Jersey Avenue, SE, Washington, D.C. 20590.*

If you use the web complaint form above, we would welcome any comments that you may have about that process.
Please email any such comments to airconsumer2@dot.gov.
(That address does not accept complaints about air service, only comments about the web complaint form process.)

2/23/22, 4:21 PM                          Air Travel Complaint - Comment Form Confirmation



**United States**
## Department of Transportation

Home › Resources › For Individuals › Aviation Consumer Protection › File a consumer complaint › Complaint - Comment Form

# Air Travel Complaint – Comment Form Confirmation

## Your complaint has been submitted to the U.S. Department of Transportation.

**The U.S. Department of Transportation (Department or DOT) is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel. As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks for the Department to process your complaint. We apologize for the delay.**

The Department's Office of Aviation Consumer Protection is responsible for reviewing and responding to air travel service complaints against airlines and ticket agents. If your complaint or comment concerns airline safety, please contact the U.S. Department of Transportation's Federal Aviation Administration (FAA) at www.faa.gov/contact. If your complaint or comment concerns airline security, please contact the U.S. Department of Homeland Security's Transportation Security Administration (TSA) at TSA-ContactCenter@dhs.gov.

Consistent with our usual practice, we will forward your air travel service complaint to the airline or ticket agent that is the subject of your complaint, and ask that the entity reply to you. We will also review your complaint to determine whether the airline or ticket agent that is the subject of your complaint is complying with Federal aviation consumer protection and civil rights statutes and DOT regulations. We use complaints to track trends or spot areas of concern that may warrant further action in the future. Complaints may also serve as a basis for rulemaking, legislation, and research.

Further, the Office of Aviation Consumer Protection issues a monthly Air Travel Consumer Report (ATCR), which is designed to provide consumers with information on the quality of services provided by airlines. That report includes a section on complaints, which is based on the aggregate of air travel service complaints submitted to the Department. Your air travel service complaint will be included in the monthly ATCR, which is distributed to the industry and made available to the news media and the public so that both consumers and air travel companies can compare the complaint records of individual airlines and ticket agents.

If you are interested in obtaining copies of the ATCR or learning more about the rights of air travelers, we encourage you to visit our website at https://www.transportation.gov/airconsumer. The website contains clear, useful information about passenger rights, and highlights content on topics of greatest concern to consumers, including flight delays and cancellations, refunds, oversales, tarmac delays, and passengers' right to fly free of discrimination. It also has a collection of helpful tips and information to help you protect yourself while travelling.

From: airconsumer@dot.gov
Subject: Airconsumer Acknowledgement
Date: 28 February 2022 at 11:30
To: uri@ntcf.org



Thank you for contacting us concerning your air travel service issue. The U.S. Department of Transportation (DOT) seeks to ensure that airline passengers are treated fairly. Complaints and comments from consumers are helpful for determining whether airlines or ticket agents are complying with Federal aviation consumer protection and civil rights statutes and DOT regulations, and to track trends or spot areas of concern that warrant further action. Your complaint or inquiry will be assigned to an analyst for review and you will receive a more detailed acknowledgment.

The Department is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel.  As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks to process your complaint. We apologize for the delay.

Thank you again for taking the time to contact us.

Office of Aviation Consumer Protection
U.S. Department of Transportation

PERSONAL INFO:
Passenger - URI MARCUS uri@ntcf.org

CONTACT INFO:
PO BOX 126 OJAI,CA 93024

Home Phone:
Daytime Phone: 9098330065

COMPLAINT INFO:
Airline Code: HA

Flight Date: 07/07/2022
Flight Itinerary: 07 JUL 2022 LAX HNL [HA 9] 14 JUL 2022 HNL LAX [HA 10]

Description of Problem/Inquiry/Comment:
   HAWAIIAN Airlines [hereinafter "HA"] violated   the Air Carrier Access Act and numerous other laws by refusing to grant IN ADVANCE mask  exemptions for our upcoming 07 JUL 2022  flights LAX-HNL-LAX and returning 14 JUL  2022.  We do not agree with HA's illegal  policy to  require us to complete a medical  assessment  with MedLink at the airport in  order to be  granted an exemption. HA may  not require disabled passengers  needing a  mask exemption to undergo a medical   screening nor ask for a medical certificate.   14 CFR § 382.23(d) or change the seat  assignment of an ME passenger. 14 CFR §   382.87(a).  HA is not our doctor and HA  cannot  practice  medicine without a license.  They cannot  require a medical assessment  with their  medical professional at the  airport or else  ask us to "reconsider our  travel" plans,  which is a denial for us to  travel on their  airline.  HA may not require  a medical certificate from  disabled  passengers who ask for a mask  exemption and  cannot hold the power of denial  to fly  without a mask over the passenger's  head  until the moment they check-in at the   airport. 14 CFR § 382.23(a).  Our inability  to travel without a mask is due to  our  disabilities, and HA cannot force us to wait  until the day of travel to know if we  can  even board or not without a mask. All of   this is in violation of 14 CFR § 382.25. It   is discrimination and constitutes a   conspiracy to deprive us of our civil rights.   HA fraudulently informs us throughout their   website pages that "federal law" requires each person to wear a mask while flying.   However, Congress has never passed such a   law, nor has DOT or any other agency   promulgated such a regulation. The DOT itself   on its own FAQ section on its website   specifically states that wearing masks is NOT   a federal law. See attachments. HA cites no   provision of the U.S. Code or the Code of   Federal Regulations to support its false   claim that "federal law" requires face   coverings.  We submitted medical summaries  that we cannot  not wear a mask, signed by  our family  physicians as a courtesy despite  it being  unlawful to demand such  documentation.  Federal law does NOT permit  an airline to  impose certain requirements or  conditions on  a person requesting an  exemption from

airline to  impose certain requirements or  conditions on  a person requesting an  exemption from
the  mask mandate. 49 USC §  41705(a). All of these  things these are all  gross violations of the
ADA and the ACAA.   HA falsely relies upon CDC's Order of  29 Jan   2021, TSA's Security
Directive of 31 Jan 2021   and the ACAA's implementation of 14 CFR 382.   Even though the CDC
has relaxed it's MANDATE   for masking to 70% of the United States as of   25 Feb 2022, they
continue to mandate masks   in the most secure and clear air space on the   planet, that of an
airline cabin at 36,000   feet, which they admit to on their website.   See the attached.  HA and their
employees  must be fined for  violating the ACAA and  Federal regulations  and conspiring to
interfere with our civil  rights. DOT must  also enjoin HA from  continuing to r

  This is System generated message, and a response to this email will not be delivered.
02/28/2022 04:23:28

Plaintiffs' Exhibit 36

Home › Resources › For Individuals › Aviation Consumer Protection › File a consumer complaint

# Air Travel Service Complaint or Comment Form  (Not Related to Airline Safety or Security Issues)

**Please use this form to file a complaint or comment about service you received or requested from an airline or ticket agent that does not relate to airline safety or security. This may include, but is not limited to, topics such as flight delays and cancellations, overbooking, disability, tarmac delays, baggage, discrimination, refunds, ticketing practices, family seating, frequent flyer programs, charter flights, privacy and air ambulance service.**

**The information that you provide in your complaint or comment form will be provided to the appropriate airline or ticket agent. More detailed information about DOT's complaint handling process, and other helpful information for air travelers is available here.**

**The required Privacy Act statement applicable to any information you provide is available here.**

<span style="color:red">Items marked with a * are required.</span>

| Personal Information: |
|---|

**I am**  Passenger  ∨ *

**Your Name:**

**Title:**  ∨  **First Name:**  YVONNE  *

**Last Name:**  MARCUS  *

| Contact Information: |
|---|

**Address:**  PO BOX 126

**City:**  OJAI   **State:**  California  ∨

**Zip Code:**  93024   **Home Phone:**

— Either Email Address or Daytime Phone is required —

**Email Address:**  uri@ntcf.org  *   **Verify Email Address:**  uri@ntcf.org  *

**Daytime Phone:**  9098330065  *

**Would you like a copy of this submission sent to your email?**
◉ Yes  ○ No

| Complaint/Comment Information: |
|---|

**Airline/Company:**
SOUTHWEST AIRLINES  ∨ *  <span style="color:red">(If not listed or not applicable select "OTHER")</span>

**Flight Date (if applicable):**    06/16/2022 📅 (Date Format: mm/dd/yyyy)

**Flight Itinerary (if applicable):**

 BOI DEN, HOU PHX, LAX LAS, LAS LAX [2NVJ56, 2NPBTM, 2 (Cities / Flight Number)

**Description of Problem/Inquiry/Comment***

This complaint against SOUTHWEST Airlines
[hereinafter "SWA"] is also against DOT for
"guiding" SWA to act on illegal orders in
connection with three SWA Itineraries:
2NVJ56, 2NPBTM and 2NJJSB. For example:  A
disabled person cannot be required to
notify SWA "at least 7 days prior to the

(Chars left: 3000)

### Attach a file (Optional):

**File Name:** (Please click the "Browse" button to select the file and click "Upload File" button.)

[Choose File] No file chosen          [Upload File]

Uploaded file/s

C:\fakepath\SWA BOI DEN HOU PHX LAX LAS LAX UA.pdf    Remove file

### Incidents of Sexual Misconduct:

If your complaint relates to or includes allegations of sexual misconduct, a copy of your complaint will be sent to the FBI. Sexual misconduct is a broad term. It encompasses any behavior or attempted behavior of a sexual nature that is committed without consent or with someone incapable of consent, or by force, intimidation, coercion, or manipulation. Sexual misconduct also includes physical or verbal advances or harassment of a sexual nature, or public indecent exposure.

[Submit]  [Reset]  [Cancel]

**Note - Please only hit Submit once as our system sometimes takes a few moments to process your complaint.**

*A federal agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a current valid OMB Control Number. The OMB Control Number for this information collection is 2105-0568. Public reporting for this collection of information is estimated to be approximately 15 minutes per response, including the time for reviewing instructions, gathering the data needed, and completing and reviewing the collection of information. All responses to this collection of information are voluntary, and will be provided confidentiality to the extent allowed by the Freedom of Information Act (FOIA). Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: Aviation Consumer Protection Division, Office of the Secretary, W96-473, 1200 New Jersey Avenue, SE, Washington, D.C. 20590.*

If you use the web complaint form above, we would welcome any comments that you may have about that process.
Please email any such comments to airconsumer2@dot.gov.
(That address does not accept complaints about air service, only comments about the web complaint form process.)



United States
## Department of Transportation

Home › Resources › For Individuals › Aviation Consumer Protection › File a consumer complaint › Complaint - Comment Form

# Air Travel Complaint – Comment Form Confirmation

## Your complaint has been submitted to the U.S. Department of Transportation.

**The U.S. Department of Transportation (Department or DOT) is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel. As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks for the Department to process your complaint. We apologize for the delay.**

The Department's Office of Aviation Consumer Protection is responsible for reviewing and responding to air travel service complaints against airlines and ticket agents. If your complaint or comment concerns airline safety, please contact the U.S. Department of Transportation's Federal Aviation Administration (FAA) at www.faa.gov/contact. If your complaint or comment concerns airline security, please contact the U.S. Department of Homeland Security's Transportation Security Administration (TSA) at TSA-ContactCenter@dhs.gov.

Consistent with our usual practice, we will forward your air travel service complaint to the airline or ticket agent that is the subject of your complaint, and ask that the entity reply to you. We will also review your complaint to determine whether the airline or ticket agent that is the subject of your complaint is complying with Federal aviation consumer protection and civil rights statutes and DOT regulations. We use complaints to track trends or spot areas of concern that may warrant further action in the future. Complaints may also serve as a basis for rulemaking, legislation, and research.

Further, the Office of Aviation Consumer Protection issues a monthly Air Travel Consumer Report (ATCR), which is designed to provide consumers with information on the quality of services provided by airlines. That report includes a section on complaints, which is based on the aggregate of air travel service complaints submitted to the Department. Your air travel service complaint will be included in the monthly ATCR, which is distributed to the industry and made available to the news media and the public so that both consumers and air travel companies can compare the complaint records of individual airlines and ticket agents.

If you are interested in obtaining copies of the ATCR or learning more about the rights of air travelers, we encourage you to visit our website at https://www.transportation.gov/airconsumer. The website contains clear, useful information about passenger rights, and highlights content on topics of greatest concern to consumers, including flight delays and cancellations, refunds, oversales, tarmac delays, and passengers' right to fly free of discrimination. It also has a collection of helpful tips and information to help you protect yourself while travelling.



From: airconsumer@dot.gov
Subject: Airconsumer Acknowledgement
Date: 6 March 2022 at 22:25
To: uri@ntcf.org

Thank you for contacting us concerning your air travel service issue. The U.S. Department of Transportation (DOT) seeks to ensure that airline passengers are treated fairly. Complaints and comments from consumers are helpful for determining whether airlines or ticket agents are complying with Federal aviation consumer protection and civil rights statutes and DOT regulations, and to track trends or spot areas of concern that warrant further action. Your complaint or inquiry will be assigned to an analyst for review and you will receive a more detailed acknowledgement.

The Department is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel.  As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks to process your complaint. We apologize for the delay.

Thank you again for taking the time to contact us.

Office of Aviation Consumer Protection
U.S. Department of Transportation

PERSONAL INFO:
Passenger - YVONNE MARCUS uri@ntcf.org

CONTACT INFO:
PO BOX 126 OJAI,CA 93024

Home Phone:
Daytime Phone: 9098330065

COMPLAINT INFO:
Airline Code: WN

Flight Date: 06/16/2022
Flight Itinerary: BOI DEN, HOU PHX, LAX LAS, LAS LAX [2NVJ56, 2NPBTM, 2NJJSB]

Description of Problem/Inquiry/Comment:
   This complaint against SOUTHWEST Airlines   [hereinafter "SWA"] is also against DOT for "guiding" SWA to act on illegal orders in  connection with three SWA Itineraries:   2NVJ56, 2NPBTM and 2NJJSB. For example:  A  disabled person cannot be required to  notify  SWA "at least 7 days prior to the  planned  date of travel" in order to request  an ME." This is illegal. 14 CFR § 382.25.  A disabled  person cannot be required as a  condition of  travel, to "complete and submit a signed  letter from is Medical Physician."  Against  our will we submitted private medical  info, and SWA took guidance from their 3rd- party  medical provider who is not our doctor,  forcing us to undergo private medical  screenings with their 3rd-party StatMD. This   is illegal. 49 USC § 41705(a). It is a gross   violation of the ADA and the ACAA.  SWA  granted our MEs but only by imposing  illegal  conditions of travel, namely... We must  submit "no later that 24 hrs prior to departure evidence of a COVID-19 negative  viral test..." We are further required to   "bring a copy of our COVID-19 neg test to the   airport to ensure a smooth experience." An   airline may not require the disabled to  submit such tests when non-disabled customers  aren't subject to this same requirement. This   is illegal discrimination. 14 CFR § 382.11(a)  (1). See also 49 USC § 41705.  SWA informed  us that upon boarding, we would  be required  to sit in the last row of the aircraft, even  though ALL OTHER PASSENGERS  enjoy open  unassigned seating. SWA may NOT  deny the  same to an ME passenger, as if we  were  lepers with a disease not worthy of choosing  our own seats. 14 CFR § 382.87(a).  SWA  cannot threaten denial of boarding,  removal from the aircraft, and penalties  under  federal law" because we do not agree  with  their illegal rules. 14 CFR § 382.23(a).  SWA  falsely relies upon CDC's Order of  29  Jan  2021 and TSA's Directive of 31 Jan 2021.  The  CDC relaxed it's mask MANDATE for 70% of  the  USA on 25 Feb 2022. Yet they continue to   mandate masks in the most secure clear air   space on earth [INVALID] an airline cabin at  36,000  ft?! SWA fraudulently informed us on  their website  that "federal law" requires  all to wear a  mask while flying. But  Congress never passed  such a law, nor has  DOT or

requires all to wear a mask while flying. But Congress never passed such a law, nor has DOT or any other agency promulgated such a regulation. The DOT itself on its own website states that wearing masks is NOT a federal law. See attachments. SWA cites no provision in the Code of FRs to support its false claims which DOT knows but SWA does not. A4A is a trade association representing SWA amongst others. SWA engages in mask enforcement, and yet A4A asked the White House to abolish the FTMM! SWA's words don't match their actions. See attached. SWA must be fined for violating ACAA, Codes of FRs and conspiring to interfere with our civil rights.

This is System generated message, and a response to this email will not be delivered.
03/06/2022 15:17:32



Home › Resources › For Individuals › Aviation Consumer Protection › File a consumer complaint

## Air Travel Service Complaint or Comment Form (Not Related to Airline Safety or Security Issues)

**Please use this form to file a complaint or comment about service you received or requested from an airline or ticket agent that does not relate to airline safety or security. This may include, but is not limited to, topics such as flight delays and cancellations, overbooking, disability, tarmac delays, baggage, discrimination, refunds, ticketing practices, family seating, frequent flyer programs, charter flights, privacy and air ambulance service.**

**The information that you provide in your complaint or comment form will be provided to the appropriate airline or ticket agent. More detailed information about DOT's complaint handling process, and other helpful information for air travelers is available here.**

**The required Privacy Act statement applicable to any information you provide is available here.**

Items marked with a * are required.

| Personal Information: |
|---|

I am          Passenger ▼ *

Your Name:

Title:          ▼      First Name:          URI          *

Last Name:          MARCUS          *

| Contact Information: |
|---|

Address:          PO BOX 126

City:          OJAI          State:          California ▼

Zip Code:          93024          Home Phone:

Either Email Address or Daytime Phone is required

Email Address:          Verify Email Address:
uri@ntcf.org          *          uri@ntcf.org          *

Daytime Phone:
9098330065          *

**Would you like a copy of this submission sent to your email?**
● Yes  ○ No

| Complaint/Comment Information: |
|---|

Airline/Company:

SOUTHWEST AIRLINES ▼ * (If not listed or not applicable select "OTHER")

**Flight Date (if applicable):**        06/16/2022   📅   (Date Format: mm/dd/yyyy)

**Flight Itinerary (if applicable):**

BOI DEN, HOU PHX, LAX LAS, LAS LAX [2NVJ56, 2NPBTM, 2   (Cities / Flight Number)

**Description of Problem/Inquiry/Comment***

This complaint against SOUTHWEST Airlines
[hereinafter "SWA"] is also against DOT for
"guiding" SWA to act on illegal orders in
connection with three SWA Itineraries:
2NVJ56, 2NPBTM and 2NJJSB. For example:  A
disabled person cannot be required to
notify SWA "at least 7 days prior to the          (Chars left: 3000)

---

| Attach a file (Optional): |
|---|

**File Name:** (Please click the "Browse" button to select the file and click "Upload File" button.)

[Choose File] No file chosen              [Upload File]

Uploaded file/s

| C:\fakepath\SWA BOI DEN HOU PHX LAX LAS LAX UA.pdf | Remove file |
|---|---|

---

| Incidents of Sexual Misconduct: |
|---|

If your complaint relates to or includes allegations of sexual misconduct, a copy of your complaint will be sent to the FBI. Sexual misconduct is a broad term. It encompasses any behavior or attempted behavior of a sexual nature that is committed without consent or with someone incapable of consent, or by force, intimidation, coercion, or manipulation. Sexual misconduct also includes physical or verbal advances or harassment of a sexual nature, or public indecent exposure.

[Submit]   [Reset]   [Cancel]

---

**Note - Please only hit Submit once as our system sometimes takes a few moments to process your complaint.**

*A federal agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a current valid OMB Control Number. The OMB Control Number for this information collection is 2105-0568. Public reporting for this collection of information is estimated to be approximately 15 minutes per response, including the time for reviewing instructions, gathering the data needed, and completing and reviewing the collection of information. All responses to this collection of information are voluntary, and will be provided confidentiality to the extent allowed by the Freedom of Information Act (FOIA). Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: Aviation Consumer Protection Division, Office of the Secretary, W96-473, 1200 New Jersey Avenue, SE, Washington, D.C. 20590.*

If you use the web complaint form above, we would welcome any comments that you may have about that process.

Please email any such comments to airconsumer2@dot.gov.

(That address does not accept complaints about air service, only comments about the web complaint form process.)



United States
## Department of Transportation

Home › Resources › For Individuals › Aviation Consumer Protection › File a consumer complaint › Complaint - Comment Form

# Air Travel Complaint – Comment Form Confirmation

## Your complaint has been submitted to the U.S. Department of Transportation.

**The U.S. Department of Transportation (Department or DOT) is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel. As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks for the Department to process your complaint. We apologize for the delay.**

The Department's Office of Aviation Consumer Protection is responsible for reviewing and responding to air travel service complaints against airlines and ticket agents. If your complaint or comment concerns airline safety, please contact the U.S. Department of Transportation's Federal Aviation Administration (FAA) at www.faa.gov/contact. If your complaint or comment concerns airline security, please contact the U.S. Department of Homeland Security's Transportation Security Administration (TSA) at TSA-ContactCenter@dhs.gov.

Consistent with our usual practice, we will forward your air travel service complaint to the airline or ticket agent that is the subject of your complaint, and ask that the entity reply to you. We will also review your complaint to determine whether the airline or ticket agent that is the subject of your complaint is complying with Federal aviation consumer protection and civil rights statutes and DOT regulations. We use complaints to track trends or spot areas of concern that may warrant further action in the future. Complaints may also serve as a basis for rulemaking, legislation, and research.

Further, the Office of Aviation Consumer Protection issues a monthly Air Travel Consumer Report (ATCR), which is designed to provide consumers with information on the quality of services provided by airlines. That report includes a section on complaints, which is based on the aggregate of air travel service complaints submitted to the Department. Your air travel service complaint will be included in the monthly ATCR, which is distributed to the industry and made available to the news media and the public so that both consumers and air travel companies can compare the complaint records of individual airlines and ticket agents.

If you are interested in obtaining copies of the ATCR or learning more about the rights of air travelers, we encourage you to visit our website at https://www.transportation.gov/airconsumer. The website contains clear, useful information about passenger rights, and highlights content on topics of greatest concern to consumers, including flight delays and cancellations, refunds, oversales, tarmac delays, and passengers' right to fly free of discrimination. It also has a collection of helpful tips and information to help you protect yourself while travelling.



From: airconsumer@dot.gov
Subject: Airconsumer Acknowledgement
Date: 6 March 2022 at 22:20
To: uri@ntcf.org

Thank you for contacting us concerning your air travel service issue. The U.S. Department of Transportation (DOT) seeks to ensure that airline passengers are treated fairly. Complaints and comments from consumers are helpful for determining whether airlines or ticket agents are complying with Federal aviation consumer protection and civil rights statutes and DOT regulations, and to track trends or spot areas of concern that warrant further action. Your complaint or inquiry will be assigned to an analyst for review and you will receive a more detailed acknowledgement.

The Department is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel.  As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks to process your complaint. We apologize for the delay.

Thank you again for taking the time to contact us.

Office of Aviation Consumer Protection
U.S. Department of Transportation

PERSONAL INFO:
Passenger - URI MARCUS uri@ntcf.org

CONTACT INFO:
PO BOX 126 OJAI,CA 93024

Home Phone:
Daytime Phone: 9098330065

COMPLAINT INFO:
Airline Code: WN

Flight Date: 06/16/2022
Flight Itinerary: BOI DEN, HOU PHX, LAX LAS, LAS LAX [2NVJ56, 2NPBTM, 2NJJSB]

Description of Problem/Inquiry/Comment:
   This complaint against SOUTHWEST Airlines   [hereinafter "SWA"] is also against DOT for "guiding" SWA to act on illegal orders in  connection with three SWA Itineraries:   2NVJ56, 2NPBTM and 2NJJSB. For example:  A  disabled person cannot be required to  notify  SWA "at least 7 days prior to the  planned  date of travel" in order to request  an ME." This is illegal. 14 CFR § 382.25.  A disabled  person cannot be required as a  condition of  travel, to "complete and submit a signed  letter from is Medical Physician."  Against  our will we submitted private medical  info, and SWA took guidance from their 3rd- party  medical provider who is not our doctor,  forcing us to undergo private medical  screenings with their 3rd-party StatMD. This   is illegal. 49 USC § 41705(a). It is a gross   violation of the ADA and the ACAA.  SWA  granted our MEs but only by imposing  illegal  conditions of travel, namely...  We must  submit "no later than 24 hrs prior to  departure evidence of a COVID-19 negative   viral test..." We are further required to   "bring a copy of our COVID-19 neg test to the   airport to ensure a smooth experience." An   airline may not require the disabled to   submit such tests when non-disabled customers   aren't subject to this same requirement. This   is illegal discrimination. 14 CFR § 382.11(a)  (1). See also 49 USC § 41705.  SWA informed  us that upon boarding, we would  be required  to sit in the last row of the aircraft, even   though ALL OTHER PASSENGERS  enjoy open  unassigned seating. SWA may NOT  deny the  same to an ME passenger, as if we  were  lepers with a disease not worthy of choosing  our own seats. 14 CFR § 382.87(a).  SWA  cannot threaten denial of boarding,  removal from the aircraft, and penalties  under  federal law" because we do not agree  with  their illegal rules. 14 CFR § 382.23(a).  SWA  falsely relies upon CDC's Order of  29  Jan  2021 and TSA's Directive of 31 Jan 2021.  The  CDC relaxed it's mask MANDATE for 70% of  the  USA on 25 Feb 2022. Yet they continue to   mandate masks in the most secure clear air   space on earth [INVALID] an airline cabin at  36,000  ft?! SWA fraudulently informed us on  their website  that "federal law" requires  all to wear a  mask while flying. But  Congress never passed  such a law, nor has  DOT or

requires all to wear a mask while flying. But Congress never passed such a law, nor has DOT or any other agency promulgated such a regulation. The DOT itself on its own website states that wearing masks is NOT a federal law. See attachments. SWA cites no provision in the Code of FRs to support its false claims which DOT knows but SWA does not. A4A is a trade association representing SWA amongst others. SWA engages in mask enforcement, and yet A4A asked the White House to abolish the FTMM! SWA's words don't match their actions. See attached. SWA must be fined for violating ACAA, Codes of FRs and conspiring to interfere with our civil rights.


This is System generated message, and a response to this email will not be delivered.
03/06/2022 15:12:48

# Plaintiffs' Exhibit 37

Home › Resources › For Individuals › Aviation Consumer Protection › File a consumer complaint

## Air Travel Service Complaint or Comment Form  (Not Related to Airline Safety or Security Issues)

**Please use this form to file a complaint or comment about service you received or requested from an airline or ticket agent that does not relate to airline safety or security. This may include, but is not limited to, topics such as flight delays and cancellations, overbooking, disability, tarmac delays, baggage, discrimination, refunds, ticketing practices, family seating, frequent flyer programs, charter flights, privacy and air ambulance service.**

**The information that you provide in your complaint or comment form will be provided to the appropriate airline or ticket agent. More detailed information about DOT's complaint handling process, and other helpful information for air travelers is available here.**

**The required Privacy Act statement applicable to any information you provide is available here.**

Items marked with a * are required.

| Personal Information: |
|---|

| | | |
|---|---|---|
| **I am** | Passenger | * |
| **Your Name:** | | |
| **Title:** | Mrs | **First Name:** YVONNE * |
| **Last Name:** | MARCUS | * |

| Contact Information: |
|---|

| | |
|---|---|
| **Address:** | PO BOX 126 |
| **City:** | OJAI     **State:** California |
| **Zip Code:** | 93024     **Home Phone:** 9098330065 |

Either Email Address or Daytime Phone is required

| | |
|---|---|
| **Email Address:** uri@ntcf.org * | **Verify Email Address:** uri@ntcf.org * |
| **Daytime Phone:** 9098330065 * | |

**Would you like a copy of this submission sent to your email?**
◉ Yes ○ No

| Complaint/Comment Information: |
|---|

**Airline/Company:**
UNITED AIRLINES   *  (If not listed or not applicable select "OTHER")

Flight Date (if applicable):    03/06/2022 📅 (Date Format: mm/dd/yyyy)

Flight Itinerary (if applicable):

AEJERN UA 955 + UA 954                          (Cities / Flight Number)

Description of
Problem/Inquiry/Comment*

> United Airlines [hereinafter "UAL"] violated
> the Air Carrier Access Act and numerous other
> laws by refusing to grant my wife and I mask
> exemptions for our upcoming 06 Mar 2022
> flights TLV-SFO-TLV and returning 31 Mar 2022
> [UAL Itinerary AEJERN].  UAL fraudulently
> informed us through their  website

(Chars left: 3000)

## Attach a file (Optional):

**File Name:** (Please click the "Browse" button to select the file and click "Upload File" button.)

[ Choose File ] No file chosen          [ Upload File ]

Uploaded file/s

C:\fakepath\UA TLV SFO SFO TLV 06 MAR to 31 MAR 2022 UA.pdf   Remove file

## Incidents of Sexual Misconduct:

If your complaint relates to or includes allegations of sexual misconduct, a copy of your complaint will be sent to the FBI. Sexual misconduct is a broad term. It encompasses any behavior or attempted behavior of a sexual nature that is committed without consent or with someone incapable of consent, or by force, intimidation, coercion, or manipulation. Sexual misconduct also includes physical or verbal advances or harassment of a sexual nature, or public indecent exposure.

[ Submit ]   [ Reset ]   [ Cancel ]

**Note - Please only hit Submit once as our system sometimes takes a few moments to process your complaint.**

*A federal agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a current valid OMB Control Number. The OMB Control Number for this information collection is 2105-0568. Public reporting for this collection of information is estimated to be approximately 15 minutes per response, including the time for reviewing instructions, gathering the data needed, and completing and reviewing the collection of information. All responses to this collection of information are voluntary, and will be provided confidentiality to the extent allowed by the Freedom of Information Act (FOIA). Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: Aviation Consumer Protection Division, Office of the Secretary, W96-473, 1200 New Jersey Avenue, SE, Washington, D.C. 20590.*

If you use the web complaint form above, we would welcome any comments that you may have about that process.
Please email any such comments to airconsumer2@dot.gov.
(That address does not accept complaints about air service, only comments about the web complaint form process.)



United States
## Department of Transportation

Home › Resources › For Individuals › Aviation Consumer Protection › File a consumer complaint › Complaint - Comment Form

# Air Travel Complaint – Comment Form Confirmation

## Your complaint has been submitted to the U.S. Department of Transportation.

**The U.S. Department of Transportation (Department or DOT) is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel. As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks for the Department to process your complaint. We apologize for the delay.**

The Department's Office of Aviation Consumer Protection is responsible for reviewing and responding to air travel service complaints against airlines and ticket agents. If your complaint or comment concerns airline safety, please contact the U.S. Department of Transportation's Federal Aviation Administration (FAA) at www.faa.gov/contact. If your complaint or comment concerns airline security, please contact the U.S. Department of Homeland Security's Transportation Security Administration (TSA) at TSA-ContactCenter@dhs.gov.

Consistent with our usual practice, we will forward your air travel service complaint to the airline or ticket agent that is the subject of your complaint, and ask that the entity reply to you. We will also review your complaint to determine whether the airline or ticket agent that is the subject of your complaint is complying with Federal aviation consumer protection and civil rights statutes and DOT regulations. We use complaints to track trends or spot areas of concern that may warrant further action in the future. Complaints may also serve as a basis for rulemaking, legislation, and research.

Further, the Office of Aviation Consumer Protection issues a monthly Air Travel Consumer Report (ATCR), which is designed to provide consumers with information on the quality of services provided by airlines. That report includes a section on complaints, which is based on the aggregate of air travel service complaints submitted to the Department. Your air travel service complaint will be included in the monthly ATCR, which is distributed to the industry and made available to the news media and the public so that both consumers and air travel companies can compare the complaint records of individual airlines and ticket agents.

If you are interested in obtaining copies of the ATCR or learning more about the rights of air travelers, we encourage you to visit our website at https://www.transportation.gov/airconsumer. The website contains clear, useful information about passenger rights, and highlights content on topics of greatest concern to consumers, including flight delays and cancellations, refunds, oversales, tarmac delays, and passengers' right to fly free of discrimination. It also has a collection of helpful tips and information to help you protect yourself while travelling.

From: airconsumer@dot.gov
Subject: Airconsumer Acknowledgement
Date: 2 February 2022 at 11:40
To: uri@ntcf.org



Thank you for contacting us concerning your air travel service issue. The U.S. Department of Transportation (DOT) seeks to ensure that airline passengers are treated fairly. Complaints and comments from consumers are helpful for determining whether airlines or ticket agents are complying with Federal aviation consumer protection and civil rights statutes and DOT regulations, and to track trends or spot areas of concern that warrant further action. Your complaint or inquiry will be assigned to an analyst for review and you will receive a more detailed acknowledgment.

The Department is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel.  As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks to process your complaint. We apologize for the delay.

Thank you again for taking the time to contact us.

Office of Aviation Consumer Protection
U.S. Department of Transportation

PERSONAL INFO:
Passenger - Mrs YVONNE MARCUS uri@ntcf.org

CONTACT INFO:
PO BOX 126 OJAI,CA 93024

Home Phone: 9098330065
Daytime Phone: 9098330065

COMPLAINT INFO:
Airline Code: UA

Flight Date: 03/06/2022
Flight Itinerary: AEJERN UA 955 + UA 954

Description of Problem/Inquiry/Comment:
    United Airlines [hereinafter "UAL"] violated   the Air Carrier Access Act and numerous other   laws by refusing to grant my wife and I mask   exemptions for our upcoming 06 Mar 2022   flights TLV-SFO-TLV and returning 31 Mar 2022   [UAL Itinerary AEJERN].  UAL fraudulently  informed us through their  website  [https://www.united.com/ual/en/us/fly/travel/  what-to-expect.html#covid19-updates] that   "federal law" requires each person to wear a   mask while flying. However, Congress has   never passed such a law, nor has DOT or any   other agency promulgated such a regulation. UAL cites no provision of the U.S. Code or  the Code of Federal Regulations to support   its false claim that "federal law" requires   face coverings.  We cannot wear masks due to  our medical conditions. UAL required us to  submit  exemption requests in advance, which  is  illegal. 14 CFR § 382.25.  We submitted  the forms as a courtesy despite  it being  unlawful to demand advance notice.  We  included, as a courtesy, signed medical   summaries from our family physicians that we   should not wear a mask. We wrote that UAL's   mask policy is illegal in at least 19 ways   including that airlines by federal law are   NOT permitted to impose certain requirements   or conditions on a person requesting an   exemption from the mask mandate. 49 USC §   41705(a).  UAL may not require a medical   certificate  from disabled passengers who ask  for a mask  exemption. 14 CFR §  382.23(a).   UAL may not require disabled passengers   needing a mask exemption to undergo a medical   screening since they may not ask for a   medical certificate. 14 CFR § 382.23(d).  UAL  may not change a disabled passenger's  travel  dates and/or flights. 14 CFR § 382.17.  UAL  also may not change the seat assignment  of a  mask-exempt passenger. 14 CFR §  382.87(a).   UAL may not require disabled passengers who   seek a mask exemption to submit a negative   PCR test. No ACAA provision [nor any other  law] permits airlines to require passengers   submit a negative virus test. And mandating   that only disabled flyers submit a PCR test   constitutes illegal discrimination. 14 CFR §   382.11(a)(1) & 49 USC § 41705.  UAL denied  our mask-exemption requests,  falsely relying  upon CDC's Order of  29 Jan  2021, TSA's  Security Directive of 31 Jan

requests, falsely relying  upon SDO's Order of  29 Jan  2021, TSA's Security Directive of 31 Jan
2021  and the  ACAA's implementation of 14 CFR 382.  UAL and  their employees at their Mask
Exception  <MaskException@united.com>  Department must  be fined for violating the  ACAA and
Federal  regulations and conspiring  to interfere with  our civil rights. DOT must  also enjoin UAL
from continuing to require  numerous illegal  steps to obtain mask  exemptions.


   This is System generated message, and a response to this email will not be delivered.
02/02/2022 04:33:54



Home › Resources › For Individuals › Aviation Consumer Protection › File a consumer complaint

# Air Travel Service Complaint or Comment Form  (Not Related to Airline Safety or Security Issues)

**Please use this form to file a complaint or comment about service you received or requested from an airline or ticket agent that does not relate to airline safety or security. This may include, but is not limited to, topics such as flight delays and cancellations, overbooking, disability, tarmac delays, baggage, discrimination, refunds, ticketing practices, family seating, frequent flyer programs, charter flights, privacy and air ambulance service.**

**The information that you provide in your complaint or comment form will be provided to the appropriate airline or ticket agent. More detailed information about DOT's complaint handling process, and other helpful information for air travelers is available here.**

**The required Privacy Act statement applicable to any information you provide is available here.**

Items marked with a * are required.

| Personal Information: | |
|---|---|
| **I am** | Passenger ▾ * |
| **Your Name:** | |
| **Title:** | Mr ▾ **First Name:** URI * |
| **Last Name:** | MARCUS * |

| Contact Information: | |
|---|---|
| **Address:** | PO BOX 126 |
| **City:** | OJAI  **State:** California ▾ |
| **Zip Code:** | 93024  **Home Phone:** 9098330065 |

Either Email Address or Daytime Phone is required

**Email Address:** uri@ntcf.org *  **Verify Email Address:** uri@ntcf.org *

**Daytime Phone:** 9098330065 *

**Would you like a copy of this submission sent to your email?**
◉ Yes ○ No

| Complaint/Comment Information: |
|---|
| **Airline/Company:** |
| UNITED AIRLINES ▾ * (If not listed or not applicable select "OTHER") |

Flight Date (if applicable):     03/06/2022 📅 (Date Format: mm/dd/yyyy)

Flight Itinerary (if applicable):

AEJERN UA 955 + UA 954           (Cities / Flight Number)

Description of
Problem/Inquiry/Comment*

United Airlines [hereinafter "UAL"] violated
the Air Carrier Access Act and numerous other
laws by refusing to grant my wife and I mask
exemptions for our upcoming 06 Mar 2022
flights TLV-SFO-TLV and returning 31 Mar 2022
[UAL Itinerary AEJERN].  UAL fraudulently
informed us through their website

(Chars left: 3000)

## Attach a file (Optional):

**File Name:** (Please click the "Browse" button to select the file and click "Upload File" button.)

[Choose File] No file chosen      [Upload File]

Uploaded file/s

C:\fakepath\UA TLV SFO SFO TLV 06 MAR to 31 MAR 2022 UA.pdf   Remove file

## Incidents of Sexual Misconduct:

If your complaint relates to or includes allegations of sexual misconduct, a copy of your complaint will be sent to the FBI. Sexual misconduct is a broad term. It encompasses any behavior or attempted behavior of a sexual nature that is committed without consent or with someone incapable of consent, or by force, intimidation, coercion, or manipulation. Sexual misconduct also includes physical or verbal advances or harassment of a sexual nature, or public indecent exposure.

[Submit] [Reset] [Cancel]

**Note - Please only hit Submit once as our system sometimes takes a few moments to process your complaint.**

*A federal agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a current valid OMB Control Number. The OMB Control Number for this information collection is 2105-0568. Public reporting for this collection of information is estimated to be approximately 15 minutes per response, including the time for reviewing instructions, gathering the data needed, and completing and reviewing the collection of information. All responses to this collection of information are voluntary, and will be provided confidentiality to the extent allowed by the Freedom of Information Act (FOIA). Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: Aviation Consumer Protection Division, Office of the Secretary, W96-473, 1200 New Jersey Avenue, SE, Washington, D.C. 20590.*

If you use the web complaint form above, we would welcome any comments that you may have about that process.
Please email any such comments to airconsumer2@dot.gov.
(That address does not accept complaints about air service, only comments about the web complaint form process.)



United States
**Department of Transportation**

Home › Resources › For Individuals › Aviation Consumer Protection › File a consumer complaint › Complaint - Comment Form

# Air Travel Complaint – Comment Form Confirmation

## Your complaint has been submitted to the U.S. Department of Transportation.

**The U.S. Department of Transportation (Department or DOT) is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel. As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks for the Department to process your complaint. We apologize for the delay.**

The Department's Office of Aviation Consumer Protection is responsible for reviewing and responding to air travel service complaints against airlines and ticket agents. If your complaint or comment concerns airline safety, please contact the U.S. Department of Transportation's Federal Aviation Administration (FAA) at www.faa.gov/contact. If your complaint or comment concerns airline security, please contact the U.S. Department of Homeland Security's Transportation Security Administration (TSA) at TSA-ContactCenter@dhs.gov.

Consistent with our usual practice, we will forward your air travel service complaint to the airline or ticket agent that is the subject of your complaint, and ask that the entity reply to you. We will also review your complaint to determine whether the airline or ticket agent that is the subject of your complaint is complying with Federal aviation consumer protection and civil rights statutes and DOT regulations. We use complaints to track trends or spot areas of concern that may warrant further action in the future. Complaints may also serve as a basis for rulemaking, legislation, and research.

Further, the Office of Aviation Consumer Protection issues a monthly Air Travel Consumer Report (ATCR), which is designed to provide consumers with information on the quality of services provided by airlines. That report includes a section on complaints, which is based on the aggregate of air travel service complaints submitted to the Department. Your air travel service complaint will be included in the monthly ATCR, which is distributed to the industry and made available to the news media and the public so that both consumers and air travel companies can compare the complaint records of individual airlines and ticket agents.

If you are interested in obtaining copies of the ATCR or learning more about the rights of air travelers, we encourage you to visit our website at https://www.transportation.gov/airconsumer. The website contains clear, useful information about passenger rights, and highlights content on topics of greatest concern to consumers, including flight delays and cancellations, refunds, oversales, tarmac delays, and passengers' right to fly free of discrimination. It also has a collection of helpful tips and information to help you protect yourself while travelling.



From: airconsumer@dot.gov
Subject: Airconsumer Acknowledgement
Date: 2 February 2022 at 11:44
To: uri@ntcf.org

Thank you for contacting us concerning your air travel service issue. The U.S. Department of Transportation (DOT) seeks to ensure that airline passengers are treated fairly. Complaints and comments from consumers are helpful for determining whether airlines or ticket agents are complying with Federal aviation consumer protection and civil rights statutes and DOT regulations, and to track trends or spot areas of concern that warrant further action. Your complaint or inquiry will be assigned to an analyst for review and you will receive a more detailed acknowledgment.

The Department is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel.  As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks to process your complaint. We apologize for the delay.

Thank you again for taking the time to contact us.

Office of Aviation Consumer Protection
U.S. Department of Transportation

PERSONAL INFO:
Passenger - Mr URI MARCUS uri@ntcf.org

CONTACT INFO:
PO BOX 126 OJAI,CA 93024

Home Phone: 9098330065
Daytime Phone: 9098330065

COMPLAINT INFO:
Airline Code: UA

Flight Date: 03/06/2022
Flight Itinerary: AEJERN UA 955 + UA 954

Description of Problem/Inquiry/Comment:
   United Airlines [hereinafter "UAL"] violated   the Air Carrier Access Act and numerous other   laws by refusing to grant my wife and I mask   exemptions for our upcoming 06 Mar 2022   flights TLV-SFO-TLV and returning 31 Mar 2022   [UAL Itinerary AEJERN].  UAL fraudulently  informed us through their  website   [https://www.united.com/ual/en/us/fly/travel/  what-to-expect.html#covid19-updates] that   "federal law" requires each person to wear a   mask while flying. However, Congress has   never passed such a law, nor has DOT or any   other agency promulgated such a regulation. UAL cites no provision of the U.S. Code or  the Code of Federal Regulations to support   its false claim that "federal law" requires   face coverings.  We cannot wear masks due to  our medical conditions. UAL required us to  submit  exemption requests in advance, which  is  illegal. 14 CFR § 382.25.  We submitted  the forms as a courtesy despite  it being  unlawful to demand advance notice.  We  included, as a courtesy, signed medical   summaries from our family physicians that we  should not wear a mask. We wrote that UAL's   mask policy is illegal in at least 19 ways   including that airlines by federal law are   NOT permitted to impose certain requirements   or conditions on a person requesting an   exemption from the mask mandate. 49 USC §   41705(a).  UAL may not require a medical   certificate  from disabled passengers who ask  for a mask  exemption. 14 CFR §  382.23(a).  UAL may not require disabled passengers   needing a mask exemption to undergo a  medical   screening since they may not ask for a   medical certificate. 14 CFR § 382.23(d).  UAL  may not change a disabled passenger's  travel  dates and/or flights. 14 CFR § 382.17.  UAL  also  may not change the seat assignment  of a  mask-exempt passenger. 14 CFR §  382.87(a).   UAL may not require disabled passengers who   seek a mask exemption to submit a negative   PCR test. No ACAA provision [nor any other   law] permits airlines to require passengers   submit a negative virus test. And mandating   that only disabled flyers submit a PCR test   constitutes illegal discrimination. 14 CFR §   382.11(a)(1) & 49 USC § 41705.  UAL denied  our mask-exemption requests  falsely relying  upon CDC's Order of  29 Jan 2021  TSA's  Security Directive of 31 Jan

requests, falsely relying upon GDO's Order of 28 Jan 2021, TSA's Security Directive of 31 Jan 2021 and the ACAA's implementation of 14 CFR 382. UAL and their employees at their Mask Exception <MaskException@united.com> Department must be fined for violating the ACAA and Federal regulations and conspiring to interfere with our civil rights. DOT must also enjoin UAL from continuing to require numerous illegal steps to obtain mask exemptions.


   This is System generated message, and a response to this email will not be delivered.
02/02/2022 04:37:30



🇺🇸 An official website of the United States government
  Here's how you know ⌄



# Plaintiffs' Exhibit 38

Home » Contact » precheck

# TSA PreCheck

Thank you for contacting the Transportation Security Administration. Your submission has been received. While many routine inquiries can be responded to in less than 48 hours, some responses that require additional information may take longer.

==Submission Values==

**Is this issue related to not receiving TSA PreCheck® on your boarding pass?** No

## TSA PreCheck® complaint
**Where did this happen?** Other
**Date:** 11-18-2021
**Approximate Time:** 2:55 PM
**Name of TSA employee (if known):** Acting Division Director Julie Carrigan
**Airline Name:** N/A
**Flight Number:** N/A
**Checkpoint/Area of Airport:** N/A
**Please provide a description of your inquiry/comment.** ███████████████

For 4 and a half years I was deemed an eligible, low risk traveler, authorized to enjoy expedited security screening at airports, together with my wife wherein both of us interviewed on the same day at SNA airport back in 2017, and both of us were approved on the same day for the TSA PreCheck program. We are both U.S. citizens and we both reside in Israel.

But suddenly, out of the blue on 02 Dec 2021, I received a letter from acting Division Director Julie Carrigan from the National Transportation Vetting Center, who wrote only that…

…during recurrent checks and based on a comprehensive background check, TSA was unable to determine that you pose a sufficiently low risk to transportation and national security to continue to be eligible for expedited airport security screening through the TSA Pre Application Program. As a result, TSA has determined that you are no longer eligible to participate in the TSA Pre Application Program. This letter constitutes TSAs final decision.

I was never informed about or charged with about any illegal actions that might have triggered this revocation that one might assume arises from disqualifying criminal convictions, open criminal dispositions, and/or outstanding criminal warrants, none of which I have.

To the best of my knowledge, I have never been charged with nor have committed any violations of the federal security regulations, such as refusal to wear a mask in U.S. transportation systems, assault, threat, intimidation, or interference with flight crew, physical or sexual assault or threat of physical or sexual assault of any individual on an aircraft, interference with security operations, access control

violations, providing false or fraudulent documents, made a bomb threat, or bringing a firearm, explosive, or other prohibited item to an airport or onboard an aircraft.

I have never been found to have committed a disqualifying offense that might have otherwise warranted having my TSA PreCheck enrollment disqualified or suspended, during any recurrent criminal history vetting process.

Upon researching the matter, I found that TSA often times bases its preliminary of determination of ineligibility on inaccurate, incomplete, or false information. At age 65 today, I have never even had a conviction or committed an offense that might have been otherwise downgraded to a misdemeanor or a lesser offense, or that was expunged or pardoned and therefore I should by all accounts remain be eligible for participation in PreCheck and should be sent my letter of renewal for PreCheck which would have normally expired on 16 JUN 2022. The letter my wife received ███████████ came on time in December 2021 and she was renewed on 18 Dec 2021, just as I should have been.

Shouldn't I have been properly notified of some disqualifying criminal offense if any existed that might have triggered the revocation? Or was it issued by mistake on the basis of some non existent disqualifying felony criminal conviction? As I said, no criminal charges were dismissed, because none ever existed.

I understand that the offenses that TSA considers for permanent disqualification from the PreCheck application program, involve a "transportation security incident," which includes being charged with any of a list of at least 63 illegal activities, none of which I have ever been a part of.

Not only was I was never involved in any of the above commissions of crime, but I was never involved with any conspiracy or any attempt to commit any of the crimes on your list.

I never received any Preliminary notice of determination of my ineligibility, which might have explained the basis for the ineligibility determination. And even if I had, shouldn't I have been given the right to appeal the TSA's determination?

Is there no process to rectify this mistake and have my PreCheck reinstated, so that I can renew it before June 16, 2022?

Please advise.

- Passenger Information
  **First Name:** URI
  **Last Name:** MARCUS
  **Email:** uri@ntcf.org
  **Phone:** 9098330065

Back to form

 Print Friendly

| A - Z Index | Federal Relay |
| --- | --- |
| Civil Enforcement | FOIA |

Plaintiffs' Exhibit 39

| | |
|---|---|
| **From:** | **TSA Contact Center** tsa-contactcenter@tsa.dhs.gov |
| **Subject:** | TSA Customer Service Response: SR: 05270868 - Webform submission from: TSA PreCheck |
| **Date:** | 14 March 2022 at 17:57 |
| **To:** | uri@ntcf.org |





Hello,

Thank you for contacting the Transportation Security
Administration (TSA) Contact Center. The response to
your inquiry is listed below. If you have additional
questions, please respond to this email. Please include the
Service Request Number of 05270868 in your inquiry.
Thank You
TSA Contact Center

---

## Enrollment, Renewal, and Updates

### Denials or Requests for Appeals - TPAP

If you have been found ineligible for TSA PreCheck® via the TSA PreCheck®
Application Program, you will receive a letter that provides the reasons for the
disqualification and directions to submit a correction of record. To submit a
correction of record, you must attach the last page of the letter as a cover sheet
and provide documentation that addresses either the lawful presence (ex. a
copy of the document indicating U.S. citizenship or lawful permanent residence)
or criminal disqualifier (ex. court documentation or a corrected copy of a
criminal history record). You must mail your documents to the following
address:

Transportation Security Administration
TSA PreCheck® Application Program Processing Center
P.O. Box 8117
Fredericksburg, VA  22404-8117

Please be advised that if you are under want, warrant, complaint or indictment
for a Disqualifying Criminal Offense, you will be disqualified until the want or
warrant is released or the complaint or indictment is dismissed.

## Plaintiffs' Exhibit 40

From: **Uriel ben-Mordechai** uri@ntcf.org 📎
Subject: Re: TSA Customer Service Response: SR: 05270868 - Webform submission from: TSA PreCheck
Date: 14 March 2022 at 18:29
To: tsa-contactcenter@tsa.dhs.gov
Cc: tsa-contactcenter@j-c5kmh4vyerb38cgipsp5fowfa0cp3bw3vltx4qg993bsxpcrd.t-4x9leau.na21.case.salesforce.com



Hi.

I don't understand how to proceed. You said that I *"will receive a letter that provides the **reasons** for the disqualification and **directions** to submit a **correction of record**."*

A copy of the letter is TSA's is attached. T**here are no reasons stated for my disqualification** other than that *"TSA was unable to determine that you pose a sufficiently low risk to transportation and national security to continue to be eligible…"* and **no directions to submit a correction of record were given**. The letter simply stated that *"This letter constitutes TSA's final decision."*

How do I submit a **correction of record**, when I am NOT under **want, warrant, complaint or indictment for a Disqualifying Criminal Offense?**


Uri Marcus
KTN: ███████████



U.S. Department of Homeland Security
Springfield, Virginia 20598-6110

Transportation
Security
Administration

Mr. Uri Marcus
423 S Padre Juan Ave
Ojai, CA 93023
United States

Mr. Uri Marcus
P.O. Box 126
Ojai, CA 93024-0126
United States

NOV 2 3 2021

Re: Determination of Ineligibility, TSA Pre✓® Application Program, KTN ███████████

Dear Mr. Marcus:

On 18 Jun 2017, TSA found you eligible to participate in the TSA Pre✓® Application Program. As a participant previously found eligible for the TSA Pre✓® Application Program, you are subject to recurrent checks against various databases, including law enforcement, immigration, regulatory violation, and intelligence databases.

As a result of recurrent checks and based on a comprehensive background check, TSA was unable to determine that you pose a sufficiently low risk to transportation and national security to continue to be eligible for expedited airport security screening through the TSA Pre✓® Application Program. As a result, TSA has determined that you are no longer eligible to participate in the TSA Pre✓® Application Program. This eligibility determination for the TSA Pre✓® Application Program is within the sole discretion of TSA.

Although you have been found ineligible to continue your participation in the TSA Pre✓® Application Program, you will continue to be screened at airport security checkpoints according to TSA standard screening protocols.

This letter constitutes TSA's final decision.



Sincerely,

JULIE A CARRIGAN    Digitally signed by JULIE
                    A CARRIGAN
                    Date: 2021.11.18
                    14:55:17 -05'00'

Julie Carrigan
Acting Division Director
National Transportation Vetting Center

On 14 Mar 2022, at 17:57, TSA Contact Center <tsa-contactcenter@tsa.dhs.gov> wrote:



Hello,

Thank you for contacting the Transportation Security Administration (TSA) Contact Center. The response to your inquiry is listed below. If you have additional questions, please respond to this email. Please include the Service Request Number of 05270868 in your inquiry.
Thank You
TSA Contact Center

## Enrollment, Renewal, and Updates

### Denials or Requests for Appeals - TPAP

If you have been found ineligible for TSA PreCheck® via the TSA PreCheck® Application Program, you will receive a letter that provides the reasons for the disqualification and directions to submit a correction of record. To submit a correction of record, you must attach the last page of the letter as a cover sheet and provide documentation that addresses either the lawful presence (ex. a copy of the document indicating U.S. citizenship or lawful permanent residence) or criminal disqualifier (ex. court documentation or a corrected copy of a criminal history record). You must mail your documents to the following address:

Plaintiffs' Exhibit 41

**From:** no-reply@universalenroll.identogo.com 
**Subject:** Don't lose your TSA PreCheck® benefits. Renew today!
**Date:** 16 March 2022 at 15:45
**To:** URI@ntcf.org    URI@NTCF.ORG

Hi URI,

As a friendly reminder, your TSA PreCheck membership is due to expire on **06/16/2022.** Renewing is quick and easy, and most members can renew **entirely online**. Renew today and keep your benefits for future travel!

**Renew today in 5 minutes or less**

**If you're still deciding, or just haven't gotten around to it yet, remember your TSA PreCheck membership includes benefits, like:**

- **Convenient:** your shoes, belt and light jacket stay on, and laptop and 3-1-1 liquids stay in your bags
- **Family-friendly:** kids 12 and under can tag along for free
- **Affordable:** many credit cards and loyalty programs cover the cost of the 5-year membership, for current pricing check here
- **Fast, easy to renew:** 98%+ of members can renew online in 3-5 minutes

**Renew today!**

**Questions about renewing your membership? Call 855-347-8371,** 8 a.m. - 10 p.m. Eastern, Monday - Friday, or check out our FAQs.

**We hope to see you soon!**

**The TSA PreCheck® Team**

**Renew Now**

If you'd like to opt out of non-mandatory email notifications, please click help.



Plaintiffs' Exhibit 42

Step 1 of 4 - Current TSA PreCheck® Information

**\* Required Fields**

Please enter your information below. Then click 'Next' to continue or 'Cancel' to exit.

Please provide your KTN and Date of Birth. If you are not sure of your KTN please use KTN Lookup or your flight booking site of choice to retrieve your KTN.

**Not Eligible to Renew at this Time - You currently have an enrollment in progress with TSA. Please call the UES Help Desk (855-347-8371) for further assistance**

There has been a change in your status. Please contact the UES Call Center for assistance.

Current TSA PreCheck® Information

**\* KTN (Known Traveler Number)**

███████████

**\* Date of Birth (MM/DD/YYYY)**

████████

**\* Legal Last Name**

MARCUS

Done

# PRIVACY ACT STATEMENT

**Authority:** 6 U.S.C. § 1140, 46 U.S.C. § 70105; 49 U.S.C. §§ 106, 114, 5103a, 40103(b)(3), 40113, 44903, 44935-44936, 44939, and 46105; the Implementing Recommendations of the 9/11 Commission Act of 2007, § 1520 (121 Stat. 444, Public Law 110-52, August 3, 2007); and Executive Order 9397, as amended.

**Purpose:** The Department of Homeland Security (DHS) will use your information to conduct a security threat assessment. Biometrics collected from applicants to the TSA PreCheck™ Application Program may also be used to conduct screening at airport checkpoints. Your fingerprints and associated information will be provided to the Federal Bureau of Investigation (FBI) for the purpose of comparing your fingerprints to other fingerprints in the FBI's Next Generation Identification (NGI) system or its successor systems including civil, criminal, and

# Plaintiffs' Exhibit 43

**From:** **TSA-ContactCenter** TSA-ContactCenter@tsa.dhs.gov
**Subject:** Automatic reply: TSA Customer Service Response: SR: 05270868 - Webform submission from: TSA PreCheck
**Date:** 17 March 2022 at 15:36
**To:** Uriel ben-Mordechai uri@ntcf.org

Thank you for contacting the Transportation Security Administration.

Our goal is to respond in less than 48 hours, more complex questions may take longer.

We understand the Coronavirus is a concern for all travelers, for the latest information, please visit www.tsa.gov/coronavirus or www.cdc.gov.

To check if certain items may be packed in carry-on or checked bags, please use our search feature, What Can I Bring?

Check your driver's license or your state-issued ID and look for a star or the word "enhanced." Starting May 3, 2023, if your driver's license does not have one of these markings, you will not be able to use it to fly. For more information, visit tsa.gov/real-id.

# Plaintiffs' Exhibit 44



**From:** **Uriel ben-Mordechai** uri@ntcf.org 📎
**Subject:** Re: TSA Customer Service Response: SR: 05270868 - Webform submission from: TSA PreCheck
**Date:** 24 March 2022 at 8:36
**To:** tsa-contactcenter@j-c5kmh4vyerb38cgipsp5fowfa0cp3bw3vltx4qg993bsxpcrd.t-4x9leau.na21.case.salesforce.com

Shalom,

I still don't understand how TSA wants me to proceed. You wrote on March 23rd that I *"will receive a letter that provides the **reasons** for the disqualification and **directions** to submit a **correction of record.**"*

A copy of the letter that TSA sent to me is attached. **There are no reasons stated for my ineligibility** other than that *"TSA was unable to determine that you pose a sufficiently low risk to transportation and national security to continue to be eligible…"* and there were **no directions to submit a correction of record were given.** The letter simply stated that *"This letter constitutes TSA's final decision."*

How do I submit a **correction of record**, when I am NOT under **want, warrant, complaint or indictment for a Disqualifying Criminal Offense?**

On 16 Mar 2022, I received an email from **Universal Enroll**, which reminded me that my **KTN** expires on **06/16/2022**. It also invited me to renew. When I did, I received this error message:

<div style="background-color:#f9e0e0; padding:10px;">

**Not Eligible to Renew at this Time - You currently have an enrollment in progress with TSA. Please call the UES Help Desk (855-347-8371) for further assistance**

There has been a change in your status. Please contact the UES Call Center for assistance.

</div>

How do I resolve this? What caused my change of Status? What does it mean that **"You currently have an enrollment in progress with TSA"?**

I called the UES Help Desk and they did not have any answers.

If I am not eligible to renew, why not? What have I done wrong, and how do I correct it?

Uri Marcus
KTN: ▮▮▮▮▮▮▮



U.S. Department of Homeland Security
Springfield, Virginia 20598-6110

## Transportation
## Security
## Administration

Mr. Uri Marcus
423 S Padre Juan Ave
Ojai, CA 93023
United States

Mr. Uri Marcus
P.O. Box 126
Ojai, CA 93024-0126
United States

NOV 2 3 2021

Re: Determination of Ineligibility,  TSA Pre✓® Application  Program, KTN ▮▮▮▮▮▮▮

Dear Mr. Marcus:

On 18 Jun 2017, TSA found you eligible to participate in the TSA Pre✓® Application Program. As a participant previously found eligible for the TSA Pre✓® Application Program, you are subject to recurrent checks against various databases, including law enforcement, immigration, regulatory violation, and intelligence databases.

As a result of recurrent checks and based on a comprehensive background check, TSA was unable to determine that you pose a sufficiently low risk to transportation and national security to continue to be eligible for expedited airport security screening through the TSA Pre✓® Application Program. As a result, TSA has determined that you are no longer eligible to participate in the TSA Pre✓® Application Program. This eligibility determination for the TSA Pre✓® Application Program is within the sole discretion of TSA.

Although you have been found ineligible to continue your participation in the TSA Pre✓® Application Program, you will continue to be screened at airport security checkpoints according to TSA standard screening protocols.

This letter constitutes TSA's final decision.

Sincerely,

JULIE A CARRIGAN    Digitally signed by JULIE
                     A CARRIGAN
                     Date: 2021.11.18
                     14:55:17 -05'00'

Julie Carrigan
Acting Division Director
National Transportation Vetting Center

On 23 Mar 2022, at 21:17, TSA Contact Center <tsa-contactcenter@tsa.dhs.gov> wrote:



Transportation
Security
Administration

Hello,

Thank you for contacting the Transportation Security Administration (TSA) Contact Center. The response to your inquiry is listed below. If you have additional questions, please respond to this email. Please include the Service Request Number of 05270868 in your inquiry.
Thank You
TSA Contact Center

Plaintiffs' Exhibit 45



# Ready to Go?

## Your flight is coming up!
## Important details below!

### Your Flight Itinerary

**Avrohom Gordon**
Confirmation Code **BLN6PN**

Flight **692** - Jan. 17, 2022



**CVG**
6:30 AM

**LAX**
8:26 AM

Total time | Nonstop | 4 hrs 56 min

## Your Allegiant Checklist
Make sure you have everything
you need beforehand!



2:43

69%

# Confirmation #BLN6PN - Gordon

Inbox

**ACAA** Jan 15
to me

Dear Mr. Gordon,


Our records indicate your upcoming flight is quickly
approaching.  As a reminder, Allegiant requires all
passengers to wear a compliant face mask during all
phases of travel.  Additional information regarding our
Face Mask policy may be reviewed on our website at
www.allegiantair.com/going-distance-health-safety.  Our
records also indicate a face mask exemption has not
been granted.  If you are unable or unwilling to wear a
compliant face mask, trave will be canceled with a full
refund to the original form of payment.


Sincerely,


**allegiant**

**ACAA Disability Team**

P.O. Box 371477, Las Vegas, NV 89137

ACAA@allegiantair.com | www.allegiantair.com

Plaintiffs' Exhibit 46



Exhibit 5:



2:51

Frontier Airlines: Face Mask Exemption [Incident: 220107-000083] ➤ Inbox

F   **Frontier Airlines** Jan 8
    to me ⌄

Image

You requested assistance from our on-line support form. Below is a summary of your request and our response.

Topic: Frontier Airlines: Face Mask Exemption

Reference #: 220107-000083

Discussion Thread
**Response By Email (Ella Grace)**
(01/08/2022 02:20 PM)

Hello Devorah,

Thank you for writing us back.

Respectfully, we cannot honor your request for face mask exemption without a documentation from a medical provider. Please be advise that we don't need any detail of your medical condition, we simply need a letter from a medical provider that you are unable to wear mask due to disability.

The airline has guidelines and policies in place to help ensure that all passengers



The airline has guidelines and policies in place to help ensure that all passengers are handled in a consistent manner for most situations that are encountered.

Exceptions to policy can be made for the specific situations located under "Emergency Events" on the Travel Policies section of our website . You may submit your document by attaching to your reply. However, without new information we must respectfully bring an end to our correspondence for this topic.

We appreciate the feedback you have provided.

Thanks,

Ella Grace
Reservations Specialist
Frontier Airlines
********************************
*******************

P.S. We want your feedback! Please fill out our survey and you will be entered to win 2 FREE round-trip tickets on Frontier Airlines up to a value of $400. Click the link to take the survey:
https://www.surveymonkey.com/r/5LJKB2K
********************************
*******************

Customer By CSS Email (Avrohom Gordon) (01/07/2022 01:59 PM)

Topic: Frontier Airlines: Face Mask Exemption

Reference #: 220107-000083

Discussion Thread
**Response By Email (Ella Grace)** (01/08/2022 02:20 PM)
Hello Devorah,

Thank you for writing us back.

Respectfully, we cannot honor your request for face mask exemption without a documentation from a medical provider. Please be advise that we don't need any detail of your medical condition, we simply need a letter from a medical provider that you are unable to wear mask due to disability.

The airline has guidelines and policies in place to help ensure that all passengers are handled in a consistent manner for most situations that are encountered.

Exceptions to policy can be made for the specific situations located under "Emergency Events" on the Travel Policies section of our website . You may submit your document by attaching to your reply. However, without new information we must respectfully bring an end to our correspondence for this topic.

We appreciate the feedback you have provided.

Thanks,

Ella Grace
Reservations Specialist
Frontier Airlines
************************************************
P.S. We want your feedback! Please fill out our survey and you will be entered to win 2 FREE round-trip tickets on Frontier Airlines up to a value of $400. Click the link to take the survey:
https://www.surveymonkey.com/r/5LJKB2K
************************************************

**Customer By CSS Email (Avrohom Gordon)** (01/07/2022 01:59 PM)
To whom it may concern,

Thank you for your email. I decline to submit the documents you requested.
Please see my reasons, attached.

Thank you,

Avrohom

Plaintiffs' Exhibit 47



Plaintiffs' Exhibit 48



# Plaintiffs' Exhibit 49



Plaintiffs' Exhibit 50



# Plaintiffs' Exhibit 51



Plaintiffs' Exhibit 52



Plaintiffs' Exhibit 53



# Plaintiffs' Exhibit 54



**Flight Details** (CVG - LAX)

Cincinnati - Los Angeles    Allegiant Air · G4692

| | | |
|---|---|---|
| 06:30, January 17, 2022 | **CVG** | Cincinnati/Northern Kentucky International Airport |
| 08:26, January 17, 2022 | **LAX** | Los Angeles International Airport T1 |

**Baggage Allowance**
[Checked Baggage] No free baggage allowance. Please contact the airline for detailed baggage regulations.
[Carry-on Baggage] 1 piece(s) per person. Each piece cannot exceed 40*38*18CM in size.

**Passenger**

| Name | Ticket Number |
|---|---|
| GORDON/DEVORAH LEAH | BL7VMH |

Click here to view date change and cancellation policies.

For more information, please check the attachments or view your booking in more detail on the Trip.com website or app.

**Important information**

· We'll use this PIN to verify your identity when you call us, and help protect your booking security. Please keep it safe.
· The airline booking reference can be used to check in, select seats, and purchase meals or baggage allowance.
· All departure/arrival times and dates are in local time.
· Tickets must be used in the sequence set out in the itinerary.
· Information about your booking, including ticket expiration dates and baggage restrictions, can be found on the booking details page.
· You must bring the valid travel ID you used at the time of booking when you check in for your flight or you will be unable to board the plane. Please ensure your ID has at least 6 months of validity starting from the last day of your itinerary.
· A transit visa may be required for transfers in a third country/region. We recommend confirming visa details with the embassy of the relevant country/region.
· If you have only booked a one-way ticket and are travelling on a short-term business/tourist visa, we recommend purchasing a return ticket as soon as possible. Failure to do so may result in denial of check-in, entry, or exit.

**Deals Unlocked with Your Flight**



| Sheraton Los Angeles San Gabriel | Sheraton Gateway Los Angeles Hotel |
|---|---|
| ★★★★★  4.5  403 Reviews  $124.00 | ★★★★  4.3  444 Reviews  $112.00 |
| Sonesta Los Angeles Airport LAX | The Line Hotel |
| ★★★★ | ★★★★ |





Plaintiffs' Exhibit 55





7:26   LTE ▲ 🔋 73%

**PRINT BOARDING PASS**

Boarding Pass 1/2

**FRONTIER**
LOW FARES DONE RIGHT

### devorah gordon

Jan 18, 2022

# ONT ✈ LAS

Ontario/LA, CA          Las Vegas, NV
10:06 PM                11:12 PM
**Flight 2184** | Connecting to CVG

Gate - **210**      Seat - **16A**          Zone
                                            **3**

Boarding Starts - **9:21 PM**

Doors Close - **9:51 PM**

TSA Pre√
SEQ: **62**

Confirmation: **Z5CSQB**
🛡 **Face Covering Required**
to Board
✗ **NO CARRY-ON BAG**

Boarding Pass 2/2

**FRONTIER**
LOW FARES DONE RIGHT

## Plaintiffs' Exhibit 56



2:09 🔘 🖼 📷        🕐 📶 🖼 ● 📶⊿ 68% 🔋

←                    ⬇   🗑   ✉   ⋮

**Frontier** Airlines: Face
Mask Exemption [Incident:          ☆
220104-003238] ▶ Inbox

**Frontier Airlines** 3 days ago        ↩  ⋮
to me ⌄



✉ 🖼 Image

You requested assistance from our on-line
support form. Below is a summary of your
request and our response.

Topic: **Frontier** Airlines: Face Mask Exemption

Reference #: 220104-003238

Discussion Thread
Response By Email (Ella Grace)
(01/07/2022 12:44 PM)
Hello Devorah,

Thank you for writing us back.

Respectfully, we cannot honor your request for face
mask exemption without a documentation from a
medical provider. Please be advise that we don't need
any detail of your medical condition, we simply need a
letter from a medical provider that you are unable to
wear mask due to disability.

The airline has guidelines and policies
in place to help ensure that all
passengers are handled in a



2:10  ⚫ ▣ 🔋        ⚙ ⓝ 🖼 ◉ ▼⊿ 68%🔋

←                        ⬇        🗑        ✉        ⋮

Thank you for writing us back.

Respectfully, we cannot honor your request for face
mask exemption without a documentation from a
medical provider. Please be advise that we don't need
any detail of your medical condition, we simply need a
letter from a medical provider that you are unable to
wear mask due to disability.

The airline has guidelines and policies
in place to help ensure that all
passengers are handled in a
consistent manner for most situations
that are encountered.

Exceptions to policy can be made for
the specific situations located under
"Emergency Events" on the Travel
Policies section of our website . You
may submit your document by
attaching to your reply. However,
without new information we must
respectfully bring an end to our
correspondence for this topic.

We appreciate the feedback you have
provided.

Thanks,

Ella Grace
Reservations Specialist
Frontier Airlines
*******************************
******************

Topic: Frontier Airlines: Face Mask Exemption

---

Reference #: 220107-000083

---

Discussion Thread

**Response By Email (Ella Grace)** (01/08/2022 02:20 PM)

Hello Devorah,

Thank you for writing us back.

Respectfully, we cannot honor your request for face mask exemption without a documentation from a medical provider. Please be advise that we don't need any detail of your medical condition, we simply need a letter from a medical provider that you are unable to wear mask due to disability.

The airline has guidelines and policies in place to help ensure that all passengers are handled in a consistent manner for most situations that are encountered.

Exceptions to policy can be made for the specific situations located under "Emergency Events" on the Travel Policies section of our website . You may submit your document by attaching to your reply. However, without new information we must respectfully bring an end to our correspondence for this topic.

We appreciate the feedback you have provided.

Thanks,

Ella Grace
Reservations Specialist
Frontier Airlines
************************************************
P.S. We want your feedback! Please fill out our survey and you will be entered to win 2 FREE round-trip tickets on Frontier Airlines up to a value of $400. Click the link to take the survey:
https://www.surveymonkey.com/r/5LJKB2K
************************************************

**Customer By CSS Email (Avrohom Gordon)** (01/07/2022 01:59 PM)

To whom it may concern,

Thank you for your email. I decline to submit the documents you requested.
Please see my reasons, attached.

Thank you,

Avrohom

Plaintiffs' Exhibit 57





# HEALTH AND SAFETY KIT

CIVIL PROTECTION, NOT MEDICAL
Item No: HEALTH AND SAFETY KIT (INCLUDES DISPOSABLE FACE MASK AND WET WIPES)

Sizes:
170mm x 95 mm (Disposable Face Mask)

50mm x 135mm ( Disinfectant Wipes)

Standard: Mask  GB/T32610-2016

Standard : Wipes GB15979-2002

All items are single use ONLY. Re-use or extended use may lead to infection or cross contamination. Masks contains an aluminum nose piece. Wipes contain 0.1% benzalkonium chloride applied to each towelette.

Kit should be stored in a cool place   ( avoid excessive heat from 40 degrees C or 104 degrees F).

www.nationalallergy.com

RN# 83364

Plaintiffs' Exhibit 58



NOTICE

**Your behavior is in violation of Title 14 of the Code of Federal Regulations (CFR)**

You should immediately cease this behavior if you wish to avoid prosecution and your removal from this aircraft at the next point of arrival. Crewmembers have been trained to ensure your safety and security, and they have a responsibility to provide a safe and pleasant environment for all passengers onboard. We hope you understand that when a crewmember requests your compliance, it is with your best interest in mind.

This is a formal warning that FEDERAL LAW PROHIBITS the following:

·   Threatening, intimidating or interfering with a crewmember. (CFR 121.580)

·   Smoking on a non-smoking flight or in the lavatory, including electronic cigarettes. (CFR 121.317)

·   Drinking any alcoholic beverages not served by a crewmember, appearing to be intoxicated or creating an alcohol or drug related disturbance. (CFR 121.575)

·   Providing alcohol to any person who is a minor. (State and/or local laws apply)

·   Failure to fasten seat belt or failure to occupy approved seat or berth when required. (CFR 121.317)

An incident report will be filed with the Federal Aviation Administration (FAA). If you do not refrain from these activities, you may be prosecuted to the fullest extent of the law. The Federal Aviation Act provides for civil monetary fines up to $25,000 and up to 20 years imprisonment, or both.

01/31/20                                                        1734

1 of 1

Plaintiffs' Exhibit 59





Plaintiffs' Exhibit 60















# Plaintiffs' Exhibit 61



Passengers who are unwilling to comply to the Federal
Face Mask Mandate or unwilling to comply to Allegiant's
Face Mask Exemption procedure will be denied boarding.
If you do not wish to comply, a full refund will be
provided to the original form of payment.

**allegiant**

**ACAA Disability Team**

P.O. Box 371477, Las Vegas, NV 89137

ACAA@allegiantair.com | www.allegiant.com

Show quoted text

**Caution:** *Sender is from outside Allegiant Travel Company. Take
caution before opening links/attachments or replying with
sensitive data. If suspicious, forward to*
*phishing@allegiantair.com*



# Plaintiffs' Exhibit 62

**airconsumer@dot.gov**
Wed, Jan 12, 1:15 AM

to me

Thank you for contacting us concerning your air travel service issue. The U.S. Department of Transportation (DOT) seeks to ensure that airline passengers are treated fairly. Complaints and comments from consumers are helpful for determining whether airlines or ticket agents are complying with Federal aviation consumer protection and civil rights statutes and DOT regulations, and to track trends or spot areas of concern that warrant further action. Your complaint or inquiry will be assigned to an analyst for review and you will receive a more detailed acknowledgment.

The Department is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel.  As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks to process your complaint. We apologize for the delay.

Thank you again for taking the time to contact us.

Office of Aviation Consumer Protection
U.S. Department of Transportation

PERSONAL INFO:
Passenger - Mr Avrohom Gordon devorahlgordon@gmail.com

CONTACT INFO:
2251 State Route 222 New Richmond,OH 45157

Home Phone: 5137341770
Daytime Phone: 5137341770

COMPLAINT INFO:
Airline Code: G4

Flight Date: 01/17/2022
Flight Itinerary: CVG to LAX flight number G4692

Description of Problem/Inquiry/Comment:
  I have a disability and cannot wear a mask.  I  asked the airline for an exemption but they  refused.  Here is their response:   Passengers who are unwilling to comply to the  Federal Face Mask Mandate or unwilling to comply  to Allegiant's Face Mask Exemption procedure will be denied boarding.  If you do not wish to  comply, a full refund will be provided to the  original form of payment.      2222  ACAA Disability Team  P.O. Box 371477, Las Vegas, NV 89137  ACAA@allegiantair.com | www.allegiant.com

This is System generated message, and a response to this email will not be delivered. 01/12/2022 01:08:33

**irconsumer@dot.gov**
Wed, Jan 12, 1:23 AM

to me

Thank you for contacting us concerning your air travel service issue. The U.S. Department of Transportation (DOT) seeks to ensure that airline passengers are treated fairly. Complaints and comments from consumers are helpful for determining whether airlines or ticket agents are complying with Federal aviation consumer protection and civil rights statutes and DOT regulations, and to track trends or spot areas of concern that warrant further action. Your complaint or inquiry will be assigned to an analyst for review and you will receive a more detailed acknowledgment.

The Department is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel.  As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks to process your complaint. We apologize for the delay.

Thank you again for taking the time to contact us.

Office of Aviation Consumer Protection
U.S. Department of Transportation

PERSONAL INFO:
Passenger - Mrs Devorah Gordon devorahlgordon@gmail.com

CONTACT INFO:
2251 State Route 222 New Richmond,OH 45157

Home Phone: 5137341770
Daytime Phone: 537341770

COMPLAINT INFO:
Airline Code: F9

Flight Date: 01/18/2022
Flight Itinerary: ONT to CVG flight numbers F92184 and F92022

Description of Problem/Inquiry/Comment:
  I have a disability and cannot wear a mask.  I  asked the airline for an exemption but they  refused.  Here is their response:   Topic: Frontier Airlines: Face Mask Exemption _____ Reference #: 220107-000083 _____ Discussion Thread Response By Email (Ella Grace) (01/08/2022 02:20  PM) Hello Devorah,  Thank you for writing us back.  Respectfully, we cannot honor your request for  face mask exemption without a documentation from  a medical provider. Please be advise that we  don't need any detail of your medical condition,  we simply need a letter from a medical provider  that you are unable to wear mask due to  disability.  The airline has guidelines and policies in place  to help ensure that all passengers are handled in  a consistent manner for most situations that are  encountered.  Exceptions to policy can be made for the specific situations located under "Emergency Events" on  the Travel Policies section of our website . You  may submit your document by attaching to your  reply. However, without new information we must  respectfully bring an end to our correspondence  for this topic.  We appreciate the feedback you have provided.  Thanks,  Ella Grace Reservations Specialist Frontier Airlines

  This is System generated message, and a response to this email will not be delivered. 01/12/2022 01:16:18

Exhibits for paragraph 118 (Avrohom and Devorah file with DOT):

Airconsumer Acknowledgement

**airconsumer@dot.gov**
Wed, Jan 12, 1:12 AM

to Avrohom Gordon:

Thank you for contacting us concerning your air travel service issue. The U.S. Department of Transportation (DOT) seeks to ensure that airline passengers are treated fairly. Complaints and comments from consumers are helpful for determining whether airlines or ticket agents are complying with Federal aviation consumer protection and civil rights statutes and DOT regulations, and to track trends or spot areas of concern that warrant further action. Your complaint or inquiry will be assigned to an analyst for review and you will receive a more detailed acknowledgment.

The Department is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel.  As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks to process your complaint. We apologize for the delay.

Thank you again for taking the time to contact us.

Office of Aviation Consumer Protection
U.S. Department of Transportation

PERSONAL INFO:
Passenger - Mrs Devorah Gordon  devorahlgordon@gmail.com

CONTACT INFO:
2251 State Route 222

Home Phone: 5137341770
Daytime Phone: 5137341770

COMPLAINT INFO:
Airline Code: G4

Flight Date: 01/17/2022
Flight Itinerary: CVG to LAX flight number G4692

Description of Problem/Inquiry/Comment:
   I have a disability and cannot wear a mask.  I  asked the airline for an exemption but they  refused.  Here is their response:   Passengers who are unwilling to comply to the  Federal Face Mask Mandate or unwilling to comply  to Allegiant's Face Mask Exemption procedure will be denied boarding.  If you do not wish to  comply, a full refund will be provided to the  original form of payment.     2222  ACAA Disability Team  P.O. Box 371477, Las Vegas, NV 89137  ACAA@allegiantair.com | www.allegiant.com

   This is System generated message, and a response to this email will not be delivered. 01/12/2022 01:05:21

# AT2022010129 - (AVROHOM GORDON, DEVORAH GORDON) MZ2300 - Allegiant Confirmation #BLN6PN

Inbox

**ACAA**

Feb 18, 2022, 2:34 PM

to DEVORAHLGORDON@GMAIL.COM, Alex

Dear Mr. Gordon,

On behalf of Allegiant, I am responding to the complaint you submitted to the Department of Transportation (DOT) regarding travel on January 17, 2022 Flight #692 from Cincinnati, Ohio (CVG) to Los Angeles, California (LAX). Allegiant strives to provide an excellent experience for all our customers and regrets that you had a less than positive experience.

The US Centers for Disease Control (the "CDC") has issued an Order which now legally requires masks to be worn by all persons traveling by air. (42 U.S.C. 264) Allegiant is more than willing to provide a face mask exemption to passengers who qualify. To begin the process, Allegiant requires a letter, on letterhead, from the passengers treating medical physician stating why a compliant face mask cannot be worn during flight. After the letter has been verified and approved, the passenger is required to submit a negative COVID test within 3 days of each flight's departure.

Our records indicate Ms. Devorah Gordon requested information for a face mask exemption on January 4, 2021 and an email with general information was immediately sent to DEVORAHLGORDON@GMAIL.COM. Our records indicated you and Devorah Gordon had two separate reservations for the same flight on the same day.

On January 7th, we received an email from Ms. Devorah's email address stating you had a "medical condition" and were unable to wear a face mask during flight. In addition, stating it was "illegal discrimination" to require a negative COVID test. However, Allegiant does not have a record of receiving the required physician's letter to begin the exemption process. A few days prior to departure, Allegiant's Disabilities Team reached out to you to inquire if you wish to begin the exemption process. Again, we received an email from Ms. Devorah requesting your reservation to be canceled.

Per your request, your reservation was canceled for a full refund. The refund, in the amount of $79.00, was credited to a card ending with x1198. According to ACAA Title 14 CFR Part 382 an air carrier must admit or deny a violation to the DOT after receiving a written disability complaint. In this instance, Allegiant will deny a violation when reporting to the DOT, as

Allegiant did not deny the request for a face mask exemption as the exemption process was not started.

Again, we regret any frustration and inconvenience experienced and we look forward to welcoming you aboard another Allegiant flight in the future.

Sincerely,

Jana

**Jana Leonard**
**Manager ~ ACAA/ DOT Compliance**
**& Small Claims**
**Corporate Complaint Resolution Official**
**(CCRO)**
P.O. Box 371477, Las Vegas, NV 89137
ACAA@allegiantair.com | www.allegiant.com

**Jevorah Gordon <devorahlgordon@gmail.com>**

Mar 16, 2022, 12:44 AM (5 days ago)

to ACAA

Dear Jana,

I was so flabbergasted by your blatant lies, excuses and illegal discrimination that it took me a bit of time to want to put together this short email. I really have no wish to respond but would like to demonstrate to the court that I have exhausted all other means to resolve this dispute, prior to suing Allegiant in Federal Court.

Below are the main issues points in response to your email:

1. The US Centers for Disease Control (the "CDC") has issued an Order which now legally requires masks to be worn by all persons traveling by air. (42 U.S.C. 264)

"Taking measures to prevent the entry and spread of communicable diseases" is not the same as "issuing an Order which now legally requires masks to be worn." The CDC can publish guidance regarding masking. They cannot "legally require" masks to be worn. That can only come from an act of Congress. We live in the United States where laws are made by Congress. CDC has no statutory authority to make laws that we are "legally required" to observe. This is common knowledge to anyone who took a basic civics class in high school or in College.

2. Allegiant does not have a record of receiving the required physician's letter to begin the exemption process.

According to law, there is no requirement for a physician's letter to be exempted.

1. An airline may not require a medical certificate from disabled passengers who ask for a mask exemption. "Except as provided in this section, you must not require a passenger with a disability to have a medical certificate as a condition for being provided transportation." 14 CFR § 382.23(a). "You may … require a medical certificate for a passenger if he or she HAS a communicable disease or condition that could pose a direct threat to the health or safety of others on the flight." 14 CFR § 382.23(c)(1). This requirement does not include speculation that a person **might have a communicable** disease such as COVID-19; evidence is required that the passenger HAS a communicable disease, and PCR testing does not provide this evidence.

2. Refusing transportation to disabled passengers who are otherwise healthy and do not pose a direct threat to anyone is illegal. Airlines may not refuse to transport a disabled person who can't wear a face mask when there's no evidence that person is positive for COVID-19 or any other communicable disease. ALLEGIANT "must not refuse transportation to the passenger if you can protect the health and safety of others by means short of a refusal." 14 CFR § 382.19(c)(2).

3. ALLEGIANT is prohibited by federal regulations from forcing a disabled passenger to disclose his/her medical conditions, as you did by stating that, "Allegiant does not have a record of receiving the required physician's letter to begin the exemption process," only to determine if passengers like me are entitled to a particular seating accommodation, pursuant to 14 CFR § 382.38. ALLEGIANT "may not make inquiries about an individual's disability or the nature or severity of the disability," according to the DOT. ALLEGIANT's mask policy constitutes invasion of privacy, which is illegal. ALLEGIANT is not my doctor and cannot practice medicine without a license.

4. Requiring a medical certificate also violates the Convention on International Civil Aviation. ALLEGIANT may not require passengers with disabilities needing a mask exemption to submit a medical clearance. The United States has ratified CICA, which makes it binding treaty law upon all persons and corporations in the United States. "[P]ersons with disabilities should be permitted to travel without the requirement for a medical clearance." CICA Annex 9 § 8.39.

5. ALLEGIANT's mask policy doesn't provide for making an "individualized assessment" of whether someone is known to have COVID-19 or another communicable disease. According to the DOT, "If a person who seeks passage has an infection or disease that would be transmittable during the normal course of a flight, and that has been deemed so by a federal public health authority knowledgeable about the disease or infection, then the carrier may: … Impose on the person a condition or requirement not imposed on other passengers (e.g., wearing a mask)."

6. Federal regulation prohibits airlines from requiring that disabled passengers needing a mask exemption undergo a medical screening with an airline doctor or third-party vendor. ALLEGIANT may not require a medical certificate for a passenger unless he/she has a communicable disease. They may also not require a medical consultation (unless the carrier has evidence that a mask-exempt passenger is on CDC's "Do Not Board" list because he/she tested positive for COVID-19 or another communicable disease). "As a carrier, you may require that a passenger with a medical certificate undergo additional medical review by you if there is a legitimate medical reason for believing that there has been a significant adverse change in the passenger's condition since the issuance of the medical certificate …" 14 CFR § 382.23(d).

3. According to ACAA Title 14 CFR Part 382 an air carrier must admit or deny a violation to the DOT after receiving a written disability complaint. In this instance, Allegiant will deny a violation when reporting to the DOT, as Allegiant did not deny the request for a face mask exemption as the exemption process was not started.

I did start the exemption process but would not continue with showing a Doctor's letter as that is not required by law *[see point 2 above]*. It is also illegal to require someone with a disability to ask for accommodation/exemption in advance of other passengers.

Your refund process is about the only thing that functions above board and follows the legal process. I'm so happy that you know how to return my money, when you have broken the law. What comes next is a lawsuit against ALLEGIANT in which we intend to name you, Jana Leonard, personally as well.

Sincerely,

Avrohom

**Devorah Gordon <devorahlgordon@gmail.com>**                     Wed, Mar
                                                                 16, 2:12 AM
                                                                    (5 days
                                                                       ago)

to Frontier

Dear Brittney,

I was so turned off by the excuses and illegal discrimination that it took me until now to
want to put together this short email.  I really have no wish to respond but would like
to would like to demonstrate to the court that I have exhausted all other means to
resolve this dispute, prior to suing Frontier in Federal Court.
Below are the main issues in response to your email:

1. Carriers must, "not do any of the following things on the basis that a passenger has a
communicable disease or infection, unless you determine that the passenger's condition
poses a direct threat...

I am completely healthy and in no way even close to a direct threat to anyone.

   a. An airline may not require a medical certificate from disabled passengers who ask
for a mask exemption. "Except as provided in this section, you must not require
a passenger with a disability to have a medical certificate as a condition for being
provided transportation." 14 CFR § 382.23(a). "You may … require a medical certificate
for a passenger if he or she HAS a communicable disease or condition that could pose
a direct threat to the health or safety of others on the flight." 14 CFR § 382.23(c)(1).
This requirement does not include speculation that a person **might have a
communicable** disease such as COVID-19; evidence is required that the
passenger HAS a communicable disease, and PCR testing does not provide this
evidence.

   b. Refusing transportation to disabled passengers who are otherwise healthy and do
not pose a direct threat to anyone is illegal. Airlines may not refuse to transport
a disabled person who can't wear a face mask when there's no evidence that person is
positive for COVID-19 or any other communicable disease. frontier "must not refuse
transportation to the passenger if you can protect the health and safety of others by
means short of a refusal." 14 CFR § 382.19(c)(2).

   c. Taking measures to prevent the entry and spread of communicable diseases" is
not the same as "issuing an Order which now legally requires masks to be worn." The
CDC can publish guidance regarding masking. They cannot "legally require" masks to
be worn. That can only come from an act of Congress. We live in the United States
where laws are made by Congress. CDC has no statutory authority to make laws that
we are "legally required" to observe. This is common knowledge to anyone who took a
basic civics class in high school or in College.

2. Additionally, we do offer an exemption for customers with a disability who cannot
wear a mask, or cannot safely wear a mask, because of that disability as defined by the
Americans with Disabilities Act. You can view the requirements for this
exemption HERE  . Our records indicate we requested your medical documentation

twice, however, you refused to provide this information. As this documentation was not provided, your exemption could not be approved.

    a. Frontier is prohibited by federal regulations from forcing a disabled passenger to disclose his/her medical conditions, as you did by stating that, " Frontier does not have a record of receiving the required physician's letter to begin the exemption process," only to determine if passengers like me are entitled to a particular seating accommodation, pursuant to 14 CFR § 382.38.  Frontier "may not make inquiries about an individual's disability or the nature or severity of the disability," according to the DOT.  Frontier's mask policy constitutes invasion of privacy, which is illegal.  Frontier is not my doctor and cannot practice medicine without a license.

b. Requiring a medical certificate also violates the Convention on International Civil Aviation.  Frontier may not require passengers with disabilities needing a mask exemption to submit a medical clearance. The United States has ratified CICA, which makes it binding treaty law upon all persons and corporations in the United States. "[P]ersons with disabilities should be permitted to travel without the requirement for a medical clearance." CICA Annex 9 § 8.39.
According to law, there is no requirement for a physician's letter to be exempted from wearing the mask.  It is also illegal to require someone with a disability to ask for accommodation/exemption in advance of other passengers.

c.  Frontier 's mask policy doesn't provide for making an "individualized assessment" of whether someone is known to have COVID-19 or another communicable disease. According to the DOT, "If a person who seeks passage has an infection or disease that would be transmittable during the normal course of a flight, and that has been deemed so by a federal public health authority knowledgeable about the disease or infection, then the carrier may: … Impose on the person a condition or requirement not imposed on other passengers (e.g., wearing a mask).

d. "Federal regulation prohibits airlines from requiring that disabled passengers needing a mask exemption undergo a medical screening with an airline doctor or third-party vendor.  Frontier may not require a medical certificate for a passenger unless he/she has a communicable disease. They may also not require a medical consultation (unless the carrier has evidence that a mask-exempt passenger is on CDC's "Do Not Board" list because he/she tested positive for COVID-19 or another communicable disease). "As a carrier, you may require that a passenger with a medical certificate undergo additional medical review by you if there is a legitimate medical reason for believing that there has been a significant adverse change in the passenger's condition since the issuance of the medical certificate …" 14 CFR § 382.23(d).


3. I am glad to see you were able to travel as planned, and hope these flights went well. This is manipulative talk. I was not able to travel as planned and the flight did not go well with me being denied boarding at the gate and then forced to mask so I could get home to my family.

Sincerely,
Devorah

On Thu, Feb 17, 2022 at 6:14 PM Frontier Airlines
<frontierairlines@mailac.custhelp.com> wrote:



equested assistance from our on-line support form. Below is a
ary of your request and our response.

Frontier Airlines: DOT AT2022010130 - (DEVORAH GORDON)
00

ence #: 220217-000769

ssion Thread

onse By Email (Brittney) (02/17/2022 04:14 PM)
Devorah,

ve received your correspondence as submitted to the
tment of Transportation and appreciate the opportunity to
nd.

orry to hear about the mask exemption issues you experienced
ling your travel on January 18th from Ontario through Las
to Cincinnati.

ontier's responsibility to assist passengers with disabilities, in
dance with the US Department of Transportation (DOT)
tion 14 CFR Part 382.21 (1), which requires carriers must, "not
y of the following things on the basis that a passenger has a
unicable disease or infection, unless you determine that the
nger's condition poses a direct threat: In making this
sment, you may rely on directives issued by public health
ities (e.g., the U.S. Centers for Disease Control or Public Health
e; comparable agencies in other countries; the World Health
ization)."

er did not violate this regulation as the Centers for Disease
ol (CDC) Order and Transportation Security Administration
Security Directive state all passengers and employees must
a face covering over nose and mouth throughout the Frontier
experience including at ticket counters, gate areas, baggage
nd onboard all flights. Additionally, we do offer an exemption

claim and onboard all flights. Additionally, we do offer an exemption for customers with a disability who cannot wear a mask, or cannot safely wear a mask, because of that disability as defined by the Americans with Disabilities Act. You can view the requirements for this exemption HERE . Our records indicate we requested your medical documentation twice, however, you refused to provide this information. As this documentation was not provided, your exemption could not be approved.

I sincerely apologize for any frustration this has caused, and for the disruption it caused to your travel plans. I am glad to see you were able to travel as planned, and hope these flights went well.

Please let me know if there's anything else I can assist you with. Thank you for sharing your feedback.

Kindly,

Brittney
Customer Relations Advocate
Frontier Airlines

ReplyForward

# Plaintiffs' Exhibit 63

| MEDICAL EXEMPTION FORM – FACE COVERING / MASKS<br>CALIFORNIA | OFFICE USE ONLY |
|---|---|

## PATIENT INFORMATION

This form is to be completed after an assessment of the patient with regard to whether a mask impairs or restricts breathing or oxygenation as provided by federal and state health regulations such that a mask should not be worn or whether there is any other recognized medical condition that would prevent the patient from wearing a mask.

| Last Name<br>Russo | First Name<br>Cindy | Gender<br>F |
|---|---|---|
| Address<br>22985 Breakwater Way | City<br>Santa Clarita | State<br>CA | Zip Code<br>91350 |
| (Minors) Parent/Guardian Last Name | (Minors) Parent/Guardian First Name | Phone Number<br>(908) 797-8066 |

## TO BE COMPLETED AFTER EXAMINATION

Federal and state law provide for mandatory exemptions to wearing a mask, when applicable, under the Americans with Disabilities Act, state Human Rights Law, and other provisions of law, as well as when provided for under the applicable mask mandate or other applicable health regulations or guidance.

| | Yes: | No: |
|---|---|---|
| **Trouble breathing while wearing a face-covering?**<br><br>The Centers for Disease Control & Prevention (CDC) formal guidance regarding wearing a mask provides that "masks should NOT be worn by … anyone who has trouble breathing." https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover-guidance.html | ✓ | |
| **Medical condition or disability that prevents wearing a face covering?**<br><br>"The following individuals are exempt from wearing a face covering: Persons with a medical condition, mental health condition, or disability that prevents wearing a face covering." https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-19/Guidance-for-Face-Coverings_06-18-2020.pdf | ✓ | |

| Signature<br>_Lisa Wahlstedt MD_ | Date<br>2/1/2021 | SURVEY USE | Ic1NY |
|---|---|---|---|
| APPROVED:<br>LISA WAHLSTEDT MD<br>CA A462P4 | DISAPPROVED: | Comments:<br><br>Date Reviewed: ____ Evaluation Code:<br>DYBICR: |

Form: Ic-1NY

Plaintiffs' Exhibit 64

26

PRIORITY
BOARDING

CXXP2D    5A
UA 5655   BA5D0F

BOARDING
GROUP

2

RUSSO/CYNTHIA
UA-***846

BURBANK TO SAN FRANCISCO

UA5655

GATE

BUR-SFO B2
WED  SEPTEMBER 22 2021    GATE MAY CHANGE

BOARDING BEGINS:

10:05A

BOARDING ENDS: 10:15 AM
FLIGHT DEPARTS:10:30 AM
FLIGHT ARRIVES:11:56 AM

SEAT

5A
WINDOW
ECONOMY

OPERATED BY-SKYWEST DBA UNITED EXPRESS
CONFIRMATION: CXXP2D
TICKET: 016 7645954414

Plaintiffs' Exhibit 65

RUSSO/CYNTHIA
UA-***846

SAN FRANCISCO TO NEWARK

UA1419          GATE
SFO-EWR
WED SEPTEMBER 22 2021

PRIORITY
BOARDING

BOARDING BEGINS:
1:35P
BOARDING ENDS:  2:10 PM
FLIGHT DEPARTS:  2:25 PM
FLIGHT ARRIVES:10:46 PM

SEAT
47D
AISLE
ECONOMY

CXXP2D    47D
UA 1419   BA5D0F

BOARDING
GROUP
2

124

CONFIRMATION: CXXP2D
TICKET: 016 7645954414

Plaintiffs' Exhibit 66



Plaintiffs' Exhibit 67



# Plaintiffs' Exhibit 68

### Mask Exemption Request
*Must be submitted a minimum of 7 days prior to scheduled departure*     *1

| *Initial* | ***This section must be completed by <u>passenger or designated assistant/guardian</u>*** |
|---|---|
| | Passenger name *(print)*: Cynthia Russo |
| | Reservation and itinerary information: GZP7YS  BUR-SFO-EWR 10-28-21; Return 11-1-21 |
| <u>CR</u> | I understand that United, in its sole discretion and in accordance with CDC/DOT/TSA standards, will determine whether to approve my mask exemption request. |
| <u>*2</u> | I understand that United requires that I provide proof of a negative COVID-19 PCR test result taken within 72 hours of my scheduled departure. |
| <u>*3</u> | I understand that United may require me or my travelling party to move to alternate seats in the cabin and/or change our itinerary to less-full flights to allow for greater social distancing from other customers on board, if possible. United will advise regarding the alternatives, and changes to flights under these circumstances will be made at no additional cost. |
| <u>CR</u> | I understand that if United approves my mask exemption request, I need to print the approval letter and carry it on my person at all times while traveling and will need to show it to TSA at the security checkpoint prior to being screened. |
| <u>CR</u> | I understand that my mask exemption request is applicable only to flights in a single reservation, and any exemption for future travel or travel in separate reservations will need to be applied for anew. |
| <u>*4</u> | I authorize the release of medical information pertaining to this mask exemption request and authorize my treating physician to speak with a United Airlines medical representative or any agent acting on its behalf. |
| <u>*4</u> | I understand that if I choose to request a mask exemption, United will use the information on this form to handle my request. In order to assess and manage my request I understand that it may be necessary for United to disclose information relating to my health information to third parties such as medical professionals, airport staff, health agencies, United Express and Star Alliance carriers, and their employees, among others.<br><br>INDIVIDUALS LOCATED OUTSIDE OF THE UNITED STATES: If you are located outside of the United States and you choose to request a mask exemption, United will use the information on this form to handle your request. You understand that this form will be transferred to the United States, where data protection laws may not be equivalent to those in your home country. By signing below and affirmatively submitting this form, you give specific consent to United to process and transfer the information for these purposes. To exercise rights granted pursuant to |

| | |
|---|---|
| | applicable law, including withdrawal of consent, contact privacy@united.com. Withdrawal of consent does not affect the lawfulness of information processed until the withdrawal, and this information will continue to be maintained for compliance with legal obligations and for the establishment, exercise or defense of legal claims. |
| | Passenger or designated assistant/guardian name *(print)*: Cynthia Russo<br>Passenger or designated assistant/guardian signature: Cynthia Russo    *Digitally signed by Cynthia Russo DN: cn=Cynthia Russo, o, ou, email=cjrz123@gmail.com, c=US Date: 2021.10.14 12:32:12+04'00'*<br>Date: 10-14-21<br>Phone contact: 908-797-8066         Email contact: cjrz123@gmail.com |

| Initial | ***This section must be completed by a <u>medical provider</u> specifically treating the passenger's disability      *4*** |
|---|---|
| | Patient/passenger name *(print)*: Cynthia Russo |
| *4 | I am a licensed medical provider currently treating the passenger's disability. |
| *5<br><br><br><br><br>*4 | **Pursuant to federal law, only individuals with a disability who cannot wear a mask or cannot safely wear a mask because of the disability, for example, individuals who do not know how to remove their masks, cannot remove them on their own, or cannot communicate promptly to ask someone else to remove their mask are eligible to request a mask exemption. Individuals for whom mask wearing may only be difficult are not eligible to request a mask exemption.**<br><br>I attest that the passenger cannot safely wear a mask in connection with the flight(s) for the itinerary above for the following reason(s):<br>I have claustrophobia, which gives me anxiety and makes my heart race, which causes respiratory distress. Therefore I can't tolerate wearing a face mask. My claustrophobia is related to my Post-Traumatic Stress Disorder I suffer as a result of being trapped in a tunnel in New Jersey.<br><br>Can the passenger wear a face shield? Yes ◯   No ◉ |
| | Medical provider's license information: *4<br>Date and type of the license: *4<br>License Number: *4<br>State or other jurisdiction in which license was issued: *4 |
| | Your name *(print)*: *4<br>Your Specialty: *4<br>Signature and Date: Cynthia Russo   *Digitally signed by Cynthia Russo DN: cn=Cynthia Russo, o, ou, email=cjrz123@gmail.com, c=US Date: 2021.10.14 12:41:06+04'00'*<br>Business phone contact: *4 |

| | Business email contact:_*4_____ |
|---|---|

*1 = Illegal; see attachment

*2 = Illegal; see attachment

*3 = Illegal; see attachment

*4 = Illegal; see attachment

*5 = Fraudulent misrepresentation; see attachment

| MEDICAL EXEMPTION FORM – FACE COVERING / MASKS<br>CALIFORNIA | OFFICE USE ONLY |
|---|---|

## PATIENT INFORMATION

This form is to be completed after an assessment of the patient with regard to whether a mask impairs or restricts breathing or oxygenation as provided by federal and state health regulations such that a mask should not be worn or whether there is any other recognized medical condition that would prevent the patient from wearing a mask.

| Last Name<br>Russo | First Name<br>Cindy | Gender<br>F | |
|---|---|---|---|
| Address<br>22985 Breakwater Way | City<br>Santa Clarita | State<br>CA | Zip Code<br>91350 |
| *(Minors) Parent/Guardian Last Name* | *(Minors) Parent/Guardian First Name* | Phone Number<br>(805) 797-8066 | |

## TO BE COMPLETED AFTER EXAMINATION

Federal and state law provide for mandatory exemptions to wearing a mask, when applicable, under the Americans with Disabilities Act, state Human Rights Law, and other provisions of law, as well as when provided for under the applicable mask mandate or other applicable health regulations or guidance.

| | Yes: | No: |
|---|---|---|
| **Trouble breathing while wearing a face-covering?**<br><br>The Centers for Disease Control & Prevention (CDC) formal guidance regarding wearing a mask provides that "masks should NOT be worn by … anyone who has trouble breathing." https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover-guidance.html | ✓ | |

| | Yes: | No: |
|---|---|---|
| **Medical condition or disability that prevents wearing a face covering?**<br><br>"The following individuals are exempt from wearing a face covering: Persons with a medical condition, mental health condition, or disability that prevents wearing a face covering." https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-19/Guidance-for-Face-Coverings_06-18-2020.pdf | ✓ | |

| Signature<br>*Lisa Wahlestedt MD* | Date<br>2/1/2021 | SURVEY USE | Ic1NY |
|---|---|---|---|

APPROVED:
LISA WAHLESTEDT MD
CA A462P4

DISAPPROVED:

Comments:

Date Reviewed:
Evaluation Code:

DYBICR:

Form: Ic-1NY

**Cindy Russo**
**Mask Exemption Request to United Airlines**
**Notes on United's Numerous Illegal Policies**
**Oct. 14, 2021**

1. An airline is not allowed to require passengers seeking mask exemptions to do so in advance. "May a carrier require a passenger with a disability to provide advance notice that he or she is traveling on a flight? As a carrier, you must not require a passenger with a disability to provide advance notice of the fact that he or she is traveling on a flight." 14 CFR § 382.25.

2. An airline may not require disabled passengers who seek a mask exemption to submit a negative COVID-19 test for each flight when nondisabled customers aren't subject to this same requirement. No provision of the Air Carrier Access Act or its accompanying regulations promulgated by DOT (nor any other law enacted by Congress) permits airlines to require passengers submit a negative test for any communicable disease. Mandating disabled flyers submit an expensive COVID-19 test before checking in but not requiring the same of nondisabled travelers is illegal discrimination. "You must not discriminate against any qualified individual with a disability, by reason of such disability, in the provision of air transportation…" 14 CFR § 382.11(a)(1). *See also* 49 USC § 41705.

3. An airline may not change a disabled passenger's travel dates and/or flights. Federal law prohibits banning mask-exempt passengers from flying if a plane is more than a certain percentage full. "As a carrier, you must not limit the number of passengers with a disability who travel on a flight." 14 CFR § 382.17. "You must not discriminate against any qualified individual with a disability, by reason of such disability, in the provision of air transportation…" 14 CFR § 382.11(a)(1). *See also* 49 USC § 41705. You also may not change the seat assignment of a mask-exempt passenger without his/her consent. You may not instruct gate agents and/or flight attendants to move a mask-exempt passenger to a different seat than he/she selected. "As a carrier, you must not exclude any passenger with a disability from any seat or require that a passenger with a disability sit in any particular seat, on the basis of disability, except to comply with FAA or applicable foreign government safety requirements." 14 CFR § 382.87(a).

4. An airline may not require a medical certificate from disabled passengers who ask for a mask exemption. "[Y]ou must not require a passenger with a disability to have a medical certificate as a condition for being provided transportation." 14 CFR § 382.23(a). Requiring a medical certificate also violates international law. "[P]ersons with disabilities should be permitted to travel without the requirement for a medical clearance. Aircraft operators should only be permitted to require persons with disabilities to obtain a medical clearance in cases of a medical condition where it is not clear that they are fit to travel and could compromise their safety or well-being or that of other passengers." Convention on International Civil Aviation Annex 9 § 8.39.

5. Fraudulent Misrepresentation: You provide Food & Drug Administration unauthorized or Emergency Use Authorization face masks without disclosing that: 1) the masks (if authorized at all) are only designated for emergency use; 2) that there are "significant known and potential benefits and risks of such use" (or "the extent to which such benefits and risks are unknown"); or 3) flyers have the "option to accept or refuse administration of the product." 21 USC § 360bbb-3. You falsely represent that "federal law" requires airline passengers wear face masks. But Congress has never enacted such a