1
2
3
4
5
6
7
8

9 UNITED STATES DISTRICT COURT

10 CENTRAL DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| URI MARCUS, YVONNE MARCUS, AVROHOM GORDON, DEVORAH GORDON & CINDY RUSSO,<br><br>Plaintiffs,<br><br>vs.<br><br>CENTERS FOR DISEASE CONTROL & PREVENTION, DEPARTMENT OF HEALTH & HUMAN SERVICES, TRANSPORTATION SECURITY ADMINISTRATION, JULIE CARRIGAN, ALASKA AIRLINES, ALLEGIANT AIR, AMERICAN AIRLINES, DELTA AIR LINES, FRONTIER AIRLINES, HAWAIIAN AIRLINES, SOUTHWEST AIRLINES, UNITED AIRLINES, YETTO-BE-NAMED EMPLOYEES OF THE 8 AIRLINES, STAT-MD, & MEDAIRE,<br><br>Defendants. | Case No.: 2:22-cv-02383-SB-AS<br><br>**[PROPOSED] ORDER GRANTING AIRLINE DEFENDANTS' MOTION TO DISMISS THE COMPLAINT PURSUANT TO F.R.C.P RULE 12(b)(6)** |

Having reviewed and considered the motion to dismiss filed by Defendants Alaska Airlines, Inc., American Airlines, Inc., Delta Air Lines, Inc., Hawaiian Airlines, Inc., Southwest Airlines Co., United Airlines, Inc. and Frontier Airlines, Inc., and Allegiant Air, LLC (collectively, the "Airline Defendants"), the opposition of Plaintiffs thereto, and all other pleadings and documents properly before the Court in this matter, it is hereby ORDERED, pursuant to Rule 12(b)(6), Fed. R. Civ. P., that the Airline Defendants' motion to dismiss the Complaint is GRANTED, and that Plaintiffs' claims against the Airlines Defendants are DISMISSED WITH PREJUDICE.

This litigation relates to the Federal Transportation Mask Mandate ("FTMM") which was imposed by the federal government to address the COVID-19 global pandemic which "pose[d] one of the greatest threats to the operational viability of the transportation system and the lives of those on it seen in decades." *Corbett v. TSA*, 19 F.4th 478, 480 (D.C. Cir. 2021). Shortly after Plaintiffs filed this case, a federal district judge in Tampa, Florida issued a decision which resulted in the termination of the FTMM as to airlines. *Health Freedom Def. Fund, Inc. v. Biden*, No. 8:21-CV-1693-KKM-AEP, 2022 WL 1134138 (M.D. Fla. April 18, 2022). The judge ruled that the Centers for Disease Control and Prevention ("CDC") acted unlawfully in issuing the FTMM. That decision has been appealed by the federal government, and another judge in the same district later ruled that the CDC order was lawful. *Wall v. CDC*, Case No. 6:21-cv-00975-PGB-DCI, 2022 WL 1619516 (M.D. Fla. April 29, 2022) (also on appeal).

Although Plaintiffs currently are able to fly throughout the United States without a mask, they are pursuing this litigation, presumably to obtain a damages award against the Airline Defendants because of their implementation of the FTMM and, prior to February 2021, the airlines' own individual mask policies. However, none of Plaintiff's legal theories is viable.

[PROPOSED] ORDER GRANTING AIRLINE DEFENDANTS' MOTION TO DISMISS THE COMPLAINT PURSUANT TO F.R.C.P RULE 12(B)(6)
CASE NO.: 2:22-CV-02383-SB-AS

- 2 -

1. The Complaint is an improper "shotgun pleading." It is 156 pages long – with 19 separate Counts directed at the Airline Defendants – and replete with general assertions of factual allegations not directed at any specific airline. "Shortgun pleadings are pleadings that overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to plaintiff's allegations. They are unacceptable." *See Sollberger v. Wachovia Sec., LLC,* No. SACV 09-0766-AG-ANx, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010) (discussing types of "shotgun" pleadings). One example of an improper shotgun pleading is "where the plaintiff uses the omnibus term 'Defendants' throughout a complaint by grouping defendants together without identifying what the particular defendants specifically did wrong." *Id*. at *4. Although some counts in the Complaint are specific as to individual or groups of Airline Defendants, others are not, merely asserting generally that the "Airline Defendants" have violated the law. *See, e.g.,* Count 20 (¶ 893); Count 22 (¶ 914); Count 23 (¶¶ 931, 934); Count 31; Count 33 (¶ 1019); Count 34 (¶ 1025); Count 35 (¶ 1049); Count 36 (¶ 1055); Count 37 (¶ 1061).

2. Plaintiffs commence their portion of the Complaint against the airlines by purporting to allege claims for civil conspiracy under 42 U.S.C. §§ 1985(3) and 1986 (Counts 20 and 21). However, these claims are legally deficient because these post-Civil War era statutes do not apply to alleged discrimination on the basis of disability, and Plaintiffs have failed to allege the existence of a conspiracy.

"To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege facts to support (1) the existence of a conspiracy, (2) to deprive him of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States." *Griffin v. Breckenridge*, 403 U.S. 88, 102-103 (1971). Additionally, there

[PROPOSED] ORDER GRANTING AIRLINE DEFENDANTS'
MOTION TO DISMISS THE COMPLAINT PURSUANT TO
F.R.C.P RULE 12(B)(6)
CASE NO.: 2:22-CV-02383-SB-AS

- 3 -

1  must be some racial or other class-based, invidiously discriminatory animus behind the conspirators' action. *Id.* To make the requisite showing of class-based animus "the plaintiff must be a member of a class that requires special federal assistance in protecting its civil rights." *Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511, 1519 (9th Cir. 1987); *Voigt v. Savell*, 70 F.3d 1552, 1564 (9th Cir. 1995). That is, a plaintiff must allege that he is a member of a class of persons that the courts have designated as a suspect or quasi-suspect class "requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992).

"The original purpose of § 1985(3), which was passed as the Ku Klux Klan Act of 1871, was to enforce the rights of African Americans and their supporters." *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005). It has no application to claims for discrimination on the basis of handicap or mental or physical disability. Stated simply, "[d]isabled individuals do not constitute a 'class' within the meaning of section 1985(3)." *Serris v. Chastaine*, No. 2:22-cv-0434-JAM-CKD PS, 2022 WL 715115, *3 (E.D. Cal. Mar. 10, 2022) (citing *D'Amato v. Wis. Gas Co.*, 760 F.2d 1474, 1486 (7th Cir. 1985) ("The legislative history of Section 1985(3) does not suggest a concern for the handicapped"); *Wilhelm v. Cont'l Title Co.*, 720 F.2d 1173, 1176-77 (10th Cir. 1983) ("We must conclude that a class of 'handicapped persons' . . . was not included as a class in what is now § 1985(3)"); *see also Bartell v. Lohiser*, 215 F.3d 550, 559 (6th Cir. 2000) (plaintiff had no actionable section 1985 claim because statute does not cover claims based on disability-based discrimination or animus); *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) (the mentally disabled are not a suspect or quasi-suspect class for purposes of equal protection claims); *Chasse v. Humphreys*, No. CV–07–189–HU, 2008 WL 4846208, *4 (D. Or. Nov. 3, 2008) ("nothing in the statute or the findings and purposes suggests that the disabled as a group

[PROPOSED] ORDER GRANTING AIRLINE DEFENDANTS'
MOTION TO DISMISS THE COMPLAINT PURSUANT TO
F.R.C.P RULE 12(B)(6)
CASE NO.: 2:22-CV-02383-SB-AS

- 4 -

generally, were to be viewed as a suspect or quasi-suspect class for equal protection or section 1985(3) purposes").

Additionally, § 1985(3) does not apply to the conduct or omissions of airlines or their employees because disability discrimination claims by disabled airline passengers are exclusively governed by the ACAA, 49 U.S.C. § 41705, and the DOT's implementing regulations, 14 C.F.R. Part 382. The procedure set forth in the ACAA and the regulations implementing it provide the exclusive remedy to passengers seeking to pursue a disability discrimination claim. "Allowing [plaintiff] to pursue his claim through the mechanism of § 1985(3) would impermissibly intrude on the statutory scheme of both" the ACAA and § 1985(3). *D'Amato, supra*, 760 F.2d at 1487. Because Plaintiffs lack a cause of action under section 1985(3), their claims under section 1986 also fail. *Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir.1988) (holding that "[a] claim can be stated under section 1986 only if the complaint contains a valid claim under section 1985").

Counts 20 and 21 also fail to allege facts to support Plaintiffs' conclusory allegation of the existence of a conspiracy. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (holding that "[b]ecause appellant failed to allege any facts showing . . . invidious" discrimination on the part of defendants, "the district court was . . . correct in dismissing the § 1985(3) claim"); *Lockary v. Kayfetz*, 587 F. Supp. 631, 639 (N.D. Cal. 1984) (holding that "[a]llegations of conspiracies must be supported by material facts, not merely conclusory statements"). Plaintiffs' exhibits contain examples of where Airline Defendants granted mask exemption requests, subject to conditions such as a negative COVID-19 test. *E.g,* Pl. Ex. 17 (American); Pl. Ex. 19 (Alaska); Pl. Ex. 20 (Southwest). But in any event, there is no factual allegation to support the assertion that the Airline Defendants acted in concert, rather than individually, in responding to mask exemption requests.

3. Plaintiffs' assertion that the Airline Defendants are liable for discriminating against them in violation of the ACAA (Counts 20-30) is rejected because there is no private right of action to pursue a claim for violation of the ACAA. "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979)). "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Sandoval*, 532 U.S. at 286.

Congress did not create a private right of action to sue airlines for an alleged violation of the ACAA. In *Segalman v. Sw. Airlines Co.*, 895 F.3d 1219, 1225 (9th Cir. 2018), the Ninth Circuit stated: "Applying *Sandoval*, we conclude that **Congress did not intend to create an implied private cause of action to remedy violations of the ACAA**." (Emphasis added). The Ninth Circuit's ruling in *Segalman* is consistent with other Circuit conclusions that the ACAA does not create a private right of action. *See, e.g., Love v. Delta Air Lines*, 310 F.3d 1347, 1360 (11th Cir. 2002); *Boswell v. Skywest Airlines, Inc.*, 61 F.3d 1263, 1270 (10th Cir. 2004); *Stokes v. Sw. Airlines Co.*, 887 F.3d 199, 202 (5th Cir. 2018) (ACAA did not provide private cause of action against airline for mother of young passenger with autism); *Lopez v. Jet Blue Airways Corp.*, 662 F.3d 593, 598 (2d Cir. 2011) ("the text and structure of the ACAA manifests no congressional intent to create a private right of action in a federal district court"). A passenger alleging discrimination by an airline on the basis of disability in violation of the ACAA can file an administrative complaint with the DOT, and if that person disputes the DOT's final decision in its administrative proceeding – or claims that the DOT failed to timely act on an administrative complaint – the passenger can file a petition for review of the DOT action in the U.S. Circuit Court of Appeals,

1  pursuant to 49 U.S.C. § 46110.

2  Plaintiffs contend that they *should* have a private right of action to enforce the ACAA against the Airline Defendants because, in their view, the DOT has failed to enforce the ACAA. ECF No. 1, at 85-93 (¶¶ 639-688), 128 (¶ 936). Not only is this not true, but it is also irrelevant: a statute that lacks a private right of action – such as the ACAA – may not be granted one merely based on an allegation that the federal agency charged with implementing that statute does not enforce the law in the manner, or to the extent, that a private litigant prefers. *See, e.g., Walck v. Am. Stock Ex., Inc.*, 687 F.2d 778, 786 (3d Cir. 1982) ("We cannot infer . . . that Congress nonetheless authorized by implication authority in the federal courts to intervene in the self-regulatory system" because of a stock exchange's "failure to enforce its own rules").

3  4. Counts 22, 23, 24, 25, 26, 27, 28, 29, and 30 purport to allege violations of the Rehabilitation Act ("RA"), 29 U.S.C. § 794(a), because, for example, Plaintiffs claim that "the Airline Defendants have banned from their aircraft all passengers with medical conditions that prohibit [them] from safely covering [their] faces." ECF No. 1, at 124 (¶¶ 915). Section 504 of the RA provides that no qualified individual with a disability shall be subjected to discrimination under any "program or activity" receiving federal financial assistance. 29 U.S.C. § 794(a). However, section 504 of the RA is inapplicable to Plaintiffs' claims because the U.S. government has not at any relevant time provided the Airline Defendants with federal financial assistance as contemplated by the Act. The only money the Airline Defendants received from the U.S. Government at any relevant time was pursuant to the Payroll Support Program established under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). As the program's name indicates, this funding was provided "exclusively for the continuation of payment of Wages, Salaries, and Benefits" to

airline employees. As set forth in the document "CARES Act Payroll Support to Air Carriers and Contractors" (Cong. Res. Serv. Oct. 22, 2020), Ex. 142 to ECF No. 1-1 (page 242), "the amount received by each air carrier . . . was to be based on its payroll expenses for the six-month period from April through September 2019, and . . . **the payroll support funds must be used exclusively for continuing the payment of employee wages, salaries, and benefits**." (Emphasis added). Because the CARES Act funds were provided for the purpose of paying wages, salaries and benefits, rather than the air carriers' discretionary use, receipt of the funds does not constitute federal financial assistance within the meaning of the RA. *See* S. Rep. No. 100-64, at 17–18 (1987) ("Federal financial assistance extended to a corporation or other entity 'as a whole' refers to situations where the corporation receives general assistance that is not designated for a particular purpose."). Accordingly, Section 504 of the RA is inapplicable to the Airline Defendants. *See Lucius v. Fort Taco, LLC*, No. 21-22397, 2022 WL 335491, at *5-6 (S.D. Fla. Jan. 5, 2022) (the RA was inapplicable because Paycheck Protection Program loans the defendant received were not federal financial assistance within meaning of the RA); *Collins v. Giving Back Fund*, No. 18-cv-8812 (CM), 2019 WL 3564578, at *11 (S.D.N.Y. Aug. 6, 2019) ("federal funding to a private entity not primarily engaged in education, health care, housing or parks and recreation, when that funding is earmarked for a particular project or site within the entity's operation, is not 'as a whole' federal funding for purposes of the Rehabilitation Act").

Moreover, Plaintiffs cannot use the RA to circumvent the absence of a private right of action under the ACAA. *See Shotz v. Am. Airlines, Inc.*, 420 F.3d 1332, 1337 (11th Cir. 2005) (holding that the RA does not apply to airlines because of their receipt of governmental assistance following the September 11 attacks). As with the September 11 relief, Congress could not have intended for

[PROPOSED] ORDER GRANTING AIRLINE DEFENDANTS' MOTION TO DISMISS THE COMPLAINT PURSUANT TO F.R.C.P RULE 12(B)(6)
CASE NO.: 2:22-CV-02383-SB-AS

- 8 -

private parties to avoid all of the DOT regulations under the ACAA in 14 C.F.R. Part 382 merely because an air carrier received emergency federal governmental assistance under the CARES Act in connection with the COVID-19 pandemic.

5. Count 31 of the Complaint purports to allege a violation of the California Unruh Civil Rights Act against the Airline Defendants. However, these claims are preempted by federal law; and Plaintiffs who reside outside of California – such as the Gordons – lack standing to pursue a claim under the California Unruh Act.

6. Count 32 of the Complaint purports to allege a claim for breach of contract against the Airline Defendants. However, Plaintiffs' breaches of contract claims fail to identify a specific contractual undertaking of any of the Airline Defendants which was breached. This omission alone is fatal to Plaintiffs' breach of contract claim. Plaintiffs cannot pursue a claim for breach of contract without identifying specific contractual language which Plaintiffs contend the Airline Defendants violated.

Congress enacted the Airline Deregulation Act of 1978, 49 U.S.C. § 41713(b) ("ADA"), to deregulate the operation of domestic airlines. *Morales v. TWA*, 504 U.S. 374, 378 (1992). Specifically, Congress' goal in enacting the ADA was to ensure that transportation rates, routes, and services reflect maximum reliance on competitive market forces, thereby stimulating efficiency, innovation, and low prices, as well as variety, and quality. *Id.* To ensure that the States would not undo federal deregulation, the ADA includes an express preemption clause which, in relevant part, states: "[A] State … may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier …". *Id.* (citing 49 U.S.C. § 41713(b)(1)). The key phrase "relating to" expresses a broad preemptive purpose. *See Jagannatharao v. Etihad Airways,* Case No. 16-CV-00510-KAW, 2016 WL

[PROPOSED] ORDER GRANTING AIRLINE DEFENDANTS'
MOTION TO DISMISS THE COMPLAINT PURSUANT TO
F.R.C.P RULE 12(B)(6)
CASE NO.: 2:22-CV-02383-SB-AS

- 9 -

9086963, at *6 (N.D. Cal. Dec. 13, 2016) (holding that ADA preemption applied when the plaintiff was denied check in for lack of a travel document to enter India); *Onoh v. Nw. Airlines, Inc.,* 613 F.3d 596, 600 (5th Cir. 2010) (applying *Morales* to find ADA preemption of passenger's state law IIED claim for repeated denials on separate days of right to board aircraft). Clearly, allowing a breach of contract claim based on the Airline Defendants' refusal to permit Plaintiff to board flights would improperly interfere with the federal regulation of air service. *See e.g., Smith v. Comair, Inc.*, 134 F.3d 254 (4th Cir. 1998) (rejecting a breach of contract claim arising from an alleged denied boarding of a passenger who had lacked identification because "it directly implicates the airline's discretion and/or duty under federal law." *Id.* at 258–59; *see also O'Carroll v. Am. Airlines, Inc.*, 863 F.2d 11, 12–13 (5th Cir. 1989) (ADA preempted claim arising out of airline refusal to board passenger).

The narrow exception to ADA preemption for routine breach of contract claims is inapplicable here. The exception is solely for claims where the airline breached its own contract of carriage ("COC"). *See American Airlines v. Wolens*, 513 U.S. 219, 228, 232 (1995). But it does not apply where, as here, Plaintiffs have failed to identify the specific COC provisions that were allegedly breached. And this is despite the fact that Plaintiffs designated several of the Airline Defendants' Contracts of Carriage as exhibits to the Complaint (*see, e.g.,* Pl. Exhibit 453-57) – but without specifying in the Complaint specific Contract of Carriage language which purportedly has been breached.

In *Hughes v. Sw. Airlines Co.*, No. 18 C 5315, 2019 WL 1375927 (N.D. Ill. Mar. 26, 2019), the plaintiff alleged that the airline breached its COC by failing to have sufficient deicing fluid at the airport. However, the plaintiff failed to point to language in the COC that required the airline to have sufficient deicing fluid available for a flight. In dismissing the breach of contract claim, the court stated

[PROPOSED] ORDER GRANTING AIRLINE DEFENDANTS' MOTION TO DISMISS THE COMPLAINT PURSUANT TO F.R.C.P RULE 12(B)(6)
CASE NO.: 2:22-CV-02383-SB-AS

- 10 -

that plaintiff's "**failure to sufficiently identify the contractual obligation that Southwest breached** not only fails to state a claim for breach of contract but also precludes the Court from finding that [plaintiff] identified a self-imposed undertaking that would bring this breach of contract claim within the *Wolens* exception to ADA preemption." *Id.* at *4 (emphasis added); *see also McGarry v. Delta Air Lines, Inc.*, No. CV 18-9827-MWF (EX), 2019 WL 2558199, at *5 (C.D. Cal. June 18, 2019), *aff'd*, 812 F. App'x 625 (9th Cir. 2020) ("But the Contract of Carriage itself contains no self-imposed promise from Delta as to how it will handle customer data. Neither does it promise specific procedures of third-parties . . . that have access to such data."). Here too, Plaintiffs have not identified any language in the Airline Defendants' respective COCs that were breached.

7. Count 33 of the Complaint purports to allege a claim for reckless endangerment because of the Airline Defendants enforcement of the FTMM. However, reckless endangerment is a criminal charge which has no application in this civil case. *See* 6 Am. Jur. 2d Assault and Battery § 20 ("The crime of reckless endangerment is committed when a defendant commits an act that places another in imminent danger of death or serious bodily injury"). Nor can Plaintiffs proceed by alleging that their reckless endangerment claim sounds in tort. *See Brookins v. Rafferety*, 59 F. App'x 983, 983–84 (9th Cir. 2003) ("there is no tort claim of reckless endangerment under California law"). Even if this claim were valid, it is preempted by federal law, because it is intertwined with claims preempted under the FA Act, the ACAA, and/or the ADA. *See e.g., Covino v. Spirit Airlines, Inc.*, No. 220CV01039GMNNJK, 2021 WL 4248079, at *3 (D. Nev. Sept. 17, 2021) (dismissing a state law claim because "[it] is inextricably intertwined with the alleged ACAA violation").

8. In Count 34, Plaintiffs alleges that the Airline Defendants are liable for practicing medicine without a license. This claim is dismissed because the

Airline Defendants merely implemented the FTMM. *See Wall v. Southwest Airlines Co., et al.*, No. 6:21-cv-1008-PGB-DCI (M.D. Fla. Dec. 8, 2021), ECF No. 153, at 6 ("the Court is unpersuaded that Alaska Airlines is illegally practicing medicine without a license by requiring passengers to wear a mask on the flight. The Alaska Airlines flight attendants were simply enforcing a federal mandate requiring all passengers to wear a mask while on the flight. As a matter of common sense, it is antithetical to reason that asking someone to wear a mask is in any way analogous to practicing medicine"). Similarly, in *Gunter v. N. Wasco Cnty. Sch. Dist. Bd. of Educ.,* Case No. 3:21-CV-1661-YY, 2021 WL 6063672, at *4 (D. Or. Dec. 22, 2021), the court held that requiring the correct placement of medical grade masks or face coverings in school did not amount to practicing medicine.

9. Count 35 of the Complaint purports to allege a claim for invasion of privacy: Forcing a disabled passenger to disclose his/her medical conditions as a condition of transportation. This claim is dismissed because Plaintiffs fail to allege the requisite elements for a claim for invasion of privacy, and as it is preempted.

Under California law, a plaintiff must show three elements to adequately state a claim for invasion of privacy: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) a serious invasion of the privacy interest. *Schmitt v. SN Servicing Corp.*, No. 21-cv-03355-WHO, 2021 WL 5279822, *3 (N.D. Cal. Nov. 12, 2021). **There is a "high bar" for pleading an invasion of privacy claim.** *Low v. LinkedIn Corp.,* 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). "Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994). "Even negligent conduct that leads to theft of highly personal information . . . does not approach the standard of actionable conduct under the California Constitution and thus does not

[PROPOSED] ORDER GRANTING AIRLINE DEFENDANTS'
MOTION TO DISMISS THE COMPLAINT PURSUANT TO
F.R.C.P RULE 12(B)(6)
CASE NO.: 2:22-CV-02383-SB-AS

- 12 -

constitute a violation of plaintiffs' right to privacy." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (internal citation and quotation marks omitted).

The privacy protection afforded to California residents "is far from absolute, and must be balanced against 'other important interests.'" *Burcham v. City of Los Angeles*, 562 F. Supp. 3d 694, 705 (C.D. Cal. 2022) (citing *Hill, supra*, at 37). Thus, a defendant may defeat a state constitutional privacy claim by showing "that the invasion of privacy is justified because it substantially furthers one or more countervailing interests." *Burcham,* 562 F. Supp. 3d at 705 (plaintiffs challenging COVID-19 vaccine mandate failed to allege violation of privacy interest); *Hill,* 7 Cal. 4th at 40.

Plaintiffs' allegations that the Airline Defendants unlawfully invaded their privacy interests by seeking information relating to their claimed medical disability are meritless because it is evident that the Airline Defendants sought such information solely to implement the FTMM. As set forth in the DOT Guidance, Pl. Ex. 101, the Airline Defendants were fully authorized to seek information from passengers seeking to be exempt from the requirement to wear a mask on the aircraft, and, therefore, any alleged privacy incursion was per se justified by the Airlines' need to implement the FTMM. *See e.g., Guilfoyle v. Beutner*, Case No. 221CV05009VAPMRWX, 2021 WL 4594780, at *21 (C.D. Cal. Sept. 14, 2021) (holding that there is "a legitimate and important interest in implementing COVID-19 mitigation measures, which justifies any invasion of Plaintiffs' privacy.").

Moreover, Plaintiffs have voluntarily placed their medical information into the public record of this case by filing exhibits not subject to any protective order. If the medical information was really confidential, they could have omitted it from their exhibits, or sought to file it under seal or sought a protective order. Plaintiffs chose not to take any such precautions to limit disclosure of their medical

information and therefore their assertion that the information was private is contradicted by their own actions.

Furthermore, any state law claim for invasion of privacy is preempted by the ADA because it relates to the airlines' services. *See e.g., Pica v. Delta Air Lines, Inc.,* 812 F. App'x 591, 593 (9th Cir. 2020) (affirming dismissal of state law claims for alleged failure to protect personal information and timely notify of a data breach because they were preempted under the ADA); *In re Am. Airlines, Inc., Privacy Litig.,* 370 F. Supp. 2d 552, 564 (N.D. Tex. 2005) (state law claims for invasion of privacy in connection with ticket reservation preempted under the ADA); *Elnajjar v. Nw. Airlines, Inc.,* Nos. H-04-680, H-04-681, 2005 U.S. Dist. LEXIS 36792, at *17-18 (S.D. Tex. Aug. 15, 2005) (holding that the passenger's invasion of privacy claims for purportedly improper questioning by an agent during check in were preempted under the ADA).

10.  Count 36 of the Complaint purports to allege a claim for Deceptive & Misleading Trade Practices against the Airline Defendants and Count 37 seeks to allege a claim for Fraudulent Misrepresentation against the Airline Defendants. First, to the extent based on state law, both claims are preempted by the Airline Deregulation Act, 49 U.S.C. § 41713(b).  The Supreme Court has twice held that the ADA preempts state law claims rooted in fraud.  In *Morales, supra*, 504 U.S. at 389-391, the Court held that state guidelines which regulated purportedly false advertising by airlines were preempted by the ADA.  This outcome reflected that the ADA was designed to promote "maximum reliance on competitive market forces." *Id.* at 378.  The Court emphasized that its decision did "not give airlines carte blanche to lie and deceive consumers; the DOT retains the power to prohibit" unfair and deceptive airline practices. *Id.* at 390–91; *see Wolens*, 513 U.S. at 228 (ADA preempted claims based on the Illinois's Consumer Fraud and Deceptive Business Practices Act).  Courts have properly followed the Supreme Court

precedent and held that state law fraud claims are preempted by the ADA. *See, e.g., Pica v. Delta Air Lines, Inc.*, Case No. CV 18-2876-MWF (EX), 2018 WL 5861362, at *7 (C.D. Cal. Sept. 18, 2018) (holding that claims for unlawful, unfair or fraudulent business or practice under California law preempted by the ADA); *Banga v. Gundumolgula,* Case No. 2:13-CV-00667-MCE, 2013 WL 3804046, at *3 (E.D. Cal. July 19, 2013), *rep. and rec. adopted*, Case No. 213CV0667MCDCK DPS, 2013 WL 11332786 (E.D. Cal. Sept. 12, 2013) ("Unfair business practice laws, such as the UCL, have consistently been found preempted by the ADA."); *Weber v. U.S. Airways, Inc.*, 11 F. App'x 56, 57 (4th Cir. 2001) (fraud claim relating to prices and services preempted by the ADA because "it seeks to enforce a legal duty on the defendant that is independent of the parties' contract") (citing cases across circuits); *Rojas v. Delta Airlines, Inc.*, 425 F. Supp. 3d 524, 545 (D. Md. 2019) ("Plaintiffs' claims of fraud and fraudulent concealment . . . are based on state-imposed obligations, so they are preempted by the ADA and must be dismissed with prejudice"). Also, Plaintiffs' fraud and misrepresentation claims are preempted under the ACAA and should be dismissed. *Wright ex rel. D.W. v. Am. Airlines, Inc.,* 249 F.R.D. 572, 573 (E.D. Mo. 2008) (state law misrepresentation claims dismissed due to ACAA preemption).

Second, Plaintiffs lack a private right of action to enforce the federal law against airlines' misleading and deceptive conduct in 49 U.S.C. § 41712. *See, e.g., Casas v. Am. Airlines, Inc.*, 304 F.3d 517, 521-22 (5th Cir. 2002) (no private right of action to enforce section 41712). In *Greenstein v. Peters*, Case No. CV 08-6104PSG(EX), 2009 WL 654044, at *2 (C.D. Cal. Mar. 10, 2009), the plaintiff sued the Secretary of Transportation and the DOT under section 41712 of the ADA for an alleged failure to investigate an airline's false and deceptive business practices. The court in that case held that there was no private right of action. *Id.* (citing *Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 302 (1976)).

[PROPOSED] ORDER GRANTING AIRLINE DEFENDANTS' MOTION TO DISMISS THE COMPLAINT PURSUANT TO F.R.C.P RULE 12(B)(6)
CASE NO.: 2:22-CV-02383-SB-AS

- 15 -

11. Count 38 of the Complaint purports to allege a claim for infringement on the constitutional right to travel against the Airline Defendants American, Southwest and United, as well as nonparty JetBlue Airways Corporation. However, there is no constitutional right to travel by aircraft in the United States. *See Gilmore v. Gonzalez*, 435 F.3d 1125, 1136 (9th Cir. 2006) ("the Constitution does not guarantee the right to travel by any particular form of transportation"); *id. at* 1137 ("Gilmore does not possess a fundamental right to travel by airplane"); *Miller v. Reed*, 176 F.3d 1202, 1204 (9th Cir. 1999) ("by denying Miller a single mode of transportation," the government "did not unconstitutionally impede Miller's right to interstate travel"); *Wall v. CDC*, 543 F. Supp. 3d 1290 (M.D. Fla. 2021) (mask mandate did not infringe passenger's Constitutional right to travel). *Id.* at 1293 ("flying may be Plaintiff's preferred mode of transportation, but it is by no means the only reasonable mode of transportation available to him").

For the foregoing reasons, the Airline Defendants' motion to dismiss is GRANTED, and Plaintiffs' claims against the Airlines Defendants are DISMISSED WITH PREJUDICE.

Dated:

                                                Stanley Blumenfeld, Jr.
                                                United States District Judge

[PROPOSED] ORDER GRANTING AIRLINE DEFENDANTS' MOTION TO DISMISS THE COMPLAINT PURSUANT TO F.R.C.P RULE 12(B)(6)
CASE NO.: 2:22-CV-02383-SB-AS

- 16 -