BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

TRACY WILKISON
United States Attorney

ERIC B. BECKENHAUER
Assistant Branch Director

STEPHEN M. PEZZI
MICHAEL J. GERARDI
ANDREW F. FREIDAH
JOHNNY H. WALKER (D.C. Bar No. 991325)
  Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Tel.: (202) 514-3183
Email:  johnny.walker@usdoj.gov

*Counsel for Federal Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| URI MARCUS, *et al.*,<br><br>               *Plaintiffs*,<br><br><br>    v.<br><br><br>CENTERS FOR DISEASE CONTROL AND PREVENTION, *et al.*,<br><br>          *Defendants*. | CASE NO. 2:22-CV-2383-SB-AS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**<br><br><br>Honorable Stanley Blumenfeld, Jr.<br>**United States District Judge** |

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................1

BACKGROUND .................................................................................................3

A.    Statutory and Regulatory Background ...........................................3

B.    The COVID-19 Pandemic ...............................................................5

C.    The Challenged CDC Orders...........................................................6

      1.    The CDC's Public Transportation Mask Order .................6

      2.    The CDC's International Traveler Testing Order ..............7

D.    Litigation Background......................................................................9

STANDARD OF REVIEW .................................................................................12

ARGUMENT ......................................................................................................13

I.      Plaintiffs' complaint should be dismissed as a shotgun pleading. ..............13

II.    The Court should dismiss TSA and Julie Carrigan in her official capacity because it lacks subject-matter jurisdiction over the claims against them (Cause of Action 18). ..............................................................15

III.   The Court lacks subject-matter jurisdiction over Plaintiffs' Congressional Review Act claim (Cause of Action 4). .............................18

IV.   The Court lacks subject-matter jurisdiction over Plaintiffs' ICCPR claim (Cause of Action 17).......................................................................18

V.    Plaintiffs fail to state a Tenth Amendment claim (Cause of Action 6).......19

VI.   Plaintiffs fail to state a Fifth Amendment claim (Cause of Action 7). .......20

VII.  Plaintiffs fail to state a right-to-travel claim (Causes of Action 8 & 15). ..............................................................................................................21

VIII. Plaintiffs fail to state an Air Carrier Access Act claim (Cause of Action 9). ......................................................................................................23

i

IX.    Plaintiffs fail to state a Food, Drug & Cosmetic Act claim (Causes of Action 10 & 16). ............................................................................24

CONCLUSION ..................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*A.L.A. Schechter Poultry Corp. v. United States*,
  295 U.S. 495 (1935)...........................................................................21

*Abdi v. Wray*,
  942 F.3d 1019 (10th Cir. 2019) ..................................... 20, 21, 22, 23

*Ala. Ass'n of Realtors v. HHS*,
  141 S. Ct. 2485 (2021)......................................................................3, 4

*Anderson v. Dist. Bd. of Trs. Of Cent. Fla. Cmty. Coll.*,
  77 F.3d 364 (11th Cir. 1996) ..............................................................13

*Arbaugh v. Y&H Corp.*,
  546 U.S. 500 (2006)............................................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................... 12-13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................12

*Beydoun v. Sessions*,
  871 F.3d 459 (6th Cir. 2017) ....................................................... 22, 23

*Bridges v. Hous. Methodist Hosp.*,
  543 F. Supp. 3d 525 (S.D. Tex. 2021) ...............................................25

*Corbett v. TSA*,
  19 F.4th 478 (D.C. Cir. 2021).........................................................1, 7

*Corbett v. United States*,
  458 F. App'x 866 (11th Cir. 2012) ....................................................17

*Cospito v. Heckler*,
  742 F.2d 72 (3d Cir. 1984) ................................................................21

*Ctr. for Biological Diversity v. Bernhardt*,
  946 F.3d 553 (9th Cir. 2019) .............................................................18

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) ............................................................13

*Davis v. Ibrahim*,
   No. 21-cv-1032, 2021 WL 6618746 (C.D. Cal. Nov. 16, 2021) ......................15

*Doe v. Moore*,
   410 F.3d 1337 (11th Cir. 2005) .................................................. 21, 22

*Durso v. Napolitano*,
   795 F. Supp. 2d 63 (D.D.C. 2011) ....................................................16

*Forbes v. Cnty. of San Diego*,
   No. 20-cv-00998, 2021 WL 843175 (S.D. Cal. Mar. 4, 2021)........................23

*Ghedi v. Mayorkas*,
   16 F.4th 456 (5th Cir. 2021) ........................................................16

*Gilmore v. Gonzales*,
   435 F.3d 1125 (9th Cir. 2006) .................................... 16, 17, 21, 23

*Green v. Brantley*,
   981 F.2d 514 (11th Cir. 1993) .......................................................16

*Guance v. deVincentis*,
   708 F.2d 1290 (7th Cir. 1983) .......................................................17

*Haig v. Agee*,
   453 U.S. 280 (1981)...................................................................21

*Health Freedom Def. Fund, Inc. v. Biden*,
   --- F. Supp. 3d ----, 2022 WL 1134138 (M.D. Fla. Apr. 18, 2022),
   *appeal docketed*, No. 22-11287 (11th Cir. Apr. 21, 2022)................................11

*Ho v. Nationstar Mortg., LLC*,
   No. 19-cv-10532, 2020 WL 7714700 (C.D. Cal. Dec. 29, 2020) ....................15

*Kashem v. Barr*,
   941 F.3d 358 (9th Cir. 2019) ................................................... 15-16

*Klaassen v. Trs. of Ind. Univ.*,
   7 F.4th 592 (7th Cir. 2021) .................................................... 21, 22

iv

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ........................................................................ 12

*Ligan v. LaHood*,
    614 F.3d 150 (5th Cir. 2010) ........................................................ 16

*Mason v. Cnty. of Orange*,
    251 F.R.D. 562 (C.D. Cal. 2008) ................................................. 13

*McHenry v. Renne*,
    84 F.3d 1179 (9th Cir. 1996) ........................................................ 14

*Medellin v. Texas*,
    552 U.S. 491 (2008) ........................................................................ 18

*Merritt v. Shuttle, Inc.*,
    245 F.3d 182 (2d Cir. 2001) ................................................... 16, 17

*Miller v. Reed*,
    176 F.3d 1202 (9th Cir. 1999) ................................................ 21, 23

*Miranda ex rel. M.M. v. Alexander*,
    No. 21-cv-535, 2021 WL 4352328 (M.D. La. Sept. 24, 2021) ....................... 22

*Montanans for Multiple Use v. Barbouletos*,
    568 F.3d 225 (D.C. Cir. 2009) ...................................................... 18

*Moore v. City of Orange*,
    No. 17-cv-1024, 2017 WL 10518114 (C.D. Cal. Sept. 25, 2017) ................... 14

*Morris v. Sun Pharma Glob. Inc.*,
    No 20-cv-10441, 2021 WL 3913191 (C.D. Cal. May 13, 2021) .................... 14

*Murphy v. NCAA*,
    138 S. Ct. 1461 (2018) ................................................................... 20

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
    567 U.S. 519 (2012) ........................................................................ 20

*New York v. United States*,
    505 U.S. 144 (1992) ........................................................................ 19

*Nicolescu v. United Nations Org.*,
  No. 04-cv-2720, 2005 WL 8156275 (C.D. Cal. Feb. 2, 2005)...........................15

*NLRB v. Jones & Laughlin Steel Corp.*,
  301 U.S. 1 (1937).................................................................................20

*Robinson v. United States*,
  586 F.3d 683 (9th Cir. 2009) ..............................................................12

*SecurityPoint Holdings, Inc. v. TSA*,
  769 F.3d 1184 (D.C. Cir. 2014)..........................................................16

*Segalman v. Sw. Airlines Co.*,
  895 F.3d 1219 (9th Cir. 2018) ............................................................24

*Seraji v. Gowadia*,
  No. 16-cv-1637, 2017 WL 2628545 (C.D. Cal. Apr. 28, 2017).......................16

*Sollberger v. Wachovia Sec., LLC*,
  No. 09-cv-766, 2010 WL 2674456 (C.D. Cal. June 30, 2010)................... 13, 14

*Sosa v. Alvarez-Machain*,
  542 U.S. 692 (2004)............................................................................18

*Telecomms. Rsch. & Action Ctr. v. FCC*,
  750 F.2d 70 (D.C. Cir. 1984)..............................................................16

*Town of Southold v. Town of E. Hampton*,
  477 F.3d 38 (2d Cir. 2007) ........................................................... 21, 23

*United States v. Comstock*,
  560 U.S. 126 (2010)...................................................................... 19-20

*United States v. Darby*,
  312 U.S. 100 (1941)............................................................................19

*United States v. James*,
  No. 19-cr-8019, 2020 WL 6081501 (D. Ariz. Oct. 15, 2020).........................22

*Wall v. CDC*,
  543 F. Supp. 3d 1290 (M.D. Fla. 2021)...............................................23

*Wall v. CDC*,
   No. 21-cv-975, 2021 WL 8201517 (M.D. Fla. Dec. 18, 2021) ................. 14, 16

*Wall v. CDC*,
   6:21-cv-975, 2022 WL 1619516 (M.D. Fla. Apr. 29, 2022),
   *appeal docketed*, No. 22-11532 (11th Cir. May 4, 2022) ......................... *passim*

*Wickard v. Filburn*,
   317 U.S. 111 (1942) .................................................................................19

*Wyeth v. Levine*,
   555 U.S. 555 (2009) .................................................................................20

*Zinman v. Nova Se. Univ., Inc.*,
   No. 21-cv-60723, 2021 WL 4025722 (S.D. Fla. Aug. 30, 2021) .....................22

**U.S. Constitution**

U.S. Const. art. I, § 8, cl. 3 .......................................................... 19, 20

U.S. Const. art. VI, cl. 2 ..................................................................20

U.S. Const. amend. X ........................................................................19

**Statutes**

5 U.S.C. § 801 .................................................................................18

5 U.S.C. § 805 .................................................................................18

21 U.S.C. § 360bbb-3 .........................................................................25

42 U.S.C. § 264 .............................................................................3, 4

42 U.S.C. §§ 264-272 ..........................................................................3

49 U.S.C. § 41705 ............................................................................24

49 U.S.C. § 44919 ............................................................................17

49 U.S.C. § 46110 .................................................................. 2, 15, 18

An Act to Establish a Department of Education, and for other purposes,
   Pub. L. No. 96-88, 93 Stat. 668 (1979) (codified at 20 U.S.C. § 3508(b)) .........3

**Federal Rules**

Federal Rule of Civil Procedure 8 ................................................ 2, 3, 13

Federal Rule of Civil Procedure 12 .............................................. 2, 3, 12

**Legislative Materials**

*Consolidation & Revision of Laws Relating to the Public Health Service,*
    H.R. Rep. No. 1364, 78th Cong. 2d Sess. (1944)................................3

**Administrative & Executive Materials**

14 C.F.R. § 382.17 ...........................................................24

14 C.F.R. § 382.19 ...........................................................24

14 C.F.R. § 382.21 ...........................................................24

14 C.F.R. § 382.23 ...........................................................24

14 C.F.R. § 382.25 ...........................................................24

14 C.F.R. § 382.87 ...........................................................24

42 C.F.R. pt. 70 ...............................................................4

42 C.F.R. § 70.2 ...............................................................4

42 C.F.R. § 71.1 ...............................................................5

42 C.F.R. § 71.20 ...........................................................5, 7

42 C.F.R. § 71.31 .............................................................5

42 C.F.R. § 71.32 .............................................................5

CDC*, Order Under Section 361 of the Public Health Service Act, Requirement for
    Persons to Wear Masks While on Conveyances and at Transportation Hubs,*
    86 Fed. Reg. 8025 (Feb. 3, 2021) ............................................ *passim*

CDC, *Requirement for Negative Pre-Departure COVID-19 Test Result or
    Documentation of Recovery From COVID-19 for all Airline or Other Aircraft
    Passengers Arriving Into the United States From Any Foreign Country,*
    86 Fed. Reg. 69,256 (Dec. 7, 2021) ........................................ 5, 9, 25

*Control of Communicable Diseases; Apprehension and Detention of Persons
  With Specific Diseases; Transfer of Regulations*,
  65 Fed. Reg. 49,906 (Aug. 16, 2000) ..................................................4

*Declaring a Nat'l Emergency Concerning the Novel Coronavirus Disease
  (COVID-19) Outbreak*,
  85 Fed. Reg. 15,337 (Mar. 13, 2020)..............................................5, 6

Exec. Order No. 13998, *Promoting COVID-19 Safety in Domestic and
  Int'l Travel*,
  86 Fed. Reg. 7205 (Jan. 21, 2021) ...................................................6

Reorganization Plan No. 3,
  31 Fed. Reg. 8855 (June 25, 1966), 80 Stat. 1610...............................3

*Requirement for Negative Pre-Departure COVID-19 Test Result for All Airline
  Passengers Arriving Into the United States from the United Kingdom (UK)*,
  85 Fed. Reg. 86,933 (Dec. 31, 2020) ...............................................8

*Requirement for Negative Pre-Departure COVID-19 Test Result or
  Documentation of Recovery From COVID-19 for All Airline or Other Aircraft
  Passengers Arriving Into the United States From Any Foreign Country*,
  86 Fed. Reg. 6331 (Jan. 21, 2021) ...................................................8

*Requirement for Negative Pre-Departure COVID-19 Test Result or
  Documentation of Recovery From COVID-19 for all Airline or Other Aircraft
  Passengers Arriving Into the United States From Any Foreign Country*,
  86 Fed. Reg. 7387 (Jan. 28, 2021) ...............................................8, 9

**Other Authorities**

CDC, COVID Data Tracker (updated June 16, 2022),
  https://perma.cc/VW6Q-HNTA...................................................6

CDC, *How COVID-19 Spreads* (updated July 14, 2021),
  https://perma.cc/R38B-WAPL....................................................5

CDC, *Travel and Border Health Measures to Prevent the International Spread
  of Ebola* (July 8, 2016),
  https://go.usa.gov/xu7RH .........................................................7

HHS, *Determination that a Public Health Emergency Exists* (Jan. 31, 2020),
  https://perma.cc/VZ5X-CT5R ....................................................5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Rescinding Requirement for Negative Pre-Departure COVID-19 Test Result or Documentation of Recovery From COVID-19 for All Airline or Other Aircraft Passengers Arriving Into the United States From Any Foreign Country* (June 10, 2022), https://perma.cc/9X2M-KJJM ..............................................................9

**INTRODUCTION**

"The COVID-19 global pandemic poses one of the greatest threats to the operational viability of the transportation system and the lives of those on it seen in decades." *Corbett v. TSA*, 19 F.4th 478, 480 (D.C. Cir. 2021).  In response to that threat, the Centers for Disease Control and Prevention (CDC) issued temporary orders that—although no longer in effect—generally required (1) individuals to wear masks when traveling on public transportation conveyances like airplanes and trains; and (2) international air travelers to provide proof of a negative COVID-19 test (or recovery from COVID-19) before departure to the United States.

Plaintiffs, *pro se*, now bring a 159-page, 1,087-paragraph Complaint, claiming that those orders exceed the CDC's statutory authority, are arbitrary and capricious or procedurally infirm under the Administrative Procedure Act (APA), violate the U.S. Constitution, and violate the Food, Drug, & Cosmetic Act (FDCA). Plaintiffs further assert that the CDC's public transportation mask order violates the Congressional Review Act (CRA), and the Air Carrier Access Act (ACAA), and that the agency's international traveler testing order violates the International Covenant on Civil & Political Rights (ICCPR).  Plaintiff Uri Marcus also brings a claim against the Transportation Security Administration (TSA) and TSA employee Julie Carrigan, alleging that his TSA PreCheck eligibility was revoked in retaliation for his bringing a petition for review in the Courts of Appeals challenging the Security Directives and Emergency Amendment through which TSA assisted with the enforcement of the CDC's public transportation mask order.[1]

Plaintiffs' complaint is due to be dismissed as a shotgun pleading.  Plaintiffs' complaint spans 159 pages and 1,087-paragraphs, is replete with hundreds of

---

[1] Plaintiff Marcus also purports to bring an individual capacity claim against Carrigan stemming from the revocation of his participation in the TSA PreCheck program. That claim is not the subject of this motion, and Carrigan is represented in her individual capacity by other counsel.

1

exhibits, and does not constitute a "short and plain statement of the claims" as required by Rule 8. Plaintiffs' omnibus "Statement of Facts" appears to apply to all counts against all defendants, and Plaintiffs include multiple counts with no indication which defendant the claims apply to. The complaint therefore constitutes a shotgun pleading, warranting dismissal under Federal Rules of Civil Procedure 8(a) and 12(e).

Further, while all of Plaintiffs' claims lack merit, the Federal Defendants (CDC, HHS, TSA, and Julie Carrigan in her official capacity) seek to dismiss several claims that the Court can easily dispose of now as obviously meritless, and thereby narrow the scope of any future briefing. In particular, Plaintiffs' CRA claim is foreclosed by binding precedent holding that courts lack subject matter jurisdiction to hear claims arising under the CRA. Similarly, Plaintiffs' claim ICCPR claim is untenable in light of Supreme Court precedent stating that the ICCPR does not create obligations enforceable in federal courts. Meanwhile, the Court lacks subject matter jurisdiction over Plaintiffs' claim against TSA and Julie Carrigan in her official capacity under the plain text of 49 U.S.C. § 46110. TSA and Carrigan in her official capacity therefore respectfully seek complete dismissal of the claims against them.

Furthermore, Plaintiffs' Tenth Amendment, Fifth Amendment, ACAA, and right-to-travel claims are virtually verbatim copies of claims that a federal district court in Florida recently had no difficulty rejecting—and they fail here for the same reasons. Plaintiffs' claims under the FDCA fail, both because, contrary to Plaintiffs' allegations, the public transportation mask order and testing order do not require travelers to use medical devices authorized by the Food & Drug Administration (FDA) under an Emergency Use Authorization (EUA), and because, in any event, the statutory provision Plaintiffs rely on does not place substantive limits on requiring use of a product subject to a EUA.

For all of these reasons, as explained further below, the claims for relief identified here (Causes of Action 4, 6, 7, 8, 9, 10, 15, 16, 17, and 18) should be dismissed with prejudice for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) or for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and the remainder of the complaint should be dismissed without prejudice as a shotgun pleading pursuant to Federal Rules of Civil Procedure 8(a) and 12(e).

## BACKGROUND

### A.    Statutory and Regulatory Background

Congress enacted the Public Health Service Act in 1944.  *Consolidation & Revision of Laws Relating to the Public Health Service*, H.R. Rep. No. 1364, 78th Cong. 2d Sess., at 1 (1944).  The resulting statute, 42 U.S.C. § 264—part of a broader statutory scheme authorizing the Department of Health and Human Services (HHS) to take wide-ranging public-health actions, *see id.* §§ 264-272— authorizes the Secretary of HHS[2] "to make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession."  *Id.* § 264(a).  The next sentence of that provision "informs the grant of authority by illustrating the kinds of measures that could be necessary." *Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2488 (2021) (per curiam).  It specifies that, "[f]or purposes of carrying out and enforcing such regulations," the Secretary "may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or

---

[2] Although the statute assigns authority to the Surgeon General, all statutory powers and functions of the Surgeon General were transferred to the Secretary of HHS in 1966, 31 Fed. Reg. 8855 (June 25, 1966), Reorganization Plan No. 3, 80 Stat. 1610; *see also* Pub. L. No. 96-88, § 509(b), 93 Stat. 668, 695 (1979) (codified at 20 U.S.C. § 3508(b)).  The Secretary has retained these authorities despite the reestablishment of the Office of the Surgeon General in 1987.

articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary." 42 U.S.C. § 264(a). These enumerated measures "directly relate to preventing the interstate spread of disease by identifying, isolating, and destroying the disease itself." *Ala. Ass'n of Realtors*, 141 S. Ct. at 2488.

Subsection (b) imposes specific limits on the Secretary's ability to "provide for the apprehension, detention, or conditional release of individuals"—a power not specifically identified in subsection (a)—permitting such impositions on a person's physical movement only for diseases specified by Executive Order. *Id.* § 264(b). Subsections (c) and (d) set further limits on the detention of individuals. *See id.* § 264(c)-(d). The final subsection provides that the statute and any regulation adopted thereunder supersede state law "to the extent that such a provision conflicts with an exercise of Federal authority." *Id.* § 264(e).

The Secretary has promulgated several regulations implementing these provisions and delegating their enforcement to CDC. *See* 42 C.F.R. pt. 70; *Control of Communicable Diseases; Apprehension and Detention of Persons With Specific Diseases; Transfer of Regulations*, 65 Fed. Reg. 49,906, 49,907 (Aug. 16, 2000). A regulation now codified at 42 C.F.R. § 70.2 provides the CDC with broad discretion to address the uncontrolled spread of communicable disease. Specifically, if the CDC Director "determines that the measures taken by health authorities of any State or possession (including political subdivisions thereof) are insufficient to prevent the spread of any of the communicable diseases" between or among states, he may "take such measures to prevent such spread of the diseases as he/she deems reasonably necessary." 42 C.F.R. § 70.2. These measures include, but are not limited to, "inspection, fumigation, disinfection, sanitation, pest extermination, and destruction of animals or articles believed to be sources of infection." *Id.* In addition, separate longstanding regulations provide that the CDC may "conduct

public health prevention measures, at U.S. ports of entry and other locations, through non-invasive procedures . . . to detect the potential presence of communicable diseases." 42 C.F.R. § 71.20; *see id.* § 71.1 (definitions). The agency may also "stipulat[e] what measures are to be met" by an air carrier "to prevent the introduction or spread of a communicable disease," *id.* § 71.31(b), before it has "permission . . . to enter a U.S. port, disembark, and begin operation" on domestic soil, *id*. § 71.1 (defining "controlled free pratique"); *see also id.* § 71.32(b).

**B.    The COVID-19 Pandemic**

In December 2019, the novel coronavirus, later named SARS-CoV-2, was first detected in Wuhan, Hubei Province, in the People's Republic of China.  *See Declaring a Nat'l Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, 85 Fed. Reg. 15,337 (Mar. 13, 2020).  The virus causes a respiratory disease known as COVID-19.  *Id.*  COVID-19 is a serious illness that spreads easily. It poses a risk of "severe" respiratory illness, meaning that infected persons may require hospitalization, intensive care, or the use of a ventilator.  CDC, *Requirement for Negative Pre-Departure COVID-19 Test Result or Documentation of Recovery From COVID-19 for all Airline or Other Aircraft Passengers Arriving Into the United States From Any Foreign Country*, 86 Fed. Reg. 69,256, 69,259 (Dec. 7, 2021).  Severe cases may be fatal.  *Id.*  The virus that causes COVID-19 spreads in several ways, including when an individual "[b]reath[es] in air when close to an infected person."  CDC, *How COVID-19 Spreads* (updated July 14, 2021), https://perma.cc/R38B-WAPL.  Asymptomatic persons can transmit the virus.  86 Fed. Reg. at 69,258.

On January 31, 2020, the Secretary of HHS declared a public health emergency.  HHS, *Determination that a Public Health Emergency Exists* (Jan. 31, 2020), https://perma.cc/VZ5X-CT5R.  On March 11, 2020, the World Health Organization (WHO) classified COVID-19 as a pandemic.  85 Fed. Reg. at 15,337.

And on March 13, 2020, then-President Trump declared the outbreak a national emergency.  *Id.*  As of this filing, COVID-19 has infected more than eighty-five million and killed more than one million people in the United States alone, and many more around the world.  *See* CDC, COVID Data Tracker, https://perma.cc/VW6Q-HNTA (updated June 16, 2022).

## C.    The Challenged CDC Orders

To combat the spread of this highly contagious and deadly virus, governments at all levels have taken actions to protect the public.  Two of those requirements— the CDC's transportation mask order and international traveler testing order—are at issue in this case.

### 1.    The CDC's Public Transportation Mask Order

On January 21, 2021, President Biden issued an Executive Order explaining that public-health experts "have concluded that mask-wearing, physical distancing, appropriate ventilation, and timely testing can mitigate the risk of travelers spreading COVID-19."  Exec. Order No. 13998, *Promoting COVID-19 Safety in Domestic and Int'l Travel*, 86 Fed. Reg. 7205, 7205 (Jan. 21, 2021).  "Accordingly, to save lives and allow all Americans, including the millions of people employed in the transportation industry, to travel and work safely," the President called on all relevant government agencies to "immediately take action, to the extent appropriate and consistent with applicable law, to require masks to be worn in compliance with CDC guidelines" on public-transportation systems.  *Id.*

A few weeks later, the CDC issued the transportation mask order.  *See* Ex. 1, CDC*, Order Under Section 361 of the Public Health Service Act, Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs*, 86 Fed. Reg. 8025 (Feb. 3, 2021).  Generally, the transportation mask order requires persons to "wear masks over the mouth and nose when traveling on and conveyance . . . into or within the United States" and "at transportation hubs."  *Id.* at 8026.

The order exempts "child[ren] under the age of 2," and anyone "with a disability who cannot wear a mask, or cannot safely wear a mask," among others. *Id.* at 8027.  It also exempts (among other things) "[p]rivate conveyances operated solely for personal, non-commercial use."  *Id.* at 8028.  And it does not apply "[w]hile eating, drinking, or taking medication, for brief periods."  *Id.* at 8027. Although the order could theoretically be enforced through criminal penalties, "CDC does not intend to rely primarily on . . . criminal penalties but instead strongly encourages and anticipates widespread voluntary compliance[.]"  *Id.* at 8030 n.33.

TSA has also issued a series of Security Directives and an Emergency Amendment, through which it assisted with the enforcement of the CDC's mask order.  *See generally Corbett v. TSA*, 19 F.4th 478 (D.C. Cir. 2021) (holding that TSA Security Directives requiring masks in public-transportation systems are lawful); *see also id.* at 490 (Henderson, J., dissenting) (dissenting on the basis that plaintiff lacked standing, but also noting that, "[o]n the merits, this petition for review is a slam dunk loser").

As explained further below, the CDC's masking order is no longer in effect, having been vacated on a nationwide basis by a Florida district court, in a decision that is now on appeal to the Eleventh Circuit.  Nor are the accompanying TSA orders, which were rescinded in the wake of the same decision.

## 2.    The CDC's International Traveler Testing Order

As noted, longstanding regulations provide that travelers destined for the United States may be tested for infectious diseases while still overseas in order to prevent infected persons from entering the United States.  *See* 42 C.F.R. § 71.20(a). The CDC has previously implemented screening procedures for passengers entering the country from abroad, including during the Ebola outbreak.  *See* CDC, *Travel and Border Health Measures to Prevent the International Spread of Ebola*, https://go.usa.gov/xu7RH (July 8, 2016) (describing the CDC's efforts to screen

passengers departing West Africa for Ebola).

On December 25, 2020, the CDC issued an order generally requiring air travelers seeking to depart the United Kingdom with a final destination in the United States to provide documentation of a negative COVID-19 test result to the airline before departure. *Requirement for Negative Pre-Departure COVID-19 Test Result for All Airline Passengers Arriving Into the United States from the United Kingdom (UK)*, 85 Fed. Reg. 86,933 (Dec. 31, 2020). The order noted that a COVID-19 variant then spreading through England "may be more transmissible than previously circulating variants," and that although testing "does not eliminate all risk," it can "make travel safer by reducing spread on conveyances and in transportation hubs" "where social distancing may be challenging." *Id.* at 86,933-34.

A few weeks later, the UK variant had been identified in North America, along with another highly transmissible variant from South Africa. *Requirement for Negative Pre-Departure COVID-19 Test Result or Documentation of Recovery From COVID-19 for All Airline or Other Aircraft Passengers Arriving Into the United States From Any Foreign Country*, 86 Fed. Reg. 6331, 6333-34 (Jan. 21, 2021). On January 13, 2021, "[b]ased on increased transmissibility and spread of these new variants of SARS-CoV-2, and to reduce introduction and spread of these and future SARS-CoV-2 variants into the United States," the CDC determined that "expanding current UK pre-departure testing requirements to all foreign countries and U.S.-bound passengers is warranted." *Id.* at 6334.

On January 26, 2021, the CDC reissued the testing order with minor modifications, superseding the January 13 version. *Requirement for Negative Pre-Departure COVID-19 Test Result or Documentation of Recovery From COVID-19 for all Airline or Other Aircraft Passengers Arriving Into the United States From Any Foreign Country*, 86 Fed. Reg. 7387 (Jan. 28, 2021). Overall, the justification for these testing requirements is simple: "Individuals who travel may be at risk for

exposure to SARS-CoV-2 before, during, and after travel[,]" which "could result in U.S.-bound travelers further spreading the virus to others during travel, upon arrival in the United States, and at their destinations." *Id.* at 7389.

The most recent iteration of the order was issued on December 7, 2021. It provided that passengers age 2 and older traveling to the United States from abroad generally must take a COVID-19 test one day before their flight and present a negative test result (or proof of recovery from COVID-19) to board. Ex. 2, 86 Fed. Reg. at 69,257. "[T]he emergent Omicron variant[,]" a more transmissible strain of SARS-CoV-2 that is now dominant within the United States, was "of critical significance" to the CDC's decision to continue the testing requirement for international travelers. *Id.* at 69,259.

On June 10, 2022, CDC rescinded the international traveler testing order effective June 12, 2022. *Rescinding Requirement for Negative Pre-Departure COVID-19 Test Result or Documentation of Recovery From COVID-19 for All Airline or Other Aircraft Passengers Arriving Into the United States From Any Foreign Country* (June 10, 2022), https://perma.cc/9X2M-KJJM.

**D.   Litigation Background**

Prior to filing this lawsuit, Plaintiff Uri Marcus brought a petition for review in the Fifth Circuit, challenging TSA's Security Directives and Emergency Amendment requiring mask use on public transportation and transportation hubs. Pet. for Review, *Marcus v. CDC*, No. 21-60808 (5th Cir. Oct. 19, 2021); *see also* Compl. ¶ 230, ECF No. 1 ("Plaintiff Uri Marcus is part of a group of 13 disabled Americans challenging TSA's three Health Directives and one Emergency Amendment enforcing CDC's FTMM order"). This petition was one of several nearly identical petitions brought against TSA by members of a group that acknowledged they were "working collectively" with each other. Opp'n at 8, *Wall v. TSA*, No. 21-13619 (11th Cir. Nov. 8, 2021). Shortly after filing petitions for

review, Mr. Marcus and several other petitioners asserted that TSA had retaliated against them for filing those actions by subjecting them to enhanced screening or placing them on a watch list, and filed motions demanding relief. All of these motions were denied. *See* Order, *Marcus v. TSA*, No. 21-60808 (5th Cir. Oct. 29, 2021); Order, *Faris v. TSA*, No. 21-3951 (6th Cir. Oct. 29, 2021); Order, *Wall v. TSA*, No. 21-13619 (11th Cir. Oct. 29, 2021).

After the Fifth Circuit transferred Mr. Marcus's petition to the D.C. Circuit (where a first-filed petition was pending) and consolidated it with other petitions brought by members of Mr. Marcus's group, Mr. Marcus filed a motion to compel TSA to restore his TSA PreCheck eligibility, which he asserted was revoked in retaliation for bringing his petition. Mot. to Compel, *Marcus v. TSA*, No. 21-1225 (D.C. Cir. Dec. 9, 2021). On March 3, 2022, the D.C. Circuit denied Mr. Marcus's motion to compel, because he had not properly filed a petition challenging any order revoking his PreCheck status. *See* Order, *Marcus v. TSA*, No. 21-1225 (D.C. Cir. Mar. 3, 2022). Mr. Marcus did not subsequently bring any petition for review challenging the alleged PreCheck revocation. Merits briefing in the consolidated case against TSA is ongoing. *See Marcus v. TSA*, 21-1225 (D.C. Cir.).

Plaintiffs filed this lawsuit on April 8, 2022, naming as Defendants three government agencies (CDC, HHS, and TSA) and TSA employee Julie Carrigan in her official and personal capacities, as well as eight airlines and unidentified airline employees, and two medical vendors called STAT-MD and MedAire. *See generally,* Compl. Plaintiffs bring eighteen claims against the Federal Defendants. Plaintiffs allege that the CDC's mask order violates (1) statutory limitations on the agency's authority, *id.* ¶¶ 723-39; (2) the procedural requirements of the APA, *id.* ¶¶ 740-48; (3) the substantive requirements of the APA, *id.* ¶¶ 749-59; (4) the Congressional Review Act, *id.* ¶¶ 760-68; (5) the non-delegation doctrine, *id.* ¶¶ 769-78; (6) the Tenth Amendment, *id.* ¶¶ 779-84; (7) the Fifth Amendment, *id.*

¶¶ 786-92; (8) the right to travel, *id.* ¶¶ 793-99; (9) the Air Carrier Access Act, *id.* ¶¶ 800-12; and (10) the Federal Food, Drug, and Cosmetic Act, *id.* ¶¶ 813-32. Plaintiffs further allege that the CDC's testing order violates (11) statutory limitations on the agency's authority, *id.* ¶¶ 833-37; (12) the procedural requirements of the APA, *id.* ¶¶ 838-44; (13) the substantive requirements of the APA, *id.* ¶¶ 845-50; (14) the non-delegation doctrine, *id.* ¶¶ 851-57; (15) the right to travel, *id.* ¶¶ 858-61; (16) the Federal Food, Drug, and Cosmetic Act, *id.* ¶¶ 862-70; and (17) the International Covenant on Civil & Political Rights, *id.* ¶¶ 871-76. Plaintiffs also allege that (18) TSA and Ms. Carrigan (in her official capacity) revoked Plaintiff Uri Marcus's TSA PreCheck status, in violation of the First Amendment, *id.* ¶¶ 877-88.

Since Plaintiffs filed their complaint, two different judges of the United States District Court for the Middle District of Florida have weighed in on claims challenging the CDC's public transportation mask order. In *Wall v. CDC*, No. 6:21-cv-975, 2022 WL 1619516 (M.D. Fla. Apr. 29, 2022), *appeal docketed*, No. 22-11532 (11th Cir. May 4, 2022)—a case brought by an associate of the Plaintiffs, with a complaint that was in significant part identical to Plaintiffs' complaint here—the district court upheld CDC's ability to authorize the public transportation mask order, rejecting many of the claims brought in this case. *See id.* at *2-11. In *Health Freedom Def. Fund, Inc. v. Biden*, --- F. Supp. 3d ----, 2022 WL 1134138 (M.D. Fla. Apr. 18, 2022), *appeal docketed*, No. 22-11287 (11th Cir. Apr. 21, 2022), the district court concluded that the CDC lacked statutory authority to issue the mask order, and that the order violated the substantive and procedural requirements of the APA. *See id.* at *3-22. In light of the *Health Freedom* decision, the CDC's mask order is no longer in effect, TSA has rescinded its related orders, and both agencies have confirmed that they are not enforcing the orders. Challenges to the CDC order in three other district courts (one of which also challenges the TSA orders) have

been stayed pending the Eleventh Circuit's resolution of the *Health Freedom* appeal.  *See* Order, *Van Duyne v. CDC*, No. 22-cv-0122 (N.D. Tex. May 24, 2022); Order, *Fam. Rsch. Council Action, Inc. v. Biden*, No. 22-cv-0209 (N.D. Tex. May 24, 2022); Order, *Florida v. Walensky*, No. 22-cv-0718 (M.D. Fla. June 2, 2022).

In addition, in *Wall*, the district court also rejected challenges to the international traveler testing order.  *Wall*, 2022 WL 1619516, at *2-11.  The Eleventh Circuit recently rejected an emergency motion to enjoin the testing order pending appeal, although, as noted, that order has since been rescinded.  Order, *Wall v. CDC*, No. 22-11532 (11th Cir. May 12, 2022).

## STANDARD OF REVIEW

"When a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety," under Federal Rule of Civil Procedure 12(b)(1).  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  "It is to be presumed that a cause lies outside [federal courts'] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  When a complaint is challenged under Rule 12(b)(1), "[n]o presumptive truthfulness attaches to plaintiff's allegations" and the court may "hear evidence regarding jurisdiction and resolv[e] factual disputes where necessary."  *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009) (citation omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The court must accept as true all well-pleaded facts, but disregards legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft*

12

*v. Iqbal*, 556 U.S. 662, 678 (2009). The court need not accept conclusory allegations, allegations contradicted by exhibits attached to the complaint or matters properly subject to judicial notice, unwarranted deductions of fact, or unreasonable inferences. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

## ARGUMENT

### I.   Plaintiffs' complaint should be dismissed as a shotgun pleading.

Plaintiff's complaint is an impermissible "shotgun pleading"—not the "short and plain statement" required by Federal Rule of Civil Procedure 8(a)(2). "Shotgun pleadings are pleadings that overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations." *Sollberger v. Wachovia Sec., LLC*, No. 09-cv-766, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010). Shotgun pleadings are "unacceptable," *id.*, because "unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." *Mason v. Cnty. of Orange*, 251 F.R.D. 562, 563-64 (C.D. Cal. 2008) (quoting *Anderson v. Dist. Bd. of Trs. Of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996)).

Plaintiffs present a 159-page, 1,087-paragraph complaint, with more than 1,600 pages of exhibits. The Complaint includes thirty-nine causes of action, including eighteen against the Federal Defendants. To make matters worse, the Complaint includes an omnibus "Statement of Facts," which is almost 700 paragraphs long and includes almost 300 citations to exhibits, without any specific indication which of these overwhelming number of allegations apply to which specific claims against which defendants. *Sollberger*, 2010 WL 2674456, at *4 (shotgun pleadings "overwhelm defendants with an unclear mass of allegations"); *Anderson*, 77 F.3d at 366 ("Anderson's complaint is a perfect example of a 'shotgun'

pleading, in that it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief"); *Moore v. City of Orange*, No. 17-cv-1024, 2017 WL 10518114, at *3 (C.D. Cal. Sept. 25, 2017) ("Moore must file a more definite statement by incorporating only those allegations which apply to each claim").

Furthermore, a complaint is a shotgun pleading "where the plaintiff uses the omnibus term 'Defendants' throughout a complaint by grouping defendants together without identifying what the particular defendants specifically did wrong." *Sollberger*, 2010 WL 2674456, at *4.  While some causes of action in the Complaint are specific as to which defendants they apply to, others are not, leaving Defendants to guess which of them Plaintiffs are making the claims against. *See, e.g.*, Causes of Action 2-6, 10.  "This type of pleading makes it impossible for each of the defendants to adequately answer Plaintiff[s'] allegations" and therefore "constitutes an impermissible shotgun pleading." *Morris v. Sun Pharma Glob. Inc.*, No 20-cv-10441, 2021 WL 3913191, at *3 (C.D. Cal. May 13, 2021).

Indeed, Mr. Marcus is presumably familiar with these requirements:  in *Wall*, which was brought by one of his co-petitioners in the D.C. Circuit, *see supra* p. 10, the district court initially dismissed a similarly prolix complaint as a shotgun pleading before this case was filed. *Wall v. CDC*, No. 21-cv-975, 2021 WL 8201517, at *6 (M.D. Fla. Dec. 18, 2021) (dismissing similar complaint by Lucas Wall as a shotgun pleading, and directing plaintiff to "include a paragraph at the beginning of each cause of action that specifies the relevant incorporated factual allegations by paragraph number").

This Court should follow suit and dismiss Plaintiffs' shotgun pleading in its entirety, without prejudice, pursuant to Rules 8(a) and 12(e). *See McHenry v. Renne*, 84 F.3d 1179-80 (9th Cir. 1996) (district court did not abuse its discretion in dismissing complaint because "[p]rolix, confusing complaints such as the ones

plaintiffs filed in this case impose unfair burdens on litigants and judges"); *Davis v. Ibrahim*, No. 21-cv-1032, 2021 WL 6618746, at *2 (C.D. Cal. Nov. 16, 2021) ("A 'shotgun' complaint must be dismissed under Rule 12(e)"); *see also Ho v. Nationstar Mortg., LLC*, No. 19-cv-10532, 2020 WL 7714700, at *6 (C.D. Cal. Dec. 29, 2020) ("[A]ny complaint must be sufficiently clear to advise a named defendant of the law he has allegedly violated and of the facts demonstrating that violation" and thus "even a pro se complaint is subject to dismissal" if it fails to do so) (quoting *Nicolescu v. United Nations Org.*, No. 04-cv-2720, 2005 WL 8156275 (C.D. Cal. Feb. 2, 2005)).

## II. The Court should dismiss TSA and Julie Carrigan in her official capacity because it lacks subject-matter jurisdiction over the claims against them (Cause of Action 18).

Plaintiff asserts that TSA illegally retaliated against him by revoking his PreCheck status.  *See* Compl. ¶¶ 115-16, 877-88.  This claim should be dismissed, because 49 U.S.C. § 46110 vests exclusive jurisdiction in the courts of appeals:

> [A] person disclosing a substantial interest in an order issued by the Secretary of Transportation (or the Administrator of the Transportation Security Administration with respect to security duties and powers designated to be carried out by the Administrator of the Transportation Security Administration . . . ) in whole or in part under [part A], part B, or subsection (l) or (s) of section 114 may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides . . . .

49 U.S.C. § 46110(a).  The courts of appeals have "exclusive jurisdiction to affirm, amend, modify, or set aside any part of [such an] order[.]"  *Id.* § 46110(c).

Thus, pursuant to section 46110, only courts of appeals may consider challenges to orders issued by the TSA.  *See, e.g.*, *Kashem v. Barr*, 941 F.3d 358,

391 (9th Cir. 2019) (TSA's determinations to maintain an individual's status on the No Fly List at the conclusion of the redress process subject to exclusive Court of Appeals jurisdiction pursuant to section 46110); *Gilmore v. Gonzales*, 435 F.3d 1125, 1133 (9th Cir. 2006) (district court lacked jurisdiction to review TSA Security Directive requiring passengers to present identification); *Ghedi v. Mayorkas*, 16 F.4th 456, 468-69 n.56 (5th Cir. 2021) ("49 U.S.C. § 46110 . . . prevents district courts from reviewing certain TSA actions"); *SecurityPoint Holdings, Inc. v. TSA*, 769 F.3d 1184, 1187 (D.C. Cir. 2014) (reviewing First Amendment retaliation claim against TSA under Section 46110); *Merritt v. Shuttle, Inc.*, 245 F.3d 182, 187 (2d Cir. 2001) ("Section 46110(c) precludes federal district courts from affirming, amending, modifying, or setting aside any part of such an order."); *Green v. Brantley*, 981 F.2d 514, 519 (11th Cir. 1993) (district court lacked subject matter jurisdiction over claim challenging FAA order); *Wall*, 2021 WL 8201517, at *10 (court "quite simply lacks jurisdiction to adjudicate" challenges to TSA Security Directives and Emergency Amendment implementing public transportation mask requirements, in case brought by Plaintiffs' compatriot Mr. Lucas Wall); *Durso v. Napolitano*, 795 F. Supp. 2d 63, 69 (D.D.C. 2011) (district court lacks jurisdiction over claim challenging TSA screening order).  If such a claim is filed in federal district court, it must be dismissed because "a statute which vests jurisdiction in a particular court cuts off original jurisdiction in other courts in all cases covered by that statute." *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984); *see also Seraji v. Gowadia*, No. 16-cv-1637, 2017 WL 2628545, at *7 (C.D. Cal. Apr. 28, 2017) ("To the extent that section 46110 grants the courts of appeals jurisdiction over certain 'orders,' it divests the district courts of jurisdiction over those agency decisions."); *cf. Ligan v. LaHood*, 614 F.3d 150, 154 (5th Cir. 2010) ("Specific grants of jurisdiction to the courts of appeals override general grants of jurisdiction to the district courts.").

The alleged PreCheck revocation challenged here is clearly an order that falls within section 46110's exclusive jurisdictional channel to the courts of appeals. Decisions regarding the PreCheck program are made pursuant to TSA's authority under Part A of Title 49, and therefore fall under section 46110.  *See* 49 U.S.C. § 44919 (governing administration of the PreCheck Program); *see also Gilmore*, 435 F.3d at 1132 ("Courts have given a broad construction to the term 'order'" in Section 46110); *id.* ("finality is key" to the inquiry and "if the order provides a 'definitive' statement of the agency's position, has a 'direct and immediate' effect on the day-to-day business of the party asserting wrongdoing, and envisions 'immediate compliance with its terms,' the order has sufficient finality" to fall under section 46110); Compl., Ex. 25 ("This letter constitutes TSA's final decision").

Plaintiffs cannot "escape the jurisdictional limitations of § 46110 by claiming that [they] assert[]" a constitutional challenge to the order.  *See Corbett v. United States*, 458 F. App'x 866, 871 (11th Cir. 2012).  When an individual challenges an action that falls within the scope of Section 46110, the courts of appeals have exclusive jurisdiction over the claim and any other claims that are "inescapably intertwined." *Gilmore*, 435 F.3d at 1133 n.9.  A claim is intertwined "if it alleges that the plaintiff was injured by such an order and that the court of appeals has authority to hear the claim on direct review of the agency order." *Merritt*, 245 F.3d at 187.  This includes constitutional claims that "squarely attack[]" particular agency orders. *Gilmore*, 435 F.3d at 1133 n.9 (First Amendment, Fourth Amendment, Fifth Amendment, and right-to-travel claims); *accord Corbett v. United States*, 458 F. App'x at 871 (explaining that "§ 46110 does not deny . . . judicial review" of Fourth Amendment claims, but channels review to the courts of appeals); *Guance v. deVincentis*, 708 F.2d 1290, 1293 (7th Cir. 1983) (due process).

Accordingly, the Court should dismiss TSA and Julie Carrigan in her official capacity (Cause of Action 18) for lack of subject-matter jurisdiction.[3]

## III.  The Court lacks subject-matter jurisdiction over Plaintiffs' Congressional Review Act claim (Cause of Action 4).

The CRA provides that "[b]efore a rule can take effect, the Federal agency promulgating such rule shall submit" a report that includes "a concise general statement relating to the rule" and a "proposed effective date." 5 U.S.C. § 801(a)(1)(A).  Plaintiffs assert a violation of the CRA by CDC and HHS in connection with the public transportation mask order.  Compl. ¶¶ 760-68.  However, Congress has provided that "[n]o determination, finding, action or omission under [the CRA] shall be subject to judicial review." 5 U.S.C. § 805.  As a result of this provision, the Ninth Circuit "join[ed] [its] sister circuits" in holding that "federal courts do not have jurisdiction over statutory claims that arise under the CRA." *Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553, 563 (9th Cir. 2019); *see also, e.g., Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 229 (D.C. Cir. 2009) ("The language of § 805 is unequivocal and precludes review of this claim").  Therefore, Plaintiffs' claim must be dismissed.

## IV.  The Court lacks subject-matter jurisdiction over Plaintiffs' ICCPR claim (Cause of Action 17).

Plaintiffs' claim that the CDC's testing order violates the ICCPR, Compl. ¶¶ 871-76, is meritless.  Even if the testing order violated the provision identified by Plaintiffs, the ICCPR does not "create obligations enforceable in the federal courts." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 735 (2004); *see also Medellin v. Texas*, 552 U.S. 491, 504-05 (2008) (explaining that treaties are "ordinarily" not self-executing).

---

[3] As explained *supra* p. 14, Plaintiffs' complaint is vague as to which defendants certain claims apply to.  To the extent the Court construes any other claim to have been made against TSA, such a claim should similarly be dismissed pursuant to 49 U.S.C. § 46110(a).

And in any event, Plaintiffs' claim is premised on the assertion that the testing order "arbitrarily deprives" Mr. and Mrs. Marcus "of the right to enter their own country of citizenship." Compl. ¶ 875. But the Complaint fails to make any plausible allegation that the testing order—which merely requires individuals to provide proof of a negative COVID-19 test (or recovery from COVID-19) before departure to the United States—prevents them from traveling to the United States.

## V.   Plaintiffs fail to state a Tenth Amendment claim (Cause of Action 6).

The Tenth Amendment provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. The Tenth Amendment "is essentially a tautology," in that it "confirms that the power of the Federal Government is subject to limits that may, in a given instance, reserve power to the States." *New York v. United States*, 505 U.S. 144, 157 (1992). Those limits on federal power, however, are "not derived from the text of the Tenth Amendment itself," but rather from all of the *other* "limitations contained in the Constitution." *Id.* at 156; *accord United States v. Darby*, 312 U.S. 100, 124 (1941) ("The amendment states but a truism that all is retained which has not been surrendered.").

Plaintiffs acknowledge that the federal government may regulate interstate commerce, Compl. ¶ 781; *see also* U.S. Const. art. I, § 8, cl. 3, but assert that "[t]he 10th Amendment precludes CDC and HHS from applying any national mask mandate to intrastate transportation." Compl. ¶ 781. But it does not matter that some public conveyances do not cross state lines. What matters is that *communicable diseases* cross borders, and thus, especially in this context, even wholly intrastate activity can "exert[] a substantial economic effect on interstate commerce," *Wickard v. Filburn*, 317 U.S. 111, 125 (1942)—as is obvious from the economic turmoil that COVID-19 has created. There is no doubt that Congress can act to control such an "interstate epidemic." *United States v. Comstock*, 560 U.S. 126, 134-35, 142, 148

(2010) (citing U.S. Const. art. I, § 8, cl. 3). And Plaintiff's basic argument—that wholly intrastate activity is beyond the reach of the commerce power—was rejected long ago. *See, e.g.*, *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 37 (1937) (cited favorably in *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 551 (2012)).

Plaintiffs' suggestion that the mask order violates the anti-commandeering doctrine also lacks merit. The mask order is generally applicable to all public and private mass transportation systems. It does not *exempt* state employees, but that is not a Tenth Amendment problem: "[t]he anticommandeering doctrine does not apply when" the government "evenhandedly regulates an activity in which both States and private actors engage." *Murphy v. NCAA*, 138 S. Ct. 1461, 1478 (2018); *see also Wall*, 2022 WL 1619516, at *2 n.7 (rejecting a virtually verbatim Tenth Amendment claim made by Plaintiffs' associate Lucas Wall, "[b]ecause the FTMM applies to public and private mass transportation systems").

Meanwhile, Plaintiffs argue that the federal government "may not pre-empt the states' authority" regarding masking, Compl. ¶ 782, but the Supremacy Clause allows exactly that, U.S. Const. art. VI, cl. 2, including via regulation, *see Wyeth v. Levine*, 555 U.S. 555, 576 (2009).

## VI.   Plaintiffs fail to state a Fifth Amendment claim (Cause of Action 7).

Plaintiffs' Due Process Clause claim appears to challenge the fact that the CDC's mask order allows for medical exemptions but leaves much of the implementation of those exemptions to airlines in the first instance. *See* Compl. ¶¶ 786–92. This claim fails at the outset for lack of a protected interest. As the district court in *Wall* ruled on a virtually identical claim, the right to travel without a mask is not a constitutionally protected liberty interest, *Wall*, 2022 WL 1619516, at *2 n.8, and certainly not while on a commercial airline flight during a global pandemic of an airborne respiratory virus. *Cf. Abdi v. Wray*, 942 F.3d 1019, 1032 (10th Cir. 2019) (being "reasonably encumbered" in one's "ability to travel" "by

only one mode of transportation" does not violate due process); *Klaassen v. Trs. of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) (requirement "to wear masks" is "not constitutionally problematic"). Meanwhile, Plaintiffs can certainly still "make [their] own medical decisions," Compl. ¶ 789, but any such right does not extend to placing others at greater risk of communicable diseases while traveling on public transportation. And there is no constitutional right "to not have a policy imposed on [them]," *id.*, that they think is harmful—that is one of the basic tradeoffs of living in a society, with a government that is authorized to make policy choices that individuals citizens may not support.

Furthermore, contrary to Plaintiffs' allegations, *id.* ¶ 790, allowing private companies to assist with *implementation* of a regulatory order (as compared with delegating *policymaking authority* to a private actor) is neither unusual nor unlawful. *See Cospito v. Heckler*, 742 F.2d 72, 87 n.25 (3d Cir. 1984) (citing *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 537 (1935)).

**VII.  Plaintiffs fail to state a right-to-travel claim (Causes of Action 8 & 15).**

Plaintiffs' assertion that the mask order and testing order violate their right to travel, Compl. ¶¶ 793-99, 858-61, is meritless. Both "the freedom to travel interstate" and "the freedom to travel abroad" are "subject to reasonable government regulation." *Abdi*, 942 F.3d at 1030 (quoting *Haig v. Agee*, 453 U.S. 280, 306 (1981)); *see also Gilmore*, 435 F.3d at 1137 (rejecting right to travel claim where challenged policy's "burden [was] not unreasonable"). "[M]ere burdens on a person's ability to travel from state to state are not necessarily a violation of their right to travel." *Doe v. Moore*, 410 F.3d 1337, 1348 (11th Cir. 2005); *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 54 (2d Cir. 2007) ("[M]inor restrictions on travel simply do not amount to the denial of a fundamental right."); *Miller v. Reed*, 176 F.3d 1202, 1205 (9th Cir. 1999) ("Burdens placed on travel generally . . . or minor burdens . . . do not constitute a violation" of the right to travel).

Here, masking and testing requirements during a pandemic are clearly reasonable.  *See Klaassen*, 7 F.4th at 593 ("[P]laintiffs just need to wear masks and be tested, requirements that are not constitutionally problematic"); *Wall*, 2022 WL 1619516, at *2 n.9 (rejecting virtually identical right-to-travel claim against the CDC mask order, because "[a] mere inconvenience caused by a reasonable government regulation is not enough"); *see also Zinman v. Nova Se. Univ., Inc.*, No. 21-cv-60723, 2021 WL 4025722, at *14 (S.D. Fla. Aug. 30, 2021) ("nearly every public health institution in the country has recommended mask-wearing as a means of slowing the virus's spread"); *Miranda ex rel. M.M. v. Alexander*, No. 21-cv-535, 2021 WL 4352328, at *6 (M.D. La. Sept. 24, 2021) ("[A] nearly unanimous consensus of the public health community recommends the use of masks as a means of reducing the spread of the virus and protecting the mask wearer from it."); *United States v. James*, No. 19-cr-8019, 2020 WL 6081501, at *1 (D. Ariz. Oct. 15, 2020) ("studies and epidemiological models from leading experts . . . indicate that the widespread use of masks safely and meaningfully reduces COVID-19 transmission, hospitalization, and death").  And courts around the country have upheld far more severe travel-related burdens, inconveniences, and limitations.  *See, e.g.*, *Abdi*, 942 F.3d at 1024 (plaintiff "systematically subject to extra screening at airports and land border crossings"); *Beydoun v. Sessions*, 871 F.3d 459, 468 (6th Cir. 2017) ("While Plaintiffs may have been inconvenienced by the extra security hurdles they endured in order to board an airplane, these burdens do not amount to a constitutional violation."); *Moore*, 410 F.3d at 1348 (in-person sex-offender notification required "when [plaintiff] change[s] permanent or temporary residences").

Further, the mask and testing orders present no more than a "minor burden" on travel as neither excludes Plaintiffs from *any* form of travel.  Under the terms of the mask order, Plaintiffs could fly with a mask or, if they are unable to safely wear a mask, fly with an exemption.  *See* 86 Fed. Reg. at 8027; *Wall*, 2022 WL 1619516,

at *2 n.9 ("Plaintiff[s] [are] not barred from traveling to another state by virtue of not wearing a mask."); *cf. Forbes v. Cnty. of San Diego*, No. 20-cv-00998, 2021 WL 843175, at *7 (S.D. Cal. Mar. 4, 2021) ("The Mask Rules do not prevent [Plaintiff] from engaging in interstate travel").  In fact, Plaintiffs concede that Mr. and Mrs. Marcus were able to receive mask exemptions on multiple occasions, but simply chose not to travel due to certain airline policies they regard as discriminatory.  *See, e.g.*, Compl. ¶¶ 85–87, 98–99, 101.  Meanwhile, Plaintiffs fail to make any plausible allegation that the testing order excludes them from flying to the United States, instead relying on the pure speculation that they would be unable to obtain COVID-19 tests that are now widely available.  *See id.* ¶ 859 ("If I'm abroad and can't obtain a rapid COVID-19 test, I am prohibited from flying home to the United States.").

And even if the mask or testing order did prevent Plaintiffs from flying, "the Constitution does not guarantee the right to travel by any particular form of transportation."  *Gilmore*, 435 F.3d at 1136; *see also Abdi*, 942 F.3d at 1030–31 (alleged placement on terrorist list "affects only one mode of transportation" and "places no restrictions on Adbi's ability to drive, bus, or otherwise commute interstate" and is constitutional); *Beydoun*, 871 F.3d at 468 ("Importantly, Plaintiffs have not actually been prevented from flying altogether or from traveling by means other than an airplane."); *Town of Southold*, 477 F.3d at 54 ("[T]ravelers do not have a constitutional right to the most convenient form of travel."); *Miller*, 176 F.3d at 1205 (no "right to drive" because "burdens on a single mode of transportation do not implicate the right to interstate travel"); *Wall v. CDC*, 543 F. Supp. 3d 1290, 1293 (M.D. Fla. 2021) ("[F]lying may be Plaintiff's preferred mode of transportation, but it is by no means the *only* reasonable mode of transportation available to him").

**VIII. Plaintiffs fail to state an Air Carrier Access Act claim (Cause of Action 9).**

Plaintiffs' assertion that the mask order violates the ACAA is similarly meritless.  While the ACAA prohibits an "air carrier" from "[d]iscriminat[ing]

against handicapped individuals," CDC is not an "air carrier." 49 U.S.C. § 41705(a); *Wall*, 2022 WL 1619516, at *2 n.10 ("the ACAA only applies to 'air carriers' and the CDC is not an 'air carrier'").[4]  In any event, the mask order does not "discriminate against" passengers on the basis of disability.  To the contrary: the order explicitly *exempts* any "person with a disability who cannot wear a mask, or cannot safely wear a mask, because of the disability." 86 Fed. Reg. at 8027; *see Wall*, 2022 WL 1619516, at *2 n.10 ("Plaintiff alleges that the FTMM discriminates against handicapped individuals, however, the FTMM explicitly exempts any 'person with a disability who cannot wear a mask . . . because of a disability.'").  Furthermore, Plaintiffs' ACAA claim also fails because there is no private right of action under the ACAA.  *Segalman v. Sw. Airlines Co.*, 895 F.3d 1219, 1225 (9th Cir. 2018) ("Congress did not intend to create an implied private cause of action to remedy violations of the ACAA."); *see also Wall*, 2022 WL 1619516, at *2 n.10.

## IX.   Plaintiffs fail to state a Food, Drug & Cosmetic Act claim (Causes of Action 10 & 16).

Plaintiffs allege that the mask order and testing order violate the FDCA by allegedly requiring them to use medical devices (face masks and COVID-19 tests) that are unapproved by the FDA or approved under an Emergency Use Authorization (EUA).  *See* Compl. ¶¶ 813-32, 862-70.  These claims, too, are meritless.

In reality, the mask order says nothing about requiring the use of a mask authorized under an EUA.  Instead, it requires "material covering the nose and mouth of the wearer, excluding face shields." 86 Fed. Reg. at 8027 & n.6.  The order further explains that a mask "should be a solid piece of material without slits, exhalation valves, or punctures," and that compliant masks include—among others—"[m]edical

---

[4] Furthermore, the ACAA implementing regulations invoked by Plaintiffs likewise apply only to air carriers, 14 C.F.R. §§ 382.17, 382.19, 382.21, 382.23, 382.25, 382.87, so they have no clear relevance to Plaintiff's claim against CDC and HHS.

masks and N-95 respirators." *Id.* at 8027 n.6.  In other words, individuals may use (1) a mask that is FDA-cleared (like an N-95 respirator), (2) a mask authorized under an EUA (like certain disposable surgical masks), or (3) a mask that is not cleared, approved, or authorized by the FDA at all—as long as it properly "cover[s] the nose and mouth." *Id.* at 8027.  So, if Plaintiffs have concerns about wearing a mask authorized under an EUA, they can select another mask that is not.  *See Wall*, 2022 WL 1619516, at *2 n.5 (rejecting Plaintiff's similar FDCA arguments as "weak").

Similarly, the testing order does not require a COVID-19 test authorized by an EUA.  It requires a negative "viral test."  While a "viral test" may be "cleared, approved, or issued an [EUA]," it may also be "granted marketing authorization by the relevant national authority," 86 Fed. Reg. at 69,258, including rapid tests.

In any event, the statutory provision on which Plaintiffs rely does not place *substantive* limits on requiring use of a product subject to an EUA; it merely allows the agency to establish conditions that are "necessary or appropriate to protect the public health," including to ensure "that individuals to whom the product is administered" have certain *information*, such as about "the option to accept or refuse administration of the product" and "of the consequences, if any, of refusing administration of the product." 21 U.S.C. § 360bbb-3(e)(1)(A).  In other words, the statute explicitly contemplates that there may be "consequences" from refusal.  *Cf. Bridges v. Hous. Methodist Hosp.*, 543 F. Supp. 3d 525, 528 (S.D. Tex. 2021) ("Bridges can freely choose to accept or refuse a COVID-19 vaccine [subject to an EUA]; however, if she refuses, she will simply need to work somewhere else.").

## CONCLUSION

Causes of Action 4, 6, 7, 8, 9, 10, 15, 16, 17, and 18 of the Complaint should be dismissed with prejudice pursuant to Rules 12(b)(1) and (6), and the entire complaint should be dismissed without prejudice pursuant to Rules 8(a) and 12(e).

Dated: June 17, 2022                    Respectfully submitted,


                                        BRIAN M. BOYNTON
                                        Principal Deputy Assistant Attorney General

                                        TRACY WILKISON
                                        United States Attorney

                                        ERIC B. BECKENHAUER
                                        Assistant Branch Director

                            By:    */s/ Johnny H. Walker*
                                        STEPHEN M. PEZZI
                                        ANDREW F. FREIDAH
                                        JOHNNY H. WALKER
                                        MICHAEL J. GERARDI
                                          Trial Attorneys
                                        United States Department of Justice
                                        Civil Division
                                        Federal Programs Branch
                                        1100 L Street NW
                                        Washington, DC 20530
                                        Tel.: (202) 514-3183
                                        Email: johnny.h.walker@usdoj.gov

                                        *Counsel for the Federal Defendants*