# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

KLEANTHIS ANDREADAKIS,
    Plaintiff,

v.                                                                      Civil No. 3:22cv52 (DJN)

CENTER FOR DISEASE
CONTROL & PREVENTION *et al.*,
    Defendants.

## **MEMORANDUM OPINION**

Plaintiff Kleanthis Andreadakis filed the instant Complaint (ECF No. 1) challenging the implementation and enforcement of two government-issued COVID-19 safety measures regulating the airline industry.  This matter comes before the Court on two motions to dismiss filed by multiple defendants.  Defendants American Airlines, Inc., JetBlue Airways Corp., Southwest Airlines Co. and United Airlines, Inc. (collectively, the "Airline Defendants") have filed a Motion to Dismiss the Complaint (ECF No. 78), moving pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all twenty-four counts against them for failure to state a claim.  Similarly, Defendant STAT-MD has filed a Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rules 12(b)(2) and 12(b)(6) (ECF No. 80), moving to dismiss the two counts against it for lack of personal jurisdiction and failure to state a claim.  For the reasons stated herein, the Court will GRANT the Motions and dismiss all claims against the Airline Defendants and STAT-MD.  Additionally, for the reasons stated herein, the Court will DISMISS AS MOOT all claims against Defendants Centers for Disease Control and Prevention ("CDC") and the Department of Health and Human Services ("HHS") (collectively, the "Federal Defendants").

# I.     BACKGROUND

## A.     The Challenged Orders

Plaintiff challenges two government orders relating to the safety of air travel.  On January 13, 2021, the CDC issued an order, which it then amended in December 2021 (the "Testing Order"), generally requiring international air travelers to provide proof of a negative COVID-19 test before departure to the United States.  *Requirement for Negative Pre-Departure COVID-19 Test Result or Documentation of Recovery from COVID-19 for All Airline or Other Aircraft Passengers Arriving into the United States from Any Foreign Country*, 86 Fed. Reg. 69,256, 69,258 (Dec. 7, 2021.)  Effective June 12, 2022, the CDC rescinded the Testing Order, citing the improvement of other tools used to fight COVID-19.  87 Fed. Reg. 36129 (June 15, 2022).

On February 3, 2021, the CDC issued the Mask Order.  CDC, *Order Under Section 361 of the Public Health Service Act, Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs*, 86 Fed. Reg. 8025, 8026 (Feb. 3, 2021).  The Mask Order required persons to "wear masks over the mouth and nose when traveling on any conveyance . . . into or within the United States" and "at transportation hubs."  *Id.* at 8026.  The Mask Order exempted "child[ren] under the age of 2" and anyone "with a disability who cannot wear a mask, or cannot safely wear a mask," among others.  *Id.* at 8027.  It further exempted "[p]rivate conveyances operated solely for personal, non-commercial use."  *Id.* at 8028.  It did not apply "[w]hile eating, drinking, or taking medication, for brief periods."  *Id.* at 8027.  The CDC last extended the Mask Order to remain in place until May 3, 2022, but thereafter stopped enforcing the Mask Order

effective April 18, 2022 due to the court order discussed below.[1]  Likewise, the Transportation

Security Administration has ceased enforcing its mask-related security directives.

On April 18, 2022, United States District Judge Kathryn K. Mizelle of the Middle

District of Florida issued an order (the "Vacatur Order") declaring the Mask Order unlawful,

vacating it and remanding it to the CDC. *Health Freedom Defense Fund, Inc. v. Biden, et al.,*

No. 8:21cv1693 (M.D. Fla.), ECF No. 53.  The Government has appealed that ruling.

No. 8:21cv1693 (M.D. Fla.), ECF No. 55.  The briefing in the appeal has not yet completed, and

the Eleventh Circuit has not yet scheduled oral argument. *Health Freedom Defense Fund, Inc. v.*

*Biden, et al.*, No. 22-11287 (11th Cir.).

### B.    Plaintiff's Lawsuit

Plaintiff belongs to a group known as Americans Against Mask Mandates ("AAMM"),

which Lucas Wall chairs.  AAMM works collectively on lawsuits filed by its members to

challenge the Mask Order.  On January 28, 2022, Plaintiff, proceeding *pro se*, filed the instant

Complaint against the CDC, HHS, American Airlines, JetBlue Airways, Southwest Airlines,

United Airlines and STAT-MD.  (Compl. (ECF No. 1).)  Plaintiff seeks to "permanently enjoin

enforcement of the Federal Transportation Mask Mandate and International Traveler Testing

Requirement put into place by orders of the [CDC] — under the purported authority of its parent

agency, [DHS]."  (Compl. at 1-2.)  Plaintiff also seeks to "end the unlawful discrimination

against the disabled such as [himself] who can't safely wear a mask" by the four Airline

Defendants.  (Compl. at 2.)  He also sues STAT-MD as the "medical vendor that evaluates mask-

exemption demands for airlines including Southwest."  (Compl. at 2.)  Plaintiff brings forty-four

---

[1]      Federal Transit Administration, *Federal Mask Requirement for Transit*,
https://www.transit.dot.gov/TransitMaskUp (last visited July 5, 2022).

counts in his Complaint. These include twelve violations of the Administrative Procedures Act

("APA") related to the creation and implementation of the challenged orders; six constitutional

violations based on the restriction of the freedom to travel and the delegation of legislative

power; thirteen violations of the Rehabilitation Act and Air Carrier Access Act for various

COVID-related flight restrictions placed on air travelers; two counts of civil rights violations;

and, various state law claims. Plaintiff brings the tenth case filed by AAMM members in federal

courts.

### C.    Procedural History

On January 28, 2022, Plaintiff filed his Complaint. (ECF No. 1.) On February 4, 2022,

he filed a Motion for Preliminary Injunction (ECF No. 21) against the Federal Defendants, and,

on February 7, 2022, he filed a Motion for Preliminary Injunction (ECF No. 10) against United

Airlines. He filed a motion for expedited briefing on both, which the Court denied. (ECF Nos.

11, 22, 27.) In requesting preliminary injunctions, Plaintiff asked the Court to enter an order

enjoining Defendants from enforcing the FTMM. Defendants opposed the request for a

preliminary injunction. (ECF Nos. 49-50.)

On February 7, 2022, the Airline Defendants filed a Motion to Transfer Litigation to the

Middle District of Florida. (ECF No. 12.) Similarly, on February 17, 2022, the Federal

Defendants filed a Motion to Transfer to the Middle District of Florida. (ECF No. 44.) In both

transfer motions, Defendants argued that Plaintiff's lawsuit constitutes a substantially similar and

in many respects identical lawsuit to Wall's litigation pending before Judge Byron in the Middle

District of Florida. They argued that Plaintiff filed this action due to AAMM's dissatisfaction

with the litigation pending before Judge Byron in Florida. Plaintiff opposed the transfer motions.

(ECF No. 53.)

4

On April 6, 2022, the Airline Defendants filed their Motion to Dismiss. In support, they largely argue that the Air Carrier Access Act of 1986 ("ACAA"), 49 U.S.C. § 41705, and the Airline Deregulation Act ("Deregulation Act"), 49 U.S.C. § 41713(b), preempts Plaintiff's claims and provides the sole remedy for an airline passenger bringing disability discrimination and state law claims against the airlines. (Airline Defs.' Mem. of Law in Supp. of Mot. to Dismiss Compl. ("Airline Defs.' Mem.") (ECF No. 79) at 8, 17-22.) Similarly, the Airline Defendants argue that Plaintiff lacks a private right of action to allege violations of the ACAA. (Airline Defs.' Mem. at 10.) Further, the Airline Defendants aver that Plaintiff's claims under the Rehabilitation Act fail, because they are not subject to that Act. (Airline Defs.' Mem. at 13-15.) Additionally, the Airline Defendants argue that Plaintiff's claim for civil conspiracy under 42 U.S.C. § 1985(3) fails, because that section does not apply to disability discrimination complaints. (Airline Defs.' Mem. at 6-7.) Finally, the Airline Defendants argue that the Court lacks personal jurisdiction over them, because Plaintiff has not alleged that he purchased a ticket to fly from any of the Airline Defendants in Virginia. The Airline Defendants included a *Roseboro* notice with their Motion, advising Plaintiff that he needed to respond within twenty-one days or risk dismissal of his complaint. (ECF No. 78-2.)

On April 8, 2022, Defendant STAT-MD filed its Motion to Dismiss. It primarily argues that the Court lacks personal jurisdiction over Plaintiff's claims against it. (Br. in Supp. of Mot. to Dismiss. ("STAT-MD Mem.") (ECF No. 81) at 5.) Additionally, it argues that Plaintiff's claims for medical malpractice fail, because Plaintiff has not alleged the provision of health care or a physician-patient relationship. (STAT-MD Mem. at 6.) Additionally, that claim fails, because Plaintiff did not obtain a certificate of merit before filing suit, as required by Virginia's Medical Malpractice Act. (STAT-MD Mem. at 9.) Finally, STAT-MD argues that the civil

5

conspiracy claims fail to properly allege the existence of a conspiracy, warranting dismissal. (STAT-MD Mem. at 10.)   STAT-MD also included a *Roseboro* notice with its Motion, warning Plaintiff that a failure to respond to the motion within twenty-one days could result in the dismissal of his action.  (STAT-MD Mem. at 1.)

On April 18, 2022, Plaintiff filed a Motion to Stay Briefing on Defendants' Motions to Dismiss (ECF No. 82), asking the Court to stay his deadline to respond to the motions to dismiss until after resolution of the transfer motions and preliminary injunction motions.  On April 22, 2022, the Court denied his stay motion as moot, because it had resolved the transfer motions and preliminary injunction motion.  (ECF No. 88.)  Plaintiff, however, still failed to respond to the motions to dismiss.  Accordingly, on June 14, 2022, the Court ordered Plaintiff to respond to the Motions by June 17, or it would consider the Motions unopposed.  (ECF No. 93.)  Plaintiff did not respond to the Motions or otherwise ask for an extension by June 17.  Instead, on June 21, 2022, he filed a request for an extension of twenty-one (21) days to respond to the Motions, claiming that he had not responded because the Court had not ruled on his Motion to Stay.  (ECF No. 94.)  The Court denied his request for an extension, because it had ruled on the Motion to Stay, and had previously warned the parties that briefing on any motions would follow the standard briefing schedule provided for in the Local Rules.  (ECF No. 98.)  Plaintiff has still not filed an opposition to the Motions to Dismiss, and the Court considers the Defendants' bases for dismissal uncontroverted. *See Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004) (noting that when a plaintiff does not respond in opposition to a motion to dismiss, a district court is "entitled, as authorized [by the Local Rules], to rule on the [defendants'] motion and dismiss [the plaintiff's] suit on the uncontroverted bases asserted therein").

6

On April 22, 2022, the Court denied the preliminary injunction motion and the transfer motions. (ECF No. 88.) Additionally, the Court ordered the parties to brief the impact of the Vacatur Order on Plaintiff's claims, and whether it rendered any of them moot. Plaintiff responded that it did not moot any of his claims, and that he would continue to press forward with all of his claims. (ECF No. 89.)

## II.     STANDARD OF REVIEW

"Under Rule 12(b)(2), a defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016) (citation omitted). If a federal court reviews "only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint," then a plaintiff need only make a *prima facie* showing of personal jurisdiction to survive a motion to dismiss under Rule 12(b)(2). *Id.* at 268 (citations omitted). "[T]he court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction," *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989), though the Court need not consider only Plaintiff's proof of personal jurisdiction to decide which inferences it will make, *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993). "[W]here the defendant has provided evidence which denies facts essential for jurisdiction, the plaintiff must, under threat of dismissal, present sufficient evidence to create a factual dispute on each jurisdictional element which has been denied by the defendant and on which the defendant has presented evidence." *Indus. Carbon Corp. v. Equity Auto & Equip. Leasing Corp.*, 737 F. Supp. 925, 926 (W.D. Va. 1990) (citation omitted).

7

Similarly, a motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint or counterclaim; it does not serve as the means by which a court will resolve contests surrounding the facts, determine the merits of a claim or address potential defenses. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a motion to dismiss, the Court will accept a plaintiff's well-pleaded allegations as true and view the facts in a light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Under the Federal Rules of Civil Procedure, a complaint or counterclaim must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As the Supreme Court opined in *Twombly*, a complaint or counterclaim must state "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," though the law does not require "detailed factual allegations." *Id.* (citations omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570. Thus, a complaint or counterclaim must assert facts that are more than "merely consistent with" the other party's liability. *Id.* at 557. And the facts alleged must be sufficient to "state all the elements of [any] claim[s]." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) and *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

8

## III.   ANALYSIS

The Court will first address Defendant STAT-MD's Motion to Dismiss, finding that it lacks personal jurisdiction over STAT-MD for Plaintiff's claims.  Next, the Court will address the Airline Defendants' Motion to Dismiss, finding that none of Plaintiff's claims against them can survive the Airline Defendants' challenge.  Finally, although the Federal Defendants have not moved for dismissal, the Court will address why the claims against the Federal Defendants are moot.

### A.   The Court Lacks Personal Jurisdiction Over Plaintiff's Claims Against STAT-MD.

Defendant STAT-MD argues that the Court lacks personal jurisdiction over it for Plaintiff's claims.  (STAT-MD Mem. at 4-6.)  The Court agrees.

"Under Rule 12(b)(2), a defendant must affirmatively raise a personal jurisdictional challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every state following such a challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). Determinations of personal jurisdiction require a two-step inquiry.  First, a court must find that the long-arm statute of the forum state authorizes the exercise of jurisdiction over a nonresident defendant.  *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).  Then, the court must find that the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the Fourteenth Amendment.  *Id.*

Because Virginia's long-arm statute extends personal jurisdiction to the outer bounds of the Fourteenth Amendment Due Process Clause, "the two-prong test collapses into a single inquiry when Virginia is the forum state." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012).  The Due Process Clause of the Fourteenth Amendment requires that a defendant "have certain minimum contacts with [the

9

forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Within those parameters, a court may find that it has either general or specific personal jurisdiction over a defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984). General personal jurisdiction exists over defendants with "continuous and systematic contacts with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009). When the "continuous corporate operation within a state [is] thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities," a court can assert general jurisdiction over a corporate defendant. *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993) (quoting *Int'l Shoe Co.* 326 U.S. at 318)). Otherwise, a court may exercise specific personal jurisdiction only if a defendant's minimum contacts with the forum state form the basis for the claims in question. *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004).

The Court cannot exercise general jurisdiction over STAT-MD. Corporate defendants fall under the general jurisdiction of courts in their place of incorporation and principal place of business. *Ford Motor Company v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1024 (2021). Here, Plaintiff alleges that "STAT-MD is a non-profit organization backed by the resources of the university of Pittsburgh Medical Center. Its headquarters is at 200 Lothrop St. #F1301, Pittsburgh, PA 15213." (Compl. at 6.) Thus, STAT-MD is not subject to general jurisdiction in Virginia, requiring Plaintiff to establish the Court's specific jurisdiction to survive STAT-MD's personal jurisdiction challenge.

10

With respect to specific personal jurisdiction, the Fourth Circuit has established a three-part test, requiring trial courts to consider: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (internal quotations and citations omitted). Alternatively, because personal jurisdiction constitutes an individual right, a party may waive that right and submit to the personal jurisdiction of a court by appearance or by providing express or implied consent in "[a] variety of legal arrangements." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703-04 (1982).

Under the first prong of the test for specific jurisdiction, the Fourth Circuit has enumerated several nonexclusive factors to consider whether a defendant has purposefully availed itself of the forum state, including:

- whether the defendant maintains offices or agents in the forum state,
- whether the defendant owns property in the forum state,
- whether the defendant reached into the forum state to solicit or initiate business,
- whether the defendant deliberately engaged in significant or long-term business activities in the forum state,
- whether the parties contractually agreed that the law of the forum state would govern disputes,
- whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship,
- the nature, quality and extent of the parties' communications about the business being transacted, [and]
- whether the performance of contractual duties was to occur within the forum.

*Consulting Eng'rs Corp.*, 561 F.3d at 278 (cleaned up). "If, and only if . . . the plaintiff has satisfied this first prong of the test for specific jurisdiction need [the Court] move on to a consideration of prongs two and three." *Id.*

11

"The second prong of the test for specific jurisdiction . . . requires that the defendant's contacts with the forum state form the basis of the suit." *Id.* at 278-79 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Helicopteros Nacionales de Columbia, S.A.*, 466 U.S. at 414). Finally, the third prong "permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there." *Id.* at 279. Specifically, a court may evaluate "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *Id.* (citing *Burger King Corp.*, 471 U.S. at 477). With this standard in mind, the Court now turns to whether it can exercise personal jurisdiction over STAT-MD.

Plaintiff's scant allegations against STAT-MD do not satisfy the first prong of the test. Plaintiff alleges that STAT-MD reviews and denies mask-exemption demands for its airline clients "without ever speaking to the passenger or his/her doctor." (Compl. ¶¶ 671, 884.) Plaintiff makes no further allegations against STAT-MD. Plaintiff does not allege that any of this occurs in Virginia, nor that STAT-MD even knows whether the exemption request comes from a passenger in Virginia. Indeed, Plaintiff's allegations of wrongdoing stem from the claim that STAT-MD only interacted with the airlines (located outside of Virginia), rather than Plaintiff or his doctors, perhaps located in Virginia. Accordingly, Plaintiff has not alleged that STAT-MD purposefully availed itself of the privilege of conducting business in Virginia. The dearth of allegations connecting STAT-MD's activities to Virginia also render Plaintiff unable to satisfy the second or third prong of the test for personal jurisdiction. Thus, the Court lacks

12

personal jurisdiction over STAT-MD, and the Court will dismiss the claims that Plaintiff brings against it.[2]

## B.  The Court Will Dismiss the Claims Against the Airline Defendants.

The Court now turns to the Airline Defendants' Motion to Dismiss.  The Court will first address whether the civil conspiracy claims can survive before turning to Plaintiff's claims under the ACAA and the Rehabilitation Act.  Finally, the Court will turn to Plaintiff's claims under various state laws and international laws.  For the reasons stated below, all of the claims against the Airline Defendants fail.

### i.  Plaintiff's Civil Conspiracy Claims Fail.

In Counts 19 and 20, Plaintiff alleges that the Airline Defendants and STAT-MD conspired to deprive disabled Americans of their civil rights by banning "anyone medically unable to wear a face mask from using the nation's air-transportation system."  (Compl. ¶¶ 669-81.)  Plaintiff brings this claim under 42 U.S.C. § 1985(3).  The Airline Defendants move to dismiss these claims, first asserting that § 1985(3) does not apply to disability discrimination.  (Airline Defs.' Mem. at 6-7.)  Rather, they claim that § 1985 claims apply only to race-related discrimination conspiracies.  (Airline Defs. Mem. at 6-7.)

42 U.S.C. § 1985 states in relevant part:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . [and] in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to

---

[2]     Because the personal jurisdiction question presents a threshold inquiry that the Court must first resolve, the Court need not address the arguments raised by STAT-MD in support of its Rule 12(b)(6) motion.  However, the Court finds that these arguments have merit.  The Court notes that it would also dismiss Plaintiff's claims against STAT-MD for failure to state a claim for the reasons that it dismisses them against the Airline Defendants and for the reasons set forth in STAT-MD's Memorandum, especially in light of Plaintiff's failure to rebut the arguments.

be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3); *Harrison v. KVAT Food Mgmt., Inc.*, 766 F.2d 155, 156 (4th Cir. 1985).

The statute dates to 1871, when Congress passed the Ku Klux Klan Act to combat racial violence that the Klan and others waged against African Americans in the Reconstruction-Era South. *D'Amato v. Wisconsin Gas Co.*, 760 F.2d 1474, 1487 (7th Cir. 1985). Section 2 of the Ku Klux Klan Act became § 1985. *Id.* As a threshold matter, "[i]n order to recover under Section 1985(3), a plaintiff must establish that 'some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirators' action' exists." *D'Amato*, 760 F.2d at 1485 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). The Fourth Circuit has not yet addressed whether § 1985(3) applies to claims for disability discrimination.

The Supreme Court in *Griffin v. Breckenridge* explained that a plaintiff must demonstrate some class-based discriminatory animus motivating the conspirators' actions. 403 U.S. at 102. In *Griffin*, white citizens assaulted Black petitioners who travelled on a highway, and the petitioners alleged that the defendants conspired to do so with racial motivations. *Id.* at 88. The Court held that § 1985(3) extends to private conspiracies, but some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions must exist. *Id.* at 102. The Court concluded that petitioners did state a cause of action, because it fully alleged that the defendants conspired to commit the assault for racially charged reasons. *Id.* at 103.

In *United Brotherhood of Carpenters v. Scott*, the Supreme Court held that § 1985(3) could not reach conspiracies motivated by bias towards others on account of their economic views, status or activities, and thus it could not reach an alleged conspiracy against nonunion

14

workers.  463 U.S. 825, 837-38 (1983).  In that case, a construction company and two employees

sued union members for allegedly conspiring to deprive the plaintiffs of equal protection by

attacking a construction site, assaulting workers and destroying property.  *Id.* at 825.  The Court

reaffirmed that there must be some racial, or otherwise class-based, invidiously discriminatory

animus behind the conspirators' actions.  *Id.* at 835.  The Court further reasoned that the

predominant purpose of the statute was to combat animus against Blacks and their supporters in

the Reconstruction-era South.  *Id.* at 836.  The Court withheld judgment on whether § 1985(3)

reached any farther than that central concern.  *Id.* at 837.

     In *Harrison v. KVAT Food Mgmt., Inc.*, the Fourth Circuit expressed reluctance to extend

the protections of § 1985(3) beyond those classes expressly provided by the Supreme Court.  766

F.2d 155, 161 (4th Cir. 1985).  In *Harrison*, a discharged employee alleged that his former

employers had conspired to prevent him from running for office as a Republican, but the court

ultimately ruled that the protection of § 1985(3) did not extend to claims citing discriminatory

animus against a class formed around purely political views.  *Id.* at 161.  The court reasoned that,

based on the Supreme Court's decision in *Scott*, the 1871 Civil Rights Act and § 1985(3)

originally intended to protect African Americans and the struggle for civil rights in the post-Civil

War South.  *See Harrison*, 766 F.2d at 160, 161 ("We are concerned here with a statute enacted

to fulfill a particular purpose and designed to meet particular conditions.").  *Harrison* further

stressed the importance of the decision in *Scott* to withhold judgment on whether § 1985(3)

extended further than that central original purpose.  *Id.* at 162.

     In *Buschi v. Kirven*, the Fourth Circuit held, in relevant part, that employees who called

themselves "whistleblowers" could not qualify as a class entitled to protection under § 1985(3),

because they did not possess characteristics comparable to race, national origin or sex, nor were

15

they in "unprotected circumstances." 775 F.2d 1240, 1258 (4th Cir. 1985). The court reasoned

that, to meet the requirement of class-based discriminatory animus, the class must possess the

"'discrete, insular and immutable characteristics comparable to those characterizing classes such

as race, national origin, and sex.'" *Id.* at 1257 (quoting *Bellamy v. Mason's Stores, Inc.*, 368 F.

Supp. 1025, 1028 (E.D. Va. 1973)).

However, these decisions occurred before the passage of the Americans with Disabilities

Act ("ADA") in 1990. In enacting the ADA, Congress found that:

> Individuals with disabilities are a discrete and insular minority who have been
> faced with restrictions and limitations, subjected to a history of purposeful
> unequal treatment, and relegated to a position of political powerlessness in our
> society, based on characteristics that are beyond the control of such individuals
> and resulting from stereotypic assumptions not truly indicative of the individual
> ability of such individuals to participate in, and contribute to, society.

42 U.S.C. § 12101(a)(7). Thus, Congress elevated the status of disabled individuals in passing

the ADA. Thus, although the Fourth Circuit has not applied a § 1985(3) claim to disabled

individuals, and construes protected classes narrowly, it has not foreclosed that application since

the passage of the ADA. Other courts have determined that the passage of the ADA renders

individuals with a disability protected under § 1985(3). *See, e.g., Lake v. Arnold*, 112 F.3d 686,

687-88 (3d Cir. 1997) (pointing to the ADA as evidence that § 1985(3) protects those with a

mental disability). Ultimately, the Court need not definitively determine whether § 1985(3)

applies to individuals with disabilities. Assuming, arguendo, that § 1985(3) applies to

individuals with a disability, Plaintiff's claim still fails for the reasons stated below.

### ii.     Plaintiff Fails to State a Claim Under 1985(3).

The Airline Defendants further argue that Plaintiff fails to state a claim under § 1985(3).

The Court agrees.

16

To prevail on a claim under § 1985(3), a plaintiff must prove:

(1) a conspiracy of two or more persons;
(2) who are motivated by a specific class-based, invidiously discriminatory animus to
(3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all,
(4) and which results in injury to the plaintiff as
(5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995). Additionally, "the law is well settled that to prove a section 1985 'conspiracy,' a claimant must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." *Id.*

Claims under § 1985(3) rarely prevail. *Davis v. Hudgins*, 896 F. Supp. 561, 571 (E.D. Va. 1995) ("Because of the high threshold that a Plaintiff must meet to establish a prima facie case under section 1985, courts often grant motions of dismissal.") (*citing Simmons*, 47 F.3d at 1377 ("This Court, under that standard, has rarely, if ever, found that a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy, such that the claim can withstand a summary judgment motion.")). Plaintiffs must allege the purported conspiracy with more than mere conclusions. *Simmons*, 47 F.3d at 1377 ("Indeed, we have specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts.").

Here, Plaintiff has not alleged a conspiracy with the required concrete facts. Instead, he merely makes conclusory allegations regarding a conspiracy. Specifically, he alleges that the "Airline Defendants conspired to deprive disabled Americans, a protected class, of our civil rights by adopting policies in Summer 2020 that banned any person medically unable to wear a face mask from using the nation's air-transportation system." (Compl. ¶ 671.) He does not provide any details on how they conspired. Further, he alleges that he "expect[s] to prove through discovery that the Airline Defendants conspired — with each other, with other air

17

carriers, within their own companies, and with STAT-MD — to ban disabled flyers because of a discriminatory motive." (Compl. ¶ 680.) In doing so, he merely parrots the requirements of a prima facie claim under § 1985(3). He further alleges that the Airline Defendants "are motivated by a class-based, invidiously discriminatory animus resulting in an unfounded, ridiculous fear that healthy, uninfected disabled travelers who can't wear a face mask are somehow a grave danger." (Compl. ¶ 681.) Again, he offers no concrete facts to support these allegations. These allegations simply will not suffice to state a claim under § 1985(3). Accordingly, the Court will dismiss Counts 19 and 20.

### iii. Plaintiff Lacks a Private Right of Action Under the ACAA.

In Counts Twenty-Two through Thirty-Three, Plaintiff brings claims under the Air Carrier Access Act ("ACAA"), 49 U.S.C. § 41705, alleging that the Airline Defendants discriminated against him on the basis of his disability. (Compl. ¶¶ 699-768.) The Airline Defendants move to dismiss these claims on the basis that no private cause of action exists under the ACAA. (Airline Defs.' Mem. at 10-11.) The Court agrees.

The ACAA provides that an air carrier:

> [m]ay not discriminate against an otherwise qualified individual on the following grounds: (1) the individual has a physical or mental impairment that substantially limits one or more major life activities; (2) the individual has a record of such an impairment; (3) the individual is regarded as having such an impairment.

49 U.S.C. § 41705(a).

However, the ACAA does not expressly bestow the right to sue to enforce this right. "[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). When Congress does not create an explicit private right of action, courts may interpret the structure and language of the statute to determine if Congress nevertheless intended to imply a right of action. *Id.*

18

Although the Fourth Circuit has not directly addressed this question, other circuits have determined that the ACAA does not create a private right of action. *See Love v. Delta Air Lines*, 310 F.3d 1347, 1354 (11th Cir. 2022) ("Moreover, taken together, the text of the ACAA . . . and the surrounding statutory and regulatory structure create an elaborate and comprehensive enforcement scheme that belies any congressional intent to create a private remedy."); *Lopez v. JetBlue Airways*, 662 F.3d 593, 597 (2d Cir. 2011) (concluding that "the text and structure of the ACAA manifests no congressional intent to create a private right of action in a federal district court"); *Boswell v. Skywest Airlines, Inc.*, 61 F.3d 1263, 1270 (10th Cir. 2004) ("Congress' creation of a specific means of enforcing the statute indicates that it did not intend to allow an additional remedy — a private right of action — that it did not expressly mention at all."); *Segalman v. Southwest Airlines Co.*, 895 F.3d 1219, 1229 (9th Cir. 2018) ("In sum, the ACAA's legislative history is insufficient to overcome the strong suggestion that the statute's remedial scheme forecloses an implied private cause of action.").

The Court finds the reasoning of these circuit courts persuasive. The ACAA does not provide a private right of action for Plaintiff to sue the Airline Defendants in this Court. Accordingly, the Court will dismiss his claims under the ACAA.

### iv. Plaintiff's Claims Under the Rehabilitation Act Fail.

Plaintiff also brings claims under the Rehabilitation Act in Counts Twenty-One, Twenty-Two and Twenty-Four through Thirty-Three. The Airline Defendants move to dismiss these claims, arguing that the Rehabilitation Act does not apply to them. (Airline Defs.' Mem. at 13.)

The Rehabilitation Act prohibits discrimination against disabled individuals with respect to any program or activity that receives federal financial assistance. 29 U.S.C. § 794(a). Courts have defined the term "federal financial assistance" with respect to the Rehabilitation Act "to

19

mean the federal government's provision of a subsidy to an entity." *Shotz v. American Airlines, Inc.*, 420 F.3d 1332, 1335 (11th Cir. 2005). The Supreme Court has held that the Rehabilitation Act generally does not apply to commercial airlines, because airlines did not receive federal financial assistance within the meaning of the statute. *U.S. Dep't of Trans. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 599 (1986). However, courts must still determine whether a particular defendant is subject to the statute. "Generally, to determine the applicability of the Rehabilitation Act, a court must determine whether the government intended to give the defendant a subsidy, as opposed to compensation." *Tavares v. United Airlines*, 2015 WL 5026197, at \*7 (E.D. Va. Aug. 24, 2015).

Plaintiff alleges that the Rehabilitation Act applies to Defendant Airlines, because they "have accepted financial assistance during the COVID-19 pandemic, subjecting them to the Rehabilitation Act." (Compl. ¶ 689.) Defendants contend that they only received government funds pursuant to the Payroll Support Program established under the Coronavirus Aid, Relief and Economic Security Act ("CARES Act"). (Airline Defs.' Mem. at 13.) They could use this money "exclusively for the continuation of Wages, Salaries, and Benefits" to airline employees. (Airline Defs.' Mem. at 13.) Because the government restricted the way in which they could use the funds, rather than giving them discretion, the funds do not constitute federal financial assistance within the meaning of the Rehabilitation Act. (Airline Defs.' Mem. at 13.)

In *Schotz*, the Eleventh Circuit found that the Rehabilitation Act did not apply to airlines even though the government had provided them funds via the Stabilization Act in response to the September 11 attacks. 420 F.3d at 1337. The Eleventh Circuit determined that the Stabilization Act responded to the economic crises that the airline industry faced as a result of the terrorist attacks, thus compensating airlines for their losses rather than generally subsidizing them. *Id.* at

20

1336.  The court found that Congress could not have intended to undermine the ACAA and the

accompanying regulatory scheme when it responded to the economic crises.  *Id.* at 1337.

   The Court finds that this reasoning applies here.  Plaintiff has not demonstrated that

Congress intended the CARES Act to undermine the ACAA.  Nor has he rebutted the argument

that the CARES Act responded to the economic crises created by COVID-19, compensating the

airlines for their losses rather than providing a general subsidy.  Thus, on the record before it, the

Court does not find that the CARES Act provided an exception to the Supreme Court's general

rule that the Rehabilitation Act does not apply to the airlines.  Accordingly, the Court will

dismiss Plaintiff's claims under the Rehabilitation Act.

**v.  Plaintiff's Claim Under the Virginia Human Rights Act Fails.**

   In Count Thirty-Four, Plaintiff brings a claim under the Virginia Human Rights Act

("VHRA") against the Airline Defendants for the alleged disability discrimination.  (Compl.

¶¶ 775-88.)  The Airline Defendants move to dismiss this count, arguing that several federal laws

preempt it.  (Airline Defs.' Mem. at 16-18.)

   The Airline Deregulation Act provides that:

> [A] state, political subdivision of a State, or political authority of at least 2 states may not
> enact or enforce a law, regulation, or other provision having the force and effect of law
> related to a price, route, or service of an air carrier that may provide air transportation
> under this subpart.

49 U.S.C. § 41713(b)(1).

   In *Morales v. Trans World Airlines*, the Supreme Court broadly interpreted the scope of

the pre-emption provision.  504 U.S. 374 (1992).  The Court held that the "relat[ed] to" phrase

"express[es] a broad pre-emptive purpose," such that the statute preempts claims that have a

"connection with, or reference to" an airline's prices, routes or services.  *Id.* at 378, 383.  The

statute preempts even general statutes when particularly applied to airlines.  *Id.* at 386.  Thus, it

21

preempted the application of general state consumer protection statutes to airline fare advertising. *Id.*

Here, Plaintiff seeks to apply a general statute — the VHRA — to the airlines. Specifically, he seeks to enforce his claims under the ACAA by way of the VHRA. (Compl. ¶ 778.) Essentially, he alleges that the airlines discriminated against him by refusing to let him board the plane without a mask, despite his disability preventing him from safely wearing a mask. However, the Fourth Circuit has determined that the Deregulation Act preempts claims related to boarding practices. *See Smith v. Comair, Inc.*, 134 F.3d 254, 259 (4th Cir. 1998) ("Smith's tort claims are based in part upon Comair's refusal of permission to board. Undoubtedly, boarding procedures are a service rendered by an airline. Therefore, to the extent Smith's claims are based upon Comair's boarding practices, they clearly relate to an airline service and are preempted under the [Deregulation Act].") (cleaned up). Moreover, to the extent that Plaintiff could argue that his claim stems from the airlines' refusal to grant him an exemption to the Mask Mandate when selling him a ticket, this likewise would fall under the services provided by an airline. Accordingly, Plaintiff's claim under the VHRA — Count Thirty-Four — is preempted, and the Court will dismiss it.

### vi. Plaintiff's Breach of Contract Claim Fails.

In Count 35, Plaintiff brings a breach of contract claim against the Airline Defendants, alleging that the Airline Defendants breached the contract of carriage when forcing Plaintiff to wear a mask when the parties did not agree to it in the contract. (Compl. ¶¶ 789-804.) Additionally, Plaintiff claims that United's contract terms requiring face coverings lack legal enforceability. (Compl. ¶ 796.) Defendant argues that the Court must dismiss this Count,

22

arguing that the Deregulation Act preempts the breach of contract claim. (Airline Defs.' Mem. at 18-19.)

The Supreme Court has recognized a narrow exception to the Deregulation Act's preemption for some breach of contract claims. In *American Airlines, Inc. v. Wolens*, the Court carved out an exception for certain contract claims against airlines for actions that seek to enforce the parties' "own, self-imposed undertakings," such as agreements with respect to a frequent flyer program. 513 U.S. 219, 228 (1995). However, the Court limited this exception to breach of contract actions confined to the terms of the contract, "with no enlargement or enhancement based on state laws or policies external to the agreement." *Id.* at 233. "Thus, when a contract claim cannot be adjudicated without resort to outside sources of law, the claim is still preempted by the [Deregulation Act]." *Smith*, 134 F.3d at 257. The Fourth Circuit has held that preemption applies when a contract claim "can only be adjudicated by reference to law and policies external to the parties' bargain," or "directly implicates the airline's discretion and/or duty under federal law." *Id.* at 258.

Here, Plaintiff's breach of contract claim arises out of the Airline Defendants requiring him to wear a mask on the flight or obtain a medical exemption. Put differently, Plaintiff sues the Airlines for enforcing the Mask Mandate — federal law. Thus, Plaintiff's breach of contract claim "directly implicates the airlines' discretion and/or duty under federal law," *id.*, and, therefore, the Deregulation Act preempts it. The Court will dismiss Count Thirty-Five.

### vii.   Plaintiff's Other State Law Claims Fail.

In Counts Thirty-Six through Forty, Plaintiff alleges various other state law claims, including reckless endangerment, practicing medicine without a license, invasion of privacy, deceptive and misleading trade practices and fraudulent misrepresentation. (Compl. ¶¶ 805-51.)

The Airline Defendants move to dismiss these claims as preempted by the Deregulation Act or as failing to state a claim. (Airline Defs.' Mem. at 19-22.)[3]

As discussed above, the Deregulation Act preempts state laws "related to a price, route, or service of an air carrier." 49 U.S.C. § 41713. The Fourth Circuit has recognized that "[s]uits stemming from outrageous conduct on the part of an airline toward a passenger will not be preempted under the [Deregulation Act] if the conduct too tenuously relates or is unnecessary to an airline's services." *Smith*, 134 F.3d at 259. The court gave the example that an airline holding a passenger without a safety or security justification would not give rise to preemption of that passenger's false imprisonment claim.

Here, all of Plaintiff's allegations arise from his claims that the Airline Defendants improperly required him to adhere to the Mask Mandate or submit proof of a required medical exemption. However, all of these relate to the Airlines' services. Additionally, the allegations in no way rise to the level of "outrageous conduct" that would allow them to escape preemption. Instead, the allegations show the Airline Defendants complying with law as set forth in the Mask Mandate. Accordingly, the Court will dismiss Counts Thirty-Six through Forty as preempted.

### viii. Plaintiff's Claim for Infringement of Right to Travel Fails.

In Count Forty-One, Plaintiff alleges that the Airline Defendants infringed on his constitutional right to travel. (Compl. ¶ 852-68.) The Airline Defendants move to dismiss this count, arguing that Plaintiff does not enjoy a constitutional right to travel by airplane. (Airline Defs.' Mem. at 22.) The Court agrees.

---

[3]      Defendants correctly point out that no civil cause of action exists for reckless endangerment (Count Thirty-Six). Even if such a cause of action did exist, it would be preempted for the reasons stated herein. Likewise, even if Plaintiff had alleged facts in Count Thirty-Seven to show that the Airline Defendants practiced medicine without a license (he has not), then such a claim would be preempted.

Individuals enjoy a constitutional right to travel. *Saenz v. Roe*, 526 U.S. 489, 498 (1999) ("[T]he constitutional right to travel from one State to another is firmly embedded in our jurisprudence."). However, courts have recognized that individuals do not enjoy a constitutional right to travel by the method of their choice. *See, e.g.*, *Town of Southold v. Town of East Hampton*, 477 F.3d 38, 54 (2d Cir. 2007) ("[T]ravelers do not have a constitutional right to the most convenient form of travel[, and] minor restrictions on travel simply do not amount to the denial of a fundamental right."); *Gilmore v. Gonzalez*, 435 F.3d 1125, 1137 (9th Cir. 2006) (noting that the plaintiff "does not possess the fundamental right to travel by airplane even though it is the most convenient mode of travel for him"); *Cramer v. Skinner*, 931 F.2d 1020, 1031 (5th Cir. 1991) ("Minor restrictions on travel simply do not amount to the denial of a fundamental right that can be upheld only if the Government has a compelling justification.").

The Airline Defendants have not denied Plaintiff his fundamental right to travel. He may still travel by means other than aircraft. Further, he may travel by aircraft without a mask by obtaining an exemption. Or, he may travel by airplane with a mask. Thus, the Mask Mandate amounts to nothing more than a minor restriction on his travel, such that he cannot bring a claim for the denial of a constitutional right. Accordingly, the Court will dismiss Count Forty-One.

### ix. Plaintiff's International Covenants Claims Fail.

In Counts Forty-Two and Forty-Three, Plaintiff brings claims for violations of international law. (Compl. ¶¶ 869-82.) Specifically, Plaintiffs claims that the Airline Defendants have violated the International Covenant on Civil & Political Rights ("ICCPR") in Count Forty-Two and the Convention on Civil Aviation in Count Forty-Three. The Airline Defendants move to dismiss these claims, arguing that Plaintiff lacks a cause of action to enforce these covenants. (Airline Defs.' Mem. at 23.) The Court agrees.

25

Generally, treaties do not carry the force of law that affords an individual a private right of action to enforce its terms. *Medellin v. Texas*, 552 U.S. 491, 505 (2008) ("In sum, while treaties may comprise international commitments, they are not domestic law unless Congress has either enacted implementing statutes or the treaty itself conveys an intention that it be 'self-executing' and is ratified on these terms."). More specifically, the Supreme Court has recognized that the ICCPR binds the United States as a matter of common law, but "the United States ratified the [ICCPR] on the express understanding that it was not self-executing and so did not itself create obligations enforceable in the federal courts." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 735 (2004).

Plaintiff has not identified any reason why these two treaties confer a private cause of action that would allow him to prosecute these claims. Accordingly, the Court will dismiss Counts Forty-Two and Forty-Three. In sum, the Court will grant the Airline Defendants' Motion to Dismiss and will dismiss counts Nineteen through Forty-Three. [4]

### C. Plaintiff's Claims Against the Federal Defendants Are Moot.

Plaintiff brings Counts One through Eighteen against the CDC and HHS, asking the Court to set aside the Mask Mandate and Testing Order and enjoin those agencies from enforcing the mandates. However, the Court lacks subject matter jurisdiction over those claims, because the orders do not remain in effect. Thus, Plaintiff cannot claim a continuing injury that the Court can redress, rendering his claims moot.

---

[4] The Airline Defendants argue that the Court lacks personal jurisdiction over Plaintiff's claims against them, because he has not alleged that he bought a ticket to use their services. (Airline Defs.' Mem. at 24.) However, Plaintiff has alleged that he attempted to fly or was denied the ability to fly on each of the airlines. (Compl. ¶¶ 8, 10, 18, 23-24.) At this stage, construing these allegations in Plaintiff's favor, the Court finds these allegations sufficient to confer personal jurisdiction.

The Court has an independent duty to satisfy itself of its own subject matter jurisdiction even where the defendant does not directly challenge it. *Andrus v. Charlestone Stone Products Co., Inc.*, 436 U.S. 604, 608 n.6 (1978); *see United States v. Urutyan*, 564 F.3d 679, 684 (4th Cir. 2009) ("Nevertheless, we are obliged to satisfy ourselves of subject-matter jurisdiction, even where the parties concede it."). Indeed, "questions of subject matter jurisdiction must be decided first, because they concern the court's very power to hear the case." *Owens-Illinois v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999). Following the vacatur of the Mask Order, the Court ordered Plaintiff to brief the effect of the Vacatur Order on his claims, including which ones he intended to continue to litigate, and which ones had become moot. (ECF No. 87 at 14-15.) Plaintiff responded that he intended to press forward with all of his claims and that the Vacatur Order had not mooted any of them. (ECF No. 89.) The Court disagrees.

Article III of the Constitution limits the Court's jurisdiction to cases and controversies. U.S. Const. art. III, § 2, cl. 1; *Eden, LLC v. Justice*, 36 F.4th 166, 169 (4th Cir. 2022). The mootness doctrine finds its root in the case-or-controversy limitation on federal judicial power, preventing a federal court from issuing advisory opinions on legal questions without a live controversy before it. *Eden*, 36 F.4th at 169. Thus, a "pending lawsuit is rendered moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 162 (4th Cir. 2021). Courts "may only decide cases that matter in the real world" at the time that they decide them. *Eden*, 36 F.4th at 170. Decisions have no "practical effect in the real world" when a plaintiff has already received the relief sought in the lawsuit. *Id.* To that end, if "one of the elements essential to standing, like injury-in-fact, no longer obtains," then "a case is moot." *American Federation of Government Employees v. Office of Special Counsel*, 1 F.4th 180, 187 (4th Cir.

27

2021). In the context of challenging a government order no longer in effect, deciding the legality of the order would amount to issuing "an opinion advising what the law would be upon a hypothetical state of facts, in which the challenged orders had never been rescinded — which [courts] of course lack jurisdiction to provide." *Id*. (cleaned up).

Here, Plaintiff asks the Court to set aside two orders that the government no longer enforces and that no longer have any legal effect. TSA's Security Directives and Emergency Amendments, the enforcement mechanism of the Mask Order, expired on May 3, 2022. It has not been renewed. Additionally, on April 18, 2022, a federal district court vacated the Mask Order. *Health Freedom Defense Fund*, 2022 WL 1134138. Accordingly, effective April 18, 2022, the CDC considers the Mask Mandate "no longer in effect" and, as a result, "CDC will not enforce the Order."[5]

Likewise, effective June 12, 2022, the CDC rescinded the Testing Order. 87 Fed. Reg. 36129 (June 15, 2022). In rescinding the Testing Order, the CDC cited the "widespread uptake of effective COVID-19 vaccines," immunity bestowed by infection and vaccines and the availability of effective therapeutics. 87 Fed. Reg. at 36130. The CDC determined that these tools available to travelers could replace the testing requirement. *Id*. Indeed, the CDC noted that the public did not have these tools available to it in January 2021 when it concluded that the Testing Order constituted a reasonable and necessary measure to help mitigate the spread of COVID-19. *Id*. at 362130-31.

Therefore, because neither order remains in effect, Plaintiff's claims to set aside the Orders do not present a live controversy. Plaintiff claims that the Orders injure him by forcing him to wear a mask while flying or risk a ban from using public airspace. (ECF No. 21 at 26.)

---

[5]        https://www.cdc.gov/coronavirus/2019-ncov/travelers/travel-during-covid19.html

Without continued enforcement of the complained-of Orders, neither of these harms can materialize.  Thus, Plaintiff can no longer claim an injury-in-fact.  Likewise, his claim to standing lacks redressability, as the Court cannot redress Plaintiff's claimed injury.  Neither Order remains subject to enforcement, so the Court enjoining their enforcement and setting them aside would provide no additional relief to Plaintiff.  As such, his claims against the Federal Defendants are moot.  Absent an exception to the mootness doctrine, discussed below, the Court must dismiss his claims.

In arguing that the government will reinstate the Orders (ECF No. 89), Plaintiff appears to invoke the "voluntary cessation" exception to the mootness doctrine.  "Pursuant to the voluntary cessation exception, a civil action does not become moot when a defendant voluntarily ceases its allegedly improper behavior, if there is a reasonable chance that the behavior will resume."  *Lighthouse Fellowship Church*, 20 F.4th at 162.  The exception seeks to eliminate the litigation tactic of "evad[ing] judicial review by temporarily altering questionable behavior."  *Eden, LLC*, 36 F.4th at 170.  As in the case here, "in circumstances where a challenged governmental regulation or legislation has expired, the inapplicability of the voluntary cessation exception has been established in several significant situations where mootness has been found."  *Lighthouse Fellowship Church*, 20 F.4th at 163 (first citing *Trump v. Hawaii*, 138 S. Ct. 377 (2017) (Mem.); then citing *Kremens v. Bartley*, 431 U.S. 119 (1977); and then citing *Burke v. Barnes*, 479 U.S. 361 (1987).).

Here, the Court finds that the voluntary cessation exception does not apply.  First, the Court questions whether the exception could even apply to the Mask Order, as Defendants did not *voluntarily* rescind the order.  Rather, a federal district court vacated the order and then the government allowed it to expire.  However, even if the exception could apply in this situation,

29

the Court does not find it reasonable to expect that enforcement will recur. The return of enforcement of the Mask Order would require the Eleventh Circuit to vacate the district court's opinion in *Health Freedom Defense Fund*. Then, the TSA would need to renew the enforcement order, which expired on May 3, 2022. Especially in light of the changed circumstances that the CDC cited when lifting the Testing Order, the Court finds this too speculative to invoke the voluntary cessation doctrine.

Additionally, the cessation of enforcement can in no way be attributed to an effort by the government to moot this litigation. The lack of an evasive litigation tactic resembles the defendant's actions in *American Federation of Government Employees v. Office of Special Counsel*, 1 F.4th 180 (4th Cir. 2021), where the plaintiffs challenged an advisory opinion of the Office of Special Counsel ("OSC") that related to the 2020 election. After the district court ruled, but before the Fourth Circuit ruled, the OSC withdrew its opinion, because the 2020 election was over. *Id.* at 284. The Fourth Circuit rejected the application of the "voluntary cessation" doctrine, because "there [was] no whiff of any of the opportunism, on the part of the defendant, that typically supports invocations of mootness exceptions where voluntary cessation of the challenged conduct is at issue." *Id.* at 188. The OSC had not withdrawn its opinion "with the aim of avoiding judgment in court" and, therefore, the court dismissed the appeal as moot. *Id.* at 188. Likewise, here, Defendants did not rescind or stop enforcing the Orders with the aim of avoiding judgment in this Court, and the Court sees no traces of opportunism in their decisions.

Finding Plaintiff's claims moot comports with how other courts have treated challenges to expired COVID-19 restrictions. For example, in *Lighthouse Fellowship Church*, the Fourth Circuit held that the plaintiff's challenges to Virginia's COVID-19 related restrictions were

30

moot, because the restrictions had ended between the time the district court had ruled and when the Fourth Circuit issued its ruling. 20 F.4th at 161, 166 (4th Cir. 2021.) In finding it unreasonable that Governor Northam would reinstate the expired restrictions, the court relied in large part that "the current circumstances [were] materially different from those present at the outset of the pandemic." *Id.* at 164. The court cited greater knowledge of COVID-19 and how "vaccines and other measures to combat the virus have led to a significant change in the relevant circumstances." *Id.* Thus, the court found it "entirely speculative to assert that Governor Northam" would reinstate the restrictions. *Id.* Thus, the "voluntary cessation" exception to mootness did not apply, and the court dismissed the claims as moot.

Likewise, in *Eden, LLC*, the Fourth Circuit held that plaintiff's challenges to West Virginia's terminated COVID-19 safety measures became moot on appeal. 36 F.4th at 172. The court cited cases from numerous other circuits also finding challenges to terminated COVID-19 related restrictions moot. *Id.* at 171. Yet again, the court cited the change in circumstances, including "vaccines and other measures to combat the virus," to find the "likelihood of recurrence still more remote." *Id.* Accordingly, the court dismissed the plaintiff's claims as moot. *Id.*

Here, the Court finds the reasoning in these recent Fourth Circuit cases compelling. Circumstances have changed, as cited by the CDC in rescinding the Testing Order, including the availability of vaccines and other safety measures employed to combat the virus. Thus, the Court finds it unreasonable to expect that enforcement of these terminated Orders will recur. Therefore, the Court will dismiss Plaintiff's claims against the Federal Defendants as moot.

## IV.    CONCLUSION

For the reasons stated above, the Court will DISMISS WITHOUT PREJUDICE Counts One through Eighteen for lack of subject matter jurisdiction, because the Court finds these claims moot.  Additionally, the Court will GRANT the Airline Defendants' Motion to Dismiss (ECF No. 78), and DISMISS WITH PREJUDICE Plaintiff's claims against the Airlines in Counts Nineteen through Forty-Three for failure to state a claim upon which relief can be granted.  Finally, the Court will also GRANT Defendant STAT-MD's Motion to Dismiss (ECF No. 80) and DISMISS WITHOUT PREJUDICE Counts Nineteen and Forty-Four for lack of personal jurisdiction.

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically, notify all counsel of record and send a copy to Plaintiff at his address of record.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Dated:  July 11, 2022

32