1
2
3
4
5

**URI MARCUS**
P.O. Box 126
Ojai, CA  93024
Telephone:  909-833-0065
email: uri@ntcf.org

*Pro Se*

6
7

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

8

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

URI MARCUS, YVONNE MARCUS,
AVROHOM GORDON, DEVORAH
GORDON & CINDY RUSSO,

                    Plaintiffs,

v.

CENTERS FOR DISEASE
CONTROL & PREVENTION,
DEPARTMENT OF HEALTH &
HUMAN SERVICES,
TRANSPORTATION SECURITY
ADMINISTRATION, JULIE
CARRIGAN, ALASKA AIRLINES,
ALLEGIANT AIR, AMERICAN
AIRLINES, DELTA AIR LINES,
FRONTIER AIRLINES, HAWAIIAN
AIRLINES, SOUTHWEST
AIRLINES, UNITED AIRLINES,
YET-TO-BE-NAMED EMPLOYEES
OF THE 8 AIRLINES, STAT-MD, &
MEDAIRE,

                    Defendants,

Case No.: 2:22-cv-02383-SSS-ASx

**PLAINTIFFS' MEMORANDUM
IN OPPOSITION TO
AIRLINE DEFENDANTS'
MOTION TO DISMISS
PURSUANT TO
LOCAL RULE 7-9**

Hearing Date: **September 28, 2022**

Time: **9:00 a.m.**

Via Zoom Video Conference

**The Hon. Sunshine Suzanne Sykes**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iv

    CASES ......................................................................................... iv

    STATUTES ............................................................................... viii

    OTHER AUTHORITIES ........................................................... xi

PRELIMINARY STATEMENT AND INTRODUCTION ................................. 1

ARGUMENT .................................................................................................. 4

    I.    THE COMPLAINT SHOULD BE DISMISSED AS AN
          IMPROPER "SHOTGUN" PLEADING ............................................ 4

    II.   COUNTS 20 AND 21 FOR CIVIL CONSPIRACY SHOULD BE
          DISMISSED FOR FAILURE TO STATE A CLAIM UNDER 42
          U.S.C. §§ 1985(3) AND 1986 ............................................................ 6

    III.  PLAINTIFFS LACK A PRIVATE RIGHT OF ACTION TO
          ALLEGE VIOLATIONS OF THE AIR CARRIER ACCESS
          ACT ("ACAA") ................................................................................ 13

    IV.  THE AIRLINE DEFENDANTS ARE NOT SUBJECT
          TO PLAINTIFFS' CLAIMS UNDER THE
          REHABILITATION ACT ................................................................. 21

    V.   THE CLAIMS FOR VIOLATION OF THE CALIFORNIA
          UNRUH CIVIL RIGHTS ACT SHOULD BE DISMISSED ........... 23

          A. The ACAA Preempts Plaintiffs' Unruh Act Claims ..................... 24

          B. The Federal Aviation Act Preempts Plaintiffs' Unruh Act ........... 25

C. Plaintiffs Not Residing in California Lack Standing under the
Unruh Act ........................................................................................ 26

VI.   PLAINTIFFS' CLAIMS FOR BREACH OF CONTRACT
SHOULD BE DISMISSED ................................................................. 27

VII.  PLAINTIFFS' ALLEGATION OF RECKLESS
ENDANGERMENT FAILS TO STATE A CLAIM
FOR RELIEF ...................................................................................... 28

VIII. THERE IS NO VIABLE CLAIM FOR PRACTICING
MEDICINE WITHOUT A LICENSE ................................................ 29

IX.   PLAINTIFFS FAILS TO STATE A CLAIM FOR
INVASION OF PRIVACY .................................................................. 31

X.    THE CLAIMS FOR DECEPTIVE AND MISLEADING TRADE
PRACTICES AND FRAUDULENT MISREPRESENTATION
ARE PREEMPTED BY THE d DEREGULATION
ACT OR BARRED BY THE LACK OF A PRIVATE RIGHT
OF ACTION TO ENFORCE 49 U.S.C. § 41712 ............................... 32

XI.   THERE IS NO CONSTITUTIONAL RIGHT TO TRAVEL
DOMESTICALLY BY AIRCRAFT ................................................... 33

CONCLUSION ................................................................................................ 36

# TABLE OF AUTHORITIES

*Cases*                                                                      ***Page***

*Abadi v. DOT*

    2nd Circuit 21-2807 ........................................................................ 16

*Abadi v. DOT*

    DC Circuit 22-1012 ........................................................................ 16

*Accord, e.g., Richardson v. Miller*

    446 F.2d 1247 (3d Cir. 1971) ........................................................ 10

*Air Force Officer v. Austin*

    No. 5:22-cv-9, 2022 WL 468799 (M.D. Ga. Feb. 15, 2022) ........ 35

*Alexander v. Sandoval*

    532 U.S. 275, 286 (2001) ............................................................... 13

*Asbury Park Bd. of Educ. v. Hope Acad.*

    Charter Sch., 278 F. Supp. 2d 417, 420 n.2 (D.N.J. 2003) ........... 17

*Ayers v. Jackson Tp.*

    525 A. 2d 287 - NJ: Supreme Court 1987 ..................................... 28

*Azar v. Conley*

    456 F.2d 1382 (6th Cir. 1972) ................................................ 10, 13

*Bauer v. Acheson*

    106 F. Supp. 445, 451 (D.D.C 1952) ............................................ 35

*Bell Atlantic Corp. v.Twombly*

    550 U.S. 544, 555 (2007) ................................................................. 5

*Bivens v. Six Unknown Narcotics Agents*

    403 U.S. 388, 392 (1971) ............................................................... 18

*Bray v. Alexandria Women's Health Clinic*

    506 U.S. 263, 113 S.Ct. 753, 759, 122 L.Ed.2d 34 (1993) ........... 34

*Bristol-Myers*

    supra, 137 S.Ct. at pp. 1779-1780 ................................................ 26

*Buskirk v. Buskirk*
    (2020) 53 Cal.App.5th 523, 531)) ................................................ 26

*California v. Sierra Club*
    451 U.S. 287, 289–90 (1981) ....................................................... 18

*Cameron v. Brock*
    473 F.2d 608 (6th Cir. 1973) ................................................. 10, 13

*Farber v. City of Paterson*
    440 F. 3d 131 - Court of Appeals, 3rd Circuit 2006 .................................. 12

*Fidelity Fed. Sav. & Loan Assn. v. De La Cuesta*
    458 U.S. at 154, 102 S.Ct. 3014 ................................................... 24

*Gerritsen v. de la Madrid Hurtado*
    819 F.2d 1511, 1519 (9th Cir. 1985) ............................................... 9

*Gilstrap v. United Air Lines, Inc.*
    709 F. 3d 995 - Court of Appeals, 9th Circuit 2013 ........................ 21, 24, 25

*GJR Investments, Inc. v. County of Escambia*
    Fla., 132 F. 3d 1359 - Court of Appeals, 11th Circuit 1998 .......................... 5

*Glasson v. City of Louisville*
    518 F.2d 899, 912 (6th Cir.) ...................................................... 9

*Griffin v. Breckenridge*
    supra at 102, 91 S.Ct. at 1798 .................................................... 10

*Harrison v. Brooks*
    446 F.2d 404 (1st Cir. 1971) ..................................................... 13

*Health Freedom Defense Fund v. Biden*
    No. 8:21-cv-1693, 2022 WL 1134138 (M.D. Fla. Apr. 18, 2022),
    appeal pending No. 22-11287 (11th Cir.) ........................................ 2, 3

*J.I. Case Co. v. Borak*
    377 U.S. 426 (1964) .............................................................. 19

*Keating v. Carey*

706 F.2d 377, 386-87 (2d Cir.1983) ................................................. 9

*Lake v. Arnold*

112 F. 3d 682 - Court of Appeals, 3rd Circuit 1997 ............................... 11, 12

*Landegger v. Cohen*

5 F. Supp. 3d 1278, 1284 (D. Colo. 2013) ..................................... 14

*Latif v. Holder*

28 F. Supp. 3d 1134, 1148 (D. Or. 2014) ..................................... 36

*LeBlanc-Sternberg v. Fletcher*

67 F.3d 412, 427 (2d Cir.1995) ..................................... 8

*Life Ins. Co. of North America v. Reichardt*

591 F. 2d 499 - Court of Appeals, 9th Circuit 1979 ................................... 12

*Maehr v. Dep't of State*

5 F.4th 1100, 1108-09 (10th Cir. 2021),

cert. denied 142 S.Ct. 1123 (2022) ................................... 35

*Means v. Wilson*

522 F.2d 833 (8th Cir. 1975) ..................................... 13

*Michael Selecki v. CDC et al*

case No. 22-10155-PBS ..................................... 14, 15

*Mohamed v. Holder*

266 F. Supp. 3d 868, 878 (E.D. Va. 2017) ..................................... 35

*Moreno v. Hughes*

157 F. Supp. 3d 687, 689 (E.D. Mich. 2016) ("cert. denied , 423 U.S. 930,

96 S.Ct. 280, 46 L.Ed.2d 258 (1975)") ........................... 9

*Mullen v. Bureau of Prisons*

843 F. Supp. 2d 112, 116 (D.D.C. 2012) ..................................... 18

*Nat'l Fed'n of the Blind v. United Airlines*

813 F.3d 718, 16 Cal. Daily Op. Serv. 589,

2016 Daily Journal D.A.R. 562 (9th Cir. 2016) ........................... 24

*Rodriguez v. JUST BRANDS USA, INC.*

  Dist. Court, CD California 2021 ................................................................. 5

*Schultz v. Sundberg*

  759 F.2d 714, 718 (9th Cir.1985) ............................................................ 9

*Shachtman v. Dulles*

  225 F.2d 938, 944 (D.C. Cir. 1955) ........................................................ 35

*Shotz v. Am. Airlines, Inc.*

  420 F.3d 1332 (11th Cir. 2005) .............................................................. 21

*Snowden v. Hughes*

  321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944) ..................................... 10

*The Basketry, Inc. v. The Superior Court*

  No. A162746, 6 (Cal. Ct. App. Nov. 4, 2021) ...................................... 26

*Thomas v. Roach*

  165 F. 3d 137 - Court of Appeals, 2nd Circuit 1999 ............................... 8

*Twining v. New Jersey*

  211 U.S. 78, 97 (1908) ............................................................................. 7

*United States v. Guest*

  383 U.S. 745 (1966) ............................................................................... 34

*United States v. Price*

  (383 U.S. 787 (1966)) ............................................................................ 34

*United States v. Rubin*

  844 F.2d 979, 984 (2d Cir.1988) .............................................................. 8

*Voigt v. Savell*

  70 F.3d 1552, 1564 (9th Cir. 1995) ......................................................... 9

*Weiland v. Palm Beach County Sheriff's Office*

  792 F. 3d 1313 - Court of Appeals, 11th Circuit 2015 ....................... 4, 5

*Ziglar v. Abbasi*

  137 S. Ct. 1843 (2017) ........................................................................... 19

*Statutes*                                                                                          *Page*

14 C.F.R. § 382.19........................................................................................... 17

14 C.F.R. § 382.23(d)....................................................................................... 30

18 U.S.C. § 241 ............................................................................................... 28

29 U.S.C. § 701 [aka the REHABILITATION ACT]........................... 21, 22

42 U.S.C. § 1985(3).......................................................... 6, 7, 9, 10, 11, 12, 13

42 U.S.C. §§ 1985(3) AND 1986 ...................................................................... 6

49 U.S.C. § 40103 ........................................................................................... 34

49 U.S.C. § 40120(c) ....................................................................................... 25

49 U.S.C. § 41112 ........................................................................................... 25

49 U.S.C. § 41705 [aka "the ACAA" enacted by Congress

in 1986]........................... 3, 13, 14, 15, 16, 18, 20, 21, 22, 23, 24, 25, 26, 33

49 U.S.C. § 41712 ........................................................................................... 32

49 U.S.C. § 46110 ..................................................................................... 15, 16

The Federal Aviation Act of 1958....................................................... 25, 26

*Other Authorities*                                                              *Page*

2018 Navajo Civil Rights of Individuals with Disabilities Act

(Civil Rights Act) (Legislation No. 0469-17) ............................................. 19

Administrative Procedure Act ........................................................................ 2

Americans With Disabilities Act ................................................................. 11

Cal. Code Civ. Proc. § 418.10 ..................................................................... 26

Calif. Const. Art. I § 1 ................................................................................ 32

Indian Citizenship Act [43 Stat. 253] ......................................................... 19

U.S. Const. Art. IV, § 2 .............................................................................. 34

UNRUH Civil Rights Act (Cal. Civ. Code § 51) ........................... 23, 26, 27

**PRELIMINARY STATEMENT AND INTRODUCTION**

From November 2020 to April 2022, Airline Defendants illegally discriminated against Plaintiffs who held physician-issued medical exemptions owing to their disabilities by coming up with a scheme to deny virtually all requests for mask exemptions or by including numerous illegal and onerous hoops that Plaintiffs had to jump through to obtain a waiver. This effectively banned Plaintiffs from using all forms of public transportation. In the few cases where mask exemptions were granted, Airline Defendants demanded Plaintiffs sit at the back of the aircraft and undergo PCR testing, even though no other passenger was required to do so.

In their Motion to Dismiss, the airlines do not once deny violating laws or engaging in a nationwide conspiracy with federal agencies and other consultants to deprive disabled travelers of civil rights. Instead, they endeavor to escape liability by citing legal technicalities which they believe allows the industry to fly above the law. The Court should therefore force Airline Defendants to file an Answer, and allow this case to proceed into discovery so the true depth of the conspiracy can be ascertained.

Airline Defendants never had a duty to enforce an unlawful federal mandate, "as if" it had been legal. But because they did, they should now be held liable in court. From the beginning, the CDC plainly stated,

> "…certain people with disabilities who, because of their disability, cannot wear a mask, or cannot safely wear a mask, are exempted from CDC's mask-wearing requirement. […] The following persons with disabilities might be exempt from CDC's requirement to wear a mask based on factors specific to the person: A person with a disability who cannot wear a mask because it would cause the person to be unable to breathe or have respiratory distress if a mask were worn over the mouth and nose. […] A person with a severe sensory disability; […] a person who would pose an imminent threat of harm to themselves or others if required to wear a mask."

All Plaintiffs in this case were at all times exempt under these guidelines issued

by the CDC, but were nevertheless discriminated against and banned from flying.

Ten days after we filed our original opening brief on April 8, 2022, a U.S. district court vacated the Federal Transportation Mask Mandate.

> "[T]he [Mask] Mandate exceeded the CDC's statutory authority, improperly invoked the good cause exception to notice and comment rulemaking, and failed to adequately explain its decisions. Because 'our system does not permit agencies to act unlawfully even in pursuit of desirable ends,' the Court declares unlawful and vacates the Mask Mandate." *Health Freedom Defense Fund v. Biden*, No. 8:21-cv-1693, 2022 WL 1134138 (M.D. Fla. Apr. 18, 2022), appeal pending No. 22-11287 (11th Cir.).

That court declared the Mask Mandate was issued without notice and comment in violation of the Administrative Procedure Act, and that is was arbitrary and capricious.

Later on April 18, the White House announced CDC and HHS would immediately cease enforcing the *ultra vires* Mandate. The Biden Administration however, with their belief that masks are effective in reducing the spread of respiratory viruses and that Congress gave it authority to ban Americans from using any mode of public transit across an entire nation without faces covered, will surely reissue its order when the next variant debuts, despite the medical conditions of Plaintiffs as disabled Americans that preclude them from, *inter alia*, safely wearing masks.

> "Because the COVID-19 pandemic remains ongoing, however, TSA may elect to promulgate new directives related to the wearing of masks should it determine that such measures are necessary to prevent an ongoing threat to transportation security." **EX. 01 at 5 [pg 21 of 165]**.

Defendant Airlines will also unquestionably re-impose the illegal Mask Mandate if tomorrow TSA, DOT, CDC and HHS "should determine that such measures are necessary to prevent an ongoing threat…". The Court must therefore,

consider going beyond the narrow ruling in *Health Freedom Defense Fund* in striking down Airline Defendants' enforcement of so-called CDC, TSA and DOT Health Guidance Directives, because they violated so many constitutional, statutory and regulatory provisions that guaranteed fundamental rights to Plaintiffs for decades. This Court should hold that Airline Defendants' *ultra vires* enforcement of illegal orders violated the Air Carrier Access Act ("ACAA"), and other federal laws and international treaties.

A permanent injunction is the only way to stop Defendant Airlines' unlawful conduct because no agency or commercial air carrier ever received clear, unambiguous authorization from Congress to enact the FTMM.

Although life went back to almost normal for most, an unfortunate development has also occurred since the lifting of the FTMM. PTSD (Post Traumatic Stress Disorder) is preventing some of us from flying even now, especially in the disabled community. Plaintiff Avrohom Gordon has upcoming events that he is driving to instead of flying because he has experienced such trauma from the FTMM period in airports and on airplanes. These trips would have been easier if he could fly, but now he cannot. Devorah Gordon is driving long distance instead of flying because she has PTSD and feels she cannot engage with agencies that violated her constitutionally protected rights. Every Orthodox Jew knows that one cannot break the Law in order to keep the Law, and yet this is exactly what Airline Defendants have done. They violated laws that for decades protected disabled Americans, and enforced fictitious laws that Congress never enacted.

> "[T]he statute is not ambiguous. Congress addressed whether the CDC may enact preventative measures that condition the interstate travel of an entire population on adherence to CDC dictates. It may not. So 'that is the end of the matter.' … Nor is the government's interpretation a reasonable one." *Health Freedom Defense Fund v. Biden*, No. 8:21-cv-1693, 2022 WL 1134138 (M.D. Fla. Apr. 18, 2022), appeal pending No. 22-11287 (11th Cir.).

Further to their Complaint, Plaintiffs now respond in opposition to Airline Defendants' motion to dismiss by countering point by point as follows:

## ARGUMENT

## I.     THE COMPLAINT SHOULD BE DISMISSED AS AN IMPROPER "SHOTGUN" PLEADING:

While the Plaintiffs cannot afford expensive law firms, and thus are proceeding pro se, we realize that the pleadings in our Complaint may need some improved wording, and we apologize to the Court for that.

On the other hand, however, from a legal perspective, we believe that the Complaint is clear enough for Airline Defendants, who understand very well which causes of action go to which Defendant. It is not confusing. It may be long and a bit unprofessional, but it clearly states claims for which relief can be granted.

The Defendants are welcome to debate all the issues of fact and law at trial, but there is no basis to motion to dismiss before discovery and a complete trial.

Defendants brought up *Weiland v. Palm Beach County Sheriff's Office*, 792 F. 3d 1313 - Court of Appeals, 11th Circuit 2015, using it as evidence that shotgun pleadings are a problem. On the contrary, that very case is supportive of our position:

> "In concluding that the court should not have dismissed those two counts, we are not retreating from this circuit's criticism of shotgun pleadings, but instead are deciding that, whatever their faults, these two counts are informative enough to permit a court to readily determine if they state a claim upon which relief can be granted."

In this case, the circuit court disagreed with the district court and held that although the pleadings were a bit unclear, they ultimately did state a claim upon which relief can be granted and they were clear enough to allow defendants to defend against them. The same applies to our Complaint.

While shotgun pleadings can be problematic, the complaint in the cited case was not unclear, and it too was prepared by pro se litigants, without the benefit of legal training.

In *GJR Investments, Inc. v. County of Escambia*, Fla., 132 F. 3d 1359 - Court of Appeals, 11th Circuit 1998, which was a classic case of shotgun pleading, the Circuit Court said, "Rule 8 requires that federal courts give pleadings a liberal reading in the face of a 12(b)(6) motion to dismiss. This admonition is particularly true when the parties are proceeding pro se. Courts do and should show a leniency to Pro Se litigants not enjoyed by those with the benefit of a legal education."

Let's look at a most recent case in this Court, *Rodriguez v. JUST BRANDS USA, INC.*, Dist. Court, CD California 2021, where this Court denied defendants claim of shotgun pleadings. In that aspect, it is very similar to our case.

"The Court said "Shotgun pleadings have a "unifying characteristic … [in] that they fail to one degree or another, or in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). In this case, the FAC sufficiently apprises Defendants of the allegations against them. Plaintiff clearly alleges that Defendants are collectively involved … and invokes joint and several liability and agency to tie Defendants' conduct together. (FAC ¶¶ 7-10). Although Defendants argue that these claims lack factual support, Rule 8(a) only requires that the allegations "be enough to raise a right to relief above a speculative level." [*Bell Atlantic Corp. v.*] *Twombly*, 550 U.S. 544, 555 (2007). The FAC is not a "shotgun pleading" such that Defendants cannot "know[] exactly what they are accused of doing wrong." *Sollberger* [*v. Wachovia Sec., LLC,*] 2010 WL 2674456 (C.D. Cal. June 30, 2010), at *4. Thus, Defendants fail to offer a valid reason to dismiss on this basis."

Ironically, Airline Defendants' detailed motion to dismiss, addressing our each of our causes of action, is clear evidence that Defendants were able to ascertain more than an adequate understanding of the claims stated.

The term "Shotgun Pleadings" should not be used as a catch-all, cancel-all process. We identify when we are referring only to federal agencies and when we are referring to the airlines and/or their employees and/or medical defendants. It is nowhere near perfect, but remedies can be granted for each and every claim we stated.

## II.    COUNTS 20 AND 21 FOR CIVIL CONSPIRACY SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER 42 U.S.C. §§ 1985(3) AND 1986.

42 U.S.C. § 1985(3) provides the basis upon which a claim can be stated: "…any person or class of persons … deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

The Airline Defendants tried to convince us that 42 U.S.C. §§ 1985(3) and 1986 are civil-war era racism laws that do not apply and were used only in a time of the civil rights movement. The Court knows this is not the case. Congress did not limit its application to black people. The law broadly protects "any person or class of persons." Race is not in the text. Which part of "any class of persons," didn't they understand?

Clearly the conspiracy statute is alive and well. And yet, one of the Attorneys in our case even threatened a friend of the Plaintiffs' that if he would bring a 1985(3)-conspiracy claim, he will be required to pay the defendants' legal fees. **EX. 02**.

There is no doubt that Congress has defined the disabled as a minority and a disadvantaged class of people deserving equal protection from laws, including the right to be free of class-based discrimination. And there can be no doubt that the airlines and many of their employees during the COVID-19 pandemic targeted with discrimination

the disabled with medical conditions that prevented them from safely wearing a facemask by banning us from traveling interstate using the public airspace.

Removing rights of the disabled because someone else is afraid wasn't the answer. Instead, inform those gripped by fear of advanced air filtration systems and give THEM a choice to stay home with a refund. This would protect the rights of all!

Congress identified disabled airline passengers as a class of people specifically in need of legal protection. Congressional intent was to protect airline passengers from discrimination, not to empower the carriers to fly above the law.

The conspiracy here involves the constitutional right to travel, for which no other remedy exists except a lawsuit under 42 U.S.C. § 1985(3). "The right to pass freely from State to State has been explicitly recognized as among the rights and privileges of National citizenship." *Twining v. New Jersey*, 211 U.S. 78, 97 (1908). "That right, like other rights of national citizenship, is within the power of Congress to protect by appropriate legislation." *Id. at 105-106*.

There is no doubt that conspiring to prevent all disabled passengers from flying who medically can't safely wear a mask, constitutes an invidious discrimination against a protected minority.

It will unquestionably require discovery for Plaintiffs to reveal the exact depth of the conspiracy, in light of the extensive facts we laid out in our Complaint.

Our Complaint clearly alleged that Airline Defendants as an industry conspired with each other, with federal agencies and the Medical Defendants involved, and with the individual employees therein to discriminate against them due to their disabilities.

Airline Defendants may be suggesting that there is no clear evidence of them conspiring together, like a taped conversation where they are heard discussing between each other and agreeing to discriminate against the disabled as a group. But that's not required by the statute. Take for example, if you see five members of the Ku Klux Klan walking down a street with clubs in their hand, and they find and beat up a black person, do we need to hear them on tape conspiring to get together and beat the person

in order to claim conspiracy?! Of course not! The same goes for the airline industry and the federal agencies that instigated the discrimination. They are almost all as an industry, including the federal agencies that govern them, colluding and conspiring to discriminate against Plaintiffs and those similarly situated. And just as with the Ku Klux Klan bullies, they now want the courts to support them, using similar weapons to discriminate against Plaintiffs. Even if Airline Defendants did not conspire with each other, they certainly conspired against disabled Americans separately within their own corporations, while boasting that the cleanest in-cabin air-filtration systems known to mankind would prevent all viral spreading **before** they even sold you a ticket. And then they turned around and manipulated and encouraged the FEAR of viral spreading as their weapon of choice **after** they sold you your ticket.

> *Thomas v. Roach*, 165 F. 3d 137 - Court of Appeals, 2nd Circuit 1999, said,
> "A conspiracy 'need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct.' *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir.1995) (quoting *United States v. Rubin*, 844 F.2d 979, 984 (2d Cir.1988))."

If Airline Defendants and other defendants do not show "a tacit understanding to carry out the prohibited conduct," then no one ever did and no one ever will. In any test of reality, our case is a classic case of conspiracy as described in the above cases.

The class-based animus alleged is about an unprecedented, difficult to believe animus that is obvious from our Complaint and dozens of other complaints and news stories, toward people with a specific disability that did not allow them to don a mask. While it is not the responsibility of the Plaintiffs to determine the source or cause of this animus, it is possible that the political divide in the country between pro-maskers and the anti-maskers caused them to have animus towards the mask disabled, as they did not refuse to differentiate between them and anti-maskers without mask-disabilities.

We can certainly get to the bottom of the animus during discovery, but the fact that there is a specific animus to people like us with mask related disabilities is absolute, and so thick that it can be sliced with a knife. We felt it every time we entered a store with a mask policy. Medical centers, airlines, courts and others, gave us a dirty look, even when they finally let us in. The animus is most definitely there and we will prove that animus before and/or during trial.

Defendants quoted *Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511, 1519 (9th Cir. 1985); see also *Voigt v. Savell*, 70 F.3d 1552, 1564 (9th Cir. 1995). "…the plaintiff must be a member of a class that requires special federal assistance in protecting its civil rights." It would seem that Defendants took the court's words a bit out of context by only presenting the two lines that fit their narrative. The cited cases show that our class is certainly a more defined class than all Republicans or all antigovernment protestors. When lawyers pick sentences out of a paragraph, they can convey things in a certain light that may not be an accurate depiction of the court's decision and guidance. It actually says as follows:

> **"We do note, however, that we have previously held that to state a claim under section 1985(3)** the plaintiff must be a member of a class that requires special federal assistance in protecting its civil rights. *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir.1985). But see *Keating v. Carey*, 706 F.2d 377, 386-87 (2d Cir.1983) **(Republicans are a protected class under section 1985(3))**; *Glasson v. City of Louisville*, 518 F.2d 899, 912 (6th Cir.) **(anti-government protestors are a protected class under § 1985(3))**, *cert. denied*, 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 258 (1975)." *Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511, 1519 (9th Cir. 1987) ***(emphasis ours)***.

Going back to the above case being quoted, we read,

"The United States Supreme Court, in a recent interpretation of this statute, stated: "The language requiring intent to deprive a person of equal

protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise, class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, supra at 102, 91 S.Ct. at 1798. Although the Court, in that case, refused to decide whether discrimination based on a criterion other than race would be sufficient to establish a cause of action under the Act, its earlier decisions have suggested that this is so, e.g., *Snowden v. Hughes*, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944). Accordingly, this court, in construing the statute, has held that the statutory language does not require that the discrimination be based on race, e.g., *Cameron v. Brock*, 473 F.2d 608 (6th Cir. 1973); *Azar v. Conley*, 456 F.2d 1382 (6th Cir. 1972). *Accord, e.g., Richardson v. Miller*, 446 F.2d 1247 (3d Cir. 1971). In the *Cameron* case, we affirmed a judgment for plaintiffs in an action brought by a supporter of an incumbent sheriff's opponent who was arrested while distributing campaign leaflets and who charged that his arrest was a part of a conspiracy to deprive him and other supporters of the sheriff's opponent of the equal protection of the laws. In affirming, we held "that § 1985(3)'s protection reaches clearly defined classes, such as supporters of a political candidate. **If a plaintiff can show that he was denied the protection of the law because of the class of which he was a member, he has an actionable claim under § 1985(3).**" *(emphasis ours)* [*Cameron v. Brock*,] 473 F.2d at 610." [*Glasson v. City of Louisville*, 518 F.2d 899, 912 (6th Cir. 1975)].

As this honorable Court can see, the courts do not agree with the Defendants' presumption that the 1985(3) conspiracy statute is old and no longer in use. It is in use and very active, albeit limited in scope. That discussion is appropriate to address during discovery and trial, and should not be brought up in a motion to dismiss.

When it comes to defining what exactly is an acceptable class, this Court will need to make that decision, but it is not appropriate in a motion to dismiss. The

arguments of case law that airline Defendants presented was certainly not convincing of their position, when reading the decisions thoroughly.

In *Lake v. Arnold*, 112 F. 3d 682 - Court of Appeals, 3rd Circuit 1997, where a specific group of disabled people were considered a class-based group for this purpose, it says as follows:

> "Discrimination based on handicap, including mental handicap, like that based on gender, often rests on immutable characteristics which have no relationship to ability. Where this is the case, we are convinced that the discrimination is invidious and that the reach of section 1985(3) is sufficiently elastic that the scope of its protection may be extended. In reaching this conclusion we are influenced by a number of factors which lie outside our own conjecture or analysis. We begin with the explicit statement of Congress itself. In enacting the Americans With Disabilities Act, Congress found that: [I]ndividuals with disabilities are a discrete and insular minority who have been faced with restrictions and limitations, subjected to a history of purposeful unequal treatment, and relegated to a position of political powerlessness in our society, based on characteristics that are beyond the control of such individuals and resulting from stereotypic assumptions not truly indicative of the individual ability of such individuals to participate in, and contribute to, society."

Airline Defendants presented dozens of cases in unrelated and completely different scenarios, in efforts to beguile the Court that there are no current-day applications for the 1985(3) conspiracy statute. They went on to say that the statue was for the Ku Klux Klan, and now it is irrelevant. But the courts don't agree. In many cases the courts review the applicability of it and then even when denying it, they do not say it is "because this was from the Ku Klux Klan and is no longer applicable." Rather, they give good clear reasoning specifically why the 1985(3) conspiracy law should not apply in certain specific cases. If it is no longer applicable, the courts would

need to say that. We could give several examples of the courts accepting the 1985(3) conspiracy statute, but the following should suffice:

> In *Farber v. City of Paterson*, 440 F. 3d 131 - Court of Appeals, 3rd Circuit 2006 it says, **"the phrase "class-based invidiously discriminatory animus" would confine the authority of this law to the prevention of deprivations which shall attack the equality of rights of American citizens; that any violation of the right, the animus and effect of which is to strike down the citizen, to the end that he may not enjoy equality of rights as contrasted with his and other citizens' rights, shall be within the scope of the remedies of this section *(emphasis ours)*."**

As Plaintiffs in this case, we are a perfect match to this description. The animus of the Airline Defendants, federal agencies and their employees have denied us Plaintiffs the equality of rights to travel in every respect and in every reasonable way, as other citizens can, due to our disabilities which prohibited us from wearing a mask.

As written in *Lake v. Arnold*, 112 F. 3d 682 - Court of Appeals, 3rd Circuit 1997, the Court said, "Our own jurisprudence, informed by the reasoning of our sister court, convinces us that the mentally retarded, as a class, are entitled to the protection afforded by section 1985(3)." If the mentally retarded are entitled to 1985(3) protection in their quest to function in life with their limitations attached, and to pursue happiness in life to the fullest of their opportunities and abilities, however diminished, it cannot be that Americans whose disabilities prevent them from safely masking, and prevents them from breathing — even if that limitation is merely perceived in their minds — that they would also not be afforded the same protection of law, in the same pursuit of happiness in life to fullest of their opportunities and abilities.

By the Court's leave, allow us to present just one more case:

> In *Life Ins. Co. of North America v. Reichardt*, 591 F. 2d 499 - Court of Appeals, 9th Circuit 1979, the Court held that "Courts construing § 1985(3) have not limited its protection to racial or otherwise suspect classifications.

[16] *Means v. Wilson*, 522 F.2d 833 (8th Cir. 1975) **(political opponents are a sufficient class)** *(emphasis ours)*; *Cameron v. Brock*, 473 F.2d 608 (6th Cir. 1973) **(supporters of a political candidate are a sufficient class)** *(emphasis ours)*; *Azar v. Conley*, 456 F.2d 1382 (6th Cir. 1972) **(a single family is a sufficient class)** *(emphasis ours)*. See also *Harrison v. Brooks*, 446 F.2d 404 (1st Cir. 1971). Reichardt's allegation that an invidiously discriminatory animus was the motivating force behind the disparate policy terms offered to women is thus sufficient to survive a motion to dismiss for failure to state a claim."

The Airline Defendants are asking this Court to summarily dismiss this case before it has even leapt off the starting blocks, based on a very one-sided almost blind view of the 1985(3) conspiracy laws. If the Defendants arguments are true, then they will win this case. So, let us proceed and litigate it. The Plaintiffs beg of this Court to deny their motion to dismiss and give us five inexperienced Pro Se Plaintiffs an opportunity to prove our case and protect ourselves and other disabled Americans against any possible and likely future discriminations against all discriminated classes of people.

## III.   PLAINTIFFS LACK A PRIVATE RIGHT OF ACTION TO ALLEGE VIOLATIONS OF THE AIR CARRIER ACCESS ACT ("ACAA").

Though seasoned attorneys, it is baffling how Airline Defendants seem to believe that the lack of a right to private action in an ACAA complaint is settled law. It is not. Yes, there is the case of *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) which in a somewhat related concept where the Supreme Court decided there was no private action available in that case. Lawyers love quoting *Sandoval*, but do not clarify that *Sandoval* is not an ACAA case.

In our ACAA case, we humbly come before this Court to ask it to judicially

imply a private right of action from a federal statute, where the mentioning of a private right of action was silent.

It should also be noted that Airline Defendants cite no statutory language prohibiting private enforcement of the ACAA (because it doesn't exist).

In our case, the federal statute itself is the most important source of implied private action. The federal statute is what give the impetus to the courts to judicially create implied private rights of action when they are not expressly created by Congress, allowing a private plaintiff to become the enforcer of a federal statute, especially and precisely during conditions when the federal regulation designed to implement a federal statute had ceased to properly function. A private plaintiff seeking to enforce such a federal statute must have an alternative source of relief.

> "Many federal statutes provide a private cause of action through their express terms. Other federal statutes, however, merely define rights and duties, and are silent on the issue of whether an individual may bring suit to enforce them. For statutes in this latter category . . . courts have held that "implied" private rights of action may exist subject to statutory interpretation." *Landegger v. Cohen*, 5 F. Supp. 3d 1278, 1284 (D. Colo. 2013).

Defendant Airlines however, argue that Plaintiffs do have such an alternate source — the DOT — which has developed a "comprehensive enforcement process."

In a case in the Massachusetts District Court, *Michael Selecki v. CDC et al*, case No. 22-10155-PBS, there was a status conference in February 2022 that some of the same attorneys in our action attended. The "MR. GOLDBERG" tag below refers to Mr. Roy Goldberg, attorney for several of the Airline Defendants in our case. In that conference, the following exchange appears. **EX. 03 at 26-27 (pgs 136-137 of 165)**:

> **MR. GOLDBERG:** It's just there's no private right of action with the Air Carrier Act in effect, your Honor, and I just wanted to make sure the record was clear on that, and there's no private right of action under the Americans

1 with Disabilities Act either.

2 **THE COURT:** Well, suppose there's a lady who wants to travel on a

3 wheelchair and the airline says "no," you're saying that she can't get on the

4 plane and has to go through a six-month exhaustion process?

5 **MR. GOLDBERG:** No. I mean, that would be a clear violation of the

6 DOT requirements, and the airline could face significant fines and

7 sanctions.

8 **THE COURT:** But what happens in the meantime, this little disabled lady

9 who wants to get on a plane and she's going to her daughter's wedding, and

10 they say "no"?

11 **MR. GOLDBERG:** If it were me, your Honor, I would go to the DOT. I

12 would immediately then say, "DOT, you didn't act quickly enough," and I

13 would do it the right, proper channel. There's a federal statute, 49 U.S.C. §

14 46110, that that's the only one way to do it, your Honor. I mean, that's just

15 what the law is. … .

16 **THE COURT:** All right, well, I don't know about that, but I sure don't

17 want to decide that in a split second. I just think that this is easily worked

18 out. … .

19 As you can see, the Honorable Patti B. Saris, United States District Judge of the

20 District of Massachusetts was not prepared to instantly accept Mr. Goldberg's premise

21 that in every case and in all scenarios there is no possibility of any private of action on

22 an ACAA violation. She wasn't convinced that this was settled law. We understand

23 that this Court is not bound by decisions from other district courts, but we would like

24 to encourage this Court to allow this discussion to play out in real time as a full-fledged

25 lawsuit with a trial.

26 The DOT is actually part of the conspiracy mentioned and we will look into the

27 viability of adding them as a defendant, as later similarly suggested by Judge Saris in

28 *Seklecki*. DOT has been taking over a year to respond to complaints and they have

been encouraging the airlines to violate the ACAA, as we fully document in our Complaint. It's a difficult position for disabled American citizens to find themselves in, when the agency that is claimed to be the only enforcement avenue, is actually taking the role not only as arbiter, but also as the instigator and the violator.

Included in the DOT's "comprehensive enforcement process" is a right to a review and pursue such enforcement. 49 U.S.C. 46110. And yet, the Circuit Courts have denied a review of the DOT's failure to enforce, and dismissed a case claiming there was **a lack of jurisdiction** *(emphasis ours)* (*Abadi v. DOT*, 2nd Circuit 21-2807, and *Abadi v. DOT*, DC Circuit 22-1012). **EX. 04.**

Thus, Attorneys for Airline Defendants blatantly distort the truth THREE times, claiming that "Plaintiffs may not pursue their claims in this forum," since **(1)** "…their sole option is to timely file a petition for review with … the Circuit Court," **(2)** "…the passenger can file a petition for review … in the U.S. Circuit Court of Appeals…" and **(3)** "…any such legal challenge must be in the Circuit Court of Appeals…". Memorandum of Law in Support of Motion to Dismiss at 2, 10 and 11 respectively.

Given this reality, Defendants' Motion to Dismiss cannot prevail. If the DOT fails to enforce the ACAA AND the Circuit Courts deny petitions for review for "lack of jurisdiction," where does that leave Plaintiffs' remedy without a private right of action in this forum? This honorable Court must believe there is another avenue of enforcement, namely, judicially creating a private right of action. One thing is certain; the courts cannot leave disabled people in a situation where they cannot fly on airplanes, and justly say that this was the intent of Congress.

Throughout the entire COVID-19 pandemic, DOT refused its statutory duty to protect the disabled from discrimination by airlines. Clearly, these were no ordinary circumstances, but this is precisely how the courts are provided with opportunities to break the current the cycle of injustice. Otherwise, the DOT will continue to utterly fail as it has to this day, to establish justice in the wake of injuries inflicted upon a disabled class of American citizens, which the federal statute seeks to dispatch.

Adding insult to injury, the DOT never offered restitution or compensation to victims of airline discrimination. The only remedy therefore is for the courts to judicially create a private cause of action to mitigate against what the airlines and government agencies did to injure Plaintiffs, arising out from their failure to act and to protect. This is unquestionably an issue of first impression nationwide.

DOT's Feb. 5, 2021 Notice of Enforcement Policy (**EX. 05**) creates illegal provisions that are not law, not regulations, not a mandate and not an order, requiring a person seeking an exemption to request accommodation in advance, submit to medical consultation by a third party, and provide medical documentation by a licensed medical provider.

DOT to date has not investigated any of the numerous complaints filed by Plaintiffs in this case, and it has already been nearly SIX months since our first complaint was filed. In one case not filed by Plaintiffs in this action, DOT found Defendant Southwest (as well as JetBlue Airways) had violated 14 C.F.R. § 382.19 by refusing to grant any medical exemptions. **EX. 06**. However, DOT did not penalize the airlines for their illegal conduct. This is despite the fact that DOT said they would "provide reasonable accommodations to persons with disabilities who are unable to wear or safely wear masks."

The mandate required that airlines grant exemptions to passengers with medical conditions who can't safely wear masks. Airline Defendants and DOT failed to comply as documented in our Complaint.

In distinguishing between a plaintiff's right and a plaintiff's relief, most federal courts are aware of the distinction, and caution that before addressing any standing issue, "a court must answer the threshold question of whether a statute affords a plaintiff a private right of action." *Asbury Park Bd. of Educ. v. Hope Acad.,* Charter Sch., 278 F. Supp. 2d 417, 420 n.2 (D.N.J. 2003).

The question of whether to create a private right of action has been described by the Supreme Court in the following way: "Since the [federal statute] does not explicitly

create a private enforcement mechanism, the initial question presented . . . is whether such a private right of action can be implied on behalf of those allegedly injured by a claimed violation of [the statute]." *California v. Sierra Club*, 451 U.S. 287, 289–90 (1981).

There are three sources of federal implied private rights of action in our case: The FIRST is the United States Constitution; see *Bivens v. Six Unknown Narcotics Agents*, 403 U.S. 388, 392 (1971). "Bivens authorizes a private cause of action against federal officials . . . who violate an individual's constitutional rights while acting under color of federal law." *Mullen v. Bureau of Prisons*, 843 F. Supp. 2d 112, 116 (D.D.C. 2012).

The SECOND source is the federal statute — 49 U.S.C. § 41705 [aka "the ACAA" enacted by Congress in 1986] — which guaranteed that people with disabilities would receive consistent and nondiscriminatory treatment when traveling by air.

The THIRD source is from the federal regulation, which in our case is 14 C.F.R. Part 382, Subpart K (382.151 – 382.159), enacted four years later in 1990, after being designed to implement and enforce the federal statute. The implied and then judicially created private right of action can thus be based on the federal regulation, when and if it becomes clear that the Constitution and the federal statute has been summarily ignored, neglected or otherwise delayed by the very hand of those charged with upholding the federal regulation that should have prevented the discrimination.

Accordingly, there is nothing more pivotal and urgent to communicate through our argument here than this single coherent fact: The DOT, charged with enforcing the THIRD source [i.e., the federal regulation at 14 C.F.R. Part 382], has entirely failed to function, leaving Plaintiffs without a remedy. This lawsuit would not exist if the DOT had simply done or was doing its job.

If this honorable Court will rule that no implied private right can be judicially created for Plaintiffs, after DOT clearly failed in its roll of enforcement, it would be

tantamount to ruling that Congress never intended a remedy for the disabled when traveling by air.

To prevent this travesty of justice, we are asking this honorable Court to expand the availability of implied private rights of action in this case, because the alternative is so unthinkable. If this Court agrees, it must strike Airline's motion to dismiss on this point.

On point with the above argument is what the Supreme Court decided in the 1960's in *J.I. Case Co. v. Borak*, 377 U.S. 426 (1964), abrogated by *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017). In that case, the court announced that courts had the ability, indeed even the duty, to create new implied private rights of action, and that these actions could be based on the broad ground of legislative purpose. *id. at 433* (**"[I]t is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose."**) *(emphasis ours)*.

Plaintiff Yvonne Marcus is a Native American [a Lipan Apache who has close tribal and family connections with the Navajo]. She is acutely aware of the enactment of the 2018 Navajo Civil Rights of Individuals with Disabilities Act (Civil Rights Act) (Legislation No. 0469-17) which was a landmark piece of Navajo Nation legislation that protects the rights of Navajos with disabilities. Consistent with Navajo teachings, the Act provided that discrimination against any individual with a disability is *naayéé* [i.e., monstrous] and not only violates the fundamental individual rights of Navajos, but disrupts efforts to maintain *hózhǫ́* [i.e., peace (shalom), balance, beauty and harmony] across all *Diné Bikéyah* [i.e. the traditional homeland of indigenous people — now encompassing parts of Arizona, Utah and New Mexico].

She is also aware of the fact that prior to 1924, American Indians were considered wards of the state, who were denied various basic rights including the right to travel. But all that changed in 1924 with the passage of the Indian Citizenship Act [43 Stat. 253] which granted U.S. citizenship to all Indians born in America. As a result, American Indians were finally granted unrestricted travel as they wished.

Plaintiff Yvonne Marcus was shocked to learn of the list of points in Defendant Airlines' motion to dismiss, which for all intents and purposes erased not only her right to freely travel within the United States as a Native American, when her disability prevented her from safely masking, but also annihilated her rights to be free of discrimination based on her disability, rights that her Nation and her people were awarded through Navajo as well as U.S. legislation. Beyond belief was the legal fabrication that she had allegedly lost her private rights of action for violations of the ACAA against Airline Defendants, after the DOT failed to do their jobs, simply because she could not safely don a mask. It cannot be that everything for which her people fought for countless decades, suddenly disappeared like smoke because Airline Defendants decided to enforce a fictitious federal law.

The Torah [i.e., the first five books of the Hebrew Bible] contains a reading called "Judges" [Heb: "Shoftim"] and it opens with the command to appoint

> "…judges and law-enforcement officials within all your city gates that the L-RD your G-d is giving you, for your tribes, and they shall judge the people with righteous judgment. You shall not pervert justice; you shall not show favoritism, and you shall not take a bribe, for bribery blinds the eyes of the wise and perverts just words. Justice! Justice shall you pursue, that you may live and possess the Land the L-RD your G-d is giving you." D'varim [Deut] 16:18-20.

So in Torah-Law, so throughout the U.S. Judicial system: The courts and its judges are invested with the authority to interpret and decide all matters of law;

> "If a matter eludes you in judgment … between a legal position and for a statute, or between damage and for injury — arguments of controversy in your cities — then … you shall come … to the judge who will be in those days, and you shall inquire, and they will tell you the words of judgment. … According to the Torah they instruct you and according to the judgment they say to you, you shall do; you shall not diverge from the word they tell

you, either right or left." D'varim [Deut] 17:8-11.

In *Gilstrap v. United Air Lines, Inc.*, 709 F. 3d 995 - Court of Appeals, 9th Circuit 2013, the NINTH CIRCUIT said: "We have not squarely decided in this circuit whether, in addition to these administrative enforcement mechanisms, the ACAA may be enforced through private lawsuits."

Denying the Plaintiffs the opportunity to pursue this litigation will not be fair to the Plaintiffs or other disabled Americans, and would not be helpful to all the other victims of the DOT's lack of enforcement, nor would it remedy the victims of DOT's encouragement of discrimination that it generously provided to the airlines.

Accordingly, we ask this honorable Court to deny this motion and allow this case to proceed to discovery and trial.

## IV.   THE AIRLINE DEFENDANTS ARE NOT SUBJECT TO PLAINTIFFS' CLAIMS UNDER THE REHABILITATION ACT.

The entire premise of this argument is based on an idea that since the money from the federal government was given specifically for payroll, it does not count as federal funding with respect to the Rehabilitation Act (hereinafter "the RA").

While the idea may be an interesting premise to debate, there's no case law to confirm such a concept, and there's no reason to believe such a idea when the RA itself says nothing to this effect. Accordingly, this argument is certainly not solid enough to even mention in a motion to dismiss.

The RA includes any organization getting federal money. The Airline Defendants in question received federal funding. Plaintiffs should be entitled to state and argue such a claim.

It is devious for the airlines to argue that billions of dollars in support to pay their employees so they could keep operating is not "as a whole" federal funding for purposes of the RA. *Shotz v. Am. Airlines, Inc.*, 420 F.3d 1332 (11th Cir. 2005) is irrelevant here because Congress provided reimbursements to airlines for the damages

they suffered as a result of the Sept. 11, 2001 terrorist attacks, which is clearly distinguishable from the funding Congress provided to keep the airlines in business during COVID-19.

Congress intended for airlines that accepted federal funding to keep them operating during the pandemic. When was it the intent of Congress for them NOT to obey the RA? Is it even conceivable for any court in these United States of America to hold that Congress will provide money to the Airlines — even if it is stipulated that the funds be used to pay for potato chips and cookies — with the government's understanding and approval that the recipient airlines are permitted to openly and unabashedly implement discriminatory practices against the disabled in direct violation of the RA? The fact is that part of the contracts the airlines entered into with the government required them to adhere to all federal nondiscrimination laws as a condition of getting the cash. That's exactly what the funds provided by Congress were designed to do — to prevent major U.S. airlines from going out of business during the pandemic, and to continue to operate without discriminating against the disabled.

The fact the airlines are no longer being paid today, doesn't negate the fact that Airline Defendants are guilty of discrimination during time periods when they were accepting and benefitting from federal financial assistance. Plaintiffs were victims of discrimination onboard Defendant Airlines' aircraft from November 2020 to April 2022, if they were even permitted to board, during an undisputed period where these air carriers received federal funding.

A recipient of federal funds is also subject to suit for injunctive relief to ensure it obeys the RA. That gives this honorable Court authority to enjoin the Airline Defendants from requiring disabled passengers who are medically contraindicated to don face coverings in the future.

Congress has never enacted a law allowing airlines to require their passengers use an experimental medical device (a facemask) as a condition of carriage. Nor has it amended the RA or ACAA in response to the pandemic to give airlines permission to

discriminate against passengers who can't safely cover their nose and mouth because of their disability. Airline mask policies should have been forbidden because they gave rise to the refusal of Airline Defendants to follow the law in granting exemptions to those with disabilities.

## V.   THE CLAIMS FOR VIOLATION OF THE CALIFORNIA UNRUH CIVIL RIGHTS ACT SHOULD BE DISMISSED.

The California UNRUH, just like most state human rights laws, are created to add to and compliment federal laws. There is no conflict between state law and federal law in such situations. Both sets of laws apply and can and should be litigated.

The Defendants are making an absurd argument that since the DOT is in charge of ACAA, anything airline related must only go through the DOT. The only problem is that there's no source to that hypothesis! There are multiple laws from federal, state, and cities, and there's no evidence that Congress decided that no other laws can be applied other than ACAA.

Actually, the DOT themselves do not believe that at all. In their form letter when they finally do respond to a complaint, generally a year or longer after the complaint is filed, it says the following:

> "For your information, in an enforcement case, the U.S. Department of Transportation is limited to issuing cease and desist orders and assessing civil penalties not to exceed $34,174 per violation. Such action can only be accomplished through settlements or formal hearings before administrative law judges. We cannot order compensation for aggrieved parties. To obtain a personal monetary award of damages, a complainant would have to file a private legal action that may be based on private contract rights or on civil rights statutes that provide for a private right of action." **EX. 07**.

Clearly, the DOT is aware of a place for private actions beyond the ACAA. Considering that the DOT is in charge of enforcement of the ACAA, their

understanding and their authorization to pursue private actions should certainly take precedence over the mere opinions of Airline Defendants and their attorneys.

### A.   The ACAA Preempts Plaintiffs' UNRUH Act Claims

Airline Defendants presented *Nat'l Fed'n of the Blind v. United Airlines*, 813 F.3d 718, 16 Cal. Daily Op. Serv. 589, 2016 Daily Journal D.A.R. 562 (9th Cir. 2016) as evidence that ACAA preempts all state law in every case. They may have assumed that Plaintiffs and possibly even this honorable Court would not read that case, but instead just take their word for it.

*The Nat'l Fed'n of the Blind v. United Airlines* case was about the ticketing machines at check-in, where blind people could not process their own tickets like everyone else, and so they demanded equal rights.

The airline's defense was that they conformed to DOT and ACAA laws and that preempted state law from having any control there. The court agreed with United, because there was a CONFLICT between federal and state, and thus federal law and Congress' decisions take precedence.

But in our case, it is completely different; there is NO CONFLICT. The state adds liability for violating the same or similar discrimination statutes.

In *the Nat'l Fed. For the blind* it says, "Because we have concluded that DOT "meant to pre-empt" the claims at issue here, the question is simply "whether that action [wa]s within the scope of the [agency's] delegated authority." *Fidelity Fed. Sav. & Loan Assn. v. De La Cuesta*, 458 U.S. at 154, 102 S.Ct. 3014." Based on that premise, the court then discussed if the DOT was right to preempt it. In our case, the DOT themselves encourage passengers to pursue state violations as described above. Therefore the decision of *the Nat'l Fed. For the blind* is NOT applicable in our case.

In this case — *Nat'l Fed. For the blind* — the court quoted *Gilstrap v. United Air Lines, Inc* multiple times and did not say they were taking back and canceling that decision. They held that ACAA does not preempt state law, as we will now describe.

In *Gilstrap v. United Air Lines, Inc.*, 709 F. 3d 995 - Court of Appeals, 9th

Circuit 2013, the Court clarified much of these issues. First of all, the NINTH CIRCUIT was not ready to say that ACAA cannot have a private action, as described above. In that case the Court is very clear that ACAA does not preempt all other laws. The Court says as follows: "We need not, and do not, reach here the question of whether the ACAA provides a private cause of action because, as a general matter, we do not agree that conflict-preemption analysis turns on whether a statute provides a federal cause of action. That Congress has not chosen to provide a federal cause of action to enforce a statute does not necessarily mean that all conceivably related state personal-injury claims are displaced."

There are many UNRUH cases presented in complaints that have potential ACAA violations. But it wouldn't be efficacious to present all of them here, unless this honorable Court so requests, in which case we shall. But in the interim, it was made very clear by the NINTH CIRCUIT that UNRUH can be claimed on airline related cases in spite of the additional ACAA liabilities.

**B.    The Federal Aviation Act Preempts Plaintiffs' UNRUH Act Claims**

The Federal Aviation Act "includes two important statements indicating a general congressional intent not to preempt state-law tort suits against airlines: the savings clause providing that "[a] remedy under this part is in addition to any other remedies provided by law," 49 U.S.C. § 40120(c), and the requirement that airlines maintain liability insurance for injuries and property damage, *id. § 41112*. The latter requirement is important as to the statute's preemptive status, because 'the FAA doesn't create a federal cause of action for personal injury suits'; the liability insurance clause therefore 'can only contemplate tort suits brought under state law.' *Martin ex rel. Heckman v. Midwest Express Holdings*, 555 F.3d 806, 808 (9th Cir. 2009)."

Accordingly, the Federal Aviation Act does NOT preempt Plaintiffs' UNRUH Act claims and cannot provide support for a motion to dismiss.

Regarding the ordinary preemption doctrine that Airline Defendants assert, Plaintiffs have established in our claim that there are substantial, actual disputed federal issues embedded within our California state-law causes of action. Federal court may exercise jurisdiction to decide an embedded federal question without disturbing the balance of federal and state judicial responsibilities that Congress intended.

## C.   Plaintiffs Not Residing in California Lack Standing under the UNRUH Act

To answer this point, we quote from *The Basketry, Inc. v. The Superior Court*, No. A162746, (Cal. Ct. App. Nov. 4, 2021) regarding whether a Louisiana boutique could be sued in California on a claim that it had violated a federal law and thereby, California's UNRUH Civil Rights Act (Cal. Civ. Code § 51).

> "California courts "may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.") (Cal. Code Civ. Proc. § 418.10). "Because state law in this field stretches to the limits set by federal law, state law here incorporates federal law. California state courts cannot extend the reach of their personal jurisdiction beyond federal limits."
> (*Buskirk v. Buskirk*, (2020) 53 Cal.App.5th 523, 531))."

*The Basketry, Inc. v. The Superior Court*, No. A162746, 6 (Cal. Ct. App. Nov. 4, 2021) ("A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State." (*Bristol-Myers*, supra, 137 S.Ct. at pp. 1779-1780).

In our case, Plaintiffs were injured by the conduct that Airline Defendants carried out within as well as beyond California's borders. Plaintiffs therefore have standing, and our state-law causes of action are not preempted by the ACAA, but are rather augmented by them.

UNRUH does not limit its legal protections to anyone; not to individuals who

maintain private and/or business addresses in California; not to those who travel to, from and within the State, and obviously not to residents of California. The UNRUH Civil Rights Act ensures that **every person** is equally accommodated in private and public business establishments located in California, such as banks, restaurants and hotels. **It is inconceivable that a business operating within California could ask their customers physically located in California if they were residents of the State, and upon receiving a negative response, would be permitted under UNRUH to discriminate against them.**

Accordingly, Airline Defendants perpetrated violations of federal regulations and State regulations that otherwise would have controlled their conduct, during the period alleged by Plaintiffs in their Complaint. A motion to dismiss Plaintiffs claims should therefore not be granted on this point.

## VI.    PLAINTIFFS' CLAIMS FOR BREACH OF CONTRACT SHOULD BE DISMISSED.

Defendant Airlines forced passengers to wear masks when Plaintiffs never agreed to do so in the Contract of Carriage. Except for Frontier's and United's contracts, there was no provision mandating that passengers wear face coverings.

The Airline Defendants even provided illegal and/or EUA masks to their passengers, introducing them into interstate commerce, without informing us that use of the device was optional and that we must give informed consent.

Airline Defendants are trying to dismiss this on a technicality in which they feel that Plaintiffs did not itemize in the Complaint all the contracts of carriages from all of the airlines. At the same time, Airline Defendants complained that our Complaint was too long. Now they want it to have been longer.

When reading the Complaint, a contract of carriage from United Airlines is described and quoted. It is easily noted that the main point of that cause of action was the fact that the contracts of carriage should not have included any requirement to wear

a mask. The point made was that if the airline agreed to carry someone through a contract, and in that contract was an agreement that the passenger don a mask, then the contract itself violates a dozen laws and cannot be valid or enforced because an airline cannot legally deny passage to a passenger who can't safely wear a mask.

With other Airline Defendants, the contractual issue was not what was IN the contract that needed to be highlighted, but rather what was NOT IN the contract. Airlines cannot, as a condition of carriage, claim that all passengers who purchase tickets after December 31, 2022 must wear pink shoes if they wish to get onboard, if that is not specifically stipulated in the contract of carriage.

Those contracts were attached as exhibits in our Complaint and there should be no issue here. Plaintiffs are confused as to what exactly Airline Defendants' complaint is. It certainly doesn't warrant a motion to dismiss. They can ask for more information during discovery if they like, and Plaintiffs will gladly oblige.

## VII.  PLAINTIFFS' ALLEGATION OF RECKLESS ENDANGERMENT FAILS TO STATE A CLAIM FOR RELIEF.

Our allegations were clear, concise, pointed and specific. But here, Airline Defendants act as if they never read one page of our 156 page Complaint.

It IS reckless to distribute emergency-use-only medical devices and force passengers to use them against their will, knowing they damage human health in at least 68 ways. **EX. 08**. It's a shame Airline Defendants have not been criminally charged for their masking policies. But they certainly should not be cleared from reckless conduct brought in a civil tort under CALIFORNIA law.

In *Ayers v. Jackson Tp.*, 525 A. 2d 287 - NJ: Supreme Court 1987, the Supreme Court overturned the lower courts and required the Plaintiffs to be awarded significant damages for endangerment.

It should seem obvious that endangerment exists as a criminal charge as does conspiracy to violate a person's human rights (see 18 U.S.C. § 241) and we would

hope that U.S. prosecutors would bring the perpetrators to justice for criminal violations, which should include jail time. Unfortunately, we do not have that power.

We brought the civil conspiracy charges here and the civil tort charges of endangerment and/or recklessness. This is self-explanatory. There was no need to include this in a motion to dismiss.

We therefore request that this honorable Court discard this argument in its entirety.

## VIII.  THERE IS NO VIABLE CLAIM FOR PRACTICING MEDICINE WITHOUT A LICENSE.

This is another tort claim, since Airline Defendants have been forcing their passengers, upon instruction by the federal agencies to wear masks for medical purposes, IN ORDER TO PREVENT COVID INFECTIONS FROM SPREADING.

And yet, all of the evidence that we provided — more than 228 exhibits, nearly all of which are published by licensed medical doctors and most of which constitute peer-reviewed scientific studies and medical articles (https://lucas.travel/masksarebad/) — demonstrate that the theories set forth by Airline Defendants and federal agencies were all unequivocally false, and showed that masking did not and cannot reduce COVID-19 spread, but instead, wearing them harms human health. These are not anecdotal arguments about whether or not to place a band aid on an open wound. They speak directly about and challenge the credibility of the narrative that Airline Defendants blindly accepted from federal agencies and illegally enforced, quite apart from and in the absence of any "federal law" which might have otherwise required them to do, which made it onerous, exhausting and hellish for Plaintiffs and hundreds of thousands of other disabled Americans to breath air while traveling considerable distances for extended periods of time, over the course of the past two and a half years.

Airline Defendants cannot duck their liability for practicing medicine without a license by throwing up their hands and claiming they "are merely implementing the

FTMM," any more than guards at Auschwitz-Birkenau, Treblinka or Sobibor extermination camps could claim "we were merely following orders." The Jewish people have been there and done that. Enough! Four of the five Plaintiffs in this lawsuit are Jews! Airline Defendants don't get to follow illegal orders and get off scot-free, at the expense of Plaintiffs' health and constitutional rights enshrined in United States codes of law.

The Airline Defendants' employees have no medical license to order passengers to obstruct our breathing, causing numerous harms to human health. Defendant Airlines don't have a medical license to demand others suffer to mitigate the fear and anxiety of those paranoid about catching COVID-19. Airline employees are not competent or appropriately qualified physicians or other healthcare professionals able to evaluate who can and who cannot medically tolerate covering their nose and mouth.

It's a matter of common sense that doctors write prescriptions for medical devices, not airlines. The Airline Defendants have no power to overrule medical opinions and diagnoses issued by Plaintiffs' family physicians. Any human being should be able to freely choose to accept medical risks for the alleged benefit of others; they cannot be compelled by Airline Defendants. We don't harvest organs without consent, even if it would save many lives.

We, the passengers, should be entitled to listen to the licensed doctors that we trust, and not be forced to listen to the unlicensed bureaucrats and corporate lackeys, who have no real knowledge in this field, as most of their decisions seem to have been politically or financially motivated.

Airline Defendants mandated that a disabled passenger needing a mask waive undergo a health screening with a contracted doctor / hired-gun by the airline (STAT-MD and MEDAIRE vendors/consultants). And yet, by law they may also not "require a third-party medical consultation, except if there is a legitimate medical reason for believing that there has been a significant adverse change in the passenger's condition since the issuance of the medical certificate." 14 C.F.R. § 382.23(d).

Arguments from Airline Defendants in this section, invented out of thin air by lawyers with a law degree who are also non-doctors, should not merit granting a motion to dismiss. We ask this court to deny this motion of Airline Defendants.

## IX.   PLAINTIFFS FAILS TO STATE A CLAIM FOR INVASION OF PRIVACY.

Defendant Airlines purport to allege that our claim has no merit. Defendants Airlines then proceed with their modus operandi by saying, "Surely, Plaintiffs would complain if the Airline Defendants refused to consider a mask exemption request and instead required all passengers to wear a mask." Let us stick to what happened, not what to Defendants think we would have done had no mask waivers been given. Our Complaint was filed because laws were broken.

What actually happened was, "EITHER YOU SHOW ME YOUR MEDICAL INFORMATION OR YOU'LL NOT BE ALLOWED TO FLY." This is exactly why we filed our Complaint. Airline Defendants forced disabled Americans to provide medical information as a condition if we wanted to fly, but never asked the same from non-disabled Americans who had no trouble masking. In these United States of America which we all grew up in, we all came to recognize this activity as "discrimination on the basis of a disability," and for this, our lawmakers enshrined into law, protections against the invasion of our medical privacy.

It is nothing short of egregious for the Airline Defendants to invade our privacy by forcing us to disclose sensitive medical conditions in futile efforts to obtain a disability waiver, while claiming that it was part of their "air carrier services." Neither air carriers nor the service they provide allows them to fly above the law. In no way did Congress ever imagine airlines acting as doctors and evaluating passengers' medical claims as part of an airline's "service."

As to Airline Defendants' demands to compel Plaintiffs to hand over medical exemptions for them to pass on to 3rd party vendors who are not our doctors, with all

due respect, these are an illegitimate demands which represent gross intrusions into privacy for unnecessary medical information and unrequested second and/or third opinions. Most of the Plaintiffs provided the Airlines with medical documents attesting to our disabilities, related to respiratory problems and limitations in the psychological field, out of courtesy in what quickly became vain hopes of being allowed to fly.

It should have been entirely possible for Airline Defendants to be satisfied with the statement of the human being declaring his or her disability with the understanding that everything is ultimately subject to the principles of human dignity, which are enshrined in U.S. Law. In the end, there is a harm to a person's dignity if you start rummaging through his or her disability. There is a violation of a person's dignity here if you start to examine whether or not his or her disability is severe enough to be given permission to board an aircraft outfitted with the worlds most advanced air-filtration systems designed to protect passengers from harmful pathogens. Rummaging through our disabilities as they have done snatches away our dignity, and not just for the day of travel, but forever.

As we wrote in our Complaint, "Medical information is confidential and private under Calif. Const. Art. I § 1: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." There is no conflict here with federal law, nor could such a thing even exist.

We believe this honorable Court should deny Airline Defendants' motion to dismiss and allow both sides to litigate this issue properly.

## X.   THE CLAIMS FOR DECEPTIVE AND MISLEADING TRADE PRACTICES AND FRAUDULENT MISREPRESENTATION ARE PREEMPTED BY THE AIRLINE DEREGULATION ACT OR BARRED BY THE LACK OF A PRIVATE RIGHT OF ACTION TO ENFORCE 49 U.S.C. § 41712.

First, we believe that the constant confusion of Airline Defendants mixing responses of the various counts is confusing and should perhaps be considered by us as a case of "shotgun pleading." Arguments should be organized and coherent. We are inexperienced Pro Se litigants and we have found this entire motion to often be impossible to understand. It seemed difficult to navigate much of their motion and its arguments. These are seasoned attorneys who should be required to do a better job. On this basis alone, this honorable Court should reject their entire motion to dismiss.

In their argument, Airline Defendants did not have much of a response at all, and so they reverted back to their flawed argument that ACAA preempts everything, and anything related is abolished. We responded above with a correct counter-argument, and do not feel it is wise to trouble this honorable Court by repeating it, but suffice it to say that we have clearly revealed how Airline Defendants have now successfully branded deceptive and misleading trade practices and fraudulent misrepresentation.

Just one way this was achieved was with the Airline Defendants falsely representing on their website, in e-mails to passengers and on signage at airports, etc., that "federal law" required airline passengers wear facemasks. But Congress has never enacted such a law. An *ultra vires*, unenforceable mandate from CDC and TSA is not a "federal law" enacted into the U.S. Code.

The fraudulent misrepresentation of Defendant Airlines also involves their false claims that masks are effective in reducing the spread of COVID-19, which thousands of scientists and doctors have thoroughly discredited. https://bit.ly/masksarebad.

We ask the Court therefore, to reject Airline Defendants' argument, and deny their entire motion.

## XI.   THERE IS NO CONSTITUTIONAL RIGHT TO TRAVEL DOMESTICALLY BY AIRCRAFT.

We beg to differ with Airline Defendants absurd postulate that no person has a

1   constitutional right to travel domestically by aircraft.

2       Congress has declared flying is a public right, not a privilege, especially for

3   those with disabling medical conditions such as is with Plaintiffs.

4           "A citizen of the United States has a public right of transit through the

5           navigable airspace. To further that right, the Secretary of Transportation

6           shall consult with the Architectural and Transportation Barriers Compliance

7           Board … before pre-scribing a regulation or issuing an order … that will

8           have a significant impact on the accessibility of commercial airports or

9           commercial air transportation for handicapped individuals." 49 U.S.C. §

10          40103.

11      The federal guarantee of interstate travel prohibits "the erection of actual

12  barriers to interstate movement" such as a prohibition of using the public airspace due

13  to disability as alleged here. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263,

14  113 S.Ct. 753, 759, 122 L.Ed.2d 34 (1993), citing U.S. Const. Art. IV, § 2.

15          "The constitutional right to travel from one State to another, and necessarily

16          to use … instrumentalities of interstate commerce in doing so, occupies a

17          position fundamental to the concept of our Federal Union. It is a right that

18          has been firmly established and repeatedly recognized." *United States v.*

19          *Guest*, 383 U.S. 745 (1966), citing *United States v. Price,* (383 U.S. 787

20          (1966)).

21      The government doesn't control when citizens may travel, for what purpose, or

22  using what mode. This right is reserved to the people by the Constitution.

23          "That the right to international travel is deeply woven into our history and

24          tradition is hard to deny. The Magna Carta established that it 'shall be

25          lawful for any man to leave and return to our kingdom unharmed and

26          without fear, by land or water, preserving his allegiance to us, except in

27          time of war … for the common benefit of the realm.' … To permit the

28          government power to deny its citizens access to the outside world without a

*Case # 2:22-cv-02383-SSS-ASx*          -34-          PLAINTIFFS' MEMORANDUM IN
                                                      OPPOSITION TO AIRLINE DEFENDANTS'
                                                      MOTION TO DISMISS

strong reason to do so seems inimical to the liberty that is every American's birthright. … the right to international travel is implicit in the basic liberty protected by due process. …" *Maehr v. Dep't of State*, 5 F.4th 1100, 1108-09 (10th Cir. 2021), cert. denied 142 S.Ct. 1123 (2022), at 1110-12 (internal citations omitted).

Courts are —

"…tasked with upholding the Constitution and redressing fundamental rights because – no matter how dire the crisis – constitutional protections remain commandments, not suggestions. … just because COVID-19 continues to linger, that is not an invitation to 'slacken … enforcement of constitutional liberties.'" *Air Force Officer v. Austin*, No. 5:22-cv-9, 2022 WL 468799 (M.D. Ga. Feb. 15, 2022).

"Freedom to leave a country or a hemisphere is as much a part of liberty as freedom to leave a State." *Shachtman v. Dulles*, 225 F.2d 938, 944 (D.C. Cir. 1955) (Edgerton, J., concurring).

"[I]t is difficult to see where, in principle, freedom to travel outside the United States is any less an attribute of personal liberty. … Personal liberty to go abroad is particularly important to an individual whose livelihood is dependent upon the right to travel…" *Bauer v. Acheson*, 106 F. Supp. 445, 451 (D.D.C 1952).

"[A] citizen's right to be in the United States is obstructed if he or she cannot travel to the United States from an international destination. … As the Court has previously observed, interstate and international travel are increasingly seamless, and we can no longer reasonably view interstate and international travel as discrete and separable activities." *Mohamed v. Holder*, 266 F. Supp. 3d 868, 878 (E.D. Va. 2017).

"Although there are viable alternatives to flying for domestic travel within the continental United States such as traveling by car or train, the Court

disagrees with Defendants' contention that international air travel is a mere convenience in light of the realities of our modern world. Such an argument ignores the numerous reasons that an individual may have for wanting or needing to travel overseas quickly such as the birth of a child, the death of a loved one, a business opportunity, or a religious obligation. … The Court also disagrees with Defendants' assertion that all modes of transportation must be foreclosed before any infringement of an individual's due-process right to international travel is triggered. … The Court concludes international travel is not a mere convenience or luxury in this modern world. Indeed, for many international travel is a necessary aspect of liberties sacred to members of a free society." *Latif v. Holder*, 28 F. Supp. 3d 1134, 1148 (D. Or. 2014).

## CONCLUSION

In conclusion, perhaps some parts of our Complaint were not well pleaded, but this does not warrant a dismissal before litigation. Accordingly, it is our humble request before this honorable Court to deny the arguments set forth by Airline Defendants, deny the entire motion to dismiss and allow both sides to have their constitutionally guaranteed due process to move forward, analyze and attack issue by issue. We further humbly request the Court to schedule discovery, and allow each side to argue and present their case at a fair and thorough trial, in order to litigate these issues that neither our generation nor any generation in the history of these United States, or even the world, have ever had to litigate before.

/ /

/ /

/ /

/ /

/ /

Respectfully submitted this 8th day of August 2022.

By:  /s/ *Uri Marcus*

Uri Marcus, lead plaintiff, *Pro-Se*
P.O. Box 126
Ojai, CA 93024
Telephone: 909-833-0065
E-Mail: uri@ntcf.org

By:  /s/ *Yvonne Marcus*

Yvonne Marcus, plaintiff, *Pro-Se*
P.O. Box 126
Ojai, CA 93024
Telephone: 909-833-0065
E-Mail: adi@ntcf.org

By:  /s/ *Avrohom Gordon*

Avrohom Gordon, plaintiff, *Pro-Se*
2251 State Route 222
New Richmond, OH  45157
Telephone: 513-734-1770
gordon.avrohom@gmail.com

By:  /s/ *Devorah Gordon*

Devorah Gordon, plaintiff, *Pro-Se*
2251 State Route 222
New Richmond, OH  45157
Telephone: 513-734-1770
devorahlgordon@gmail.com

By:  /s/ *Cindy Russo*

Cindy Russo, plaintiff, *Pro-Se*
22485 Breakwater Way
Santa Clarita, CA  91350
Telephone: 908-797-8066
cjrz123@gmail.com

Pursuant to L.R. 5-4.3.4(a)(2)(i), the filer of this document hereby attests that all other signatories listed above, and on whose behalf the filing is submitted, concur in the filing's content and have authorized this filing.