**URI MARCUS**
P.O. Box 126
Ojai, CA  93024
Telephone:  909-833-0065
email: uri@ntcf.org

*Pro Se*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| URI MARCUS, YVONNE MARCUS, AVROHOM GORDON, DEVORAH GORDON & CINDY RUSSO,<br><br>Plaintiffs,<br><br>v.<br><br>CENTERS FOR DISEASE CONTROL & PREVENTION, DEPARTMENT OF HEALTH & HUMAN SERVICES, TRANSPORTATION SECURITY ADMINISTRATION, JULIE CARRIGAN, ALASKA AIRLINES, ALLEGIANT AIR, AMERICAN AIRLINES, DELTA AIR LINES, FRONTIER AIRLINES, HAWAIIAN AIRLINES, SOUTHWEST AIRLINES, UNITED AIRLINES, YET-TO-BE-NAMED EMPLOYEES OF THE 8 AIRLINES, STAT-MD, & MEDAIRE,<br><br>Defendants, | Case No.: 2:22-cv-02383-SSS-ASx<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MEDICAL DEFENDANT MEDAIRE INC.'S MOTION TO DISMISS PURSUANT TO LOCAL RULE 7-9**<br><br><br><br>Hearing Date: **September 28, 2022**<br>Time: **9:00 a.m.**<br>Via Zoom Video Conference<br>**The Hon. Sunshine Suzanne Sykes** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... iv

      CASES ........................................................................................iv

      STATUTES .................................................................................vii

      OTHER AUTHORITIES .................................................................viii

I.      PRELIMINARY STATEMENT AND INTRODUCTION ....................... 1

II.     STATEMENT OF FACTS .......................................................... 3

III.    LEGAL STANDARD ................................................................ 6

      A.    Motion to Dismiss pursuant to Federal Rule of Civil Procedure
           12(b)(6), namely "if it is clear that no relief could be granted
           under any set of facts that could be proved consistent with the
           allegations." ......................................................................... 6

      B.    Motion to Dismiss pursuant to Federal Rule of Civil Procedure
           12(b)(2), namely that "the plaintiff bears the burden of establishing
           that [personal] jurisdiction exists." .................................................... 7

IV.    ARGUMENT ........................................................................ 7

      A.    Count XX against MedAire alleging conspiracy to violate
           civil rights under 42 U.S.C. § 1985(3) fails to state a claim
           because the allegations of conspiracy are entirely conclusory,

Plaintiffs are not part of a protected class, and MedAire did not have any involvement with Plaintiffs...........................7

i.    Elements of a cause of action under 42 U.S.C. §1985(3) ..........8

ii.   Plaintiffs fail to adequately allege the existence of a conspiracy.................................................................9

iii.  Plaintiffs are not part of a protected class ...............11

iv.   Plaintiffs fail to allege any acts by MedAire in furtherance of the alleged conspiracy that caused the Plaintiffs' harm.......17

B.    Count XXXIX for medical malpractice fails to state a claim because MedAire never interacted with Plaintiffs and the claim is in any event preempted by the Airline Deregulation Act ................................................................18

i.    Plaintiffs fail to state a claim for medical malpractice.............19

ii.   The ADA preempts Plaintiffs' medical malpractice claim ......20

C.    This Court may not exercise personal jurisdiction over MedAire because MedAire has no connection to the lawsuit and is not domiciled in California................................................................20

i.    MedAire is not subject to general jurisdiction in California.................................................................20

ii.   MedAire is not subject to specific jurisdiction in California for Plaintiffs' claims.............................................21

D.    Plaintiffs should not be given leave to amend, as doing so would be futile.................................................................23

V.    CONCLUSION .........................................................25

# TABLE OF AUTHORITIES

*Cases*                                                                        *Page*

*Azar v. Conley*
 456 F.2d 1382 (6th Cir. 1972). ................................................................. 13, 17

*Bell Atlantic Corp. v. Twombly*
 550 U.S. 544, 555 (2007) ................................................................................. 2

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*
 —— U.S. ——, 137 S. Ct. 1773, 1779, 198 L.Ed.2d 395 (2017) ................. 22

*Cameron v. Brock*
 473 F.2d 608 (6th Cir. 1973) ............................................................. 13, 14, 17

*Daimler AG v. Bauman*
 571 U.S. 117, 125, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014) ....................... 22

*Disabled Patriots of America, Inc. v. City of Trenton*
 Civil Action No.: 07-CV-3165(FLW), 4-5 (D.N.J. Sep. 24, 2008)................ 5

*Farber v. City of Paterson*
 440 F. 3d 131 - Court of Appeals, 3rd Circuit 2006.................................... 15

*Ford Motor Co. v. Montana Eighth Judicial District Court*
 592 U.S. ___ (2021) ......................................................................... 21, 22, 23

*Gerritsen v. de la Madrid Hurtado*
 819 F.2d 1511, 1519 (9th Cir. 1985) ......................................................... 12, 13

*GJR Invs., Inc. v. Cnty. of Escambia, Fla.*
 132 F.3d 1359 (11th Cir. 1998) ...................................................................... 1

*Glasson v. City of Louisville*
 518 F.2d 899, 912 (6th Cir.), cert. denied, 423 U.S. 930, 96 S.Ct. 280, 46
 L.Ed.2d 258 (1975)................................................................................. 12, 14

*Griffin v. Breckenridge*
 supra at 102, 91 S.Ct. at 1798...................................................................... 13

*Hanson v. Denckla*

357 U.S. 235, 253 ....................................................................... 22

*Harrison v. Brooks*
    446 F.2d 404 (1st Cir. 1971) ..................................................... 17

*International Shoe Co. v. Washington*
    326 U.S. 310, 316–17, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ........................... 22

*Keating v. Carey*
    706 F.2d 377, 386-87 (2d Cir.1983)............................................ 12

*Lake v. Arnold*
    112 F. 3d 682 - Court of Appeals, 3rd Circuit 1997.............................. 14, 16

*LeBlanc-Sternberg v. Fletcher*
    67 F.3d 412, 427 (2d Cir.1995) ................................................ 11

*Life Ins. Co. of North America v. Reichardt*
    591 F. 2d 499 - Court of Appeals, 9th Circuit 1979............................. 16, 17

*Lujan v. Defenders of Wildlife*
    504 U.S. 555, 560 (1992) (internal citations and quotations omitted) ........... 5

*Means v. Wilson*
    522 F.2d 833 (8th Cir. 1975) .................................................. 17

*Richardson v. Miller*
    446 F.2d 1247 (3d Cir. 1971) .................................................. 13

*Schultz v. Sundberg*
    759 F.2d 714, 718 (9th Cir.1985) .............................................. 12

*Snowden v. Hughes*
    321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944) ................................. 13

*States v. Rubin*
    844 F.2d 979, 984 (2d Cir.1988) ............................................... 11

*Thomas v. Roach*
    165 F. 3d 137 - Court of Appeals, 2nd Circuit 1999 ............................ 11

*Twining v. New Jersey*

211 U.S. 78, 97 (1908) ....................................................................... 9

*Voigt v. Savell*

70 F.3d 1552, 1564 (9th Cir. 1995) ............................................. 12

PLAINTIFFS' MEMORANDUM IN
OPPOSITION TO MEDICAL DEFENDANT
MEDAIRE INC'S MOTION TO DISMISS

*Statutes*                                                                        *Page*

42 U.S.C. § 1985(3)........................................... 7, 8, 9, 12, 13, 14, 15, 16, 17

1

***Other Authorities***                                                              ***Page***

Air Carrier Access Act [ACAA] ............................................................. 19, 20

Airline Deregulation Act (ADA) .................................................................. 20

Americans With Disabilities Act .................................................................. 14

Cal. Civ. Proc. Code § 410.10 ..................................................................... 22

F.R.C.P. § 12(b)(2) ......................................................................................... 7

F.R.C.P. § 12(b)(6) ......................................................................................... 6

U.S. Constitution ..................................................................................... 21, 22

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I. PRELIMINARY STATEMENT AND INTRODUCTION

In their Motion to Dismiss, Medical Defendant MEDAIRE INC. [hereinafter "MDMI"] does not once deny violating laws or engaging in a nationwide conspiracy together with Airline Defendants and federal agencies to deprive disabled travelers of civil rights. Instead, they endeavor to escape liability and side step having to litigate our Complaint by citing supposed legal technicalities, which they believe allows the industry of which they are a part, to fly above the law. The Court should therefore force MDMI to file an Answer, and allow this case to proceed into discovery so the true depth of the conspiracy can be ascertained.

From November 2020 to April 2022, MDMI participated together with Airline Defendants illegally in a discrimination campaign against Plaintiffs who held medical exemptions issued by their doctors, owing to their disabilities by coming up with a scheme to deny virtually all requests for mask exemptions or by including numerous illegal and onerous hoops that Plaintiffs had to jump through to get a waiver. This effectively banned Plaintiffs from using all forms of public transportation.

Plaintiffs Uri Marcus and Yvonne Marcus were at all times exempt under these guidelines issued by the CDC, but were nevertheless discriminated against and as a direct consequence of the actions that would imminently be taken by MDMI, and were thus prevented from flying.

Accordingly, there is no clear-cut reason the Court should dismiss the case against them, but rather the Court should give each side an opportunity to start discovery and actually litigate the case.

A Florida Circuit Court wrote, "In ruling on motion to dismiss for failure to state claim, courts do and should show leniency to pro se litigants not enjoyed by those with benefit of legal education;" *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359 (11th Cir. 1998).

We understand the need to state a claim upon which relief can and should be granted. We have presented a strong case in our Complaint and this includes our

claims against MDMI that are real claims that cannot be shuffled off the table simply because this Medical Defendant doesn't feel that enough evidence has been collected against it at this juncture. "Rule 8(a) only requires that the allegations "be enough to raise a right to relief above a speculative level." [*Bell Atlantic Corp. v.*] *Twombly*, 550 U.S. 544, 555 (2007).

We believe that we are entitled to our day in court, and therefore humbly ask this honorable Court to facilitate this reality.

Imagine if airlines decided to hire a special agency that will be responsible to decide if **(1)** a passenger gets a wheelchair, **(2)** which passengers can have pre-boarding, and **(3)** who can take onboard an animal required for their disability. That agency is not the airline, but the airline refers all the decisions to them. When the regulatory agencies and/or courts try to get involved, because the agency is barring every third request, the airline ducks and says, "We have nothing to do with that. Speak with the agency we hired. The consultant agency then retorts, "We are not an airline. We are not responsible; we don't even reside in your state.

That is precisely what happened here. Fortunately, this Court is a fair, honest and decent court, and we do not believe it will fall for this "pass-the-blame" game. There does in fact exist a wide-ranging conspiracy, and as Plaintiffs, we suffered significantly from it, precisely because MDMI's actions are central to the discriminations carried out by Defendant Airlines.

MDMI claims they have nothing to do with our Complaint. MDMI is trying to distract this honorable Court, asserting that they're only listed in TWO counts. They then try to address ONLY those counts. But nothing could be further from the truth.

MDMI was a major player and component, contracted by Defendant Airline Hawaiian Airlines. MDMI was at the very center of Hawaiian Airline's discrimination operation. Every violation of rights or of law that the Defendant Airline participated in, MDMI was the "key in the lock" that opened the door, and supported and implemented the discrimination. In fact, the discrimination and violation of laws could

1    not have been possible without this Medical Defendant's role.

2         When we wrote a cause of action directed at an Airline Defendant or

3    Defendants, we include MDMI as an integral part of those violations. We wrote, "The

4    final defendants are STAT-MD and MedAire (the "Medical Defendants"), two

5    medical vendors who evaluate mask-exemption demands for most of the Airline

6    Defendants." [DKT. 1 at ¶7]. THEY WERE THE HIRED GUNS.

7         Accordingly, Plaintiffs now respond in opposition to MDMI's motion to

8    dismiss, countering point by point as follows:

9

10                         **II. STATEMENT OF FACTS**

11        MDMI stated in their "Statement of Facts" that "…a review of the entire 156-

12   page Complaint reveals no allegation of involvement by MedAire, nor does it even

13   include an allegation that the Marcus Plaintiffs purchased these tickets. To the

14   contrary, the Marcus Plaintiffs allege only they "booked" these round trip tickets"

15        MDMI seems to be suggesting that Plaintiffs are just testers when it comes to

16   Hawaiian Airlines, which was the airline that contracted the services of MDMI. They

17   are insinuating that there was no injury in fact, since there wasn't any concrete plans to

18   follow through on an intent to travel specifically with Hawaiian Airlines, because

19   Plaintiffs did not buy tickets on Hawaiian Airlines.

20        Plaintiffs showed very clearly that they were not testers, and they did in fact

21   purchase tickets on other airlines just as MDMI writes in their own motion to dismiss:

22        "…see also ECF No. 1 at ¶75 (Uri and Yvonne Marcus "purchased"

23        roundtrip tickets from United Airlines); ¶81 ("purchased" a one-way ticket

24        from American Airlines); ¶88 ("purchased" roundtrip tickets from Delta

25        Air Lines); ¶92 ("purchased" a one-way ticket from Alaska Airlines); ¶100

26        ("purchased" two one-way tickets and one roundtrip ticket from Southwest

27        Airlines)." DKT. 91 at 4, footnote 1.

28        Plaintiffs do not have unlimited funds and cannot buy tickets on every airline, as

they call around to find a carrier serving a specific route which will allow them to fly in spite of their disabilities. It often takes a long time to get that money refunded if cancelled. How many tickets are Plaintiffs expected to purchase? Is $7,551.06 in airline ticket purchases from January 14 to March 11, 2022 insufficient to demonstrate Plaintiffs' intent to fly? **EX. 01**. At some point, Plaintiffs had to stop paying for tickets and just contact the airlines directly and hope they would follow the law. If the airline had said it's okay to travel, Plaintiffs would have bought the Hawaiian tickets immediately. In no way were Plaintiffs any less interested in traveling. Hawaiian told Plaintiffs that they could not fly precisely because of their disabilities, based on the contract Hawaiian maintained with MDMI as communicated to Plaintiffs. Why would we purchase tickets for flights we would not be allowed to board because of our disabilities? Any airline that would have allowed us to fly without a face covering, we would have flown. But MDMI stood and blocked that path to board their aircraft, and would have made no exceptions for us. We were told by the other airlines from which we did purchase tickets that we could not fly unless we agreed to allow them to practice discrimination against us in one form or another.

Moreover, the concept of a tester is usually affiliated with an organization and with lawyers. We come here Pro Se, filing a lawsuit that we never wanted to file, dealing with a horrible situation that we never dreamed could be possible in a western society with such a strong emphasis on human rights.

Plaintiffs sustained imminent injury from MDMI through its role in the conspiracy, aiding an abetting the airline, just as a key aids in unlocking a door. The injury was never speculative, never conjectural and never hypothetical. It was particularized and imminent; likely not speculative. All Plaintiffs had to do was show up the departure gate. Being denied boarding would have been guaranteed, not merely hypothetical, after packing, traveling to the airport, checking in their luggage, passing through security and arriving at that gate with paid tickets and boarding cards in hand. The gate agent would have placed a phone call to MDMI, who would likely, not just

speculatively have said, "These passengers cannot board without a mask." The gate agent would have no choice but to deny Plaintiffs boarding, forcing them to cancel their flight and their plans. The airline would have offloaded their luggage. Plaintiffs would then return home and wait two weeks minimum to receive their refund, and all because MDMI was predisposed to imminently, not conjecturally discriminate against them owing to their disabilities.

> "In order to set forth a viable claim in federal court, a plaintiff is required to satisfy both the Article III constitutional minimum of a "case or controversy" and any prudential considerations set by the courts. See Clark v. Burger King Corp., 255 F. Supp. 2d 334, 341 (D.N.J. 2003). To satisfy Article III standing, a plaintiff must demonstrate he/she has (1) suffered an injury in fact that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of, that the injury has to be fairly traceable to the defendant's challenged action; and (3) it must be likely as opposed to merely speculative, that the injury will be redressed by a favorable decision. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotations omitted). *Disabled Patriots of America, Inc. v. City of Trenton*, Civil Action No.: 07-CV-3165(FLW), 4-5 (D.N.J. Sep. 24, 2008).

Purchasing a ticket is not a legal requirement to establish discrimination. MDMI discriminated against Plaintiffs Uri and Yvonne Marcus at the moment their client, Defendant Hawaiian Airlines communicated to them that they…

> "…will be required to complete an assessment with a medical professional via phone at the airport. … Please notify one of our Guest Services Agents as soon as you are ready to complete the medical assessment. If you are unable to meet this requirement, we recommend that you reconsider your travel." DKT. 91 at 3, line 8.

When a defendant airline informs plaintiffs that they must undergo a medical assessment carried out by its hired gun, which plaintiffs did not chose to consult with, and their failure to consult with that hired gun will force them to reconsider their travel plans with that defendant airline, both the defendant airline and the hired gun — in this case MDMI — have just conspired to deprive those plaintiffs of their constitutional rights by discrimination, precisely because no other passenger was forced nor would be forced to undergo the same medical assessment, if he or she agreed to don a mask!

We were very clear that MDMI was an essential part of most of the causes of action with which the airlines are being charged in this lawsuit. Wherever MDMI was not fully active in the charge, they certainly aided and abetted and thus participated in the cause of action, which our Complaint addresses.

MDMI insists "there are no claims that tie Medaire to any alleged conspiracy." We disagree, and through discovery we shall obtain compelling proof to present to this honorable Court. MDMI's relationship and role with the airlines must not be marginalized, understated or ignored. MDMI themselves do NOT deny this. They even describe it in their motion to dismiss. DKT. 91 at 3, line 8.

They are the hired guns to run, implement and function as the scapegoats for this conspiracy. Going forward with discovery and trial is the only mechanism to expose the conspiracy. We beg this honorable Court to instruct them put forth their defense.

## III.   LEGAL STANDARD

**A.   Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), namely "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."**

In order for a human being, whether an Attorney or another person to state in a legal brief before this honorable Court that "no relief could be

granted under any set of facts that could be proved consistent with the allegations," that person would have to be clairvoyant, omniscient or a prophet. Discovery is the transport vehicle, which delivers sets of facts that can be proven, consistent with Plaintiffs' allegations. MDMI's statement has no place in a court of law and certainly cannot be considered the basis for a motion to dismiss, unless of course MDMI's attorneys are in fact holy prophets. If true, Plaintiffs in a motion for reconsideration would demand from MDMI's attorneys to provide evidence of their prophetic gifts, in the unlikely case that the Court will grant their motion to dismiss our Complaint.

**B.    Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), namely that "the plaintiff bears the burden of establishing that [personal] jurisdiction exists."**

Plaintiffs, through discovery can and will establish that Specific Personal Jurisdiction exists — as determined by the facts in evidence — when responding to MDMI's argument in section C (ii) [ARGUMENT] below. In fact, Plaintiffs have already established through their initial Complaint, the minimum contacts necessary for that Specific Personal Jurisdiction with the forum in which this honorable Court sits. Plaintiffs, through Discovery, shall also establish subject-matter jurisdiction.

## IV.    ARGUMENT

***A.    Count XX against MedAire alleging conspiracy to violate civil rights under 42 U.S.C. § 1985(3) fails to state a claim because the allegations of conspiracy are entirely conclusory, Plaintiffs are not part of a protected class, and MedAire did not have any involvement with Plaintiffs.***

MDMI attempts to convince us that 42 U.S.C. § 1985(3) is a civil-war era law that does not apply. For them, racism only existed during the period of the civil rights movement, and no longer applies today. This honorable Court knows that this is not the case. We provided a fuller response to this fallacy in our Memorandum in Opposition to Airline Defendant's Motion to Dismiss [DKT. 129 at 6, line 9]. This conspiracy statute is alive and well today. Congress did not limit its application to black people. The law broadly protects "any person or class of persons." Which part of "any class of persons," doesn't MDMI understand?

Congress identified disabled airline passengers as a class of people specifically in need of legal protection. Congressional intent is to protect airline passengers from discrimination, not to empower airline carriers and their hired guns to fly above the law.

If MDMI has no relationship with Plaintiffs, then on what basis do they instruct their client, Defendant Hawaiian Airlines, that Plaintiffs are required "…to complete an assessment with a medical professional via phone at the airport. … If you are unable to meet this requirement, we recommend that you reconsider your travel." DKT. 91 at 3, line 8. Since no relationship exists according to MDMI, we would have been free to board any Hawaiian flight to any destination they fly, without having to reconsider our travel plans when we couldn't safely don a facemask. Clearly, a relationship was in the making, was anticipated and was inescapable. It was an imminent injurious relationship waiting to happen, and all we needed to do was show up at the departure gate, after handing them $5,338 for a round-trip ticket from Los Angeles to Honolulu.

     i.    *Elements of a cause of action under 42 U.S.C. §1985(3)*

42 U.S.C. § 1985(3) provides the basis upon which a claim can

be stated: "…any person or class of persons … deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

There is no doubt that Congress has defined the disabled as a minority and disadvantaged class of people deserving the equal protection of the laws, including to be free of class-based discrimination. And there can be no doubt that MDMI during the COVID-19 pandemic targeted countless people with a medical condition who could not safely wear a facemask — as Hawaiian's hired guns — for discrimination by telling them to "reconsider your travel," with Hawaiian.

Removing rights of the disabled because someone else is afraid wasn't the answer. They could have done better by informing those passengers gripped by fear of the effectiveness of advanced air filtration systems aboard their aircraft, and then giving THEM a choice to stay home with a refund. That would have protected the civil and human rights of all passengers!

ii.   *Plaintiffs fail to adequately allege the existence of a conspiracy*

The conspiracy here involves the constitutional right to travel, for which no other remedy exists except a lawsuit under 42 U.S.C. § 1985(3). "The right to pass freely from State to State has been explicitly recognized as among the rights and privileges of National citizenship." *Twining v. New Jersey*, 211 U.S. 78, 97 (1908). "That right, like other rights of national citizenship, is within the power of Congress to protect by appropriate legislation." *Id. at 105-106*. If

MDMI wishes to argue that Plaintiffs do have a Constitutional right to travel, but do not have the Constitutional right to travel via Hawaiian, then the same dictum must also apply to all U.S. Citizens who were not medically disabled and can don a mask. They too could have traveled by other means, in which case MDMI would have had no reason to single us out and force disabled passengers like us to make other plans, other than flying onboard Hawaiian's scheduled flights.

Plaintiffs allege that MDMI conspired together with airline defendants along with the federal agencies involved, to discriminate against them due to their disabilities. That was very clear in our Complaint.

MDMI suggests there is no clear evidence of them conspiring together, for example, a taped conversation where they are heard discussing between each other who would board an aircraft and who would not. But the statute does not require this. If you see five members of a neo-Nazi skinhead white supremacist group walking down a street with clubs in their hand, and they find and beat up a Jew, do we need to hear them on tape conspiring to get together and beat that Jew in order to claim conspiracy?! Of course not!

The same is true for MDMI together with their client Defendant Hawaiian Airlines. They all orchestrated their activities like a professional symphony orchestra, carefully including the federal agencies that govern them, colluding and conspiring to discriminate against Plaintiffs and those similarly situated. They acted precisely in the same manner as those neo-Nazi skinhead white supremacist bullies, and now they want the courts to support them, as they cry out "You have no clear proof or evidence!"

*Thomas v. Roach*, 165 F. 3d 137 - Court of Appeals, 2nd Circuit 1999, said, "A conspiracy 'need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct.' *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir.1995) (quoting United *States v. Rubin*, 844 F.2d 979, 984 (2d Cir.1988))." If MDMI does not show "a tacit understanding to carry out the prohibited conduct," then no one in history ever did and no one in the future ever will. In any test of reality however, our case is a classic case of conspiracy.

It will unquestionably require discovery for Plaintiffs to reveal the exact depth of the conspiracy, and uncover the clear and convincing proof and evidence, in light of the extensive facts we have already laid out in our Complaint.

### iii.   *Plaintiffs are not part of a protected class*

There is no doubt that conspiring to prevent all disabled passengers from flying who can't safely wear a mask, constitutes an invidious discrimination against a protected minority.

The class-based animus alleged is about an unprecedented, difficult to believe animus, obvious in our Complaint and in dozens of other complaints and news stories, against people with specific disabilities that do not allow them to safely don masks. While it isn't the Plaintiff's responsibility to determine the source of this animus, it is possible that the political divide in the country between pro-maskers and anti-maskers caused them to have animus towards the mask disabled, as they couldn't and did not refuse to differentiate between them and anti-maskers without mask-disabilities.

1      We can certainly get to the bottom of the animus during

2  discovery and depositions, but the fact that there was a specific

3  animus to people like us with a mask related disability was absolute,

4  and so thick that it could be sliced with a knife. The animus was

5  most definitely there and we will prove that animus before and/or

6  during trial.

7      MDMI quoted *Gerritsen v. de la Madrid Hurtado*, 819 F.2d

8  1511, 1519 (9th Cir. 1985); see also *Voigt v. Savell*, 70 F.3d 1552,

9  1564 (9th Cir. 1995). "…the plaintiff must be a member of a class

10 that requires special federal assistance in protecting its civil rights."

11 It would seem that MDMI took the court's words out of context by

12 only presenting the two lines that fit their narrative. If this honorable

13 Court is willing to read on and look at the cited cases, they will show

14 that our class is certainly a more defined class than all Republicans

15 or all antigovernment protestors. When lawyers pick little sentences

16 out of a paragraph, they can convey things in a certain light that may

17 not be an accurate depiction of the court's decision and guidance. It

18 actually reads as follows:

19         "We do note, however, that we have previously held that to

20         state a claim under section 1985(3) the plaintiff must be a

21         member of a class that requires special federal assistance in

22         protecting its civil rights. *Schultz v. Sundberg*, 759 F.2d 714,

23         718 (9th Cir.1985). But see *Keating v. Carey*, 706 F.2d 377,

24         386-87 (2d Cir.1983) (Republicans are a protected class

25         under section 1985(3)); *Glasson v. City of Louisville*, 518

26         F.2d 899, 912 (6th Cir.) (**anti-government protestors are a**

27         **protected class** under § 1985(3)), cert. denied, 423 U.S.

28         930, 96 S.Ct. 280, 46 L.Ed.2d 258 (1975)." *Gerritsen v. de*

1   *la Madrid Hurtado*, 819 F.2d 1511, 1519 (9th Cir. 1987)

2   **(emphasis ours)**.

3   Going back to the above case being quoted, we read,

4   "The United States Supreme Court, in a recent interpretation

5   of this statute, stated: "The language requiring intent to

6   deprive a person of equal protection, or equal privileges and

7   immunities, means that there must be some racial, or

8   perhaps otherwise, class-based, invidiously discriminatory

9   animus behind the conspirators' action." *Griffin v.*

10  *Breckenridge*, supra at 102, 91 S.Ct. at 1798. Although the

11  Court, in that case, refused to decide whether discrimination

12  based on a criterion other than race would be sufficient to

13  establish a cause of action under the Act, its earlier decisions

14  have suggested that this is so, e.g., *Snowden v. Hughes*, 321

15  U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944). Accordingly, this

16  court, in construing the statute, has held that the statutory

17  language does not require that the discrimination be based

18  on race, e.g., *Cameron v. Brock*, 473 F.2d 608 (6th Cir.

19  1973); *Azar v. Conley*, 456 F.2d 1382 (6th Cir. 1972).

20  *Accord, e.g., Richardson v. Miller*, 446 F.2d 1247 (3d Cir.

21  1971). In the *Cameron* case, we affirmed a judgment for

22  plaintiffs in an action brought by a supporter of an

23  incumbent sheriff's opponent who was arrested while

24  distributing campaign leaflets and who charged that his

25  arrest was a part of a conspiracy to deprive him and other

26  supporters of the sheriff's opponent of the equal protection

27  of the laws. In affirming, we held "that § 1985(3)'s

28  protection reaches clearly defined classes, such as

supporters of a political candidate. **If a plaintiff can show that he was denied the protection of the law because of the class of which he was a member, he has an actionable claim under** § 1985(3).” *(emphasis ours)* [*Cameron v. Brock*,] 473 F.2d at 610.” [*Glasson v. City of Louisville*, 518 F.2d 899, 912 (6th Cir. 1975)].

As this honorable Court can see, the courts do not agree with MDMI’s presumption that the 1985(3)-conspiracy statute is old and no longer in use. It is in use and it is very active, albeit limited in scope. That discussion is appropriate to address during discovery and trial, and should not be brought up in a motion to dismiss.

When it comes to defining what exactly is an acceptable class, this Court will need to make that decision, but it is not appropriate in a motion to dismiss. The arguments of case law that MDMI presented was certainly not convincing of their position, if one actually reads those decisions thoroughly.

In *Lake v. Arnold*, 112 F. 3d 682 - Court of Appeals, 3rd Circuit 1997, where a specific group of disabled people were considered a class-based group for this purpose, it says as follows:

“Discrimination based on handicap, including mental handicap, like that based on gender, often rests on immutable characteristics which have no relationship to ability. Where this is the case, we are convinced that the discrimination is invidious and that the reach of section 1985(3) is sufficiently elastic that the scope of its protection may be extended. In reaching this conclusion we are influenced by a number of factors, which lie outside our own conjecture or analysis. We begin with the explicit

statement of Congress itself. In enacting the Americans With Disabilities Act, Congress found that: [I]ndividuals with disabilities are a discrete and insular minority who have been faced with restrictions and limitations, subjected to a history of purposeful unequal treatment, and relegated to a position of political powerlessness in our society, based on characteristics that are beyond the control of such individuals and resulting from stereotypic assumptions not truly indicative of the individual ability of such individuals to participate in, and contribute to, society."

The various Defendants in our case have already presented dozens of cases in unrelated and completely different scenarios, in efforts to convince the Court that there is no current-day application for the 1985(3) conspiracy statute. They went on to say that the statue was for the Ku Klux Klan, and now it is irrelevant. But the courts don't agree. In many cases the courts review the applicability of it and then even when denying it, they do not say it is "because this was from the Ku Klux Klan and is no longer applicable." Rather, they give good clear reasoning specifically why the 1985(3) conspiracy law should not apply in certain specific cases. If it's no longer applicable, the courts would need to say that. We could give several examples of the courts accepting the 1985(3) conspiracy statute, but it the following should suffice:

In *Farber v. City of Paterson*, 440 F. 3d 131 - Court of Appeals, 3rd Circuit 2006 it says, **"the phrase "class-based invidiously discriminatory animus" would confine the authority of this law to the prevention of deprivations which shall attack the equality of rights of American citizens; that any violation of the right, the**

-15-          PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MEDICAL DEFENDANT MEDAIRE INC'S MOTION TO DISMISS

**animus and effect of which is to strike down the citizen, to the end that he may not enjoy equality of rights as contrasted with his and other citizens' rights, shall be within the scope of the remedies of this section *(emphasis ours)*."**

As Plaintiffs in the instant case, this is a perfect match to this description. The animus of the airline together with MDMI, the federal agencies and their respective employees have denied Plaintiffs the equality of rights to travel in every respect and in every reasonable way, due to our disabilities which prohibited us from wearing a mask. And yet, others who could wear a mask flew freely.

As written in *Lake v. Arnold*, 112 F. 3d 682 - Court of Appeals, 3rd Circuit 1997, the Court said, "Our own jurisprudence, informed by the reasoning of our sister court, convinces us that the mentally retarded, as a class, are entitled to the protection afforded by section 1985(3)." If the mentally retarded are entitled to 1985(3) protection in their quest to function in life with their limitations attached, and to pursue happiness in life to fullest of their opportunities and abilities, however diminished, it cannot be that Americans whose disabilities prevent them from masking, and prevents them from breathing — even if that limitation is merely perceived in their minds — that they would also not be afforded the same protection of law, in the same pursuit of happiness in life to fullest of their opportunities and abilities.

By the Court's leave, allow us to present just one more case:

In *Life Ins. Co. of North America v. Reichardt*, 591 F. 2d 499 - Court of Appeals, 9th Circuit 1979, the Court held that "Courts construing § 1985(3) have not limited its protection to racial or otherwise suspect classifications. [16] *Means v.*

*Wilson*, 522 F.2d 833 (8th Cir. 1975) **(political opponents are a sufficient class)** *(emphasis ours)*; *Cameron v. Brock*, 473 F.2d 608 (6th Cir. 1973) **(supporters of a political candidate are a sufficient class)** *(emphasis ours)*; *Azar v. Conley*, 456 F.2d 1382 (6th Cir. 1972) **(a single family is a sufficient class)** *(emphasis ours)*. See also *Harrison v. Brooks*, 446 F.2d 404 (1st Cir. 1971). Reichardt's allegation that an invidiously discriminatory animus was the motivating force behind the disparate policy terms offered to women is thus sufficient to survive a motion to dismiss for failure to state a claim."

MDMI is asking this Court to summarily dismiss this case before it has even leapt off the starting blocks, based on a very one-sided almost blind view of the 1985(3) conspiracy laws. If MDMI's arguments are true, then they will win this case. So, let's proceed and litigate it. The Plaintiffs beg this Court to deny the motion to dismiss and give us five inexperienced Pro Se Plaintiffs an opportunity to prove our case and protect ourselves and other disabled Americans against any possible and likely future discriminations against all discriminated classes of people.

iv. *Plaintiffs fail to allege any acts by MedAire in furtherance of the alleged conspiracy that caused the Plaintiffs' harm*

The act that was perpetrated by MDMI in concert with their client Defendant airline, in furtherance of their "in plane sight" conspiracy was simply this: "Do not bother showing up at the departure gate of our client's departing flight if you have a disability which prevents you from donning a mask. We don't care about that

ticket you purchased. If you do show up, we will not allow you to board or fly. We will instruct our client airline to deny you boarding." Each participant of this conspiracy assisted in this nationwide plan to invalidate disability rights. MDMI's part was to legitimize it and act as the advisory agents to make it all seem kosher and medically necessary. Even an American sixth-grader would not fail to identify this act as one that causes harm. But apparently, trained, seasoned attorneys fail to grasp this indisputable reality.

**B.     *Count XXXIX for medical malpractice fails to state a claim because MedAire never interacted with Plaintiffs and the claim is in any event preempted by the Airline Deregulation Act***

Once again, apparently in search of clever arguments to impress the Court, MDMI's attorney repeats a failed argument: "Our client never interacted with Plaintiffs."

We too can repeat ourselves. If MDMI has no relationship with Plaintiffs, then on what basis do they instruct their client, Defendant Hawaiian Airlines, that Plaintiffs are required "…to complete an assessment with a medical professional via phone at the airport. … If you are unable to meet this requirement, we recommend that you reconsider your travel." DKT. 91 at 3, line 8. Since no relationship exists, according to MDMI, we should have been free to board any Hawaiian flight to any destination they fly, without having to reconsider our travel plans when we couldn't safely don a facemask. Clearly, a relationship was in the making, was anticipated and was inescapable. It was an imminent injurious relationship waiting to happen, and all we needed to do was show up at the departure gate.

i.      *Plaintiffs fail to state a claim for medical malpractice*

If a Plaintiff wishes to assert a claim for medical malpractice against MDMI, it's actually quite simple: Medical malpractice occurs when a medical professional who works for a company like MDMI, through a negligent act or omission — in this case, he "completes a medical assessment" of a patient/passenger, no less by telephone, while you are standing at the departure gate of an airport — and he deviates from standards in his profession by magically concluding that your disability and medical exemption issued by your family physician isn't real, doesn't exist, and cannot be claimed as a means for you to obtain a waiver to travel aboard an airplane without masking, which by the way further harms human beings in countless ways, thereby causing injury to that patient. That level of negligence arises from his errors in diagnosis, his lack of treatment, his lack of aftercare, and his lack of your health management.

More succinctly, this MDMI agent who has no verified legal or medical authority, has not verified medical expertise or speciality, reviews a mask-exemption request submitted by airline clients without ever physically examining the passenger or speaking with his or her physician, and goes on to make a decision to injure the passenger in one way or another by making an arbitrary determination based on a so-called "completes medical assessment" that denies mask exemptions without providing any rationale for his decision-making. The Air Carrier Access Act [ACAA] does not allow MDMI to provide medical consultations to airlines for disability accommodation requests except in very limited circumstances. Those situations do not include mask waivers.

*ii.    The ADA preempts Plaintiffs' medical malpractice claim*

As we presented above, MDMI is an essential part of the airline's crimes, torts and civil violations. They are an essential and central component of all that occurred. Accordingly, the ADA (Airline Deregulation Act) does NOT preempt medical malpractice because there is no conflict between it and the ACAA or any other federal law.

Preempting is only an issue when there is conflict. If the federal government makes laws about speeding, state governments aren't barred from making their own speeding laws so long as they don't conflict with the federal laws. In this case there is no conflict.

**C.    *This Court may not exercise personal jurisdiction over MedAire because MedAire has no connection to the lawsuit and is not domiciled in California***

As amply demonstrated in Plaintiffs' opposition responses to sections I, II, III (A) and (B) and section IV (A) and (B) of MDMI's motion to dismiss, MDMI cannot claim it had "no connection" to our Complaint. As to its claim that this honorable Court cannot exercise specific personal jurisdiction over MDMI because it is not domiciled in California, see section IV (C)(ii) below.

*i.    MedAire is not subject to general jurisdiction in California.*

Out of the 10,057 words contained in MDMI's Memorandum of Law in Support of a Motion to Dismiss the Complaint, these NINE italicized words above, are the ONLY nine words in the entire document that carry any truth. Both Nevada and Arizona have General Jurisdiction over MDMI. California does not.

ii.   *MedAire is not subject to specific jurisdiction in California for Plaintiffs' claims*

Specific personal jurisdiction on the other hand, means personal jurisdiction (i.e., asserts power over a defendant) based on a defendant's contacts with the State of California, and the actions within the State of California where the Court is located. If MDMI regularly commits tortious acts in California from which imminent injury will result, then a plaintiff who will suffer that imminent injury by MDMI's hand, should be given opportunity to demonstrate that a California court has specific personal jurisdiction over the defendant, based on its regular and daily tortious conduct in California. The plaintiff can sue MDMI in California because a California court will have specific jurisdiction over them, based on those regular and daily actions arising out from the State of California where the Court is located, and out from the connection between those contacts and the lawsuit. MDMI took tortious actions intended to imminently take place in California against Plaintiffs while they were in California. Plaintiffs can correctly claim that the forum state has specific personal jurisdiction over MDMI, because of MDMI's contacts within the State, regardless of where MDMI is incorporated, or has their principle place of business.

SCOTUS held in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. ___ (2021) that defendant's contacts with the forum state, were sufficiently related to the litigation, which affirms specific personal jurisdiction over this defendant.

California "allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." *Daimler AG v. Bauman*, 571 U.S. 117, 125, 134 S.Ct. 746,

187 L.Ed.2d 624 (2014); see also Cal. Civ. Proc. Code § 410.10. Under the Fourteenth Amendment's Due Process Clause, "a tribunal's authority depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.' " *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, ⸺ U.S. ⸺, 141 S. Ct. 1017, 1024, 209 L.Ed.2d 225 (2021) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316–17, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). This inquiry "has long focused on the nature and extent of 'the defendant's relationship with the forum state.'" *Id.* (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*, ⸺ U.S. ⸺, 137 S. Ct. 1773, 1779, 198 L.Ed.2d 395 (2017)). And that "focus" has resulted in "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Id.*

"Specific jurisdiction covers defendants less intimately connected with a State, but only as to a narrower class of claims. To be subject to that kind of jurisdiction, the defendant must take "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253. And the plaintiff's claims "must arise out of or relate to the defendant's contacts" with the forum. *Bristol-Myers*, 582 U.S., at ___. Pp. 4–7.

When MDMI suggested that there is no jurisdiction over them simply because they have offices in other states, it fails to recognize that MDMI's violations and actions were undertaken in areas that spanned the entire country, including this jurisdiction where Plaintiffs were to be imminently injured. Our imminent and unavoidable injuries would have come as a direct result of actions taken, advice given, and coordination provided by MDMI. The acts and events, over which Plaintiffs brought this lawsuit, occurred in this district. MDMI was clearly a major part of them. Take MDMI out of the picture, and no injury, imminent or otherwise would ever occur, since the Defendant Airline would have no basis to deny boarding to any passenger without a facemask.

To summarize, an out-of-state defendant may be subject to specific personal jurisdiction if the litigation arises out of or is related to defendant's contact with the forum state. MDMI provided the same type of service in the State of California for Hawaiian Airlines and its passengers. It serviced its contract with the State of California; it authorized Hawaiian to inform the public of their service in the State of California and it benefited from its contacts within the State of California just as these things took place in *Ford Motor Co. v. Montana Eighth Judicial District Court*.

### D. Plaintiffs should not be given leave to amend, as doing so would be futile

Plaintiffs are not asking to amend at this stage. Accordingly there is no need to respond here. However, if Plaintiffs will be so persuaded that it is in their best interests to motion to amend their Complaint, we shall proceed to do so. Regardless, MDMI is not in a position to know what

would be futile or not because, even as a bully, they are not clairvoyant nor do they, as a corporate entity, possess any prophetic abilities.

MDMI purports to allege that our Complaint has no merit and is futile. Yet they miss the irony of their own futility when they said, "EITHER YOU MASK-UP OR YOU'LL NOT BE ALLOWED TO FLY." This is exactly why we filed our Complaint. MDMI together with their contractual partners, forced disabled Americans to provide medical information as a condition, if we wanted to fly, but never set the same condition for non-disabled Americans who had no trouble masking. In these United States of America that we all grew up in, we all came to recognize this activity as "discrimination on the basis of a disability," and for this, our lawmakers enshrined into law, protections against the invasion of our medical privacy and medical coercion.

It is nothing short of egregious for MDMI to invade our privacy by forcing us to disclose sensitive medical conditions in futile efforts to obtain a disability waiver, while their partners-in-crime claimed it was part of their "air carrier services." Neither air carriers nor the service they provide through their hired guns allows them to fly above the law. In no way did Congress ever imagine airlines acting as doctors and unknown vendors evaluating our medical claims as part of an airline's "service."

As to Airline Defendants' demands to compel Plaintiffs to hand over medical exemptions for them to pass on to a 3rd party vendor who was not their doctor, with all due respect, these are illegitimate demands which represent gross intrusions into privacy for unnecessary medical information and unrequested second and/or third opinions. As a matter of courtesy, Plaintiffs Uri and Yvonne Marcus provided Defendant Airlines with medical documents attesting to their disabilities, in what quickly became vain hopes of being allowed to fly.

It should have been entirely possible for Airline Defendants to be satisfied with the statement of the human being declaring his or her disability with the understanding that everything is ultimately subject to the principles of human dignity, which are enshrined in U.S. Law. In the end, there is harm to a person's dignity if you start rummaging through his disability. There is a violation of a persons self-respect here if you start to examine whether or not his or her disability is severe enough to be given permission to board an aircraft outfitted with the worlds most advanced air-filtration systems designed to protect passengers from harmful pathogens. Rummaging through our disabilities as they have done, snatches dignity away, and not just for a day of travel, but forever.

## V.   CONCLUSION

It is our humble request to this honorable Court to allow all sides to have their constitutionally guaranteed due process, by denying the motions to dismiss completely, and allowing the parties to schedule discovery, and permitting each side to argue and present their case at a fair and thorough trial, in order to litigate issues that neither our generation nor any generation in the history of these United States, or even in the world, have ever had to litigate before.

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

1   Respectfully submitted this 9th day of August 2022.

2

3   By: /s/ *Uri Marcus*

4         Uri Marcus, lead plaintiff, *Pro-Se*
          P.O. Box 126
5         Ojai, CA 93024
          Telephone: 909-833-0065
6         E-Mail: uri@ntcf.org

7

8   By: /s/ *Yvonne Marcus*

9         Yvonne Marcus, plaintiff, *Pro-Se*
          P.O. Box 126
10        Ojai, CA 93024
11        Telephone: 909-833-0065
          E-Mail: adi@ntcf.org
12

13  By: /s/ *Avrohom Gordon*

14        Avrohom Gordon, plaintiff, *Pro-Se*
15        2251 State Route 222
          New Richmond, OH  45157
16        Telephone: 513-734-1770
17        gordon.avrohom@gmail.com

18

19  By: /s/ *Devorah Gordon*

20        Devorah Gordon, plaintiff, *Pro-Se*
          2251 State Route 222
21        New Richmond, OH  45157
22        Telephone: 513-734-1770
          devorahlgordon@gmail.com
23

24  By: /s/ *Cindy Russo*

25        Cindy Russo, plaintiff, *Pro-Se*
          22485 Breakwater Way
26        Santa Clarita, CA  91350
27        Telephone: 908-797-8066
          cjrz123@gmail.com
28

*Case # 2:22-cv-02383-SSS-ASx*          -26-          PLAINTIFFS' MEMORANDUM IN
                                                      OPPOSITION TO MEDICAL DEFENDANT
                                                      MEDAIRE INC'S MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Pursuant to L.R. 5-4.3.4(a)(2)(i), the filer of this document hereby attests that all other signatories listed above, and on whose behalf the filing is submitted, concur in the filing's content and have authorized this filing.