**URI MARCUS**
P.O. Box 126
Ojai, CA  93024
Telephone:  909-833-0065
email: uri@ntcf.org

*Pro Se*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| URI MARCUS, YVONNE MARCUS, AVROHOM GORDON, DEVORAH GORDON & CINDY RUSSO,<br><br>Plaintiffs,<br><br>v.<br><br>CENTERS FOR DISEASE CONTROL & PREVENTION, DEPARTMENT OF HEALTH & HUMAN SERVICES, TRANSPORTATION SECURITY ADMINISTRATION, JULIE CARRIGAN, ALASKA AIRLINES, ALLEGIANT AIR, AMERICAN AIRLINES, DELTA AIR LINES, FRONTIER AIRLINES, HAWAIIAN AIRLINES, SOUTHWEST AIRLINES, UNITED AIRLINES, YET-TO-BE-NAMED EMPLOYEES OF THE 8 AIRLINES, STAT-MD, & MEDAIRE,<br><br>Defendants, | Case No.: 2:22-cv-02383-SSS-ASx<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MEDICAL DEFENDANT STAT-MD'S MOTION TO DISMISS PURSUANT TO LOCAL RULE 7-9**<br><br><br><br>Hearing Date: **September 28, 2022**<br>Time: **9:00 a.m.**<br>Via Zoom Video Conference<br>**The Hon. Sunshine Suzanne Sykes** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................iii

    Cases.......................................................................................................iii

    Statutes ...................................................................................................vi

    Other Authorities ...................................................................................vii

PRELIMINARY STATEMENT AND INTRODUCTION ...............................1

I.     STATEMENT OF FACTS.....................................................................3

II.    STANDARD OF REVIEW ....................................................................4

III.   ARGUMENT ..........................................................................................7

    A.   Plaintiffs have failed to set forth facts establishing personal
         jurisdiction over STAT-MD..........................................................7

         1.   STAT-MD is not subject to general jurisdiction in California. ......7

         2.   STAT-MD is not subject to specific jurisdiction in California.......7

    B.   Plaintiffs' medical malpractice claim should be dismissed because
         the Complaint fails to allege a duty arising out of a physician-
         patient relationship ...............................................................15

    C.   Count 20 of Plaintiffs' Complaint should be dismissed because Plaintiffs
         fail to allege a conspiracy or an intent to violate their civil rights........18

IV.  CONCLUSION .........................................................................21

# TABLE OF AUTHORITIES

*Cases*                                                                                   *Page*

*Arnold v. Tiffany*
    487 F.2d 216, 218 (9th Cir. 1974) ........................................................... 19, 20

*Ashcroft v. Iqbal*
    556 U.S. 662, 678 (2009) ...................................................................... 4, 5

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*
    566 F.3d 1012, 1018 (Fed.Cir.2009) .......................................................... 13

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544, 555 (2007) ...................................................................... 2, 4

*Bell Atlantic Corp. v. Twombly, SCOTUS  (No.05-1126)*
    425 F. 3d 99, reversed and remanded ......................................................... 4

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*
    21 F.3d (Fed. Cir. 1994) ......................................................................... 14

*Burger King Corp. v. Rudzewicz*
    471 U.S. 462, (1985) .......................................................................... 12, 13

*Campbell Pet v. Miale*
    542 F.3d 879, 881 (Fed. Cir. 2008) ........................................................... 13

*Coffee v. McDonnell-Douglas Corp.*
    8 Cal. 3d 551, 559, 503 P.2d 1366, 1371 (1972) ........................................... 16

*CollegeSource, Inc. v. AcademyOne, Inc.*
    653 F.3d 1066, 1076 (9th Cir. 2011) ...................................................... 10, 11

*D'Amato v. Wisconsin Gas Co.*
    760 F.2d 1474, 1486 (7th Cir. 1985) .......................................................... 18

*Daimler AG v. Bauman*
    —— U.S. ——, 134 S.Ct. 746, 758 n. 11, 187 L.Ed.2d 624 (2014) ............... 9

*Deprenyl Animal Health v. Univ. of Toronto*
    297 F.3d 1343, 1354 (Fed. Cir. 2002) ......................................................... 13

*Doe v. Unocal Corp.*

    248 F.3d 915, 926 (9th Cir.2001) ................................................................. 10

*Elecs. for Imaging, Inc. v. Coyle*

    340 F.3d 1344, 1350 (Fed. Cir. 2003) ........................................................ 13

*Farber v. City of Paterson*

    440 F.3d 131, 137 (3d Cir. 2006) ............................................................... 19

*GJR Invs., Inc. v. Cnty. of Escambia, Fla.*

    132 F.3d 1359 (11th Cir. 1998) ..................................................................... 1

*Helicopteros Nacionales de Colom. v. Hall*

    466 U.S. 408, 416 (1984), 104 S.Ct. 1868 ................................................... 9

*Lake v. Arnold*

    112 F. 3d 682 - Court of Appeals (3d Cir.1997) ........................................ 19

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*

    66 F. Supp. 3d 813, 824 (E.D. Tex. 2014) ................................................. 12

*Martinez v. Aero Caribbean*

    764 F.3d 1062, 1065 (9th Cir. 2014) .......................................................... 10

*Morley v. Walker*

    175 F.3d 756, 759 (9th Cir.1999) ................................................................. 6

*Ranza v. Nike, Inc.*

    793 F.3d 1059, 1079 (9th Cir. 2015) ...................................................... 9, 10

*Schwarzenegger v. Fred Martin Motor Co.*

    374 F.3d 797, 800 (9th Cir. 2004) ............................................................ 8, 9

*Sprewell v. Golden State Warriors*

    266 F.3d 979, 988 (9th Cir.), opinion amended on denial of reh'g,

    275 F.3d 1187 (9th Cir. 2001) ...................................................................... 6

*Submersible Sys. v. Perforadora Central (Inamed Corp)*

    249 F.3d (5th Cir. 2001) .............................................................................. 13

*Whitaker v. Tesla Motors, Inc.*

    985 F.3d 1173, 1176 (9th Cir. 2021) ........................................................ 5, 6

*Wyler Summit Partn. v. Turner Broad System, Inc.*

    135 F.3d 658, 661 (9th Cir. 1998) .................................................................. 5

1

*Statutes*                                                              *Page*

2      42 U.S.C. §1985(3)............................................................ 18, 19, 20

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

*Other Authorities*                                                                *Page*

2

None ......................................................................................... n/a

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PRELIMINARY STATEMENT AND INTRODUCTION

Plaintiffs herein make their response to the motion to dismiss submitted by the Medical Defendant, Center for Emergency Medicine of Western Pennsylvania, Inc., dba "STAT-MD" (hereinafter, "MDS"). First and foremost, there is no clear-cut reason presented by MDS before this honorable Court to merit the granting of a motion to dismiss. Nevertheless, we shall respond point by point below in efforts to convince this honorable Court of our position, by exposing the flaws of MDS's arguments. Plaintiffs in the meantime would point out the stark reality in a case such as ours that without discovery, Plaintiffs claims cannot rightly be adjudicated. Accordingly, this Court should allow the parties the opportunity to begin discovery, litigate the case and bring their wrongs, which until this very day have been deliberately hidden from view, into the light.

It seems obvious to Plaintiffs, as inexperienced as we are, that MDS is trying to use legal technicalities and excuses to escape discovery and litigation. Attorneys for MDS unabashedly proclaim, "Plaintiffs' claims against STAT-MD are … inadequately pleaded, and are without merit." DKT. 95 at 1-2, line 25. Of course they are, if discovery is not granted! Without question MDS appears to be quite afraid of what will be exposed through discovery.

In and through our Complaint, as *Pro Se* Plaintiffs we may not have been as clear as we should have been, and this Memorandum of Opposition might not match the caliber of one written by law school graduates, but our main points and arguments are clear and present and they most certainly do have merit. And we off all people appreciate beyond words the courts' attitude in *Pro Se* cases, because of what the courts have written, namely "In ruling on motion to dismiss for failure to state claim, courts do and should show leniency to pro se litigants not enjoyed by those with benefit of legal education;" *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359 (11th Cir. 1998).

1        We understand that we still need to state a claim and cannot rely on things
2    that were not in our filed Complaint. In following these rules, we have and shall
3    continue to present a strong case and this includes our causes of action against
4    MDS. In light of the basic understanding that our claims are stated in our
5    Complaint, we should now be allowed to move forward. "Rule 8(a) only
6    requires that the allegations "be enough to raise a right to relief above a
7    speculative level." [*Bell Atlantic Corp. v.*] *Twombly*, 550 U.S. 544, 555 (2007).

8        It's understandable that MDS wants to run far away. Who would want to
9    be in the middle of conspiracy and discrimination allegations? Notwithstanding,
10   we believe that we are entitled to our day in court to prove our allegations, and
11   accordingly ask this honorable Court to facilitate that reality.

12       From a different perspective, imagine if airlines decided to hire a special
13   agency responsible for deciding if a given passenger gets a wheelchair or not, or
14   which disabled passengers are entitled to pre-boarding over other passengers, or
15   who can bring onboard an animal required by their disability. Let's call that
16   company "Med-MD." Now, Med-MD is not the airline, but the airline refers all
17   such decisions to them. When the regulatory agencies and/or the courts try to get
18   involved, because Med-MD is barring every third request, the airline says, "Oh
19   no, we have nothing to do with that! Talk to Med-MD." Med-MD then says,
20   "We are not an airline. We are not responsible; we don't even reside in your
21   state!" and "Hardly any allegations even mention Med-MD."

22       That pretty much sums up what is going on here. But Plaintiffs in the
23   instance case aren't obtuse. We know this Court is fair, honest and decent, and
24   would not fall for such childish "duck-and-blame" games. As we mentioned in
25   our Complaint, there's a wide-ranging conspiracy, and the five of us Plaintiffs
26   paid a heavy price and suffered significantly from it. We should have the
27   opportunity now to expose its inner workings and hidden mechanisms, so that
28   they can never get away with their dastardly and egregious discrimination again.

# I.    STATEMENT OF FACTS

MDS states, "The Complaint is essentially devoid of allegations against STAT-MD." DKT. 95, at 3, line 15. Quite innocently, MDS, just like our fictitious Med-MD intimates that they have nothing to do with this. They are nobodies; completely detached and innocent. Why should we accuse them? So MDS tries to distract the Court and convince it that they have no part because they're barely listed in any of the causes of action.

But the truth is that MDS, just like MedAire Inc. were in fact major players and components, and as contracted organizations that were at the very heart of Defendant Airlines' discrimination process. Every violation of rights or of law that the airlines participated in, were implemented by these two supporting organizations.

When Plaintiffs wrote a cause of action directed against Airline Defendants, we included the two organizations as an integral accomplice of those violations. We made this clear enough when we first introduced them in the Complaint. We wrote, "The final defendants are STAT-MD and MedAire (the "Medical Defendants"), two medical vendors who evaluate mask-exemption demands for most of the Airline Defendants." [DKT. 1 at ¶7]. In other words, THEY WERE THE HIRED GUNS.

We then wrote, "The Airline Defendants' conduct, contributed to by the Medical Defendants, results in the disabled who can't safely wear masks essentially being banned from using the nation's commercial aviation system." [DKT. 1 at ¶13]. We were very clear that Medical Defendants were an essential component of the violations with which the airlines are being charged. Wherever they were not fully active in the charge, they certainly aided, abetted and fully participated. They were being used as kosher certification for Defendant Airlines, without which they could not have perpetrated their appalling deeds.

Our injuries were a direct result of actions taken, advice given and coordination provided by MDS as illustrated in this Memorandum of Opposition. The acts and events over which Plaintiffs brought this lawsuit, occurred in this district. MDS was a major player. Plaintiffs believe that discovery will expose MDS as a major player, together with its associates behind the scenes.

## II.   STANDARD OF REVIEW

Defendant also quotes *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but of course places before this Court a very narrow selection of that case. If anyone were to read further, they would find no comparison between the final outcome of that case and our case. On the contrary, the opinion of SCOTUS weighs-in in support our position to show that a motion to dismiss is entirely inappropriate in our circumstance. It reads…

> "Under the plausibility standard, plaintiffs' claim of conspiracy in restraint of trade comes up short. First, the complaint leaves no doubt that plaintiffs rest their §1 claim on descriptions of parallel conduct … Here, the Court is not requiring heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *SCOTUS; BELL ATLANTIC CORP. v. TWOMBLY (No. 05-1126)*, 425 F. 3d 99, reversed and remanded.

That case was based on conjecture, and descriptions of parallel conduct. We, on the other hand, have real claims with substantial evidence. We certainly want more evidence and information that we expect to obtain during discovery, but undeniably we have already presented sufficient REAL facts that should

survive this motion to dismiss. We definitely presented enough prima facie facts to state a claim to relief that is plausible on its face.

It is difficult to ascertain why MDS quoted *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). MDS did not explain why it was there. It might possibly be to throw shade over our Complaint and indirectly attempt to compare it to that case. When we look at this case, we immediately see that there is no plausible comparison. In the decision, it reads as follows…

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157–158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2)." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

In our case the facts not only infer, but they clearly show some real serious violations of disability discrimination and a widespread conspiracy, among other charges. *Ashcroft v. Iqbal* is a perfect case that should persuade to this honorable Court to deny MDS's motion.

It may seem silly, but after MDS cited *Wyler Summit Partn. v. Turner Broad System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998), we really should thank them for citing it on our behalf: "On a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party."

MDS then quotes *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021), presumably again to compare it to our case. They seem to believe that no one will actually read that case. Well, we did read it, and there is

no comparison. First, that person seems to have been a "tester," a well-known concept where a person goes from place to place looking to find ADA violations. We are not testers, and we are not affiliated with some kind of organization that hires testers. We are regular people who have suffered significantly by the discrimination of the various Defendants. Second, that case is totally different. And yet, MDS uses the following to somehow clarify how Plaintiffs failed to state a claim:

> "The complaint alleges that Tesla "failed to provide accessible service counters," that Whitaker "personally encountered" the inaccessible service counters, and that he was denied "full and equal access." These allegations do little more than recite the elements of an ADA claim, and fall short of putting Tesla on notice of how the counters prevented Whitaker from full and equal access to the Tesla facility. The complaint failed to answer basic questions: Were the service counters too low? Or too high? Were they positioned in an area that was inaccessible for another reason? Without this sort of factual detail, the district court and Tesla were left in the dark about how the service counters denied Whitaker from full and equal enjoyment of the premises." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021)

That's not true with Plaintiffs in the instant case. We meticulously presented our claims and regardless of how inexperienced we are, we set forth more than enough solid facts that support our claims and justify this honorable Court to allow us to move forward.

Next, MDS brings up *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), opinion amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001), and once again, we are glad that they mentioned it. The very next words are — and for obvious reasons MDS omitted them — "A complaint should not

be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." See *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999). This is exactly what we are counting on, and we ask the Court to apply this standard.

## III.    ARGUMENT

**A.    Plaintiffs have failed to set forth facts establishing personal jurisdiction over STAT-MD**

Plaintiffs, through discovery can and will establish that Specific Personal Jurisdiction does exist — as determined by the facts in evidence. As a matter of fact, Plaintiffs have already established through their initial Complaint, the minimum contacts necessary for that Specific Personal Jurisdiction with the forum in which this honorable Court sits.

**1.    STAT-MD is not subject to general jurisdiction in California.**

Out of the 5,551 words contained in MDS's Memorandum of Law in Support of a Motion to Dismiss the Complaint, these NINE words above, are the ONLY nine words in the entire document that carry any truth. Pennsylvania has General Jurisdiction over MDS. California does not.

**2.    STAT-MD is not subject to specific jurisdiction in California.**

MDS claims "Plaintiffs have not alleged any corporate activities by STAT-MD in California. Furthermore, STAT-MD lacks any ongoing business relationship with California." DKT. 95 at 5, Ln 15.

1    This is preposterous. MDS controlled who flew and who didn't
2    fly in most of these United States, and unquestionably in California.
3    That WAS their activity and their business relationship in California.
4    Their humility is impressive, but not convincing or relevant here.

5         Specific personal jurisdiction means personal jurisdiction (i.e.,
6    the Court asserts power over MDS) based on a MDS's contacts with
7    the State of California, and the actions it carried out within the State
8    of California where the Court is located. Case law indicates that if
9    MDS regularly commits tortious acts in California from which
10   imminent injury would result, then a plaintiff who would come to
11   suffer that imminent injury at MDS's hand, should be given
12   opportunity to demonstrate that a California court has specific
13   personal jurisdiction over MDS, based on its regular and daily
14   tortious conduct in California. The plaintiff can sue MDS in
15   California precisely because the Court does have specific jurisdiction
16   over it, based on those regular and daily actions arising out from the
17   State of California where the Court is located, and out from the
18   connection between those contacts and this lawsuit. MDS took
19   tortious actions intended take place imminently and otherwise in
20   California against Plaintiffs while they were in California. Plaintiffs
21   can correctly claim that the forum state has specific personal
22   jurisdiction over MDS, because of MDS's contacts, Plaintiffs
23   included, within the State, regardless of where MDS is incorporated,
24   or has their principle place of business.

25        MDS quotes *Schwarzenegger v. Fred Martin Motor Co.*, once
26   again hoping that no one reads it. In this case, the story unfolds in
27   Ohio. Defendants are based only in Ohio, and there was no
28   connection whatsoever to California. There is no comparison to our

*Case # 2:22-cv-02383-SSS-ASx*          -8-          PLAINTIFFS' MEMORANDUM IN
                                                     OPPOSITION TO MEDICAL DEFENDANT
                                                     STAT-MD'S MOTION TO DISMISS

case, where the actions and the discriminations were carried out in multiple states, wherever Defendant Airlines flew. It just so happened that Plaintiffs suffered mostly in the state into and out of which they do most of their flying. One must be pretty cynical to present case law to prove a point cannot compare to the instant case. The court describes its decision in that case as follows:

> "Fred Martin had run a series of five fullpage color advertisements in the Akron Beacon Journal, a locally-circulated Ohio newspaper. Each advertisement included a small photograph of Schwarzenegger, portrayed as the "Terminator," without his permission. Schwarzenegger brought suit in California, alleging, *inter alia*, that these unauthorized uses of his image infringed his right of publicity." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

And then they later explain,

> "Schwarzenegger has not shown that Fred Martin has "continuous and systematic general business contacts," *Helicopteros Nacionales de Colom. v. Hall*, 466 U.S. 408, 416 (1984), 104 S.Ct. 1868, that "approximate physical presence" in California…" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

MDS by comparison, does have "continuous and systematic general business contacts," as a result of contracting with Defendant Airlines to process all their flights to, from and within the State of California. They have more business contacts in California than most companies based in California.

1      In *Ranza v. Nike* there is also no comparison. The issue was
2   about something that happened in the Netherlands by a Netherlands
3   based company. The decision reads as follows:

4          "The district court properly dismissed Ranza's
5      claims against NEON for lack of general personal
6      jurisdiction. NEON is a Dutch company that mostly
7      operates outside the United States. Its contacts with
8      Oregon are not "so continuous and systematic as to
9      render [it] essentially at home" there." *Daimler AG v.*
10     *Bauman*, —— U.S. ——, 134 S.Ct. 746, 758 n. 11, 187
11     L.Ed.2d 624 (2014).

12         Although we conclude a plaintiff may impute a local
13     entity's contacts to its foreign affiliate if it demonstrates
14     an alter ego relationship between the entities, *Ranza* has
15     not made that showing. Nike, a corporation that is based
16     in Oregon, is heavily involved in NEON's macro-
17     management, but it is not so enmeshed in NEON's
18     "routine matters of day-to-day operation" that the two
19     companies should be treated as a single enterprise for the
20     purpose of jurisdiction. *Doe v. Unocal Corp.*, 248 F.3d
21     915, 926 (9th Cir.2001).

22         We further hold the district court properly dismissed
23     Ranza's claims against Nike, albeit for a different reason
24     than the district court cited. Under the circumstances, the
25     Netherlands provided an adequate and more convenient
26     alternative forum in which to litigate Ranza's claims, thus
27     justifying Nike's dismissal under the *forum non*
28     *conveniens* doctrine." *Ranza v. Nike, Inc.*, 793 F.3d 1059,

1   1079 (9th Cir. 2015).

2       In *Martinez v. Aero Caribbean*, again they are stretching the

3   concepts to an extreme. Suffice it to say that if this is all they have,

4   then they have nothing. In that case they were talking about an

5   airplane crash that happened in Cuba and trying to sue a

6   manufacturer from France in a United States Court.

7           "ATR is organized under French law. Its

8           headquarters and principal place of business are in

9           France. It is not licensed to do business in California, and

10          it has no office or other physical presence there."

11          *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1065 (9th

12          Cir. 2014). This comparison is particularly bizarre.

13      In *CollegeSource, Inc. v. AcademyOne, Inc.*, the Court actually

14  gives some clear guidance. It says:

15          "We analyze specific jurisdiction under a three-

16          prong test: (1) The non-resident defendant must

17          purposefully direct his activities or consummate some

18          transaction with the forum or resident thereof; or perform

19          some act by which he purposefully avails himself of the

20          privilege of conducting activities in the forum, thereby

21          invoking the benefits and protections of its laws; (2) the

22          claim must be one which arises out of or relates to the

23          defendant's forum-related activities; and (3) the exercise

24          of jurisdiction must comport with fair play and substantial

25          justice, i.e., it must be reasonable." *CollegeSource, Inc. v.

26          AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011).

27      As we have been asserting, Plaintiffs pass the above mentioned

28  test to establish all three prongs: **(1)** Non-California resident MDS

purposefully performed the act of denying mask exemptions for disabled Plaintiffs by which it availed itself of the privilege of conducting activities in the forum *[i.e., the state of California]*, thereby invoking the benefits and protections of anti-discrimination laws. **(2)** Plaintiffs' claims against MDS for denying their mask exemptions arise out of MDS's state of California related activities of provisioning medical consultations to Defendant Airlines to determine who, if anyone, would fly without a mask. **(3)** The exercise of specific jurisdiction, wherein Plaintiffs sue MDS in a California federal court for denying them mask exemptions as disabled passengers, is a proper act of fair play in the pursuit of substantial justice. It is also reasonable because Plaintiffs had a constitutional right to fly without a mask, owing to their disabilities.

Moreover, MDS purposefully directed its activities to this forum by contracting with Defendant Airlines to handle all mask related disability requests for passengers flying to and from these states. The entire disability decision process at each California airport where these airlines fly rests on their shoulders. Most of the injuries in the Complaint are alleged to have occurred in, on the way to, or on the way out from this state.

The only reasonable thing for Plaintiffs to do was to include MDS in their lawsuit together with Airline Defendants with whom they conspired. Their attempts to get out of this lawsuit are because they have already calculated that it will be extremely difficult and costly for Plaintiffs to adjudicate this matter in MDS's home state. Accordingly, and on the basis of case law, the appropriate thing is for MDS to remain and defend itself, especially since it has significant contractually agreed business contacts in this state that Plaintiffs

1   allege directly caused us our injuries.

2   In *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F.

3   Supp. 3d 813, 824 (E.D. Tex. 2014), the court determined that…

4   "After a review of the evidence pertaining to the

5   jurisdictional question, the Court is satisfied (1) that

6   JetBlue has purposefully directed certain of its activities

7   at residents of the district—in particular, its loyalty

8   awards program with its conversion features; and (2) that

9   this litigation results from alleged injuries that are related

10   to those activities. The Court also concludes that JetBlue

11   cannot defeat personal jurisdiction by showing that the

12   assertion of personal jurisdiction in this case would not

13   comport with fair play and substantial justice. *Burger*

14   *King*, 471 U.S. at 472–73, 476, 105 S.Ct. 2174; *Campbell*

15   *Pet Co.*, 542 F.3d at 884–85. The Court therefore holds

16   that it has specific personal jurisdiction over JetBlue in

17   this case."

18   "Based on the foregoing analysis, the Court is

19   satisfied that Loyalty has met the first two elements of the

20   showing required for specific jurisdiction: (1) that JetBlue

21   has purposefully directed its loyalty awards program and

22   the conversion feature of that program at residents of this

23   district and (2) that this litigation results from injuries

24   related to those activities."

25   "The defendant has the burden of showing that the

26   third element—the "fair play and substantial justice"

27   factor—requires dismissal. See *Autogenomics, Inc. v.*

28   *Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1018

1    (Fed.Cir.2009); Breckenridge Pharm., 444 F.3d at 1363.
2    Moreover, the Supreme Court and the Federal Circuit
3    have made clear that the "fair play and substantial
4    justice" factor is to be applied "sparingly" and only in
5    extreme cases. See *Burger King*, 471 U.S. at 477, 105
6    S.Ct. 2174 ("[W]here a defendant who purposefully has
7    directed his activities at forum residents seeks to defeat
8    jurisdiction, he must present a compelling case that the
9    presence of some other considerations would render
10   jurisdiction unreasonable." (emphasis added)); *Campbell*
11   *Pet Co.*, 542 F.3d at 885 (rare situations); *Elecs. for*
12   *Imaging*, 340 F.3d at 1351–52; *Deprenyl*, 297 F.3d at
13   1355–56; *Inamed Corp.*, 249 F.3d at 1363. Such cases, in
14   which otherwise constitutional personal jurisdiction is
15   defeated, "are limited to the rare situation in which the
16   plaintiff's interest and the state's interest in adjudicating
17   the dispute in the forum are so attenuated that they are
18   clearly outweighed by the burden of subjecting the
19   defendant to litigation within the forum." *Beverly Hills*
20   *Fan*, 21 F.3d at 1568. The Court is not persuaded that
21   JetBlue has met its burden to show that this is a
22   "compelling" case in which "fair play and substantial
23   justice" require a finding that personal jurisdiction over it
24   does not exist."

25        In accordance with the above, this honorable Court must deny
26   MDS's motion to dismiss on the basis of it allegedly not being
27   subject to specific jurisdiction in California.

28

**B.    Plaintiffs' medical malpractice claim should be dismissed because the Complaint fails to allege a duty arising out of a physician-patient relationship**

MDS had earlier argued in Defendants' Joint Case Management Statement [DKT. 116 at 6, line 26] that Plaintiffs' medical malpractice claims were not viable because no medical treatment was provided to Plaintiffs.

This statement of MDS is wholly nonsensical and difficult to accept as having come from the keyboards of educated professional attorneys.

Plaintiffs at no time ever asked for, needed or wanted to be provided with medical treatment or medical screening from vendors like MDS, contracted by Defendant Airlines to disenfranchise us from our disabilities and ignore the very thing that precluded us from masking, and subsequently prevented us from flying.

In fact, MDS had no legal authority to even review mask-exemption demands submitted to it by its airline clients without ever talking to the passenger and/or their physician.

It is precisely for this reason that these medical consultations between the Medical Defendants and the Defendant Airlines constitute medical malpractice.

Medical malpractice and negligence occurs when a person employed by MDS, through a negligent act or omission — in this case, forcing a passenger to undergo a medical assessment against their will, while standing at the departure gate of an airport — deviates from standards in the medical profession by magically concluding that the passenger's disability and medical exemption issued by his or her family physician isn't real, doesn't exist, and cannot be claimed as a means for that passenger to obtain a waiver to board the aircraft without a mask.

That level of negligence arises from the medical professional's errors in diagnosis, his lack of treatment, his lack of aftercare, and his lack of health management. Note the word "lack." Plaintiffs never agreed to accept medical treatment from MDS and Plaintiffs never agreed to enter into a voluntary two-sided doctor/patient relationship with MDS.

More succinctly, this MDS agent and employee — who has no verified legal or medical authority and has no verified medical expertise or specialty — becomes negligent and enters into malpractice, exactly at the moment he reviews a mask-exemption request submitted by airline clients without ever physically examining the passenger or speaking with his or her physician, and then he goes on to make a decision to injure the passenger in one way or another by making an arbitrary determination based on his so-called "medical assessment" that denies mask exemptions without providing any rationale for his decision-making. The Air Carrier Access Act [ACAA] does not allow MDS to provide medical consultations to airlines for disability accommodation requests, except in very limited circumstances. Those circumstances did not and never will include situations where mask waivers are being sought.

In their argument MDS also elaborates and quotes California case law extensively, trying to convince the Court that no relationship existed between MDS and Plaintiffs. This is not exactly true. If one looks carefully at those cases, they do quote another case, which is much more similar to our case here. In it, a pilot is required to be medically assessed to determine if he is meets the requirements of his FAA medical certification and able to assume his duties as pilot-in-command. The court considered that a relationship, saying "Such a relationship was formed here when defendant undertook, although voluntarily, to examine plaintiff so as to ascertain his physical fitness for duties as a pilot." *Coffee v.*

*McDonnell-Douglas Corp.*, 8 Cal. 3d 551, 559, 503 P.2d 1366, 1371 (1972).

In our case, MDS undertook to examine and ascertain all passengers, including Plaintiffs, for specific airlines to determine if in fact said passengers have medical disabilities that warrant the issuance of a mask waiver. In the above-mentioned citation, the court affirmed the lower court's decision and the jury's verdict, which involved a defendant doctor who entered into a VOLUNTARY RELATIONSHIP with the plaintiff patient. But in the instant case, Plaintiff patients were forced into an INVOLUNTARY RELATIONSHIP with MDS, and they were not provided with any assurance of the qualifications of MDS personnel, to render a diagnosis that prevented them from receiving the mask waivers they sought.

The obvious point and difference is that while it may be true that Plaintiffs did not voluntarily enter into a doctor-patient relationship with MDS, that relationship was nevertheless created and forced upon us, even in cases where we said "NO!" We all understand today that relationships and the relations that come with them can and often are without consent by one of the parties, and yet, no one denies that a relationship, although one-sided, still existed.

The above created and forced one-sided relationship then becomes the basis upon which they instruct their Defendant Airline clients that Plaintiffs may not board the aircraft without a mask, which of course results in them being banned from flying. In most cases, even when Plaintiffs gave way and allowed forced medical assessments of the conditions of their health, they were in any case denied the waivers they sought, and thus likewise banned from flying.

But since, according to MDS, no relationship existed between

Plaintiffs and MDS, Plaintiffs should have been free to board any flight operated by Defendant Airlines to any destination they flew, without having to reconsider their travel plans when they couldn't safely don a facemask. Clearly, a forced relationship was in the making and anticipated on the part of MDS and Defendant Airlines who contracted with them, and injury at that point was inescapable. It represented an imminent injurious relationship waiting to happen, and all plaintiffs needed to do was show up at the departure gate, with boarding cards in hand.

MDS would then provide a medical diagnosis, which of course is impossible to do without an examination of the patient. Just ask any doctor; the process of formulating a diagnosis requires *inter alia*, a physical and mental examination in order to develop a list of possible causes of the diagnosed disorder. MDS undertook none of the above.

It was even worse in the case of Delta Airline's illegal "Clearance to Fly," process which involved consulting with MDS, both of whom openly and unabashedly determined that mask exemptions could not be approved in advance. And then Delta goes on to refuse to make any exception to their rule.

In the above, we have articulated a viable basis for Plaintiffs' medical malpractice claims and have refuted MDS's denial that a forced relationship existed between Plaintiffs and MDS. Accordingly we ask this honorable Court to reject MDS's motion to dismiss in its entirety.

C. **Count 20 of Plaintiffs' Complaint should be dismissed because Plaintiffs fail to allege a conspiracy or an intent to violate their civil rights**

MDS quotes numerous cases to show that people who are disabled cannot be considered a class with regards to a 1985(3) conspiracy claim.

Notwithstanding, we are sure that MDS will agree that if that disabled person was part of a certain race that and defendant had animus against, then that disabled person can and would be a recipient of a 1985(3) claim. So, the disability itself does not negate a 1985(3) claim.

The reality is that the court decided as follows:

> "Handicaps vary greatly from immediately noticeable physical handicaps to ones not at first obvious or those revealed only by a medical examination. Handicaps are also a condition that may be overcome, depending on the individual and on the handicap; likewise the severity with which a handicap affects a person varies from individual to individual. Being handicapped is not a historically suspect class...." *D'Amato v. Wisconsin Gas Co.*, 760 F.2d 1474, 1486 (7th Cir. 1985).

If one reads this carefully one can understand that "disabled people" as a whole cannot be the subject of a 1985(3) conspiracy claim, because there is no rational argument that there are people like Hitler and his henchmen who have animus towards all disabled people.

Specific categories of the disabled however, can easily be different. For example, the court determined that mentally retarded people could be the subject of animus.

"Similarly, we concluded, in *Lake v. Arnold*, that "the scope of ... § 1985(3) is sufficiently broad to protect the mentally retarded as a class," assuming, albeit implicitly, that the mentally retarded constitute an objectively identifiable class in the first place. 112 F.3d 682, 685, 688 (3d Cir.1997). Simply put, some groups, particularly those deemed to be distinguishable from others by immutable characteristics, such as African–Americans, women, and the mentally retarded, are so clearly

accepted as objectively identifiable that no extended analysis is needed. *Farber v. City of Paterson*, 440 F.3d 131, 137 (3d Cir. 2006).

As we described above, we, the disabled people that cannot wear a mask have been the recipients of the most bizarre animus — one that has never before been seen in these United States. People yelling at us in the street, throwing us out of stores, malls, hospitals, buses and airports? And the people that we encountered were usually extremely angry, seeming enough to say "How dare you try to kill me!?" We encourage this honorable Court to allow us to move forward and the Court will be shocked by the amount of direct animus we will uncover against a specific disability; the disability that causes a person not to be able to wear a mask.

*Arnold v. Tiffany*, 487 F.2d 216, 218 (9th Cir. 1974) says it all: "The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." [10] 403 U.S. at 101-102, 91 S.Ct. at 1798."

We never suggested that "disability" in itself should be a class. We are saying that we — people with the specific disability that cannot wear a mask, are a class — and the animus is all around us. The proof is in the pudding. You have 50 or more airlines and their personnel, all hating on us. Now add federal agencies and Medical Defendants to the mix, and everywhere we go we see it, feel it and intimately encounter this hatred. Discovery will show a lot more of this.

For the reasons stated above, Plaintiffs therefore, as part of a class, should be entitled to 42 U.S.C. §1985(3) protections, and owing to these guaranteed protections, Plaintiffs humbly come before this honorable Court and ask that MDS's motion to dismiss, brought on the basis of this argument, be denied.

# IV.   CONCLUSION

We have clarified above that MDS is a central part of this conspiracy and an integral component of the alleged acts of discrimination against us. We have shown that jurisdiction in California is appropriate and all the claims are strong enough to move on to the discovery stage and to thereafter begin the litigation. If MDS can show they been completely kosher, and at no point did they ever do anything wrong, then our fair and honest judicial system will determine that outcome and exonerate them. But in the meantime, there is no reason for this honorable Court to grant any part of their motion to dismiss, and we humbly request that it deny the motion in its entirety.

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

1   Respectfully submitted this 17th day of August 2022.

2

3   By: /s/ *Uri Marcus*

4           Uri Marcus, lead plaintiff, *Pro-Se*
            P.O. Box 126
5           Ojai, CA 93024
            Telephone: 909-833-0065
6           E-Mail: uri@ntcf.org

7

8   By: /s/ *Yvonne Marcus*

9           Yvonne Marcus, plaintiff, *Pro-Se*
            P.O. Box 126
10          Ojai, CA 93024
11          Telephone: 909-833-0065
            E-Mail: adi@ntcf.org
12

13  By: /s/ *Avrohom Gordon*

14          Avrohom Gordon, plaintiff, *Pro-Se*
15          2251 State Route 222
            New Richmond, OH  45157
16          Telephone: 513-734-1770
17          gordon.avrohom@gmail.com

18

19  By: /s/ *Devorah Gordon*

20          Devorah Gordon, plaintiff, *Pro-Se*
21          2251 State Route 222
            New Richmond, OH  45157
22          Telephone: 513-734-1770
            devorahlgordon@gmail.com
23

24  By: /s/ *Cindy Russo*

25          Cindy Russo, plaintiff, *Pro-Se*
26          22485 Breakwater Way
            Santa Clarita, CA  91350
27          Telephone: 908-797-8066
            cjrz123@gmail.com
28

*Case # 2:22-cv-02383-SSS-ASx*        -22-        PLAINTIFFS' MEMORANDUM IN
                                                  OPPOSITION TO MEDICAL DEFENDANT
                                                  STAT-MD'S MOTION TO DISMISS

1         Pursuant to L.R. 5-4.3.4(a)(2)(i), the filer of this document hereby attests

2   that all other signatories listed above, and on whose behalf the filing is

3   submitted, concur in the filing's content and have authorized this filing.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28