BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch
MARY HAMPTON MASON
Senior Trial Counsel, Torts Branch
JEREMY SCOTT BRUMBELOW
Senior Trial Attorney, Torts Branch
United States Department of Justice, Civil Division
P.O. Box 7146, Ben Franklin Station
Washington, D.C.  20044-7146
Tel. (202) 616-4330; Fax. (202) 616-4314
Email:  jeremy.brumbelow@usdoj.gov

*Counsel for Defendant Julie Carrigan
in her individual capacity*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| URI MARCUS, *et al.*,<br><br>  Plaintiffs,<br><br>    v.<br><br>CENTERS FOR DISEASE<br>CONTROL & PREVENTION, *et al.*,<br><br>  Defendants | Case No. 2:22-cv-02383-SSS-AS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS DEFENDANT JULIE CARRIGAN IN HER INDIVIDUAL CAPACITY**<br><br>The Honorable Sunshine Suzanne Sykes<br>United States District Judge |

# <u>TABLE OF CONTENTS</u>

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    I.      PERSONAL JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . 6

    II.     VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    III.   SUBJECT-MATTER JURISDICTION . . . . . . . . . . . . . . . . 12

    IV.   LACK OF *BIVENS* REMEDY . . . . . . . . . . . . . . . . . . . . . . . 14

    V.     QUALIFIED IMMUNITY . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. al-Kidd,*
   563 U.S. 731 (2011) ...................................................................19-20, 23-24

*Allstar Mktg. Grp., LLC v. Your Store Online, LLC,*
   666 F. Supp. 2d 1109 (C.D. Cal. 2009)........................................................12

*Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.,*
   551 F.2d 784 (9th Cir. 1977)..........................................................................7

*Americopters, LLC v. FAA,*
   441 F.3d 726 (9th Cir. 2006)........................................................................13

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .............................................................................. passim

*Axiom Foods v. Acerchem Int'l, Inc.,*
   874 F.3d 1064 (9th Cir. 2017).......................................................................10

*Ballard v. Savage,*
   65 F.3d 1495 (9th Cir. 1995)..........................................................................7

*Ballentine v. Tucker,*
   28 F.4th 54 (9th Cir. 2022) ...........................................................................20

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)..............................................................................20, 22

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,*
   403 U.S. 388 (1971) .......................................................................................1

*Blair v. Bethel Sch. Dist.,*
   608 F.3d 540 (9th Cir. 2010)........................................................................20

*Brown v. Ferriter,*
   2009 WL 4827426 (D. Mont. Dec. 11, 2009).............................................22

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985) .......................................................................................8

*Carlson v. Green,*
   446 U.S. 14 (1980)........................................................................................14

*Chappell v. Wallace,*
   462 U.S. 296 (1983) .....................................................................................19

*Cohen v. United States,*
   2022 WL 2181457 (S.D.N.Y. June 16, 2022).............................................16

*Correctional Servs. Corp. v. Malesko,*
   534 U.S. 61 (2001) ........................................................................... 14, 17, 19

*Cruz v. Childers,*
   2022 WL 3021141 n.2 (W.D. Va. July 29, 2022)........................................16

*D.C. v. Wesby*,
   138 S. Ct. 577 (2018)..............................................................................23
*Davis v. Passman*,
   442 U.S. 228 (1979) ..............................................................................14
*Denney v. DEA*,
   508 F. Supp. 2d 815 (E.D. Cal. 2007) ..................................................22
*Doe v. Am. Nat'l Red Cross*,
   112 F.3d 1048 (9th Cir. 1997)..................................................................6
*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014)..................................................................22
*Egbert v. Boule*,
   142 S. Ct. 1793 (2022)................................................................... passim
*Emmons v. City of Escondido*,
   921 F.3d 1172 (9th Cir. 2019)..........................................................22-23
*Fang v. Blinken*,
   2021 WL 4900372 (C.D. Cal. June 22, 2021).......................................12
*Foster v. Skinner*,
   70 F.3d 1084 (9th Cir. 1995)..................................................................13
*George v. Rehiel*,
   738 F.3d 562 (3d Cir. 2013)...................................................................24
*Gilbert v. DaGrossa*,
   756 F.2d 1455 (9th Cir. 1985)..................................................................6
*Gilmore v. Gonzales*,
   435 F.3d 1125 (9th Cir. 2006) ...............................................................13
*Goldstein v. Biden*,
   2022 WL 2109194 (E.D. Pa. June 10, 2022) ........................................16
*Gonzalez v. Planned Parenthood*,
   759 F.3d 1112 (9th Cir. 2014)...............................................................22
*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011) ................................................................................8
*Gowadia v. Stearns*,
   596 F. App'x 667 (10th Cir. 2014).........................................................11
*Hammler v. Alvarez*,
   2019 WL 422575 (S.D. Cal. Feb. 4, 2019) (M.J. Rec.),
   *adopted*, 2019 WL 3315567 (S.D. Cal. July 24, 2019) ...................21-22
*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982) ..............................................................................20
*Hernandez v. Mesa*,
   140 S. Ct. 735 (2020)......................................................................14, 18

*Huskey v. City of San Jose*,
 204 F.3d 893 (9th Cir. 2000)................................................................22
*In re Century Aluminum Co. Sec. Litig.*,
 729 F.3d 1104 (9th Cir. 2013).............................................................22
*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
 433 F.3d 1199 (9th Cir. 2006)................................................................7
*Int'l Shoe Co. v. Washington*,
 326 U.S. 310 (1945) ...............................................................................8
*Kandi v. Mgmt. & Training Corp.*,
 778 F. App'x 462- (9th Cir. 2019) .......................................................17
*King v. Cnty. of Los Angeles*,
 885 F.3d 548 (9th Cir. 2018)..................................................................3
*Kokkonen v. Guardian Life Ins. Co. of Am.*,
 511 U.S. 375 (1994) .............................................................................12
*Latif v. Holder*,
 686 F.3d 1122 (9th Cir. 2012)..............................................................13
*Leuthauser v. United States*,
 576 F. Supp. 3d 806 (D. Nev. 2021)...............................................17-19
*Lietz v. Wilpher*,
 2022 WL 1955742 (9th Cir. June 6, 2022)......................................16-17
*Linlor v. Whetsell*,
 2018 WL 5019383 (D. Nev. Oct. 16, 2018),
 *aff'd*, 776 F. App'x 461 (9th Cir. 2019).............................................11
*Lozman v. City of Riviera Beach*,
 138 S. Ct. 1945 (2018).........................................................................21
*Luis Buenrostro v. Fajardo*,
 770 F. App'x 807 (9th Cir. 2019) .........................................................17
*Lundquist v. United States*,
 2021 WL 3744573 (C.D. Cal. July 27, 2021),
 *appeal dismissed*, 2022 WL 1639659 (9th Cir. May 24, 2022) ........17-19
*Mace v. Skinner*,
 34 F.3d 854 (9th Cir. 1994) ................................................................13
*Mahmud v. Oberman*,
 508 F. Supp. 2d 1294 (N.D. Ga. 2007), *aff'd sub nom.*,
 *Mahmud v. DHS*, 262 F. App'x 935 (11th Cir. 2008) ........................11
*Mengert v. U.S. TSA*,
 2020 WL 7029893..........................................................................17, 19

*Mohamed v. Holder*,
   995 F. Supp. 2d 520 (E.D. Va. 2014) ......................................................19

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009).................................................................21

*Mullenix v. Luna*,
   136 S. Ct. 305 (2015).........................................................................23

*Munns v. Clinton*,
   822 F. Supp. 2d 1048 (E.D. Cal. 2011).....................................................11

*Nieves v. Bartlett*,
   139 S. Ct. 1715 (2019)...................................................................20-23

*Oksner v. Blakey*,
   2007 WL 3238659 (N.D. Cal. Oct. 31, 2007),
   *aff'd*, 347 F. App'x 290 (9th Cir. 2009)....................................................11

*Osmon v. United States*,
   2020 WL 9047166 (W.D.N.C. Dec. 7, 2020) (M.J. Rec.),
   *adopted*, 2021 WL 1187090 (W.D.N.C. Mar. 29, 2021) ........................... 17-19

*Pearson v. Callahan*,
   555 U.S. 223 (2009) .........................................................................20

*Pellegrino v. U.S. TSA*,
   937 F.3d 164 (3d Cir. 2019).................................................................17

*Picot v. Weston*,
   780 F.3d 1206 (9th Cir. 2015)............................................................8-10

*Piedmont Label Co. v. Sun Garden Packing Co.*,
   598 F.2d 491 (9th Cir. 1979)............................................................11-12

*Pratt v. Rowland*,
   65 F.3d 802 (9th Cir. 1995) ............................................................21-22

*Reichle v. Howards*,
   566 U.S. 658 (2012) .........................................................................24

*Reid v. United States*,
   825 F. App'x 442 (9th Cir. 2020) ..........................................................17

*Roberts v. Napolitano*,
   792 F. Supp. 2d 67 (D.D.C. 2011) ...........................................................4

*Ruhrgas AG v. Marathon Oil Co.*,
   526 U.S. 574 (1999) ...........................................................................6

*Saucier v. Katz*,
   533 U.S. 194 (2001) .........................................................................23

*Schwarz v. Meinberg*,
   761 F. App'x 732 (9th Cir. 2019) ..........................................................17

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004).................................................................7-8
*Scruggs v. Nielsen*,
   2019 WL 1382159 (N.D. Ill. Mar. 27, 2019).......................................... 17-18
*Silva v. United States*,
   2022 WL 3023684 (10th Cir. Aug. 1, 2022)...............................................14
*Smith v. Starr*,
   2022 WL 3135305 (D. Minn. Aug. 5, 2022) .............................................16
*Springs v. Stone*,
   362 F. Supp. 2d 686 (E.D. Va. 2005) ........................................................2
*Stafford v. Briggs*,
   444 U.S. 527 (1980) ...............................................................................11
*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007)....................................................................7
*Tur v. FAA*,
   104 F.3d 290 (9th Cir. 1997)...................................................................13
*United States v. Aukai*,
   497 F.3d 955 (9th Cir. 2007)............................................................. 2, 19
*USPS v. Gregory*,
   534 U.S. 1 (2001).................................................................................21
*Vanderklok v. United States*,
   868 F.3d 189 (3d Cir. 2017)........................................................... passim
*Vega v. United States*,
   724 F. App'x 536 (9th Cir. 2018) .......................................................17, 21
*Vega v. United States*,
   881 F.3d 1146 (9th Cir. 2018)..................................................................17
*W. Radio Servs. Co. v. U.S. Forest Serv.*,
   578 F.3d 1116 (9th Cir. 2009)..................................................................17
*Walden v. Fiore*,
   571 U.S. 277 (2014) .................................................................... passim
*Wearren v. Gofferman*,
   2021 WL 6496724 (C.D. Cal. Aug. 24, 2021) (M.J. Rec.),
   *adopted*, 2021 WL 6496806 (C.D. Cal. Oct. 14, 2021) ...............................22
*Wilkie v. Robbins*,
   551 U.S. 537 (2007) ..........................................................................14, 17
*Wyatt v. Cole*,
   504 U.S. 158 (1992) ..............................................................................20
*Zavala v. Rios*,
   721 F. App'x 720 (9th Cir. 2018) .............................................................17

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017) ..................................................................... passim

**Statutes, Rules, Regulations, and Other Authorities**

6 U.S.C. § 345 ................................................................................17
28 U.S.C. § 1391(b)(2) ...................................................................12
49 U.S.C. § 114 ................................................................................2
49 U.S.C. § 44901(a) ........................................................................2
49 U.S.C. § 44919(a) ........................................................................3
49 U.S.C. § 46110 ..................................................................5, 12, 17
Aviation and Transportation Security Act ("ATSA"),
    Pub. L. No. 107-71,115 Stat. 597 (Nov. 19, 2001) .....................1-2
Cal. Civ. Proc. Code § 410.10 ..........................................................7

Fed. R. Civ. P. 4(k)(1)(A) .................................................................7
Fed. R. Civ. P. 8 ..............................................................................20
Fed. R. Civ. P. 12(b) ...........................................................1, 5, 25
78 FR 55274-01 ..............................................................................2-4

14D Chas. A. Wright, *et al.*, Fed. Prac. & Proc. Civ. § 3807 at 206-07 (4th ed.
    2013) ...........................................................................................12

*2021 Unruly Passenger Data*,
    https://www.faa.gov/data_research/passengers_cargo/unruly_passengers/2021_a
    rchive ...........................................................................................25
*Civil Rights & Liberties, Ombudsman & Traveler Engagement*,
    https://www.tsa.gov/leader-bios/office-civil-rights-and-liberties-ombudsman-
    and-travel-engagement ...........................................................17-18
Dept. of Homeland Security, TSA PreCheck Application Program Privacy Impact
    Assessment (2013) ......................................................................3-4
*Disqulaifying Offenses and Other Factors*, https://www.tsa.gov/disqualifying-
    offenses-factors ..............................................................................3
*TSA Precheck FAQ*, https://www.tsa.gov/precheck/faq .....................4

In response to the COVID-19 pandemic, the Centers for Disease Control and Prevention ("CDC") issued orders that, although no longer in effect, generally required airline passengers to wear masks and international air travelers to provide proof of a negative COVID-19 test before departure to the United States.  In this *pro se* action, five plaintiffs challenge the CDC mask and testing orders and seek damages and equitable relief from three federal agencies—including the Transportation Security Administration ("TSA")—and several private airline-industry defendants.  Julie Carrigan, a TSA official, is also a defendant but is not sued in connection with the mask or testing orders.  She is not alleged to have had—and, in fact, did not have—any involvement in those orders' issuance or enforcement.  Instead, Carrigan is sued for something else entirely and only by Plaintiff Uri Marcus.  At all relevant times, Carrigan was the Acting Director of the TSA Vetting Analysis Division, a part of the agency's Intelligence & Analysis Office in Virginia.  As such, she signed a letter on behalf of TSA advising Plaintiff Marcus that he was no longer eligible to participate in the TSA PreCheck® Application Program ("TSA PreCheck").  Invoking *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), Plaintiff seeks damages from Carrigan in her individual capacity on the theory that, in signing the letter, she violated the First Amendment to the U.S. Constitution by "retaliating" against Plaintiff for having brought an earlier lawsuit concerning the mask order. For several reasons, this *Bivens* claim against Carrigan cannot survive and should be dismissed under Federal Rule of Civil Procedure 12(b).

## **BACKGROUND**

**A.**  As part of its response to the terrorist attacks of September 11, 2001, Congress enacted the Aviation and Transportation Security Act ("ATSA"), Pub. L. No. 107-71, 115 Stat. 597 (Nov. 19, 2001) (codified in 49 U.S.C. §§ 114, *et seq.*), to "strengthen national security through the federalization of the civil

transportation system." *Springs v. Stone*, 362 F. Supp. 2d 686, 690 (E.D. Va. 2005).  The ATSA's "cornerstone" was its "creation" of the TSA, "a federal agency charged with overseeing every aspect of civil transportation security in this country. . . .  The most essential aspect of civil transportation security addressed by the ATSA, and for which TSA is accountable, is improving airport security to prevent a reprise of the tragic events of September 11, 2001." *Id*.  Among other things, TSA is "responsible for day-to-day Federal security screening operations for passenger air transportation," 49 U.S.C. § 114(e)(1), and must "provide for the screening of all passengers," 49 U.S.C. § 44901(a).  TSA employees who perform or provide for passenger screening pursuant to this congressional mandate "assist[] in a critical aspect of national security—securing our nation's airports and air traffic." *Vanderklok v. United States*, 868 F.3d 189, 207 (3d Cir. 2017); *see United States v. Aukai*, 497 F.3d 955, 956 (9th Cir. 2007) (en banc) (TSA ensures the safety of commercial-aircraft passengers, "the safety of airline and airport personnel and, as the events of September 11, 2001, demonstrate, the safety of the general public from risks arising from commercial airplane flights").

So that TSA may "focus" its "security screening . . . on those passengers who should be subject to more extensive screening," Congress authorized the agency to "[e]stablish requirements to implement trusted passenger programs and use available technologies to expedite the security screening of passengers who participate in such programs," 49 U.S.C. § 114, Statutory Notes, Enhanced Security Measures (Pub. L. 107-71, Title I, § 109(a)(3), Nov. 19, 2001, 115 Stat. 613, *as amended*, Pub. L. 107-296, Title XIV, § 1403(b), Nov. 25, 2002, 116 Stat. 2306).  Pursuant to that statutory authority, TSA implemented TSA PreCheck, which "is a passenger prescreening initiative for low risk passengers who are eligible to receive expedited screening at participating U.S. airport security checkpoints."  78 FR 55274-01, 55275 (Sept. 10, 2013) (footnote omitted)

1   (available at 2013 WL 4782680); *accord* TSA PreCheck Application Program
2   Privacy Impact Assessment (Sept. 14, 2013) at 1 ("Assessment");[1] *see also* 49
3   U.S.C. § 44919(a) (governing administration of TSA PreCheck).  For travelers, the
4   benefit of TSA PreCheck enrollment lies in the "expedited screening" they receive
5   at the airport security checkpoint.  That is "typically" a "more limited physical
6   screening" allowing travelers to "leave on their shoes, light outerwear, and belt"
7   and "keep their laptop in its case" and "their 3-1-1 compliant liquids/gels bag in a
8   carry-on."  Assessment at 1 n.1; 78 FR at 55725 n.2.  In this way, the program
9   "facilitat[es] and improv[es] the commercial aviation travel experience for the
10  public," but it also serves a vital public interest:  it "enhances aviation security by
11  permitting TSA to better focus its limited security resources on passengers who are
12  more likely to pose a threat to civil aviation," Assessment at 1; 78 FR at 55257.

13          Individuals who apply for TSA PreCheck enrollment are subjected to risk
14  assessments by TSA, and those include "checks against law enforcement,
15  immigration, and intelligence databases, including a fingerprint-based criminal
16  history records check . . . conducted through the Federal Bureau of Investigation,"
17  Assessment at 1-2; *accord* 78 FR at 55275.[2]  If enrolled in the program, the
18  individual is issued a "Known Traveler Number (KTN)," which he or she provides
19  during the reservation process to facilitate expedited screening at the airport.
20  Assessment at 1 n.1, 2.  But even after enrollment, program participants are subject
21  to "recurrent vetting" or "recurrent checks" against the sorts of databases

22  _____

23  [1]  *See generally King v. Cnty. of Los Angeles*, 885 F.3d 548, 555 (9th Cir. 2018) ("we take
    judicial notice of the undisputed and publicly available information displayed on government
24  websites"); *accord Vanderklok*, 868 F.3d at 205 n.16.

25  [2]  *See* https://www.tsa.gov/disqualifying-offenses-factors (TSA PreCheck applicant may be
    ineligible due to certain "disqualifying criminal offenses" *or* "analyses of . . . Interpol and other
26  international information, as appropriate," "Terrorist watchlists, other government databases and
    related information," or "Any other information relevant to determining applicant eligibility or
27  an applicant's identity").

28

mentioned above.  *Id.* at 6, 8.[3]  Then, as with an initial application, TSA uses the available information "to determine whether the individual is eligible, and remains eligible, for participation" in TSA PreCheck by assessing whether the "individual poses a sufficiently low risk to transportation or national security to be issued a . . . KTN," *id.* at 2, 6.[4]  In keeping with other trusted-passenger programs administered by other federal agencies, TSA PreCheck eligibility "is within the sole discretion of TSA, which will notify individuals who are denied eligibility in writing of the reasons for the denial."  Assessment at 2; 78 FR at 55275; *see Roberts v. Napolitano*, 792 F. Supp. 2d 67, 73 (D.D.C. 2011) (Global Entry eligibility "is committed solely to the CBP's discretion by law").

**B.**  According to the complaint, Plaintiff Marcus was enrolled in TSA PreCheck in June 2017, for a five-year term.  Compl. ¶¶ 108, 110-11.  But in November 2021, TSA allegedly "revoked" his "Pre-Check status," *id.* ¶ 115.  In a letter dated November 23, 2021, and digitally signed by Carrigan on November 18, 2021, TSA advised Plaintiff that (1) he had been subjected to routine "recurrent checks against various databases," and (2) as a result of that and "a comprehensive background check, TSA was unable to determine that [he] pose[d] a sufficiently low risk to transportation and national security to continue to be eligible for expedited airport security screening through" TSA PreCheck.  Compl., Ex. 25 (Doc. 1 at 323).  The letter thus advised Plaintiff that he is "no longer eligible to

---

[3]  *See* https://www.tsa.gov/precheck/faq ("Applying for TSA PreCheck®," "Can I be disqualified/suspended from TSA PreCheck®?") (stating that TSA PreCheck "enrollees undergo recurrent criminal history vetting as a condition of their . . . enrollment" and that "enrollees found to have committed a disqualifying offense may have their TSA PreCheck® enrollment disqualified or suspended," and listing, as among the grounds for "disqualification from participation in TSA PreCheck®," the commission of "certain violations of federal security regulations, such as refusal to wear a mask in U.S. transportation systems covered by the January 31, 2021 Security Directive and subsequent amendments").

[4]  *See* 78 FR at 55275 (describing the "standards" of TSA PreCheck risk assessment as whether the "individual poses a low risk to transportation or national security"); *id.* at 55276 (similar).

participate in the . . . Program," "[t]his eligibility determination . . . is within the sole discretion of TSA," and the letter "constitutes TSA's final decision." *Id.*

Plaintiff now claims an improper motive underlay this final agency decision: a purported desire by TSA and Carrigan to retaliate against him for having exercised a claimed First Amendment right to sue TSA in a prior lawsuit. The prior suit was a petition for review ("PFR"), pursuant to 49 U.S.C. § 46110, that challenged TSA's measures implementing the CDC mask order and is now pending as *Marcus v. TSA*, No. 21-1225 (D.C. Cir.) (following transfer from Fifth Circuit). Compl. ¶¶ 113-14 & Ex. 24. Because Plaintiff filed the PFR on October 19, 2021, and his TSA PreCheck status was revoked on November 23, 2021, he speculates that the latter was "illegal retaliation" for the former. *Id.* ¶¶ 113, 115-16, 882. For this alleged First Amendment violation, Plaintiff seeks relief in two counts. First, in the complaint's Eighteenth Cause of Action, *id.* ¶¶ 877-88, he seeks equitable relief from TSA and Carrigan in her official capacity in the form of "a writ compelling TSA to reinstate [his] Pre-Check eligibility." *Id.* ¶ 888.[5] Second, in the Nineteenth Cause of Action, *id.* ¶¶ 889-90—the subject of this motion—he seeks damages under *Bivens* from Carrigan in her individual capacity.

## DISCUSSION

Count 19 should be dismissed for several reasons under Federal Rule of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6). First, this Court lacks personal jurisdiction over Carrigan in her individual capacity. Second, this District is an improper venue for the *Bivens* claim against Carrigan. Third, 49 U.S.C. § 46110 divests this Court of subject-matter jurisdiction over the claim because it is "inescapably intertwined" with the TSA revocation order, over which the appellate courts have exclusive jurisdiction. Fourth, as confirmed by the Supreme Court's

---

[5] *See* Doc. 97-1 at 13, 26-29 (upper-margin ECF page numbers) (where Count 18 is addressed in separate motion to dismiss the federal-agency defendants and Carrigan in her official capacity).

recent decision in *Egbert v. Boule*, 142 S. Ct. 1793 (June 8, 2022), Plaintiff has no *Bivens* remedy for his First Amendment claim against Carrigan. Fifth, the *Bivens* claim is barred by qualified immunity in any event.

## I.  PERSONAL JURISDICTION

Carrigan is not a resident or domiciliary of California; she was not served with process there; and she does not consent to this Court's jurisdiction. Plaintiff alleges nothing to the contrary and, indeed, acknowledges that, during the relevant time, Carrigan was a TSA official stationed in Virginia. Compl. ¶¶ 26-27; Docs. 2-4, 54 (service documents listing Carrigan's TSA office address in Springfield, VA). Thus, Plaintiff does not allege that Carrigan was in California when she revoked his TSA PreCheck eligibility, and his exhibits include the revocation letter that Carrigan signed on TSA stationery bearing her official address in Virginia. Compl., Ex. 25 (Doc. 1 at 323). In her individual capacity, then, Carrigan should be dismissed under Rule 12(b)(2) because, on the face of the complaint, her California contacts are insufficient to subject her to jurisdiction in this forum.

**A.** In any civil action, a federal court must obtain personal jurisdiction over a defendant before it can proceed against her. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999). That is no less true in *Bivens* cases, where plaintiffs sue federal employees for damages in their individual capacities. As the Ninth Circuit has long recognized, a *Bivens* defendant can only be sued in a court with personal jurisdiction over her. *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050-52 (9th Cir. 1997); *Gilbert v. DaGrossa*, 756 F.2d 1455, 1459-61 (9th Cir. 1985). The Supreme Court confirmed as much in *Walden v. Fiore*, 571 U.S. 277 (2014).

As "the normal rules for establishing *in personam* jurisdiction apply" to the *Bivens* claim against Carrigan, *Gilbert*, 756 F.2d at 1459, Plaintiff was obligated to serve her with process, which he did. Doc. 96. But the service of that summons "establishes personal jurisdiction" over Carrigan only if she is "subject to the

1    jurisdiction of a court of general jurisdiction in the state where the district court is

2    located," Fed. R. Civ. P. 4(k)(1)(A).  This Court, then, can assert jurisdiction over

3    Carrigan only if a California court could do so.  As California has authorized its

4    courts to "exercise jurisdiction on any basis not inconsistent with the Constitution

5    of this state or of the United States," Cal. Civ. Proc. Code § 410.10, this Court

6    need only ask if "the exercise of jurisdiction" over Carrigan would "'comport[]

7    with the limits imposed by federal due process' on the State of [California]."

8    *Walden*, 571 U.S. at 283 (citation omitted).[6]

9         Plaintiff "bears the burden of demonstrating" that an assertion of jurisdiction

10   over Carrigan would be "appropriate," *Schwarzenegger v. Fred Martin Motor Co.*,

11   374 F.3d 797, 800 (9th Cir. 2004), and must make at this stage "a prima facie

12   showing of jurisdictional facts to withstand the motion to dismiss" by

13   "demonstrat[ing] facts that if true would support jurisdiction over the defendant."

14   *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).  Plaintiff "cannot 'simply

15   rest on the bare allegations of [his] complaint,'" *Schwarzenegger*, 374 F.3d at 800

16   (citation omitted), but, rather, is "obligated to come forward with facts, by affidavit

17   or otherwise, supporting personal jurisdiction."  *Amba Mktg. Sys., Inc. v. Jobar

18   Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977).  "[M]ere 'bare bones' assertions of

19   minimum contacts with the forum or legal conclusions unsupported by specific

20   factual allegations will not satisfy a plaintiff's pleading burden" at the Rule

21   12(b)(2) stage.  *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).

22        **B.**  "The Due Process Clause of the Fourteenth Amendment constrains a

23

24

25

26   [6]  *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc) ("Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same.").

27

28

State's authority to bind a nonresident defendant to a judgment of its courts" and generally requires that such a defendant "have 'certain minimum contacts [with the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Walden*, 571 U.S. at 283 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  The "constitutional touchstone" is whether the defendant "purposefully established 'minimum contacts' in the forum State" as the "result [of] actions by the defendant *himself* [or *herself*] that create a 'substantial connection' with the forum State."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985) (citations omitted).  A nonresident defendant may not be "haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person,'" *id.* at 475 (citations omitted), and "mere injury to a forum resident is not a sufficient connection to the forum."  *Walden*, 571 U.S. at 290.

**C.**  The Supreme Court has "differentiated between general . . . and specific . . . jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  Plaintiff alleges no facts establishing jurisdiction under either theory (indeed, the complaint says nothing at all about personal jurisdiction or how it might exist as to Carrigan).  There is certainly no basis for *general* jurisdiction, which would require Carrigan's California "affiliations" to be "so 'continuous and systematic' as to render [her] essentially at home" there.  *Id.*; *see Schwarzenegger*, 374 F.3d at 801 (general-jurisdiction contacts must "'approximate physical presence' in the forum state," which is "an exacting standard").

Plaintiff fares no better with *specific* jurisdiction because his allegations describe no "activities" by Carrigan that she "purposefully directed" at California. *Burger King*, 471 U.S. at 472-73; *see Picot v. Weston*, 780 F.3d 1206, 1211-12 (9th Cir. 2015) ("purposeful direction" is first prong of "three-part test" for specific jurisdiction).  That is especially so in light of *Walden*.  There, the Supreme Court

8

unanimously held that a *Bivens* defendant from Georgia could not be sued for his
Georgia conduct in Nevada.  *See* 571 U.S. at 279-82, 288-91 (explaining that
defendant seized gambling proceeds of Nevada plaintiffs as they transited through
Atlanta airport and helped draft forfeiture affidavit for Georgia AUSA, which
delayed return of funds to plaintiffs once back in Nevada).  Plaintiff's case for
specific jurisdiction falls short under *Walden* for multiple reasons:

*First*, Plaintiff Marcus alleges that he and his wife "reside [in] Jerusalem,
Israel" but also maintain "a residential address and a business address in the United
States" and, for their U.S. "mailing address," use a Post Office box in Ojai,
California, which appears to have been where Plaintiff received the relevant TSA
PreCheck correspondence.  Compl. ¶ 20 & Exs. 23, 25, 40 (Doc. 1 at 313, 323,
395).  But by itself, Plaintiff's maintaining a Post Office box in California can't
subject Carrigan to jurisdiction there because the Supreme Court has "consistently
rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by
demonstrating contacts between the plaintiff (or third parties) and the forum State."
*Walden*, 571 U.S. at 284.  "Put simply, however significant the plaintiff's contacts
with the forum may be, those contacts cannot be 'decisive in determining whether
the defendant's due process rights are violated.'"  *Id*. at 285 (citation omitted).

*Second*, even if Carrigan forged a relationship with Plaintiff through her
involvement in his TSA PreCheck revocation, that is also insufficient because "a
defendant's relationship with a plaintiff or third party, standing alone, is an
insufficient basis for jurisdiction," and the "'minimum contacts' analysis looks to
the defendant's contacts with the forum State itself, not the defendant's contacts
with persons who reside there," *id.* at 285-86.  Plaintiff's allegations do not
substantially "connect[]" Carrigan's "conduct to" *California* but, at most, "just to a
plaintiff who lived there" (or, more precisely, to a plaintiff who has a Post Office
box there).  *Id*. at 288; *accord Picot*, 780 F.3d at 1214.

*Third*, even if Carrigan thought she was revoking the TSA PreCheck eligibility of a California resident, that, too, is insufficient. *Walden*, 571 U.S. at 289 (defendant's "actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections"); *Axiom Foods v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017) ("we must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum").

*Fourth*, any alleged "injury" resulting from the revocation of Plaintiff's TSA PreCheck eligibility "does not evince a connection" between Carrigan and California. *Walden*, 571 U.S. at 290. What precipitated the alleged injury, Plaintiff says, was his engagement in activity protected by the First Amendment, *i.e.*, his filing a PFR. But that activity had no connection to California. The PFR was filed in the Fifth Circuit in Louisiana and listed an address for Plaintiff not in California but in Houston, Texas.[7] The TSA PreCheck revocation occurred outside California. Any alleged injury that resulted isn't "tethered to [California] in any meaningful way," *id.*; *Picot*, 780 F.3d at 1215, because Plaintiff will experience the "same lack of access" to TSA PreCheck benefits at *any* U.S. airport he might use. *Walden*, 571 U.S. at 290. Indeed, so far as the complaint suggests, Plaintiff has yet to suffer *any* injury *in California* as a result of the revocation.[8] Accordingly, his alleged injury is simply "not connected to the forum State in a way that makes" any "effects" of Carrigan's Virginia conduct "a proper basis for jurisdiction" in California. *Id.* at 290; *see Picot*, 780 F.3d at 1215.

---

[7] Compl., Ex. 24, Doc. 1 at 322 (signature block); *see id*. at 318-19 (stating in PFR that Plaintiff "liv[es]" at his "residence" in Israel and that his "principal place of business" is in Texas).

[8] *See* Compl. ¶¶ 882-83 (acknowledging that Plaintiff has not "been in" or "flown in" the United States since December 9, 2020, well before the TSA PreCheck revocation in November 2021).

1    Ultimately, Plaintiff seeks to sue Carrigan in California for a TSA decision

2    made outside California and communicated to Plaintiff through a letter from

3    Carrigan's Virginia office.  But decisions of this ilk affecting a plaintiff's interest,

4    when made by Executive Branch officials in or near the Nation's capital, cannot

5    subject such officials to jurisdiction in *any* distant forum where the affected

6    plaintiff wishes to sue.  *Linlor v. Whetsell*, 2018 WL 5019383 (D. Nev. Oct. 16,

7    2018), *aff'd*, 776 F. App'x 461 (9th Cir. 2019) (no personal jurisdiction in Nevada

8    over TSA supervisor in Virginia sued for failing to preserve evidence of passenger

9    screening at Virginia airport); *Mahmud v. Oberman*, 508 F. Supp. 2d 1294, 1296-

10   97, 1300-02 & n.7 (N.D. Ga. 2007) (no personal jurisdiction in Georgia over

11   nonresident TSA official who, while in DC or Virginia, found the plaintiff to be a

12   security risk, revoked the Hazardous Material Endorsement to his driver's license,

13   and signed and mailed the revocation notice to him in Georgia), *aff'd sub nom.*,

14   *Mahmud v. DHS*, 262 F. App'x 935 (11th Cir. 2008).[9]  If that sort of routine

15   agency conduct sufficed for personal jurisdiction, then a very large swath of the

16   federal workforce could be sued for it "in any one of the 95 federal districts

17   covering the 50 states and other areas within federal jurisdiction."  *Stafford v.*

18   *Briggs*, 444 U.S. 527, 544 (1980).  But that is not the law, and the *Bivens* claim

19   against Carrigan should be dismissed.

20   **II.   VENUE**

21   Plaintiff also bears the burden of proving that venue is proper in this District

22   as to his *Bivens* claim against Carrigan.  *Piedmont Label Co. v. Sun Garden*

23   ---

24   [9]  *Accord Gowadia v. Stearns*, 596 F. App'x 667, 670 (10th Cir. 2014) (no personal jurisdiction
     in Colorado over nonresident BOP officials who made housing decisions about Colorado

25   inmate); *see Oksner v. Blakey*, 2007 WL 3238659, *9 (N.D. Cal. Oct. 31, 2007) ("this Court does
     not automatically have jurisdiction over every federal agency official in the [country] who

26   participates in implementing nationwide regulations," and "the mere fact that federal officials
     enforce federal laws and policies on a nationwide basis is not sufficient in and of itself to confer

27   personal jurisdiction") (citing cases), *aff'd*, 347 F. App'x 290 (9th Cir. 2009); *accord Munns v.*
     *Clinton*, 822 F. Supp. 2d 1048, 1078 (E.D. Cal. 2011).

28

*Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979); *Fang v. Blinken*, 2021 WL 4900372, *1 (C.D. Cal. June 22, 2021). Plaintiff alleges that venue is "proper" in this District "because a substantial part of the events or omissions giving rise to this lawsuit occurred in California and in connection with flights to/from California," Compl. ¶ 43. Thus, he appears to invoke 28 U.S.C. § 1391(b)(2) ("A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated . . . .").

Section 1391(b)(2), however, does not place venue in this District with respect to the *Bivens* claim against Carrigan, even if it does so with respect to other claims against other Defendants. Under this provision, "venue must be proper as to each claim and as to each party." 14D Chas. A. Wright, *et al*., Fed. Prac. & Proc. Civ. § 3807 at 206-07 (4th ed. 2013) (footnote omitted); *accord Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1126 (C.D. Cal. 2009). Consequently, Carrigan should be dismissed for lack of venue under Rule 12(b)(3) because *all* of "the events or omissions giving rise to the claim" against *her*, § 1391(b)(2), necessarily occurred outside California. No part of her conduct relating to the TSA PreCheck revocation occurred in this District.

## III.  SUBJECT-MATTER JURISDICTION

Plaintiff also bears the burden of establishing subject-matter jurisdiction as to each of his claims. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Two of them, as mentioned, challenge the TSA PreCheck revocation: Count 18 (an equitable-relief claim against TSA and Carrigan in her official capacity) and Count 19 (an individual-capacity *Bivens* damages claim against Carrigan). Our co-Defendants have explained why this Court lacks subject-matter jurisdiction over Count 18: it seeks review and, in essence, vacatur of a final TSA order (the revocation decision), but pursuant to 49 U.S.C. § 46110, such a matter

can only be heard, if at all, through a PFR in a court of appeals. Doc. 97-1 at 26-29. Carrigan joins in that argument and, without repeating it here, further explains why § 46110 also divests this Court of subject-matter jurisdiction over Count 19.

Appellate courts "lack jurisdiction" under § 46110 "to grant damages." *Latif v. Holder*, 686 F.3d 1122, 1128 (9th Cir. 2012). So "[i]n principle," district courts "may have residual jurisdiction" to decide "certain" damages claims involving TSA orders. *Americopters, LLC v. FAA*, 441 F.3d 726, 735-36 (9th Cir. 2006). "In practice," however, the Ninth Circuit has "developed a body of case law that limits the jurisdiction of the district court, barring it from hearing a damages claim that is 'inescapably intertwined with a review of the procedures and merits surrounding the [TSA's] order.'" *Id.* at 736 (citations omitted). "The purpose of this restriction" is to prevent plaintiffs from using "constitutional tort claims" as "a collateral attack" on a pending TSA order and to "allow courts to identify and dismiss damages claims that are actually 'thinly disguised attempt[s] at an end-run around the jurisdictional limitation imposed by [§ 46110]'" or to evade "entirely established administrative procedures." *Id.* (citations omitted). Here, the *Bivens* claim against Carrigan satisfies the inescapably-intertwined standard because it makes no "broad challenge" to TSA's "allegedly unconstitutional actions" but, instead, challenges the revocation order in Plaintiff's particular case and, thus, is "based on the merits of an individual situation," *Latif*, 686 F.3d at 1128 (cleaned up).[10] Thus, Count 19, like Count 18, should be dismissed under Rule 12(b)(1).

---

[10] *See Gilmore v. Gonzales*, 435 F.3d 1125, 1133 n.9 (9th Cir. 2006) (due-process claim was inescapably intertwined with review of TSA airport-security orders because "it squarely attack[ed]" them, and other claims were not "broad facial challenges" but, rather, "as-applied challenges" that "ar[o]se out of the particular facts" of plaintiff's encounter with airline); *Foster v. Skinner*, 70 F.3d 1084, 1087-88 (9th Cir. 1995) (no district-court jurisdiction over *Bivens* claims that alleged "case specific mistreatment regarding the revocation and reinstatement of [plaintiff's] flight privileges"); *Mace v. Skinner*, 34 F.3d 854, 858 (9th Cir. 1994) (no jurisdictional bar to damages claim raising "broad challenge" to agencies' "allegedly unconstitutional actions," but statute "obviously barred" one claim challenging "the merits of [a] particular revocation order"); *accord Tur v. FAA*, 104 F.3d 290, 290-92 (9th Cir. 1997).

13

## IV.   LACK OF *BIVENS* REMEDY

As redress for the TSA PreCheck revocation, Plaintiff asks the Court to provide him with a non-statutory damages remedy against Carrigan personally for First Amendment retaliation pursuant to *Bivens*.  But a *Bivens* remedy has never been "an automatic entitlement" and "in most instances" is "unjustified."  *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007).  Here, Plaintiff's proposed *Bivens* claim is controlled and squarely foreclosed by the Supreme Court's decision in *Egbert* from earlier this summer.  And although this Court need not reach the issue, the claim is also foreclosed by earlier precedent in this field, *e.g.*, *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017).  The *Bivens* claim, then, should be dismissed under Rule 12(b)(6).

**A.**  The Supreme Court has authorized a *Bivens* remedy only three times—in *Bivens* itself and, thereafter, in *Davis v. Passman*, 442 U.S. 228 (1979), and *Carlson v. Green*, 446 U.S. 14 (1980).  "Since *Carlson*," the Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants," *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001), and it repeatedly has emphasized that any expansion of "the *Bivens* remedy" beyond the parameters of *Bivens*, *Davis*, and *Carlson* is "a 'disfavored' judicial activity." *Abbasi*, 137 S. Ct. at 1857 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)); *accord Egbert*, 142 S. Ct. at 1803; *Hernández v. Mesa*, 140 S. Ct. 735, 743 (2020).[11]  Thus, since *Abbasi*, a court presented with a proposed *Bivens* claim has been required to (1) determine if the claim arises in a "new context" as compared to *Bivens*, *Davis*, and *Carlson*, and (2) if it does, to conduct "a special factors analysis" before "allowing [the claim] to proceed."  *Abbasi*, 137 S. Ct. at 1855, 1857-60, 1864-65.  "[A] *Bivens* remedy will not be available if there are 'special

---

[11]  As the Tenth Circuit observed a few weeks ago, one "lesson[] from *Egbert*" is that a *Bivens* expansion is not merely "disfavored" but "is impermissible in virtually all circumstances."  *Silva v. United States*, 2022 WL 3023684, *4 (10th Cir. Aug. 1, 2022); *see id.* at *1 ("The Supreme Court's message could not be clearer—lower courts expand *Bivens* claims at their own peril.").

factors counselling hesitation in the absence of affirmative action by Congress.'"
*Id*. at 1857 (certain internal quotation marks and citations omitted).

In *Egbert*, the Supreme Court considered two *Bivens* claims asserted against a Border Patrol agent—one for Fourth Amendment excessive force and one for First Amendment retaliation.  Applying *Abbasi*'s two-step inquiry (although stating that "those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy," 142 S. Ct. at 1803), the Court reversed the Ninth Circuit and held that a *Bivens* remedy was not available for either claim.  *Id.* at 1804.  The First Amendment claim unquestionably "present[ed] a new *Bivens* context," and so the Court framed the next "question" as "whether to extend *Bivens* to this context" and unanimously answered in the negative:  "we hold that there is no *Bivens* action for First Amendment retaliation."  *Id.* at 1807.[12]  As the Court explained, it had "many reasons to think that Congress, not the courts, is better suited to authorize such a damages remedy."  *Id.*  Of particular concern was the "acute risk" that a *Bivens* extension "to alleged First Amendment violations would pose" to "increasing" the "'substantial social costs'" that *Bivens* litigation entails, including the potential for such lawsuits to "'unduly inhibit officials in the discharge of their duties'" and for a new First Amendment liability to "'deter[] [them] from' carrying out their duties" and making "decisions that they believe to be a correct response to improper [activity]," *id.* (citations omitted; brackets in original).  Any plaintiff, the Court observed, "can turn practically any adverse action into grounds for a retaliation claim" and, even when the claim is "frivolous" or "'insubstantial,'" "'set

---

[12]  Although it divided 6-3 as to the Fourth Amendment claim, the Court rejected *Bivens* remedies for First Amendment retaliation by a 9-0 vote.  142 S. Ct. at 1800, 1804, 1807-09 (maj. op. by Thomas, J., joined by Roberts, C.J., and Alito, Kavanaugh, and Barrett, JJ.); *id*. at 1809-10 (Gorsuch, J., concurring in the judgment); *id.* at 1811, 1817-18 (Sotomayor, J., joined by Breyer and Kagan, JJ., concurring in the judgment in part and dissenting in part).

1    off broad-ranging discovery'" and avoid "'summary disposition'" simply because
2    "'an official's state of mind is easy to allege and hard to disprove,'" *id.* (citations
3    omitted). For the Court, then, there was no doubt that "the 'prospect of personal
4    liability' under the First Amendment would lead 'to new difficulties and
5    expense,'" and so "in light of these costs, 'Congress is in a better position to decide
6    whether or not the public interest would be served' by imposing a damages
7    action." *Id.* (citations omitted); *accord id.* at 1818 (Sotomayor, J., concurring in
8    the judgment in part and dissenting in part).

9          For Plaintiff Marcus, *Egbert* is an insurmountable obstacle. There, as just
10   explained, the Supreme Court categorically barred any extension of *Bivens* to the
11   very claim that Plaintiff seeks to bring. Based on *Egbert* alone, this Court should
12   dismiss the *Bivens* claim against Carrigan with prejudice.[13]

13         **B.**   In light of *Egbert*, the Court need not engage in further analysis under
14   *Abbasi* and apply its two-step inquiry to Plaintiff's proposed *Bivens* claim for First
15   Amendment retaliation. (*Egbert* already did so.) But if the *Abbasi* analysis is
16   considered, it requires dismissal. *Egbert* confirms the novelty of Plaintiff's
17   claim.[14]   And in light of *Abbasi*, *Hernández*, and *Egbert*, several special factors
18   strongly counsel against any *Bivens* extension here—a conclusion further
19   supported by (1) a nearly unbroken line of Ninth Circuit cases declining, post-
20   *Abbasi*, to extend *Bivens* to First Amendment claims, *see Lietz v. Wilpher*, 2022

---

[13]  *See Smith v. Starr*, 2022 WL 3135305, *3 (D. Minn. Aug. 5, 2022) (*Egbert* "squarely decided
that *Bivens* does not extend to First Amendment retaliation claims"); *Cruz v. Childers*, 2022 WL
3021141, *2 n.2 (W.D. Va. July 29, 2022) (*Egbert* "made clear that there is no general claim of
'retaliation' against federal officers"); *Cohen v. United States*, 2022 WL 2181457, *2 (S.D.N.Y.
June 16, 2022) (describing *Egbert* as "holding that *Bivens* actions are not available for First
Amendment retaliation claims"); *Goldstein v. Biden*, 2022 WL 2109194, *2-3 (E.D. Pa. June 10,
2022) (First Amendment retaliation claim was "legally baseless" after *Egbert*, which
"specifically held that no First Amendment retaliation claim is available under *Bivens*").

[14]  *See* 142 S. Ct. at 1807 ("the Court of Appeals correctly held that Boule's First Amendment
claim presents a new *Bivens* context"); *accord id.* at 1817 (Sotomayor, J.).

WL 1955742, *1 (9th Cir. June 6, 2022) (no *Bivens* remedy for First Amendment retaliation against VA employees);[15] and (2) several cases, including one from this District, declining to extend *Bivens*, post-*Abbasi*, to constitutional claims asserted against TSA employees like Carrigan.[16]  As in some or all of those cases, *this* one:

**(1)** involves a plaintiff seeking to assert a non-statutory constitutional claim where other "alternative, existing process[es]" are potentially available, *Wilkie*, 551 U.S. at 550, including:  **(a)** Plaintiff's equitable-relief claim, Compl. ¶ 888 (Count 18);[17] **(b)** a PFR under 49 U.S.C. § 46110, *see supra* pp. 12-13;[18] and **(c)** various administrative processes that "Congress already has provided, or has authorized the Executive to provide," *Egbert*, 142 S. Ct. at 1804; *see*, *e.g.*, 6 U.S.C. § 345 (DHS Office of Civil Rights and Civil Liberties); TSA Civil Rights &

---

[15] *Accord Reid v. United States*, 825 F. App'x 442, 444-46 (9th Cir. 2020); *Kandi v. Mgmt. & Training Corp*., 778 F. App'x 462-63 (9th Cir. 2019); *Luis Buenrostro v. Fajardo*, 770 F. App'x 807-08 (9th Cir. 2019); *Schwarz v. Meinberg*, 761 F. App'x 732, 733-34 (9th Cir. 2019); *Vega v. United States*, 724 F. App'x 536, 539 (9th Cir. 2018); *Vega v. United States*, 881 F.3d 1146, 1148-49, 1152-55 (9th Cir. 2018).  Indeed, *Egbert* is the only post-*Abbasi* case in which the Ninth Circuit extended *Bivens* to a First Amendment claim, but as mentioned, that decision was unanimously reversed by the Supreme Court.

[16] *See Lundquist v. United States*, 2021 WL 3744573, *1-2, *5-8 (C.D. Cal. July 27, 2021) (no *Bivens* remedy against TSA screeners for First and Fourth Amendment claims), *appeal dismissed*, 2022 WL 1639659 (9th Cir. May 24, 2022); *Vanderklok*, 868 F.3d at 193-94, 198-209 (same as to First Amendment retaliation); *accord Pellegrino v. U.S. TSA*, 937 F.3d 164, 180 (3d Cir. 2019) (en banc); *Leuthauser v. United States*, 576 F. Supp. 3d 806, 810-15 (D. Nev. 2021); *Osmon v. United States*, 2020 WL 9047166, *2, *7-11 (W.D.N.C. Dec. 7, 2020) (M.J. Rec.), *adopted*, 2021 WL 1187090 (W.D.N.C. Mar. 29, 2021); *Mengert v. U.S. TSA*, 2020 WL 7029893, *1, *7-9 (N.D. Okla. Nov. 30, 2020); *Scruggs v. Nielsen*, 2019 WL 1382159, *1, *5 & n.9, *7 (N.D. Ill. Mar. 27, 2019).

[17] *See Abbasi*, 137 S. Ct. at 1862, 1865 (injunctive relief was an alternative process); *accord Malesko*, 534 U.S. at 74; *Schwarz*, 761 F. App'x at 735; *Zavala v. Rios*, 721 F. App'x 720, 721-22 (9th Cir. 2018); *cf. W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1123 (9th Cir. 2009) (APA "leaves no room for *Bivens* claim based on agency action or inaction").

[18] *See also* Doc. 97-1 at 21 (where co-Defendants explain that, in Plaintiff's PFR matter, the D.C. Circuit denied his "motion to compel" restoration of TSA PreCheck status because he hadn't filed a PFR challenging that particular TSA order and never did so subsequently).

1   Liberties, Ombudsman & Traveler Engagement; *see generally Abbasi*, 137 S. Ct. at

2   1858 (where "an alternative remedial structure [is] present," that "alone may limit

3   the power of the Judiciary to infer a new *Bivens* cause of action");[19]

4       **(2)** involves a subject matter—airport security and passenger screening—to

5   which Congress has paid "frequent and intense" attention, *id.* at 1862, authorizing

6   only non-damages processes that reflect a "calibration" that "courts cannot second-

7   guess . . . by superimposing a *Bivens* remedy."  *Egbert*, 142 S. Ct. at 1807; *see*

8   *Vanderklok*, 868 F.3d at 208 (a court "should hesitate to create" additional *Bivens*

9   remedies in TSA context "when it appears that the available ones are limited by

10  Congressional design");

11      **(3)** implicates national security—given TSA's mission and the fact that

12  Carrigan is sued for making a TSA PreCheck risk assessment about Plaintiff (*i.e.*,

13  whether he posed a "sufficiently low risk to transportation and national security,"

14  Compl., Ex. 25)—but *Egbert* reaffirmed that a *Bivens* action "may not lie where, as

15  here, national security is at issue," 142 S. Ct. at 1805;[20] and

16      **(4)** implicates the *Egbert* concern that a new First Amendment liability

17  would unduly inhibit Executive Branch officials in the discharge of their duties—a

18  heightened concern, here, given the potential chilling effect of such liability on

19  TSA officials like Carrigan making TSA PreCheck risk assessments and

20  revocation decisions.  Carrying out such duties directly impacts TSA screening and

21  national security and involves scenarios where on-the-job hesitation could put

22

23  _____

24  [19]  *See Lundquist*, 2021 WL 3744573, at *8 (relying on §§ 46110 and 345 in special-factors
    analysis); *Osmon*, 2020 WL 9047166, at *9-10 (same); *Vanderklok*, 868 F.3d at 204-05, 208
25  (same as to § 46110); *Leuthauser*, 576 F. Supp. 3d at 813-14 ("mere presence" of § 345, a
    "congressionally directed remedy," "militates against an extension of *Bivens*" to TSA screening).

26  [20]  *Accord Hernández*, 140 S. Ct. at 745-47; *Vanderklok*, 868 F.3d at 206-09; *Leuthauser*, 576 F.
    Supp. 3d at 814-15; *see Scruggs*, 2019 WL 1382159, at *5 & n.9 (no *Bivens* "expansion" to TSA
27  screening given "the national-security context, which counsels hesitation for a host of reasons").

28

"passengers," "airline and airport personnel," and "the general public" at risk.
*Aukai*, 497 F.3d at 956; *see Mohamed v. Holder*, 995 F. Supp. 2d 520, 527 (E.D.
Va. 2014) (stating that, in TSA screening context, "the stakes are so high and the
consequences of a lapse in security so potentially catastrophic").[21]

\* \* \* \* \*

"If there is even a single 'reason to pause before applying *Bivens* in a new
context,' a court may not recognize a *Bivens* remedy." *Egbert*, 142 S. Ct. at 1803.
Here, *several* factors—whether "[t]aken together," *Chappell v. Wallace*, 462 U.S.
296, 304 (1983), or considered in isolation—indicate that "the Judiciary is at least
arguably less equipped than Congress to 'weigh the costs and benefits of allowing
a damages action to proceed.'" *Egbert*, 142 S. Ct. at 1803 (citations omitted).
Whether controlled by *Egbert* alone, or based on a fulsome special-factors analysis
under *Abbasi*, Plaintiff's request to extend *Bivens* to the new contexts of First
Amendment retaliation and TSA passenger screening must be rejected.

## V.   QUALIFIED IMMUNITY

"In the limited settings where *Bivens* does apply," *Iqbal*, 556 U.S. at 675,
any *Bivens* claim is "subject to the defense of qualified immunity." *Malesko*, 534
U.S. at 72.  That defense bars the *Bivens* claim against Carrigan and requires
dismissal under Rule 12(b)(6).

**A.**  Qualified immunity shields government officials "from money damages
unless a plaintiff pleads facts showing (1) that the official violated a statutory or
constitutional right, and (2) that the right was 'clearly established' at the time of
the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting

---

[21]  *See also Vanderklok*, 868 F.3d at 207 (the "threat of damages liability could indeed increase
the probability that a TSA agent would hesitate in making split-second decisions about
suspicious passengers," and "that is surely a special factor that gives us pause"); *accord
Leuthauser*, 576 F. Supp. 3d at 814; *Lundquist*, 2021 WL 3744573, at *7; *Osmon*, 2020 WL
9047166, at *10-11; *Mengert*, 2020 WL 7029893, at *9.

19

1    *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  By "protect[ing] 'all but the

2    plainly incompetent or those who knowingly violate the law,'" *Abbasi*, 137 S. Ct.

3    at 1867 (citation omitted), this doctrine "acts to safeguard government, and thereby

4    to protect the public at large," *Wyatt v. Cole*, 504 U.S. 158, 168 (1992).  Courts

5    have discretion to decide which of the two immunity "prongs . . . to tackle first."

6    *al-Kidd*, 563 U.S. at 735.  Here, Plaintiff cannot establish either one.

7         **B.**  At the first prong, a court determines "whether the facts that a plaintiff

8    has alleged . . . make out a violation of a constitutional right," *Pearson v.

9    Callahan*, 555 U.S. 223, 232 (2009), and applies the pleading standards of Federal

10   Rule of Civil Procedure 8.  Rule 8(a)(2) "requires more than labels and

11   conclusions" or "a formulaic recitation of the elements of a cause of action," *Bell

12   Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[T]he tenet that a court must

13   accept as true all of the allegations contained in a complaint is inapplicable to legal

14   conclusions.  Threadbare recitals of the elements of a cause of action, supported by

15   mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Rather, the

16   "[f]actual allegations" must have "enough heft" to "raise a right to relief above the

17   speculative level," *Twombly*, 550 U.S. at 555, 557.  "[O]nly a complaint that states

18   a plausible claim for relief survives a motion to dismiss," *Iqbal*, 556 U.S. at 679.

19        Here, at the first prong, Plaintiff fails to state a plausible claim of First

20   Amendment retaliation because his complaint alleges only conclusions and no

21   facts that satisfy all elements of his claim.  As explained below, even assuming that

22   Plaintiff engaged in First Amendment-protected activity when he filed the PFR, he

23   still does not plausibly allege "a retaliatory motive" on Carrigan's part, *Nieves v.

24   Bartlett*, 139 S. Ct. 1715, 1722 (2019), or "a substantial causal relationship"

25   between his protected activity and the TSA PreCheck revocation, the alleged

26   "adverse action" in this case.  *Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022)

27   (quoting *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010)).

28

*First*, Plaintiff does not even allege that Carrigan *knew* about the PFR before she signed the revocation letter.  *See Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1954 (2018) (retaliatory-arrest plaintiff "likely could not have maintained [such a] claim against the arresting officer" where, *inter alia*, there was "no showing that the officer had any knowledge of [plaintiff's] prior speech").[22]

*Second*, Plaintiff does not plausibly allege, otherwise, that a retaliatory motive underlay Carrigan's letter.  It nowhere mentions the PFR and, instead, gave Plaintiff "a neutral, investigative reason" for the revocation, *Iqbal*, 556 U.S. at 677, *i.e.*, "TSA was unable to determine that you pose a sufficiently low risk to transportation and national security to continue to be eligible for expedited airport security screening through [TSA PreCheck]."  Compl., Ex. 25.  No factual allegations in the complaint call TSA's facially valid explanation into question. *See USPS v. Gregory*, 534 U.S. 1, 10 (2001) ("a presumption of regularity attaches to the actions of Government agencies").  Although Plaintiff makes the bare assertion that the TSA PreCheck revocation "clearly represents illegal retaliation against him for suing TSA" and that "there is no other reason" for the revocation "except for blatant retaliation for his First Amendment-protected activities," Compl. ¶ 882; *accord id*. ¶¶ 884, 889, such a "bald allegation of impermissible motive on [Carrigan's] part, standing alone, is conclusory and is therefore not entitled to an assumption of truth."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009).  Thus, "[a]s between [the] 'obvious alternative explanation'" for

---

[22] *Accord Nieves*, 139 S. Ct. at 1727-28 (rejecting retaliation claim as to one officer "who had no knowledge of [plaintiff's] prior run-in with" second officer); *Vega*, 724 F. App'x at 539 (rejecting retaliation claim under *Iqbal* where plaintiff "did not plead that any of the defendants had knowledge" of his protected activity); *Pratt v. Rowland*, 65 F.3d 802, 807-08 (9th Cir. 1995) (inmate could not establish that he was transferred "in retaliation for" his granting television interview to local network affiliate absent evidence that defendants "were actually aware of" interview); *Hammler v. Alvarez*, 2019 WL 422575, *9 (S.D. Cal. Feb. 4, 2019) (M.J. Rec.) (retaliation claim "fail[ed]" absent "allegation that [defendant] ever knew that Plaintiff filed a grievance against him"), *adopted*, 2019 WL 3315567 (S.D. Cal. July 24, 2019).

the revocation provided in the letter, and the retaliatory motive that Plaintiff

suggests in conclusory fashion, the latter "is not a plausible conclusion." *Iqbal*,

556 U.S. at 682 (quoting *Twombly*, 550 U.S. at 567).[23]

*Third*, the only relevant *fact* that Plaintiff pleads is that the revocation

occurred about a month after he filed the PFR.  Compl. ¶ 116.  But "[r]etaliation is

not established simply by showing adverse activity by [a] defendant after protected

speech," *Brown v. Ferriter*, 2009 WL 4827426, *3 (D. Mont. Dec. 11, 2009), and

"suspicious timing, without more, is insufficient." *Wearren v. Gofferman*, 2021

WL 6496724, *9 (C.D. Cal. Aug. 24, 2021) (M.J. Rec.), *adopted*, 2021 WL

6496806 (C.D. Cal. Oct. 14, 2021); *see Huskey v. City of San Jose*, 204 F.3d 893,

899 (9th Cir. 2000) (rejecting retaliation claim based on "the logical fallacy of *post

hoc*, *ergo propter hoc*, literally, 'after this, therefore because of this'") (citation

omitted).[24]  By itself, then, the alleged timeline does not plausibly establish the

required "but for" nexus between the PFR and the TSA PreCheck revocation.

*Denney v. DEA*, 508 F. Supp. 2d 815, 830-31 (E.D. Cal. 2007).[25]

**C.**  Lastly, even if Plaintiff has stated a First Amendment retaliation claim at

the first prong of the immunity analysis, the claim still fails at the second prong.

"A plaintiff 'bears the burden of showing that the right at issue was clearly

---

[23] *See Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)
("When considering plausibility, courts must also consider an 'obvious alternative explanation'
for defendant's behavior."); *accord Gonzalez v. Planned Parenthood*, 759 F.3d 1112, 1116 (9th
Cir. 2014); *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013).

[24] *See also Pratt*, 65 F.3d at 808 (although "timing can properly be considered as circumstantial
evidence of retaliatory intent," it was insufficient in this "particular case" as there was "little else
to support the inference," *i.e.*, "[m]ost importantly," no evidence that defendants were aware of
plaintiff's protected activity); *Hammler*, 2019 WL 422575, at *9 ("Mere allegations of timing—
without more—are not sufficient to satisfy this element.").

[25] *See Nieves*, 139 S. Ct. at 1722 ("It is not enough to show that an official acted with a
retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury.
Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff
would not have been taken absent the retaliatory motive.").

22

1   established.'" *Emmons v. City of Escondido*, 921 F.3d 1172, 1174 (9th Cir. 2019)

2   (citations omitted).  "The dispositive question is 'whether the violative nature of

3   *particular* conduct is clearly established.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308

4   (2015) (citations omitted).  If "a reasonable officer *might* not have known for

5   certain" that the particular conduct ascribed to her "was unlawful," then "the

6   officer is immune from liability." *Abbasi*, 137 S. Ct. at 1867 (emphasis added).

7          As "a general matter," the First Amendment "'prohibits government officials

8   from subjecting an individual to retaliatory actions' for engaging in protected

9   speech." *Nieves*, 139 S. Ct. at 1722 (citation omitted).  But the "clearly established

10  law" inquiry requires more than such "a broad general proposition," *Saucier v.*

11  *Katz*, 533 U.S. 194, 201 (2001), because it "acknowledge[s] that reasonable

12  mistakes can be made as to the legal constraints on particular [government]

13  conduct" and that "[i]t is sometimes difficult for an officer to determine how the

14  relevant legal doctrine . . . will apply to the factual situation [she] confronts." *Id.* at

15  205.  Thus, the Supreme Court has "repeatedly told courts . . . not to define clearly

16  established law at a high level of generality," *al-Kidd*, 563 U.S. at 742, and it has

17  emphasized that the "standard . . . requires that the legal principle clearly prohibit

18  the officer's conduct in the particular circumstances before [her]" and "requires a

19  high 'degree of specificity.'" *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018).

20         The "specific context" of this case, *Saucier*, 533 U.S. at 201, is Defendant

21  Carrigan's discretionary determination of Plaintiff's continuing TSA PreCheck

22  eligibility, which depended on whether she could affirmatively find that he

23  presented a "sufficiently low risk to transportation and national security," *see*

24  *supra* p. 4 & n.4.  The question is whether Carrigan violated clearly established

25  First Amendment law *if*, as Plaintiff says, she based her negative risk assessment of

26  him on his PFR that challenged TSA's implementation of the CDC mask order.

27  She did not.  There appear to be no cases of "controlling authority," nor "a robust

28

1    'consensus of cases of persuasive authority,'" *al-Kidd*, 563 U.S. at 742 (citation

2    omitted), examining TSA PreCheck or establishing what a TSA official may or

3    may not consider when assessing participant eligibility under the low-risk standard.

4    But in reasonably analogous cases, courts have held that government officials may

5    appropriately consider First Amendment-protected activity when making similar

6    risk or security assessments, without making the government's corresponding

7    actions "retaliatory."  *See George v. Rehiel*, 738 F.3d 562, 586 (3d Cir. 2013)

8    (despite protected nature of passenger's Arabic-English flashcards bearing words

9    like "bomb" and "terrorist," TSA screeners had qualified immunity on First

10   Amendment retaliation claim, as they were not required to "ignore" the cards'

11   "content or refrain from investigating" the passenger "because of the words they

12   contained.  The totality of circumstances here could cause a reasonable person to

13   believe that the items George was carrying raised the possibility that he might pose

14   a threat to airline security. That suspicion was the reason for their increased level

15   of scrutiny during the airport screening.").[26]

16        In conducting her risk assessment of Plaintiff, Carrigan could have relied on

17   "*[a]ny . . . information* relevant to [his] eligibility," *see supra* n.2 (quoting TSA

18   Website; emphasis added).  And under precedent like *George* and *Reichle*, a

19   reasonable TSA official in Carrigan's position could have taken into account

20   Plaintiff's PFR and viewed it (1) as probative of whether there was a risk that

21   Plaintiff might violate the mask order on a commercial flight and (2) thus, as

22   relevant to his eligibility and whether she could affirmatively find that he met the

23

24

---

25   [26]  *See also Reichle v. Howards*, 566 U.S. 658, 668 (2012) ("An officer might bear animus
     toward the content of a suspect's speech.  But the officer may decide to arrest the suspect
26   because his speech provides evidence of a crime or suggests a potential threat."); *id.* at 671
     (Ginsburg, J., concurring in the judgment) (officers who "protect public officials . . . rightly take
27   into account words spoken to, or in the proximity of, the person whose safety is their charge").

28

low-risk standard.[27]  Particularly in the year in question—when over 4,000 mask-related incidents were reported by airline crews to the FAA, and that agency proposed $5 million in fines against unruly passengers, *see* FAA 2021 Unruly Passenger Data—Carrigan's alleged conduct could not have violated clearly established law in the circumstances she faced.

## CONCLUSION

For the foregoing reasons, Defendant Carrigan respectfully requests that she be dismissed from this action, in her individual capacity, pursuant to Federal Rule of Civil Procedure 12(b).

<div style="margin-left:40%">

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch
MARY HAMPTON MASON
Senior Trial Counsel, Torts Branch
JEREMY SCOTT BRUMBELOW
/s/ Jeremy Scott Brumbelow
Senior Trial Attorney, Torts Branch
U.S. Department of Justice, Civil Division
P.O. Box 7146, Ben Franklin Station
Washington, D.C.  20044-7146
Tel. (202) 616-4330; Fax. (202) 616-4314
</div>

DATED:  August 23, 2022          Email:  jeremy.brumbelow@usdoj.gov

<div style="margin-left:40%">

*Counsel for Defendant Julie Carrigan in her individual capacity*
</div>

---

[27]  *See* Compl., Ex. 24, Doc. 1 at 314-22 (containing PFR wherein Plaintiff (1) stated that TSA "exceed[ed] [its] statutory authority" in implementing CDC mask order; (2) questioned the government's "authority to levy fines . . . for passengers who don't muzzle themselves"; (3) asserted a right to "refuse administration of any unauthorized . . . medical device" (*i.e.*, masks); (4) asserted that he "can't comply" with the mask order; and (5) asserted that the mask order "presents [him] with three choices," including "subject[ing] himself to the unmitigated stress and fear of government and corporate threats and reprisals brought about by *refusing to comply with the mask mandate* that has no basis in law or science") (emphasis added).

1

## <u>CERTIFICATE OF SERVICE</u>

2

    I hereby certify that on this day, August 23, 2022, I electronically filed the
3  foregoing document with the Clerk of the Court using CM/ECF.

4                            JEREMY SCOTT BRUMBELOW

5                            <u>/s/ Jeremy Scott Brumbelow</u>

6                            Senior Trial Attorney, Torts Branch
                             U.S. Department of Justice, Civil Division

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28