1
2
3
4
5

**URI MARCUS**
P.O. Box 126
Ojai, CA  93024
Telephone:  909-833-0065
email: uri@ntcf.org

*Pro Se*

6

# UNITED STATES DISTRICT COURT

7

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

8

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

URI MARCUS, YVONNE MARCUS, AVROHOM GORDON, DEVORAH GORDON & CINDY RUSSO,

*Plaintiffs,*

v.

CENTERS FOR DISEASE CONTROL & PREVENTION, DEPARTMENT OF HEALTH & HUMAN SERVICES, TRANSPORTATION SECURITY ADMINISTRATION, JULIE CARRIGAN, ALASKA AIRLINES, ALLEGIANT AIR, AMERICAN AIRLINES, DELTA AIR LINES, FRONTIER AIRLINES, HAWAIIAN AIRLINES, SOUTHWEST AIRLINES, UNITED AIRLINES, YET-TO-BE-NAMED EMPLOYEES OF THE 8 AIRLINES, STAT-MD, & MEDAIRE,

*Defendants,*

Case No.: 2:22-cv-02383-SSS-ASx

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO DISMISS PURSUANT TO LOCAL RULE 7-9**

Hearing Date: **September 28, 2022**

Time: **9:00 a.m.**

Via Zoom Video Conference

**The Hon. Sunshine Suzanne Sykes**

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................iv

    Cases..................................................................................iv

    Statutes ...........................................................................viii

    Other Authorities...............................................................ix

PRELIMINARY STATEMENT AND INTRODUCTION ................................1

BACKGROUND ........................................................................3

    A.  The COVID-19 Pandemic ...............................................3

    B.  Litigation Background ...................................................5

STANDARD OF REVIEW .............................................................7

ARGUMENT ...........................................................................9

    I.      Plaintiffs' complaint should be dismissed as a shotgun
            pleading. ...............................................................9

    II.     The Court should dismiss TSA and Julie Carrigan in her
            official capacity because it lacks subject-matter jurisdiction
            over the claims against them (Cause of Action 18) ...............12

III.   The Court lacks subject-matter jurisdiction over Plaintiffs' Congressional Review Act claim (Cause of Action 4) .......... 15

IV.   The Court lacks subject-matter jurisdiction over Plaintiffs' ICCPR claim (Cause of Action 17)....................... 16

V.   Plaintiffs fail to state a Tenth Amendment claim (Cause of Action 6) ................................................. 17

VI.   Plaintiffs fail to state a Fifth Amendment claim (Cause of Action 7) ................................................. 18

VII.   Plaintiffs fail to state a right-to-travel claim (Causes of Action 8 & 15)...................................... 22

VIII.  Plaintiffs fail to state an Air Carrier Access Act claim (Cause of Action 9) ................................................. 29

IX.   Plaintiffs fail to state a Food, Drug & Cosmetic Act mpclaim (Causes of Action 10 & 16)....................... 37

CONCLUSION ........................................................................ 37

# TABLE OF AUTHORITIES

*Cases*                                                                   *Page*

*Abadi v. DOT*

   2nd Circuit 21-2807 ........................................................................ 31

*Abadi v. DOT*

   DC Circuit 22-1012 ........................................................................ 31

*Abdi v. Wray*

   942 F.3d 1019, 1032 (10th Cir. 2019) ...................................... 19, 22

*Alexander v. Sandoval*

   532 U.S. 275, 286 (2001) ............................................................. 29

*Asbury Park Bd. of Educ. v. Hope Acad., Charter Sch.*

   278 F. Supp. 2d 417, 420 n.2 (D.N.J. 2003) ............................... 34

*Bell Atlantic Corp. v.Twombly*

   550 U.S. 544, 555 (2007) ............................................................. 11

*Bivens v. Six Unknown Narcotics Agents*

   403 U.S. 388, 392 (1971) ............................................................. 34

*California v. Sierra Club*

   451 U.S. 287, 289–90 (1981) ...................................................... 34

*Cospito v. Heckler*

   742 F.2d 72, 89 (3d Cir. 1984) ................................................... 22

*Ctr. for Biological Diversity v. Bernhardt*

   946 F.3d 553 (9th Cir. 2019) ...................................................... 16

*Durso v. Napolitano*

   795 F. Supp. 2d 63 (D.D.C. 2011) ......................................... 13, 14

*Ghedi v. Mayorkas*

   16 F.4th 456 (5th Cir. 2021) ....................................................... 13

*Gilmore v. Gonzales*

   435 F.3d 1125 (9th Cir. 2006) ..................................................... 13

*Gilstrap v. United Air Lines, Inc.*
709 F. 3d 995 - Court of Appeals, 9th Circuit 2013 ................................... 37

*GJR Investments, Inc. v. County of Escambia, Fla.*
132 F. 3d 1359 - Court of Appeals, 11th Circuit 1998 ............................... 10

*Green v. Brantley*
981 F.2d 514 (11th Cir. 1993) ............................................... 13, 14

*Health Freedom Def. Fund v. Biden*
8:21-cv-1693-KKM-AEP, (M.D. Fla. Apr. 18, 2022) ................................. 23

*In re GTE Service*
762 F.2d 1024, 1026 (D.C. Cir. 1985) ............................................. 6

*J.I. Case Co. v. Borak*
377 U.S. 426 (1964) ........................................................... 35

*Kashem v. Barr*
941 F.3d 358 (9th Cir. 2019) ................................................... 13

*Klaassen v. Trustees of Indiana University*
7 F. 4th 592 - Court of Appeals, 7th Circuit 2021 ................................. 20

*Landegger v. Cohen*
5 F. Supp. 3d 1278, 1284 (D. Colo. 2013) ........................................ 30

*Ligan v. LaHood*
614 F.3d 150 (5th Cir. 2010) ................................................ 13, 14

*Marcus, et. al. v. TSA*
No. 21-1225 (D.C. Cir. Mar. 3, 2022) ............................................. 6

*Medellin v. Texas*
552 U.S. 491, 128 S. Ct. 1346, 1350, 170 L. Ed. 2d 190 (2008) ........... 16, 17

*Merritt v. Shuttle, Inc.*
245 F.3d 182 (2d Cir. 2001) .................................................... 13

*Michael Selecki v. CDC et al*
case No. 22-10155-PBS ....................................................... 30, 31

*Mohamed v. Holder*

    995 F. Supp. 2d 520, 535 (E.D. Va. 2014) ..................................................... 12

*Montanans for Multiple Use v. Barbouletos*

    568 F.3d 225 (D.C. Cir. 2009)...................................................................... 16

*Mullen v. Bureau of Prisons*

    843 F. Supp. 2d 112, 116 (D.D.C. 2012)....................................................... 34

*Mullins v. Crowell*

    74 F. Supp. 2d 1067, 1125–26 (N.D. Ala. 1999), aff'd in part, rev'd

    in part, 228 F.3d 1305 (11th Cir. 2000)....................................................... 15

*Multiple Use v. Barbouletos*

    568 F.3d 225, 229 (D.C. Cir. 2009)............................................................... 1

*NAT. FEDERATION OF INDEPENDENT BUSINESS v. OSHA*

    142 S. Ct. 661 - Supreme Court 2022 ..................................................... 9, 17

*Richardson v. Yellen*

    167 F. Supp. 3d 105, 118 (D.D.C. 2016)....................................................... 15

*Rodriguez v. JUST BRANDS USA, INC.*

    Dist. Court, CD California 2021.................................................................... 11

*Seraji v. Gowadia*

    No. 816CV01637JLSJCG, 2017 WL 2628545, at *7

    (C.D. Cal. Apr. 28, 2017) .................................................................... 13, 14

*Sollberger v. Wachovia Securities, LLC*

    SACV 09-0766 AG (ANx), (C.D. Cal. Jun. 30, 2010)................................. 10

*Sosa v. Alvarez-Machain*

    542 U.S. 692 (2004) ...................................................................................... 16

*Spence v. Straw*

    54 F.3d 196, 199 (3d Cir. 1995) .................................................................... 14

*Telecomms. Rsch. & Action Ctr. v. FCC*

    750 F.2d 70 (D.C. Cir. 1984).......................................................................... 13

*Twining v. New Jersey*

211 U.S. 78, 97 (1908) ................................................................... 28

*United States v. Comstock*

560 U.S. 126, 134-35, 142, 148 (2010)

(citing U.S. Const. art. I, § 8, cl. 3) .............................................. 18

*Wall v. CDC*

No. 6:21-cv-0975-PGB-DCI (M.D. Fla.) (Byron, J.) ............................. 3, 18

*Wall, et. al. v. TSA*

Brief of Amici Curiae 309 Pilots & Flight Attendants in Support of

Petitioners, pgs. 12-21, 21-1220, 1221, 1225, 1236, 1237, 1258,

4-18-2022, CADC ...................................................................... 25

*Wickard v. Filburn*

317 U.S. 111 (1942) ................................................................... 17

*Wyeth v. Levine*

555 U.S. 555 (2009) ................................................................... 18

*Ziglar v. Abbasi*

137 S. Ct. 1843 (2017) ................................................................ 35

*Statutes*                                                                                          *Page*

05 U.S.C. §§ 551-559, [The Administrative Procedures Act (APA)] .......... 22

05 U.S.C. § 706(1) ........................................................................................ 16

05 U.S.C. § 801(a)(1)(A) ................................................................................. 1

14 C.F.R. § 382.19 ....................................................................................... 33

21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III) .......................................................... 26

42 U.S.C. § 1985(3) ..................................................................................... 28

49 U.S.C. § 46110 .............................................................................. 13, 30, 31

*Other Authorities* *Page*

2018 Navajo Civil Rights of Individuals with Disabilities Act

(Civil Rights Act) (Legislation No. 0469-17) ............................................... 27

86 Fed. Reg. 8025 ..................................................................................... 23, 28

Air Carrier Access Act [ACAA] ..................................................................... 2

Amicus Curiae Brief by the Association of American Physicians

and Surgeons, USCA11 Case No. 22-11287, in the

UNITED STATES COURT OF APPEALS FOR THE

ELEVENTH CIRCUIT, August 5, 2022 ................................................. 25

Cares Act [The Coronavirus Aid, Relief, and Economic Security Act] ......... 5

CRA [Congressional Review Act] .................................................................. 1

ICCPR [International Covenant on Civil and Political Rights] ..................... 2

Indian Citizenship Act of 1924 [43 Stat. 253] ............................................. 27

U.S. Constitution, First Amendment ............................................................. 13

U.S. Constitution, Fifth Amendment .............................................................. 2

U.S. Constitution, Tenth Amendment ............................................................. 2

## PRELIMINARY STATEMENT AND INTRODUCTION

Plaintiffs herein make their response to the motion to dismiss submitted by the Federal Defendants CDC, HHS, TSA and Julie Carrigan in her official capacity (hereinafter, "FDs"). DKT. #97.

From the start FDs state, "Plaintiffs' CRA [Congressional Review Act] claim is foreclosed by binding precedent holding that courts lack subject matter jurisdiction to hear claims arising under the CRA." As it is well known, the CRA is a tool that Congress may use to overturn rules issued by federal agencies before they take effect. As FDs were kind enough to quote the statute — 5 U.S.C. § 801(a)(1)(A) — they should have also paid closer attention to its wording, for it says that "before a rule can take effect" certain requirements, spelled out in 801(a)(1)(A)(i, ii and iii) must be met by federal agencies promulgating the rule. These requirements were never met. At no time did any FD ever submit a CRA report to Congress or the Comptroller General on the FTMM.

It is entirely false that 5 U.S.C. § 805 in Plaintiffs' case "…denies courts the power to void rules on the basis of agency noncompliance with the Act. The language of § 805 is unequivocal and precludes review of this claim." *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 229 (D.C. Cir. 2009). The reason that § 805 does not apply is very simple: judicial review of cannot take place for a rule that never existed in the first place. Moreover, Plaintiffs never requested a judicial review of the FTMM, because it never existed as a rule of law for even one day. Even if it had, we are certain that this honorable Court would not be the appropriate venue to press for a judicial review. To the contrary, we are asking this Court for declaratory relief, that the Court should declare and confirm the simple fact that this FTMM was not in effect and never was in effect, since FDs did not follow required procedure that must be met **"before a rule can take effect"** *(emphasis ours)*.

FDs further state that "Plaintiffs' claim *[that the]* ICCPR [International Covenant on Civil and Political Rights] claim is untenable in light of Supreme Court precedent stating that the ICCPR does not create obligations enforceable in Federal Courts." The statement is misleading. The ICCPR is a treaty that the government of the United States of America signed and agreed to participate in, together with the governments of other countries, and that treaty obligates the parties to respect the civil and political rights of individuals, including the right to life, and rights to due process and a fair trial. FDs however, with to quash Plaintiffs' rights to due process and a fair trial. By definition, Plaintiffs' claims are tenable under the ICCPR and US law, and should prevent FDs from their overreach in trying to kick us out of court with a motion to dismiss aimed at depriving us of due process.

FDs go on to declare that "Plaintiffs' U.S. Constitution, Tenth Amendment, U.S. Constitution, Fifth Amendment, Air Carrier Access Act [ACAA], and right-to-travel claims are virtually verbatim copies of claims that a federal District Court in Florida recently had no difficulty rejecting — and they fail here for the same reasons."

Again, this is government overreach. The purpose of FDs presenting us as part of this group is to bunch us all together, and then if anyone loses a case somewhere in another Federal Court or state court, they can quote that case, and say, "You see, those people lost their case in Florida, and now they're coming here to California to try again." That is not honest and it is certainly not representative of the inalienable rights guaranteed to all citizens by the framers of our Constitution.

Every American citizen is entitled to his or her own due process. Plaintiffs are entitled to an independent due process from that belonging to the case in Florida, quoted in FDs' motion to dismiss. We, the Plaintiffs here in this case in California, should be entitled to litigate our case here and have an

opportunity to prove our own allegations. We were not permitted to join the *Wall v. CDC* case and we were never given any opportunity of due process in that Florida case, because we were at no time ever recognized as Plaintiffs. As a result of that court's refusal to grant us "plaintiff" standing, we were unable to establish any connection to that case.

If that court did not allow us to be a part of the case and gave us no due process in that venue, would it be right for a court in California to look at that case and accept that we have already lost? That would be a denial of our constitutional rights. We ask this court to encourage FDs to focus on addressing our case here and stop conflating cases from across the country. We are here in California litigating a specific case with our own causes of action, and we should be given the right to proceed with that litigation in order to prove our allegations. FDs are welcome to quote specific case law, which MAY include some citations quoted in the Florida case, but that is different than trying to insert us directly into that case. We ask this Court to ignore all mentions of compatriots with whom FDs are attempting to link us.

## BACKGROUND

### A.    The COVID-19 Pandemic

FDs explain in their motion to dismiss that "As of this filing, COVID-19 has … **killed more than one million people in the United States alone (emphasis ours)**, and many more around the world"

Statements and statistics such as these have no place in a motion to dismiss, and are obviously presented in efforts to convince this Court that Plaintiffs' claims are meritless in light of and in comparison to the alleged exponentially higher numbers of human life lost during the pandemic. The clear message FDs need the Court to consider is that Plaintiffs claims are

trivial and should thus be dismissed, since the loss of such a magnitude of human lives must override Plaintiffs' comparatively petty claims of discrimination against the disabled.

Since FDs have opened this door, we cannot allow such disinformation and propaganda set forth to go unchallenged, especially when the CDC itself sets the record straight with its own latest data, which reveals that hospitals have been counting patients who died from serious preexisting conditions, as COVID-19 deaths. **EX. 01**. From 2020 to 2022 the CDC counts over 284,444 patients who died from heart failure, arrhythmia and cardiac arrest, as opposed to dying from coronavirus. In updating their death counts for coronavirus, they revealed yet again that COVID-19 was rarely the actual cause of death among reported "coronavirus" patients. CDC's data shows that out of 1,033,450 deaths attributed to the coronavirus, 496,705 of them actually died from pneumonia and influenza; another 93,669 died from chronic respiratory diseases, and 526,690 actually died from respiratory distress syndrome, respiratory failure and respiratory arrest. 190,525 patients died from hypertensive diseases, 111,432 died from heart disease, and a whopping 377,580 actually died from sepsis, diabetes and renal failure. Yet all of these, including patients who died from heart attacks, were marked down as having died from the coronavirus.

Doctors from the CDC explained that 971,443 patients, who had been considered as having died from COVID-19, already had life-ending diseases, including cancer, dementia, Alzheimer disease, cerebrovascular diseases and many other diseases of the circulatory system. And according to the CDC, again, if one looks at place of death, they will see that some 33,445 patients who died from COVID were on hospice care — meaning they were terminally ill to begin with and were already expected to die. CDC doctors say all of these patients were critically ill and likely died from their preexisting conditions

without any help from the coronavirus.

Moreover, they explain that the Cares Act [The Coronavirus Aid, Relief, and Economic Security Act], passed by Congress in March of 2020, gave hospitals a 20% bonus for a diagnosis in that related group, paid for by Medicare. Essentially, that means nationwide, doctors were being paid to list deaths as coronavirus without any indication the patient's death was actually COVID-related.

The CDC backs these numbers up, explaining that coronavirus itself is responsible for only 6% of all deaths listed as coronavirus-related. The other 94% of deaths were due to preexisting co-morbidities, including serious illnesses and advanced age. However, despite this report being officially published by the CDC, so far the mainstream media together with FDs have completely ignored it, and instead continue to this day to hype a pandemic that was in reality becoming less and less dangerous with each passing day.

Accordingly, if FDs insist on relying on CDC data to support their motion to dismiss, they should at very least consult the CDC's officially updated information, at which point that will immediately discover does not support their legal argument for a motion to dismiss.

## B.    Litigation Background

Federal Defendant TSA related how…

> "Shortly after filing a petition for review, Mr. Marcus … asserted that TSA had retaliated against [him for bringing his petition] … and filed motions demanding relief. All of these motions were denied … because he had not properly filed a petition challenging any order revoking his Pre-Check status. Mr. Marcus did not subsequently bring any petition for review challenging the alleged Pre-Check revocation." *Marcus, et. al. v. TSA*, No. 21-1225 (D.C.

Cir. Mar. 3, 2022).

There is nothing "alleged" about Plaintiff Uri Marcus' Pre-Check eligibility being revoked. It actually happened and Defendant Julie Carrigan signed the letter ordering this revocation. *Marcus v. TSA*, No. 21-1225 (D.C. Cir. Mar. 3, 2022 — EX. 07). Ms. Carrigan's letter is the proof, and therefore FDs' statement cannot be used to support a motion to dismiss Plaintiff's claim.

Furthermore, regarding PETITIONER URI MARCUS' MOTION TO COMPEL RESPONDENT TO RESTORE MY TSA PRE-CHECK ELIGIBILITY & FOR RESPONDENT TO SHOW CAUSE WHY IT SHOULD NOT BE SANCTIONED AND/OR HELD IN CONTEMPT OF COURT FOR ILLEGAL RETALIATION [USCA Case #21-1225, Document #1926085], the DC circuit "ORDERED that the motion to compel in No. 21-1225 be denied" allegedly because…

> "Petitioner has not demonstrated that he is entitled in this proceeding to the relief requested. See *In re GTE Service*, 762 F.2d 1024, 1026 (D.C. Cir. 1985) ("It is beyond dispute that a court does not have jurisdiction to review an agency order unless a petition for review of the order has been filed in that court."). Order, *Marcus v. TSA*, No. 21-1225 (D.C. Cir. Mar. 3, 2022).

The Petitioner did in fact file a petition for review of the order in that court. The court cannot expect a *Pro Se* Litigant to file a petition for review of an agency order, when a petition for review of the agency order has already been filed in that instant case, was pending at that time, and is still pending to the very day, if for no other reason than for judicial economy. This is particularly true when clearly a second agency order was issued in retaliation against Plaintiff in the wake of him filing the first petition for review, which further injured the Plaintiff. The fact that Plaintiff Marcus' motion to compel restoration of his Pre-Check eligibility was denied cannot be construed as a

valid argument in support of Defendant Julie Carrigan's motion to dismiss the claim against her. The claim should be allowed to move forward to discovery and litigated.

## STANDARD OF REVIEW

Here, FDs have created an illusion. With it, FDs want this Court to believe that Plaintiffs are part of a close-knit anti-mask group that together as a team, are filing cases all across the country.

Through insinuation, the court is being asked to imagine that we are part of army of activists with an organized hierarchy, complete with a non-profit corporate structure, annual general meetings and Sunday barbecues; and yet nothing could be further from the truth.

From time to time we do reach out sharing briefs and filings with each other, so as not to reinvent the wheel. We are akin to a tiny band of separate little Davids, trying to survive against the Goliaths we have taken on who have unlimited resources, and seemingly no interest in differentiating between right and wrong, but instead are determined to squash every one of us with artificial legal arguments in this motion to dismiss.

The fact remains that FDs violated the human rights of tens of thousands of people and they discriminated against us, and now they have to answer for their actions. They don't want us to present our case but they must, because that is what the American system of justice provides.

FDs in their motion to dismiss seem to ignore the Plaintiff's disabilities as an issue. They drone on and on about their authority to create and enforce all types of laws, but then go on to break any of them that don't happen to be convenient for them. They insinuate that they're entitled to do whatever they want to fix the health crisis they created. And yet, we are not alone in agreeing

with the world's consensus at this point that they did a horrible job.

They suggest that they have "broad discretion" to address any health crisis from 42 C.F.R § 70.2, but when the statute is read, it says nothing that would suggest that they have this broad and absolute power over all Americans in any way. In the event of inadequate local control, the statute reads:

> "Whenever the Director of the Centers for Disease Control and Prevention determines that the measures taken by health authorities of any State or possession (including political subdivisions thereof) are insufficient to prevent the spread of any of the communicable diseases from such State or possession to any other State or possession, he/she may take such measures to prevent such spread of the diseases as he/she deems reasonably necessary, including inspection, fumigation, disinfection, sanitation, pest extermination, and destruction of animals or articles believed to be sources of infection."

"Sanitation" here must refer to active measures towards property, not individuals. This has never been used to govern individuals, let alone untold millions of individuals, regardless of whether they are infected with a particular pathogen. At the very same moment that Federal Defendant CDC interpreted "sanitation" as an act to perform upon people, it bestowed upon itself breathtaking power that would justify limitless authority to regulate any matter that relates to public health. That is a wafer-thin reed on which to rest such sweeping authority.

The CDC is welcome to pick up a pest control sprayer gun and start fumigating the luggage coming out of the cargo hold, and it can create some basic processes. It has no authority to ban thousands of people from traveling, and it has no authority to authorize anyone to violated federal or state disability laws. Scrambling to find legal shelter to justify their actions should not warrant

a motion to dismiss, especially in the wake of CDC director Rochelle Walensky's statement to the press on August 17, 2022, when she announced and admitted that the agency had failed in its responses to covid-19, saying, "For 75 years CDC and public health have been preparing for covid-19, and in our big moments, our performance did not reliably meet expectations. … My goal is a new, public health action oriented culture at CDC that emphasizes accountability, collaboration, communication, and timeliness." Walensky further announced, "sweeping reorganization, aimed at … restoring public trust" after the agency's acknowledged missteps in its response to the Covid-19 pandemic. **EX. 02**. In light of these remarks from CDC's director, FDs should not be able advocate a motion to dismiss Plaintiffs' claims. Instead, we should be entitled to discovery and to a full litigation.

As in the recent case decided in the Supreme Court, *NAT. FEDERATION OF INDEPENDENT BUSINESS v. OSHA*, 142 S. Ct. 661 - Supreme Court 2022, it seems that during this COVID crisis the federal government has been trying to exceed its authority by expanding its powers to areas in which Congress never intended them to be. As they admit, there are already cases addressing these questions that are currently before the Circuit Court. Plaintiffs cannot imagine that a motion to dismiss would be successful prior to clear settled law supporting such a motion. We are entitled to due process and we ask this honorable Court to allow us to proceed.

## ARGUMENT

### I.    Plaintiffs' complaint should be dismissed as a shotgun pleading.

While the Plaintiffs cannot afford expensive law firms, and thus are proceeding *Pro Se*, we realize that the pleadings in our Complaint may need some improved wording, and we apologize to the Court for that.

On the other hand, from a legal perspective we believe that our Complaint is clear enough for FDs who understand very well which causes of action go to which Defendant(s). It is not confusing and it clearly states claims for which relief can be granted. They are also clear enough to allow defendants to defend against each of them. There is no basis for a motion to dismiss before discovery and a complete trial.

FDs cite from *Sollberger v. Wachovia Securities* in efforts to accuse Plaintiffs of a shotgun pleading, but fail to establish that what happened in *Sollberger*, never once occurs in Plaintiffs' Complaint.

> "One common type of shotgun pleading comes in cases with multiple defendants where the plaintiff uses the omnibus term "Defendants" throughout a complaint by grouping defendants together without identifying what the particular defendants specifically did wrong." *Sollberger v. Wachovia Securities, LLC*, SACV 09-0766 AG (ANx), (C.D. Cal. Jun. 30, 2010).

In every one of Plaintiffs' 39 causes of action, we identify who the particular Defendant is, and what specifically that Defendant did wrong.

What is astounding is that an officer of the court, and no less, a trial Attorneys working for the United States Department of Justice, makes this false statement before the Court, declaring that our Complaint is "without any specific indication which of these overwhelming number of allegations apply to which specific claims against which defendants." This is entirely without merit or truth. With great specificity Plaintiffs' Complaint makes it clear who was responsible for each violation of law.

> In *GJR Investments, Inc. v. County of Escambia*, Fla., 132 F. 3d 1359 - Court of Appeals, 11th Circuit 1998, which was a classic case of shotgun pleading, the Circuit Court said, "Rule 8 requires that Federal Courts give pleadings a liberal reading in the face of a

12(b)(6) motion to dismiss. This admonition is particularly true when the parties are proceeding pro se. Courts do and should show a leniency to Pro Se litigants not enjoyed by those with the benefit of a legal education."

Let's look at a more recent case in this Court, *Rodriguez v. JUST BRANDS USA, INC.*, Dist. Court, CD California 2021, where this Court denied Defendant's claim of shotgun pleadings. In that aspect, it is very similar to our case.

"The Court said "Shotgun pleadings have a "unifying characteristic … [in] that they fail to one degree or another, or in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). In this case, the FAC sufficiently apprises Defendants of the allegations against them. Plaintiff clearly alleges that Defendants are collectively involved … and invokes joint and several liability and agency to tie Defendants' conduct together. (FAC ¶¶ 7-10). Although Defendants argue that these claims lack factual support, Rule 8(a) only requires that the allegations "be enough to raise a right to relief above a speculative level." [*Bell Atlantic Corp. v.*] *Twombly*, 550 U.S. 544, 555 (2007). The FAC is not a "shotgun pleading" such that Defendants cannot "know[] exactly what they are accused of doing wrong." *Sollberger* [*v. Wachovia Sec., LLC*,] 2010 WL 2674456 (C.D. Cal. June 30, 2010), at *4. Thus, Defendants fail to offer a valid reason to dismiss on this basis."

Ironically, FDs detailed motion to dismiss, addressing our each of our causes of action, is clear enough evidence that FDs were able to ascertain more than an adequate understanding of the claims stated.

The term "Shotgun Pleadings" should not be used as a catchall, cancel-all process. We identify when we are referring only to federal agencies and when we are referring to the airlines and/or their employees and/or medical Defendants. It is nowhere near perfect, but remedies can be granted for each and every claim we stated.

In accordance with the above, we ask this honorable Court to deny this motion to dismiss and allow this case to proceed to discovery and trial.

## II.    The Court should dismiss TSA and Julie Carrigan in her official capacity because it lacks subject-matter jurisdiction over the claims against them (Cause of Action 18)

The Court should NOT dismiss TSA and Julie Carrigan in her official capacity because it DOES HAVE subject-matter jurisdiction over the claims against them (Cause of Action 18).

First let us agree that not everything that TSA and its personnel do become an official order and must be taken up only in the Circuit Court. As a matter of fact, in *Mohamed v. Holder* the Circuit Court sent much of case to the federal District Court, because that was the appropriate venue. It states as follows…

> "As for standing, Mohamed's alleged constitutional injuries constitute an "injury in fact" that is actual, concrete and particularized, and traceable to the defendants, who are alleged to be responsible for placing him on the No Fly List and distributing it to the TSA. Further, the relief Mohamed seeks, including removal from the No Fly List, would redress his alleged injury." *Mohamed v. Holder*, 995 F. Supp. 2d 520, 535 (E.D. Va. 2014).

Let's look at this from an even simpler perspective. What if, in a sudden fit of anger, a federal agent decides to engage in a Tort — e.g., he damages

personal property, assaults someone or intentionally inflicts emotional distress on someone, wielding authority as a federal agent to do so? Would that be considered an agency order?! Of course not. That would not be adjudicated at the Circuit Court level; it would be filed in District Court. In the instant case, the First Amendment prohibits government officials from retaliating against persons for exercising First Amendment freedoms. U.S. Constitution, First Amendment. A violation like this is certainly not considered an agency order.

Defendants quoted *Kashem v. Barr*, *Gilmore v. Gonzales*, *Ghedi v. Mayorkas*, *Merritt v. Shuttle, Inc.*, *Green v. Brantley*, *Telecomms. Rsch. & Action Ctr. v. FCC*, *Seraji v. Gowadia*, *Durso v. Napolitano* and *Ligan v. LaHood*. All these cases were brought as evidence that anything the federal agency does is considered an agency order. Wouldn't they love that kind of power?! The law isn't that simple. Some things are agency orders and some things are crimes, discrimination, and/or petty retaliations.

*Kashem v. Barr* is a no-fly-list issue, which is an appropriate government order. Yes, one is permitted to question it, but the Circuit Court is the appropriate venue. *Gilmore v. Gonzales* is about the agency order to require personal identification, and of course that belongs in Circuit Court. *Ghedi v. Mayorkas* is a more complicated case about TSA's decision to apply enhanced security screening on specific people. That also belongs in Circuit Court, as it is what the agency was created for after the attacks on September 11th.

*Merritt v. Shuttle, Inc.*, being brought as evidence that the District Court has no jurisdiction here, is a classic case of gas lighting by FDs. Justice Sotomayor, then as Circuit Judge, stated the following decision:

> "For the reasons discussed, we conclude that § 46110 does not preclude the District Court from hearing Merritt's FTCA claim, and we therefore reverse the District Court's dismissal of the claim and

remand for further proceedings consistent with this opinion."

*Green v. Brantley* was a case where a pilot questioned an FAA decision. As we all know, this belongs in Circuit Court. *Telecomms Rsch. & Action Ctr. v. FCC*, was a writ of mandamus against the FCC. There was no consideration to bring something like that to the District Court. *Seraji v. Gowadia* similarly attacks an agency order very clearly and thus belongs in the Circuit Court. "Like in *Gilmore*, Al Seraji's APA claim "squarely attacks" an order issued by the TSA." *Seraji v. Gowadia*, No. 816CV01637JLSJCG, 2017 WL 2628545, at *7 (C.D. Cal. Apr. 28, 2017).

*Durso v. Napolitano* attacks TSA screening procedures, and belongs in the Circuit Court, and there is a very low chance that the Circuit Court will want to second guess and/or micromanage the TSA's screening procedures. *Ligan v. LaHood* was a case where the "Plaintiff, a "Designated Engineering Representative" (DER) authorized to issue airworthiness certifications on behalf of the Federal Aviation Administration" wanted to address an FAA decision to not reinstate his license. We all know that this is a case that goes to the Circuit Court, and unless it is clearly arbitrary and capricious, the court will most likely not interfere with the agency's discretion.

It is unclear why Defendants stopped there. If they were going to list every case where there's an agency decision and it belongs in the Circuit Court, then there must be hundreds more. If they want to look at this particular case and argue that it is an agency decision, they should have brought cases that were a bit more related and/or similar. Here are some of the cases that they should have presented, but did not, because these did not fit FDs' narrative:

In *Spence v. Straw*, the courts accepted the appropriate venue in the District Court. This was a case alleging "discrimination against the handicapped by the federal government…" *Spence v. Straw*, 54 F.3d 196, 199 (3d Cir. 1995).

In *Richardson v. Yellen*, 167 F. Supp. 3d 105, 118 (D.D.C. 2016) the Plaintiff brings disability-discrimination claims in District Court. His claims are dismissed for other reasons, but there was no mention by the Circuit Court that the District Court was an inappropriate venue, specifically because an agency order must be litigated in Circuit Court. Discriminations are not agency orders.

In *Mullins v. Crowell* it says, "Within ninety days of receipt of the final decision by the agency or, if there is no final decision, within one hundred eighty days of the filing of the initial complaint with the agency, the plaintiff has the right to file an action in the federal District Court." *Mullins v. Crowell*, 74 F. Supp. 2d 1067, 1125–26 (N.D. Ala. 1999), aff'd in part, rev'd in part, 228 F.3d 1305 (11th Cir. 2000). There is no suggestion there that it should go to Circuit Court as a challenge to an agency order. Not every time a person at an agency says or does something, is that an official agency order.

We can go on for days. There are hundreds of case law cases where federal agencies are sued in District Court. The defendants are welcome to defend themselves, but we believe that our case is a bit more complicated than to just throw it out on a motion to dismiss. We have proven that we have the minimum required to begin this lawsuit. Let us start the discovery process and have the opportunity to present the real story. We ask this Court to deny FDs' motion to dismiss.

## III.    The Court lacks subject-matter jurisdiction over Plaintiffs' Congressional Review Act claim (Cause of Action 4)

Plaintiffs respectfully refer the Court to page 1, lines 5-28 of this Opposition brief, which fully addresses this argument regarding this Court's alleged lack of subject-matter jurisdiction over Plaintiffs' CRA claim.

In addition, FDs brought two cases to illustrate their point, to which

Plaintiffs here oppose. If the Court will examine those cases, they are very different than our case here. In *Ctr. for Biological Diversity v. Bernhardt*, the issue is a debate over a decision made by a federal agency. There is no comparison to our case, where we are just asking the court to confirm that as per statute, this purported mask order never even existed.

In *Montanans for Multiple Use v. Barbouletos*, it was also a judicial review request, which again completely differs from our case. In that case the main problem stated was that "plaintiffs' complaint does not identify a legally required, discrete act that the Forest Service has failed to perform — a threshold requirement for a § 706 failure-to-act claim." We have no idea why FDs brought these two cases, but it is likely that they figured no one would read them.

The Court should deny the motion to dismiss this cause of action (#4) and we cannot imagine how FDs believe that their illegal mask mandate was actually ever in effect, since they never did what was required for the proposed rule to become law.

## IV.   The Court lacks subject-matter jurisdiction over Plaintiffs' ICCPR claim (Cause of Action 17).

*Sosa v. Alvarez-Machain* and *Medellin v. Texas* are complicated cases where Plaintiffs attempt to sue for damages based on the international treaties. In *Medellin* the court says...

> "Medellín contends that domestic courts generally give effect to
> foreign judgments, but the judgment Medellín asks us to enforce is
> hardly typical: It would enjoin the operation of state law and force
> the State to take action to "review and reconside[r]" his case.
> Foreign judgments awarding injunctive relief against private
> parties, let alone sovereign States, "are not generally entitled to

enforcement." *Medellin v. Texas*, 552 U.S. 491, 128 S. Ct. 1346, 1350, 170 L. Ed. 2d 190 (2008).

There are no comparisons between our case and those cases. In our case we are asking the court to confirm and declare that the illegal testing order violates international treaties.

We respectfully refer the Court to page 2, lines 1-12 of this Opposition brief, which further addresses this argument.

FDs deny that the illegal testing order prevented Plaintiffs from traveling to the United States, yet they are aware that if Plaintiffs chose not to get the invasive testing, then they will not be allowed back into their country. There is no reason to dismiss this cause of action (#17), and we therefore ask the court to deny the motion to dismiss on the basis of this argument.

## V.   Plaintiffs fail to state a Tenth Amendment claim (Cause of Action 6)

Defendants seem to be quoting *Wickard v. Filburn*, but it is very difficult to determine what exactly are they trying to show from that case. That was an actual case about interstate commerce. It seems like they are trying to twist their Covid-related power grabbing to be justified as an action to promote interstate commerce. It is a stretch for the imagination to make that connection.

In the recent case decided in the Supreme Court, *NAT. FEDERATION OF INDEPENDENT BUSINESS v. OSHA*, 142 S. Ct. 661 - Supreme Court 2022, it seems that during this Covid crisis the federal government has been trying to exceed its authority by expanding its powers to areas that Congress never intended them to be in. In that case, OSHA tried justifying a countrywide health mandate based on workplace health and safety. The court ruled that it was way out of their authority. Now we have the CDC and the TSA promoting interstate commerce by requiring masks on airplanes, even though it clearly conflicts with multiple state laws. This Court should remind the federal

government that we have a constitution and that there are limits to their power.

Then, as if Plaintiffs never took a Civics class, FDs quote case law that "Congress can act to control an epidemic" (*United States v. Comstock*, 560 U.S. 126, 134-35, 142, 148 (2010) (citing U.S. Const. art. I, § 8, cl. 3)), and that is right, except that in the case of the FTMM, Congress did not act. These federal agencies took it upon themselves to become the unelected legislature to create laws that our republic requires Congress to create.

Defendants bring the case of *Wyeth v. Levine*, which is just plain silly. That case refers to the FDA's authority over drugs that were specifically authorized by Congress and therefore the federal agency is entitled to preempt state law. We understand the CDC and TSA would like similar power, but until Congress gives that to them, they do not have the authorization to go running around creating laws, and they cannot create random actions that violate state laws.

## VI.    Plaintiffs fail to state a Fifth Amendment claim (Cause of Action 7)

FDs quote *Wall v. CDC*, No. 6:21-cv-0975-PGB-DCI (M.D. Fla.) (Byron, J.), which was a case that we tried to join as plaintiffs to promote judicial economy and avoid a lot of expense and work, but the Judge never did let us join. Consequently, we finally filed our own lawsuit here. Not allowing us to be involved in that lawsuit in Florida, and therefore not being allowed to prove our case there, but then using the judge's decision against us here, is unfair and denies our right to due process. In reference to us, it is a one-sided case where only the FDs of this case are having a chance to present their case and the Plaintiffs are having no such opportunity. It would be unfair for us to have to address *Wall v. CDC* decisions in this Court. Additionally, we believe that *Wall v. CDC* is currently before the Florida Circuit Court of appeals.

With regard to the other case law cited, we will respond to each one

accordingly. In *Abdi v. Wray*, FDs modified the words and presented them in a way that might back up their point. FDs quoted that case as follows: "being "reasonably encumbered" in one's "ability to travel" "by only one mode of transportation" "does not violate due process."

That is not what was written. Here's the full paragraph and it is completely different.

> "Neither the extra security measures that Abdi endured due to his placement on the Selectee List nor the forty-eight-hour delay he experienced trying to fly home from Nairobi deprived him of a constitutional right; those impediments merely reasonably encumbered his ability to travel interstate and internationally and by only one mode of transportation."

We agree with the District Court that the government's conduct did not deprive Abdi of a liberty interest in travel." *Abdi v. Wray*, 942 F.3d 1019, 1032 (10th Cir. 2019).

In that case the person was not banned from flying exactly like we were. He was given certain complications that were justified by the authority of the federal agency in charge of airline security. As the case says, "Abdi alleges that, since 2014, he has been subject to extended security screenings each time he travels by air due to his placement on the Selectee List." *Abdi v. Wray*, 942 F.3d 1019, 1023 (10th Cir. 2019).

The court is saying that he was reasonably encumbered and it wasn't that big of a deal to say his right to travel was deprived. If anything, that case is a strong support for our case here, because the justifications that the court had for that case would not apply in our case, and it is probable that those same judges would consider the right to travel actually deprived in our case. Just look at the two different scenarios. There was a fellow who is saying his right to travel was deprived because he was subject to some extra scrutiny, by an

agency that was given such authority by Congress specifically to do that. In our case, it's quite the opposite. We were being banned from all flights, trains, buses, and even ride-share vehicles, by agencies NOT GIVEN any such authority by Congress.

FDs then quoted *Klaassen v. Trustees of Indiana University*, 7 F. 4th 592 - Court of Appeals, 7th Circuit 2021, where the university actually had exemptions for those with medical reasons not to wear a mask. Only one or two plaintiffs in that case did not have exemptions, or reasons to get exemptions. In that case, the Circuit Court confirmed the District Court's decision to deny a motion for preliminary injunction, as one of the prerequisites for such a motion is to have a likelihood of winning. Additionally, the urgency of an immediate emergency injunction was not justified. We, on the other hand, are a group of Plaintiffs with medical disabilities that cannot wear a mask. There is no similarity here at all. FDs continue…

> "Plaintiffs can certainly still "make [their] own medical decisions," Compl. ¶ 789, but any such right does not extend to placing others at greater risk of communicable diseases while traveling on public transportation. And there is no constitutional right "to not have a policy imposed on [them]," *id.*, that they think is harmful — that is one of the basic tradeoffs of living in a society, with a government that is authorized to make policy choices that individuals citizens may not support."

Spoken like a typical federal agency with a thirst for unlimited power, by lawyers and politicians prone to overreach, who are NOT DOCTORS or IMUNOLOGISTS. Yes, the government was given certain rights and power to control safety, health and the like, but no, they cannot just do anything they want, any way they want to do it. Someone needs to tell them that, and

1    Plaintiffs hope this Court will do just that.

2        While accusing Plaintiffs of "placing others at greater risk of

3    communicable diseases while traveling on public transportation," did FDs not

4    understand basic science? The overwhelming weight of the available scientific

5    and medical studies made on the subject of the wearing of masks, are that

6    masks simply don't work **(EX. 03 at 24)**, because the viral particulates are so

7    much smaller than the mask pores. It is akin to putting up a chain link fence, in

8    the vain hopes of keeping out mosquitoes. Indeed, and as will be shown, masks

9    are actually harmful to humans in many ways. Moreover, masks are medical

10   devices. The harmful effects of masks include increased risks of contracting

11   bacterial pneumonia, decreased oxygen levels to the brain, and delayed speech

12   developments in children, to name but a few. There was never any scientific,

13   legal, or rational justification for a FTMM, and therefore, the "mask mandate"

14   is fundamentally irrational. Further, such a "mandate" overrides informed

15   patient consent and consent can never be coerced, as FDs seem to intent on

16   pushing. Plaintiffs never put any one at greater risk. But the clients of all

17   Defendants in this case at all times attempted to put us at greater risk, and

18   when we refused to go along, they banned us from flying altogether.

19       We will prove after sufficient discovery that these agencies were well

20   aware that the masks barely had any health or safety effects. Besides, ADA

21   laws predicted this kind of abuse of power, so they made it very clear that the

22   disabled can only be denied access if there is a verified direct threat, defined as

23   a "significant risk."

24       FDs cannot justify significant risk, and they cannot even justify or

25   understand greater risk. We ask this Court to allow this case to move forward.

26   We can't wait to see and hear their justifications of all the risks that they knew

27   all along, and now we all know did not exist. We should be entitled to litigate

28   this case, get significant discovery and get to the bottom of the grave violations

1   of our rights and our humanity.

2       In the last few words, FDs quoted *Cospito v. Heckler* to say that it is
3   okay for the federal government to delegate any of its responsibilities to
4   private companies. They clearly did not read the decision within. To be fair, it
5   is pretty long and complicated. Our guess is that if they cite so many cases
6   from Westlaw, it isn't even possible to physically read them all. The decision
7   actually says, "we find that there has been no real delegation of authority to
8   JCAH." *Cospito v. Heckler*, 742 F.2d 72, 89 (3d Cir. 1984).

9       The above shows that we have a real case. There is nothing frivolous
10  about it. This Court should deny the motion to dismiss, and let us all get to the
11  bottom of all this.

12

13  **VII.   Plaintiffs fail to state a right-to-travel claim (Causes of Action 8 &**
14  **15)**

15      FDs are once again comparing a slightly extra security check to full-
16  fledged banning of passenger with disabilities, as other Defendants in our caae
17  did in their motions to dismiss. The comparison is absurd, and when one reads
18  those cases, the court itself is insinuating that in a more severe deprivation of
19  rights case (such as with ours), things would be different.

20      FDs' then cited *Abdi v. Wray*, 942 F.3d 1030 (10th Cir. 2019) (quoting
21  *Haig v. Agee*, 453 U.S. 280, 306 (1981)), in which the court stated "the
22  freedom to travel abroad" is "subject to reasonable government regulation."
23  That might have flown had there actually been a federal law in place. But that
24  was never the case.

25      Without publishing a notice of proposed rulemaking, and neglecting to
26  follow the notice and comment procedures as required by 5 U.S.C. §§ 551-559
27  [The Administrative Procedures Act (APA)], Federal Defendant CDC dutifully
28  crossed the Rubicon — claiming power to directly rule over our lives — by

enacting a Mask Order. 86 Fed. Reg. 8025 (Feb. 3, 2021). Also, as many courts have recognized, the pandemic public health emergency was first introduced in 2020 and has long since passed, removing the justification for an emergency exception to the APA.

In any case, EUA products are by definition experimental, which requires people be given the right to refuse them. Under the Nuremberg Code, the foundation of ethical medicine, no one may be coerced to participate in a medical experiment. Consent of the individual is "absolutely essential." **EX. 04 at 13**.

Though *Health Freedom Def. Fund v. Biden* is currently on appeal (No. 22-11287, in the UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT), the FTMM and ITTR could not — at that time Plaintiffs' Complaint was filed — have been considered "reasonable government regulation," since the FTMM was never authorized by law. The District Court correctly found that CDC lacked statutory authority for the Mask Order. *Health Freedom Def. Fund v. Biden*, 8:21-cv-1693-KKM-AEP, (M.D. Fla. Apr. 18, 2022).

FDs went on to cite that "minor restrictions on travel simply do not amount to the denial of a fundamental right," and that "masking and testing requirements during a pandemic are clearly reasonable," and "to wear masks and be tested, [are] requirements that are not constitutionally problematic," and "in order to board an airplane, these burdens do not amount to a constitutional violation," and "the mask and testing orders present no more than a 'minor burden.'

These statements are false on their face. How is it possible for FDs to describe weaponizing masks by coercion to use a medical intervention — which for certain disabled persons prevents them from breathing — a "minor burden?" Asking Plaintiffs to stop breathing is a bit more than a minor burden.

There has, to date, never been a single proper study in the whole world that states that the masks are effective in preventing infection. To the contrary, serious studies in the field found that the masks are NOT effective at all in preventing infection. There is no justification for conditioning travel on donning a mask for those who are exempt from wearing a mask due to their disability, since the harm from wearing a mask for them is certainly greater than the questionable benefit of wearing one.

Countless leading experts indicated that the widespread use of masks never even once safely or meaningfully reduced COVID-19 transmission, hospitalization or death. The claim that masks are safe and effective against viral micro-particulates is inaccurate. Masks are ineffective, unsanitary, and in many ways they harm the wearer physically and psychologically. In fact, coercing or requiring a person to wear a mask without his or her consent sets the stage for contracting a virus more likely, overrides patient consent, and makes the consequences of that infection worse.

All studies prior to the outbreak of the alleged severe acute respiratory syndrome coronavirus (SARS-CoV-2), or cause of the coronavirus disease, colloquially known as COVID-19, did not show a benefit of masks in preventing viral spread.[1]

In fact, during the pandemic, although 80% of U.S. states mandated masks, research showed that masks did not reduce the spread of the virus.[2] No

---

[1] Renyi Zhang, Yixin Li, Annie L. Zhang, Yuan Wang, and Mario J. Molina Identifying airborne transmission as the dominant route for the spread of COVID-19_ PNAS June 30, 2020 117 (26) 14857-14863; first published June 11, 2020 Contributed by Mario J. Molina, May 16, 2020 (sent for review May 14, 2020; reviewed by Manish Shrivaslava and Tong Zhu: https://www.pnas.org/doi/10.1073/pnas.2018637117

[2] https://www.medrxiv.org/content 10.1101/2021.05.18.21257385v1.full.pdf

*Case # 2:22-cv-02383-SSS-ASx*                 -24-                 PLAINTIFFS' MEMORANDUM
IN OPPOSITION TO FEDERAL
DEFENDANTS' MOTION TO DISMISS

masks have been shown to protect against small particle viruses.[3]

Coronaviruses are 0.1 to 0.125 microns – 100 times smaller than fine dust particles. CDC July 2020 statistics show that 85% of people who were sick with COVID-19 reported "always" or "usually" wearing a mask. Only 3.9% of COVID-19 victims reported never wearing a mask. These numbers were nearly identical in the control group — i.e., those not getting sick with COVID-19.[4]

"Mandatory" mask wearing has also become the source of numerous disruptive and sometimes violent conflicts between passengers and transportation workers, and among transportation workers themselves, creating veritable chaos in the skies. *Wall, et. al. v. TSA*, Brief of Amici Curiae 309 Pilots & Flight Attendants in Support of Petitioners, pgs. 12-21, 21-1220, 1221, 1225, 1236, 1237, 1258, 4-18- 2022, CADC.

Furthermore, the Mask Mandate was unjustified scientifically, the Government's Brief completely failed to support the mask mandate and the FTMM was political, not scientific, and thus should have been addressed by Congress rather than by a Federal Agency (Amicus Curiae Brief by the Association of American Physicians and Surgeons, USCA11 Case No. 22-11287, in the UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT, August 5, 2022). **EX. 03 at 14, 15 and 26**.

Furthermore, facemasks are considered medical devices, which are only in use subject to an Emergency Use Authorization (EUA) by the Food and

---

[3]   Masking Lack of Evidence with Politics, The Center for Evidence Based Medicine, July 23, 2020: https://www.cebm.net/COVID-19/masking-lack-of-evidence-with-politics/

[4]   Erratum: Vol. 69, No. 36. MMWR Morb Mortal Wkly Rep 2020;69:1380. DOI: http://dx.doi.org/10.15585/mmwr.mm6938a7

Drug Administration (FDA).[5]

As such, their use is subject to the ethical and legal principles of fully informed and voluntary patient consent, which includes the requirement that the patient be advised "of the option to accept or refuse administration of the product". 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III).

In contrast, the FTMM invalidated by the District Court, weaponized mask wearing by relying upon a form of coercion to enforce compliance with wearing ineffective and potentially dangerous masks. Being denied access to necessary transportation services as a penalty for declining the experimental medical device is a form of coercion, which invalidates voluntary patient consent.

Regardless of the ineffectiveness and potential dangers of "mandatory" mask wearing, the President and the CDC lack the constitutional and statutory authority to enact such a sweeping edict on such a major question affecting millions of travelers, which major question demands legislative authorization.

It has been shown that masks neither protect the mask-wearer from infection, nor prevent a mask-wearer from infecting others. Therefore, the transportation mask mandate is fundamentally irrational at its core, as the mandate in no way accomplishes its intended purpose. Masks are also actually harmful and unsanitary in many ways. The "mandatory" wearing of masks is anathema to our system of informed patient consent and medical freedom. For these reasons and many more, this honorable Court should deny FDs' motion to dismiss.

FDs assert that Plaintiffs "Mr. and Mrs. Marcus were able to receive

---

[5]  https://www.fda.gov/media/137121/download. Also:
https://www.fda.gov/medical-devices/coronavirus-disease-2019-covid-19-emergency-use-authorizations-medical-devices/faqs-emergency-use-authorizations-euas-medical-devices-during-covid-19-pandemic

1    mask exemptions on multiple occasions, but simply chose not to travel…".

2         This is patently false and should not appear in a motion to dismiss. The

3    truth is that after being granted mask exemptions in three instances, Plaintiffs

4    chose not to become targets of further discrimination, corralled to the back end

5    of an aircraft for 14 hours straight, one-way, in seats they did not select after

6    they paid for other seats, and chose not to be treated as their recent ancestors

7    had been treated 81 years ago when the German government convinced the

8    good citizens of Germany that Jews had a disease which was going to kill

9    everyone unless all Jews were exterminated first. FDs, it seems, have yet to

10   learn the lessons of the Holocaust. But for us as Jews, it shall not fall twice.

11        For Plaintiff Yvonne Marcus, both a Jew and a Native American of

12   Lipan Apache descent, whose ancestors earned the unrestricted right to freely

13   travel within the United States in any manner that suited them as Native

14   Americans under the 2018 Navajo Civil Rights of Individuals with Disabilities

15   Act (Civil Rights Act) (Legislation No. 0469-17) and the Indian Citizenship

16   Act of 1924 [43 Stat. 253], also chose not to repeat that ugly chapter in history

17   when US government agents were bent on discriminating against her ancestors

18   on the basis of their disabilities. Plaintiff Yvonne Marcus does not appreciate

19   the flippant remark of FD's that she "simply chose not to travel," because

20   choosing to travel included submitting to open and illegal discriminatory

21   practices against her on the part of all Defendants named in this lawsuit, that

22   no other passenger amongst some 388 additional passengers aboard a Boeing

23   777 had to submit to.

24        Every one of these alleged "minor burdens" added enormous stress to

25   Plaintiffs each time they wished to travel by air, and no senior citizen of these

26   United States of America should be forced to undergo these things simply

27   because FDs bought into a lie that masks and PCR testing somehow prevented

28   viral transmission. No rational human being one sets aside their human rights

and their own health, because another passenger is afraid they might die from a virus. Let those persons who are afraid of dying on an airplane, allegedly contracted from an unmasked passenger be the person to stay home or jump into a canoe and paddle home to America, across the Atlantic Ocean. FDs had no statutory authority to coerce US Citizens to submit to medical experiments and devices and be bullied by federal agents to do things that their doctors told them not to do, precisely because FDs are not Plaintiffs' doctors.

The right to travel is not negotiable. The Constitution does in fact guarantee the right to travel by whatever mode of transportation is available and reasonable, which in the case of Plaintiffs Uri and Yvonne Marcus, just happens to be air-transportation, given they reside some 12,185 kilometers from home. Senior citizens do not reasonably jump into canoe to travel from Tel Aviv to San Francisco, but apparently FDs, thinking like children, believe it to be possible. Besides that, when an order is given with a requirement for persons to wear masks while on conveyances and at ALL transportation hubs nationwide [86 Fed. Reg. 8025 (Feb. 3,2021)], what reasonable forms of transportation remain for the disabled?

The conspiracy here involves the constitutional right to travel, for which no other remedy exists except a lawsuit under 42 U.S.C. § 1985(3). "The right to pass freely from State to State has been explicitly recognized as among the rights and privileges of National citizenship." *Twining v. New Jersey*, 211 U.S. 78, 97 (1908). "That right, like other rights of national citizenship, is within the power of Congress to protect by appropriate legislation." *Id. at 105-106.*

Additional legal arguments that establish Plaintiffs' right to travel, and which should defeat FDs motion to dismiss, can be referred to in Plaintiffs Memorandum in Opposition to Airline Defendants motion to dismiss [DKT. #97 at 33, line 26].

**VIII. Plaintiffs fail to state an Air Carrier Access Act claim (Cause of Action 9)**

As Plaintiffs responded to this same argument by the Airline Defendants [DKT. #129 at 13, line 19], we present the same arguments here.

Though seasoned attorneys, it is baffling how FDs seem to believe that the lack of a right to private action in an ACAA complaint is settled law. It is not. Yes, there is the case of *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) which in a somewhat related concept where the Supreme Court decided there was no private action available in that case. Lawyers love quoting *Sandoval*, but do not clarify that *Sandoval* is not an ACAA case.

In our ACAA case, we humbly come before this Court to ask it to judicially imply a private right of action from a federal statute, where the mentioning of a private right of action was silent.

It should also be noted that FDs cite no statutory language prohibiting private enforcement of the ACAA, because it doesn't exist.

In our case, the federal statute itself is the most important source of implied private action. The federal statute is what give the impetus to the courts to judicially create implied private rights of action when they are not expressly created by Congress, allowing a private plaintiff to become the enforcer of a federal statute, especially and precisely during conditions when the federal regulation designed to implement a federal statute had ceased to properly function. A private plaintiff seeking to enforce such a federal statute must have an alternative source of relief.

"Many federal statutes provide a private cause of action through their express terms. Other federal statutes, however, merely define rights and duties, and are silent on the issue of whether an individual may bring suit to enforce them. For statutes in this latter category . . . courts have held that "implied" private rights of action

1    may exist subject to statutory interpretation." *Landegger v. Cohen*,
2    5 F. Supp. 3d 1278, 1284 (D. Colo. 2013).

3    FDs however, argue that Plaintiffs do have such an alternate source —
4    the DOT — that has developed a "comprehensive enforcement process."

5    In a case in the Massachusetts District Court, *Michael Selecki v. CDC et
6    al*, case No. 22-10155-PBS, there was a status conference in February 2022
7    that some of the same attorneys in our action attended. The "MR.
8    GOLDBERG" tag below refers to Mr. Roy Goldberg, attorney for several of
9    the Airline Defendants in our case. In that conference, the following exchange
10   appears (**EX. 05 at 26-27**):

11       **MR. GOLDBERG:** It's just there's no private right of action with
12       the Air Carrier Act in effect, your Honor, and I just wanted to make
13       sure the record was clear on that, and there's no private right of
14       action under the Americans with Disabilities Act either.

15       **THE COURT:** Well, suppose there's a lady who wants to travel on
16       a wheelchair and the airline says "no," you're saying that she can't
17       get on the plane and has to go through a six-month exhaustion
18       process?

19       **MR. GOLDBERG:** No. I mean, that would be a clear violation of
20       the DOT requirements, and the airline could face significant fines
21       and sanctions.

22       **THE COURT:** But what happens in the meantime, this little
23       disabled lady who wants to get on a plane and she's going to her
24       daughter's wedding, and they say "no"?

25       **MR. GOLDBERG:** If it were me, your Honor, I would go to the
26       DOT. I would immediately then say, "DOT, you didn't act quickly
27       enough," and I would do it the right, proper channel. There's a
28       federal statute, 49 U.S.C. § 46110, that that's the only one way to

1       do it, your Honor. I mean, that's just what the law is. … .

2           **THE COURT:** All right, well, I don't know about that, but I sure

3       don't want to decide that in a split second. I just think that this is

4       easily worked out. … .

5           As you can see, the Honorable Patti B. Saris, United States District

6   Judge of the District of Massachusetts was not prepared to instantly accept Mr.

7   Goldberg's premise that in every case and in all scenarios there is no

8   possibility of any private of action on an ACAA violation. She wasn't

9   convinced that this was settled law. We understand that this Court is not bound

10  by decisions from other District Courts, but we would like to encourage this

11  Court to allow this discussion to play out in real time as a full-fledged lawsuit

12  with a trial.

13          The DOT is actually part of the conspiracy mentioned and we will look

14  into the viability of adding them as a defendant, as later similarly suggested by

15  Judge Saris in *Seklecki*. DOT has been taking over a year to respond to

16  complaints and they have been encouraging the airlines to violate the ACAA,

17  as we fully document in our Complaint. It's a difficult position for disabled

18  American citizens to find themselves in, when the agency that is claimed to be

19  the only enforcement avenue, is actually taking the role not only as arbiter, but

20  also as the instigator and the violator.

21          Included in the DOT's "comprehensive enforcement process" is a right

22  to a review and pursue such enforcement. 49 U.S.C. 46110. And yet, the

23  Circuit Courts have denied a review of the DOT's failure to enforce, and

24  dismissed a case claiming there was **"a lack of jurisdiction"** *(emphasis ours)*

25  (*Abadi v. DOT*, 2nd Circuit 21-2807, and *Abadi v. DOT*, DC Circuit 22-1012).

26  **EX. 06.**

27          Thus, FDs blatantly distort the truth claiming, "Plaintiffs' ACAA claim

28  also fails because there is no private right of action under the ACAA."

Given this reality, FDs' Motion to Dismiss should not prevail. If the DOT fails to enforce the ACAA AND the Circuit Courts deny petitions for review for "lack of jurisdiction," where does that leave Plaintiffs' remedy without a private right of action in this forum? This honorable Court must believe there is another avenue of enforcement, namely, judicially creating a private right of action. One thing is certain; the courts cannot leave disabled people in a situation where they cannot fly on airplanes, and justly say that this was the intent of Congress.

It is beyond belief, in light of the above, and in light of all the counts of action that Plaintiffs brought before this Court, that FDs remain in denial that discrimination against us actually took place on such a massive, unprecedented scale. It is unconscionable that FDs state in their motion to dismiss that…

> "In any event, the mask order does not 'discriminate against' passengers on the basis of disability. To the contrary: the order explicitly exempts any 'person with a disability who cannot wear a mask, or cannot safely wear a mask, because of the disability.' … the FTMM explicitly exempts any 'person with a disability who cannot wear a mask … because of a disability.'" [DKT. #97 at 24, line 3].

During the entire period when the FTMM was being enforced, FDs offered the exemption to us, but then quickly retracted it, adding that "The exemption is not meant to cover people with disabilities for whom wearing a mask might only be difficult or whose disability does not prevent them from wearing a mask or wearing a mask safely." **EX. 07 at 23**.

Airline Defendants and their hired guns, the Medical Defendants were instantly armed to the teeth with this statement, authored by FDs, and went on to deny mask exemptions as a matter of course to nearly every disabled person who applied for a waiver. How dare them now come whimpering to Plaintiffs

as if they had actually followed through to exempt any 'person with a disability who cannot wear a mask … because of a disability!" This is outrageous and for this reason alone, FDs motion to dismiss must be denied in its entirety.

Throughout the entire COVID-19 pandemic, the DOT refused its statutory duty to protect the disabled from discrimination by airlines. Clearly, these were no ordinary circumstances, but this is precisely how the courts are provided with opportunities to break the current cycle of injustice. Otherwise, the DOT will continue to utterly fail as it has to this day, to establish justice in the wake of injuries inflicted upon a disabled class of American citizens, which the federal statute seeks to dispatch.

Adding insult to injury, the DOT never offered restitution or compensation to victims of airline discrimination. The only remedy therefore is for the courts to judicially create a private cause of action to mitigate against what the Airline Defendants, Medical Defendants and FDs did to injure Plaintiffs, arising out from their failure to act and to protect. This is unquestionably an issue of first impression nationwide.

DOT's Feb. 5, 2021 Notice of Enforcement Policy (**EX. 08**) creates illegal provisions that are not law, not regulations, not a mandate and not an order, requiring a person seeking an exemption to request accommodation in advance, submit to medical consultation by a third party, and provide medical documentation by a licensed medical provider.

DOT to date has not investigated any of the numerous complaints filed by Plaintiffs in this case, and it has already been nearly EIGHT months since our first complaint was filed. In one case not filed by a Plaintiff in this action, DOT found Defendant Southwest (as well as JetBlue Airways) had violated 14 C.F.R. § 382.19 by refusing to grant any medical exemptions. **EX. 09 at 4 & 8**. However, DOT did not penalize the airlines for their illegal conduct. This, despite the fact that DOT said they would "provide reasonable

accommodations to persons with disabilities who are unable to wear or safely wear masks." **EX. 08 at 2, 3 & 7.**

The mandate required that airlines grant exemptions to passengers with medical conditions who can't safely wear masks. FD's, Airline Defendants and DOT failed to comply with their own rules as documented in our Complaint.

In distinguishing between a plaintiff's right and a plaintiff's relief, most Federal Courts are aware of the distinction, and caution that before addressing any standing issue, "a court must answer the threshold question of whether a statute affords a plaintiff a private right of action." *Asbury Park Bd. of Educ. v. Hope Acad.,* Charter Sch., 278 F. Supp. 2d 417, 420 n.2 (D.N.J. 2003).

The question of whether to create a private right of action has been described by the Supreme Court in the following way:

> "Since the [federal statute] does not explicitly create a private enforcement mechanism, the initial question presented . . . is whether such a private right of action can be implied on behalf of those allegedly injured by a claimed violation of [the statute]." *California v. Sierra Club*, 451 U.S. 287, 289–90 (1981).

There are THREE sources of federal implied private rights of action in our case: The FIRST is the United States Constitution; see *Bivens v. Six Unknown Narcotics Agents*, 403 U.S. 388, 392 (1971). "Bivens authorizes a private cause of action against federal officials . . . who violate an individual's constitutional rights while acting under color of federal law." *Mullen v. Bureau of Prisons*, 843 F. Supp. 2d 112, 116 (D.D.C. 2012).

The SECOND source is the federal statute — 49 U.S.C. § 41705 [aka "the ACAA" enacted by Congress in 1986] — that guaranteed that people with disabilities would receive consistent and nondiscriminatory treatment when traveling by air.

The THIRD source is from the federal regulation, which in our case is

PLAINTIFFS' MEMORANDUM
IN OPPOSITION TO FEDERAL
DEFENDANTS' MOTION TO DISMISS

14 C.F.R. Part 382, Subpart K (382.151 – 382.159), enacted four years later in 1990, after being designed to implement and enforce the federal statute. The implied and then judicially created private right of action can thus be based on the federal regulation, when and if it becomes clear that the Constitution and the federal statute has been summarily ignored, neglected or otherwise delayed by the very hand of those charged with upholding the federal regulation that should have prevented the discrimination.

Accordingly, there is nothing more pivotal and urgent to communicate through our argument here than this single coherent fact: The DOT, charged with enforcing the THIRD source [i.e., the federal regulation at 14 C.F.R. Part 382], has entirely failed to function, leaving Plaintiffs without a remedy. This lawsuit would not exist if the DOT had simply done or was doing its job.

If this honorable Court will rule that no implied private right can be judicially created for Plaintiffs, after DOT clearly failed in its roll of enforcement, it would be tantamount to ruling that Congress never intended a remedy for the disabled when traveling by air.

To prevent this travesty of justice, we are asking this honorable Court to expand the availability of implied private rights of action in this case, because the alternative is so unthinkable. If this Court agrees, it must strike FDs' motion to dismiss on this point.

On point with the above argument is what the Supreme Court decided in the 1960's in *J.I. Case Co. v. Borak*, 377 U.S. 426 (1964), abrogated by *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017). In that case, the court announced that courts had the ability, indeed even the duty, to create new implied private rights of action, and that these actions could be based on the broad ground of legislative purpose. *id. at 433* (**"[I]t is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose."**) *(emphasis ours)*.

Plaintiff Yvonne Marcus was shocked to learn of the list of arguments in FDs' motion to dismiss, which for all intents and purposes erased not only her right to freely travel within the United States as a Native American, when her disability prevented her from safely masking, but also annihilated her rights to be free of discrimination based on her disability, rights that her Nation and her people were awarded through Navajo as well as U.S. legislation. Beyond belief was the legal fabrication that she had allegedly lost her private rights of action for violations of the ACAA against FDs, after the DOT failed to do their jobs, simply because she could not safely don a mask. It cannot be that everything for which her people fought for countless decades, suddenly disappeared like smoke because FDs decided to enforce a fictitious federal law.

The Torah [i.e., the first five books of the Hebrew Bible] contains a reading called "Judges" [Heb: "Shoftim"] and it opens with the command to appoint

> "…judges and law-enforcement officials within all your city gates that the L-RD your G-d is giving you, for your tribes, and they shall judge the people with righteous judgment. You shall not pervert justice; you shall not show favoritism … Justice! Justice shall you pursue, that you may live and possess the Land the L-RD your G-d is giving you." D'varim [Deut] 16:18-20.

So in Torah-Law, so throughout the U.S. Judicial system: The courts and its judges are invested with the authority to interpret and decide all matters of law;

> "If a matter eludes you in judgment … between a legal position and for a statute, or between damage and for injury — arguments of controversy in your cities — then … you shall come … to the judge who will be in those days, and you shall inquire, and they will tell you the words of judgment." D'varim [Deut] 17:8-9.

In *Gilstrap v. United Air Lines, Inc.*, 709 F. 3d 995 - Court of Appeals, 9th Circuit 2013, the NINTH CIRCUIT said: "We have not squarely decided in this circuit whether, in addition to these administrative enforcement mechanisms, the ACAA may be enforced through private lawsuits."

Denying the Plaintiffs the opportunity to pursue this litigation will not be fair to the Plaintiffs or other disabled Americans, and would not be helpful to all the other victims of the DOT's lack of enforcement, nor would it remedy the victims of DOT's encouragement of discrimination that it generously provided to the airlines.

Accordingly, we ask this honorable Court to deny this motion and allow this case to proceed to discovery and trial.

**IX.   Plaintiffs fail to state a Food, Drug & Cosmetic Act claim (Causes of Action 10 & 16)**

Defendants are gas lighting by saying they didn't specifically coerce us to use EUA medical devices. This Court is aware, FDs are aware, the Plaintiffs are aware and every person in America is aware that these products were forced upon us. These arguments should not be in a motion to dismiss, if for no other reason than that nothing like this has ever happened in our generation or in our lifetimes. We are entitled to litigation and our own due process. If we move forward, we will easily be able to prove that FDs' statements are blatantly untrue and FDs should know that too. We need discovery and we should be entitled to the same through our rights to due process.

## CONCLUSION

As we reviewed and responded to each item, argument-by-argument, and case-by-case, Plaintiffs believe this honorable Court will see that this is not

1   a simple or frivolous case. Our rights to due process should entitle us to a full
2   lawsuit with discovery and trial. There is no cause of action that should just be
3   thrown out without adjudicating it. If FDs have a good case, they will win, and
4   if not then they won't. At this point, to dismiss a few counts here and there, but
5   then adjudicate the rest would seem arbitrary and random. Accordingly, we ask
6   this honorable Court to dismiss the FDs' motion in its entirety and allow us
7   move forward with discovery.
8   / /
9   / /
10   / /
11   / /
12   / /
13   / /
14   / /
15   / /
16   / /
17   / /
18   / /
19   / /
20   / /
21   / /
22   / /
23   / /
24   / /
25   / /
26   / /
27   / /
28   / /

1    Respectfully submitted this 30th day of August 2022.

2

3    By: /s/ *Uri Marcus*

4          Uri Marcus, lead plaintiff, *Pro-Se*
           P.O. Box 126

5          Ojai, CA 93024

6          Telephone: 909-833-0065
           E-Mail: uri@ntcf.org

7

8    By: /s/ *Yvonne Marcus*

9          Yvonne Marcus, plaintiff, *Pro-Se*
           P.O. Box 126

10         Ojai, CA 93024

11         Telephone: 909-833-0065
           E-Mail: adi@ntcf.org

12

13   By: /s/ *Avrohom Gordon*

14         Avrohom Gordon, plaintiff, *Pro-Se*

15         2251 State Route 222
           New Richmond, OH  45157

16         Telephone: 513-734-1770

17         gordon.avrohom@gmail.com

18

19   By: /s/ *Devorah Gordon*

20         Devorah Gordon, plaintiff, *Pro-Se*

21         2251 State Route 222
           New Richmond, OH  45157

22         Telephone: 513-734-1770
           devorahlgordon@gmail.com

23

24   By: /s/ *Cindy Russo*

25         Cindy Russo, plaintiff, *Pro-Se*

26         22485 Breakwater Way
           Santa Clarita, CA  91350

27         Telephone: 908-797-8066

28         cjrz123@gmail.com

Pursuant to L.R. 5-4.3.4(a)(2)(i), the filer of this document hereby attests that all other signatories listed above, and on whose behalf the filing is submitted, concur in the filing's content and have authorized this filing.