**URI MARCUS**
P.O. Box 126
Ojai, CA  93024
Telephone:  909-833-0065
email: uri@ntcf.org

*Pro Se*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| URI MARCUS, YVONNE MARCUS, AVROHOM GORDON, DEVORAH GORDON & CINDY RUSSO, | Case No.: 2:22-cv-02383-SSS-ASx |
| *Plaintiffs,* | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS DEFENDANT JULIE CARRIGAN IN HER INDIVIDUAL CAPACITY PURSUANT TO LOCAL RULE 7-9** |
| v. | |
| CENTERS FOR DISEASE CONTROL & PREVENTION, DEPARTMENT OF HEALTH & HUMAN SERVICES, TRANSPORTATION SECURITY ADMINISTRATION, JULIE CARRIGAN, ALASKA AIRLINES, ALLEGIANT AIR, AMERICAN AIRLINES, DELTA AIR LINES, FRONTIER AIRLINES, HAWAIIAN AIRLINES, SOUTHWEST AIRLINES, UNITED AIRLINES, YET-TO-BE-NAMED EMPLOYEES OF THE 8 AIRLINES, STAT-MD, & MEDAIRE, | |
| *Defendants,* | Hearing Date: **November 17, 2022** Time: **9:00 a.m.** Via Zoom Video Conference **The Hon. Sunshine Suzanne Sykes** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................iii

    Cases...................................................................................iii

    Statutes ..............................................................................vi

    Other Authorities..............................................................vii

INTRODUCTION AND BACKGROUND .......................................1

ARGUMENT ..................................................................................6

    I.     PERSONAL JURISDICTION EXISTS..................................6

    II.    VENUE IS PROPER.................................................10

    III.   SUBJECT-MATTER JURISDICTION EXISTS...................12

    IV.   THERE'S NO LACK OF A *BIVENS* REMEDY...................15

    V.    QUALIFIED IMMUNITY FOR NTVC'S
            DIRECTOR FAILS..................................................22

CONCLUSION ...............................................................................25

# TABLE OF AUTHORITIES

*Cases*                                                                                          *Page*

*Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*

    551 F.2d 784, 787 (9th Cir. 1977) ............................................................. 10

*Americopters, LLC v. Federal Aviation Administration*

    441 F.3d 726, 728 (9th Cir. 2006) ............................................................. 13

*Anderson v. Creighton*

    483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ................. 22, 24

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*

    403 U.S. 388 (1971) ...................................... 2, 10, 11, 12, 16, 17, 20, 21, 25

*Boule v. Egbert*

    980 F.3d 1309, 1312 (9th Cir. 2020) ........................................................... 21

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*

    —— U.S. ——, 137 S. Ct. 1773, 1779, 198 L.Ed.2d 395 (2017) .................. 8

*Burger King Corp. v. Rudzewicz*

    471 U.S. 462, 474-75 (1985) at 475 ........................................................... 10

*Carlson, v. Green*

    446 U.S. 14, 25 (1980) ............................................................................... 20

*Clark v. Busey*

    959 F.2d 808, 811 (9th Cir. 1992) ............................................................. 13

*Crist v. Leippe*

    138 F.3d 801, 802 (9th Cir. 1998) ............................................................. 14

*Daimler AG v. Bauman*

    571 U.S. 117, 125, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014) ........................ 7

*Eades v. TSA*

    Case 0:21-ag-03362 (8th Cir.), transferred to No. 21-1236 (D.C. Cir.) ....... 18

*Egbert v. Boule*

    142 S. Ct. 1793, 1800 (2022) ............................................................... 16, 21

*Elhady v. Pew*
    370 F. Supp. 3d 757, 770 (E.D. Mich. 2019) ............................................... 21

*Faris v. TSA*
    No. 21-3951, transferred to No. 21-1221 (D.C. Cir.),
    Document #1927466 at 11 ........................................................................ 18, 19

*Ford Motor Co. v. Montana Eighth Judicial District Court*
    592 U.S. ___ (2021) ............................................................................... 7, 8, 9

*Garcetti v. Ceballos*
    547 U.S. 410 (2006) ...................................................................................... 3

*Gordon v. Holder*
    721 F.3d 638 (D.C. Cir. 2013) ...................................................................... 19

*Hanson v. Denckla*
    357 U.S. 235, 253 .......................................................................................... 8

*International Shoe Co. v. Washington*
    326 U.S. 310, 316–17, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ............................. 8

*Lanuza v. Love*
    899 F.3d 1019, 1033 (9th Cir. 2018) ............................................................ 20

*Latif v. Holder*
    10-CV-750-BR, 4 (D. Or. May. 3, 2011) ............................................... 14, 15

*Mace v. Skinner*
    34 F.3d at 859-60 ......................................................................................... 13

*Malley v. Briggs*
    475 U.S. 335, (1986) ................................................................................... 22

*Mammana v. Barben*
    856 F. App'x 411, 413 (3d Cir. 2021) .......................................................... 21

*Marcus v. TSA*
    No. 21-1225 (D.C. Cir.), DKT. 1926085 ............................................. 3, 4, 16

*Robertson v. Wegmann*

436  U.S., at 592 (1978) ................................................................ 20

*Rodriguez v. Swartz*

899 F.3d 719, 748 (9th Cir. 2018) cert. granted,

judgment vacated, 206 L. Ed. 2d 250, 140 S. Ct. 1258 (2020) ................... 20

*Tandon v. Newsom*

141 S.Ct. 1294 (2021) ................................................................ 19

*Wilkie v. Robbins*

551 U.S. at 555, 127 S.Ct. 2588 ................................................... 20

*Ziglar v. Abbasi*

137 S.Ct. at 1863 ................................................................ 20, 21

1

***Statutes***                                                                                    ***Page***

42 U.S.C. § 1985(3)...............................................................1, 2, 20

42 U.S.C. § 1986 ......................................................................1, 2

49 U.S.C. § 114(r)(4).....................................................................18

49 U.S.C. § 46110 ..........................................................13, 14, 15

Cal. Civ. Proc. Code § 410.10 ........................................................7

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Other Authorities*                                                    *Page*

78 FR at 55275 ............................................................. 4

F.R.C.P. 12(b)(6) ........................................................ 21

F.R.C.P. Rule 12(a)(3) ................................................ 11

F.R.C.P. Rule 12(a)(4)(A) ........................................... 11

F.R.C.P. Rule 12(b)(3) ................................................ 10

F.R.C.P. Rule 12(b)(2) ................................................ 11

U.S. Constitution, First Amendment ..................................... 18, 23

U.S. Constitution, Fourteenth Amendment ................................... 7

1

## INTRODUCTION AND BACKGROUND

2    Motions to Dismiss are not for litigating on the fly. Plaintiffs' claims are

3    not frivolous, but real and proper. The arguments are not so complex or

4    numerous that they would cause widespread harm to the civil justice system.

5    "Frivolous" is applied to things that don't deserve serious attention — our

6    claims do. Plaintiffs are therefore entitled to a full litigation.

7    Contrary to Defendant's perspective, Ms. Carrigan [hereinafter  "the

8    NTVC Director"], in her official as well as in her individual capacity, is NOT

9    listed for only TWO counts. She is included in the conspiracy causes of action

10   of 42 U.S.C. § 1985(3) AND § 1986, as her actions were in furtherance of this

11   conspiracy. That makes FOUR counts. We may have inadvertently omitted her

12   name from our 1985(3) arguments, but we did not forget her in 1986. Everyone

13   knows that those two counts go together. It is understood to be that way.

14   Accordingly, if this honorable Court requires a cure for clarity, we shall

15   provide the same.

16   The NTVC Director either acted alone or conspired with her colleagues

17   to injure Plaintiff. Regardless, she had prior knowledge of the wrongs she

18   conjured up on her own and/or conspired to carry out with her colleagues,

19   mentioned in 42 U.S.C. § 1985(3), were about to be committed. She thus had

20   the power to prevent or aid in preventing the commission of the same, or she

21   neglected or refused so to do. Accordingly, she is liable to Plaintiff who was

22   injured for all damages caused by her wrongful act, which she by reasonable

23   diligence, could have prevented.

24   These damages may be therefore be recovered after Discovery will

25   reveal the extent of and the number of persons guilty of the above-mentioned

26   wrongful act. The extent to which the NTVC Director conspired to directly

27   deprive me of my equal privileges under law and to injure me, can only be

28   disclosed through Discovery.

1      The one thing that is clear above all else is the material fact that the

2   NTVC Director did deprived me of my approved Pre-Check eligibility in

3   retaliation for exercising my right and privilege as a citizen of the United

4   States to address the government with my grievances. And thus, 42 U.S.C. §

5   1985(3) and 1986 provides this action for the recovery of damages occasioned

6   by the NTVC Director — together with whomever she may have consulted or

7   conspired — to injury and deprive me of said rights.

8      The NTVC Director's Motion to Dismiss asserts a Lack of Subject-

9   Matter Jurisdiction, a Lack of Personal Jurisdiction, and an Improper Venue,

10   along with TWO other alleged legal deficiencies, namely, the Lack of a *Bivens*

11   [*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403

12   U.S. 388 (1971)] remedy and Qualified Immunity, all of which I shall

13   copiously address in this opposition brief.

14      In truth, I have set forth all of the necessary elements of my claims

15   against the NTVC Director and accordingly, there is no basis for her Motion to

16   Dismiss.

17      The Transportation Security Administration [hereinafter "TSA"]

18   together with the NTVC Director — in her official as well as her individual

19   capacity] — carried out retaliation against Plaintiff by canceling my Pre-Check

20   eligibility, and of course refused not offer any reason why, hiding behind the

21   "national security" veil. These issues should be properly addressed in a

22   litigation, which includes Discovery, where the NTVC Director will be asked

23   to provide real reasons for her actions, and then the truth will come out.

24      The NTVC Director maintains that…

25         "As a result of recurrent checks and based on a comprehensive

26         background check, TSA was unable to determine that you pose a

27         sufficiently low risk to transportation and national security to

28         continue to be eligible for expedited airport security screening

1        through the TSA Pre-Check Application Program. As a result, TSA

2        has determined that you are no longer eligible to participate in the

3        TSA Pre-Check Application Program." **EX. 01**.

4        However, the Court should take notice that Plaintiff Uri Marcus' wife

5 Yvonne Marcus, signed up for Pre-Check at the same time he did. Her

6 application was approved on the same day that his was. His wife did not sue

7 TSA, as Plaintiff Uri Marcus had done [*Marcus v. TSA*, No. 21-1225 (D.C.

8 Cir.) (following transfer from the Fifth Circuit)]. It was far more than a

9 coincidence that she DID NOT receive a letter from TSA revoking her Pre-

10 Check eligibility. **EX. 02**.

11        There was never any indication that Plaintiff had been deemed a risk to

12 transportation or to national security. TSA only declared him as such after he

13 dared to exercise his First Amendment right to petition a Court of Appeals to

14 review the FTMM that was being enforced by the TSA and other agencies.

15        The First Amendment protects any citizen's right to freedom of

16 expression from government interference in the wake of his governmental

17 redress of grievances.

18        In *Garcetti v. Ceballos*, 547 U.S. 410 (2006), the Supreme Court

19 reaffirmed its prior decisions that the First Amendment to the U.S.

20 Constitution protects private citizens engaged in a constitutionally protected

21 activity of speaking out as private citizens on matters of public concern.

22        The NTVC Director's adverse action of removing Plaintiff's eligibility

23 for TSA's Pre-Check program caused him to suffer an injury that would likely

24 chill any person of ordinary firmness, such as his wife, from engaging in the

25 same activity; if fact, his wife was not willing to file a declaration with his

26 "Motion to Compel Respondent to Restore My TSA Pre-Check Eligibility &

27 for Respondent to Show Cause Why it Should not be Sanctioned and/or Held

28 in Contempt of Court for Illegal Retaliation" [*Marcus v. TSA*, No. 21-1225

(D.C. Cir.), DKT. 1926085], out of fear that if she had, the TSA will also have sent her the same ineligibility letter.

Clearly, the NTVC Director's adverse action was motivated at least in part as a response to the exercise of the Plaintiff's constitutional rights and as such this action represents illegal retaliation against him for suing TSA to put a stop to the FTMM. Plaintiff has not flown since the Dec. 9, 2020. He resides in Jerusalem, Israel. He has not been arrested or charged with any crimes. The only thing he did to attract the attention of TSA and the NTVC Director, was to file his Petition for Review, 1,617 days after his Pre-Check eligibility was first approved in June of 2017, and 25 days before it was eligible for renewal. **EX. 03**.

Surely this honorable Court would not be given to believe that it was purely a coincidence that Plaintiff, then Petitioner, had his Pre-Check eligibility revoked for a reason than that the NTVC Director was retaliating against him 35 days after he filed a PRF against the TSA on October 19, 2021 [on November 23, 2021]. No speculation is necessary to understand the obvious. The NTVC Director claims that…

> TSA PreCheck eligibility "is within the sole discretion of TSA, which will notify individuals who are denied eligibility in writing of the reasons for the denial." Assessment at 2; 78 FR at 55275. [DKT. 133-1 at 4].

While it may be true that the NTVC Director in her official capacity may be permitted to invoke the "sole discretion of TSA" to deny Plaintiff's Pre-Check eligibility, she is equally obligated according to the Agency's own policy to "notify individuals who are denied eligibility in writing of the reasons for the denial." The NTVC Director NEVER did so either in her official capacity or her individual capacity, despite repeated requests to do so.

The NTVC Director wrote "TSA was unable to determine that you pose

a sufficiently low risk to transportation and national security to continue to be eligible for … TSA Pre-Check Application Program." No reasons for being "unable to determine that you pose a sufficiently low risk" were ever given. "Disqualifying Offenses and Other Factors" one might expect as reasons for being denied Pre-Check eligibility or for the TSA's inability to determine that the applicant poses a sufficiently low risk, according to TSA's website[1] might be "Suspicion of Espionage; Sedition; Treason; A crime involving a TSI (transportation security incident); Unlawful possession of an explosive device; Murder; or Maliciously conveying false information" amongst other things. But none of these suspicions were ever conveyed.

On March 14, 2022, Plaintiff made an inquiry to TSA via their webform[2] to ask why his eligibility was revoked and what could be done to reinstate him since the NTVC Director did not detail the causation of Plaintiff suddenly not being eligible. **EX. 04 at 1-3**.

On March 14, 2022 TSA responded, outlining the steps Plaintiff Marcus could take to have his Pre-Check reinstated. The letter stated, "You received a letter that provides the reasons for the disqualification and directions to submit a correction of record." However Plaintiff's order from the NTVC Director provided no reason for disqualification or instructions on how to reverse it.

Two days later, TSA sent an email on March 16, 2022 to Plaintiff, inviting him to renew his membership. This letter should have been sent in December 2021, six months prior to his membership expiring on June 16, 2022, but it was never sent in December 2021. **EX. 05**.

The next day, March 17, 2022, after attempting to renew his membership online, as invited, the renewal was denied. Plaintiff requested

---

[1]   https://www.tsa.gov/disqualifying-offenses-factors

[2]   https://www.tsa.gov/contact-center/form/precheck

*Case # 2:22-cv-02383-SSS-ASx*        -5-        PLAINTIFFS' MEMO IN OPP'N TO MTD.
                                                DEFENDANT JULIE CARRIGAN IN HER
                                                INDIVIDUAL CAPACITY

clarification once again in an email on March 17, 2022. **EX. 04 at 4**. TSA sent an AUTO-RESPONSE promising to respond to Plaintiff's letter of clarification. *Id. at 5*. No reply was ever received.

Plaintiff also called the TSA renewal Center on March 17, 2022, but after nearly an hour, no one was able to give him a reason why his renewal was not processing and being approved.

On March 23-24, 2022, Plaintiff Marcus sent yet another letter asking for clarification to inquire about how to have his membership reinstated. **EX. 04 at 6-8**. No responses were received.

## ARGUMENT

## I.    PERSONAL JURISDICTION EXISTS

The NTVC Director alleges that this Court lacks personal jurisdiction over her in her individual capacity — No it doesn't. The NTVC Director has agents and contacts working in California in the TSA Office at John Wayne Airport [SNA], Terminal C, Santa Ana, CA, and on June 16, 2017 at 10 AM, those agents interviewed both Plaintiff and his wife in person when we first applied for Pre-Check eligibility.

The actions that lead to the claims against the NTVC Director occurred in California. In addition, the conspiracy charges are for her actions that would have affected Plaintiff in any state, but particularly in California. California based TSA agents are obligated to carry out and honor the NTVC Director's retaliation scheme and revocation order, even though she sits in Virginia.

On June 21, 2017, Bud Hunt, General Manager, Security Threat Assessment Opera, an agent of TSA, contracted by the U.S. Department of Homeland Security in Arlington, VA, sent us a letter approving our Pre-Check Eligibility.

When the NTVC Director, who sits comfortably in her Virginia office will later commit tortious acts in California from which injury will result, then a plaintiff who will suffer that injury by her hand, should be given opportunity to demonstrate that a California Court has specific personal jurisdiction over the her, based on her tortious conduct honored by TSA agents based in California. When she commits these acts against a US Citizen in Kentucky, or in Florida, she cannot duck her obligations to answer for her actions because her California or Kentucky or Florida victims don't reside in Virginia, or don't have their principle place of business in the State of Virginia. She cannot expect us to run to a Federal Court in Virginia after she was the one who reached out, fully intending to harm us in our State. This legal maneuvering on the part of federal employees to avoid culpability has to stop.

Plaintiff can correctly claim that the forum state has specific personal jurisdiction over the NTVC Director, because of her wealth of contacts within the State of California, all of whom do her bidding, regardless of the fact that her telephone rings, and her office chair swivels in the State of Virginia.

SCOTUS held in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. ___ (2021) that "defendant's contacts with the forum state, were sufficiently related to the litigation, which affirms specific personal jurisdiction over this defendant." California…

> "…allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." *Daimler AG v. Bauman*, 571 U.S. 117, 125, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014); see also Cal. Civ. Proc. Code § 410.10. Under the Fourteenth Amendment's Due Process Clause, "a tribunal's authority depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of

fair play and substantial justice.'" *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.,* —— *U.S.* ——, 141 S. Ct. 1017, 1024, 209 L.Ed.2d 225 (2021) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316–17, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). This inquiry "has long focused on the nature and extent of 'the defendant's relationship with the forum state.'" *Id.* (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.,* —— U.S. ——, 137 S. Ct. 1773, 1779, 198 L.Ed.2d 395 (2017)). And that "focus" has resulted in "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Id.*

"Specific jurisdiction covers defendants less intimately connected with a State, but only as to a narrower class of claims. To be subject to that kind of jurisdiction, the defendant must take "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253. And the plaintiff's claims "must arise out of or relate to the defendant's contacts" with the forum. *Bristol-Myers*, 582 U.S., at ___. Pp. 4−7.

When the NTVC Director suggested that there is no jurisdiction over her simply because she sits in an office in Virginia, it fails to recognize that her violations and actions were undertaken in areas that spanned the entire country, including this jurisdiction where Plaintiff was injured. Retaliation against Plaintiff came as a direct result of actions taken by the NTVC Director. The acts and events, over which Plaintiff brought this cause of action against her in her individual capacity, occurred in this District at a physical residential address located on South Padre Juan Ave in the city of Ojai, CA, 93023, to which physical residential address the NTVC Director sent her letter of

revocation of Plaintiff's Pre-Check eligibility, contrary to Senior Trial Attorney and Federal Defense Counsel (Constitutional Torts Staff) Jeremy Scott Brumbelow's outrageous, bold-faced lie before this honorable Court, that it was sent to a Post Office Box in Ojai, CA. [DKT. 133 at 9]. **"Plaintiff's maintaining a Post Office box in California can't subject Carrigan to jurisdiction** *(emphasis mine)."* Seriously? Yes it can, and Yes it should! Senior Federal Trial Attorneys should do their homework before making such false statements, especially in light of another lie of his set before this court when he wrote that **"The TSA PreCheck revocation occurred outside California** *(emphasis mine)."* [DKT. 133 at 10]. It DID NOT! Moreover, Plaintiff DID SUFFER injury in California as a result of the revocation, AND his injury IS connected to the forum State in a way that makes the effects of the NTVC Director's action, a proper basis for both Specific Personal and Subject-Matter Jurisdiction in California.

To summarize, an out-of-state Defendant may be subject to Specific Personal Jurisdiction if the litigation arises out of or is related to Defendant's contact with the forum state. The NTVC Director serviced her contracts within the State of California; she authorized TSA agents at TSA's SNA [Santa Ana's John Wayne County Airport] Unit to terminate Plaintiff's Pre-Check eligibility in the State of California and upon doing so, she individually benefited from her contacts within the State of California exactly as these things took place in *Ford Motor Co. v. Montana Eighth Judicial District Court*.

Accordingly, Plaintiff has established through his initial Complaint the minimum contacts necessary and they are sufficient for Specific Personal Jurisdiction with the forum in which this honorable Court sits and thus this Court does has Specific Personal Jurisdiction owing to the NTVC Director's wealth of California contacts, even though her home operations are located in Virginia.

The NTVC Director does not have to be a resident or domiciliary of California; she was served with process there, through her attorney, Mr. Jeremy Brumbelow.

A nonresident defendant MAY in fact BE haled into this jurisdiction precisely because it is NOT the result of "'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person,'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985) at 475, and because Plaintiff has alleged facts establishing that jurisdiction, and because her California affiliations are continuous and systematic, so as to render her essentially at home in California wherein she purposefully directed her actions. Her own contacts' with the forum are overwhelming. TSA is comprised of nearly 65,000 employees across our nation. In California alone, there are 16 commercial service airports that offer TSA PreCheck services, all of which are staffed by TSA agents, beholden to carry out Director Carrigan's revocation orders.[3]

Plaintiff therefore, has just made his "prima facie showing of jurisdictional facts to withstand the motion to dismiss" by "demonstrat[ing] facts that … support jurisdiction over the defendant." *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). A Motion to Dismiss on the basis of the NTVC Director's argument of a lack of Personal Jurisdiction should be denied.

## II.   VENUE IS PROPER

The NTVC Director argues that Plaintiff "bears the burden of proving that venue is proper in this District as to his *Bivens* claim against Carrigan," asserting her defense of "improper venue," under F.R.C.P. Rule 12(b)(3).

---

[3]   https://www.tsa.gov/precheck/map

As previously stated, the acts and events over which Plaintiff brought this COA against the NTVC Director in her individual capacity, occurred in this District at a physical residential address located on South Padre Juan Ave in the city of Ojai, CA, 93023, contrary to Senior Trial Attorney and Federal Defense Counsel (Constitutional Torts Staff) Jeremy Scott Brumbelow's fabrication that **"[n]o part of her conduct relating to the TSA PreCheck revocation occurred in this District *(emphasis mine),"* and that **"all of 'the events or omissions giving rise to the claim' against her … necessarily occurred outside California *(emphasis mine)."* [DKT. 133 at 12].

Accordingly, the venue IS PROPER in the Central District of California as to each claim and as to each party, with respect to the *Bivens* claim against the NTVC Director, precisely because Plaintiff maintained a residential address in that District.

Moreover, F.R.C.P.'s Rule 12(b)(2) requires that "every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required." An Answer to Plaintiff's claim for relief IS REQUIRED and "[a] United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service…" F.R.C.P. Rule 12(a)(3).

However, "serving a motion under this rule alters these periods…" such that the Answer must be served after notice of the court's action…" F.R.C.P. Rule 12(a)(4)(A).

The bottom line is that the NTVC Director cannot sit comfortably at her desk in Virginia with impurity while thinking that she take any action she fancies against any Citizen of these United States that she fancies in any of its fifty states, expecting that her victims must all fly to Virginia, because she improperly alleges that the only proper venue is in Virginia!

*Case # 2:22-cv-02383-SSS-ASx*          -11-          PLAINTIFFS' MEMO IN OPP'N TO MTD.
DEFENDANT JULIE CARRIGAN IN HER
INDIVIDUAL CAPACITY

She is NOT shielded by Virginia, nor does she enjoy a free hand to retaliate against any U.S. Citizen outside of the State of Virginia with a casual and carefree mindset, supposing that none of them can bring suit against her from their home state, because in the instant case, EVERY PART of her conduct relating to my TSA Pre-Check revocation occurred IN California, IN the Central District.

Accordingly, Plaintiff now takes pleasure in asking this Court to deny her Motion to Dismiss on the basis of "improper venue," and will happily wait for the NTVC Director's Answer for her egregious actions on or before November 2, 2022, as this Court has ordered. DKT. 140.

## III.   SUBJECT-MATTER JURISDICTION EXISTS

The NTVC Director here is trying to turn my cause of action into an agency review, in order to force me to file a PFR. That is not what this is. I am suing the NTVC Director for her actions that were NEVER related to TSA safety or security, when she decided to punish me by using her power against me. If this honorable Court will later determines that her actions were in line with her mandate as a TSA official, then it will be different. But in that case, I would first be entitled to Discovery and to proceed with this litigation.

Plaintiff's *Bivens* claim against the NTVC Director does NOT satisfy the "inescapably-intertwined standard" because this so-called "standard" does not exist as a "standard," and because it exactly DOES challenge the NTVC Director's "unconstitutional actions." TSA's actions are not even in view, since Plaintiff did nothing and had no encounter whatsoever with any TSA agent at any airport security checkpoint, as defined in TSA's published list of Disqualifying Offenses and Other Factors,[4] that might have otherwise led to his Pre-Check eligibility being revoked.

---

[4]   https://www.tsa.gov/disqualifying-offenses-factors

1    Director Carrigan cited THREE cases in a patchwork of legal arguments
2    in efforts to hoodwink this honorable Court into accepting the false notion that
3    it lacks Subject-Matter Jurisdiction over Plaintiff's claims.

4    FIRST, the NTVC Director cites *Americopters, LLC v. Federal Aviation*
5    *Administration*, 441 F.3d 726, 728 (9th Cir. 2006). In that case, *Americopters,*
6    *LLC* filed a PFR because the Federal Aviation Administration ("FAA") halted
7    it's flight operations by an administrative order owing to a number of
8    deficiencies found on a rooftop helipad at a restaurant, that were deemed
9    unsafe and did not meet FAA Heliport Design requirements.

10   The NTVC Director, it a desperate bid to apply this case, substituted the
11   "FAA" with "TSA," even though nothing in the *Americopters, LLC* case even
12   remotely relates to Plaintiff's claims.

13   The NTVC Director goes on to misstate the law by claiming that 49
14   U.S.C. § 46110 divests this Court of Subject-Matter Jurisdiction over my claim
15   because it is allegedly "inescapably intertwined" with the Director Carrigan's
16   revocation order, even though § 46110 never once mentions any such standard
17   of being "inescapably intertwined." Moreover…

18       "Section 46110 does not bar all manner of review of FAA orders by
19       the district court. See *Mace v. Skinner*, 34 F.3d at 859-60
20       ("[N]owhere did we say or imply that a district court could never
21       exercise federal question jurisdiction over any action brought
22       against FAA, NTSB, and/or DOT officials; rather, we declared that
23       the district court's federal question jurisdiction is preempted by [§
24       46110] as to those classes of claims reviewable under [§ 46110].")
25       (internal quotation and alterations omitted) (citing *Clark v. Busey*,
26       959 F.2d 808, 811 (9th Cir. 1992)).

27   SECOND, to create traction and support for her sloppy commentary of
28   § 46110, the NTVC Director next cites *Crist v. Leippe*, 138 F.3d 801, 802 (9th

Cir. 1998), a case about a pilot whose flying privileges were suspended by the FAA for carelessly and recklessly operating an aircraft in a manner so as to endanger the life or property of another.

The NTVC Director asserts that *Crist's* appeal was "inescapably intertwined" with a review of the procedures … surrounding the FAA's order." She then tosses out "FAA" and inserts "TSA," suggesting that having your flying privileges suspended by an FAA order for recklessly operating an aircraft, is the functional equivalent of having your Pre-Check eligibility revoked by a TSA order for filing a lawsuit against the TSA. This is utterly preposterous! As an FAA certificated multi-engine, instrument airplane commercial pilot and flight instructor who understands what "operating aircraft in a manner so as to endanger the life or property of another" means, the Director's understanding is seriously flawed, from an aviator's perspective.

> "As in Mace, we hold that the district court erred in dismissing Crist's claims for lack of Subject-Matter jurisdiction." *Crist v. Leippe*, 138 F.3d 801, 805 (9th Cir. 1998).

THIRD, the NTVC Director drops in *Latif v. Holder*, 10-CV-750-BR, 4 (D. Or. May. 3, 2011), a case about one Ibrahim Latif, who was placed on a "No Fly List" by the F.B.I.'s Terrorist Screening Center ("TSC").

The government argued that the TSC decision was "inescapably intertwined" with TSA's final orders and thus would not remove the Latif's name from the "No Fly List." And yet…

> "…the court rejected the government's argument that the district court was divested of jurisdiction under 49 U.S.C. § 46110(a) and upheld the district court's ruling that the placement of a name on a No Fly List was not a TSA final order over which circuit courts have exclusive subject-matter jurisdiction. In particular, the court summarily rejected the government's argument that TSC's decision

to place a name on a No Fly List was so "inescapably intertwined" with TSA's final orders as to be reviewable only under § 46110(a): [T]he statute provides jurisdiction to review an "order," — it says nothing about "intertwining," inescapable or otherwise. The government advances no good reason why the word "order" should be interpreted to mean "order or any action inescapably intertwined with it." *Latif v. Holder*, 10-CV-750-BR, 13 (D. Or. May. 3, 2011).

Magically however, the NTVC Director still manages to functionally equate a TSC order to be placed on a "No-Fly list" — even AFTER the court rejected the notion that the matter was "inescapably intertwined" — with my claim of having my Pre-Check eligibility revoked for no apparent reason other than that I sued the TSA to address my grievances with the government regarding the FTMM.

Quite obviously therefore, there exists no factual comparison between my case and the cases that the NTVC Director cites, and this Court should NOT dismiss Director Carrigan in her individual capacity because it does in fact have Subject-Matter jurisdiction over COA #19 against her.

I have proven that this Court has more than sufficient Subject-Matter Jurisdiction to begin this lawsuit. Let the Court now deny the NTVC Director's Motion to Dismiss on the basis of this argument and allow me to begin the Discovery process in order to have the opportunity to present the real story.

## IV.   THERE'S NO LACK OF A *BIVENS* REMEDY

The NTVC Director posits that there's "a nearly unbroken line of Ninth Circuit cases declining" cases like mine. That obviously means that there ARE cases, which have been accepted, even if relatively few in number.

The NTVC Director signed the letter revoking my Pre-Check eligibility despite knowing the action was being taken in violation of my First

Amendment rights to protest, speak out against illegal government mandates, associate with other FTMM opponents, and petition the government for a redress of grievances by filing a lawsuit against TSA's mask mandate in the Court of Appeals. *Marcus v. TSA*, No. 21-1225 (D.C. Cir.) (following transfer from the Fifth Circuit). **EX. 01**.

Under the *Bivens* doctrine, the NTVC Director is liable to me for damages in her individual capacity for violating his constitutional rights.

To escape her liability, the NTVC Director makes arguments that belong in a Motion for Summary Judgment not in a Motion to Dismiss. Plaintiff nevertheless oppose those arguments, as follows:

The Senior Trial Attorney for the NTVC Director stated, *inter alia*, that "Egbert confirms the novelty of Plaintiff's claim." "Egbert is an insurmountable obstacle." "Based on Egbert alone, this Court should dismiss the *Bivens* claim against Carrigan with prejudice." [DKT. 133 at 16].

Boule in *Egbert v. Boule*, 142 S. Ct. 1793, 1800 (2022) is a **criminal** who managed a bed-and-breakfast hotspot for the cross-border smuggling of people, drugs, illicit money and items of significance to criminal organizations.

He had an altercation with Egbert, a U.S. Border Patrol agent over Boule's illicit operations. As a result, Egbert retaliated against Boule by reporting him to the Internal Revenue Service (IRS). Boule then sued Egbert in federal district court. In 2018, the district court granted summary judgment for Boule on his First Amendment *Bivens* claim.

On appeal in 2020, the 9th Circuit remanded the case for further proceedings, holding that Boule could pursue a *Bivens* remedy for his First Amendment claims. In July of 2021, Egbert petitioned the U.S. Supreme Court for review of the 9th Circuit decision.

In June 2022, SCOTUS reversed the 9th Circuit Court's ruling, holding that Boule could not pursue a *Bivens* remedy for his First Amendment claims

in this case because it did not present a new context for *Bivens* purposes.

Counsel for the NTVC Director insists that criminal Boule's case is somehow akin to Plaintiff's claim, simply because both cases play host to a plaintiff in pursuit of a First Amendment claim of retaliation under *Bivens*. But the devil is in the details.

And yet, Plaintiff DOES NOT have a criminal record, nor has he ever been engaged in any criminal activity during any portion of his 66 years on earth. Yet the NTVC Director — unlike Egbert — still saw fit to retaliate against Plaintiff, WITHOUT any suspicion or evidence of a criminal past.

Criminal plaintiff Boule was angry with Defendant Agent Egbert because he flagged the IRS who would expose plaintiff's criminal operations. Defendant Director Carrigan was angry with Plaintiff Marcus because he was going to expose Respondent TSA's illegal mask mandate through a PFR. Where is the similarity? None exists.

All of the NTVC Director's arguments function as nothing more than subterfuge and as a distraction. She cannot argue her way out of an injustice she perpetrated against an innocent citizen. Her illegal actions are not excused any more than criminal Boule's actions are excused.

That "Egbert is an insurmountable obstacle," is fluff and nonsense. Egbert DOES NOT apply here and hence the NTVC Director's Motion to Dismiss should be denied.

What's more, is the NTVC Director's shockingly ignorant statement that "Egbert confirms the novelty of Plaintiff's claim." Plaintiff's claim is NOT novel. Plaintiff is not alone. It's baffling how Director Carrigan tries to ignore as unrelated, the fact that the number of associated petitioners suffering retaliation by her hand has now risen to THREE, since their PFRs against TSA were all filed on October 19, 2021 in the Appellate courts.

TSA cites the unlawful retaliation it took against Michael Faris, lead

petitioner in *Faris v. TSA*, No. 21-3951, transferred to No. 21-1221 (D.C. Cir.), Document #1927466 at 11, but fails to mention it (meaning, TSA's Ms.Carrigan) also retaliated against Mr. Anthony Eades in *Eades v. TSA*, Case 0:21-ag-03362 (8th Cir.), transferred to No. 21-1236 (D.C. Cir.). **EX. 06**.

Plaintiff in the instant case became the THIRD petitioner against the FTMM to have adverse action taken against him by NTVC Director Carrigan, and yet the Senior Trial Attorney for the Director somehow imagines that "Egbert confirms the novelty of Plaintiff's claim."

Plaintiff remains confident however, that this honorable Court will take notice of what's transpiring, because it is so obvious. There's no other explanation as to why the NTVC Director's actions against myself and at least TWO other petitioners are anything other than retaliations prohibited by the First Amendment.

The NTVC Director's "hear no evil, see no evil" approach shouldn't fool anyone, especially in light of when it improperly states that "The government cannot confirm or deny, on the public record, petitioner's speculation … because that information could reasonably be expected to cause circumvention of the law and cause harm to the security of the transportation system." *Faris v. TSA*, No. 21-1221 (D.C. Cir.), Document #1927466 at 12.

TSA fails to cite the statute stating that such information CANNOT be hidden from public view, because it was used "to conceal a violation of law," namely illicit retaliation in violation of the First Amendment. 49 U.S.C. § 114(r)(4). Nor can the NTVC Director explain how a person suing the agency — who is medically unable to safely wear a face covering — constitutes "harm to the security of the transportation system." *Id.*

The TSA, together with the NTVC Director insist on continuing this irrational line of argument by concluding that there is a "weighty interest in protecting the transportation system from threats..." *Id. at 14*. But

Respondent/Defendant still refuses to explain to the Court how suing the agency and/or being unable to safely don a face mask at a TSA airport security checkpoint represents "threats" to the transportation system, much less how the NTVC Director is suddenly "unable to determine" how a passenger WITHOUT a face mask fails suddenly to "pose a sufficiently low risk to transportation and national security to continue to be eligible for expedited airport security screening through the TSA Pre-Check Application Program," which resulted in the NTVC Director's determination that Plaintiff "was no longer eligible to participate in the Pre-Check Program." **EX. 01**.

Despite the above, the NTVC Director's agency wrongly contended that plaintiff didn't "demonstrate irreparable harm." *Id. at 13*. And yet, this is precisely the violation of plaintiffs' First Amendment rights, which do constitute irreparable harm for them, because only a passenger who was able to don a mask, obviating the need to file a PFR against an agency action, remained eligible for Pre-Check membership and/or stayed off of TSA's terrorist watch lists.

The NTVC Director did cause irreparable harm to Plaintiff by forcing him to don a mask when he could not safely do so, in order to qualify for continued TSA Pre-Check eligibility. No remedy exists for a person whose right to breath is removed, as a condition for obtaining Pre-Check privileges.

Moreover, although enhanced screening might not impose a constitutional violation, retaliating against a litigant for exercising his First Amendment right to petition, certainly does, just as this Court has held: A "violation of a constitutional right constitutes irreparable injury..." *Gordon v. Holder*, 721 F.3d 638 (D.C. Cir. 2013). The Supreme Court likewise frowns on government acts that violate constitutional rights. An American is "irreparably harmed by the loss of First Amendment rights 'for even minimal periods of time...'" *Tandon v. Newsom*, 141 S.Ct. 1294 (2021).

Plaintiff can list as many citations of case law supporting a *Bivens* Action, as Director Carrigan has presented opposing it. Below are a handful of case law citations showing that *Bivens*, although disfavored, is appropriately used in many instances, especially when that's the only available remedy.

> "And despite our reluctance to extend Bivens, we do so here: no other adequate remedy is available, there is no reason to infer that Congress deliberately chose to withhold a remedy, and the asserted special factors either do not apply or counsel in favor of extending Bivens." *Rodriguez v. Swartz*, 899 F.3d 719, 748 (9th Cir. 2018) cert. granted, judgment vacated, 206 L. Ed. 2d 250, 140 S. Ct. 1258 (2020).

> "[a] state official contemplating illegal activity must always be prepared to face the prospect of a § 1983 action being filed against him." [*Robertson v. Wegmann*], 436 U.S., at 592 (1978). A federal official contemplating unconstitutional conduct similarly must be prepared to face the prospect of a *Bivens* action." *Carlson, v. Green*, 446 U.S. 14, 25 (1980).

> "Accordingly, there are compelling interests that favor extending a Bivens remedy here, and, on balance, those interests outweigh the costs of allowing this narrow claim to proceed against federal officials. See [*Ziglar v. ]Abbasi*, 137 S.Ct. at 1863. The legal standards for adjudicating this claim are well established and administrable." See *Wilkie [v. Robbins]*, 551 U.S. at 555, 127 S.Ct. 2588 (observing that "difficulty in defining a workable cause of action" may be a special factor). *Lanuza v. Love*, 899 F.3d 1019, 1033 (9th Cir. 2018).

The NTVC Director echoed the court reaffirming "that a *Bivens* cause of action may not lie where, as here, national security is at issue." *Egbert v.*

*Boule*, 142 S. Ct. 1793, 1805 (2022), because "there is a concern that a new First Amendment liability would unduly inhibit Executive Branch officials in the discharge of their duties — given the chilling effect of such liability on TSA officials" [like Director Carrigan making TSA PreCheck revocation decisions] "where the stakes are so high that the consequences of a lapse in security would be potentially catastrophic." [DKT 133 at 18-19].

The truth is, however, that this is nothing less than justifying fear mongering and demanding protection money to keep us all safe from those who "might" hurt us. State-sponsored protection racket operations are found in every corner of the globe.

At the beginning of 2022, there were 27.4 million known travelers enrolled in TSA's Pre-Check membership program. How exactly are the "stakes higher" and "potentially catastrophic" with so many Pre-Check program members, especially in light of a 2019 ruling, where the court said…

"This present case is more aligned with Rodriguez and Linlor, and thus the Court concludes that a national-security concern does not counsel hesitation in extending *Bivens* here." *Elhady v. Pew*, 370 F. Supp. 3d 757, 770 (E.D. Mich. 2019).

Although the Supreme Court has made clear that "expanding the *Bivens* remedy is now a disfavored judicial activity," a *Bivens* remedy is still available in appropriate cases and there are "powerful reasons" to retain it in its "common and recurrent sphere of law enforcement." *Ziglar v. Abbasi*, ——— U.S. ———, 137 S.Ct. 1843, 1857, 198 L.Ed.2d 290 (2017) (internal quotation marks omitted). *Boule v. Egbert*, 980 F.3d 1309, 1312 (9th Cir. 2020).

Last, "But while *Bivens* claims are disfavored, they do not automatically fail." *Mammana v. Barben*, 856 F. App'x 411, 413 (3d Cir. 2021).

Accordingly, Plaintiff's *Bivens* claim should NOT be dismissed under F.R.C.P. 12(b)(6) [failure to state a claim upon which relief can be granted]. I

have stated my claim, and relief CAN be granted, since there isn't a scintilla of evidence that impeaches this claim as "frivolous" or "insubstantial."

The NTVC Director needs to stop trying to shortcut the system. During litigation, she will have every opportunity to prove her story.

## V.    QUALIFIED IMMUNITY FOR NTVC'S DIRECTOR FAILS

Qualified immunity fails a government official when…

"[a] Government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

I should be entitled to proceed with this litigation, which the NTVC Director seems very much afraid to do.

Many cases can be used to argue in support of Plaintiff's claim. Director Carrigan knew or should have known that her conduct in removing Plaintiff's Pre-Check eligibility, violated his rights against government retaliation for filing a PFR against it.

"As a matter of public policy, qualified immunity provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, (1986).

"The relevant question here is the objective question whether a reasonable officer [of the TSA, namely, the NTVC Director] could have believed [the removal of Plaintiff's Pre-Check eligibility] to be lawful, in light of clearly established law and the information [which she] possessed [about me]." *Anderson v. Creighton*, 483 U.S. 635 (1987).

1   A federal government employee injured me. The employee was acting
2   within the scope of her duties. The employee was acting negligently or
3   wrongfully, and the negligent or wrongful act caused me harm.

4   Qualified Immunity cannot exist because there was no crime at issue on
5   the part of the Plaintiff, and therefore no severity whatsoever was warranted
6   nor should it be excused; Plaintiff was never a suspect. He posed NO threat to
7   any TSA screener nor to others; he was not attempting any type of evasion.

8   The only reasonable conclusion is that the NTVC Director had no
9   reasonable basis for revoking Plaintiff's Pre-Check eligibility.

10   Plaintiff has stated a plausible First Amendment retaliation claim which
11   alleges facts that satisfy all elements of his claim.

12   And yet, the NTVC Director's retaliatory motive was her fear that as a
13   reasonable TSA official in her position, and after taking into account Plaintiff's
14   PFR, she viewed it "(1) as probative of whether there was a risk that Plaintiff
15   might violate the mask order on a commercial flight and (2) thus, as relevant to
16   his eligibility" she feared "whether she could affirmatively find that he met the
17   low-risk standard. Particularly in the year in question—when over 4,000 mask-
18   related incidents were reported by airline crews to the FAA, and that agency
19   proposed $5 million in fines against unruly passengers…" 133 at 24-25

20   The NTVC Director did not pull my name out of a hat one day, by
21   coincidence, after I filed a PFR on October 19, 2021. No airline tickets were
22   purchased during 2021. No mask exemption requests were submitted to
23   airlines in 2021 that might have given a clue to the NTVC Director as to my
24   inability to safely wear a mask. I was not part of any facebook group or any
25   other social media group that objected to masking. My name could only appear
26   in the context of the PFR I filed on October 19, 2021, or in connection with
27   another lawsuit in Florida filed against the FTMM in which I sought to be
28   added as a plaintiff, but ultimately was denied.

No possibility exists that the NTVC Director didn't know about the PFR or the Florida lawsuit before she signed the revocation letter. In conducting her risk assessment of Plaintiff, the NTVC Director could and did in fact rely on "[a]ny . . . information relevant to [his] eligibility," including the PFR he filed.

No personnel at any TSA call center were able to verify the reason for my revocation on the basis of the information on their computer screens, on my KTN. It was also not possible to contact the NTVC Director to question her as to why my Pre-Check was revoked.

The arguments I have set forth here cannot be construed to be conclusory, but rather materially factual, based on the time line and the legal involvements I undertook against the TSA, especially in light of the fact that my wife, who also joined the Florida lawsuit, did not file a PFR with TSA, and as a result, was immediately approved for renewal of her Pre-Check membership on December 18, 2021. **EX. 02**. Plaintiff has therefore clearly established his right at issue.

The NTVC Director did in fact violate clearly established fundamental First Amendment law if, as Plaintiff claims, she based her negative risk assessment of him on his PFR that challenged TSA's implementation of the mask order, which in her skewed worldview — "could" cause injury and/or security violations, even though there was never any evidence of this supposition, nor of him actually doing so.

In *Anderson v. Creighton*, 483 U.S. 635 (1987), the Supreme Court also held that "subjective beliefs about the search are irrelevant." In the same way, Ms. Carrigan's subjective (i.e., personal, individual, emotional, instinctive or intuitive) beliefs about any flight Plaintiff was allegedly planning to take, or about the Plaintiff's alleged intentions, are irrelevant. She could not lawfully remove my Pre-Check eligibility, simply on the basis of a whim that I "might" board a flight and cause a disruption over my inability to safely don a mask.

**CONCLUSION**

This is classic *Bivens*. A federal officer was acting in the color of federal authority and she violated the U.S. Constitution, acting as federal officer. The NTVC Director's retaliatory actions against Mr. Faris, Mr. Eades and myself offend this Court's inherent authority to hear cases and controversies under Article III of the Constitution. Taking blatant retaliatory actions such as revoking Pre-Check eligibility for doing nothing more than challenging TSA's mask orders, and thereby through this legal proceeding, infringes on this Court's authority to protect litigants from reprisal by the Executive Branch. The NTVC Director's actions against all of us are designed to strike fear in the heart of any citizen who dares to consider exercising his or her constitutional rights to seek a redress of grievances.

Accordingly, the NTVC Director's Motion to Dismiss should be denied, in favor of moving forward into to Discovery and proper litigation.

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

Respectfully submitted this 7th day of October 2022.

By:  /s/ *Uri Marcus*

Uri Marcus, lead plaintiff, *Pro-Se*
P.O. Box 126
Ojai, CA 93024
Telephone: 909-833-0065
E-Mail: uri@ntcf.org

By:  /s/ *Yvonne Marcus*

Yvonne Marcus, plaintiff, *Pro-Se*
P.O. Box 126
Ojai, CA 93024
Telephone: 909-833-0065
E-Mail: adi@ntcf.org

By:  /s/ *Avrohom Gordon*

Avrohom Gordon, plaintiff, *Pro-Se*
2251 State Route 222
New Richmond, OH  45157
Telephone: 513-734-1770
gordon.avrohom@gmail.com

By:  /s/ *Devorah Gordon*

Devorah Gordon, plaintiff, *Pro-Se*
2251 State Route 222
New Richmond, OH  45157
Telephone: 513-734-1770
devorahlgordon@gmail.com

By:  /s/ *Cindy Russo*

Cindy Russo, plaintiff, *Pro-Se*
22485 Breakwater Way
Santa Clarita, CA  91350
Telephone: 908-797-8066
cjrz123@gmail.com

*Case # 2:22-cv-02383-SSS-ASx*          -26-          PLAINTIFFS' MEMO IN OPP'N TO MTD.
DEFENDANT JULIE CARRIGAN IN HER
INDIVIDUAL CAPACITY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Pursuant to L.R. 5-4.3.4(a)(2)(i), the filer of this document hereby attests that all other signatories listed above, and on whose behalf the filing is submitted, concur in the filing's content and have authorized this filing.