**EXHIBIT A**

No *Shepard's* Signal™
As of: October 14, 2022 5:16 PM Z

# *Seklecki v. CDC & Prevention*

United States District Court for the District of Massachusetts

October 12, 2022, Decided; October 12, 2022, Filed

Civil Action No. 22-10155-PBS

**Reporter**
2022 U.S. Dist. LEXIS 186265 *; __ F.Supp.3d __

MICHAEL SEKLECKI, Plaintiff, v. CENTER FOR DISEASE CONTROL & PREVENTION, et al., Defendants.

## Core Terms

Airline, mask, preempted, conspiracy, disability, passengers, exemption, private right of action, alleges, wear a mask, Counts, flight, federal financial assistance, medical practice, Transportation, conspiring, wear, breach of contract claim, motion to dismiss, right to travel, civil rights, air carrier, misleading, deceptive, practices, pandemic, policies, deprive, funding, license

**Counsel:** [*1] Michael Seklecki, on behalf of himself and his minor child M.S., Plaintiff, Pro se, Lake Mary, FL.

For Centers for Disease Control & Prevention, Department of Health & Human Services, Defendants: Stephen Michael Pezzi, LEAD ATTORNEY, United States Department of Justice, Civil Division, Federal Programs Branch, Washington, DC; Andrew Freidah, Civ, Civil Division, Federal Programs Branch, Washington, DC.

For American Airlines, Southwest Airlines, Defendants: Christopher A. Duggan, LEAD ATTORNEY, Smith Duggan Buell & Rufo LLP, Lincoln, MA; M. Roy Goldberg, PRO HAC VICE, Stinson LLP, Washington, DC; Milton Roy Goldberg, Stinson Leonard, Washington, DC.

For Delta Air Lines, Spirit Airlines, Interested Parties: Christopher A. Duggan, Smith Duggan Buell & Rufo LLP, Lincoln, MA.

**Judges:** Hon. Patti B. Saris, United States District Judge.

**Opinion by:** Patti B. Saris

## Opinion

### MEMORANDUM AND ORDER

Saris, D.J.

### INTRODUCTION

Plaintiff Michael Seklecki, on behalf of himself and his minor child, M.S., brings this multi-count action against American Airlines and Southwest Airlines (the "Airline Defendants") alleging that their requirement that passengers wear masks during the COVID-19 pandemic violated numerous state, federal, and international [*2] laws. See Dkt. 1 at 3.[1] The Airline Defendants have moved to dismiss counts 12 through 33 of the Complaint under *Federal Rule of Civil Procedure 12(b)(6)* for failure to state a claim upon which relief can be granted.

---

[1] The first eleven counts are against the Centers for Disease Control and Prevention ("CDC") and United States Department of Health and Human Services ("HHS"). Here, the Court only addresses the counts against the Airline Defendants: Counts 12 and 13, alleging conspiracy to interfere with the civil rights of the disabled; Count 14, alleging a violation of the *Rehabilitation Act*; Counts 15 and 17-24, alleging violations of the Rehabilitation Act and Air Carrier Access Act; Count 16, alleging violation of the *Air Carrier Access Act*; Count 25, alleging a breach of contract; Count 26, alleging reckless endangerment; Count 27, alleging the practice of medicine without a license; Count 28, alleging invasion of privacy; Count 29, alleging deceptive and misleading trade practices; Count 30, alleging fraudulent misrepresentation; Count 31, alleging infringement of the constitutional right to travel; Count 32, alleging violation of the International Covenant on Civil and Political Rights; and Count 33, alleging a violation of the Convention on International Civil Aviation.

After hearing, the Court **ALLOWS** the Airline Defendants' motion.

## BACKGROUND

The pro se Complaint alleges the following facts. The Court draws all reasonable inferences in favor of Plaintiff.

### I. The Federal Mask Mandate

On January 21, 2021, President Biden issued an Executive Order titled "COVID-19 Safety in Domestic and International Travel." Exec. Order No. 13998, 86 Fed. Reg. 7205 (Jan. 26, 2021). Following the Executive Order, the CDC and HHS issued the Federal Transportation Mask Mandate ("FTMM"). Specifically, the CDC issued an order, "Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs." 86 Fed. Reg. 8025 (Feb. 3, 2021). This order mandated that persons wear masks while on public transportation conveyances like airplanes, but allowed exemptions for children under the age of two and persons with disabilities who cannot safely wear a mask.

### II. The Plaintiff and His Son

Seklecki resides with M.S. in Sanford, Florida. They fly to Boston, Massachusetts frequently because M.S. requires specialized medical care at Boston Children's Hospital. Since about June 2021, Seklecki [*3] has had to fly with M.S. to Boston one to two times per month for critical medical care. Seklecki alleges that masking gives him a feeling of panic and breathing difficulties because of his Generalized Anxiety Disorder, and M.S. cannot tolerate a mask because of his Autism Spectrum Disorder. When Seklecki attempts to put a mask on his son's face, M.S. refuses and yells that he is scared, cannot breath, or that he does not like the mask. M.S.'s doctor corroborated that M.S. could not medically tolerate a mask.

Because of the COVID-19 pandemic, the airlines required passengers to wear masks while on flights and implemented various procedures governing requested exemptions from the mask requirement. Seklecki has had difficulty navigating these procedures, particularly as they relate to the trips to Boston for M.S.'s medical treatment. He has had to cancel flights with Southwest and American because of their exemption policies. For example, Seklecki and M.S. had tickets booked on Southwest to fly from Orlando, Florida to Boston in October 2021. After booking the tickets, Seklecki called Southwest's customer service center to tell airline staff that he and M.S. had medical conditions that [*4] prevented them from wearing masks. The Southwest agent told him that if they did not submit a form at least seven days in advance with a doctor's note, they could be refused travel. The customer service representative told Seklecki that there were no guarantees that the corporate office would approve their exemptions, even if they had a physician's note. Because of this, Seklecki cancelled his tickets with Southwest and received credits.

Seklecki also booked a ticket with American to fly from Orlando to Phoenix, Arizona on November 12, 2021. He submitted a request for mask exemptions to American. On November 10, he received a call from the American Airlines Disability Desk saying they could not process his mask exemption because it had to be submitted at least 72 hours in advance of a flight. The American employee said that she would email Seklecki information about American's mask policy, adding that a doctor's note was required for an exemption. He received the list of requirements to obtain a mask waiver on November 10. Plaintiff had to cancel this flight because his mask exemption was denied.

## STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim, "a complaint [*5] must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*). Two basic principles guide the court's analysis. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id. at 679*. A claim is facially plausible if the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. at 678*.

A pro se complaint "is to be liberally construed" and should "be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble, 429*

U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (internal citation and quotation marks omitted). At the same time, "[t]he right of self-representation is not 'a license not to comply with relevant rules of procedural and substantive law.'" *Andrews v. Bechtel Power Corp., 780 F.2d 124, 140 (1st Cir. 1985)*

(quoting *Faretta v. Cal., 422 U.S. 806, 835 n.46, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975)*).

## DISCUSSION

### I. Civil Conspiracy

Plaintiff claims that the Airline Defendants and unnamed airline employees are liable under 42 U.S.C. § 1985(3) for "conspir[ing] to deprive disabled Americans . . . of [their] civil rights by adopting policies in Summer 2020 that [*6] banned anyone medically unable to wear a face mask from using the nation's air-transportation" and that unnamed airline employees are liable under 42 U.S.C. § 1986 because they "were aware of the conspiracy . . . but did nothing to stop it." Dkt. 1 at 93-95.

Federal law prohibits two or more persons from conspiring to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). A claimant under section 1985(3) must establish "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971)*. An actionable claim under section 1985(3) must allege the existence of:

> (1) a conspiracy; (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege.

*Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)* (citing *Griffin, 403 U.S. at 102*).

42 U.S.C. § 1986 provides that every person with knowledge of a conspiracy under section 1985, but who fails to prevent the conspiracy, is liable to the injured party. "A prerequisite for a claim [*7] under section 1986 is the existence of a conspiracy actionable under section 1985." *Lowden v. William M. Mercer, Inc., 903 F. Supp. 212, 218 (D. Mass. 1995)* (cleaned up).

### A. Section 1985(3)

The Airline Defendants argue that Plaintiff cannot press his disability-based discrimination claims under section 1985(3) because the Air Carrier Access Act of 1986 ("ACCA"), 49 U.S.C. § 41705, already provides administrative regulations and procedures to respond to complaints against airlines for disability discrimination. The Court agrees.

The ACAA provides,

> [A]n air carrier . . . may not discriminate against an otherwise qualified individual on the following grounds: (1) the individual has a physical or mental impairment that substantially limits one or more major life activities; (2) the individual has a record of such an impairment; (3) the individual is regarded as having such an impairment.

49 U.S.C. § 41705(a).

In an analogous context, the Supreme Court has held that "§ 1985(3) may not be invoked to redress violations of Title VII" because if a plaintiff were allowed to assert a Title VII violation through section 1985(3), then he could avoid the "detailed and specific provisions of the law" and "bypass the administrative process, which plays such a crucial role in the scheme established by Congress in Title VII." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 375-78, 99 S. Ct. 2345, 60 L. Ed. 2d 957 (1979)*. Thus, when a statute creates a right and provides a remedial structure, a plaintiff cannot [*8] use section 1985(3) to vindicate the same right. See id.

In *D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 43-44 (1st Cir. 2012)*, the First Circuit held that plaintiffs could not assert Rehabilitation Act and Americans with Disabilities Act claims through section 1985(3), explaining that section 1985 does not create substantive rights but provides remedies for violations of rights created by other sources of law. See also *Sauter v. Nevada, No. 97-15795, 1998 U.S. App. LEXIS 8017, 1998 WL 196630, at *1 (9th Cir. 1998)* (conspiracy to violate ADA and ADEA rights are not cognizable under section 1985 because the statutes have their own remedial structure); *D'Amato v. Wis. Gas Co., 760 F.2d 1474, 1487 (7th Cir. 1985)* (Section 503 of the

Rehabilitation Act "provides its own administrative remedy" and an action under section 1985(3) "would avoid entirely the administrative procedures provided in Section 503(b) and its accompanying regulations"); Hagenah v. Berkshire Cnty. ARC, Inc., No. 3:16-CV-30141-KAR, 2018 U.S. Dist. LEXIS 24696, 2018 WL 907407, at *6 (D. Mass. Feb. 15, 2008) (a plaintiff "cannot assert a cause of action under § 1985(3) to redress violations of Title VII").

Because a statutory scheme and administrative remedies are in place for the ACAA, Seklecki cannot pursue claims for disability discrimination under section 1985(3). Therefore, Plaintiff's conspiracy claims must be dismissed.

**B. Plaintiff Does Not Allege the Existence of a Conspiracy**

Alternatively, the Court agrees with the Airline Defendants that Counts 12 and 13 should be dismissed because Seklecki fails to plead specific allegations of the existence of a conspiracy.

A claim of civil rights conspiracy "must [*9] plausibly allege facts indicating an agreement among the conspirators to deprive the plaintiff of h[is] civil rights." Parker v. Landry, 935 F.3d 9, 18 (1st Cir. 2019). Further, "[v]ague and conclusory allegations about persons working together, with scant specifics as to the nature of their joint effort or the formation of their agreement, will not suffice to defeat a motion to dismiss." Alston v. Spiegel, 988 F.3d 564, 578 (1st Cir. 2021). If direct evidence is not available, "the plaintiff must plead plausible factual allegations sufficient to support a reasonable inference that such an agreement was made." Id. at 578 (quoting Parker, 935 F.3d at 18).

Here, the Complaint fails to allege plausible facts to support the allegation of a conspiracy under section 1985(3). The Complaint states that the Airline Defendants have conspired to interfere with the civil rights of disabled passengers, which Plaintiff expects to prove through discovery.

The Complaint relies on the fact that multiple airlines mandated that face masks be worn on flights and that these airlines later strengthened their mask policies. Plaintiff argues that because these policies were implemented around the same time, in July and August 2020, they "demonstrat[e] both intracorporate and intercorporate conspiracies to interfere with civil rights by prohibiting all [*10] disabled Americans who can't obstruct [their] breathing from flying." Dkt. 1 at 58.

Not all parallel conduct, though, suggests an unlawful agreement. See Twombly, 550 U.S. at 556-57 ("Without more, parallel conduct does not suggest conspiracy"). See also Andreadakis v. Ctr. for Disease Control & Prevention, No. 22-cv-52(DJN), 2022 U.S. Dist. LEXIS 122236, 2022 WL 2674194, at *9 (E.D. Va. July 11, 2022).

In light of COVID-19 pandemic and evolving recommendations on masking in response to the pandemic, there is no plausible allegation that the Airline Defendants were conspiring to harm disabled passengers by imposing a mask requirement. Counts 12 and 13 of the Complaint are dismissed.

**II. The Airline Deregulation Act Preempts Plaintiff's State Law Claims**

The Airline Defendants argue that Plaintiff's state-law claims for breach of contract, invasion of privacy, deceptive and misleading trade practices, and fraudulent misrepresentation are preempted by the Airline Deregulation Act.

The Airline Deregulation Act ("ADA") prohibits states from enforcing any law "related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). The Supreme Court explained that this preemption provision of the ADA should be construed broadly and that claims having a "connection with, or reference to," an airline's prices, routes, or services are preempted. Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384, 112 S. Ct. 2031, 119 L. Ed. 2d 157 (1992). Thus, "enforcement of state laws against [*11] airlines on the basis of how particular services are provided is preempted unless it affects those services in 'too tenuous, remote, or peripheral a manner.'" Gill v. JetBlue Airways Corp., 836 F. Supp. 2d 33, 39 (D. Mass. 2011) (quoting Morales, 504 U.S. at 390).

**A. Plaintiff's Breach of Contract Claim**

The Supreme Court has recognized a narrow exception to preemption under the ADA for breach of contract claims based on the parties' bargain. See Am. Airlines v. Wolens, 513 U.S. 219, 223, 115 S. Ct. 817, 130 L. Ed. 2d 715 (1995). In other words, breach of contract claims "seeking recovery solely for [an] airline's alleged breach

of its own, self-imposed undertakings" are not preempted by the ADA. *Id. at 228*. However, a breach of contract claim against an airline can be preempted if "it seeks to enlarge the contractual obligations that the parties voluntarily adopt[ed]." *Nw., Inc. v. Ginsberg, 572 U.S. 273, 276, 134 S. Ct. 1422, 188 L. Ed. 2d 538 (2014)*.

Seklecki contends that because the contract of carriage contains no mention of a requirement that passengers need to wear a mask or face covering, the Airline Defendants have breached the contract by imposing the requirement. Under *Wolens*, Seklecki can bring a breach of contract claim for violations of the airlines' own rules, policies, or other self-imposed undertakings regarding mask exemptions that the airlines violated. Here, however, Seklecki launches a broad attack on any mask mandate, even though required **[*12]** by federal law, without identifying any self-imposed undertaking to refrain from requiring masks. Accordingly, Count 25 of the Complaint must be dismissed.[2]

### B. Plaintiff's Invasion of Privacy Claim

Seklecki brings an invasion of privacy claim against the Airline Defendants for "forcing a disabled passenger to disclose his/her medical conditions as a condition of transportation." Dkt. 1 at 111. The Airline Defendants argue that Seklecki's invasion of privacy claim is preempted by ADA because it relates to an air carrier's service. The Court agrees.

Courts have held that state-law claims relating to an air carrier "service," such as ticketing and boarding procedures, are pre-empted. *Hodges v. Delta Airlines, Inc., 44 F.3d 334, 336 (5th Cir. 1995)* (en banc). See also *Smith v. Comair, Inc., 134 F.3d 254, 259 (4th Cir. 1998)*. District Courts in the First Circuit have adopted this approach. See *Gill v. JetBlue Airways Corp., 836 F. Supp. 2d 33, 40 (D. Mass. 2011)* ("the term 'service' encompasses boarding procedures and assistance"); *DeTerra v. Am. W. Airlines, Inc., 226 F. Supp. 2d 274, 277 (D. Mass. 2002)*; *Chukwu v. Bd. of Dir. British Airways, 889 F. Supp. 12, 14 (D. Mass. 1995)*.

Seklecki argues that in requiring proof of medical conditions to obtain an exemption from the mask mandate, the airlines were invading his privacy. This claim relates to an air carrier's boarding procedures. Because the ADA preempts enforcement of a state law relating to a service of an air carrier, Count 28 of the complaint is pre-empted.

### C. Plaintiff's [*13] Deceptive and Misleading Trade Practices and Fraudulent Misrepresentation Claims

Seklecki claims that the airlines have deceived and misled their customers into believing that face coverings are good for their health. He further contends that the airlines have falsely represented that federal law requires passengers to wear face masks and have not disclosed the health risks associated with masks. The Airline Defendants argue that Seklecki's deceptive and misleading trade practices and fraudulent misrepresentation claims are preempted by the ADA.

The Supreme Court, in *Wolens*, held that the ADA preempts state consumer fraud and deceptive business practices claims, explaining that:

> In light of the full text of the preemption clause, and of the ADA's purpose to leave largely to the airlines themselves, and not at all to States, the selection and design of marketing mechanisms appropriate to the furnishing of air transportation services, we conclude that *§ 1305(a)(1)* preempts plaintiffs' claims under the [Illinois] Consumer Fraud Act.

*Wolens, 513 U.S. at 228*. See also *Wagman v. Fed. Express Corp., No. 94-1422, 1995 U.S. App. LEXIS 3111, 1995 WL 81686, at *2 (4th Cir. Feb. 17, 1995)* (holding consumer fraud claims alleging misleading advertising were preempted by the ADA).

Because requiring masks or face coverings on board relates to the furnishing **[*14]** of an air carrier's services, Plaintiff's claims of deceptive and misleading trade practices and fraudulent misrepresentation are preempted by the ADA. Thus, Counts 29 and 30 of the Complaint are dismissed.

### D. Plaintiff's Recklessness Claim

Plaintiff alleges that the Airline Defendants are liable for recklessly endangering passengers by enforcing the federal mask mandate. This claim is preempted as it related to services.

---

[2] Plaintiff moved for an injunction based in part on an allegation that the airlines failed to follow their own rules when declining to grant a mask exemption. However, the claim in the Complaint was a facial attack on the mask mandate.

### III. Plaintiff has no Private Right of Action Under the ACAA

Plaintiff alleges that the Airline Defendants have violated the ACAA. The Airline Defendants argue that Plaintiff has no right of action to pursue these claims in this Court.

The ACAA prohibits an air carrier from discriminating against individuals based on a physical or mental impairment. See *49 U.S.C. § 41705(a)*. Rather than filing a private action, a passenger alleging disability discrimination in violation of the ACAA may file a written complaint with the United States Department of Transportation ("DOT") against an airline. See *49 U.S.C. § 46101(a)(1)*. In Alexander v. Sandoval, the Supreme Court held that "private rights of action to enforce federal law must be created by Congress." *532 U.S. 275, 286, 121 S. Ct. 1511, 149 L. Ed. 2d 517 (2001)* (citing *Touche Ross & Co. v. Redington, 442 U.S. 560, 578, 99 S. Ct. 2479, 61 L. Ed. 2d 82 (1979)*). Courts look to the relevant statute to determine whether **[*15]** Congress intended to create a private enforcement mechanism. See *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 15-16, 100 S. Ct. 242, 62 L. Ed. 2d 146 (1979)*.

Circuit Courts have held that the ACAA does not create a private cause of action. See *Segalman v. Sw. Airlines Co., 895 F.3d 1219, 1222-27 (9th Cir. 2018)*; *Stokes v. Sw. Airlines, 887 F.3d 199, 202-03 (5th Cir. 2018)*; *Lopez v. JetBlue Airways, 662 F.3d 593, 597 (2d Cir. 2011)*; *Boswell v. Skywest Airlines, Inc., 361 F.3d 1263, 1270 (10th Cir. 2004)*; *Love v. Delta Air Lines, 310 F.3d 1347, 1354 (11th Cir. 2002)*.

Courts in this district have also recognized that the ACAA does not provide a private right of action. See *Gill, 836 F. Supp. 2d at 48* ("the ACAA manifests no congressional intent to create a private right of action in a federal district court"); *Deterra v. Am. W. Airlines, Inc., 226 F. Supp. 2d 298, 309 (D. Mass. 2002)*.

Seklecki has already filed one discrimination complaint against American and two complaints against Southwest with the DOT. Despite this administrative remedy, Seklecki contends that he should have a private right of action because the DOT has failed to enforce the ACAA. Under the ACAA, that argument belongs in a petition to the appropriate court of appeals, not in this Court. See *49 U.S.C. § 46110(a)*. See also *Wall v. Sw. Airlines, No. 6:21-cv-1008-PGB-GJK, 2021 U.S. Dist. LEXIS 257382, 2021 WL 8201968, at *2 (M.D. Fla. Jun. 16, 2021)* (plaintiff did not have a private right of action "because the ACAA expressly provides recourse to private citizens who feel the DOT has abandoned its statutory obligations").

Thus, there is no private right of action in this Court to assert violations of the ACAA. Accordingly, the ACAA claims in Counts 15, 16, 17, 18, 19, 20, 21, 22, 23, and 24 are dismissed.

### IV. Plaintiff's Rehabilitation [*16] Act Claims

Seklecki argues that the Airline Defendants are liable under the *Rehabilitation Act*, *29 U.S.C. § 794(a)*, because they accepted $25 billion in federal assistance under the Coronavirus Air, Relief, and Economic Security Act ("CARES Act"). The Airline Defendants argue that the *Rehabilitation Act* is inapplicable to Seklecki's claims because they did not receive federal financial assistance. They contend that the only federal funds they received were pursuant to the Payroll Support Program under the CARES Act, which was provided exclusively for the payment of wages, salaries, and benefits to employees.

Section 504 of the *Rehabilitation Act* provides that no qualified individual with a disability shall be subjected to discrimination under "any program or activity receiving Federal financial assistance." *29 U.S.C § 794(a)*. To prevail on a *section 504* claim, Seklecki must prove (1) that he was disabled, (2) that he sought services from a federally funded entity, (3), that he was otherwise qualified to receive those services, and (4) that he was denied those services because of his disability. See *Drachman v. Bos. Sci. Corp., 258 F. Supp. 3d 207, 211 (D. Mass. 2017)* (citing *Lesley v. Hee Man Chie, 250 F.3d 47, 52-53 (1st Cir. 2001)*).

At issue here is whether the CARES Act funding constitutes federal financial assistance which triggers the provisions of the *Rehabilitation Act*. On March 27, 2020, Congress passed the CARES Act in response **[*17]** to the COVID-19 global pandemic and economic fallout. See Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat 281 (2020). The CARES Act was aimed at helping businesses cover payroll expenses to keep people employed. See *In re Gateway Radiology Consultants, P.A., 983 F.3d 1239, 1247 (11th Cir. 2020)*.

Because the CARES Act was assistance designated for the particular purpose of covering payroll expenses, and

not for general assistance, at least one court has held that the airlines did not receive federal financial assistance within the meaning of the *Rehabilitation Act*. See *Andreadakis, 2022 U.S. Dist. LEXIS 122236, 2022 WL 2674194, at \*10* ("the Court does not find that the CARES Act provided an exception to the Supreme Court's general rule that the *Rehabilitation Act* does not apply to the airlines"); see also *Lucius v. Fort Taco, LLC, No. 21-22397-CIV-WILLIAMS/MCALILEY, 2022 U.S. Dist. LEXIS 2010, 2022 WL 335491, at \*6 (S.D. Fla. Jan. 5, 2022)* (*Rehabilitation Act* was inapplicable because the Paycheck Protection Program loan, an extension of the CARES Act, was designated for a particular purpose and was not considered general assistance extended to a company "as a whole"). Cf. *Shotz v. Am. Airlines, Inc., 420 F. 3d 1332, 1334 (11th Cir. 2005)* (holding *Rehabilitation Act* inapplicable where funds airlines received from Congress after the September 11 terrorist attacks were compensatory and not considered subsidies consisting of "federal financial assistance"); see generally S. REP. No. 100-64 at 17 (1987) ("Federal financial assistance extended to a corporation or other entity 'as a whole' refers to situations **[\*18]** where the corporation receives general assistance that is not designated for a particular purpose.").

Whether Cares Act funding was a subsidy or compensation, the Court concludes that Congress did not intend to circumvent the procedures for handling claims of disability discrimination against the airlines under the ACAA. Accordingly, the Rehabilitation Act claims in Counts 14, 15, 17, 18, 19, 20, 21, 22, 23, and 24 are dismissed.

## V. Plaintiff's Claim of Practicing Medicine Without a License

The Airline Defendants argue that Seklecki's claim that they were practicing medicine without a license should be dismissed because they were implementing the FTMM. The Court agrees. In a similar case, a Florida court stated:

> [T]he Court is unpersuaded that Alaska Airlines is illegally practicing medicine without a license by requiring passengers to wear a mask on the flight. The Alaska Airlines flight attendants were simply enforcing a federal mandate requiring all passengers to wear a mask while on the flight. As a matter of common sense, it is antithetical to reason that asking someone to wear a mask is in any way analogous to practicing medicine.

*Wall v. Southwest Airlines, No. 6:21-cv-1008-PGB-DCI, 2021 U.S. Dist. LEXIS 257368, 2021 WL 8201967, at \*3 (M.D. Fla. Dec. 8, 2021)*. See also *Gunter v. N. Wasco Cnty. Sch. Dist. Bd. of Educ., 577 F. Supp. 3d 1141, 2021 WL 6063672, at \*15 n.5 (D. Or. 2021)* (requiring the correct placement of masks **[\*19]** did not constitute practicing medicine without a license).

By enforcing the FTMM and requiring passengers to wear a mask, the Airline Defendants were not practicing medicine. Accordingly, Count 27 of the Complaint is dismissed.

## VI. Plaintiff's Infringement of Right to Travel Claim

Seklecki argues that the Airline Defendants have infringed his constitutional right to travel. There is a constitutional right to travel "from one State to another, and necessarily to use the highways and other instrumentalities of interstate commerce in doing so." *United States v. Guest, 383 U.S. 745, 757, 86 S. Ct. 1170, 16 L. Ed. 2d 239 (1966)*. The right to travel includes three components: (1) "the right of a citizen of one State to enter and to leave another State"; (2) "the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State"; and (3) "for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State." *Saenz v. Roe, 526 U.S. 489, 500, 119 S. Ct. 1518, 143 L. Ed. 2d 689 (1999)*.

In this case, Plaintiff was not prohibited from getting on a plane; he was prohibited from getting on a plane without a mask or mask exemption. See *Wall v. Ctr. for Disease Control & Prevention, No. 6:21-CV-975-PGB-DCI, 2022 U.S. Dist. LEXIS 93556, 2022 WL 1619516, at \*11 n.9 (M.D. Fla. Apr. 29, 2022)* ("Plaintiff is not barred from traveling to another **[\*20]** state by virtue of not wearing a mask. A mere inconvenience caused by a reasonable government regulation is not enough to amount to a denial of this fundamental right").

Requiring a mask in compliance with the FTMM is not an actionable interference with Seklecki's constitutional right to travel. Accordingly, Count 31 is dismissed.

## VII. Plaintiff's International Law Claims

Seklecki alleges that the Airline Defendants have violated the International Covenant on Civil and Political Rights and the Convention on International Civil Aviation. The Airline Defendants argue that these

international agreements do not provide a private right of action.

The First Circuit has held that because the International Covenant on Civil and Political Rights is not self-executing, it is not binding as a matter of domestic law. *Igartúa v. United States, 654 F.3d 99, 100 (1st Cir. 2011)* (citing *Igartua-De La Rosa v. United States, 417 F.3d 145, 150 (1st Cir. 2005)*). Plaintiff cannot enforce international covenants through a private right of action. Thus, Counts 32 and 33 are dismissed.

## ORDER

The motion to dismiss (Dkt. 109) is **ALLOWED** as to Counts 12 through 33.

SO ORDERED

/s/ PATTI B. SARIS

Hon. Patti B. Saris

United States District Judge

**End of Document**