1  BRIAN M. BOYNTON
   Principal Deputy Assistant Attorney General
2  C. SALVATORE D'ALESSIO, JR.
3  Director, Torts Branch
   MARY HAMPTON MASON
4  Senior Trial Counsel, Torts Branch
5  JEREMY SCOTT BRUMBELOW
   Senior Trial Attorney, Torts Branch
6  United States Department of Justice, Civil Division
7  P.O. Box 7146, Ben Franklin Station
   Washington, D.C.  20044-7146
8  Tel. (202) 616-4330; Fax. (202) 616-4314
   Email:  jeremy.brumbelow@usdoj.gov
9
10 *Counsel for Defendant Julie Carrigan*
   *in her individual capacity*
11

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| URI MARCUS, *et al.*,<br><br>  Plaintiffs,<br><br>   v.<br><br>CENTERS FOR DISEASE CONTROL & PREVENTION, *et al.*,<br><br>  Defendants | Case No. 2:22-cv-02383-SSS-AS<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS DEFENDANT JULIE CARRIGAN IN HER INDIVIDUAL CAPACITY**<br><br>The Honorable Sunshine Suzanne Sykes<br>United States District Judge<br><br>Hearing Date:   November 17, 2022<br>Hearing Time:   9:00 a.m.<br><br>Courtroom:  Courtroom 2 (2d Fl.), 3470 Twelfth St., Riverside, CA  92501-3801 |

On five grounds under Federal Rule of Civil Procedure 12(b), Defendant Julie Carrigan has moved to dismiss the one count in the complaint asserted against her in her individual capacity under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Doc. 133-1 ("Mem."). Plaintiff Uri Marcus has responded, Doc. 161 ("Opp."), and Carrigan now replies. Nothing in Plaintiff's opposition undercuts Carrigan's arguments for dismissal of the *Bivens* claim. And despite his last-ditch effort to recast the complaint, Plaintiff has not actually alleged a claim against Carrigan under 42 U.S.C. §§ 1985 or 1986. To do so now, he first would have to file a motion for leave to amend under Federal Rule of Civil Procedure 15. For the reasons set forth below and in her opening brief, Carrigan should be dismissed from this lawsuit under Rule 12(b).

**1. Personal Jurisdiction.** An Executive Branch official like Carrigan, stationed "in or near the Nation's capital," can't be sued in just "*any* distant forum" that a plaintiff might prefer but, instead, "can only be sued in a court with personal jurisdiction over her." Mem. at 14, 19 (upper-margin CM/ECF pinpoint citations). Under settled personal-jurisdiction principles—and cases like *Walden v. Fiore*, 571 U.S. 277 (2014), applying them to *Bivens* defendants—Plaintiff failed in his complaint to make a *prima facie* showing of jurisdiction as to Carrigan. Mem. at 14-19. His opposition also fails to identify minimum contacts between Carrigan and California that satisfy *Walden*, and it doesn't address the precedent cited by Carrigan. The three cases that Plaintiff cites are plainly distinguishable and do not support jurisdiction here.[1] Nor do his "'bare bones' assertions of minimum contacts" and unsupported "legal conclusions" (*e.g.*, Opp. at 13, 16) satisfy his Rule 12(b)(2) burden. *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).

---

[1] Opp. at 14-17 (citing *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985); *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784 (9th Cir. 1977)).

Plaintiff's remaining contentions lack merit. He claims that Carrigan "was served with process" in California "through her attorney," Opp. at 17. But Carrigan's undersigned counsel is located not in California but in Washington, D.C., and *that* is where he received the service documents. Doc. 96 at 2-3. Plaintiff also posits that Carrigan may be sued in California based on (1) the alleged past and future actions there of non-party TSA employees who purportedly are Carrigan's "agents and contacts," and (2) TSA's general operations there. Opp. at 13-14, 16-17. But that is contrary to decades of personal-jurisdiction jurisprudence requiring minimum contacts between the forum and *the defendant*, not between the forum and "third parties," *Walden*, 571 U.S. at 284, like TSA or its unidentified individuals whom Plaintiff surmises may work in California and "do [Carrigan's] bidding," Opp. at 14. Even were Plaintiff right that TSA employees in California might, someday, "carry out" the TSA order revoking his TSA PreCheck status, *id.* at 13,[2] that still could not subject Carrigan to jurisdiction in California. As illustrated by her previous citations and similar ones below, the law does not allow a nonresident *Bivens* defendant to be sued *anywhere* in the Nation simply because her employing agency operates there or because her fellow agency employees or subordinates there might enforce or implement an agency decision or policy that she helped make or formulate. Mem. at 14, 19 & n.9.[3]

---

[2] Plaintiff admits that he lives in Israel and hasn't flown at all (let alone through California) since December 9, 2020, nearly a year *before* the TSA PreCheck revocation in November 2021. Opp. at 11; Compl. ¶¶ 20, 115-16, 882-83. This undercuts his conclusory claim, later, that he somehow has suffered "injury in California as a result of the revocation," Opp. at 16.

[3] *See Hill v. Pugh*, 75 F. App'x 715, 719 (10th Cir. 2003) ("It is not reasonable to suggest that federal prison officials may be hauled into court simply because they have regional and national supervisory responsibilities over facilities within a forum state."); *McCabe v. Basham*, 450 F. Supp. 2d 916, 926 (N.D. Iowa 2006) (it was "not permissible" for plaintiffs to "premis[e] jurisdiction over . . . two senior-level federal government officials, upon the acts of low-level federal, state and/or local government employees" in the forum); *accord Michalik v. Hermann*, 2001 WL 434489, *3 (E.D. La. Apr. 26, 2001); *Nwanze v. Philip Morris*, 100 F. Supp. 2d 215,

Plaintiff also suggests that personal jurisdiction exists in California because the "acts and events" he challenges "occurred in this District" at his address in Ojai, CA, apparently by virtue of TSA sending the revocation letter there.  Opp. at 15-16.  This is also wrong.  What Plaintiff challenges in this lawsuit is the allegedly retaliatory TSA PreCheck revocation—not the sending of the letter itself—and it's undisputed that the revocation decision was made outside California.[4]  That TSA later sent the letter to Plaintiff's Post Office box in Ojai doesn't make California the location of the revocation decision or otherwise support personal jurisdiction in the circumstances of this case.  Mem. at 17-18.[5]

**2. Venue.**  As Carrigan also explained, the Central District of California is the wrong venue for the *Bivens* claim.  Mem. at 19-20.  Citing no supportive authority, Plaintiff insists this District *is* the right venue because (1) he "maintained a residential address" in this District, and (2) that address is where he received the revocation letter, which, he says, means that the "acts and events" underlying his claim "occurred in this District," Opp. at 18.

Plaintiff is mistaken.  Whether he has an address in this District is irrelevant

---

220 (S.D.N.Y. 2000), *aff'd*, 6 F. App'x 98 (2d Cir. 2001); *Claasen v. Brown*, 1996 WL 79490, *2 (D.D.C. Feb. 16, 1996); *Vu v. Meese*, 755 F. Supp. 1375, 1378 (E.D. La. 1991).

[4]  Mem. at 14; Compl., Ex. 25 (Doc. 1 at 323); *see* Opp. at 13, 16 (Carrigan "sits in Virginia" where her "home operations are located"); *accord id.* at 14-15.

[5]  *See Dangoor v. Peterson's Stampede Dodge Chrysler Jeep*, 2019 WL 6357252, *3 (C.D. Cal. Aug. 8, 2019) ("Plaintiff's argument is that Defendants knew that Plaintiff resided in California, and that Defendants targeted Plaintiff—and thus California—each time they called him.  But this argument is too expansive under *Walden* . . . ."); *Michael v. New Century Fin. Servs.*, 2015 WL 1404939, *5 (N.D. Cal. Mar. 30, 2015) ("A defendant who engages in out-of-state conduct that affects a resident of a forum state does not purposefully direct his conduct at the forum state simply by virtue of his knowledge that plaintiff lives there."); *see also Applied Underwriters v. Combined Mgmt.*, 371 F. App'x 834, 835 (9th Cir. 2010) (the "'use of the mails [or] telephone'" ordinarily does not "'qualify as purposeful activity invoking the benefits and protection of the [forum] state'") (quoting *Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991)); *Far W. Cap. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995) ("phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts").

3

because, generally, "the purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial," and "Congress did not intend to provide for venue at the residence of the plaintiff or to give that party an unfettered choice among a host of different districts." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183-85 (1979). Instead, the question is whether "a substantial part of the events or omissions giving rise to the claim occurred" in this District. 28 U.S.C. § 1391(b)(2). The answer is "no" because, as mentioned, it's undisputed that the challenged revocation decision—and any action by Carrigan that preceded or caused it—occurred outside California. *See supra* p. 3 & n.4. This District, then, did not become the locus of "a substantial part of the events or omissions giving rise to the claim" simply because TSA later sent the revocation letter to Plaintiff's Post Office box in Ojai.[6]

    **3. Subject-Matter Jurisdiction.** Plaintiff also fails to demonstrate how his *Bivens* claim is beyond the jurisdictional bar of 49 U.S.C. § 46110, and the binding Ninth Circuit precedent applying it to certain types of damages claims against federal employees. Mem. at 20-21. The *Bivens* claim is barred if it is "inescapably intertwined" with a review of the TSA revocation order, and it *is* in this case because it "challenges the revocation order in Plaintiff's particular case and, thus,

---

[6] *See Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) ("for venue to be proper, *significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere"); *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003) ("Only the events that directly give rise to a claim are relevant. And of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered."); *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) ("Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff"); *accord Cottman Transmission Sys. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994); *Knuttel v. Omaze, Inc.*, 572 F. Supp. 3d 866, 869-70 (N.D. Cal. 2021); *Kelly v. Qualitest Pharm.*, 2006 WL 2536627, *8 (E.D. Cal. Aug. 31, 2006). Although the location where a tort plaintiff "feels the harm" may be relevant under § 1391(b)(2), "it is but one factor courts must consider in their substantiality analysis," *Knuttel*, 572 F. Supp. 3d at 869 n.2, and, here, it doesn't change the calculus because, as mentioned, *see supra* n.2, Plaintiff alleges no facts plausibly suggesting that he has felt any harm from the TSA PreCheck revocation specifically in this District.

4

1  is 'based on the merits of an individual situation,'" *id.* at 21 (citation omitted).

2      Plaintiff's contrary arguments are meritless.  He says that the "inescapably
3  intertwined" standard "does not" really "exist" and is "never once mention[ed]" in
4  § 46110.  Opp. at 19-20.  But he can't avoid the "body of case law" in which the
5  Ninth Circuit has construed the statute to sensibly require such a standard and used
6  it to bar district courts from exercising subject-matter jurisdiction over damages
7  claims that meet it.  *Americopters v. FAA*, 441 F.3d 726, 736 (9th Cir. 2006).
8  Here, the *Bivens* claim does so, despite (1) Plaintiff's irrelevant assertion that he
9  has never had an "encounter" with "any TSA agent" at a "checkpoint," Opp. at 19;
10 (2) his conclusory characterization of Carrigan's conduct as retaliatory and not
11 "related to TSA safety or security," *id.*; *see*, *e.g.*, *SecurityPoint Holdings v. TSA*,
12 769 F.3d 1184 (D.C. Cir. 2014) (reviewing under § 46110 a PFR that claimed TSA
13 order constituted First Amendment retaliation); and (3) irrelevant factual
14 differences between this case and some of the pertinent Ninth Circuit ones, some
15 of which involved FAA orders, not TSA orders.  Opp. at 20-22.  That is of no
16 moment because the statute applies equally to certain orders whether issued by the
17 TSA, the FAA, or the Secretary of Transportation.  § 46110(a).

18      **4.  No *Bivens* Remedy.**  Next, Supreme Court precedent squarely forecloses
19 the proposed *Bivens* remedy that Plaintiff seeks for First Amendment retaliation.
20 Mem. at 22-27 (discussing, *inter alia*, *Egbert v. Boule*, 142 S. Ct. 1793 (2022), and
21 *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017)).  Plaintiff's contrary arguments (Opp. at
22 22-29) do not give this Court an avenue for circumventing *Egbert* and proceeding
23 with the very same type of *Bivens* claim that *Egbert* unanimously and categorically
24 barred.  The Supreme Court's holding on that point was *not* limited (as Plaintiff
25 erroneously suggests, *id*. at 23-24) to plaintiffs who are "criminal" innkeepers
26 engaged in "illicit" cross-border smuggling.  To the contrary, the unqualified
27 nature of the Court's rejection of *Bivens* remedies for First Amendment

28

5

retaliation—for purposes of *Egbert* and all subsequent cases—is clear from the plain language of the majority and concurring opinions. 142 S. Ct. at 1807-09; *id.* at 1817-18 (Sotomayor, J.). Lower courts have recognized as much in post-*Egbert* cases previously cited (Mem. at 24 n.13) and in still more recent cases, including a Ninth Circuit one.[7] *Egbert* simply leaves no room for Plaintiff to pursue a *Bivens* claim for First Amendment retaliation, and he cites no post-*Egbert* authority that could possibly let him do so.[8] His *Bivens* claim, therefore, should be dismissed as a matter of law under Rule 12(b)(6).[9]

Carrigan also explained why, even under a more "fulsome special-factors analysis" using *Abbasi*'s "two-step inquiry" (and not merely *Egbert* alone), dismissal is required. Mem. at 24-27. Plaintiff largely ignores this alternative argument. But what little he says about it shows that he misunderstands the

---

[7] *See Myles v. United States*, 2022 WL 4011172, *3 n.1 (9th Cir. Sept. 2, 2022) (resolving case on other grounds but noting that *Egbert* "recently established that 'there is no *Bivens* action for First Amendment retaliation'") (citations omitted); *Selvam v. United States*, 2022 WL 6589550, *2 (2d Cir. Oct. 11, 2022) (holding, post-*Egbert*, that "First Amendment retaliation claims cannot proceed under *Bivens*"); *Greene v. United States*, 2022 WL 13638916, *4 (6th Cir. Sept. 13, 2022) ("*Egbert* specifically forecloses [the plaintiff's] *Bivens* First Amendment retaliation claims."); *accord Johnson v. Cooke*, 2022 WL 6960974, *1-2 (11th Cir. Oct. 12, 2022); *Kaetz v. Wolfson*, 2022 WL 4115505, *2 (3d Cir. Sept. 9, 2022); *see also Hall v. Chapman*, 2022 WL 4122024, *6 (E.D. Mich. Sept. 9, 2022) (noting *Egbert*'s "broad" and "straightforward" "pronouncement" that "unequivocally" rejected *Bivens* remedies for First Amendment retaliation, and declining to construe *Egbert* as "limited to the facts of that specific case" and "somehow appli[cable] only to the border-security context").

[8] Although Plaintiff cites scattered examples of courts providing *Bivens* remedies in various non-First Amendment contexts, all of those cases pre-date *Egbert* and cannot overcome its holding on the unavailability of a *Bivens* remedy for First Amendment retaliation. Opp. at 27-28 (citing *Carlson v. Green*, 446 U.S. 14 (1980); *Lanuza v. Love*, 899 F.3d 1019 (9th Cir. 2018); and *Rodriguez v. Swartz*, 899 F.3d 719 (9th Cir. 2018), which the Supreme Court later *vacated*, 140 S. Ct. 1258 (2020), in light of *Hernández v. Mesa*, 140 S. Ct. 735 (2020)).

[9] Plaintiff is again mistaken when he suggests that a no-remedy argument "belong[s] in a Motion for Summary Judgment" and "not in a Motion to Dismiss." Opp. at 23. Such arguments are routinely and appropriately raised in Rule 12(b)(6) motions to dismiss. *See*, *e.g.*, *Abbasi*, 137 S. Ct. at 1852; *see also Nebraska Beef, Ltd. v. Greening*, 398 F.3d 1080, 1083 (8th Cir. 2005) (availability of *Bivens* remedy "is a purely legal question," as the "lawsuit . . . is doomed from its inception" if "no *Bivens* remedy exists").

inquiry. That his claim presents a "new context" or is "novel" as compared to *Bivens*, *Davis*, and *Carlson* is beyond debate. *Id*. at 22-24 & n.14. This initial *Abbasi* inquiry, then, doesn't depend (as Plaintiff erroneously suggests, Opp. at 24-25) on whether individuals besides Plaintiff have allegedly suffered retaliation for their mask-related PFRs. Far from arising in "classic *Bivens*" territory, *id*. at 32, Plaintiff's proposed claim would indeed require a special-factors analysis under *Abbasi*, and Carrigan identified "several special factors" that "strongly counsel against any *Bivens* extension here," Mem. at 24-27. Plaintiff's only rebuttal is to dismiss the obvious national-security concern as "fear mongering" and to cite a district-court decision that he fails to mention was *reversed* on appeal. Opp. at 28 (citing *Elhady v. Pew*, 370 F. Supp. 3d 757 (E.D. Mich. 2019)).[10] Even were that decision still good law (which it isn't), it didn't involve TSA, airline-passenger screening, or the First Amendment. Any extension of *Bivens* into this TSA passenger-screening context would unquestionably implicate national security. Mem. at 26-27. That concern, alone, precludes a *Bivens* extension here, as a *Bivens* action "may not lie where . . . national security is at issue," and a court may not extend a *Bivens* remedy if "there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 142 S. Ct. at 1805 (citation omitted).

    **5. Qualified Immunity.** Carrigan further explained why the *Bivens* claim

---

[10] The *Elhady* plaintiff challenged the conditions of his detention at the U.S./Canadian border. In the decision cited by Plaintiff, the District Court extended a *Bivens* remedy and declined to dismiss under Rule 12(b)(6). It later denied summary judgment to one defendant. *Elhady v. Bradley*, 438 F. Supp. 3d 797 (E.D. Mich. 2020). In the subsequent appeal, the Sixth Circuit reversed on the ground that the District Court erred in extending a *Bivens* remedy in the first place. *Elhady v. Unidentified CBP Agents*, 18 F.4th 880, 881-82, 887 (6th Cir. 2021), *reh'g denied*, 2022 WL 326693 (6th Cir. Jan. 25, 2022), *cert. denied sub nom.*, *Elhady v. Bradley*, 2022 WL 6572095 (U.S. Oct. 11, 2022). As the Sixth Circuit explained, a *Bivens* remedy was unavailable because the case implicated "national security," which "will always be a special factor counseling against extending *Bivens* to the border context." *Id*. at 886.

is barred by the qualified-immunity doctrine at both steps of the analysis. Mem. at 27-33. Plaintiff's counter is unavailing. Opp. at 29-31. At the first step, he still offers only conclusory or irrelevant assertions that do not plausibly establish key elements of a retaliation claim. *Id.* at 30-31. At the second step, he broadly claims that Carrigan violated "clearly established fundamental First Amendment law," *id*. at 31. But he doesn't address the precedent that Carrigan cited (Mem. at 31-33 & nn.26-27), on which a reasonable official in her position could have relied if she chose to consider Plaintiff's PFR in her "low risk" assessment of his TSA PreCheck eligibility. Plaintiff also fails to cite case law that establishes—in a way that's "beyond debate," *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011), and with "a high 'degree of specificity,'" *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018)—that the "*particular* conduct" ascribed to Carrigan violated the First Amendment. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). Although he says that "[m]any cases" support his claim, Opp. at 29, he cites *no* First Amendment retaliation case *at all* in his qualified-immunity discussion and, otherwise, cites only to *Garcetti v. Ceballos*, 547 U.S. 410 (2006), in his introduction. Opp. at 10. But *Garcetti* did not concern a government official's consideration of "First Amendment-protected activity" as part of a "risk or security assessment[]" of an individual. Mem. at 32. Instead, it addressed the extent of First Amendment protection against retaliation enjoyed by government employees when they "make statements pursuant to their official duties," 547 U.S. at 421. So *Garcetti* is inapposite, and its recitation of basic First Amendment principles is far too general to satisfy the "clearly established" standard. Mem. at 31.[11] A "reasonable officer" in Carrigan's position, then,

---

[11] *Accord Santa Maria City Firefighters Union v. City of Santa Maria*, 2020 WL 3050775, *2 (C.D. Cal. Feb. 27, 2020) ("Plaintiffs have not identified any cases whose particular facts would have alerted the individual Defendants that their specific conduct in response to Plaintiffs' specific speech was clearly unconstitutional."); *see West v. City of Caldwell*, 931 F.3d 978, 984 (9th Cir. 2019) ("Prior precedent must articulate 'a constitutional rule specific enough to alert

1  "*might* not have known *for certain*" that her alleged conduct would violate the First
2  Amendment; thus, she is "immune from liability" and should be dismissed as a
3  matter of law under Rule 12(b)(6). *Abbasi*, 137 S. Ct. at 1867 (emphasis added).[12]

4  **6. Purported §§ 1985 & 1986 Claims.** Lastly, Plaintiff appears to say that,
5  even if the *Bivens* claim is dismissed, the case still should proceed against Carrigan
6  because, according to him (Opp. at 8), she is *also* an individual-capacity defendant
7  to conspiracy claims under 42 U.S.C. §§ 1985(3) and 1986 asserted, respectively,
8  in the twentieth (Compl. ¶¶ 891-905) and twenty-first (*id.* ¶¶ 906-912) counts.

9  Not so. Count 20 asserts a § 1985(3) claim only against "the Airline
10  Defendants, the Medical Defendants, and the Yet-To-Be-Named Individual
11  Defendants." *Id.* at p. 120 (heading with boldface all-caps deleted). It nowhere
12  mentions Carrigan, and it alleges a conspiracy in regard *not* to the TSA PreCheck
13  revocation but, rather, to the mask orders in which Carrigan was not, and is not
14  alleged to have been, involved. As for Count 21, it asserts a § 1986 claim only
15  against "Yet-To-Be Named Individual Defendants," *id.*, a category that similarly
16  excludes Carrigan. Although Count 21 contains a stray reference to her in a later
17  paragraph, *id.* ¶ 907 (reiterating that Plaintiff's "Pre-Check status was revoked by
18  Julie Carrigan because he's a disabled American who has spoken out against the
19  FTMM"), the allegation is gratuitous and, at most, a background factual contention

---

21  *these* deputies *in this case* that *their particular conduct* was unlawful.'") (citation omitted).

22  [12]  Although Plaintiff repeatedly insists that he's entitled to discovery, Opp. at 8-9, 19, 22, 32, that assertion, especially in this qualified-immunity context, is simply "no answer" to Carrigan's argument for dismissal. *Siegert v. Gilley*, 500 U.S. 226, 236 (1991) (Kennedy, J., concurring in the judgment); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 684-85 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007); *see Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("The purpose of [Rule] 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery."); *Kaylor v. Fields*, 661 F.2d 1177, 1184 (8th Cir. 1981) ("Discovery should *follow* the filing of a well-pleaded complaint. It is not a device to enable a plaintiff to make a case when his complaint has failed to state a claim.") (emphasis added).

with no connection to the rest of the count. Taken together, none of this could have given Carrigan the fair notice—required by Federal Rules of Civil Procedure 8(a)(2) and 10—that she is a defendant to Counts 20 or 21.[13]

Until his opposition, Plaintiff never so much as hinted that Carrigan might be a defendant to Counts 20 or 21. To the contrary, he joined in two stipulations jointly representing to the Court that Carrigan is an individual-capacity defendant only as to the *Bivens* claim in Count 19. Doc. 96 at 2; Doc. 126 at 2. Plaintiff shouldn't be allowed to change his tune now. On the current complaint, then, if the *Bivens* claim is dismissed, Carrigan cannot fairly be kept in the case based on Plaintiff's revisionist suggestion that she's also a defendant to Counts 20 and 21. The Court should disregard that part of the opposition and, at the very least, require Plaintiff, if he wishes to pursue this, to file a Rule 15 motion for leave to amend so as to add Carrigan as a defendant to these statutory counts—a motion she most likely would oppose on futility grounds. *Foman v. Davis*, 371 U.S. 178, 182 (1962).[14] This approach would comport with the Federal Rules without mandating that Carrigan address unpleaded claims in the truncated confines of this 10-page reply that has properly focused on the arguments for dismissal of the *Bivens* claim that Plaintiff *did* plead against her.

---

[13] *Twombly*, 550 U.S. at 555; s*ee* 5 Chas. A. Wright, *et al*., Fed. Prac. & Proc. Civ. § 1248, at 505 (4th ed. 2021) ("[A]ctions brought against multiple defendants must clearly specify the claims with which each individual defendant is charged.") (footnote omitted); *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1250 (11th Cir. 2003) ("[I]t is axiomatic that defendants remain entitled to know exactly what claims are being brought against them.").

[14] For instance, it appears that any newly asserted §§ 1985 or 1986 claim against Carrigan would be subject to dismissal for most of the same reasons that the *Bivens* claim fails, *i.e.*, lack of personal jurisdiction and venue, lack of subject-matter jurisdiction under § 46110, and qualified immunity—including, as to the latter, for reasons explained by other defendants. *See*, *e.g*., Doc. 86-1 at 16-18, Doc. 92-1 at 13-18, & Doc. 95-1 at 14-15 (seeking dismissal of Counts 20 & 21 based on legal deficiency of allegations and § 1985(3)'s inapplicability to disability-based discrimination); *see also Abbasi*, 137 S. Ct. at 1865-69 (granting qualified immunity as to § 1985(3) claim based on "intracorporate-conspiracy doctrine").

|    |                              |                                                              |
|----|------------------------------|--------------------------------------------------------------|
|    |                              | Respectfully submitted,                                      |
|    |                              | BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General<br>C. SALVATORE D'ALESSIO, JR.<br>Director, Torts Branch<br>MARY HAMPTON MASON<br>Senior Trial Counsel, Torts Branch<br>JEREMY SCOTT BRUMBELOW<br><u>/s/ Jeremy Scott Brumbelow</u><br>Senior Trial Attorney, Torts Branch<br>U.S. Department of Justice, Civil Division<br>P.O. Box 7146, Ben Franklin Station<br>Washington, D.C.  20044-7146<br>Tel. (202) 616-4330; Fax. (202) 616-4314 |
| DATED:  November 2, 2022 | | Email:  jeremy.brumbelow@usdoj.gov |
|    |                              | *Counsel for Defendant Julie Carrigan in her individual capacity* |

# CERTIFICATE OF SERVICE

I hereby certify that on this day, November 2, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

JEREMY SCOTT BRUMBELOW
/s/ Jeremy Scott Brumbelow
Senior Trial Attorney, Torts Branch
U.S. Department of Justice, Civil Division