FILED
CLERK, U.S. DISTRICT COURT

11/16/23

CENTRAL DISTRICT OF CALIFORNIA
BY: ___CS___ DEPUTY

Cindy Russo (Pro Se)
cjrz123@gmail.com
22485 Breakwater Way
Santa Clarita, CA  91350
Telephone: 908-797-8066
Lead Plaintiff

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

**URI MARCUS** et al,
                    Plaintiffs

v.

**CENTERS FOR DISEASE CONTROL & PREVENTION**, et al
                    Defendants.

**Case No.: 22-cv-02383-SSS-AS**

## PLAINTIFFS' RESPONSE IN OPPOSITION TO AIRLINE DEFENDANTS' MOTION TO DISMISS

Hearing Date: December 8, 2023
Judge: Hon. Sunshine S. Sykes
Ct. Room: 2

---

The Estate of Uri Marcus, plaintiff
E-Mail: adi@ntcf.org
P.O. Box 126
Ojai, CA 93024
Telephone: 909-833-0065


Yvonne Marcus, plaintiff
E-Mail: adi@ntcf.org
P.O. Box 126
Ojai, CA 93024
Telephone: 909-833-0065

Avrohom Gordon, plaintiff
E-Mail -gordon.avrohom@gmail.com
2251 State Route 222
New Richmond, OH 45157
Telephone: 513-734-1770


Devorah Gordon, plaintiff
Email: devorahlgordon@gmail.com
2251 State Route 222
New Richmond, OH 45157
Telephone: 513-734-1770

## <u>TABLE OF CONTENTS</u>

Table of Authorities……………………………………………………..3

Legal Standard…………………………………………………………..5

42 USC 1983: CIVIL RIGHTS UNDER THE COLOR OF LAW…….6

THE CLAIMS OF 1985 AND 1986…………………………………....8

AIR CARRIER ACCESS ACT ("ACAA")……………………………9

THE REHABILITATION ACT ("RA")………………………………..10

UNRUH…………………………………………………………………11

Breach of Contract…………………………………………………….13

Reckless & Despicable Conduct………………………………………14

Practicing Medicine without a License………………………………14

Invasion of Privacy…………………………………………………..14

Medical Malpractice………………………………………………….19

Mootness……………………………………………………………..15

FRAUDULENT MISREPRESENTATION, THE CONSTITUTIONAL

RIGHT TO TRAVEL, & PUNITIVE DAMAGES …………………….17

Conclusion……………………………………………………….…..18

Certificate of Compliance…………………………………….…..20

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                      <u>PAGE</u>

Angel v. Pan American World Airways, Inc., 519 F. Supp. 1173 –

      Dist. Court, Dist. of Columbia 1981……………………………10

Cipollone v. Liggett Group, Inc., 505 US 504 - Supreme Court 1992….12,13

Gibson v. City of Chicago, 910 F. 2d 1510 - Court of Appeals,

7th Circuit 1990………………………………………………….……………5

Hingson v. Pacific Southwest Airlines, 743 F. 2d 1408 –

      Court of Appeals, 9th Circuit 1984………………………………..10

Lugar v. Edmondson Oil Co., 457 US 922 - Supreme Court 1982………..8

Parver v. JetBlue Airlines Corp. 649 Fed. Appx. 539, 543 (9th Cir. 2016)…6

Sever v. Alaska Pulp Corp., 978 F. 2d 1529 –

      Court of Appeals, 9th Circuit 1992………………………………..8,9

United States v. Concentrated Phosphate Export Assn., 393

U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968)………………..……15

UZUEGBUNAM et al v. PRECZEWSKI  et al - U.S. S Ct. 03/8/2021…..17

Wall v. Transportation Sec. Admin., (D.C. Cir. Feb. 9, 2023)…………….16

West v. Atkins 487 U.S.42,48 (1988)…………………………………………6

**STATUTES**                                              **PAGE**

42 USC 1983…………………………………………………….…6

THE CLAIMS OF 1985 AND 1986……………………………….…8

AIR CARRIER ACCESS ACT ("ACAA") ………………………….…9

The Rehabilitation Act…………………………………………………10

UNRUH - CAL. CIV. CODE §51(b)……………………………………11,12,13

CA Civ Code § 3294………………………………………………….14

L.R. 5-4.3.4(a)(2)(i),……………………………………………….…18

1

1        Plaintiffs hereby respond in opposition to the airline Defendants' Motion to

2  Dismiss (Doc. 194). An overwhelming majority of the issues presented by

3  Defendants were addressed exhaustively in the Amended Complaint itself.

4  Plaintiffs understand that the arguments, explanations, clarifications, and caselaw

5  provided in the Amended Complaint, does not need to be repeated here. Plaintiffs

6  will use this opportunity to respond exclusively to the specific arguments within

7  the Motion that may not have been addressed fully.

8        Plaintiffs are not able to attend any oral argument in person on the above

9  date.  Plaintiffs do not request oral argument. If the Court requires their attendance

10  on December 8, 2023, and/or on an alternative date, Plaintiffs ask the Court to

11  allow them to attend through Zoom.

12

13  **<u>LEGAL STANDARD</u>**

14       "<u>The purpose of a motion to dismiss is to test the sufficiency of the</u>

15  <u>complaint, not to decide the merits</u>." Triad Assocs., Inc. v. Chicago Hous.

16  Authority, 892 F.2d 583, 586 (7th Cir.1989). In reviewing a motion to

17  dismiss under Rule 12(b)(6), "we must 1521*1521 accept as true all the

18  plaintiff's well-pleaded factual allegations and the inferences reasonably

19  drawn from them. We shall affirm the dismissal only if the plaintiff has

20  failed to allege any set of facts upon which relief may be granted." Yeksigian

1    v. Nappi, 900 F.2d 101, 102 (7th Cir.1990)." Gibson v. City of Chicago, 910

2    F. 2d 1510 - Court of Appeals, 7th Circuit 1990.

3

4    **42 USC 1983: CIVIL RIGHTS UNDER THE COLOR OF LAW**

5         Defendants quote West v. Atkins 487 U.S.42,48 (1988) (on Page 6). The

6    actual decision and rationale of the Supreme Court in that case, actually supports

7    Plaintiffs' assertion that 1983 does apply here. Defendants quoted a vague

8    statement, but the case itself proves otherwise.  The Court quotes, "Institutional

9    physicians assume an obligation to the mission that the State, through the

10   institution, attempts to achieve." Polk County, 454 U.S. at 454 U. S. 320." The

11   Court's decision is that the Physician would be liable to 1983 in that case. It is not

12   very different from here, where the airlines, the federal agencies, and the local and

13   State agencies all worked in unison to enforce this mandate.

14        On the same page, Defendants quoted Parver v. JetBlue Airlines Corp. 649

15   Fed. Appx. 539, 543 (9th Cir. 2016). Their assertion was that in that case the Circuit

16   Court determined that "the fact that the airlines alerted the police" was insufficient

17   to be liable for a 1983 violation. This was from an unpublished case, which is NOT

18   a binding authority. In any case, this caselaw actually proves the contrary.  The

19   only reason the airlines were not liable for 1983, was the following: "Here, "Blue

20   Watch" sent an alert to the police and the flight crew pointed Parver out when the

1   officers boarded the plane, which, without more, is insufficient to create a triable

2   question on joint state action." The idea here is that the airline personnel had little

3   to no involvement in policing the requirements.

4        In our case, as the facts describe, the police came to the plane. The airline

5   personnel are charged with enforcing this mandate, which is illegal and

6   discriminatory when enforcing it against people with disabilities, such as these

7   Plaintiffs. Yes, the federal government is also involved, but ultimately it is the

8   airline staff that enforces these laws and they work in unison with State and local

9   law enforcement.  The fact that there is a federal law involved doesn't negate the

10  state law participation. The airlines created mask mandates long before the federal

11  government followed suit.  The airline could not have been enforcing any federal

12  law, because Plaintiffs were exempt from that.

13       They were enforcing policy in direct conjunction with the state law

14  enforcement on the ground. They would claim that we are causing problems on the

15  flight, not listening to a flight attendant, creating safety issues, and the like. They

16  would not ever have charged Plaintiffs with a federal violation of the FTMM,

17  because Plaintiffs were exempt.

18       The Supreme Court held the following:

19            "…we held that the private party's joint participation with a state

20       official in a conspiracy to discriminate would constitute both "state action

7

1    essential to show a direct violation of petitioner's Fourteenth Amendment

2    equal protection rights" and action " `under color' of law for purposes of the

3    statute." Lugar v. Edmondson Oil Co., 457 US 922 - Supreme Court 1982.

4    The Airline Defendants most certainly violated 1983, and should be held

5    accountable.

6

7    **THE CLAIMS OF 1985 AND 1986**

8    Plaintiffs elaborated carefully in their Amended Complaint, addressing all

9    the arguments that Defendants were going to present with respect to these

10    conspiracy statutes.  We will just add a few points here.

11    Defendants state ""The original purpose of § 1985(3), which was passed as

12    the Ku Klux Klan Act of 1871…"  They try to negate the idea of these statutes, yet

13    there is much caselaw that show that these statutes are alive and active, and will

14    remain that way, until and unless Congress makes a change.  The Defendants'

15    statement is disingenuous.

16    See Sever v. Alaska Pulp, where the Ninth Circuit gives some clarification

17    on 1985 & 1986 conspiracies.

18    "In the years since Griffith, courts have struggled to determine whether and

19    when § 1985(3) applies in contexts not involving race, and have produced

20    opinions that are all over the map. See Canlis v. San Joaquin Sheriff's Posse

1      Comitatus, 641 F.2d 711, 719 n. 15 (9th Cir.) (listing often-conflicting

2      federal cases from across the country), cert. denied, 454 U.S. 967, 102 S.Ct.

3      510, 70 L.Ed.2d 383 (1981). In the Ninth Circuit, the treatment of section

4      1985(3) claims is somewhat more consistent. Generally, our rule is that

5      section 1985(3) is extended beyond race "only when the class in question

6      can show that there has been a governmental determination that its members

7      `require and warrant special federal assistance in protecting their civil

8      rights." Sever v. Alaska Pulp Corp., 978 F. 2d 1529 - Court of Appeals, 9th

9      Circuit 1992.

10      Our most ridiculous argument was this: "The Complaint Fails to Allege the

11 Existence of a Conspiracy."  Wow! multiple airlines, federal agencies, medical

12 advisory companies, and their employees all happen to be doing the exact same

13 discrimination, yet there was no conspiracy.  It is just a coincidence. This was also

14 addressed in the Complaint. Being that 1985 (3) is valid, then the same goes for

15 1986.

16

17 **ACAA PRIVATE RIGHT OF ACTION** was argued thoroughly in our Amended

18 Complaint.

19

20

1    **THE REHABILITATION ACT ("RA")**

2        The RA was also argued thoroughly, and here in their Motion, Defendants

3    admit that they had to sign the paper stating that they would be subject to… the

4    RA. (Page 11 at bottom).

5        Additionally, Defendants brought a bizarre caselaw from a district court on

6    the other side of the map, from 1981. While this caselaw is not at all binding or

7    even any indication, you can see that the caselaw actually supports our case. The

8    case is Angel v. Pan American World Airways, Inc., 519 F. Supp. 1173 - Dist.

9    Court, Dist. of Columbia 1981. Defendants bring this case (Page 12) to prove that

10   if the airline no longer receives federal funds, they're no longer liable for RA.

11   Defendants failed to point out that in that case in 1981, they were trying to use

12   funding from November 1, 1956 to bind them to the RA. That would be ridiculous.

13   In our case, it was in the same few months, during the same pandemic, and

14   Defendants signed to the federal government that they will abide by the RA.

15       Defendants quoted Hingson v. Pacific Southwest Airlines, 743 F. 2d 1408 -

16   Court of Appeals, 9th Circuit 1984 (page 12). They tried to deduce from the

17   wording that if the subsidy from the federal government was given yesterday, then

18   it doesn't count, since they are no longer receiving a subsidy.  That is not what is

19   written.  The point in that case is that the federal funding that they were receiving

1   was never a subsidy at all, but rather payment for carrying mail. The Defendants

2   took the Court's words out of context.

3       In the last case they quoted, Edmonds-Radford v. SW. Airlines Co (Page 12),

4   they were just bringing frivolous caselaw, probably hoping no one will read it.

5   They themselves explain that that case is about the AIRPORT receiving federal

6   funding and therefore the AIRLINE is not liable for the RA. Of course not.

7

**<u>UNRUH</u>**

9       Defendants claim it does not apply because some Plaintiffs do not live in

10  California, and the airlines are not based in California. We showed in our Amended

11  Complaint that all Plaintiffs flew in and out of California, and had incidents and

12  serious violations in California.  These were at the locations where these

13  Defendants conduct significant business. Any discrimination in the State of

14  California is subject to UNRUH.

15      UNRUH states: "All persons within the jurisdiction of this state are free and

16  equal, and no matter what their … disability, medical condition … are entitled to

17  the full and equal accommodations, advantages, facilities, privileges, or services in

18  all business establishments of every kind whatsoever." CAL. CIV. CODE §51(b).

19      The facts in the Amended Complaint describe significant California

20  discriminations. See paragraph 1125 for a good example. Unruh absolutely does

11

1    apply as we explained here and in the Amended Complaint.  If federal law

2    preempts it, UNRUH would not exist at all.  Every UNRUH law has a federal law

3    behind it.  UNRUH and all state disability laws are specifically an enhancement to

4    federal law and enforcement.

5          Here is a clarification of the preemption concept by the Supreme Court of

6    the United States.

7          "Article VI of the Constitution provides that the laws of the United States

8          "shall be the supreme Law of the Land;. .. any Thing in the Constitution or

9          Laws of any state to the Contrary notwithstanding." Art. VI, cl. 2. Thus,

10         since our decision in McCulloch v. Maryland, 4 Wheat. 316, 427 (1819), it

11         has been settled that state law that conflicts with federal law is "without

12         effect." Maryland v. Louisiana, 451 U. S. 725, 746 (1981). Consideration of

13         issues arising under the Supremacy Clause "start[s] with the assumption that

14         the historic police powers of the States [are] not to be superseded by . . .

15         Federal Act unless that [is] the clear and manifest purpose of Congress."

16         Rice v. Santa Fe Elevator Corp., 331 U. S. 218, 230 (1947). Accordingly,

17         "`[t]he purpose of Congress is the ultimate touchstone' " of pre-emption

18         analysis. Malone v. White Motor Corp., 435 U. S. 497, 504 (1978) (quoting

19         Retail Clerks v. Schermerhorn, 375 U. S. 96, 103 (1963)).

1   Congress' intent may be "explicitly stated in the statute's language or

2   implicitly contained in its structure and purpose." Jones v. Rath Packing Co.,

3   430 U. S. 519, 525 (1977). In the absence of an express congressional

4   command, state law is pre-empted if that law actually conflicts with federal

5   law, see Pacific Gas & Elec. Co. v. State Energy Resources Conservation

6   and Development Comm'n, 461 U. S. 190, 204 (1983), or if federal law so

7   thoroughly occupies a legislative field "`as to make reasonable the inference

8   that Congress left no room for the States to supplement it.' " Fidelity Fed.

9   Sav. & Loan Assn. v. De la Cuesta, 458 U. S. 141, 153 (1982) (quoting Rice

10   v. Santa Fe Elevator Corp., 331 U. S., at 230)." Cipollone v. Liggett Group,

11   Inc., 505 US 504 - Supreme Court 1992.

12   It is clear that preemption only applies when there is a conflict.

13

## **BREACH OF CONTRACT**

15   Defendants claim that Plaintiffs did not specify which specific contractual

16   language was breached.  Maybe we weren't as clear as a trained lawyer. Look

17   through our Amended Complaint and you will see many claims of breach. For

18   example, airlines agree to follow the law.  Banning and or discriminating against

19   the disabled is a violation of those laws. (as you can see in Paragraphs 1075 &

20   1076). There is a lot written and we attached several of the contracts themselves.

13

1   We can litigate the specifics going forward, but with respect to a motion to dismiss,

2   this is certainly a valid claim.

3

4   **<u>RECKLESS & DESPICABLE CONDUCT</u>**

5        While this is also a criminal charge, in California Law it is additionally a

6   civil charge. CA Civ Code § 3294 states the following: "(a) In an action for the

7   breach of an obligation not arising from contract, where it is proven by clear and

8   convincing evidence that the defendant has been guilty of oppression, fraud, or

9   malice, the plaintiff, in addition to the actual damages, may recover damages for

10  the sake of example and by way of punishing the defendant."

11

12  **<u>PRACTICING MEDICINE WITHOUT A LICENSE</u>** is argued thoroughly in

13  the Amended Complaint.

14

15  **<u>INVASION OF PRIVACY</u>**

16       This was argued thoroughly in the Amended Complaint. While it is possible

17  that the airline could have asked some basic questions, but the rigmarole that

18  Plaintiffs were put through and the information that was required, was extremely

19  invasive.  It was often done in public. Questions were asked and documentation

20  demanded that the person asking had no clue and was not trained in any medical or

1    psychological field.  They shamed us in public and metaphorically required us to

2    walk around naked.  This is absolutely unacceptable and a violation of the Invasion

3    of Privacy Laws.

4

5    **<u>MOOTNESS</u>**

6       This was also addressed thoroughly in the Amended Complaint. Even till

7    this day there are constant new Covid rules, restrictions, and actions taken by the

8    CDC, private companies, and various government agencies.

9       The CDC just put a new expansive testing project for multiple diseases at

10    airports.[1] It was in the news just a few days ago.

11       Mootness does not apply for multiple reasons. Now, suddenly there are

12    companies, organizations, hospitals, schools and the like that are reinstating mask

13    policies.[2]

14       In order to be considered moot it has to pass the following test:

15       ""<u>A case might become moot if subsequent events made it absolutely clear</u>

16    <u>that the allegedly wrongful behavior could not reasonably be expected to recur.</u>"

17    United States v. Concentrated Phosphate Export Assn., 393 U.S. 199, 203, 89 S.Ct.

18    361, 21 L.Ed.2d 344 (1968).

---

[1] https://www.cdc.gov/media/releases/2023/s1107-testing-respiratory-viruses.html
[2] https://www.newsweek.com/mask-mandates-return-list-places-restrictions-1823069

1    If tomorrow morning, there is an increase in the Covid deaths and

2    hospitalizations, it is likely that they will try to reinstate mask mandates. If a new

3    pandemic showed up, it is likely that they will try to reinstate mask mandates. The

4    CDC, NIH, Anthony Fauci, and even Bill Gates have been predicting another

5    pandemic in the very near future. I would listen to them, because they predicted the

6    last pandemic.[3]

7    The DC Circuit writes the following in a challenge to the TSA mask

8    mandate: "Because there is a more-than-speculative chance that the challenged

9    conduct will recur, these cases are not moot." Wall v. Transportation Sec. Admin.,

10   No. 21-1220, 2023 WL 1830810, at *2 (D.C. Cir. Feb. 9, 2023).

11   This Court reviewed the arguments with respect to mootness from all the

12   parties, and rightfully found that mootness did not apply here. We shouldn't be

13   relitigating that issue again. The Court Order (Doc. 177) stated the following:

14   "The Court ordered the Parties to submit supplemental briefing regarding

15   potential mootness of Plaintiffs' claims.  After reviewing the Parties'

16   submissions, the Court finds none of Plaintiffs' claims are moot at this time."

17   Besides all that, the fact that there are injuries alleged and damages claimed,

18   it is important to litigate all the discrimination claims in order to determine if there

---

[3] https://centerforhealthsecurity.org/our-work/tabletop-exercises/event-201-pandemic-tabletop-exercise

1   was discrimination, and only then damages can be applied to that.  It is still

2   extremely relevant. Even with respect to Federal Defendants it is thus relevant. The

3   point of mootness stopping a lawsuit, is the idea that there is nothing the court can

4   do to bring redress or rectify the wrong. The bar isn't very high.  The Supreme

5   Court recently held that even just nominal damages are sufficient redress to

6   warrant a litigation.

7       "For purposes of this appeal, it is undisputed that Uzuegbunam experienced

8       a completed violation of his constitutional rights when respondents enforced

9       their speech policies against him. Because "every violation [of a right]

10      imports  damage," Webb, 29 F. Cas., at 509, nominal damages can redress

11      Uzuegbunam's injury even if he cannot or chooses not to quantify that harm

12      in economic terms." UZUEGBUNAM et al v. PRECZEWSKI et al - U.S.

13      Supreme Court March 8, 2021.

14      Let us put the MOOTNESS claims behind us and move forward on this

15  litigation.

16

17  **<u>FRAUDULENT MISREPRESENTATION</u>**

18  **<u>THE CONSTITUTIONAL RIGHT TO TRAVEL</u>**

19  **<u>& PUNITIVE DAMAGES</u>**

20      These were all addressed thoroughly in the Amended Complaint itself.

1

2        **CONCLUSION**

3        A Motion to Dismiss should not be used to take away a person's right to due

4    process; the right to discovery and a jury trial. Many of these issues may need to be

5    litigated, but that is what this litigation is for.  Let's move forward.

6        This is a complicated case in many ways. There are no clear facts or laws

7    that should be sufficient to dismiss any of these counts. Let us stop the games and

8    start discovery. Plaintiffs should be entitled to that.

9        WHEREFORE Plaintiffs ask this Court to DENY Defendants' Motion to

10    Dismiss in its entirety and to schedule a Conference to begin discovery.

11
12
13    Pursuant to L.R. 5-4.3.4(a)(2)(i), the filer of this document hereby attests that all

14    other signatories listed below, and on whose behalf the filing is submitted, concur

15    in the filing's content and have authorized this filing.

16
17    Respectfully submitted this 16th day of November, 2023.


*s/ Cindy Russo*

Cindy Russo, lead plaintiff
22485 Breakwater Way
Santa Clarita, CA 91350
Telephone: 908-797-8066
Email: cjrz123@gmail.com

*s/Yvonne Marcus*

(Signed by his wife, Yvonne Marcus as Administrator)
The Estate of Uri Marcus, plaintiff
P.O. Box 126
Ojai, CA 93024
Telephone: 909-833-0065
E-Mail: adi@ntcf.org


*s/Yvonne Marcus*

Yvonne Marcus, plaintiff
P.O. Box 126
Ojai, CA 93024
Telephone: 909-833-0065
E-Mail: adi@ntcf.org


*s/Avrohom Gordon*

Avrohom Gordon, plaintiff
2251 State Route 222
New Richmond, OH 45157
Telephone: 513-734-1770
E-Mail gordon.avrohom@gmail.com


*s/Devorah Gordon*

Devorah Gordon, plaintiff
2251 State Route 222
New Richmond, OH 45157
Telephone: 513-734-1770
Email: devorahlgordon@gmail.com

**CERTIFICATE OF COMPLIANCE**

The undersigned, Cindy Russo, lead Plaintiff, hereby certifies that this brief

contains 2,877 words, which complies with the word limit of L.R. 11-6.1.

Date: November 16, 2023

*s/Cindy Russo*

Cindy Russo, lead plaintiff