

Cindy Russo (Pro Se)
cjrz123@gmail.com
22485 Breakwater Way
Santa Clarita, CA  91350
Telephone: 908-797-8066
Lead Plaintiff

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **URI MARCUS** et al,<br>Plaintiffs<br><br>v.<br><br>**CENTERS FOR DISEASE CONTROL & PREVENTION**, et al<br>Defendants. | **Case No.: 22-cv-02383-SSS-AS**<br><br>**<u>PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT MEDAIRE'S MOTION TO DISMISS</u>**<br><br>Hearing Date: December 8, 2023<br>Judge: Hon. Sunshine S. Sykes<br>Ct. Room: 2 |

The Estate of Uri Marcus, plaintiff
E-Mail: adi@ntcf.org
P.O. Box 126
Ojai, CA 93024
Telephone: 909-833-0065


Yvonne Marcus, plaintiff
E-Mail: adi@ntcf.org
P.O. Box 126
Ojai, CA 93024
Telephone: 909-833-0065

Avrohom Gordon, plaintiff
E-Mail -gordon.avrohom@gmail.com
2251 State Route 222
New Richmond, OH 45157
Telephone: 513-734-1770


Devorah Gordon, plaintiff
Email: devorahlgordon@gmail.com
2251 State Route 222
New Richmond, OH 45157
Telephone: 513-734-1770

## <u>TABLE OF CONTENTS</u>

Table of Authorities…………………………………………………………..3

Motion is untimely, as per Court Order…………………………………4

Legal Standard…………………………………………………………..6

42 USC 1983: CIVIL RIGHTS UNDER THE COLOR OF LAW………7

THE CLAIMS OF 1985 AND 1986……………………………….....11

AIR CARRIER ACCESS ACT ("ACAA")…………………….…11

THE REHABILITATION ACT ("RA")………………………….…..13

UNRUH………………………………………………………………15

Invasion of Privacy…………………………………………………18

Medical Malpractice…………………………………………………19

Mootness……………………………………………………………21

Jurisdiction………………………………………………….…..23

Conclusion………………………………………………………….…..25

Certificate of Compliance…………………………………….…..27

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                    <u>PAGE</u>

Afkhami v. Carnival Corp., 305 F. Supp. 2d 1308 (S.D. Fla. 2004)……..10

Cipollone v. Liggett Group, Inc., 505 US 504 - Supreme Court 1992….16,17

Daimler AG v. Bauman (2014) 571 U.S. S.Ct. …………………………..24

DeGirolamo v. Alitalia-Linee Aeree Italiane, 159 F. Supp. 2d 764 –

Dist. Court, D. New Jersey 2001………………………………..…..13

Gibson v. City of Chicago, 910 F. 2d 1510 - Court of Appeals,

7th Circuit 1990………………………………………….…………..6

Keene v. Wiggins, 69 Cal. App. 3d 308 - Cal: Court of Appeal,

4th Appellate Dist., 1st Div. 1977………………………………..……20

Loyalty Conv. Systems Corp v. American Airlines, Inc. (E.D. Tex. 2014)..24

Lugar v. Edmondson Oil Co., 457 US 922 - Supreme Court 1982……….9

Parver v. JetBlue Airlines Corp. 649 Fed. Appx. 539, 543 (9th Cir. 2016)…7

United States v. Concentrated Phosphate Export Assn., 393

U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968)………………..……21

UZUEGBUNAM et al v. PRECZEWSKI  et al - U.S. S Ct. 03/8/2021…..23

Wagner v. Metro. Nashville Airport Auth., 772 F.2d 227 (6th Cir. 1985)…..9

Wall v. Transportation Sec. Admin., (D.C. Cir. Feb. 9, 2023)……………22

West v. Atkins 487 U.S.42,48 (1988)……………………………………7

<u>STATUTES</u>

42 USC 1983……………………………………………………………7

THE CLAIMS OF 1985 AND 1986…………………………………….11

AIR CARRIER ACCESS ACT ("ACAA") ……………………………….11

The Rehabilitation Act………………………………………………..13

UNRUH - CAL. CIV. CODE §51(b)…………………………………..15,16

L.R. 5-4.3.4(a)(2)(i),……………………………………………………25

1    Plaintiffs hereby respond in opposition to the Defendant Medaire, Inc.'s

2  ("Medaire") Motion to Dismiss (Doc. 196). An overwhelming majority of the

3  issues presented by Defendant were addressed exhaustively in the Amended

4  Complaint itself.  Plaintiffs understand that the arguments, explanations,

5  clarifications, and caselaw provided in the Amended Complaint, does not need to

6  be repeated here. Plaintiffs will use this opportunity to respond exclusively to the

7  specific arguments within the Motion that may not have been addressed fully.

8    Plaintiffs are not able to attend any oral argument in person on the above

9  date.  Plaintiffs do not request oral argument. If the Court requires their attendance

10  on December 8, 2023, and/or on an alternative date, Plaintiffs ask the Court to

11  allow them to attend through Zoom.

12

13  **MOTION IS UNTIMELY, AS PER COURT ORDER**

14    On September 12, 2023, this Court ordered (Doc. # 189) that Plaintiffs

15  should file their Amended Complaint by October 13, 2023, and that "Defendants

16  must either file any motions to dismiss or responsive pleadings within 21 days after

17  the amended pleading is filed."

18    On October 10, 2023, Plaintiffs filed their Amended Complaint, as instructed

19  by the Court. (as seen below).  Plaintiffs worked very hard to get the Amended

20  Complaint ready in time or earlier.

Document 190   Filed 10/10/23   Page 1 of 492   Page ID #:3770



1

2      Based on that filing, Defendants were required by the Court Order to file any

3      responses or dispositive motions by October 31, 2023. This Defendant asked for an

4      extension from Plaintiffs, and Plaintiffs denied that request. Defendant did not file

5      any motion for leave from the Court, and did not get any such leave from the

6      Court.  The Defendant has unlimited resources, and should have been able to file

7      their motion on time. If there was a problem, they know how to file a motion for an

8      extension.  They chose not to.

9      This Defendant filed their Motion to Dismiss on November 6th, which was

10     about a week too late.

11     Therefore, this Court should DENY this Motion to Dismiss in its entirety as

12     untimely, and allow for the Rule 26(f) Conference to begin immediately.

13     Defendant should be barred from filing any further dispositive motions for at least

14     six months, until Plaintiffs can receive the bulk of the discovery that they will

15     request.

The legal system has very specific rules. Attorneys are trained to adhere to those rules.  Plaintiffs, who are filing pro se, are constantly struggling to learn the rules, to understand them, and to comply with them. It is understood that if Plaintiffs were to file their Amended Complaint a day late, the Court would have barred its filing and dismissed the case.  The Defendants should not be treated any differently.  Plaintiffs ask this Court to DENY the Defendant's Motion to Dismiss in its entirety.

## LEGAL STANDARD

"The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." Triad Assocs., Inc. v. Chicago Hous. Authority, 892 F.2d 583, 586 (7th Cir.1989). In reviewing a motion to dismiss under Rule 12(b)(6), "we must 1521*1521 accept as true all the plaintiff's well-pleaded factual allegations and the inferences reasonably drawn from them. We shall affirm the dismissal only if the plaintiff has failed to allege any set of facts upon which relief may be granted." Yeksigian v. Nappi, 900 F.2d 101, 102 (7th Cir.1990)." Gibson v. City of Chicago, 910 F. 2d 1510 - Court of Appeals, 7th Circuit 1990.

## 42 USC 1983: CIVIL RIGHTS UNDER THE COLOR OF LAW

Defendant quotes West v. Atkins 487 U.S.42,48 (1988) (on Page 6). The actual decision and rationale of the Supreme Court in that case, actually supports Plaintiffs' assertion that 1983 does apply here. Defendants quoted a vague statement, but the case itself proves otherwise.  The Court quotes, "Institutional physicians assume an obligation to the mission that the State, through the institution, attempts to achieve." Polk County, 454 U.S. at 454 U. S. 320." Id. The Court's decision is that the Physician would be liable to 1983 in that case. It is not very different from here, where the airlines, the federal agencies, and the local and State agencies all worked in unison to enforce this mandate.

On the same page, Defendant quoted Parver v. JetBlue Airlines Corp. 649 Fed. Appx. 539, 543 (9th Cir. 2016). Medaire' s assertion was that in that case the Circuit Court determined that "the fact that the airlines alerted the police" was insufficient to be liable for a 1983 violation. This was from an unpublished case, which is NOT a binding authority. In any case, this caselaw actually proves the contrary.  The only reason the airlines were not liable for 1983, was the following: "Here, "Blue Watch" sent an alert to the police and the flight crew pointed Parver out when the officers boarded the plane, which, without more, is insufficient to create a triable question on joint state action." id. The idea here is that the airline personnel had little to no involvement in policing the requirements. In this case

1    Medaire was the central mask police supervisor, that all the staff of their airline

2    customers relied upon for their actions.

3          In our case, as the facts describe, the police came to the plane. The airline

4    personnel are charged with enforcing this mandate, which is illegal and

5    discriminatory when enforcing it against people with disabilities, such as these

6    Plaintiffs. Yes, the federal government is also involved, but ultimately it is the

7    airline staff that enforces these laws and they work in unison with State and local

8    law enforcement.  The fact that there is a federal law involved doesn't negate the

9    state law participation, and primary responsibility. The airlines created mask

10   mandates long before the federal government followed suit.  The airline could not

11   have been enforcing any federal law, because Plaintiffs were exempt from that.

12         They were enforcing policy in direct conjunction with the state law

13   enforcement on the ground. They would claim that we are causing problems on the

14   flight, not listening to a flight attendant, creating safety issues, and the like. They

15   would not ever have charged Plaintiffs with a federal violation of the FTMM,

16   because Plaintiffs were exempt.

17         The Supreme Court held the following:

18         "…we held that the private party's joint participation with a state official in a

19   conspiracy to discriminate would constitute both "state action essential to show a

20   direct violation of petitioner's Fourteenth Amendment equal protection rights" and

8

1   action " `under color' of law for purposes of the statute." Lugar v. Edmondson Oil

2   Co., 457 US 922 - Supreme Court 1982.

3        Medaire most certainly violated 1983, and should be held accountable.

4        The Defendant tried to argue that its involvement doesn't reach the level of a

5   1983 color of law connection, by quoting Wagner v. Metro. Nashville Airport

6   Auth., 772 F.2d 227 (6th Cir. 1985). Which is as Defendant writes, "an air carrier,

7   which leases airport space from state entity and was required to obtain approval of

8   its security plan from the FAA, did not act under color of state law."

9        There is little comparison between that case and ours.  In our case, the

10  Defendant Medaire is the active control center behind all the mask enforcements.

11  They work hand in hand with the airline staff.  The airlines told Plaintiffs that they

12  rely completely on the decisions of their medical advisors.

13       That case, Wagner v. Metro. Nashville Airport, is a case where the

14  connection between the Defendant and the Law Enforcement was vague and the

15  Court could not honestly make such a connection. The Judges wrote the following:

16       "Assuming, arguendo, as plaintiffs erroneously alleged, that MNAA had the

17       authority to regulate and approve or disapprove the airline passenger and

18       aircraft security program, such a tenuous connection would still not rise to

19       the level of significant state involvement. In Jackson v. Metropolitan Edison

20       Company, wherein a customer alleged a § 1983 violation against a privately

1  owned and operated utility company for termination of electrical service, the

2  Supreme Court concluded that there was a lack of state action despite

3  extensive state regulation of the utility." Wagner v. Metropolitan Nashville

4  Airport Auth, 772 F.2d 227, 230 (6th Cir. 1985).

5

6  If anything, that caselaw, if one reads it in its entirety, will support Plaintiffs'

7  argument that in our case, the connection is significant enough to rise to a 1983

8  violation.

9  Defendant also quoted Afkhami v. Carnival Corp., 305 F. Supp. 2d 1308

10  (S.D. Fla. 2004), which it quotes that it is saying that "regulations of cruise

11  shipping industry did not transform a cruise ship company into a state actor even if

12  it used government-owned ports."

13  Again, this is not even a Circuit Court, let alone from this Circuit.  It is not

14  binding and not very relevant.  But, let's have a look at that decision by the district

15  judge. In that case, again, if one reads it thoroughly, it supports Plaintiffs'

16  arguments. Here is an example:

17  "Plaintiffs do not allege any causal connection between the actions of a

18  Customs agent, or any other government official, and Carnival's actions in

19  removing Plaintiffs from the *Victory* and the *Imagination* on January 6 and 7,

20  2002, respectively, which are the only actions challenged by the Plaintiffs." id

1        That explanation is very different than the way the Defendant tried to

2    portray it.

3        The Defendant can bring caselaw after caselaw, and can go back to the

4    1800's, but obviously Medaire could not find relatively recent caselaw or

5    anything that actually supports its argument.

6

7    **THE CLAIMS OF 1985 AND 1986** were argued thoroughly in our Amended

8    Complaint.

9    **AIR CARRIER ACCESS ACT ("ACAA")**

10        This was also was argued thoroughly in our Amended Complaint. Plaintiffs

11    will just add one point. The fact that Medaire is a contractor working for and

12    within the airline, does not take away their responsibility to the relevant laws for

13    airlines.  Imagine that; an airline can bypass all its laws and requirements by hiring

14    subcontractors to do its dirty work. That is not how this works.

15        The Department of Transportation on their website states the following:[1]

16        "Are airline contractors subject to the same obligations as airlines?

17        Airlines must make sure their contractors that provide services to the public

18        meet regulatory obligations."

---

[1] https://www.transportation.gov/airconsumer/disabilitybillofrights

1    If Medaire would like to argue that they're not under the umbrella of ACAA

2    laws, then they're certainly not preempted or protected by the question of private

3    right of action for ACAA. This means that they're responsible for all the other

4    counts against them.

5    ACAA itself says the following:

6    14 C.F.R. § 382.15  "Do carriers have to make sure that contractors comply

7    with the requirements of this Part?

8    (a) As a carrier, you must make sure that your contractors that provide

9    services to the public (including airports where applicable) meet the

10   requirements of this Part that would apply to you if you provided the

11   services yourself.

12   (b) As a carrier, you must include an assurance of compliance with this Part

13   in your contracts with any contractors that provide services to the public that

14   are subject to the requirements of this Part.  Noncompliance with this

15   assurance is a material breach of the contract on the contractor's part.

16   (1) This assurance must commit the contractor to compliance with all

17   applicable provisions of this Part in activities performed on behalf of the

18   carrier.

19   (2) The assurance must also commit the contractor to implementing

20   directives issued by your CROs under §§382.151 – 153."

1       This District Court Judge articulated this point very clearly.  He wrote the

2   following:

3       "If a contractor to the regulated party (e.g., a private bus company that

4   provides bus service on certain routes, a security screening contractor for an

5   airline) performs functions which the regulated party would otherwise perform

6   with its own employees, and which affect handicapped persons, the contractor's

7   activities are subject to the same nondiscrimination requirements that would apply

8   if the regulated party's own employees performed them."  DeGirolamo v. Alitalia-

9   Linee Aeree Italiane, 159 F. Supp. 2d 764 - Dist. Court, D. New Jersey 2001.

10       It is very clear that the medical defendants were and are required to follow

11   the ACAA, if and when they operate on behalf of and/or for the airlines. The

12   ACAA counts should remain.

13

14   **THE REHABILITATION ACT ("RA")**

15       The RA was also argued thoroughly, yet Plaintiffs will respond to one point.

16   Defendant Medaire is claiming that the particular example of government funding

17   presented by Plaintiffs in their Amended Complaint is from a long time ago and not

18   the kind of funding that is included in the RA. Well, first of all, just like ACAA, the

19   RA is a requirement that contractors must also abide by.

1    Second, there are certainly many government funding contracts that are

2   more recent.  Plaintiffs grabbed the first one that showed up on google.  In

3   discovery, Defendants will be required to provide the rest of that information.  The

4   one we posted is a classic case for the RA. There's a similar, more recent one that

5   can be found quickly on google. This one is currently active. It states the

6   following:[2]

7    "Awardee: Medaire

8   Government Description

9   THE CONTRACTOR SHALL PROVIDE IMMEDIATE ACCESS TO

10   MEDICAL ADVICE, REFURBISH OR REPAIR MEDICAL EQUIPMENT

11   SUCH AS MEDICAL KITS AND DEFIBRILLATORS. THESE SERVICES

12   ARE IN SUPPORT OF FLIGHT PROGRAM OPERATIONS

13   WORLDWIDE FLIGHT INSPECTION MISSION.

14   Awarding Agency

15   Acquisitions & Business Services Logo Acquisitions & Business Services

16   [DOT - FAA]

17   Funding Agency

18   FAA Headquarters Logo FAA Headquarters (HQ) [DOT - FAA]

19   NAICS

---

[2] https://www.highergov.com/contract/6973GH19D00015-6973GH21F01350/

1  339113 - Surgical Appliance and Supplies Manufacturing

2  PSC

3  Q702 - Technical Medical Support

4  Place of Performance

5  Phoenix, AZ 85016 United States

6  Pricing: Fixed Price

7  Amendment Since initial award the Potential Award value has increased 3%

8  from $179,085 to $184,117."

9  Plaintiffs allege in their Amended Complaint that there are many more

10 government contracts and fundings.

11

**<u>UNRUH</u>**

13  The UNRUH was also argued thoroughly, yet Plaintiffs will respond to a

14 few points. Medaire claims it does not apply because some Plaintiffs do not live in

15 California, and the airlines are not based in California. We showed in our Amended

16 Complaint that all Plaintiffs flew in and out of California, and had incidents and

17 serious violations in California.  These were at the locations where these

18 Defendants conduct significant business. Any discrimination in the State of

19 California is subject to UNRUH.

1    UNRUH states: "All persons within the jurisdiction of this state are free and

2    equal, and no matter what their … disability, medical condition … are entitled to

3    the full and equal accommodations, advantages, facilities, privileges, or services in

4    all business establishments of every kind whatsoever." CAL. CIV. CODE §51(b).

5    The facts in the Amended Complaint describe significant California

6    discriminations. See paragraph 1125 for a good example. Unruh absolutely does

7    apply as we explained here and in the Amended Complaint.  If federal law

8    preempts it, UNRUH would not exist at all.  Every UNRUH law has a federal law

9    behind it.  UNRUH and all state disability laws are specifically an enhancement to

10   federal law and enforcement.

11   The preemption of the ACAA and the FA cannot be argued and

12   simultaneously argue that Medaire is not subjected to those laws. If they're not

13   subjected to those laws, how can they preempt other laws.

14   Here is a clarification of the preemption concept by the Supreme Court of

15   the United States.

16   "Article VI of the Constitution provides that the laws of the United States

17   "shall be the supreme Law of the Land;. .. any Thing in the Constitution or

18   Laws of any state to the Contrary notwithstanding." Art. VI, cl. 2. Thus,

19   since our decision in McCulloch v. Maryland, 4 Wheat. 316, 427 (1819), it

20   has been settled that state law that conflicts with federal law is "without

1   effect." Maryland v. Louisiana, 451 U. S. 725, 746 (1981). Consideration of

2   issues arising under the Supremacy Clause "start[s] with the assumption that

3   the historic police powers of the States [are] not to be superseded by . . .

4   Federal Act unless that [is] the clear and manifest purpose of Congress."

5   Rice v. Santa Fe Elevator Corp., 331 U. S. 218, 230 (1947). Accordingly,

6   "`[t]he purpose of Congress is the ultimate touchstone' " of pre-emption

7   analysis. Malone v. White Motor Corp., 435 U. S. 497, 504 (1978) (quoting

8   Retail Clerks v. Schermerhorn, 375 U. S. 96, 103 (1963)).

9   Congress' intent may be "explicitly stated in the statute's language or

10   implicitly contained in its structure and purpose." Jones v. Rath Packing Co.,

11   430 U. S. 519, 525 (1977). In the absence of an express congressional

12   command, state law is pre-empted if that law actually conflicts with federal

13   law, see Pacific Gas & Elec. Co. v. State Energy Resources Conservation

14   and Development Comm'n, 461 U. S. 190, 204 (1983), or if federal law so

15   thoroughly occupies a legislative field "`as to make reasonable the inference

16   that Congress left no room for the States to supplement it.' " Fidelity Fed.

17   Sav. & Loan Assn. v. De la Cuesta, 458 U. S. 141, 153 (1982) (quoting Rice

18   v. Santa Fe Elevator Corp., 331 U. S., at 230)." Cipollone v. Liggett Group,

19   Inc., 505 US 504 - Supreme Court 1992.

20   There most certainly is no preemption without a real conflict.

1    As described thoroughly in the Amended Complaint, Medaire was directly

2    involved and was directing the discriminations. These discriminations also

3    happened in the State of California, as described at length in the Amended

4    Complaint, and as the evidence will show at trial. Medaire should not be granted a

5    dismissal of this count.

6

7    **<u>INVASION OF PRIVACY</u>**

8    This was argued thoroughly in the Amended Complaint. While it is possible

9    that the airlines and their contractors could have asked some basic questions, but

10   the rigmarole that Plaintiffs were put through and the information that was

11   required, was extremely invasive.  It was often done in public. Questions were

12   asked and documentation demanded that the person asking had no clue and was not

13   trained in any medical or psychological field.  They shamed us in public and

14   metaphorically required us to walk around naked.  This is absolutely unacceptable

15   and a violation of the Invasion of Privacy Laws.

16   Medaire was in charge of the policies of their airline customers.  They

17   directed the enforcements, and dictated the policies. As Plaintiffs wrote in the

18   Amended Complaint, the airlines and Medaire have this little game.  The airline

19   says Medaire decides, and passes the blame to them.  Medaire says, we are just a

medical advisory, we are not the airline. They're both right, as they're both

responsible.


## **MEDICAL MALPRACTICE**

Plaintiffs were forced by the airlines, to be evaluated by the medical

advisors, in order to determine their disability status, and if they can or cannot

wear a mask.  They refused to rely on the Plaintiffs' own doctors' letters.  They

chose to have Plaintiffs medical conditions reviewed and determined by these

agencies, and/or their own employees.

While Plaintiffs did not choose this treatment, Defendants, Medaire & Stat-

MD did choose and contract to provide medical services to passengers with

disabilities, in order to determine if they should or should not fly without a mask.

Whether they showed up in person, or just gathered some information by

phone and/or from the airline staff, in essence they were conducting a medical

review on behalf of the airline and on behalf of the Plaintiffs.  They had a duty to

be honest, fair, and protect the patients.  They breached that duty in various ways,

as described in the Amended Complaint.

Now, in cases where the medical examination was just to report to an

employer about the health of a prospective employee, and his/her ability to do the

job, that is not the same as here.  There was no medical decision provided to the

1   patient/employee.  Here, a medical decision was made, and the patient was forced

2   to wear a mask, in contrast to his/her own medical doctors' opinions, and

3   ultimately causing severe medical and psychological injuries.

4        In Keene, where the source of this idea that Defendants bring to say this is

5   not malpractice, the actual case is very different. The Defendants are distorting the

6   case and they're distorting the reasons why the Court held there that the Doctor

7   was not liable.  The case reads as follows:

8        "In his motion to strike, Dr. Wiggins asserts he was conducting an

9   examination solely for the purpose of rating the injury to settle the claim and not

10  for care or treatment; there is no physician-patient relationship and hence no duty

11  was owed." Keene v. Wiggins, 69 Cal. App. 3d 308 - Cal: Court of Appeal, 4th

12  Appellate Dist., 1st Div. 1977.

13       There is no comparison to our case here. Our case would be more similar to

14  a child who goes to the camp doctor and gets pills, and then has some injuries

15  based on that. Although the doctor does work for the camp, and is on the camp's

16  payroll, he/she still has a duty to the child.  In our case, there was a medical

17  determination, and a recommendation for the patient. They have a duty to the

18  Plaintiffs, and they breached that duty.

19

20

1  **<u>MOOTNESS</u>**

2      This was also addressed thoroughly in the Amended Complaint. Even till

3  this day there are constant new Covid rules, restrictions, and actions taken by the

4  CDC, private companies, and various government agencies.

5      The CDC just put a new expansive testing project for multiple diseases at

6  airports.[3] It was in the news just a few days ago.

7      Mootness does not apply for multiple reasons. Now, suddenly there are

8  companies, organizations, hospitals, schools and the like that are reinstating mask

9  policies.[4]

10      In order to be considered moot it has to pass the following test:

11      ""<u>A case might become moot if subsequent events made it absolutely clear

12  that the allegedly wrongful behavior could not reasonably be expected to recur.</u>"

13  United States v. Concentrated Phosphate Export Assn., 393 U.S. 199, 203, 89 S.Ct.

14  361, 21 L.Ed.2d 344 (1968).

15      If tomorrow morning, there is an increase in the Covid deaths and

16  hospitalizations, it is likely that they will try to reinstate mask mandates. If a new

17  pandemic showed up, it is likely that they will try to reinstate mask mandates. The

18  CDC, NIH, Anthony Fauci, and even Bill Gates have been predicting another

---

[3] https://www.cdc.gov/media/releases/2023/s1107-testing-respiratory-viruses.html
[4] https://www.newsweek.com/mask-mandates-return-list-places-restrictions-1823069

1    pandemic in the very near future. I would listen to them, because they predicted the

2    last pandemic.[5]

3         The DC Circuit writes the following in a challenge to the TSA mask

4    mandate: "Because there is a more-than-speculative chance that the challenged

5    conduct will recur, these cases are not moot." Wall v. Transportation Sec. Admin.,

6    No. 21-1220, 2023 WL 1830810, at *2 (D.C. Cir. Feb. 9, 2023).

7         This Court reviewed the arguments with respect to mootness from all the

8    parties, and rightfully found that mootness did not apply here. We shouldn't be

9    relitigating that issue again. This Court Order (Doc. 177) stated the following:

10        "The Court ordered the Parties to submit supplemental briefing regarding

11        potential mootness of Plaintiffs' claims.  After reviewing the Parties'

12        submissions, the Court finds none of Plaintiffs' claims are moot at this time."

13        Besides all that, the fact that there are injuries alleged and damages claimed,

14   it is important to litigate all the discrimination claims in order to determine if there

15   was discrimination, and only then damages can be applied to that.  It is still

16   extremely relevant. Even with respect to Federal Defendants it is thus relevant. The

17   point of mootness stopping a lawsuit, is the idea that there is nothing the court can

18   do to bring redress or rectify the wrong. The bar isn't very high.  The Supreme

---

[5] https://centerforhealthsecurity.org/our-work/tabletop-exercises/event-201-pandemic-tabletop-exercise

1    Court recently held that even just nominal damages are sufficient redress to

2    warrant a litigation.

3          "For purposes of this appeal, it is undisputed that Uzuegbunam experienced

4    a completed violation of his constitutional rights when respondents enforced their

5    speech policies against him. Because "every violation [of a right] imports

6    damage," Webb, 29 F. Cas., at 509, nominal damages can redress Uzuegbunam's

7    injury even if he cannot or chooses not to quantify that harm in economic terms."

8    UZUEGBUNAM et al v. PRECZEWSKI  et al - U.S. Supreme Court March 8,

9    2021.

10         Let us put the MOOTNESS claims behind us and move forward on this

11   litigation.

12

13   **<u>JURISDICTION</u>**

14         Defendant is trying to argue that there is no jurisdiction over them in this

15   Court. Being that Medaire actively operates significantly in the State of California,

16   they are under the California long-arm statute and the Court has jurisdiction.

17         <u>Specific Personal Jurisdiction</u>: "A more limited form of submission to a

18   state's authority, referred to as "specific jurisdiction," applies only in cases of

19   disputes that "arise out of or are connected with the activities within the state." Int'l

1    Shoe, 326 U.S. at 319, 66 S.Ct. 154."  Loyalty Conversion Systems Corporation v.

2    American Airlines, Inc. (E.D. Tex. 2014) 66 F.Supp.3d 813, 819.

3         This Plaintiffs wanted to fly to and from California, and to and from many

4    other states.  These Defendants all conspired to deny them the ability to fly, and/or

5    deny them the ability to utilize the airlines and transportation options in the same

6    manner or similar to the non-disabled in violation of the statutes listed herein.

7    Plaintiffs had been planning specific trips to California, including some that they

8    successfully took. This gives this Court specific jurisdiction over this lawsuit.

9         Every airline listed as a defendant, have flights directly out of California.

10        Personal Jurisdiction because of the California long-arm statute.

11        "Federal courts ordinarily follow state law in determining the bounds of their

12        jurisdiction over persons. See Fed. Rule Civ. Proc. 4(k)(1)(A) (service of

13        process is effective to establish personal jurisdiction over a defendant "who

14        is subject to the jurisdiction of a court of general jurisdiction in the state

15        where the district court is located")." Daimler AG v. Bauman (2014) 571

16        U.S. 117, 125 [134 S.Ct. 746, 753, 187 L.Ed.2d 624].

17

18

19

20

# **<u>CONCLUSION</u>**

A Motion to Dismiss should not be used to take away a person's right to due process; the right to discovery and a jury trial. Many of these issues may need to be litigated, but that is what this litigation is for.  Let's move forward.

This is a complicated case in many ways. There are no clear facts or laws that should be sufficient to dismiss any of these counts. Let us stop the games and start discovery. Plaintiffs should be entitled to that.

WHEREFORE Plaintiffs ask this Court to DENY Defendants' Motion to Dismiss in its entirety and to schedule a Conference to begin discovery.


Pursuant to L.R. 5-4.3.4(a)(2)(i), the filer of this document hereby attests that all other signatories listed below, and on whose behalf the filing is submitted, concur in the filing's content and have authorized this filing.


Respectfully submitted this 16th day of November, 2023.


*s/Cindy Russo*

Cindy Russo, lead plaintiff
22485 Breakwater Way
Santa Clarita, CA 91350
Telephone: 908-797-8066
Email: cjrz123@gmail.com

*s/Yvonne Marcus*

(Signed by his wife, Yvonne Marcus as Administrator)
The Estate of Uri Marcus, plaintiff
P.O. Box 126
Ojai, CA 93024
Telephone: 909-833-0065
E-Mail: adi@ntcf.org

*s/Yvonne Marcus*

Yvonne Marcus, plaintiff
P.O. Box 126
Ojai, CA 93024
Telephone: 909-833-0065
E-Mail: adi@ntcf.org

*s/Avrohom Gordon*

Avrohom Gordon, plaintiff
2251 State Route 222
New Richmond, OH 45157
Telephone: 513-734-1770
E-Mail gordon.avrohom@gmail.com

*s/Devorah Gordon*

Devorah Gordon, plaintiff
2251 State Route 222
New Richmond, OH 45157
Telephone: 513-734-1770
Email: devorahlgordon@gmail.com

## CERTIFICATE OF COMPLIANCE

The undersigned, Cindy Russo, lead Plaintiff, hereby certifies that this brief

contains 4,391 words, which complies with the word limit of L.R. 11-6.1.

Date: November 16, 2023

*s/ Cindy Russo*

Cindy Russo, lead plaintiff