Cindy Russo (Pro Se)
cjrz123@gmail.com
22485 Breakwater Way
Santa Clarita, CA 91350
Telephone: 908-797-8066
Lead Plaintiff



**F I L E D**
CLERK, U.S. DISTRICT COURT

11/16/23

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ CS _____ DEPUTY

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **URI MARCUS** et al,<br>Plaintiffs<br><br>v.<br><br>**CENTERS FOR DISEASE CONTROL & PREVENTION**, et al<br>Defendants. | **Case No.: 22-cv-02383-SSS-AS**<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT STAT-MD'S MOTION TO DISMISS**<br><br>Hearing Date: December 8, 2023<br>Judge: Hon. Sunshine S. Sykes<br>Ct. Room: 2 |

The Estate of Uri Marcus, plaintiff
E-Mail: adi@ntcf.org
P.O. Box 126
Ojai, CA 93024
Telephone: 909-833-0065

Yvonne Marcus, plaintiff
E-Mail: adi@ntcf.org
P.O. Box 126
Ojai, CA 93024
Telephone: 909-833-0065

Avrohom Gordon, plaintiff
E-Mail - gordon.avrohom@gmail.com
2251 State Route 222
New Richmond, OH 45157
Telephone: 513-734-1770

Devorah Gordon, plaintiff
Email: devorahlgordon@gmail.com
2251 State Route 222
New Richmond, OH 45157
Telephone: 513-734-1770

1

## **<u>TABLE OF CONTENTS</u>**

Table of Authorities…………………………………………………………..3

Motion is untimely, as per Court Order…………………………………4

Legal Standard…………………………………………………………..6

42 USC 1983: CIVIL RIGHTS UNDER THE COLOR OF LAW………7

THE CLAIMS OF 1985 AND 1986…………………………………....9

AIR CARRIER ACCESS ACT ("ACAA")…………………………….10

THE REHABILITATION ACT ("RA")……………………………..12

UNRUH……………………………………………………………14

Mootness…………………………………………………………21

Medical Malpractice……………………………………………….17

Jurisdiction………………………………………………….……18

Conclusion………………………………………………….……21

Certificate of Compliance……………………………………….…..24

# TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE**

Daimler AG v. Bauman (2014) 571 U.S. S.Ct. ……………………..…19,20

DeGirolamo v. Alitalia-Linee Aeree Italiane, 159 F. Supp. 2d 764 –

Dist. Court, D. New Jersey 2001…………………………………..…..12

Gibson v. City of Chicago, 910 F. 2d 1510 - Court of Appeals,

7th Circuit 1990……………………………………………..……………6

Keene v. Wiggins, 69 Cal. App. 3d 308 - Cal: Court of Appeal,

4th Appellate Dist., 1st Div. 1977…………………………………..…18

Lugar v. Edmondson Oil Co., 457 US 922 - Supreme Court 1982……….9

Parver v. JetBlue Airlines Corp. 649 Fed. Appx. 539, 543 (9th Cir. 2016)…7

Sever v. Alaska Pulp Corp., - Court of Appeals, 9th Circuit 1992…………9

United States v. Concentrated Phosphate Export Assn., 393

U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968)……………..……15

UZUEGBUNAM et al v. PRECZEWSKI  et al - U.S. S Ct. 03/8/2021…16,17

Wall v. Transportation Sec. Admin., (D.C. Cir. Feb. 9, 2023)……………15

West v. Atkins 487 U.S.42,48 (1988)……………………………………7

**STATUTES**

42 USC 1983……………………………………………………………7

THE CLAIMS OF 1985 AND 1986…………………………………….9

AIR CARRIER ACCESS ACT ("ACAA") …………………………10,11,12

The Rehabilitation Act………………………………………………12,13

UNRUH - CAL. CIV. CODE §51(b)…………………………………..14

L.R. 5-4.3.4(a)(2)(i),………………………………………………21

1       Plaintiffs hereby respond in opposition to the Defendant STAT-MD's Motion

2   to Dismiss (Doc. 198). An overwhelming majority of the issues presented by

3   Defendant were addressed exhaustively in the Amended Complaint itself.

4   Plaintiffs understand that the arguments, explanations, clarifications, and caselaw

5   provided in the Amended Complaint, does not need to be repeated here. Plaintiffs

6   will use this opportunity to respond exclusively to the specific arguments within

7   the Motion that may not have been addressed fully.

8       Plaintiffs are not able to attend any oral argument in person on the above

9   date.  Plaintiffs do not request oral argument. If the Court requires their attendance

10  on December 8, 2023, and/or on an alternative date, Plaintiffs ask the Court to

11  allow them to attend through Zoom.

12

13  **<u>MOTION IS UNTIMELY, AS PER COURT ORDER</u>**

14      On September 12, 2023, this Court ordered (Doc. # 189) that Plaintiffs

15  should file their Amended Complaint by October 13, 2023, and that "Defendants

16  must either file any motions to dismiss or responsive pleadings within 21 days after

17  the amended pleading is filed."

4

1       On October 10, 2023, Plaintiffs filed their Amended Complaint, as instructed

2    by the Court. (as seen below).  Plaintiffs worked very hard to get the Amended

3    Complaint ready in time or earlier.

Document 190   Filed 10/10/23   Page 1 of 492   Page ID #:3770



4

5       Based on that filing, Defendants were required by the Court Order to file any

6    responses or dispositive motions by October 31, 2023. This Defendant asked for an

7    extension from Plaintiffs, and Plaintiffs denied that request. Defendant did not file

8    any motion for leave from the Court, and did not get any such leave from the

9    Court.  The Defendant has unlimited resources, and should have been able to file

10    their motion on time. If there was a problem, they know how to file a motion for an

11    extension.  They chose not to.

12    <u>This Defendant filed their Motion to Dismiss on November 6th, which was</u>

13    <u>about a week too late.</u>

14       Therefore, this Court should DENY this Motion to Dismiss in its entirety as

15    untimely, and allow for the Rule 26(f) Conference to begin immediately.

16    Defendant should be barred from filing any further dispositive motions for at least

1  six months, until Plaintiffs can receive the bulk of the discovery that they will

2  request.

3      The legal system has very specific rules. Attorneys are trained to adhere to

4  those rules.  Plaintiffs, who are filing pro se, are constantly struggling to learn the

5  rules, to understand them, and to comply with them. It is understood that if

6  Plaintiffs were to file their Amended Complaint a day late, the Court would have

7  barred its filing and dismissed the case.  The Defendants should not be treated any

8  differently.  Plaintiffs ask this Court to DENY the Defendant's Motion to Dismiss

9  in its entirety.

10

11  **LEGAL STANDARD**

12      "The purpose of a motion to dismiss is to test the sufficiency of the

13  complaint, not to decide the merits." Triad Assocs., Inc. v. Chicago Hous.

14  Authority, 892 F.2d 583, 586 (7th Cir.1989). In reviewing a motion to

15  dismiss under Rule 12(b)(6), "we must 1521*1521 accept as true all the

16  plaintiff's well-pleaded factual allegations and the inferences reasonably

17  drawn from them. We shall affirm the dismissal only if the plaintiff has

18  failed to allege any set of facts upon which relief may be granted." Yeksigian

19  v. Nappi, 900 F.2d 101, 102 (7th Cir.1990)." Gibson v. City of Chicago, 910

20  F. 2d 1510 - Court of Appeals, 7th Circuit 1990.

1

## 42 USC 1983: CIVIL RIGHTS UNDER THE COLOR OF LAW

3      In the case of West v. Atkins 487 U.S.42,48 (1988), which was quoted by

4  the other medical Defendant, Medaire in support of their argument that they are not

5  liable for 1983. The actual decision and rationale of the Supreme Court in that

6  case, actually supports Plaintiffs' assertion that 1983 does apply here. Defendants

7  quoted a vague statement, but the case itself proves otherwise.  The Court quotes,

8  "Institutional physicians assume an obligation to the mission that the State, through

9  the institution, attempts to achieve." Polk County, 454 U.S. at 454 U. S. 320." The

10  Court's decision is that the Physician would be liable to 1983 in that case. It is not

11  very different from here, where the airlines, the federal agencies, and the local and

12  State agencies all worked in unison to enforce this mandate.

13      On the same page, both medical Defendants quoted Parver v. JetBlue

14  Airlines Corp. 649 Fed. Appx. 539, 543 (9th Cir. 2016). Their assertion was that in

15  that case the Circuit Court determined that "the fact that the airlines alerted the

16  police" was insufficient to be liable for a 1983 violation. This was from an

17  unpublished case, which is NOT a binding authority. In any case, this caselaw

18  actually proves the contrary.  The only reason the airlines were not liable for 1983,

19  was the following: "Here, "Blue Watch" sent an alert to the police and the flight

20  crew pointed Parver out when the officers boarded the plane, which, without more,

1    is insufficient to create a triable question on joint state action." The idea here is that

2    the airline personnel had little to no involvement in policing the requirements.

3          In our case, as the facts describe, the police came to the plane. The airline

4    personnel are charged with enforcing this mandate, which is illegal and

5    discriminatory when enforcing it against people with disabilities, such as these

6    Plaintiffs. Yes, the federal government is also involved, but ultimately it is the

7    airline staff that enforces these laws and they work in unison with State and local

8    law enforcement.  The fact that there is a federal law involved doesn't negate the

9    state law participation. The airlines created mask mandates long before the federal

10    government followed suit.  The airline could not have been enforcing any federal

11    law, because Plaintiffs were exempt from that.

12          They were enforcing policy in direct conjunction with the state law

13    enforcement on the ground. They would claim that we are causing problems on the

14    flight, not listening to a flight attendant, creating safety issues, and the like. They

15    would not ever have charged Plaintiffs with a federal violation of the FTMM,

16    because Plaintiffs were exempt.

17          The Supreme Court held the following:

18          "…we held that the private party's joint participation with a state official in a

19    conspiracy to discriminate would constitute both "state action essential to show a

20    direct violation of petitioner's Fourteenth Amendment equal protection rights" and

1  action " `under color' of law for purposes of the statute." Lugar v. Edmondson Oil

2  Co., 457 US 922 - Supreme Court 1982.

3        STAT-MD most certainly violated 1983 and should be held accountable.

4

5  **THE CLAIMS OF 1985 AND 1986**

6        Plaintiffs elaborated carefully in their Amended Complaint, addressing all

7  the arguments that Defendants were going to present with respect to these

8  conspiracy statutes.  We will just add a few points here.

9        See Sever v. Alaska Pulp, that Defendant quoted, where the Ninth Circuit

10  gives some clarification on 1985 & 1986 conspiracies.

11        "In the years since Griffith, courts have struggled to determine whether and

12        when § 1985(3) applies in contexts not involving race, and have produced

13        opinions that are all over the map. See Canlis v. San Joaquin Sheriff's Posse

14        Comitatus, 641 F.2d 711, 719 n. 15 (9th Cir.) (listing often-conflicting

15        federal cases from across the country), cert. denied, 454 U.S. 967, 102 S.Ct.

16        510, 70 L.Ed.2d 383 (1981). In the Ninth Circuit, the treatment of section

17        1985(3) claims is somewhat more consistent. Generally, our rule is that

18        section 1985(3) is extended beyond race "only when the class in question

19        can show that there has been a governmental determination that its members

20        `require and warrant special federal assistance in protecting their civil

9

1   rights." Sever v. Alaska Pulp Corp., 978 F. 2d 1529 - Court of Appeals, 9th

2   Circuit 1992.

3       The strangest argument was that the Amended Complaint failed to allege the

4   existence of a conspiracy."  Wow! multiple airlines, federal agencies, medical

5   advisory companies, and their employees all happen to be doing the exact same

6   discrimination, yet there was no conspiracy.  It is just coincidence. This was also

7   addressed in the Amended Complaint.

8       Being that 1985 (3) is valid, then the same goes for 1986.

9

10  **AIR CARRIER ACCESS ACT (ACAA")**

11      This was also was argued thoroughly in our Amended Complaint. Plaintiffs

12  will just add one point. The fact that STAT-MD is a contractor working for and

13  within the airline, does not take away their responsibility to the relevant laws for

14  airlines.  Imagine that; an airline can bypass all its laws and requirements by hiring

15  subcontractors to do its dirty work. That is not how this works.

16      The Department of Transportation on their website states the following:[1]

17      "Are airline contractors subject to the same obligations as airlines?

18      Airlines must make sure their contractors that provide services to the public

19      meet regulatory obligations."

---

[1] https://www.transportation.gov/airconsumer/disabilitybillofrights

1    If STAT-MD would like to argue that they're not under the umbrella of

2    ACAA laws, then they're certainly not preempted or protected by the question of

3    private right of action for ACAA. This means that they're responsible for all the

4    other counts against them.

5    ACAA itself says the following:

6    14 C.F.R. § 382.15  "Do carriers have to make sure that contractors comply

7        with the requirements of this Part?

8        (a) As a carrier, you must make sure that your contractors that provide

9        services to the public (including airports where applicable) meet the

10       requirements of this Part that would apply to you if you provided the

11       services yourself.

12       (b) As a carrier, you must include an assurance of compliance with this Part

13       in your contracts with any contractors that provide services to the public that

14       are subject to the requirements of this Part.  Noncompliance with this

15       assurance is a material breach of the contract on the contractor's part.

16       (1) This assurance must commit the contractor to compliance with all

17       applicable provisions of this Part in activities performed on behalf of the

18       carrier.

19       (2) The assurance must also commit the contractor to implementing

20       directives issued by your CROs under §§382.151 – 153."

1    This District Court Judge articulated this point very clearly.  He wrote the

2    following:

3        "If a contractor to the regulated party (e.g., a private bus company that

4        provides bus service on certain routes, a security screening contractor for an

5        airline) performs functions which the regulated party would otherwise

6        perform with its own employees, and which affect handicapped persons, the

7        contractor's activities are subject to the same nondiscrimination requirements

8        that would apply if the regulated party's own employees performed them."

9        DeGirolamo v. Alitalia-Linee Aeree Italiane, 159 F. Supp. 2d 764 - Dist.

10       Court, D. New Jersey 2001.

11       It is very clear that the medical defendants were and are required to follow

12   the ACAA, if and when they operate on behalf of and/or for the airlines. The

13   ACAA counts should remain.

14

15   **THE REHABILITATION ACT ("RA")**

16       The RA was also argued thoroughly, and STAT-MD is not claiming that they

17   DO NOT receive government funding, so that is helpful.  They are claiming

18   however, that they had no connection with Plaintiffs.  That was argued by Plaintiffs

19   in the Amended Complaint. Suffice it to say, that if STAT-MD is behind the denial

20   of any of the Plaintiffs from flying and/or if they were behind any of the other

1   discrimination actions described in the complaint, then they are in violation of the

2   RA.

3   　　　STAT-MD made a bizarre comparison to Ledford v. California. If you look

4   at that case, it was very clear why his allegations were denied.  The Court wrote

5   the following:

6   　　　"Here, Defendant asserts that Plaintiff's allegations at best demonstrate a

7   　　　failure "to provide adequate, timely, and competent medical treatment"

8   　　　rather than discrimination in violation of either the ADA or Section 504.

9   　　　(ECF No. 27 at 5.) This Court agrees. "The ADA prohibits discrimination

10  　　　because of disability, not inadequate treatment for disability." Simmons, 609

11  　　　F.3d at 1022." Ledford v. California, Dist. Court, ED California 2018.

12  　　　What on earth has this case got to do with actual discrimination DRIVEN

13  BY our Defendant.

14  　　　Then Defendant suggests that they do not provide benefits, but rather the

15  airline provides benefits. That's another strange argument.  They are contractors

16  for the airline, and they had a specific duty that the airline is required to perform.

17  They took over that job and are responsible for their discriminations in place of the

18  airline and/or together with the airline. They cannot hide behind the excuse that we

19  aren't the provider of benefits.  They're a company that is contracted by and works

1  in unison with the airlines. If in that capacity, they discriminate against the

2  disabled passenger, then they're certainly in violation of the RA.

3

4  **<u>UNRUH AND ALL STATE CLAIMS</u>**

5  Defendant did not make many clear arguments against the UNRUH claim.

6  Defendant argued that they're not subject to jurisdiction.  That is addressed

7  elsewhere in this response.

8  Then Defendant says, "how STAT MD can be charged with invasion of

9  privacy based on its limited role in the facts alleged…" The point being that STAT-

10  MD was not involved. There is enough evidence that they were involved.  This is

11  something that should be put before a jury after discovery.

12

13  **<u>MOOTNESS</u>**

14  This was also addressed thoroughly in the Amended Complaint. Even till

15  this day there are constant new Covid rules, restrictions, and actions taken by the

16  CDC, private companies, and various government agencies.

17  The CDC just put a new expansive testing project for multiple diseases at

18  airports.[2] It was in the news just a few days ago.

---

[2] https://www.cdc.gov/media/releases/2023/s1107-testing-respiratory-viruses.html

1    Mootness does not apply for multiple reasons. Now, suddenly there are

2    companies, organizations, hospitals, schools and the like that are reinstating mask

3    policies.[3]

4    In order to be considered moot it has to pass the following test:

5    ""A case might become moot if subsequent events made it absolutely clear

6    that the allegedly wrongful behavior could not reasonably be expected to recur."

7    United States v. Concentrated Phosphate Export Assn., 393 U.S. 199, 203, 89 S.Ct.

8    361, 21 L.Ed.2d 344 (1968).

9    If tomorrow morning, there is an increase in the Covid deaths and

10   hospitalizations, it is likely that they will try to reinstate mask mandates. If a new

11   pandemic showed up, it is likely that they will try to reinstate mask mandates. The

12   CDC, NIH, Anthony Fauci, and even Bill Gates have been predicting another

13   pandemic in the very near future. I would listen to them, because they predicted the

14   last pandemic.[4]

15   The DC Circuit writes the following in a challenge to the TSA mask

16   mandate: "Because there is a more-than-speculative chance that the challenged

17   conduct will recur, these cases are not moot." Wall v. Transportation Sec. Admin.,

18   No. 21-1220, 2023 WL 1830810, at *2 (D.C. Cir. Feb. 9, 2023).

---

[3] https://www.newsweek.com/mask-mandates-return-list-places-restrictions-1823069
[4] https://centerforhealthsecurity.org/our-work/tabletop-exercises/event-201-pandemic-tabletop-exercise

1    This Court reviewed the arguments with respect to mootness from all the

2    parties, and rightfully found that mootness did not apply here. We shouldn't be

3    relitigating that issue again. The Court Order (Doc. 177) stated the following:

4        "The Court ordered the Parties to submit supplemental briefing regarding

5        potential mootness of Plaintiffs' claims.  After reviewing the Parties'

6        submissions, the Court finds none of Plaintiffs' claims are moot at this time."

7        Besides all that, the fact that there are injuries alleged and damages claimed,

8    it is important to litigate all the discrimination claims in order to determine if there

9    was discrimination, and only then damages can be applied to that.  It is still

10   extremely relevant. Even with respect to Federal Defendants it is thus relevant. The

11   point of mootness stopping a lawsuit, is the idea that there is nothing the court can

12   do to bring redress or rectify the wrong. The bar isn't very high.  The Supreme

13   Court recently held that even just nominal damages are sufficient redress to

14   warrant a litigation.

15       "For purposes of this appeal, it is undisputed that Uzuegbunam experienced

16       a completed violation of his constitutional rights when respondents enforced

17       their speech policies against him. Because "every violation [of a right]

18       imports damage," Webb, 29 F. Cas., at 509, nominal damages can redress

19       Uzuegbunam's injury even if he cannot or chooses not to quantify that harm

1    in economic terms." UZUEGBUNAM et al v. PRECZEWSKI  et al - U.S.

2    Supreme Court March 8, 2021.

3          Let us put the MOOTNESS claims behind us and move forward on this

4    litigation.

5    **<u>MEDICAL MALPRACTICE</u>**

6          Plaintiffs were forced by the airlines, to be evaluated by the medical

7    advisors, in order to determine their disability status, and if they can or cannot

8    wear a mask.  They refused to rely on the Plaintiffs' own doctors' letters.  They

9    chose to have Plaintiffs medical conditions reviewed and determined by these

10   agencies, and/or their own employees.

11         While Plaintiffs did not choose this treatment, Defendants, Medaire & Stat-

12   MD did choose and contract to provide medical services to passengers with

13   disabilities, in order to determine if they should or should not fly without a mask.

14         Whether they showed up in person, or just gathered some information by

15   phone and/or from the airline staff, in essence they were conducting a medical

16   review on behalf of the airline <u>and on behalf of the Plaintiffs</u>.  They had a duty to

17   be honest, fair, and protect the patients.  They breached that duty in various ways,

18   as described in the Amended Complaint.

19         Now, in cases where the medical examination was just to report to an

20   employer about the health of a prospective employee, and his/her ability to do the

1    job, that is not the same as here.  There was no medical decision provided to the

2    patient/employee.  Here, a medical decision was made, and the patient was forced

3    to wear a mask, in contrast to his/her own medical doctors' opinions, and

4    ultimately causing severe medical and psychological injuries.

5        In Keene, where the source of this idea that Defendants bring to say this is

6    not malpractice, the actual case is very different. The Defendants are distorting the

7    case and they are distorting the reasons why the Court held there that the Doctor

8    was not liable.  The case reads as follows:

9        "In his motion to strike, Dr. Wiggins asserts he was conducting an

10   examination solely for the purpose of rating the injury to settle the claim and not

11   for care or treatment; there is no physician-patient relationship and hence no duty

12   was owed." Keene v. Wiggins, 69 Cal. App. 3d 308 - Cal: Court of Appeal, 4th

13   Appellate Dist., 1st Div. 1977.

14       There is no comparison to our case here. This would be more similar to a

15   child who goes to the camp doctor and gets pills, and then has some injuries based

16   on that. Although the doctor does work for the camp, and is on the camp's payroll,

17   he/she still has a duty to the child.  In our case, there was a medical determination,

18   and a recommendation for the patient. They have a duty to the Plaintiffs, and they

19   breached that duty.

20

1 **<u>JURISDICTION</u>**

2      Defendant is trying to argue that there is no jurisdiction over them in this

3 Court. However, being that STAT-MD actively operates significantly in the State of

4 California, they are under the California long-arm statute and this Court has

5 jurisdiction.  They do not only handle mask mandate issues.  They have emergency

6 personnel available at most of the large airports in California.  Their clients count

7 on them for all types of medical related situations.  They have significant activities

8 in the State of California and are therefore subject to California laws and are under

9 the long-arm statute of California.

10      This Plaintiffs wanted to fly to and from California, and to and from many

11 other states.  These Defendants conspired to deny them the ability to fly, and/or

12 deny them the ability to utilize the airlines and transportation options in the same

13 manner or similar to the non-disabled in violation of the statutes listed herein.

14 Plaintiffs had been planning specific trips to California, including some that they

15 successfully took. This gives this Court specific jurisdiction over this lawsuit.

16      <u>Personal Jurisdiction</u> because of the California long-arm statute.

17      "Federal courts ordinarily follow state law in determining the bounds of their

18      jurisdiction over persons. See Fed. Rule Civ. Proc. 4(k)(1)(A) (service of

19      process is effective to establish personal jurisdiction over a defendant "who

20      is subject to the jurisdiction of a court of general jurisdiction in the state

1   where the district court is located").” Daimler AG v. Bauman (2014) 571

2   U.S. 117, 125 [134 S.Ct. 746, 753, 187 L.Ed.2d 624].

3   The Ninth Circuit held the following:

4   “Where, as here, there is no applicable federal statute governing personal

5   jurisdiction, the district court applies the law of the state in which the district

6   court sits. See Fed.R.Civ.P. 4(k)(1)(A); Panavision Int'l, L.P. v. Toeppen, 141

7   F.3d 1316, 1320 (9th Cir.1998). Because California's long-arm jurisdictional

8   statute is coextensive 801*801 with federal due process requirements, the

9   jurisdictional analyses under state law and federal due process are the same.

10   See Panavision, 141 F.3d at 1320 (citing Cal.Civ.Proc.Code § 410.10). For a

11   court to exercise personal jurisdiction over a nonresident defendant, that

12   defendant must have at least "minimum contacts" with the relevant forum

13   such that the exercise of jurisdiction "does not offend traditional notions of

14   fair play and substantial justice." International Shoe Co. v. Washington, 326

15   U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotation marks

16   and citation omitted).” Schwarzenegger v. Fred Martin Motor Co., 374 F. 3d

17   797 - Court of Appeals, 9th Circuit 2004.

18

19   The Ninth Circuit continues, and says:

20   “**Application of the Calder Test**

1    With these cases in mind, we apply the Calder effects test to the present

2    dispute. The three-part test requires that the defendant have "(1) committed

3    an intentional act, (2) expressly aimed at the forum state, (3) causing harm

4    that the defendant knows is likely to be suffered in the forum state." Dole

5    Food, 303 F.3d at 1111. All three parts of the test must be satisfied." Id

6    All three points are applicable here. STAT-MD committed an intentional act

7    of discrimination, they knew that it was aimed at California, and they knew very

8    well that they were causing harm.

9    Defendant has many airline customers in California, and it is responsible for

10   all their medical issues. They are under this Court's long-arm.

11

## CONCLUSION

13   A Motion to Dismiss should not be used to take away a person's right to due

14   process; the right to discovery and a jury trial. Many of these issues may need to be

15   litigated, but that is what this litigation is for.  Let's move forward.

16   This is a complicated case in many ways. There are no clear facts or laws

17   that should be sufficient to dismiss any of these counts. Let us stop the games and

18   start discovery. Plaintiffs should be entitled to that.

19   WHEREFORE Plaintiffs ask this Court to DENY Defendants' Motion to

20   Dismiss in its entirety and to schedule a Conference to begin discovery.

1   Pursuant to L.R. 5-4.3.4(a)(2)(i), the filer of this document hereby attests that all

2   other signatories listed below, and on whose behalf the filing is submitted, concur

3   in the filing's content and have authorized this filing.

4

5   Respectfully submitted this 16th day of November, 2023.


*s/ Cindy Russo*

Cindy Russo, lead plaintiff
22485 Breakwater Way
Santa Clarita, CA 91350
Telephone: 908-797-8066
Email: cjrz123@gmail.com


*s/ Yvonne Marcus*

(Signed by his wife, Yvonne Marcus as Administrator)
The Estate of Uri Marcus, plaintiff
P.O. Box 126
Ojai, CA 93024
Telephone: 909-833-0065
E-Mail: adi@ntcf.org


*s/ Yvonne Marcus*

Yvonne Marcus, plaintiff
P.O. Box 126
Ojai, CA 93024
Telephone: 909-833-0065
E-Mail: adi@ntcf.org

*s/Avrohom Gordon*

Avrohom Gordon, plaintiff
2251 State Route 222
New Richmond, OH 45157
Telephone: 513-734-1770
E-Mail gordon.avrohom@gmail.com


*s/Devorah Gordon*

Devorah Gordon, plaintiff
2251 State Route 222
New Richmond, OH 45157
Telephone: 513-734-1770
Email: devorahlgordon@gmail.com

## **CERTIFICATE OF COMPLIANCE**

The undersigned, Cindy Russo, lead Plaintiff, hereby certifies that this brief

contains 3,784 words, which complies with the word limit of L.R. 11-6.1.

Date: November 16, 2023

*s/ Cindy Russo*

Cindy Russo, lead plaintiff