BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
C. SALVATORE D'ALESSIO, JR.
Director, Torts Branch
MARY HAMPTON MASON
Senior Trial Counsel, Torts Branch
JEREMY SCOTT BRUMBELOW
Senior Trial Attorney, Torts Branch
United States Department of Justice, Civil Division
P.O. Box 7146, Ben Franklin Station
Washington, D.C.  20044-7146
Tel. (202) 616-4330; Fax. (202) 616-4314
Email:  jeremy.brumbelow@usdoj.gov

*Counsel for Defendant Julie Carrigan
in Her Individual Capacity*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| URI MARCUS, *et al.*,<br><br>  Plaintiffs,<br><br>    v.<br><br>CENTERS FOR DISEASE CONTROL & PREVENTION, *et al.*,<br><br>  Defendants | Case No. 2:22-cv-02383-SSS-AS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANT JULIE CARRIGAN IN HER INDIVIDUAL CAPACITY TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>The Honorable Sunshine Suzanne Sykes<br>United States District Judge |

# TABLE OF CONTENTS

**ARGUMENT** ...................................................................................................1

**I.   COUNT 28** ................................................................................................2

    A.  Personal Jurisdiction .....................................................................2

    B.  Venue............................................................................................5

    C.  Subject-Matter Jurisdiction...........................................................6

    D.  No *Bivens* Remedy.......................................................................7

    E.  Qualified Immunity ......................................................................8

**II.  COUNTS 11-14** .........................................................................................14

**III. LITIGATION CONSEQUENCES OF MR. MARCUS'S DEATH** .18

**CONCLUSION** ..............................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Allstar Mktg. Grp. v. Your Store Online*,
  666 F. Supp. 2d 1109 (C.D. Cal. 2009) ............................................. 6

*A.M. v. Holmes*,
  830 F.3d 1123 (10th Cir. 2016) ........................................................15

*Americopters v. FAA*,
  441 F.3d 726 (9th Cir. 2006) ..........................................................6, 7

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) .......................................................................8, 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................passim

*Askins v. U.S. DHS*,
  899 F.3d 1035 (9th Cir. 2018) ........................................................... 3

*Ballentine v. Tucker*,
  28 F.4th 54 (9th Cir. 2022) ................................................................ 9

*Bartell v. Lohiser*,
  215 F.3d 550 (6th Cir. 2000) ............................................................17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................... 9

*Berkery v. Kaplan*,
  518 F. App'x 813 (11th Cir. 2013) ...................................................17

*Bey v. Accredited Home Lenders*,
  2019 WL 7212309 (E.D. Cal. July 15, 2019) ...................................19

*Bhandari v. Mehta*,
  2003 WL 22846224 (N.D. Cal. Nov. 25, 2003) ................................ 3

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
   403 U.S. 388 (1971) ................................................................... 1

*Brown v. Ferriter*,
   2009 WL 4827426 (D. Mont. Dec. 11, 2009) .................................... 11

*Buckley v. Alameida*,
   2012 WL 3704715 (E.D. Cal. Aug. 24, 2012) .................................... 15

*Chambers v. Herrera*,
   78 F.4th 1100 (9th Cir. 2023) ..................................................... 8

*Cohen v. United States*,
   640 F. Supp. 3d 324 (S.D.N.Y. 2022) ........................................... 7

*Correctional Servs. Corp. v. Malesko*,
   534 U.S. 61 (2001) .................................................................. 8

*D.C. v. Wesby*,
   583 U.S. 48 (2018) ................................................................ 12

*Daly-Murphy v. Winston*,
   837 F.2d 348 (9th Cir. 1987) .................................................... 17

*D'Amato v. Wis. Gas Co.*,
   760 F.2d 1474 (7th Cir. 1985) .................................................. 17

*Denney v. DEA*,
   508 F. Supp. 2d 815 (E.D. Cal. 2007) ......................................... 11

*Egbert v. Boule*,
   142 S. Ct. 1793 (2022) ............................................................ 8

*Emmons v. City of Escondido*,
   921 F.3d 1172 (9th Cir. 2019) .................................................. 11

*Enriquez-Perdomo v. Newman*,
   54 F.4th 855 (6th Cir. 2022) ..................................................... 8

*Estate of Masselli v. Silverman*,
   606 F. Supp. 341 (S.D.N.Y. 1985) ............................................. 18

*Fang v. Blinken*,
  2021 WL 4900372 (C.D. Cal. June 22, 2021) ...................................... 5

*Foster v. Skinner*,
  70 F.3d 1084 (9th Cir. 1995) ................................................................ 7

*Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*,
  280 F.3d 98 (2d Cir. 2001) ..................................................................17

*George v. Rehiel*,
  738 F.3d 562 (3d Cir. 2013) ................................................................13

*Gilmore v. Gonzales*,
  435 F.3d 1125 (9th Cir. 2006) ......................................................7, 16

*Gilmore v. McGann*,
  2023 WL 6141606 (3d Cir. Sept. 20, 2023) ...................................... 8

*Greene v. United States*,
  2022 WL 13638916 (6th Cir. Sept. 13, 2022) ................................... 8

*Grieveson v. Anderson*,
  538 F.3d 763 (7th Cir. 2008) ..............................................................15

*Hammler v. Alvarez*,
  2019 WL 422575 (S.D. Cal. Feb. 4, 2019) .................................10, 11

*Hansen v. Hansen*,
  114 Cal. App. 4th 618 (2003) ..............................................................19

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) .............................................................................. 8

*Hopson v. Alexander*,
  71 F.4th 692 (9th Cir. 2023) ...............................................................11

*Huskey v. City of San Jose*,
  204 F.3d 893 (9th Cir. 2000) ..............................................................11

*Ibrahim v. DHS*,
  538 F.3d 1250 (9th Cir. 2008) ............................................................. 5

*In re Schumacher*,

   2010 WL 11444287 (C.D. Cal. Jan. 15, 2010) ...................................................19

*Ivey v. Board of Regents*,

   673 F.2d 266 (9th Cir. 1982) ...........................................................................15

*Karim-Panahi v. LAPD*,

   839 F.2d 621 (9th Cir. 1988) ...........................................................................15

*Kenny v. Easley*,

   166 F. App'x 898 (9th Cir. 2006) ..................................................................17

*King v. County of Los Angeles*,

   885 F.3d 548 (9th Cir. 2018) ...........................................................................12

*Lane v. Peña*,

   518 U.S. 187 (1996) .........................................................................................17

*Latif v. Holder*,

   686 F.3d 1122 (9th Cir. 2012) .....................................................................6, 7

*LN Mgmt. v. JPMorgan Chase Bank*,

   957 F.3d 943 (9th Cir. 2020) ...........................................................................18

*Lobato v. Las Vegas MPD*,

   2023 WL 6620306 (9th Cir. Oct. 11, 2023) ..................................................17

*Lopes v. Vieira*,

   2010 WL 2011504 (E.D. Cal. May 18, 2010) ...............................................18

*Lozman v. City of Riviera Beach*,

   138 S. Ct. 1945 (2018) ................................................................................9-10

*Mace v. Skinner*,

   34 F.3d 854 (9th Cir. 1994) .............................................................................. 7

*Marcilis v. Township of Redford*,

   693 F.3d 589 (6th Cir. 2012) ...........................................................................15

*Mayeske v. Int'l Ass'n of Firefighters*,

    1989 WL 37154 (D.D.C. Mar. 30, 1989), *vacated on other grounds*, 905 F.2d

    1548 (D.C. Cir. 1990). ...................................................................................18

*Mays v. Smith*,

    70 F.4th 198 (4th Cir. 2023) ......................................................................... 8

*Moss v. USSS*,

    572 F.3d 962 (9th Cir. 2009) ........................................................................10

*Muir v. U.S. TSA*,

    2021 WL 231733 (C.D. Ill. Jan. 22, 2021), *aff'd on other grounds*, 2021 WL

    3780089 (7th Cir. Aug. 26, 2021); .................................................................14

*Mullenix v. Luna*,

    577 U.S. 7 (2015) ..........................................................................................11

*Myles v. United States*,

    2022 WL 4011172 (9th Cir. Sept. 2, 2022) ................................................... 8

*Nieves v. Bartlett*,

    139 S. Ct. 1715 (2019) .............................................................................9, 11

*Ojo v. Decker*,

    2023 WL 6053006 (2d Cir. Sept. 18, 2023) .................................................. 8

*Olmeda v. Babbits*,

    2008 WL 282122 (S.D.N.Y. Jan. 25, 2008) .................................................14

*Olsen v. Idaho State Bd. of Med.*,

    363 F.3d 916 (9th Cir. 2004) ........................................................................15

*Pearson v. Callahan*,

    555 U.S. 223 (2009) ..................................................................................9, 17

*Piedmont Label Co. v. Sun Garden Packing Co.*,

    598 F.2d 491 (9th Cir. 1979) ......................................................................... 5

*Pratt v. Rowland*,

    65 F.3d 802 (9th Cir. 1995) .....................................................................10, 11

*Reichle v. Howards*,
    566 U.S. 658 (2012) ................................................................13

*Reyn's Pasta Bella v. Visa USA*,
    442 F.3d 741 (9th Cir. 2006) ...................................................13

*Robbins v. Becker*,
    794 F.3d 988 (8th Cir. 2015) ...................................................15

*Saucier v. Katz*,
    533 U.S. 194 (2001) ........................................................... 11-12

*Security Point Holdings v. TSA*,
    769 F.3d 1184 (D.C. Cir. 2014) ................................................ 7

*Serris v. Chastaine*,
    2022 WL 715115 (E.D. Cal. Mar. 10, 2022) ......................... 16-17

*Simon v. Hartford Life*,
    546 F.3d 661 (9th Cir. 2008) ...................................................19

*Sumter v. Keith*,
    2021 WL 7287629 (S.D.N.Y. Oct. 25, 2021) ..............................14

*Swartz v. KPMG*,
    476 F.3d 756 (9th Cir. 2007) .................................................... 4

*Tanney v. Boles*,
    400 F. Supp. 2d 1027 (E.D. Mich. 2005) .............................. 17-18

*Taylor v. Babcock*,
    1992 WL 60464 (9th Cir. 1992) ...............................................15

*Tur v. FAA*,
    104 F.3d 290 (9th Cir. 1997) .................................................... 7

*USPS v. Gregory*,
    534 U.S. 1 (2001) ...................................................................10

*Vega v. United States*,
    724 F. App'x 536 (9th Cir. 2018) .............................................10

*Walden v. Fiore*,

   571 U.S. 277 (2014) .................................................................................3, 4

*Wearren v. Gofferman*,

   2021 WL 6496724 (C.D. Cal. Aug. 24, 2021) ...................................11

*Weil v. Inv./Indicators, Rsch. & Mgmt.*,

   647 F.2d 18 (9th Cir. 1981) ...............................................................19

*Wilhelm v. Cont'l Title Co.*,

   720 F.2d 1173 (10th Cir. 1983) .........................................................16

*Woodrum v. Woodward County*,

   866 F.2d 1121 (9th Cir. 1989) ...........................................................15

*Ziglar v. Abbasi*,

   582 U.S. 120 (2017) ...............................................................11, 17

**Statutes, Rules, Regulations, and Other Authorities**

28 U.S.C. § 1391(b)(2) .................................................................. 5-6

29 U.S.C. § 794(a) ....................................................................2, 16

42 U.S.C. § 1983.........................................................................2, 17

42 U.S.C. § 1985......................................................................... 2

42 U.S.C. § 1986.........................................................................2, 16

49 U.S.C. § 46110 ....................................................................... 6

Fed. R. Civ. P. 17......................................................................18

Fed. R. Civ. P. 25......................................................................19

Fed. R. Civ. P. 54(b) .................................................................. 3

78 FR 55274-01 (Sept. 10, 2013) ................................................12

14D Chas A. Wright, *et al*., Fed. Prac. & Proc. § 3807 (4th ed. 2013) ................. 6

6 Moore's Federal Practice § 25.15 (3d ed. 2023)................................19

TSA PreCheck Application Program Privacy Impact Assessment (Sept. 14, 2013),

   .....................................................................................12

https://www.tsa.gov/disqualifying-offenses-factors  ..............................................13

https://www.faa.gov/unruly .............................................................................14

https://www.faa.gov/newsroom/faa-fines-against-unruly-passengers-reach-

   1m?newsId=26440 .....................................................................................14

https://www.reuters.com/world/us/faa-refers-39-more-unruly-us-airline-

   passengers-fbi-2023-08-08/ .......................................................................14

In the original complaint filed in this *pro se* action, Defendant Julie Carrigan, in her individual capacity, was sued on one count by one plaintiff, Uri Marcus, in regard to the revocation by the Transportation Security Administration ("TSA") of his eligibility to participate in the TSA PreCheck® Application Program ("TSA PreCheck").  Dkt. 1 ¶¶ 889-90 (alleging in Count 19 that revocation was retaliatory in violation of First Amendment and seeking damages from Carrigan, personally, under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)).  In addition, Mr. Marcus—joined by his wife, Plaintiff Yvonne Marcus, and Plaintiffs Cindy Russo and Avrohom and Devorah Gordon—challenged the now-defunct orders of the Centers for Disease Control and Prevention ("CDC") that subjected airline passengers to masking and testing requirements during the height of the COVID-19 pandemic.  As to those orders, all five Plaintiffs asserted multiple claims against federal agencies and private airline-industry companies (but no such claim against Carrigan, as she was not alleged to have had—and, in fact, did not have—any involvement in the CDC orders' issuance or enforcement).  As to the sole claim against her, Carrigan sought dismissal on five grounds under Federal Rule of Civil Procedure 12(b).  In February 2023, this Court dismissed Carrigan without prejudice for lack of personal jurisdiction.

In October 2023, Plaintiffs filed their *pro se* First Amended Complaint, Dkt. 190 ("FAC"), which again names Carrigan as an individual-capacity defendant but fails to cure the personal-jurisdiction deficiencies and, in any event, states no plausible claim against her.  As it did before, this Court should dismiss Carrigan under Rule 12(b) as a matter of law.

## ARGUMENT

The FAC purports to re-assert, against Carrigan, Mr. Marcus's First Amendment *Bivens* claim challenging the TSA PreCheck revocation.  FAC ¶¶ 1349-62 (Count 28).  At present, however, Count 28 lacks a proper plaintiff

because Mr. Marcus died on August 6, 2023, and no plaintiff has yet been substituted for him under Federal Rule of Civil Procedure 25(a).  Dkt. 213 (statement noting his death).  Even were that deficiency overlooked or remedied, Count 28 should be dismissed on the same grounds that Carrigan raised in her previous motion.  Dkts. 133-1, 166.  Indeed, this Court already ruled that it lacks personal jurisdiction over Carrigan, Dkt. 177 at 14-15, 28 (order of Feb. 21, 2023), and she should be dismissed on that basis again because the FAC neither cures the jurisdictional deficiencies identified by the Court nor otherwise undercuts its prior analysis.  And like its precursor in the original complaint, Count 28 also should be dismissed for improper venue, lack of subject-matter jurisdiction, lack of an available *Bivens* remedy, and on the basis of qualified immunity.

Rather than addressing any of these deficiencies, Plaintiffs appear in the FAC to have *expanded* the matters in which Carrigan is named personally by including her in four counts concerning the CDC orders that are asserted against "All Defendants" but that describe no personal involvement by Carrigan (whether in the orders' issuance; their enforcement by TSA or any government agency, airline, or other entity; or their application to any Plaintiff).  FAC ¶¶ 828-41 (Count 11, 42 U.S.C. § 1983); *id.* ¶¶ 842-91 (Count 12, 42 U.S.C. § 1985); *id.* ¶¶ 892-908 (Count 13, 42 U.S.C. § 1986); *id.* ¶¶ 909-35 (Count 14, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("RA")).  Like Count 28, Counts 11-14 fail as to Carrigan for lack of personal jurisdiction, venue, and subject-matter jurisdiction, and on the basis of qualified immunity (and with respect to Counts 11 and 14, for lack of an individual-capacity damages remedy against Carrigan under § 1983 and the RA).  These counts, then, also should be dismissed.

## I.  COUNT 28

### A.  Personal Jurisdiction

The most obvious defect in the FAC is that, like the original complaint, it does not make out a *prima facie* case for personal jurisdiction over Carrigan.

Carrigan raised this argument in her prior briefing, Dkts. 133-1 at 14-19, & 166 at 2-4 (upper-margin CM/ECF page numbers), and this Court found it persuasive, dismissing all individual-capacity claims against Carrigan because "Plaintiffs have not met their burden to establish that personal jurisdiction exists over . . . [her] . . . in California." Dkt. 177 at 15.  Even if that ruling does not bind this Court as a matter of "law of the case," *see* Fed. R. Civ. P. 54(b), the Court still should "follow the same reasoning" as before, hold that the FAC does not "cure the deficiencies of the initial complaint" and "suffer[s] from the same legal insufficiencies," and dismiss Carrigan again under Rule 12(b)(2).  *Askins v. U.S. DHS*, 899 F.3d 1035, 1043 (9th Cir. 2018); *see Bhandari v. Mehta*, 2003 WL 22846224, *2 (N.D. Cal. Nov. 25, 2003) (dismissing amended complaint, following dismissal of original complaint with leave to amend, as plaintiff "still" did not "establish[]" that court could "properly exercise personal jurisdiction" over defendant).

Indeed, the absence of personal jurisdiction over Carrigan in California is as clear now as it was when this Court recognized that fact earlier this year.  The FAC makes no case at all for "general jurisdiction," as this Court noted was true of the original complaint.  Dkt. 177 at 14.  That leaves "specific jurisdiction," but here again, the FAC fails to identify "minimum contacts" between Carrigan and California that undercut this Court's ruling or satisfy *Walden v. Fiore*, 571 U.S. 277 (2014), and the numerous other cases applying personal-jurisdiction requirements in *Bivens* cases.  *See* Dkts. 133-1 at 14, 19 & n.9, & 166 at 3-4 n.3 (and cases cited therein).  In keeping with the original complaint and record,[1] the FAC acknowledges (or does not dispute) that, at all relevant times, (1) Carrigan was a non-resident and non-domiciliary of California; (2) her TSA duty station was in Virginia; and (3) while outside California, she signed on behalf of TSA a

---

[1] Dkts. 2-4, 54 (service documents showing Carrigan's office address in Springfield, VA), & 161 at 13, 16 (where Mr. Marcus stated in prior opposition that Carrigan "sits in Virginia" where her "home operations are located"); *accord id.* at 14-15.

November 2021 letter revoking Mr. Marcus's TSA PreCheck eligibility, which was mailed to him at his Post Office Box in California.  FAC ¶¶ 28, 121, 1357; Dkts. 190-1 at 188 (Ex. 49), & 190-2 at 17-18 (Ex. 40).  That is the extent of the FAC's non-conclusory facts, and they are plainly insufficient under this Court's prior order and governing precedent.  As before, this Court should find that the FAC "is devoid of allegations sufficient to establish" that "this Court has specific personal jurisdiction" over Carrigan.  Dkt. 177 at 14.

That resolution is not hindered by the FAC's more-of-the-same conclusory assertions that this Court already rejected.  *Id.* at 14-15; *compare* FAC ¶ 1354 (bare assertion of "Carrigan's purposeful direction toward California or purposeful availment of its laws"), *with Swartz v. KPMG*, 476 F.3d 756, 766 (9th Cir. 2007) ("mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden").  Nor by the assertion that the revocation left Mr. Marcus without TSA PreCheck "eligibility IN CALIFORNIA," FAC ¶¶ 1355-56; *id.* ¶ 1357 (his "injury . . . occurred in . . . California").  That is a rehash of the earlier allegation that the revocation caused Mr. Marcus to suffer "injury in California," Dkt. 161 at 16, which this Court rejected.[2]  This Court also rejected (Dkt. 177 at

---

[2]  As the Court explained, Mr. Marcus "admits that he lives in Israel and has not flown at all (let alone through California) since December 9, 2020, nearly a year before the TSA PreCheck revocation in November 2021."  Dkt. 177 at 15; *accord* Dkt. 161 at 11 (where Mr. Marcus said as much in opposition of October 7, 2022).  The FAC makes the same admission. FAC ¶ 123 (Mr. Marcus has "not taken a flight in the United States or been present in the country" since December 9, 2020); *id.* ¶¶ 56-58 (listing same date in "travel history" for his last flights in United States); *id.* ¶¶ 799, 809, 818 (he has "been restricted from flying to the United States because of" the CDC testing order).  As Mr. Marcus died in August 2023, he cannot—on the present pleading and record—have suffered a revocation-related injury that was "tethered" to California "in any meaningful way" or that "evince[s]" the necessary "connection" between Carrigan and California.  *Walden*, 571 U.S. at 290; Dkts. 133-1 at 18, & 166 at 3 n.2.  That is so even if, for "four years" *prior* to the revocation, Mr. Marcus "took advantage" of his TSA PreCheck status while flying through "major airports throughout California," FAC ¶ 1356.  His pre-revocation conduct in California does nothing to connect *Carrigan* to that forum.  *Walden*, 571 U.S. at 284 ("the defendant-focused 'minimum contacts' inquiry" is not satisfied by a plaintiff "demonstrating" his own "contacts" with "the forum State").

14-15) prior versions of two other FAC allegations, *i.e.*, that jurisdiction exists because Carrigan "sent her letter" to Mr. Marcus at his California address, FAC ¶ 1357, and she has "significant contacts" at "every California Airport" by virtue of her TSA position. *Id.* ¶ 1358. These allegations are again insufficient to establish personal jurisdiction over Carrigan. *See* Dkts. 133-1 at 19 & n.9, & 166 at 3-4 & nn.3, 5 (and cases cited therein).

Lastly, the FAC's citation to *Ibrahim v. DHS*, 538 F.3d 1250 (9th Cir. 2008), is unavailing. Its precedential value is, at best, uncertain as it predates the Supreme Court's decision in *Walden* by over five years. And it is easily distinguishable in any event. Although this case and *Ibrahim* both involve *Bivens* claims brought in California against nonresident TSA officials, the similarities end there. In *Ibrahim*, the TSA official was held to be subject to suit in California because of the particular actions he allegedly took toward the plaintiff while she was physically present in that forum. But here, the actions ascribed to Carrigan, allegedly taken with respect to a plaintiff who was in Israel at the time and never set foot in California again, are so obviously and fundamentally different from the facts of *Ibrahim* that it cannot possibly make specific jurisdiction "proper in California" for Carrigan "in her individual capacity" as Plaintiffs claim. FAC ¶ 51.

## B. Venue

As Carrigan previously argued, Dkts. 133-1 at 19-20, & 166 at 4-5, this District is the wrong venue for Mr. Marcus's First Amendment *Bivens* claim. He bears the burden on that issue, *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979); *Fang v. Blinken*, 2021 WL 4900372, *1 (C.D. Cal. June 22, 2021), and the FAC asserts that venue is "proper" in this District "because a substantial part of the events or omissions giving rise to this lawsuit occurred in California and in connection with flights to/from California." FAC ¶ 44. The FAC thus invokes 28 U.S.C. § 1391(b)(2) ("A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions

1    giving rise to the claim occurred, or a substantial part of property that is the subject

2    of the action is situated . . . .").

3         But § 1391(b)(2) does not place venue in this District with respect to the

4    *Bivens* claim against Carrigan, even if it does so with respect to other claims

5    against other Defendants.  Under this provision, "venue must be proper as to each

6    claim and as to each party."  14D Chas. A. Wright, *et al*., Fed. Prac. & Proc. §

7    3807 at 206-07 (4th ed. 2013); *accord Allstar Mktg. Grp. v. Your Store Online*, 666

8    F. Supp. 2d 1109, 1126 (C.D. Cal. 2009).  Consequently, Carrigan should be

9    dismissed for lack of venue under Rule 12(b)(3) because *all* of "the events or

10   omissions giving rise to the claim" against *her*, § 1391(b)(2), necessarily occurred

11   outside California.  No part of her conduct relating to the TSA PreCheck

12   revocation occurred in this District.

13        **C.  Subject-Matter Jurisdiction**

14        As Carrigan also argued, Dkts. 133-1 at 20-21, & 166 at 5-6, this Court lacks

15   subject-matter jurisdiction over the First Amendment *Bivens* claim by virtue of 49

16   U.S.C. § 46110.  That statute provides that challenges to final TSA orders, like the

17   TSA PreCheck revocation order at issue here, can only be brought via petition for

18   review ("PFR") in an appropriate court of appeals.  As the Ninth Circuit has

19   explained, appellate courts "lack jurisdiction" under § 46110 "to grant damages,"

20   *Latif v. Holder*, 686 F.3d 1122, 1128 (9th Cir. 2012), and so "[i]n principle,"

21   district courts "may have residual jurisdiction" to decide "certain" damages claims

22   involving TSA orders.  *Americopters v. FAA*, 441 F.3d 726, 735-36 (9th Cir.

23   2006).  "In practice," however, the Ninth Circuit has "developed a body of case

24   law that limits the jurisdiction of the district court, barring it from hearing a

25   damages claim that is 'inescapably intertwined with a review of the procedures and

26   merits surrounding the [TSA's] order.'"  *Id.* at 736. "The purpose of this

27   restriction" is to prevent plaintiffs from using "constitutional tort claims" as "a

28   collateral attack" on a TSA order and to "allow courts to identify and dismiss

damages claims that are actually 'thinly disguised attempt[s] at an end-run around

the jurisdictional limitation imposed by [§ 46110]'" or to evade "entirely

established administrative procedures." *Id.*

The *Bivens* claim against Carrigan satisfies the "inescapably intertwined"

standard because it makes no generalized challenge to TSA processes but, instead,

unambiguously attacks the merits of a particular revocation order regarding Mr.

Marcus and, thus, is necessarily "based on the merits of an individual situation."

*Latif*, 686 F.3d at 1128 (cleaned up).  Count 28, then, should be dismissed under

Rule 12(b)(1).  *See Foster v. Skinner*, 70 F.3d 1084, 1087-88 (9th Cir. 1995) (no

district-court jurisdiction over *Bivens* claims alleging "case specific mistreatment"

as to "revocation and reinstatement" of plaintiff's "flight privileges"); *Security

Point Holdings v. TSA*, 769 F.3d 1184 (D.C. Cir. 2014) (reviewing under § 46110 a

PFR that claimed TSA order constituted First Amendment retaliation).[3]

### D.  No *Bivens* Remedy

Count 28 also should be dismissed under Rule 12(b)(6) because the law does

not afford Mr. Marcus a non-statutory damages remedy under *Bivens* for First

Amendment retaliation.  Although the FAC asserts that Carrigan "is liable" to Mr.

Marcus under the First Amendment and "the *Bivens* doctrine," FAC ¶ 1350,

Carrigan explained why that is not so, Dkts. 133-1 at 22-27, & 166 at 6-8, and she

does so again:  the proposed *Bivens* remedy for First Amendment "retaliation" is

"categorically" foreclosed, *Cohen v. United States*, 640 F. Supp. 3d 324, 337

(S.D.N.Y. 2022)—full stop—by the Supreme Court's unanimous decision in

---

[3]  *See also Gilmore v. Gonzales*, 435 F.3d 1125, 1133 n.9 (9th Cir. 2006) (due-process
claim was inescapably intertwined with review of TSA airport-security orders because "it
squarely attack[ed]" them, and other claims were not "broad facial challenges" but, rather, "as-
applied challenges" that "ar[o]se out of the particular facts" of plaintiff's encounter with airline);
*Mace v. Skinner*, 34 F.3d 854, 858 (9th Cir. 1994) (no jurisdictional bar to damages claim raising
"broad challenge" to agencies' "allegedly unconstitutional actions," but statute "obviously
barred" one claim challenging "the merits of [a] particular revocation order"); *accord Tur v.
FAA*, 104 F.3d 290, 290-92 (9th Cir. 1997).

1   *Egbert v. Boule*, 142 S. Ct. 1793, 1807 (2022) ("we hold that there is no *Bivens*

2   action for First Amendment retaliation").  Post-*Egbert* precedent confirms as

3   much.  *See Chambers v. Herrera*, 78 F.4th 1100, 1105 (9th Cir. 2023) (agreeing

4   with plaintiff that "*Egbert* 'explicitly disavows any *Bivens* claims based on First

5   Amendment retaliation, including his own'"); *Myles v. United States*, 2022 WL

6   4011172, *3 n.1 (9th Cir. Sept. 2, 2022) (resolving case on other grounds but

7   noting that *Egbert* "recently established that 'there is no *Bivens* action for First

8   Amendment retaliation'") (citations omitted).[4]  Based on *Egbert* alone, this Court

9   should dismiss Count 28 with prejudice.

10      **E.  Qualified Immunity**

11      "In the limited settings where *Bivens* does apply," *Ashcroft v. Iqbal*, 556

12   U.S. 662, 675 (2009), any *Bivens* claim is "subject to the defense of qualified

13   immunity." *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001).  That

14   defense bars Count 28 and requires dismissal with prejudice under Rule 12(b)(6)—

15   just as Carrigan argued as to Count 19 of the original complaint.  Dkts. at 133-1 at

16   27-33, & 166 at 8-10.

17      **1.**  Qualified immunity shields government officials "from money damages

18   unless a plaintiff pleads facts showing (1) that the official violated a statutory or

19   constitutional right, and (2) that the right was 'clearly established' at the time of

20   the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting

21   *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Courts have discretion to decide

22   which of the two immunity "prongs . . . to tackle first." *al-Kidd*, 563 U.S. at 735.

23   Mr. Marcus cannot establish either one.

24

25      [4]  *See also Gilmore v. McGann*, 2023 WL 6141606, *1 (3d Cir. Sept. 20, 2023) ("*Bivens*

26   does not encompass" a "First Amendment retaliation claim"); *Enriquez-Perdomo v. Newman*, 54
F.4th 855, 869 (6th Cir. 2022) (First Amendment retaliation claim is "not viable after *Egbert*");

27   *Greene v. United States*, 2022 WL 13638916, *4 (6th Cir. Sept. 13, 2022) ("*Egbert* specifically
forecloses [the plaintiff's] *Bivens* First Amendment retaliation claims."); *accord Ojo v. Decker*,

28   2023 WL 6053006, *1 (2d Cir. Sept. 18, 2023); *Mays v. Smith*, 70 F.4th 198, 201 (4th Cir. 2023).

**2.**  At the first prong, a court determines whether a plaintiff's alleged "facts . . . make out a violation of a constitutional right," *Pearson v. Callahan*, 555 U.S. 223, 232 (2009), and applies the pleading standards of Federal Rule of Civil Procedure 8.  Rule 8(a)(2) "requires more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Rather, the "[f]actual allegations" must have "enough heft" to "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, 557.  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss," *Iqbal*, 556 U.S. at 679.

Here, at the first prong, the FAC fails to state a plausible claim of First Amendment retaliation because it alleges only legal conclusions and no facts that satisfy all elements of such a claim.  As explained below, even assuming that Mr. Marcus engaged in First Amendment-protected activity when, on October 19, 2021, he filed the PFR against TSA challenging its enforcement of the CDC mask order, FAC ¶¶ 119-20, he still does not plausibly allege "a retaliatory motive" on Carrigan's part, *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019), or "a substantial causal relationship" between his protected activity and the TSA PreCheck revocation, the alleged "adverse action" in this case.  *Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022).

*First*, Mr. Marcus does not plausibly allege facts suggesting that Carrigan *knew* about the PFR before she signed the revocation letter on November 18, 2021. FAC ¶ 122; *see Nieves*, 139 S. Ct. at 1727-28 (rejecting retaliation claim as to one officer "who had no knowledge of [plaintiff's] prior run-in with" second officer); *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1954 (2018) (retaliatory-arrest plaintiff "likely could not have maintained [such a] claim against the arresting

1  officer" where, *inter alia*, there was "no showing that the officer had any

2  knowledge of [plaintiff's] prior speech").[5]

3      *Second*, Mr. Marcus does not plausibly allege, otherwise, that a retaliatory

4  motive underlay Carrigan's letter.  It nowhere mentioned the PFR and, instead,

5  gave Mr. Marcus "a neutral, investigative reason" for the revocation, *Iqbal*, 556

6  U.S. at 677, *i.e.*, "TSA was unable to determine that you pose a sufficiently low

7  risk to transportation and national security to continue to be eligible for expedited

8  airport security screening through [TSA PreCheck]."  FAC ¶ 121; Dkt. 190-1 at

9  188 (Ex. 49).  No factual allegations call TSA's facially valid explanation into

10  question.  *See USPS v. Gregory*, 534 U.S. 1, 10 (2001) ("a presumption of

11  regularity attaches to the actions of Government agencies").  Although Mr. Marcus

12  makes the bare assertion that Carrigan acted "to retaliate against [him], singling

13  him out for filing a lawsuit against her employer, and then doing her part to ensure

14  [he] would regret rebelling against the TSA, because she had the power to do it,"

15  FAC ¶ 1351, such a "bald allegation of impermissible motive on [Carrigan's] part,

16  standing alone, is conclusory and is therefore not entitled to an assumption of

17  truth."  *Moss v. USSS*, 572 F.3d 962, 970 (9th Cir. 2009).  Thus, "[a]s between

18  [the] 'obvious alternative explanation'" for the revocation provided in the letter,

19  and the retaliatory motive that the FAC suggests in conclusory fashion, the latter

20  "is not a plausible conclusion."  *Iqbal*, 556 U.S. at 682 (citation omitted).

21      *Third*, the only *fact* of conceivable relevance pleaded in the FAC is that the

22  revocation occurred about a month after Mr. Marcus filed the PFR.  FAC ¶¶ 119,

23  121-22.  But "[r]etaliation is not established simply by showing adverse activity by

24
25      [5] *Accord Vega v. United States*, 724 F. App'x 536, 539 (9th Cir. 2018) (plaintiff "did not
    plead that any of the defendants had knowledge" of his protected activity); *Pratt v. Rowland*, 65
26  F.3d 802, 807-08 (9th Cir. 1995) (inmate could not establish that he was transferred in retaliation
    for his granting television interview to local network affiliate absent evidence that defendants
27  were aware of interview); *Hammler v. Alvarez*, 2019 WL 422575, *9 (S.D. Cal. Feb. 4, 2019)
    (M.J. Rec.) (retaliation claim "fail[ed]" absent "allegation that [defendant] ever knew that
28  Plaintiff filed a grievance against him"), *adopted*, 2019 WL 3315567 (S.D. Cal. July 24, 2019).

[a] defendant after protected speech," *Brown v. Ferriter*, 2009 WL 4827426, *3 (D. Mont. Dec. 11, 2009), and "suspicious timing, without more, is insufficient." *Wearren v. Gofferman*, 2021 WL 6496724, *9 (C.D. Cal. Aug. 24, 2021) (M.J. Rec.), *adopted*, 2021 WL 6496806 (C.D. Cal. Oct. 14, 2021); *see Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (rejecting retaliation claim based on "the logical fallacy of *post hoc*, *ergo propter hoc*, literally, 'after this, therefore because of this'").[6]  By itself, then, the alleged timeline does not plausibly establish the required "but for" nexus between the PFR and the revocation. *Denney v. DEA*, 508 F. Supp. 2d 815, 830-31 (E.D. Cal. 2007); *see Nieves*, 139 S. Ct. at 1722 ("It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury. Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.").

**3.**  Lastly, even if Mr. Marcus has stated a First Amendment retaliation claim at the first prong of the immunity analysis, the claim still fails at the second prong.  "A plaintiff 'bears the burden of showing that the right at issue was clearly established.'" *Emmons v. City of Escondido*, 921 F.3d 1172, 1174 (9th Cir. 2019); *accord Hopson v. Alexander*, 71 F.4th 692, 708 (9th Cir. 2023).  "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).  If "a reasonable officer *might* not have known *for certain*" that the particular conduct ascribed to her "was unlawful," then "the officer is immune from liability." *Ziglar v. Abbasi*, 582 U.S. 120, 152 (2017) (emphasis added).

As "a general matter," the First Amendment "'prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves*, 139 S. Ct. at 1722.  But the "clearly established law" inquiry

---

[6]  *Accord Pratt*, 65 F.3d at 808; *Hammler*, 2019 WL 422575, at *9.

requires more than such "a broad general proposition," *Saucier v. Katz*, 533 U.S. 194, 201 (2001), because it "acknowledge[s] that reasonable mistakes can be made as to the legal constraints on particular [government] conduct" and that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine" applies to "the factual situation [she] confronts." *Id.* at 205. Thus, the Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality," *al-Kidd*, 563 U.S. at 742, and it has emphasized that the "standard . . . requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before [her]" and "requires a high 'degree of specificity.'" *D.C. v. Wesby*, 583 U.S. 48, 63 (2018).

The "specific context" of this case, *Saucier*, 533 U.S. at 201, is Carrigan's discretionary determination of Mr. Marcus's continuing TSA PreCheck eligibility, which depended on whether she could affirmatively find that he presented a "sufficiently low risk to transportation and national security," Dkt. 190-1 at 188 (Ex. 49).[7] The question is whether Carrigan violated clearly established First Amendment law *if*, as Mr. Marcus claimed, she based her negative risk assessment of him on his PFR that challenged TSA's implementation of the CDC mask order. She did not. There appear to be no cases of "controlling authority," nor "a robust 'consensus of cases of persuasive authority,'" *al-Kidd*, 563 U.S. at 742 (citation omitted), examining TSA PreCheck or establishing what a TSA official may or may not consider when assessing participant eligibility under the "low risk" standard. But in reasonably analogous cases, courts have held that government officials may appropriately consider First Amendment-protected activity when making similar risk or security assessments, without making the government's

---

[7] *Accord* TSA PreCheck Application Program Privacy Impact Assessment (Sept. 14, 2013) ("Assessment") at 1-2, 6; 78 FR 55274-01, 55274-55276 (Sept. 10, 2013); *see* Assessment at 2 (TSA PreCheck eligibility "is within the sole discretion of TSA"); *accord* 78 FR at 55275; *see also King v. County of Los Angeles*, 885 F.3d 548, 555 (9th Cir. 2018) ("we take judicial notice of the undisputed and publicly available information displayed on government websites").

corresponding actions "retaliatory." *See, e.g., George v. Rehiel*, 738 F.3d 562, 586 (3d Cir. 2013) (despite protected nature of passenger's Arabic-English flashcards bearing words like "bomb" and "terrorist," TSA screeners had qualified immunity on First Amendment retaliation claim, as they were not required to "ignore" the cards' "content or refrain from investigating" the passenger "because of the words they contained. The totality of circumstances here could cause a reasonable person to believe that the items George was carrying raised the possibility that he might pose a threat to airline security. That suspicion was the reason for their increased level of scrutiny during the airport screening."); *see also Reichle v. Howards*, 566 U.S. 658, 668 (2012) ("An officer might bear animus toward the content of a suspect's speech. But the officer may decide to arrest the suspect because his speech provides evidence of a crime or suggests a potential threat.").

In conducting her risk assessment of Mr. Marcus, Carrigan could have relied on "*[a]ny . . . information* relevant to [his] eligibility."[8] And under precedent like *George* and *Reichle*, a reasonable TSA official in Carrigan's position could have taken into account Mr. Marcus's PFR and viewed it (1) as probative of whether there was a risk that he might violate the mask order on a commercial flight, and (2) thus, as relevant to his eligibility and whether she could affirmatively find that he met the "low risk" standard.[9] Particularly in the year in question—when airline

---

[8] https://www.tsa.gov/disqualifying-offenses-factors (emphasis added).

[9] The PFR was attached to the original complaint as Exhibit 24, Dkt. 1 at 314-22, and is Document 1922021 on the docket of *Marcus v. TSA*, No. 21-1225 (D.C. Cir.); *see Reyn's Pasta Bella v. Visa USA*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record."). In the PFR, Mr. Marcus (1) stated that TSA "exceed[ed] [its] statutory authority" in implementing the CDC mask order, *id.* at 1; (2) questioned the government's "authority to levy fines . . . for passengers who don't muzzle themselves," *id.* at 3; (3) asserted a right to "refuse administration of any unauthorized . . . medical device" (masks), *id.*; (4) asserted that he "*can't comply*" with the mask order, *id.* at 4; (5) complained of "menacing announcements" by "airline and transit workers" regarding the mask order, *id.*; and (6) asserted that the order "presents [him] with three choices," including "subject[ing] himself to the unmitigated stress and fear of government and corporate threats and

1    crews reported nearly 6,000 "unruly-passenger incidents" to the FAA, which

2    levied $5 million in fines against such passengers[10]—Carrigan's alleged conduct

3    could not have violated clearly established law in the circumstances she faced.

4    ## II.    COUNTS 11-14

5    **A.**  Insofar as Carrigan is also sued personally on Counts 11-14 of the

6    FAC—invoking §§ 1983, 1985, 1986, and § 504 of the RA—she should be

7    dismissed on most of the same grounds raised above and under the same analysis.

8    Specifically, Counts 11-14 are subject to—and fail under—the same personal-

9    jurisdiction, venue, and § 46110 requirements that apply to Count 28.  So they, too,

10   should be dismissed under Rules 12(b)(1), 12(b)(2), and 12(b)(3).[11]

11   **B.**  As to Carrigan, Counts 11-14 are also barred by qualified immunity and

12   should be dismissed with prejudice under Rule 12(b)(6).  Collectively, their gist is

13   that "All Defendants" violated Plaintiffs' constitutional right to travel, or subjected

14   them to disability-based discrimination, by enforcing the CDC orders against

15   Plaintiffs, "conspiring" with others (*e.g.*, the airlines) who did so, or failing to

16   prevent or intervene in the purported conspiracy.  But the FAC improperly lumps

17   Carrigan in with "All Defendants" in wholly conclusory fashion and with no

18   specific allegation describing her personal involvement in these matters.  Such bare

---

19
20   reprisals brought about by *refusing to comply with the mask mandate* that has no basis in law or science," *id.* at 4-5 (emphasis added).

21   [10]  Of those incidents in 2021, a significant number was mask-related.  By the time of an FAA press release in August 2021—some three months before Mr. Marcus's TSA PreCheck revocation—the agency had received over 2,800 reports specifically involving unruly passengers "refusing to comply" with the mask order.  By the end of 2021, mask-related incidents numbered over 4,000, according to FAA information relayed in Carrigan's previous brief, Dkt. 133-1 at 33, and reported in the press.

22
23
24
25   [11]  *See, e.g.*, *Sumter v. Keith*, 2021 WL 7287629, *3-4 (S.D.N.Y. Oct. 25, 2021) (M.J. Rec.) (no venue as to § 1983 claims against defendants in Pennsylvania, where underlying events occurred), *adopted*, 2022 WL 493499 (S.D.N.Y. Feb. 17, 2022); *Muir v. U.S. TSA*, 2021 WL 231733, *12 (C.D. Ill. Jan. 22, 2021) (§ 46110 barred constitutional and RA claims challenging TSA screening procedures), *aff'd on other grounds*, 2021 WL 3780089 (7th Cir. Aug. 26, 2021); *Olmeda v. Babbits*, 2008 WL 282122, *6 (S.D.N.Y. Jan. 25, 2008) (no personal jurisdiction over defendants sued under §§ 1983, 1985, and 1986 for actions in North Carolina).

26
27
28

1   conclusions are insufficient to subject Carrigan to suit on these four counts at the

2   first step of the immunity analysis.  *See Buckley v. Alameida*, 2012 WL 3704715,

3   *2 (E.D. Cal. Aug. 24, 2012) (a civil-rights plaintiff "must demonstrate that *each*

4   named defendant personally participated in the deprivation of his rights") (citations

5   omitted; emphasis added); *see also Robbins v. Becker*, 794 F.3d 988, 993 (8th Cir.

6   2015) ("'Liability for damages for a federal constitutional tort is personal, so each

7   defendant's conduct must be independently assessed.'"); *Marcilis v. Township of*

8   *Redford*, 693 F.3d 589, 596-97 (6th Cir. 2012) ("categorical references to

9   'Defendants,'" identifying them only as DEA employees, failed to "'allege, with

10  particularity, facts that demonstrate what each defendant did to violate the asserted

11  constitutional right'"); *accord A.M. v. Holmes*, 830 F.3d 1123, 1163 (10th Cir.

12  2016); *Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008).

13          Counts 12 and 13 fail at step one for additional reasons.  "Vague and

14  conclusory allegations of participation in civil rights violations are not sufficient to

15  withstand a motion to dismiss."  *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th

16  Cir. 1982).  But that is all that underlies the § 1985(3) count.  Because the FAC

17  fails to "'state specific facts to support the existence of the claimed conspiracy,"

18  *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 929–30 (9th Cir. 2004) (citation

19  omitted)—including the necessary "agreement or meeting of minds" between

20  Carrigan and another Defendant "to violate [Plaintiffs'] . . . rights," *Taylor v.*

21  *Babcock*, 1992 WL 60464, *1 (9th Cir. 1992) (citing *Woodrum v. Woodward*

22  *County*, 866 F.2d 1121, 1126 (9th Cir. 1989)— Count 12 should be dismissed.  *See*

23  *Karim-Panahi v. LAPD*, 839 F.2d 621, 626 (9th Cir. 1988) ("mere allegation of

24  conspiracy without factual specificity is insufficient").  So should Count 13.

25  Because the FAC fails to state a § 1985(3) claim, it necessarily fails to state a §

26  1986 claim, *id.*, and, in any event, the FAC alleges no facts plausibly suggesting

27

28

that Carrigan was ever aware of any "conspiracy," had an opportunity to intervene, but "neglected" to do so in violation of § 1986.[12]

Counts 11 and 14 also fail at step one for additional reasons. The FAC does not specify what, if any, constitutional violation underlies the § 1983 claim, and, in any event, it fails to explain, as it must, how Carrigan, "through [her] own individual actions," could have "violated the Constitution." *Iqbal*, 556 U.S. at 676.[13] Nor does the FAC ascribe any actions to Carrigan that could possibly satisfy all elements of an RA claim. It alleges no facts plausibly suggesting that Carrigan discriminated against or denied a benefit to any Plaintiff—or "excluded" any Plaintiff from participating in "any program or activity" conducted by either an Executive Branch agency or a private entity "receiving Federal financial assistance"—"solely by reason of her or his disability," 29 U.S.C. § 794(a).

Even were the allegations sufficient at step one, Counts 11-14 still fail at step two of the immunity analysis. It is not clearly established, for instance, that § 1985(3) covers the sort of disability-based discrimination that Plaintiffs allege. Although the Supreme Court and Ninth Circuit do not appear to have addressed that issue, many other courts have done so and held that § 1985(3) does *not* apply to persons claiming disability-based discrimination. *See*, *e.g.*, *Wilhelm v. Cont'l Title Co.*, 720 F.2d 1173, 1176-77 (10th Cir. 1983) ("We must conclude that a class of 'handicapped persons' . . . was not included as a class in what is now § 1985(3)"); *Serris v. Chastaine*, 2022 WL 715115, *3 (E.D. Cal. Mar. 10, 2022) (M.J. Rec.) ("Disabled individuals do not constitute a 'class' within the meaning of

---

[12] *Accord* Dkt. 177 at 17 (where this Court dismissed §§ 1985 and 1986 claims asserted against Airline Defendants in original complaint based on these very reasons).

[13] Insofar as Plaintiffs base Count 11 on a purported violation of a constitutional right to travel, FAC ¶ 874 (mentioning "right to travel" in Count 12); *id.* ¶¶ 1291-1310 (asserting right-to-travel claim in Count 26 against other Defendants), it also fails at the first step of the immunity analysis because, as this Court previously held, Plaintiffs do not "'possess a fundamental right to travel by airplane,'" Dkt. 177 at 25 (quoting *Gilmore*, 435 F.3d at 1137).

section 1985(3)."), *adopted*, 2022 WL 801427 (E.D. Cal. Mar. 16, 2022).[14]  Thus, during the relevant time period, Carrigan would have been "entitled to rely" on such "existing lower court cases" in determining that "her conduct complie[d] with the law," *Pearson*, 555 U.S. at 244-45.[15]

**C.**  Lastly, Plaintiffs assert Counts 11 and 14 under statutes that do not give them an individual-capacity damages remedy against Carrigan.  As a federal employee, she is not subject to suit under § 1983 *at all*, as that statute applies to state or local government officials acting "under color of . . . *State*" law.  42 U.S.C. § 1983 (emphasis added).  As Carrigan is a *federal* official alleged to have acted in this matter only "under color of federal law," there is "no valid basis for" a § 1983 claim against her.  *Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987); *accord Kenny v. Easley*, 166 F. App'x 898, 899 (9th Cir. 2006).  Nor is Carrigan subject to suit, in her individual capacity, for damages under the RA, which, as to federal actors, only provides for equitable relief against the United States.  *Lane v. Peña*, 518 U.S. 187 (1996); *see, e.g.*, *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) (RA does not "allow[] suits against government officials in their individual capacit[ies]").[16]  For these reasons, as well, Counts 11 and 14 should be dismissed as to Carrigan with prejudice under Rule 12(b)(6).

---

[14]  *Accord Bartell v. Lohiser*, 215 F.3d 550, 559 (6th Cir. 2000); *D'Amato v. Wis. Gas Co.*, 760 F.2d 1474, 1486 (7th Cir. 1985).

[15]  Similarly, it was not clear at the time of Carrigan's alleged actions (and is not clear now) that § 1985(3) would reach an alleged conspiracy between her and her fellow federal employees.  *See Abbasi*, 582 U.S. at 149-55 (granting qualified immunity on § 1985(3) claim based on "intracorporate-conspiracy doctrine"); *Lobato v. Las Vegas MPD*, 2023 WL 6620306, *2 (9th Cir. Oct. 11, 2023) (relying on same doctrine to grant qualified immunity to local police detectives on § 1983 conspiracy claim).  And for reasons explained above, *see supra* n.13, it was not clear at the relevant time that § 1985(3) reaches a conspiracy allegedly targeting a "right to travel," FAC ¶ 874.

[16]  *Accord Berkery v. Kaplan*, 518 F. App'x 813, 814-15 (11th Cir. 2013); *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001).

### III.   LITIGATION CONSEQUENCES OF MR. MARCUS'S DEATH

On any of the Rule 12(b) grounds asserted above, this Court should dismiss all claims asserted against Carrigan on behalf of the late Mr. Marcus.  If the Court does so, then, at least as to Carrigan, it will not need to address or resolve any procedural issue arising from Mr. Marcus's death, such as whether his claims are being "prosecuted in the name of the real party in interest," Fed. R. Civ. P. 17(a)(1), or whether a different plaintiff should be substituted for Mr. Marcus under Rule 25.  *See Mayeske v. Int'l Ass'n of Firefighters*, 1989 WL 37154, *14 (D.D.C. Mar. 30, 1989) (as "deceased party" did not have "a valid claim," it was "unnecessary to decide whether the claim, if valid, would have survived [his] death"), *vacated on other grounds*, 905 F.2d 1548 (D.C. Cir. 1990).

Nevertheless, in order to preserve all of her rights, Carrigan raises a Rule 17 "real party in interest" objection as to Mr. Marcus's claims.  Even if his wife, Plaintiff Yvonne Marcus, is the "Administrator" of his "estate," FAC ¶ 21, she has no authority to assert a claim in her late husband's stead unless and until she seeks and obtains a Rule 25 order of substitution.  As she has not yet done so, she is not presently the real party in interest as to Mr. Marcus's claims.  *See*, *e.g.*, *LN Mgmt. v. JPMorgan Chase Bank*, 957 F.3d 943, 950 (9th Cir. 2020) (it is "self-evident" that "a dead person, *qua* a dead person," as "opposed to" his or her "estate," cannot "sue").[17]  "[A]fter [this] objection," the Court should allow "a reasonable time . . . for the real party in interest to . . . be substituted into the action," Rule 17(a)(3).  But as Carrigan has filed a Rule 25 statement noting Mr. Marcus's death, the "reasonable time" for any substitution motion is, at most, within 90 days of when that statement was served.  Dkt. 213 at 4 (certificate noting service on Nov. 20,

---

[17]   *Accord Lopes v. Vieira*, 2010 WL 2011504, *2 (E.D. Cal. May 18, 2010) (original plaintiff died after filing suit, and his widow "is not a party and will not be unless the motion for substitution is granted"); *Estate of Masselli v. Silverman*, 606 F. Supp. 341, 343 (S.D.N.Y. 1985) (as father was not the "legally appointed representative" of his deceased son's estate, he lacked standing to bring civil-rights action based on son's murder).

2023).  If a substitution motion is not filed within that period, Mr. Marcus's claims against Carrigan "must be dismissed," Rule 25(a)(1); *Weil v. Inv./Indicators, Rsch. & Mgmt.*, 647 F.2d 18, 21 n.5 (9th Cir. 1981).  Carrigan reserves the right to seek dismissal on that basis in the future if necessary.[18]

## **CONCLUSION**

For the foregoing reasons, Defendant Carrigan respectfully requests that she be dismissed from this action pursuant to Rule 12(b).

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

C. SALVATORE D'ALESSIO, JR.
Director, Torts Branch

MARY HAMPTON MASON
Senior Trial Counsel, Torts Branch

/s/ Jeremy Scott Brumbelow
JEREMY SCOTT BRUMBELOW
Senior Trial Attorney, Torts Branch

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division
P.O. Box 7146, Ben Franklin Station
Washington, D.C.  20044-7146
Tel. (202) 616-4330; Fax. (202) 616-4314
Email:  jeremy.brumbelow@usdoj.gov

---

[18]  If Ms. Marcus files and prevails on a substitution motion, she likely will have to retain counsel to pursue a claim for her late husband's estate.  "A substituted party . . . is not entitled to proceed pro se, because to do so would violate the prohibition against the unlicensed practice of law; an executor or administrator is not representing himself or herself, but the estate of the deceased party."  6 Moore's Federal Practice § 25.15 at p. 25-34 (3d ed. 2023); *see Simon v. Hartford Life*, 546 F.3d 661, 664 (9th Cir. 2008) ("the general rule prohibit[s] *pro se* plaintiffs from pursuing claims on behalf of others in a representative capacity"); *In re Schumacher*, 2010 WL 11444287, *3 (C.D. Cal. Jan. 15, 2010) ("a nonlawyer representative cannot act as a legal representative" of a decedent's estate "in general civil matters") (citing *Hansen v. Hansen*, 114 Cal. App. 4th 618, 622 (2003)), *aff'd and remanded*, 617 F. App'x 773 (9th Cir. 2015); *accord Bey v. Accredited Home Lenders*, 2019 WL 7212309, *1 (E.D. Cal. July 15, 2019) (M.J. Rec.), *adopted*, 2019 WL 7212317 (E.D. Cal. Aug. 9, 2019).

*Counsel for Defendant Julie Carrigan in Her Individual Capacity*

DATED:      November 20, 2023

# CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 11-6.2, the undersigned—counsel of record for Defendant Julie Carrigan in her individual capacity—certifies that this brief contains 6,984 words, which complies with the word limit of L.R. 11-6.1.

/s/ Jeremy Scott Brumbelow
JEREMY SCOTT BRUMBELOW
Senior Trial Attorney, Torts Branch
U.S. Department of Justice, Civil Division

DATED:      November 20, 2023

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, November 20, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/ Jeremy Scott Brumbelow
JEREMY SCOTT BRUMBELOW
Senior Trial Attorney, Torts Branch
U.S. Department of Justice, Civil Division