**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| URI MARCUS, et al., | Case No. 2:22-cv-02383-SSS-ASx |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [DKT. 196]** |
| CENTERS FOR DISEASE CONTROL AND PREVENTION, et al. | |
| Defendant. | |

Before the Court is Defendant MedAire, Inc.'s motion to dismiss (the "Motion") the Plaintiffs' first amended complaint (the "FAC") for lack of personal jurisdiction and under Federal Rule of Civil Procedure 12(b)(6). [Dkt. 198]. This matter is fully briefed and ripe for review. [Dkt. 206; Dkt. 216]. Having read and reviewed the relevant filings, the Court **GRANTS** MedAire's Motion in its entirety.

## I.    BACKGROUND

Plaintiffs bring this action challenging the enforcement of the Federal Transportation Mask Mandate (the "FTMM") and the International Traveler Testing Requirement (the "ITTR"). [Dkt. 190 at 2]. The Court discusses the relevant background below.

**A.     The Covid-19 Pandemic**

In December 2019, the novel coronavirus, later named SARS-CoV-2, was detected in Wuhan, Hubei Province, in the People's Republic of China.  *See Declaring a Nat'l Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, 85 Fed. Reg. 15,337 (Mar. 13, 2020).  The virus causes a respiratory disease known as COVID-19, *id*., which is highly contagious and poses a risk of "severe" respiratory illness, meaning that infected persons may require hospitalization, intensive care, or the use of a ventilator. CDC, *Requirement for Negative Pre-Departure COVID-19 Test Result or Documentation of Recovery From COVID-19 for all Airline or Other Aircraft Passengers Arriving Into the United States From Any Foreign Country*, 86 Fed. Reg. 69,256, 69,259 (Dec. 7, 2021).  Severe cases may be fatal. *Id*. Additionally, asymptomatic persons can transmit the virus. 86 Fed. Reg. at 69,258.

On January 31, 2020, the Secretary of the Department of Health and Human Services declared a public health emergency.[1]  On March 11, 2020, the World Health Organization (WHO) classified COVID-19 as a pandemic. 85 Fed. Reg. at 15,337.  On March 13, 2020, then-President Trump declared the outbreak a national emergency.  *Id*.

**B.     The FTMM**

On January 21, 2021, in light of experts determining mask-wearing could mitigate the spread of Covid-19 by travelers, President Biden issued an Executive Order directing executive officials to require masks on various forms of transportation and while in transit hubs.  Exec. Order No. 13998, *Promoting*

---

[1] HHS, *Determination that a Public Health Emergency Exists* (Jan. 31, 2020), https://www.phe.gov/emergency/news/healthactions/phe/Pages/2019-nCoV.aspx.

*COVID-19 Safety in Domestic and Int'l Travel*, 86 Fed. Reg. 7205 (Jan. 26, 2021). On February 3, 2021, the Center for Disease Control, (the "CDC"), issued the FTMM which requires people to "wear masks over the mouth and nose when traveling on any conveyance e (e.g., airplanes, trains, subways, buses, taxis, ride-shares, ferries, ships, trolleys, and cable cars) into or within the United States" and "at any transportation hub." 86 Fed. Reg. 8025, 8026 (Feb. 3, 2021).

The TSA then issued directives to implement and support enforcement of the FTMM.  On February 5, 2021, the Department of Transportation ("DOT") issued a Notice of Enforcement Policy: Accommodation By Carriers of Persons with Disabilities Who Are Unable to Wear or Safely Wear Masks While on Commercial Aircraft, [Dkt. 1-1 at 14], which provides specific instructions on how airline may implement the FTMM in a manner that complies with DOT requirements. The airlines then began implementing the FTMM accordingly.

### C.   The ITTR

On December 25, 2020, the CDC issued an order generally requiring air travelers seeking to depart the United Kingdom with a final destination in the United States to provide documentation of a negative COVID-19 test result to the airline before departure. *Requirement for Negative Pre-Departure COVID19 Test Result for All Airline Passengers Arriving Into the United States from the United Kingdom (UK)*, 85 Fed. Reg. 86,933 (Dec. 31, 2020).  After many changes to this policy, on December 7, 2021, the CDC issued the most recent version of the ITTR which requires passengers two or older traveling to the United States from abroad to take a Covid-19 test one day before their flight and present a negative test result to board.  *Id.*

Effective June 12, 2022, CDC rescinded the international traveler testing order. *Rescinding Requirement for Negative Pre-Departure COVID-19 Test Result or Documentation of Recovery From COVID-19 for All Airline or Other*

1  *Aircraft Passengers Arriving Into the United States From Any Foreign Country*,

2  87 FR 36129-01.

3       **D.    MedAire's Involvement**

4       In brief, Plaintiffs allege MedAire contracted with various airlines for

5  medical consultation services regarding mask-exemption requests.  [Dkt. 190 at

6  16, 198].  Plaintiffs allege further that such requests were denied.  *Id*.  Plaintiffs

7  also state MedAire conspired with other Defendants to interfere with Plaintiffs'

8  civil rights.  *Id*. at 212.  The Court will discuss other pertinent details below.

9  **II.    LEGAL STANDARD**

10      **A.    Motion to Dismiss for Failure to State a Claim**

11      A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests

12  the legal sufficiency of the claims in a complaint.  *Navarro v. Block*, 250 F.3d

13  729, 732 (9th Cir. 2001).   Dismissal of a claim is proper under Rule 12(b)(6)

14  when a plaintiff "fails to state a cognizable legal theory or fails to allege

15  sufficient factual support for its legal theories."  *Caltex Plastics, Inc. v.*

16  *Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).   To survive a

17  Rule 12(b)(6) motion, a plaintiff must allege sufficient facts to "state a claim to

18  relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)

19  (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

20      In analyzing a motion to dismiss, a court must accept as true all material

21  factual allegations and draw all reasonable inferences in the non-moving party's

22  favor.  *Doe v. U.S.*, 419 F.3d 1058, 1062 (9th Cir. 2005).   A court need not

23  accept, however, "a legal conclusion couched as a factual allegation."  *Papasan*

24  *v. Allain*, 478 U.S. 265, 286 (1986).   When reviewing a Rule 12(b)(6) motion, a

25  court must consider the complaint in its entirety and any attached documents,

26  documents incorporated by reference, or matters of which a court may take

27  judicial notice.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322

28  (2007).   If a complaint fails to state a plausible claim, a court should freely

1   grant leave to amend under Federal Rule of Civil Procedure 15(a)(2) even if

2   such a request was not made, unless amendment would be futile.  *Watison v.*

3   *Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012).

4        Given Plaintiffs here are *pro se,* the Court will "construe the pleadings

5   liberally. . . to afford the petitioner the benefit of any doubt."  *Hebbe v. Pliler*,

6   627 F.3d 338, 342 (9th Cir. 2010).

7        **B.**    **Motion to Dismiss for Lack of Personal Jurisdiction**

8        "Where … no federal statute authorizes personal jurisdiction, the district

9   court applies the law of the state in which the court sits.  California's long-arm

10   statute 'is coextensive with federal due process requirements, [so] the

11   jurisdictional analysis under state law and federal due process are the same."

12   *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011)

13   (citations omitted).

14        Under FRCP 12(b)(2), defendants may move to dismiss a complaint for

15   lack of personal jurisdiction.  "When a defendant moves for dismissal under

16   FRCP 12(b)(2), the plaintiff 'bears the burden of demonstrating that the court

17   may properly exercise jurisdiction over the defendant.'"  *PHD Mktg, Inc. v.*

18   *Vital Pharms*., *Inc*., 20-cv-RSWL-JCx, 2020 WL 13336773, at *2 (C.D. Cal.

19   Oct. 1, 2020) (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir.

20   2006)).  Where no formal discovery or evidentiary hearing is conducted,

21   plaintiffs need only make a "prima facie showing" of personal jurisdiction to

22   survive dismissal.  *Id*.  "The Court may consider evidence presented in

23   affidavits and declarations in determining personal jurisdiction."  *Bondit LLC v.*

24   *Hallows Movie, Inc.*, No. 2:19-cv-09832-SB-RAO, 2020 WL 7775619, at *1

25   (C.D. Cal. Nov. 23, 2020) (citing *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557

26   F.2d 1280, 1285 (9th Cir. 1977)).  "Conflicts between parties over statements

27   contained in affidavits must be resolved in the plaintiff's favor."

28   *Schwarzenegger v. Fred Marin Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

Personal jurisdiction may be either "general" or "specific."  *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017).  General jurisdiction exists only in the state or states in which a defendant can fairly be considered at home, for example, its place of incorporation or principal place of business.  *See Daimler AG v. Bauman*, 571 U.S. 117, 239 (2014).  For specific jurisdiction to exist, the plaintiff must show the defendant's specific contacts with the forum state gave rise to the suit in question.  *See PHD Mktg.*, 2020 WL 13336773, at * 2 ("specific jurisdiction … arises when a defendant's specific contacts with the forum give rise to the claim in question); *see also Bristol-Myers Squibb*, 582 U.S. at 262.

To determine if specific jurisdiction exists, courts apply a three-prong test. *Schwarzenegger*, 374. F.3d at 802.  The test is as follows:

> (1) "The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) The claim must be one which arises out of or relates to the defendant's forum related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Id*.

Under this test, plaintiffs bear the burden of establishing the first two prongs.  *Id*.  If a plaintiff establishes the first two prongs, the burden shifts to defendants to show the exercise of jurisdiction is unreasonable.  *Id*.

## III.  DISCUSSION[2]

The Court will first discuss the Motion to dismiss for failure to state a claim.

---

[2] To begin, the Court addresses the timeliness of the Motion.  Plaintiffs argue the Motion is untimely because it was filed on November 6, 2023, which is more than 21 days after the filing of the FAC.  [Dkt. 206 at 3].  While Plaintiffs

A.      12(b)(6)

   1.      Claim 11: 42 U.S.C. § 1983 ("Section 1983")

MedAire moves to dismiss Plaintiffs' eleventh cause of action arguing Plaintiffs fail to state a claim under 42 U.S.C. § 1983.  [Dkt. 196-1].  For the reasons set forth below, the Court **GRANTS** the Motion as to this claim.

To bring a claim under Section 1983, a plaintiff must allege facts sufficient to establish two elements: (1) "that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law."  *McCartney v. Richardson*, No. 09-cv-0548 MMC (PR), 2009 WL 921632, at *1 (N.D. Cal. Apr. 3, 2009) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).  While Section 1983 seems all encompassing, there are limitations to its breadth.  For example, claims under Section 1983 are limited to claims arising out of persons acting under the color of state, not federal law.  *See Lockett v. San Bernardino Cnty Jail*, No. 07-cv-1589-DSF (AGRx), 2008 WL 1944228, at *2–3 (C.D. Cal. Apr. 30, 2008). (citing *Kreines v. United States*, 959 F.2d 843, 837 (9th Cir. 1992) (stating "[a] Bivens suit differs from a Section 1983 suit only in that a federal, rather than a state defendant is sued.")); *see also Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250, 1257–58 (9th Cir. 2008).

Here, Plaintiffs' claim fails because Plaintiffs challenge the conduct of private individuals enforcing federal, not state law.  While not the model of clarity, Plaintiffs' FAC alleges MedAire violated Section 1983 by enforcing the

---

did file the FAC on October 10, 2023, the FAC was not served on MedAire, or posted to the docket, until October 16, 2023.  [Dkt. 190].  Given that delay, the Court finds the Motion timely as it was filed on November 6, 2023, which is 21 days after the date of the service and posting of the FAC to the docket.   [Dkt. 196].

1   FTMM on flights.  [Dkt. 190 at 116–117 (citing 49 U.S.C. § 46504)].[3]

2   However, because as currently plead MedAire acted under the color of federal

3   law, rather than state law, Plaintiffs' Section 1983 claim fails as a matter of law.

4   *See Jacobson v. Tahoe Reg'l Plan. Agency*, 566 F.3d 1253, 1364 (9th Cir.

5   1977). *Rev'd in part on other grounds sub nom. Lake Cnty. Estates, Inc. v.*

6   *Tahoe Reg'l Plan. Agency*, 440 U.S. 391, (1979).

7        The Court also finds Plaintiffs' Section 1983 claim fails because Plaintiffs

8   fail to adequately plead joint action between MedAire and state actors.  While

9   private parties like MedAire are presumed to not act under the color of state law,

10  private parties may be liable under Section 1983 if a plaintiff shows "'[the]

11  conduct allegedly causing the deprivation of a federal right [was] fairly

12  attributable to the State.'"  *Rabieh v. Paragon Sys.*, 316 F. Supp. 3d 1103, 1119

13  (N.D. Cal. June 11, 2018) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922,

14  937 (1982)).  Here, the FAC fails to allege facts sufficient to show MedAire's

15  conduct, the consultations in regard to mask-exemption requests, is fairly

16  attributable to the state.  [Dkt. 190 at 116 (alleging the government recruited the

17  "flight crew[s]" to enforce the FTMM)].  As such, Plaintiffs' Section 1983

18  claim fails for this reason as well.

19        As the Court cannot say amendment is futile, the Court **DISMISSES** the

20  Claim **WITHOUT PREJUDICE**.

21              **2.    Claim 12: 42 U.S.C. § 1985(3) ("Section 1985")**

22        Plaintiffs next claim Defendants violated 42 U.S.C. § 1985(3) ("Section

23  1985(3)").  [Dkt. 190 at 117].  This claim fails as a matter of law.

24

25

26  _____

27  [3] While private parties are generally presumed to not act under the color of state

28  law, Plaintiffs correctly assert "joint action" of private parties and state actors is
    sufficient to cause private parties to incur Section 1983 liability.

To state a claim under Section 1985(3), "a plaintiff must show '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and (3) an act in furtherance of the conspiracy; whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" *Yousefi v. Delta Elec. Motors, Inc.*, No. 13-cv-1632RSL, 2014 WL 4384068, at *1 (C.D. Cal. Sept. 4, 2014) (citation omitted). However, Section 1985(3) does not create its own independent cause of action. *See e.g.*, *Barlow v. Town of Colorado City*, No. 23-cv-08506-PCT-SMB, 2024 WL 1639142, at *7 (Apr. 16, 2024, D. Az. 2024) (citing *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979); *Bey v. City of Oakland*, No. 14-cv-01626-JSC, 2016 WL 1639372, *15–16 (N.D. Cal. Apr. 26, 2016)). Rather, to plead a Section 1985(3) claim, a plaintiff must first successfully plead a violation of a substantive civil rights statute. *Id.*

Here, as discussed above, Plaintiffs' Section 1983 claim fails. As such, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' Section 1985(3) claim. *Id.*; *see also California Republican Party v. Mercier*, 652 F. Supp. 928, 935 (C.D. Cal. 1986).

### 3.     Claim 13: 42 U.S.C. § 1986

Plaintiffs also allege Defendants violated 42 U.S.C. § 1986 ("Section 1986"). This claim fails as well. Under Section 1986, a person is liable if they know of an impending Section 1985 violation, but they neglect or refuse to prevent the violation. *White v. Davenport*, No. *;23-cv-02300-HDV-MAA, 2024 WL 1329780, at *11 (C.D. Cal. Mar. 26, 2024) (citing *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988)). A Section 1986 claim can only be stated if a complaint states a valid Section 1985 claim. *Id.*

1    Here, as discussed above, Plaintiffs' Section 1985 claim fails and thus so does
2    his Section 1986 claim.  Therefore, the Court **DISMISSES WITHOUT**
3    **PREJUDICE** this claim.

4              **4.      Claims 14, 16, 17, 18, and 30: The Rehabilitation Act**

5           MedAire argues Plaintiffs' Rehabilitation Act (the "RA") claims fail
6    because MedAire is not subject to the RA.  [Dkt. 193-1 at 19–20].  The RA
7    prohibits discrimination against disabled individuals with respect to any
8    program or activity received Federal financial assistance.  29 U.S.C. §794(a).
9    While the RA does not define "federal financial assistance," courts have
10   interpreted the phrase to mean "the federal government's provision of a subsidy
11   to an entity."  *Shotz v. Am. Airlines, Inc.*, 420 F.3d 1332, 1335 (11th Cir. 2005);
12   *see also Andreadakis v. Cntr. for Disease Control and Prevention*, No. 3:22-cv-
13   52 (DJN), 2022 WL 4194, at *10 (E.D. Va. July 11, 2022).   Thus, in this
14   circumstance, the RA applies to MedAire if MedAire received a "subsidy" from
15   the federal government.  *Id*.

16          Here, Plaintiffs' RA claims fail because Plaintiffs fail to allege MedAire
17   received a subsidy from the federal government.  In the FAC, Plaintiffs allege
18   MedAire is subject to the RA because the federal government is a major
19   customer in MedAire's market.  [Dkt. 190 at 133].  This is insufficient to
20   establish MedAire received a subsidy from the federal government for two
21   reasons.  First, the allegations summarized above do not show MedAire
22   received any funds from the federal government, let alone a subsidy.  Second,
23   even assuming the facts above show the federal government paid MedAire for
24   its services, such a payment is compensation and not a subsidy within the
25   meaning of the RA.  *See Sholtz*, 420 F.3d at 1335 (noting to determine the
26   applicability of the RA, courts determine whether the government intended to
27   give the defendant a subsidy rather than mere compensation).

28

As Plaintiffs fail to adequately plead MedAire received a subsidy within the meaning of the RA, the RA does not apply to MedAire.  Given this is Plaintiffs' second attempt alleging these claims, the Court finds amendment would be futile. Thus, the Court **DISMISSES** claims 14, 16, 17, 18, and 30 **WITH PREJUDICE**.

### 5.    Claims 15, 16, 17, 18, 19, and 30: ACAA Claims

MedAire next moves to dismiss Plaintiffs' ACAA claims arguing (1) Plaintiffs' pleadings are insufficient, (2) the ACAA is not applicable, and (3) the ACAA does not provide a private right of action.  [Dkt. 196-1 at 17–18].  In their Opposition, Plaintiffs argue MedAire is subject to the ACAA because it is a contractor of the Airline Defendants.  [OPPO at 13].  For the reasons set forth below, the Court **GRANTS** MedAire's Motion.

"The Air Carrier Access Act of 1986 [], 49 U.S.C. § 41705, probits air carriers from discriminating against individuals on the basis of a physical or mental impairment." *Segalman v. S.w. Airlines Comp.*, 895 F.3d 1219, 1221 (9th Cir. 2018).  However, there is no private right of action under the ACAA. *Id*. at 1222 (joining the Second, Fifth, Tenth, and Eleventh Circuits in concluding the ACAA does not provide a private right of action).

Thus, because there is no private right of action, Plaintiffs' ACAA claims fail as a matter of law.[4]  As no subsequent amendment can fix the pleadings' deficiencies, the Court **DISMISSES WITH PREJUDICE** Plaintiffs' ACAA claims.[5]  *See Reinbold v. Alaska Airlines*, No. 3:23-cv-00087-JMK, 2024 WL

---

[4] Plaintiffs' reliance on *DeGirolamo v. Alitalia-Linee Aeree Italiane*, *S.p.A.*, 159 F. Supp. 2d 764 (D. N.J. 2001), is misplaced as *DeGirolamo* is not binding and binding precedent in this circuit holds there is no private right of action under the ACAA.  *Segalman*, 895 F.3d at 1221.

[5] The Court also notes Plaintiffs fail to oppose MedAires' lack of a private right of action argument, and as such the Court could dismiss these claims for that reason alone.

553552, at *7 (D. Alaska Feb. 12, 2024); *Seklecki v. Cntr. for Disease Control and Prevention*, 635 F. Supp. 3d 15, 25 (D. Mass 2022).

### 6.     Claim 20: Unruh Act Claim

MedAire next moves to dismiss Plaintiffs' Unruh Act claim arguing (1) only Plaintiff Russo has standing to bring the Unruh Act claim, (2) the FAC is devoid of facts giving rise to an Unruh Act claim, and (3) the Unruh Act claim is preempted by the Airline Deregulation Act ("ADA"), the Federal Aviation Act, and the ACAA.  [Dkt. 196-1 at 19].

The Court begins first with MedAire's ADA preemption argument. MedAire argues Plaintiffs' Unruh Act claim is preempted by the ADA because Plaintiffs' Unruh Act claim relates to a "service of an air carrier."  [Dkt. 196-1]. For the reasons stated below, the Court disagrees and finds Plaintiffs' Unruh Act claim is not preempted by the ADA.

The ADA expressly forbids any state from making or enforcing any laws "related to a price, route, or service of an air carrier."  49 U.S.C. 41713(b)(1). While the ADA does not define the term "service," the Ninth Circuit has held "service" to mean the "prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo or mail."  *Nat'l Federation of the Blind v. United Airlines, Inc.*, 813 F.3d 718, 726 (9th Cir. 2016) (citing *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1261 (9th Cir. 1998)).  Further, courts have held "service" does not include the various amenities offered by airlines including "in-flight beverages, personal assistance to passengers, [and] the handling of luggage[.]" *Charas*, 160 F.3d at 1266, 1261.  Perhaps most importantly, claims concerning the failure to accommodate disabled passengers do not automatically trigger the ADA's preemption provision.  *Nat'l Federation*, 813 F.3d at 727 (citing *Newman v. American Airlines, Inc.,* 1765 F.3d 1128, 1131 (9th Cir. 1999)).

1      Here, the gravamen of Plaintiffs' Unruh Act claim is that by threatening

2  Plaintiffs with fines and refusing to let them board subsequent flights, MedAire

3  discriminated against Plaintiffs based on their disability.  [Dkt. 206 at 16; Dkt.

4  190 at 16].  Such claims of refusing to accommodate passengers' disabilities do

5  not fall within the ambit of 49 U.S.C.§ 41713(b)(1).  *See e.g.*, Nat'l Fed., 813

6  F.3d at 726–27 (finding blind plaintiffs' claims for disability discrimination

7  relating to airlines' kiosks not preempted by the ADA); *Newman*, 176 F.3d at

8  1131; *Makhzoomi v. Sw. Airlines, Co.*, 419 F. Supp. 3d 1136, 1154 (N.D. Cal.

9  2019).  As such, the ADA does not preempt Plaintiffs' Unruh Act claim.

10     MedAire next argues the FAA preempts Plaintiffs' Unruh Act claim.  As

11  an initial matter, the Court notes MedAire bears the burden of establishing

12  Plaintiffs' claim is preempted by the FAA.  *See Corbett v. PharmaCare U.S.,*

13  *Inc.*, 567 F. Supp.3d 1172, 1193 (S.D. Cal. Oct. 19, 2017) (quoting *Dorsett v.*

14  *Sandoz, Inc.*, 699 F. Supp. 2d 1142, 1155 (C.D. Cal. 2020)).

15     The FAA, and the regulations enacted thereunder by the Federal Aviation

16  Administration, create safety rules for the airline industry.  *Brown v. Alaska Air*

17  *Grp., Inc.*, 2011 WL 2746251, at *2 (D. Alaska July 14, 2011).  As MedAire

18  correctly notes, the Ninth Circuit first addressed the preemptive scope of the

19  FAA in *Montalvo v. Spirit Airlines*, 508 F.3d 464, 470 (9th Cir. 2007), where it

20  held by passing the FAA, Congress intended to form a "'single uniform system

21  for regulating aviation safety.'"  *Ventress v. Japan Airlines*, 747 F.3d 716, 721

22  (9th Cir. 2014).  However, subsequent Ninth Circuit decision have clarified the

23  preemptive scope of the FAA.  *See Ventress*, 747 F.3d at 721; *see also Bernstein*

24  *v. Virgin Am., Inc.*, 3 F.4th 1127, 1139–40 (9th Cir. 2021).  Today, a state law

25  claim is preempted by the FAA if the state law has a "direct bearing on the field

26  of aviation safety" and the relevant federal agency has heavily regulated the area

27  in which the state law applies.  *Ventress*, 747 F.3d at 721 (finding FAA

28  preemption where the federal agency "pervasively regulated" the relevant area);

-13-

1    *see also Bernstein*, 3 F.4th at 1139; *Summers v. Delta Airlines, Inc.*, 805 F. Supp.

2    2d 874, 886–87 (N.D. Cal. 2011).

3         Here, MedAire fails to present the Court any FAA regulations relating to

4    Plaintiffs' Unruh Act claim.  As such, MedAire failed to meet its burden in

5    establishing preemption, and the Court declines to find preemption.  *Id*.

6         MedAire next argues Plaintiffs' Unruh Act claim fails because the ACAA

7    preempts Plaintiffs' Unruh Act claim.  [Dkt. 196-1 at 24–25].  By its term, the

8    ACAA applies only to "air carriers."  *See Seklecki*, 636 F. Supp. 3d at 25.  The

9    definition for "air carrier" under the ACAA is laid out in 14 C.F.R. § 382.5

10   which provides a carrier is any U.S. or foreign citizen that "undertakes directly,

11   or indirectly, or by lease or any other arrangement, to engage in air

12   transportation."  "Air transportation" is defined further as "interstate or foreign

13   air transportation or the transportation of mail by aircraft[.]"  *Id*.

14        Here, based on the pleadings before the Court, MedAire is not an air

15   carrier, and as such the ACAA does not apply and cannot be used as a vehicle

16   for preemption.  *See Adiutori v. Sky Harbor Int'l Airport*, 880 F. Supp. 696, 700

17   (D. Ariz. 1995); [Dkt. 190 at 2–3 (stating MedAire is a medical vendor who

18   evaluated mask-exemption requests)].  As such, MedAire's argument fails.

19        Having determined Plaintiffs' Unruh Act claim is not preempted, the

20   Court turns to whether the facts alleged are sufficient to state a claim for a

21   violation of the Unruh Act.  "To state a claim for discrimination under the

22   Unruh Act, a plaintiff must allege that: 1) he or she was denied full and equal

23   accommodations, advantages, facilities, privileges, or services in a business

24   establishment; 2) that his or her protected characteristic was a motivating factor

25   for this denial; 3) that defendant's denial was the result of its intentional

26   discrimination against plaintiff; and 4) that the defendant's wrongful conduct

27   caused him to suffer injury." *Correll v. Amazon.Com, Inc.*, No. 3:21-cv-01833-

28   BTM, 2022 WL 5264496, at *4 (S.D. Cal. Oct. 6, 2022) (citing CACI No.

1  3060); *Azocar*, 562 F. Supp. 3d at 795 (C.D. Cal. 2021) (citing *Greater L.A.*

2  *Agency on Deafness, Inc. v. CNN, Inc.*, 742 F.3d 414, 427 (9th Cir. 2014)).

3      In their Opposition, Plaintiffs point the Court to only one paragraph as an

4  example of the relevant conduct.  [Dkt. 206 at 16].  More specifically, Plaintiffs

5  direct the Court to a portion of the FAC in which Plaintiffs allege Plaintiff

6  Devorah Gordon was discriminated against by allegedly being threatened with

7  fines and being denied access to a subsequent flight for her inability to wear a

8  mask.  [Dkt. 206 at 16; Dkt. 190 at 16].  These allegations are insufficient to

9  state a claim under the Unruh Act because the FAC fails to adequately plead

10  Devorah Gordon is disabled.  The FAC summarily states "Devorah Gordon has

11  a medical disability that does not allow her to wear a mask."  [Dkt. 190 at 21].

12  This is a conclusory statement, and the Court need not credit it.  *Papasan,* 478

13  U.S. at 286.  Thus, because the FAC fails to plead Devorah Gordon is disabled,

14  Plaintiffs' Unruh Act claim fails as a matter of law.

15      As to the remaining Plaintiffs, the Unruh Act claim still fails because the

16  FAC fails to allege facts sufficient to show MedAire intentionally discriminated

17  against Plaintiffs.  By this Court's count MedAire is mentioned only twice in the

18  FAC's nearly 100-page fact section.  [Dkt. 190 at 16, 73].  Neither mention is

19  sufficient to establish MedAire intentionally discriminated against Plaintiffs.  *Id*.

20  (stating MedAire did a medical assessment of mask exemption requests that

21  were eventually denied); *Ent. Studios Networks, Inc. v. McDonald's Corp.*, No.

22  21-cv-4972 FMO (MAAx), 2021 WL 6618469, at *2 (C.D. Cal. Nov. 30, 2021)

23  (finding allegations that "similarly-situated, white-owned networks" were not

24  discriminated against insufficient to state an Unruh Act claim where plaintiff

25  failed to plead further specific facts to establish the other networks were in fact

26  similarly situated).

27      Thus, the Court finds Plaintiffs inadequately plead their Unruh Act claim

28  and **DISMISSES WITHOUT PREJUDICE** the claim.

### 7.    Claim 24: Invasion of Privacy

MedAire next moves to dismiss Plaintiffs' invasion of privacy claim. [Dkt. 196-1 at 23].  Given the final paragraph of Plaintiffs' claim, the Court construes Plaintiffs to be alleging violations of the California Constitution and California's Consumer Privacy Act.  [Dkt. 190 at 177–180].

To plead a violation under the California Constitution, plaintiff must allege 'that (1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion is so serious as to constitute an egregious breach of the social norms such that the breach is highly offensive." *Hart v. TWC prod. And Tech., LLC*, 526 F. Supp. 3d 592, 600 (N.D. Cal. 2021) (citing *In re Facebook Inc. Internet Tracking Litigation*, 956 F.3d at 601 (9th Cir. 2020)).

Here, Plaintiffs allege they successfully meet the requirements above because "Airline Defendants required disabled Plaintiffs" to give out intimate details to Airline workers at boarding gates and at check in.  [Dkt. 190 at 176]. Importantly, the FAC is devoid of any allegations tying MedAire into the alleged invasions of privacy.  As such, Plaintiffs' claim for violation of California's Constitution fails as a matter of law.

Turning to the possible claim for violation of California's Consumer Privacy Act (The "CCPA"), the Court finds this claim is also inadequately plead.  To plead a claim under the CCPA, Plaintiffs must allege their personal information was subject to "'unauthorized … disclosure as a result of a business' failure to 'implement and maintain reasonable security procedures and practices.'" *Gershfeld v. Teamviewer, US, Inc.*, No. 21-cv-00058-CJC(ADSx), 2021 WL 3046775, at *2 (C.D. Cal. June 24, 2021).  Here, as was the case above, Plaintiffs' complaint is devoid of any allegations relating to MedAire that meets the requirements above.  As such, the Court **DISMISSES** the claim **WITHOUT PREJUDICE**.

-16-

### 8.     Claim 27: Medical Malpractice

Under Rule 8 "each allegation must be simple, concise, and direct."  Fed. R. Civ. Proc. 8(d)(1).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft*, 556 U.S. at 678 (citations omitted)).  Moreover, "a complaint that is too verbose, long, confusing, redundant, irrelevant, or conclusory may be dismissed for failure to comply with Rule 8." *Washington v. City of Gendale Police Dep't*, No. 2:18-cv-06519-CBM (MMA), 2019 WL 13243998, at *1 (C.D. Cal. Apr. 19, 2019); *see also Cafasso v. Gen. Dynamics C4 Sys.*, 647 F.d 1047, 1058–59 (9th Cir. 2011).

Here, Plaintiffs spend seven pages of the FAC endeavoring to explain the grounds for their medical malpractice claims.  [Dkt. 190 at 197–203].  However, Plaintiffs fail to provide this Court a clear explanation as to what facts meet the elements for a medical malpractice claim.   For example, in one portion of the FAC Plaintiffs allege "[m]edical malpractice occurred when MedAire Inc. … completed medical assessment[s] of Plaintiffs … while [Plaintiffs] were standing at the departure gate of an airport."  [Dkt. 190 at 201].  This statement seems to be in direct conflict with another allegation of Plaintiffs that states "[t]here was no reasonable expectation that MedAire, Inc. was going to approve mask exemptions for any Plaintiffs in this action, *had we presented* to the gate on the day of travel to undergo a telephone screening." *Id*. at 100 (emphasis added).  Given the contradictory nature of the pleadings above, the Court **DISMISSES WITHOUT PREJUDICE** the claim pursuant to Rule 8.[6]

---

[6] Any subsequent allegations relating to this claim should be structured in accordance with the elements for a medical malpractice claim. *See Yaeger v. United States*, No. 21-cv-00064-SVW (DFMx), 2023 WL 4291834 (C.D. Cal. May 16, 2023) (citing *Tortorella v. Castro*, 43 Cal. Rptr. 3d 853, 855 n.2 (Cal. Ct. App. 2006)).

**B.   Personal Jurisdiction**

The Court now discusses whether the Court possesses personal jurisdiction over MedAire.

**1.   General Jurisdiction**

Plaintiffs concede the Court lacks general jurisdiction over Defendants. [Dkt. 206 at 23–24].  As such, the Court concerns itself only with specific jurisdiction.

**2.   Specific Jurisdiction**

To determine if a court has specific personal jurisdiction over a defendant, a court must find that (1) the defendant purposefully directed its activities toward the forum state, or (2) the defendant purposefully availed itself of the benefits of conducting business within the forum state.  *Schwarzenegger*, 374 F.3d at 802; *see also Expensify. Inc. v. Swappoint AG*, No. 22-cv-05720-LB, 2023 WL 6323103, at *5 (N.D. Cal. Sept. 28, 2023).  "'A purposeful availment analysis is often used in suits sounding in contract,' while a 'purposeful direction analysis … is most often used in suits sounding in tort.'" *Kellytoy Worldwide, Inc. v. Jay at Play Int'l Hong Kong Ltd.*, No. 19-cv-07831-AB (MRW), 2019 WL 8064196, at *3 (C.D. Cal. Dec. 5, 2019) (quoting *Schwarzenegger*, 374 F.3d at 802).

As this Court noted in its prior order, MedAire's role in this dispute is minimal.  In the jurisdictional portion of the FAC, Plaintiffs summarily state the Court has jurisdiction over MedAire because MedAire has "contacts that are sufficient to establish specific personal jurisdiction."  [Dkt. 190 at 9].  In the Opposition, Plaintiffs further state "[b]eing that Medaire actively operates significantly in the State of California, [MedAire is] under the California long-arm statute."  [Dkt. 206 at 23].  These statements are conclusory, and as such the Court need not credit them.  *See NuCal Foods, Inc. v. Quality Egg, LLC*, 887 F. Supp.2d 977, 998 (E.D. Cal. 2012).

-18-

Federal Rule of Civil Procedure 8(1) requires a complaint to state a "short and plain statement of the grounds for the court's jurisdiction[.]"  Moreover, Plaintiffs bear the burden of establishing personal jurisdiction is proper.  *Schwarzenegger*, 374. F.3d at 802.  Here, for the reasons set out below, Plaintiffs fail to establish the Court possesses personal jurisdiction over MedAire.

First, the FAC fails to provide a short and plain statement as to why the Court possesses personal jurisdiction over MedAire.  [Dkt. 190].  While the FAC mentions MedAire many times, the Court declines to comb through the voluminous filings and finds Plaintiffs failed to meet their burden in establishing personal jurisdiction.  Second, as to Plaintiffs' opposition, Plaintiffs fail to direct this Court to any specific facts in the FAC that would give rise to personal jurisdiction over MedAire.  [Dkt. 206 at 23 (discussing the Defendants as a whole)].  Given the above, the Court finds Plaintiffs' fail to meet their burden in establishing the exercise of personal jurisdiction is proper.  *Sheets v. Admin. Comm. of Northrop Grumman Space & Mission Sys. Corp.*, No. 2:22-cv-07607-MEMF (PDx), 2023 WL 2761118, at *6 (C.D Cal. Mar. 31, 2023) (noting plaintiff failed to meet its burden when the complaint lacked a short and plain statement as to why the court possesses personal jurisdiction).  As such, the Court **DISMISSES WITHOUT PREJUDICE** the FAC for failure to establish personal jurisdiction.

Any subsequent amended complaint shall provide a clear statement as to why the Court possesses personal jurisdiction over MedAire.

## IV.   CONCLUSION

In accordance with the opinion above, the Court lacks personal jurisdiction over MedAire.  Moreover, the Court rules as follows:

- Plaintiffs' Section 1983 claim is **DISMISSED WITH LEAVE TO AMEND**;

- Plaintiffs' Section 1985 claim is **DISMISSED WITH LEAVE TO AMEND**;
- Plaintiffs' Section 1986 claim is **DISMISSED WITH LEAVE TO AMEND**;
- Plaintiffs' RA claims, claims 14, 16, 17, 18, and 30, are **DISMISSED WITH PREJUDICE**;
- Plaintiffs' ACAA claims, claims 15, 16, 17, 18, 19, and 30, are **DISMISSED WITH PREJUDICE**;
- Plaintiffs' Unruh Act claim is **DISMISSED WITH LEAVE TO AMEND**;
- Plaintiffs' Invasion of Privacy claim is **DISMISSED WITH LEAVE TO AMEND**;
- Plaintiffs' Medical Malpractice claim is **DISMISSED WITH LEAVE TO AMEND**.

As such, the Court **GRANTS** MedAire's Motion and **DISMISSES** the FAC **WITH LEAVE TO AMEND** only as to claims indicated above. Plaintiffs shall file their any amended complaint **no later than June 29, 2024**. Any amended complaint **SHALL ONLY** address the deficiencies identified herein.

**IT IS SO ORDERED.**

DATED: June 12, 2024

_____
SUNSHINE S. SYKES
United States District Judge

-20-